1  **FINKELSTEIN & KRINSK LLP**
   Jeffrey R. Krinsk (State Bar No. 109234)
2  Mark L. Knutson (State Bar No. 131770)
   William R. Restis (State Bar No. 246823)
3  501 West Broadway, Suite 1250
   San Diego, California 9210-3579
4  Telephone: (619)238-1333
   Facsimile: (619) 238-5425
5
   Attorneys for plaintiff
6  Luz. M. Zapien

7

8              **UNITED STATES DISTRICT COURT**
              **SOUTHERN DISTRICT OF CALIFORNIA**
9                   **AT SAN DIEGO**

10

11  LUZ M. ZAPIEN, Individually And On Behalf    ) Case No.
    Of All Others Similarly Situated,            )
12                                               ) **'07CV 0385  DMS CAB**
                                                 )
13          Plaintiff,                           ) **CLASS ACTION COMPLAINT FOR**
                                                 ) **VIOLATION OF THE FEDERAL**
14  v.                                           ) **SECURITIES LAWS**
                                                 )
15                                               )
                                                 )
16  WASHINGTON MUTUAL, INC., WM TRUST )
    I, WM TRUST II, WM STRATEGIC ASSET )
17  MANAGEMENT PORTFOLIOS, LLC, WM )             **JURY TRIAL DEMANDED**
    FINANCIAL SERVICES, INC., WM ADVISORS, )
18  INC., WM FUNDS DISTRIBUTOR, INC., EDGE )
    ASSET MANAGEMENT, INC., PRINCIPAL )
19  FINANCIAL   GROUP,   INC.,   PRINCIPAL )
    INVESTORS FUND, INC., PRINCIPAL FUNDS )
20  DISTRIBUTOR, INC.,                           )
                                                 )
21          Defendants.                          )
                                                 )
22  _____   )

23

24

25

26

27

28

ZAPIEN v. WASHINGTON MUTUAL, INC. et. al.

1    Plaintiff Luz M. Zapien, by and through counsel, alleges the following based upon the

2  investigation of counsel, which included a review of United States Securities and Exchange

3  Commission ("SEC") filings, as well as other regulatory filings, reports, and advisories, press

4  releases, and media reports about Washington Mutual, Inc., and its related entities also named herein

5  as defendants. Plaintiff believes that substantial additional evidentiary support will exist for the

6  allegations set forth herein after a reasonable opportunity for discovery.

7                                          **INTRODUCTION**

8    1.    This is a federal class action that seeks to redress a scheme by WAMU (as defined

9  herein) to defraud investors. For years, WAMU had an insidious undisclosed "preferred list" and

10  similarly misleading disclosures regarding their revenue-sharing, kickback and other cash and non-

11  cash incentive programs designed to improperly incent its broker/dealers to push WAMU's

12  proprietary group of funds, the WM Group of Funds (the "Proprietary Funds") and thereby drive

13  sales, regardless of their appropriateness or superior alternatives for the individual retail investor.[1]

14  Instead of offering fair, honest, and unbiased advice to plaintiff and other investors, WAMU gave

15  predetermined and biased recommendations and pushed clients into its own funds, in order to

16  improperly maximize returns at the expense of its retail investors and enjoy millions of dollars in

17  kickbacks from other WAMU entities, with whom it had struck secret deals.  WAMU must be held

18  liable for its failure to disclose these kickback and incentive schemes and the inherent and

19  insurmountable conflicts of interest they created.

20    2.    Plaintiff brings this federal class action on behalf of all persons - other than

21  Defendants (as defined herein) and any person or entity related to or affiliated with any defendant -

22  who purchased or otherwise acquired shares, units or other like interests of any of the Proprietary

23  Funds, as listed below, between March 1, 2004 and March 1, 2005, inclusive, through WM Financial

24  Services, Inc. ("WMFS"), and were damaged thereby. Plaintiff is pursuing remedies for Defendants'

25  _____

26    [1]The Proprietary Funds, as described in this complaint are: Money Market, Tax-Exempt Money Market, U.S.
   Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth &
27  Income, West Coast Equity, Mid Cap Stock, California Money, Short Term Income, California Municipal, California
   Insured Intermediate Municipal, Growth, International Growth, Small Cap Growth, Strategic Growth, Conservative
28  Growth, Balanced, Conservative Balanced, and Flexible Income.

1   violations of the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of

2   1934 (the "Exchange Act").

3         3.      This action charges Defendants with engaging in an unlawful and deceitful course

4   of conduct designed to improperly financially advantage WAMU to the detriment of plaintiff and

5   other members of the Class.  As an integral part of WAMU's scheme to enhance revenue, WAMU

6   created layers of affiliate companies to skim fees and other charges from its retail investors with the

7   understanding that its retail brokerage arm, WMFS (and its sales force), would steer as many

8   unwitting clients as possible into these Proprietary Funds under the guise of unbiased investment

9   advice.

10         4.      WAMU hid the true nature of its "preferred list', revenue sharing, kickback and

11   other incentive schemes from plaintiff and the Class, knowing that if the truth were revealed, no

12   reasonable investor would invest in the Proprietary Funds based upon the advice of WMFS and its

13   sales team.

14         5.      "Preferred lists" and kickback programs similar to those described herein have

15   been the subject of considerable public outcry and have been condemned by the SEC and the courts

16   of the United States. WAMU has yet avoided liability for its participation in these insidious schemes

17   to defraud the investing public; however WAMU's escape from justice must end with this lawsuit.

18                                  **JURISDICTION AND VENUE**

19         6.      This Court has jurisdiction over the subject matter of this action pursuant to

20   section 22 of the Securities Act (15 U.S.C. § 77v); section 27 of the Exchange Act (15 U.S.C. §

21   78aa); and 28 U.S.C. §§ 1331, 1337.

22         7.      Venue is proper in this District pursuant to Section 27 of the Exchange Act (15

23   U.S.C. § 78aa) and 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged fraud, including

24   the preparation and dissemination of materially false and misleading information, occurred within

25   this District.

26         8.      In connection with the acts alleged herein, Defendants directly or indirectly, used

27   the means and instrumentalities of interstate commerce, including but not limited to the mails,

28   interstate telephone communications, and the facilities of the national securities markets.

ZAPIEN v. WASHINGTON MUTUAL, INC. et. al.

**PARTIES**

9.      Plaintiff Luz M. Zapien, is a resident of San Diego, California and purchased her shares, units or like interests of the Proprietary Funds (Growth & Income and West Coast Equity Funds) through WMFS as broker in San Diego. Plaintiff purchased her shares, units or like interest in the name of her mother, Maria Carmen Higareda.

10.      Defendant Washington Mutual, Inc. ("Washington Mutual") is a financial services company organized as a Washington corporation, that at all times material maintained its corporate headquarters at Seattle, Washington, and during the Class Period was the parent entity of defendants WM Trust I, WM Trust II, WM Strategic Asset Management Portfolios, LLC, WM Financial Services, Inc., WM Funds Distributor, Inc., WM Shareholder Services, Inc., and WM Advisors, Inc.

11.      Defendant WM Trust I is an open-end management investment company, organized as a Massachusetts business trust, and issued the following Proprietary Funds during the Class Period: Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth & Income, West Coast Equity, and Mid Cap Stock.

12.      Defendant WM Trust II is an open-end management investment company organized as a Massachusetts business trust, and issued the following Proprietary Funds during the Class Period: California Money, Short Term Income, California Municipal, California Insured Intermediate Municipal, Growth, International Growth, and Small Cap Growth.

13.      Defendant WM Strategic Asset Management Portfolios, LLC ("WM Portfolios") is an open-end management investment company, organized as a Massachusetts limited liability company, and issued the following Proprietary Funds during the Class Period: Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

14.      Defendant WM Financial Services, Inc. is a financial services company organized as a Washington corporation, that at all times material maintained its corporate headquarters at Seattle, Washington, and during the Class Period, acted as broker/dealer for WAMU and the Proprietary Funds.

ZAPIEN v. WASHINGTON MUTUAL, INC. et. al.

15. Defendant WM Advisors, Inc. ("WM Advisors") is a financial services company organized as a Washington corporation, and during the Class Period, acted as the advisor for WAMU and the Proprietary Funds.

16. Defendant WM Funds Distributor, Inc. ("WM Funds Distributor") is a financial services company organized as a Washington corporation, and during the Class Period, acted as the distributor for WAMU and the Proprietary Funds.

17. Defendant Edge Asset Management, Inc. ("Edge") is the successor in interest to some or all of the liabilities of WM Advisors complained of herein. Edge is a financial services company organized as a Washington corporation, that at all times material maintained its corporate headquarters at Seattle, Washington.

18. Defendant Principal Financial Group, Inc., ("Principal") is a financial services company organized as a Delaware corporation, that at all times material maintained its corporate headquarters at Des Moines, Iowa. As of January 2007, Principal acquired and became the parent company of the Proprietary Funds, now merged into Principal Investors Fund, Inc.

19. Defendant Principal Investors Fund, Inc. ("Principal Fund") is the successor in interest to the Proprietary Funds. Principal Funds is a management investment company organized as a Maryland corporation, that at all times material maintained its corporate headquarters at Des Moines, Iowa.

20. Defendant Principal Funds Distributor, Inc. ("Principal Funds Distributor") is the successor in interest to some or all of the liabilities of WM Funds Distributor complained of herein. Principal Funds Distributor is organized as a Washington corporation, with its principal place of business in Sacramento county California.

21. The defendants listed in paragraphs 11-16 above, are collectively referred to herein as "WAMU".

22. The defendants listed in paragraphs 10-20 above are collectively referred to as "Defendants".

ZAPIEN v. WASHINGTON MUTUAL, INC. et. al.

## SUBSTANTIVE ALLEGATIONS

23.     Of late, mutual fund issuers have been under increased scrutiny for violations of various securities laws. Linda Chatman Thomsen, Deputy Director of the SEC's Division of Enforcement, said recently that "undisclosed receipt of revenue sharing payments from a select group of mutual fund families create[s] a conflict of interest. When customers purchase mutual funds, they should be told about the *full nature and extent* of any conflict of interest that may affect the transaction." (*emphasis added*) SEC Press Release, Edward Jones to Pay $75 Million to Settle Revenue Sharing Charges, at http://www.sec.gov/news/press/2004-177.htm.

24.     During the Class Period, WAMU channeled secret cash and non-cash incentives to its retail brokerage arm, WMFS and its "Investment Professionals" (hereinafter referred to as "Salesmen"), for the purpose of driving sales of the Proprietary Funds to plaintiff, the Class, and other retail investors, to the exclusion of other investments that did not participate in WMFS' "preferred list", revenue sharing and kickback incentive schemes.

25.     The SEC has recognized that partial or non-disclosure of incentive arrangements for the sale of mutual funds create conflicts of interest and violate the anti-fraud provisions of the federal securities laws. *See* Confirmation Requirements and Point of Sale Disclosure Requirements for Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation Requirement Amendments, and Amendments to the Registration Form for Mutual Funds, 69 Fed.Reg. 6438, at 6440 (Feb. 10, 2004).

26.     While promoting the Proprietary Funds to plaintiff and the Class, WMFS represented them as being better than other funds available. WMFS clients were led to believe that WMFS Salesmen were recommending the Proprietary Funds based on objective analysis which indicated that such Funds would perform better than offerings from other fund companies.

27.     WMFS and its Salesmen's evaluation of the Proprietary Funds was neither objective nor performance-based. Instead, unbeknownst to plaintiff and the Class, WAMU blatantly abused its affiliation with WMFS and its Salesmen to gain access to WMFS events, office parties, training and educational meetings and conferences. The Proprietary Funds significantly benefitted: they were placed on a "preferred list" and thereby required less overhead expenditures, while

1  representatives from the Proprietary Funds, the WM Funds Distributor, and the WM Investment
2  Advisor, were given unrestricted access to branch offices and were invited to corporate training and
3  marketing events. Consequently, representatives from the Proprietary Funds were given increased
4  opportunities to interact with WMFS Salesmen to promote the sale of their mutual funds. The
5  relevant prospectuses failed to disclose the nature and extent of the WAMU entities' access and
6  influence over the sales practices of WMFS and its Salesmen.

7       28.     WAMU's illegal practices were particularly heinous given the nature of the clients
8  they defrauded. The typical mutual fund investor is an unmarried, middle-class individual in his or
9  her forties with a median household income of $55,000. Approximately 98% of mutual fund
10  shareholders say their investments constitute long-term savings and about 77% cite retirement
11  savings as their primary financial goal. David J. Carter, *Mutual Fund Board and Shareholder Action*,
12  3 VILL. J. & INV. MGM'T at 8.

13       29.     Plaintiff and each of the Class members purchased shares or other ownership units
14  in the Proprietary Funds pursuant to a registration statement and prospectus. The registration
15  statements and prospectuses pursuant to which plaintiff and the other Class members purchased their
16  shares or other ownership units in the Proprietary Funds are referred to collectively herein as the
17  "Prospectuses."

## Misleading Statements And Omissions

30.     In its March 1, 2004 Proprietary Funds Prospectuses, WAMU issued the following materially misleading statements:

WM Advisors <u>may</u> make payments, at its expense, to dealers or other financial intermediaries at an annual rate of up to 0.50% of the average daily net assets of shares of the Portfolios.[ ¶ ]

The Distributor, at its expense, <u>may</u> provide additional compensation to dealers. These payments <u>generally</u> represent a percentage of a qualifying dealer's sales and/or the value of shares of the Portfolios or Funds within a qualifying dealer's client accounts. Such payments <u>may</u> also include reimbursement for expenses associated with qualifying dealers' conferences, transaction (or "ticket") charges and general marketing expenses. ... [¶]

The Distributor <u>may</u>, <u>from time to time</u>, pay to dealers, in connection with retail sales or the distribution of shares of a Portfolio or Fund, material compensation in the form of promotional material or educational meetings. Salespersons, including representatives of WM Financial Services, Inc. (a subsidiary of Washington Mutual), and any other person entitled to receive any compensation for selling or servicing Portfolio or Fund shares <u>may</u> receive different compensation with respect to one particular class of shares over another, and <u>may</u> receive additional compensation or other incentives for selling Portfolio or Fund shares. (*emphasis added*).

31.     Prospectuses and their Statements of Additional Information ("SAI"s) are required to disclose <u>all</u> material facts in order to provide investors with information that will assist them in making an informed decision about whether to invest in a mutual fund. The law requires that such disclosures be in straightforward and easy to understand language such that it is readily comprehensible to the average investor.

32.     Each of the Proprietary Funds Prospectuses and their SAIs issued during the Class Period failed to adequately disclose to plaintiff and the Class material information about the "preferred lists" and the revenue sharing, and kickback incentive programs associated with them.

33.     The disclosures above lead a reasonable investor to believe that the kickback and incentive programs *may* or *may not* exist, when in truth, the investment adviser and/or distributor had *already* entered into pre-determined, specific, and negotiated arrangements for participation in the "preferred list", revenue sharing, kickbacks and incentives to WMFS and its Salesmen. WAMU had the duty to state *all* facts that were necessary to make its affirmative statements not misleading.

1    34.    Plaintiff and each member of the Class were entitled to and did receive one of the

2    appropriate Prospectuses, each of which failed to disclose the following material facts:

3    (a) WAMU had adopted a policy to incent WMFS and its Salesmen to aggressively push

4    in-house mutual funds on unsuspecting investors;

5    (b) pursuant to that policy, WMFS and its Salesmen in fact received valuable hidden cash

6    and non-cash compensation for foisting the Proprietary Funds on investors;

7    (c) the cash and non-cash compensation received by WMFS and its Salesmen created

8    incentives to push shares or other ownership units of the Proprietary Funds to the exclusion of other

9    investment alternatives;

10    (d) WMFS had placed the Proprietary Funds on a "preferred list" of funds;

11    (e) the commissions paid to Salesmen to push sales of the Proprietary Funds are higher than

12    commissions for comparable non-proprietary investment devices;

13    (f) the only investment advantage associated with Proprietary Funds relative to other

14    investments was almost always an advantage to WAMU, all at the expense of plaintiff and the Class;

15    (g) the cash and non-cash compensation described herein created insurmountable conflicts

16    of interest between WMFS, its Salesmen and plaintiff and the Class; and

17    (h) pursuant to the unlawful policies and practices described herein, defendants benefitted

18    financially at the expense of the WAMU investors.

19    35.    Plaintiff is certain that, upon opportunity for discovery, testimony from WAMU

20    Salesmen will reveal systematic inducements and rigid requirements that Salesmen neglect their

21    duties to clients, and instead sell proprietary products laden with excessive and improper fees,

22    commissions and other incentives.

23    **Scienter Allegations**

24    36.    As alleged herein, WAMU acted with scienter in that WAMU knew that the public

25    documents and statements issued or disseminated in the name of the Proprietary Funds were

26    materially false and misleading, knew that such statements and documents would be issued or

27    disseminated to the investing public, and knowingly and substantially participated or acquiesced in

28    the issuance or dissemination of such statements and documents as primary violations of the federal

1    securities laws. As set forth herein in detail, WAMU, by virtue of their possession of information

2    reflecting the true facts regarding the Proprietary Funds, their control over, and/or receipt and/or

3    modification of Proprietary Funds' materially misleading statements and/or their associations with

4    the Proprietary Funds which made them privy to confidential information concerning the Proprietary

5    Funds, culpably participated in the fraudulent course of conduct alleged herein.

6        37.    The fact that WAMU has the incentive programs in place indicates that WAMU

7    believes these programs drive sales. WAMU's directors knew about the already in place

8    arrangements but left in place watered-down disclosures. In light of this conscious strategy, the

9    failure to disclose the full extent of the "preferred list", revenue-sharing, kickback and incentive

10   programs raises a strong inference of scienter.

11       38.    WAMU knew that its policies and conduct regarding Proprietary Fund sales was

12   wrong and improper. It later disclosed its actions and policy only after the illegal activities and

13   scandals in the mutual fund industry were finally revealed to the public. WAMU took these actions

14   in a transparent and belated attempt to shield itself from liability.

15       39.    While the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78)

16   establishes a safe harbor to protect individuals and companies giving investment advice, the safe

17   harbor does not apply here. The safe harbor provision does not apply where defendants, as here,

18   knew at the time they were issuing statements that the statements contained false and misleading

19   information and thus lacked any reasonable basis for making them.

20                                    **Damages Allegations**

21       40.    A mutual fund company is very different from a traditional corporation, in that a

22   mutual fund is a mere shell, a pool of assets consisting mostly of portfolio securities that belongs to

23   the individual investors holding shares in the fund. The management of this asset pool is largely in

24   the hands of an investment advisor, an independent entity which generally organizes the fund and

25   provides it with investment advice, management services, office space and staff.

26       41.    Unlike a traditional corporation, if those in charge of a mutual fund engage in

27   wrongful activities negatively impacting the mutual fund, investors are directly impacted because

28   a mutual fund is nothing more than a collection of the investors' money. When a cost is imposed

---

CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1   on a traditional corporation, that cost impacts the net asset value ("NAV") of the corporation, but

2   it does not necessarily impact the market price of the corporation's shares. Thus, there is no direct

3   impact of those costs on the shareholder. In contrast, costs imposed on a mutual fund directly reduce

4   the price at which the fund's shares are bought and sold, and do directly and immediately impact

5   fund shareholders.

6       42.    In addition, mutual fund shares do not trade at a price set by the public market.

7   Rather, they are bought from the fund and sold back to the fund at NAV of the fund per share.

8   Opened ended mutual funds such as WAMU's Proprietary Funds are required to issue redeemable

9   securities, which are defined as "any security... under the terms of which the holder, upon its

10   presentation to the issuer... is entitled... to receive approximately his proportionate share of the

11   issuer's current net assets, or the cash equivalent thereof." 15 U.S.C. § 80a-2(a)(32). The value of

12   an investor's mutual fund is determined by subtracting a fund's liabilities from its assets to arrive

13   at the fund's NAV. The undisclosed fees and charges at issue here immediately reduced that

14   Proprietary Funds' NAV per share, decreasing the amount at which plaintiff and the Class are

15   entitled to redeem their shares.

16       43.    As a result of WAMU's conduct alleged above, plaintiff and the Class have

17   suffered damages. The damages suffered by plaintiff and the Class were a foreseeable consequence

18   of WAMU's misleading statements, omissions and misconduct, particularly in light of the fact that

19   net returns for the Proprietary Funds were diminished as a result of the undisclosed and improper

20   kickbacks and incentives WMFS and its Salesmen took therefrom. Plaintiff and the Class would not

21   have purchased the Proprietary Funds, and paid the related commissions and fees associated with

22   the Proprietary Funds, had they known of the illegal and improper practices WAMU used to direct

23   them into the Proprietary Funds as alleged above. By investing in the Proprietary Funds, plaintiff and

24   the Class received a return on their investment that was substantially less than the return on

25   investment they would have received had they invested the same dollars in a comparable fund or

26   other investment. Alternatively, investors could have invested fewer dollars in non-Proprietary

27   Funds to obtain a rate of return equal to or greater than that obtained at a higher price from the

28   comparable Proprietary Fund.

1    44.    Additionally, plaintiff and the Class were deceived into buying shares of the

2  Proprietary Funds at an artificially inflated rate.  Plaintiff and the Class accepted, as an integral

3  aspect of purchasing shares of the Proprietary Funds, that they would be required to pay fees and

4  expenses against their ownership interests in the Proprietary Funds, with the understanding that those

5  charges were legitimate outlays for services that would benefit the mutual fund and contribute

6  positively to its value. In truth, a significant portion of those expenses were not being used to provide

7  the services promised, but rather to increase the profits of WAMU and its affiliates by financing the

8  programs challenged in this lawsuit.  As a result, the values of the Proprietary Funds were less than

9  they appeared to plaintiff and the Class.  Plaintiff and the Class have also suffered damages through

10  commissions paid by them for their purchase of shares of the Proprietary Funds.  Had plaintiff and

11  the Class knew about the practices alleged above, they would not have paid such commissions.

12  Plaintiff and the Class' damages as a result of the commissions, fees and other charges they paid for

13  shares of the Proprietary Funds were a foreseeable consequence of Defendants' false and misleading

14  statements and omissions.

15    45.    Although the various fees charged to mutual fund investors may seem small for

16  each individual investor, mutual funds are long-term investment vehicles where compounded

17  expenses have a significant impact on returns. Seemingly small, yet compounding, fees create drastic

18  erosion on returns over time. Because the majority of investors in mutual fund assets are working,

19  middle-class, and typically financially unsophisticated, the mutual fund asset market requires crystal-

20  clear disclosure understandable by the layman.

21                         **CLASS ALLEGATIONS**

22    46.    Plaintiff brings this action as a class-action pursuant to Federal Rules of Civil

23  Procedure 23 on behalf of a Class consisting of all persons or entities that purchased or otherwise

24  acquired shares, units or like interests in any of the Proprietary Funds, between March 1, 2004 and

25  March 1, 2005, inclusive, through WMFS acting as broker, and who were damaged thereby.

26  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other

27  entity related to or affiliated with any defendant.

28

47.     The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Defendants, and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48.     Plaintiffs claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct complained of herein in violation of federal law. Plaintiff does not have interests adverse to the Class.

49.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

50.     Common questions of law and fact exist as to all members of the Class and predominate over any questions wholly affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether statements made by Defendants to the investing public during the Class period misstated, omitted or concealed material facts;

(b)     whether the federal securities laws were violated by Defendants' acts as alleged herein; and

(c)     to what extent the members of the Class have sustained damages and the proper measure of damages.

51.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

1   52.   Defendants have acted on grounds generally applicable to the entire Class with
2   respect to the matters complained of herein, thereby making appropriate the relief sought herein with
3   respect to the Class as a whole.

4   ## COUNT I

5   ### Against WAMU For Violations Of Section 11 Of The Securities Act

6   53.   Plaintiff repeats and re-alleges each and every allegation contained above as if
7   fully set forth herein, except that for purposes of this claim, plaintiff expressly excludes and
8   disclaims any allegation that could be construed as alleging fraud or intentional or reckless
9   misconduct.

10   54.   This claim is brought pursuant to Section 11 of the Securities Act,15 U.S.C. § 77k,
11   against WAMU on behalf of the Class.

12   55.   WAMU were the registrant, or the successor in interest to the registrant, for one
13   or more of their respective Proprietary Fund shares sold to plaintiff and the Class.  WAMU issued,
14   caused to be issued and participated in the issuance of the materially false and misleading written
15   statements and/or omissions of material fact that were contained in the respective Prospectuses and
16   is statutorily liable under Section 11.

17   56.   Prior to purchasing ownership units of the Proprietary Funds plaintiff was provided
18   the appropriate Prospectuses and, similarly, prior to purchasing the ownership units of each of the
19   other Proprietary Funds, all Class members likewise received the appropriate Prospectuses. Plaintiff
20   and other Class members purchased shares of the Proprietary Funds traceable to the false and
21   misleading Prospectuses.

22   57.   As set forth above, the statements contained in the Prospectuses were materially
23   false and misleading for a number of reasons, including that they failed to disclose, and actively
24   concealed, that it was the practice of WAMU to reward WMFS and its Salesman for selling in house
25   funds, while discouraging selling products offered by competitors not on the "preferred list" or
26   otherwise participating in the revenue-sharing, kickback and incentive programs described herein.
27   The Prospectuses failed to disclose and misrepresented material and adverse facts as described in
28   paragraph 34 of this complaint.

58.     Plaintiff and the Class have sustained damages as a result of WAMU's violations.

59.     At the time they purchased the Proprietary Funds shares traceable to the defective Prospectuses, plaintiff and the Class were without knowledge of the facts concerning the false and misleading statements or omissions alleged herein and could not reasonably have possessed such knowledge.

60.     This claim was brought within the applicable statute of limitations.

## COUNT II

**Against WAMU For Violations of Section 12(a)(2) Of The Securities Act**

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

62.     This claim is brought pursuant to Section 12(a)(2) of the Securities Act, 15 U.S.C. § 77l(a)(2), against WAMU for their failure to disclose sales practices that created insurmountable conflicts of interest.

63.     WAMU were the seller, or the successor in interest to the seller, within the meaning of the Securities Act, for one or more of their respective fund shares sold to Class members because they either: (a) transfer title to shares of the Proprietary Funds to members of the Class; (b) transfer title to shares of the Proprietary Funds to the Proprietary Funds distributors that in turn sold shares of the Proprietary Funds as agent for WAMU; and/or (c) solicited the purchase of shares in the Proprietary Funds by members of the Class, motivated in part by a desire to serve the financial interests of WAMU to the detriment of plaintiff and the Class.

64.     During WAMU's sale of the Proprietary Funds to plaintiff and the Class, WAMU failed to disclose the existence of the "preferred list", the revenue sharing, kickbacks and other incentives alleged herein that WMFS and its Salesman received in exchange for pushing WMFS clients into the Proprietary Funds. These incentives created an insurmountable conflict of interest that was never disclosed to investors.

65.     WAMU also caused to be issued to members of the Class the Prospectuses that failed to disclose that fees, commissions, and other charges from the purchase and maintenance of the Proprietary Funds were used to pay WMFS and its Salesman for directing plaintiff and the Class into the Proprietary Funds, and the existence of the conflicts of interest described herein for WMFS and its Salesmen.

66.     As set forth above, when they became effective, the Proprietary Funds' Prospectuses were misleading as the omitted or insufficiently disclosed the material facts alleged in paragraph 34 of this complaint.

67.     Plaintiff and the other members of the Class have sustained damages as a result of WAMU's violations.

68.     At the time they purchased the Proprietary Fund shares traceable to the defective Prospectuses, plaintiff and the Class were without knowledge of the facts concerning the material misleading statements and omissions alleged herein and could not reasonably have possessed such knowledge.

69.     This claim was brought within the applicable statute of limitations.

## COUNT III

### Against Washington Mutual for Violation of Section 15 of the Securities Act

70.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, plaintiff expressly excludes and disclaims any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

71.     This claim is brought pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o, against Washington Mutual as a control person of WAMU. It is appropriate to treat these defendants as a group for pleading purposes and presume that the false, misleading, and incomplete information complained about herein are the collective actions of Washington Mutual and WAMU.

72.     WAMU violated Sections 11 and 12(a) of the Securities Act by their acts and omissions as alleged in this complaint. By virtue of its position as a controlling person, Washington Mutual is liable pursuant to Section 15 of the Securities Act, 15 U.S.C. § 77o.

73.     Washington Mutual was a "control person" of WAMU within the meaning of Section 15 of the Securities Act, by virtue of its position of operational control and/or ownership. At the time that WAMU sold one or more shares of the Proprietary Funds to plaintiff and the Class – by virtue of its position of control and authority over WAMU – Washington Mutual directly and indirectly, had the power, authority, influence and control, and exercised same, over the decision making and actions of WAMU to engage in the wrongful conduct complained of herein. Washington Mutual had the ability to prevent the issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.

74.     In particular, Washington Mutual had direct supervisory involvement in the operations of WAMU, and is presumed to have had the power to control or influence the particular acts, misleading statements, and omissions giving rise to violations of the Securities Act as alleged herein, and to have exercised same.

75.     As a direct and proximate result of Washington Mutual's wrongful conduct, plaintiff and the Class suffered damages in connection with their purchases of the Proprietary Funds during the Class Period.

## COUNT IV

**Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder**

**Against WAMU**

76.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities Act.

77.     During the Class Period, WAMU carried out a plan, scheme and course of conduct which was intended to, and throughout the Class Period did, deceive the investing public, including plaintiff and the Class as alleged herein, and caused plaintiff and the Class to purchase Proprietary Funds at distorted prices and to otherwise suffer damages. In furtherance of this unlawful scheme, plan and course of conduct, WAMU took the actions set forth herein.

ZAPIEN v. WASHINGTON MUTUAL, INC. *et. al.*

1    78.    WAMU (i) employed devices, schemes, and artifices to defraud; (ii) made untrue

2    or misleading statements of material fact and/or omitted to state material facts necessary to make the

3    statements not misleading; and (iii) engaged in acts, practices, and a course of conduct which

4    operated as a fraud and deceit upon purchasers of the Proprietary Funds, including plaintiff and the

5    Class, in an effort to enrich themselves through undisclosed manipulative tactics by which they

6    wrongly distorted the pricing of their securities in violation of Section 10(b) of the Exchange Act

7    and Rule 10b-5. The WAMU entities are sued as primary participants of the wrongful and illegal

8    conduct and scheme charged herein.

9    79.    The WAMU entities, individually and in concert, directly and indirectly, by the

10   use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated

11   in a continuous course of conduct to conceal the adverse material information about the improper

12   "preferred list", revenue sharing, kickbacks and other incentives and the inherent conflicts of interest

13   alleged herein.

14   80.    WAMU employed devices and artifices to defraud and engaged in a course of

15   conduct and scheme as alleged herein to unlawfully manipulate and profit from increased sales

16   and/or commissions, fees or other charges paid to them as a result of its undisclosed "preferred list",

17   kickback and incentive arrangements described above and thereby engaged in transactions, practices

18   and a course of conduct which operated as a fraud and deceit upon plaintiff and the Class.

19   81.    WAMU had actual knowledge of the misrepresentations and omissions of material

20   facts set forth above, or acted with reckless disregard for the truth in that they failed to ascertain and

21   to disclose such facts, even though the facts were available to them.  WAMU's material misleading

22   statements and omissions were done knowingly or recklessly and for the purpose and effect of

23   concealing the truth.

24   82.    As a result of dissemination of the materially false and misleading information and

25   failure to disclose material facts, as set forth in paragraph 34 above, the prices for the Proprietary

26   Funds were distorted during the Class Period such that they did not reflect the risks and costs of the

27   continuing course of conduct alleged above. In ignorance of the fact that prices of the shares were

28   distorted, and relying directly or indirectly on the false and misleading statements made by WAMU,

or upon the integrity of WAMU, and/or on the absence of material adverse information that was known to or recklessly disregarded by WAMU but not disclosed in public statements by WAMU during the Class Period, plaintiff and the Class acquired their shares or interests in the Proprietary Funds during the Class Period at distorted prices and were damaged thereby.

83.   By virtue of the foregoing, WAMU have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

84.   As a direct and proximate result of WAMU's wrongful conduct, plaintiff and the Class suffered damages in connection with their respective purchases and sales of the Proprietary Funds shares during the Class Period.

85.   This claim was brought within the applicable statute of limitations.

## COUNT V

### Violation Of Section 10(b) Of The Exchange Act And Rule 10b-10 Promulgated Thereunder Against WAMU

86.   Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities Act.

87.   During the Class Period, WMFS and its Salesmen effected transactions in the Proprietary Funds for or with the account of plaintiff and the Class, and/or induced plaintiff and the Class to purchase the Proprietary Funds.

88.   At or before completion of Class members' purchases of the Proprietary Funds, WMFS failed to disclose the source and amount of renumeration WMFS and its Salesmen received from WAMU in connection with Class members' purchases of the Proprietary Funds, as required by Rule 10b-10, promulgated under Section 10(b) of the Exchange Act.

89.   WAMU's payment of such renumeration created insurmountable and undisclosed conflicts of interest. Class members were thus ignorant of the source and amount of renumeration WMFS and its Salesman received from WAMU and of the resulting conflicts of interest therein. Had plaintiff and the Class known of the source and amount of such renumeration and the resulting conflicts of interest, they would not have held, purchased or otherwise acquired shares of the

ZAPIEN  v. WASHINGTON MUTUAL, INC. *et. al.*

1 │ Proprietary Funds, would not have paid any commissions or fees paid as a result of the acquisitions

2 │ of the Proprietary Funds, and would not have paid the fees or costs associated with ownership of the

3 │ Proprietary Funds, or if they had, they would not have held, purchased or otherwise acquired them

4 │ at the artificial prices paid.

5 │      90.    As a direct and proximate result of Defendants' violations of Rule 10b-10, plaintiff

6 │ and the Class suffered damages in connection with their respective purchases and sales of the

7 │ Proprietary Funds shares during the Class Period.

8 │      91.    At the time they purchased or held the Proprietary Funds shares traceable to the

9 │ defective disclosures, Class members were without knowledge of the facts concerning the material

10 │ omissions alleged herein and could not reasonably have possessed such knowledge.

11 │      92.    This claim was brought with them the applicable statute of limitations.

12 │ **COUNT IV**

13 │ **Against Washington Mutual for Violations of Section 20(a) of the Exchange Act**

14 │      93.    Plaintiff repeats and re-alleges each and every allegation contained above as if

15 │ fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities

16 │ Act.

17 │      94.    This claim is brought pursuant to Section 20 of the Exchange Act, 15 U.S.C. § 78t,

18 │ against Washington Mutual as a control person of WAMU. It is appropriate to treat these defendants

19 │ as a group for pleading purposes and presume that the false, misleading, and incomplete information

20 │ complained about herein are the collective actions of Washington Mutual and WAMU.

21 │      95.    WAMU violated Section 10(b) and Rules 10b-5 and 10b-10 by their acts, material

22 │ misleading statements and omissions as alleged in this complaint.  By virtue of its position as a

23 │ controlling person, Washington Mutual is liable pursuant to Section 20(a) of the Exchange Act.

24 │

25 │

26 │

27 │

28 │

96.     Washington Mutual was a "control person" of WAMU within the meaning of Section 20 of the Exchange Act, by virtue of its position of operational control and/or ownership. At the time that WAMU sold one or more shares of the Proprietary Funds to plaintiff and the Class – by virtue of their positions of control and authority over WAMU – Washington Mutual, directly and indirectly, had the power, authority, influence and control, and exercised same, over the decision making and actions of WAMU to engage in the wrongful conduct complained of herein. Washington Mutual had the ability to prevent the issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.

97.     In particular, Washington Mutual had direct supervisory involvement in the operations of WAMU, and is presumed to have had the power to control or influence the particular acts, misleading statements, and omissions giving rise to violations of the Securities Act as alleged herein, and to have exercised same.

98.     As a direct and proximate result of Washington Mutual's wrongful conduct, plaintiff and the Class suffered damages in connection with their purchases and sales of the Proprietary Funds during the Class Period.

## JURY TRIAL DEMAND

99.     Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, plaintiff demands a trial by jury of all of the claims asserted in this Complaint so triable.

## PRAYER

WHEREFORE, plaintiff and the Class pray for relief and judgement as follows:

1.     Judgment declaring that this action is properly maintained as a class action and appointing plaintiff as Lead Plaintiff and their counsel as Lead Counsel for the Class and certifying them as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

2.     Awarding compensatory damages in favor of plaintiff and the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

ZAPIEN v. WASHINGTON MUTUAL, INC. et. al.

1         3.      Awarding plaintiff and the Class recesion of their contracts with the Defendants,

2    including recovery of all fees which would otherwise apply and recovery of all fees paid to the

3    Defendants pursuant to such agreements;

4         4.      Awarding plaintiff and the Class their reasonable costs and expenses incurred in

5    this action, including counsel fees and expert fees; and

6         5.      Such other and further relief as this Court may deem just and proper.

7

8

9    DATED:   2/28/07                              By: _____

10

11                                                 **FINKELSTEIN & KRINSK LLP**
                                                   JEFFREY R. KRINSK

12                                                 MARK L. KNUTSON
                                                   WILLIAM R. RESTIS

13                                                 501 West Broadway, Suite 1250
                                                   San Diego, CA 92101-3593

14                                                 Tel:  (619) 238-1333
                                                   Fax: (619) 238-5425

15                                                 Email: jrk@classactionlaw.com

16                                                 Attorneys for Plaintiff
                                                   Luz M. Zapien

17

18

19

20

21

22

23

24

25

26

27

28

JS44
(Rev. 07/89)

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILED**

FEB 28

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                           DEPUTY

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Zapien, Luz, M. | Washington Mutual, Inc., et al. |

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** San Diego
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Seattle, Washington
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Jeffrey R. Krinsk, Esq.
Finkelstein & Krinsk, LLP
501 W. Broadway, Ste. 1250
San Diego, CA 92101 (619) 238-1333

**ATTORNEYS (IF KNOWN)**

'07 CV 0385 - DMS CAB

## II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)

☐ 1 U.S. Government Plaintiff    ☒ 3 Federal Question
                                   (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant   ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX
(For Diversity Cases Only)          FOR PLAINTIFF AND ONE BOX FOR DEFENDANT

|  | PT | DEF |  | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

## IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY). 15 USC Sections 77k, 77l, 77o, 77t, section 10b of the Securities Exchange Act of 1934 and Rules 10b-5 and 10-b10, 4 misleading statements and ommissions

## V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury- Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| | | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| ☐ 153 Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prisoner Conditions | | | |

## VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removal from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:** ☒ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

**DEMAND $**

Check YES only if demanded in complaint:
**JURY DEMAND** ☒ YES  ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**   JUDGE ___   Docket Number ___

DATE 2/28/07    SIGNATURE OF ATTORNEY OF RECORD

::ODMA\PCDOCS\WORDPERFECT\22816\1 January 24, 2000 (3:10pm)

135527 $350 Sec 3/1/07

```
          UNITED STATES
          DISTRICT COURT
       Southern District of California
            San Diego Division

          # 135527 - A3
          March 1, 2007


   Code       Case #      Qty      Amount

CV086900 3-07-CV-0385               60.00 CH
   Judge    - SABRAW
CV086400                           100.00 CH
CV510000                           190.00 CH


   Total->                         350.00



FROM: CIVIL FILING
      ZAPIEN V. WASHINGTON MUTUAL
      ET AL
      BCD 7806
```