MORGAN, LEWIS & BOCKIUS LLP
MICHAEL J. LAWSON, State Bar No. 66547
JOSEPH E. FLOREN, State Bar No. 168292
LISA A. FREITAS, State Bar No. 227109
SHEILA A. JAMBEKAR, State Bar No. 239101
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
Email:  michael.lawson@morganlewis.com
        jfloren@morganlewis.com
        lfreitas@morganlewis.com
        sjambekar@morganlewis.com

Attorneys for Defendants Washington Mutual, Inc.
and WM Financial Services, Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ M. ZAPIEN, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WASHINGTON MUTUAL, INC., WM TRUST I, WM TRUST II, WM STRATEGIC ASSET MANAGEMENT PORTFOLIOS LLC.,  WM FINANCIAL SERVICES, INC., WM ADVISORS, INC., WM FUNDS DISTRIBUTOR, INC., EDGE ASSET MANAGEMENT, INC., PRINCIPAL FINANCIAL GROUP, INC., PRINCIPAL INVESTORS FUND, INC., PRINCIPAL FUNDS DISTRIBUTOR, INC.,<br><br>Defendants. | Case No. 07-CV-0385-DMS-CAB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS BY DEFENDANTS WASHINGTON MUTUAL, INC. AND WM FINANCIAL SERVICES, INC.**<br><br>Date:          September 21, 2007<br>Time:         1:30 p.m.<br>Place:        Courtroom 10, 2nd Floor<br>Judge:        Hon. Dana M. Sabraw |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

**TABLE OF CONTENTS**                                                                 Page

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ...................................................1

II.  STATEMENT OF FACTS .............................................................................2

    A.    Parties ...............................................................................................2

    B.    Allegations of the Complaint...............................................................3

III. LEGAL STANDARD ON MOTION TO DISMISS ...................................5

IV.  PLAINTIFF LACKS STANDING TO BRING THIS ACTION ...................6

    A.    Plaintiff Lacks Article III Standing..........................................................6

        1.    Plaintiff Is Not the Real Party in Interest and Has No Standing................7

        2.    Plaintiff's Defective Reform Act Certification Confirms Her Lack of Standing Under Both Article III and the Securities Laws. ...8

    B.    Plaintiff Lacks Statutory Standing to Assert Claims Concerning Funds She Did Not Purchase ...............................................................9

V.   PLAINTIFF'S CLAIMS ARE TIME-BARRED ...................................10

    A.    The Securities Act Claims Are Time-Barred ...................................10

    B.    The Exchange Act Claims Are Time-Barred. ...................................13

VI.  PLAINTIFF'S FRAUD CLAIMS FAIL ON THE MERITS ...................14

    A.    There Is No Duty to Disclose the Allegedly Omitted Information.....................15

        1.    No Law or Rules Required the Allegedly Omitted Disclosures ...............15

        2.    WMFS Complied with Rule 10b-10...........................................16

    B.    Plaintiff Has Failed to Allege a Material Misstatement or Omission ...................17

        1.    The Funds Disclosed the Purportedly "Secret" Incentive Payments ........18

        2.    The 2004 Prospectus Is Not Misleading...................................20

        3.    Plaintiff Fails to Plead that Any Alleged Omission Was Material ..........23

    C.    Plaintiff Has Failed to Plead Facts Creating a Strong Inference of Scienter .......24

        1.    Plaintiff Fails to Plead Facts Supporting a Strong Inference of Intentional or Deliberately Reckless Misstatements by Defendants.........25

        2.    Plaintiff's Motive Allegations Do Not Create a Strong Inference of Scienter ...........................................................27

        3.    Plaintiff's Group Allegations of Scienter Are Insufficient.......................27

VII. PLAINTIFF HAS FAILED TO PLEAD DAMAGES OR LOSS CAUSATION ...........28

    A.    Plaintiff Has Not Alleged Damages to Support the Securities Act Claims .........28

    B.    Plaintiff Has Not Alleged Loss Causation on the Exchange Act Claims ...........29

VIII. PLAINTIFF'S CLAIMS AGAINST WMI MUST FAIL...........................................31

    A.    Plaintiff Has Failed to Plead Facts Establishing Grounds for Primary Liability ...........................................................31

    B.    Plaintiff's "Controlling Person" Claims Must Fail...............................................33

IX.  CONCLUSION ...................................................................34

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Wright*,
468 U.S. 737 (1984) ........................................................................................7

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ......................................................................................23

*Bell Atlantic Corp. v. Twombly*,
127 S. Ct. 1955 (2007) ....................................................................................6

*Benzon v. Morgan Stanley Distributors, Inc.*,
420 F.3d 598 (6th Cir. 2005) ........................ 14, 16, 17, 19, 20, 21, 22, 26

*Berry v. Valence Technology, Inc.*,
175 F.3d 699 (9th Cir. 1999) ........................................... 11, 12, 14, 19

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ........................................................... 9, 10, 30

*Brody v. Transitional Hospitals Corp.*,
280 F.3d 997 (9th Cir. 2002) ........................................................20

*Castillo v. Dean Witter Discover & Co.*,
1998 WL 342050 (S.D.N.Y. June 25, 1998) ...................20, 21, 23, 27, 30

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994) ......................................................................31

*De La Cruz v. Tormey*
582 F.2d 45 (9th Cir. 1978), *cert. denied,* 441 U.S. 965 (1979) ...................6

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336 (2005) ......................................................................29

*Durham v. Kelly*,
810 F.2d 1500 (9th Cir. 1987) ......................................................33

*Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180 (S.D.N.Y. 1996)................26

*Goldberger v. Bear, Stearns & Co., Inc.*,
Fed. Sec. L. Rep. (CCH) ¶ 91,287 (S.D.N.Y. Dec. 28, 2000)....................9

*Gommper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002) ......................................................25

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) ................................................8

*Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990)................24, 33

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7560974.9                              ii                    WM DEFENDANTS' MEMO. SUPPORTING
                                                                 MOTION TO DISMISS (07-CV-0385-DMS-CAB)

**TABLE OF AUTHORITIES**
(continued)

Page

*Howard v. Everex Sys., Inc.*,
  228 F.3d 1057 (9th Cir. 2000) ...................................................................32

*In re AIG Advisor Group Sec. Litig.*,
  2007 WL 1213395 ................................................. 9, 10, 19, 20, 21, 23, 24, 26

*In re Bank of Boston Corp. Sec. Litig.*,
  762 F. Supp. 1525 (D. Mass. 1991) ..............................................................6

*In re Cabletron Systems, Inc.*,
  311 F.3d 11 (1st Cir. 2002)........................................................................26

*In re Calpine Corp. Sec. Litig.*,
  288 F. Supp. 2d 1054 (N.D. Cal. 2003)........................................................33

*In re Copper Mountain Sec. Litig.*,
  311 F. Supp. 2d 857 (N.D. Cal. 2004)..........................................................33

*In re Eaton Vance Corp. Sec. Litig.*,
  219 F.R.D. 38 (D. Mass. 2003)................................................................8, 9

*In re Keyspan Corp. Sec. Litig.*,
  383 F. Supp. 2d 358 (S.D.N.Y. 2003)..........................................................18

*In re Lernout & Hauspie Sec. Litig.*,
  230 F. Supp. 2d 152 (D. Mass. 2002) ..........................................................28

*In re Ligand Pharm., Inc. Sec. Litig.*, No. 04CV1620DMS(LSP),
  2005 WL 2461151 (S.D. Cal. Sept. 27, 2005)................................................28

*In re Morgan Stanley & Van Kampen Mutual Fund Sec. Litig.*,
  2006 WL 1008138 (S.D.N.Y. Apr. 18, 2006) .................... 15, 16, 17, 20, 23, 26, 30

*In re Mutual Funds Inv. Litig.*,
  384 F. Supp. 2d 845 (D. Md. 2005) .........................................................28, 29

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ..............................................................2, 24, 27

*In re Silicon Storage Tech. Sec. Litig.*,
  No. C 05-0295 PJH, 2006 WL 648683 (N.D. Cal. March 10, 2006) ......................27

*In re Stac Elec. Sec. Litig.*,
  89 F.3d at 1399 (9th Cir. 1996) .......................................................11, 17, 19

*In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996) ......................................................................34

*In re Charter Communications, Inc., Sec. Litig.*,
  443 F.3d 987 (8th Cir. 2006) ....................................................................31

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

*Kauffman v. Dreyfus Fund, Inc.*,
   434 F.2d 727 (3d Cir. 1970) ........................................................................9

*La Mar v. H&B Novelty & Loan Co.*,
   498 F.2d 461 (9th Cir. 1973) ......................................................................6

*Lewis v. Casey*,
   518 U.S. 343 (1996) ....................................................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) .................................................................................6, 7

*Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
   434 F. Supp. 2d 233 (S.D.N.Y. 2006) ..................................... 14, 17, 20, 28

*MGIC Indem. Corp. v. Weisman*
   803 F.2d 500 (9th Cir. 1986) ......................................................................6

*Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*,
   96 F. 3d 1151 (9th Cir. 1996) ...............................................................32, 33

*Press v. Quick & Reilly, Inc.*,
   218 F.3d 121 (2d Cir. 2000) .......................................................................16

*Raines v. Bird*,
   521 U.S. 811 (1997) ....................................................................................7

*Siemers v. Wells Fargo & Co.*,
   2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ...........................................22

*Simpson v. AOL Time Warner*,
   452 F.3d 1040 (9th Cir. 2006) .........................................................28, 31, 32

*Steckman v. Hart Brewing, Inc.*,
   143 F.3d 1293 (9th Cir. 1998) ....................................................................18

*Sterlin v. Biomune Sys.*,
   154 F.3d 1191 ............................................................................................11

*Teachers' Retirement Sys. v. Hunter*,
   477 F.3d 162 (4th Cir. 2007) ......................................................................26

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   — S. Ct. —, 2007 WL 1883208, *3 (U.S. June 21, 2007).....................14, 25

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976) ...................................................................................23

*United States v. Ritchie*
   342 F.3d 903 (9th Cir. 2003) ......................................................................6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7560974.9

iv

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

**TABLE OF AUTHORITIES**
(continued)

Page

*Vervaecke v Chiles, Heider & Co.,*
   578 F.2d 713 (8th Cir. 1978) ...........................................................................9

*Warth v. Seldin,*
   422 U.S. 490 (1975) ......................................................................................6

*Whirlpool Fin. Corp. v. GN Holdings, Inc.,*
   67 F.3d 605 (7th Cir. 1995) ..........................................................................19

*White v. Melton,*
   757 F. Supp. 267 (S.D.N.Y. 1991) ...............................................................18

**Constitutions and Statutes**

U.S. Const., Art. III ..................................................................................... 6, 7, 8

Securities Act § 10, 15 U.S.C. § 77j(a)(3) ...................................................19

Securities Act § 11, 15 U.S.C. § 77k ........................................... 5, 11, 28, 31

Securities Act § 12(a), 15 U.S.C. § 77*l*(a)..........................5, 9, 10, 11, 28, 31

Securities Act § 13, 15 U.S.C. § 77m .............................................................11

Securities Act § 15, 15 U.S.C. § 77*o* ...............................................................5

Private Securities Litigation Reform Act, 15 U.S.C. § 77z-1(a)(2)(A)(iv)....................8

Exchange Act § 10(b), 15 U.S.C. § 78j(b) .......................................... 5, 16, 31

Exchange Act § 20(a) 15 U.S.C. § 78t(a) ........................................................5

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(2)(A)(iv)..............8, 25

**Rules**

Rule 10b-5, 17 C.F.R. § 240.10b-5 ...........................................................5, 32

Rule 10b-10, 17 C.F.R. § 240.10b-10 .......................................................5, 16

17 C.F.R. § 270.8b-16 ...................................................................................20

Fed. R. Civ. Proc. 9(b) ..................................................................................17

Fed. R. Civ. Proc. 12(b)(1) .............................................................................6

Fed. R. Civ. Proc. 12(b)(6) .............................................................................5

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7560974.9        v        WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

**TABLE OF AUTHORITIES**
**(continued)**

Page

**Other Authorities**

*Confirmation Requirements and Point of Sale Disclosure Requirements for Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation Requirement Amendments, and Amendments to Registration From for Mutual Funds*, SEC Release Nos. 33-8358, 34-49148, IC-26341, 59 Fed. Reg. 6438 (Feb. 10, 2004)..............................................17

*Registration Form Used by Open-Ended Management Investment Cos.*, SEC Release Nos. 33-7512, 34-39748, 63 Fed. Reg. 13916 (March 23, 1998) ..........................................................15

Paul Roye, *Testimony Concerning the Mutual Funds Integrity and Fee Transparency Act of 2003* (June 18, 2003), *available at* www.sec.gov/news/testimony/061803tspfr.htm)...........15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
NEW YORK

1-SF/7560974.9

vi

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff's Class Action Complaint for Violation of the Federal Securities Laws ("Complaint") boils down to what the Sixth Circuit Court of Appeals – the only federal appellate court that has addressed similar claims – dismissed as a "semantic quibble." Plaintiff claims there was an insidious "scheme to defraud" based on the fact that certain mutual funds in the WM Group of Funds (the "Funds" or "WM Funds") disclosed in their Prospectus that the investment advisor and distributor of the Funds "may" make certain payments to dealers selling the Funds when undescribed "arrangements" for such payments were allegedly already in place as to the Fund shares sold through defendant WM Financial Services, Inc. ("WMFS"). This is not the stuff of which a securities fraud claim is made, and Plaintiff's claims disintegrate on multiple grounds.

Plaintiff's fraud claims fail on preliminary procedural grounds even before they are subjected to the scrutiny required by federal law and Rule 9(b). In this case, Plaintiff is not the real party in interest because the purported purchases of the Funds were made not by Plaintiff, but "in the name of her mother." Plaintiff also lacks standing to assert her purported claims because she has not alleged, and cannot allege, that she purchased the Funds during the purported class period (March 1, 2004 to March 1, 2005). Instead, she alleges that the purchases were made "in and after 2000," and that they concerned only two of the twenty-four Funds referred to in the Complaint. Beyond this, the Complaint is barred in its entirety by the relevant one- and two-year statutes of limitations, because the Funds publicly disclosed the nature and extent of the purportedly "secret" fee payments among the defendants in prospectuses filed with the SEC on December 30, 2004 and February 28, 2005 – over two years before Plaintiff filed this action.

Plaintiff's scanty allegations are also defective on the merits. There can be no fraud claim without a material misstatement or omission by the defendant, but here Plaintiff identifies no such misstatement or omission and utterly fails to plead specific facts establishing that the challenged statements are false or misleading, as the law requires. Moreover, the Funds *actually disclosed* in their SEC filings the material terms of the fee-sharing arrangements that were in place between certain defendants during the class period, including the fact that such arrangements could be

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

1

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1  changed or terminated on short notice (making the word "may" particularly appropriate to

2  describe the arrangements in the Funds' prospectus, and sharply distinguishing this case from the

3  *Wells Fargo* action in San Francisco that Plaintiff seeks to mimic). Plaintiff also fails to plead

4  specific facts creating the required "*strong inference*" that the defendants acted with intent to

5  defraud. Indeed, under the circumstances alleged here, Plaintiff cannot possibly plead such facts.

6        Finally, Plaintiff's claims fail as a matter of law for the independent reason that Plaintiff

7  has not alleged damages caused by the purported fraud. With regard to her claims under the

8  Securities Act of 1933 (the "Securities Act"), Plaintiff has not pled – and cannot plead – that she

9  suffered an actual loss in Funds purchased during the class period, because the value of the Funds

10 at issue in this case has increased since that time. As a result, Plaintiff has no claim under the

11 Securities Act. As for her claims under the Securities Exchange Act of 1934 ("Exchange Act"),

12 Plaintiff cannot allege loss causation – that the purported fraud actually caused any harm, as

13 opposed to merely inducing purchase transactions. This conclusion is inevitable because the

14 purportedly "secret" arrangements between the defendants had *no impact at all* upon the value of

15 the Funds, which was determined *solely* by reference to the value of the investments purchased by

16 the Funds and the fees clearly disclosed in the Funds' prospectus. Indeed, the Funds' prospectus

17 clearly and accurately disclosed *every penny* that was charged against the Funds' assets. Rather,

18 Plaintiff's "semantic quibble" in this case concerns the degree of clarity with which defendants

19 disclosed that they were sharing part of these fully disclosed fees with WMFS – a matter that has

20 no effect upon the value of the Funds and, thus, cannot possibly form the basis for a fraud claim

21 under the Exchange Act.

22       For these reasons, the Complaint should be dismissed in its entirety, with prejudice.

23 **II.  STATEMENT OF FACTS**[1]

24     **A.  Parties**

25       During the class period, Defendants WM Trust I, WM Trust II, and WM Strategic Asset

26 Management Portfolios, LLC (collectively, the "WM Trusts") were registered with the U.S.

27

28

[1]  This motion is based on the facts alleged in the Complaint and those of which the Court may properly take judicial notice. *See, e.g.*, *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (approving judicial notice of documents referenced in complaint).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

2

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1    Securities and Exchange Commission ("SEC") as open-end management investment companies

2    under the Investment Company Act of 1940.  As such, the WM Trusts each issued several series

3    of shares reflecting specific investment strategies, commonly known as mutual funds.  These

4    included the two Funds allegedly purchased by Plaintiff's mother, the WM Growth & Income

5    Fund and WM West Coast Equity Fund, both of which were issued by WM Trust I.  Complaint

6    ¶¶ 9, 11-13.

7        Defendants WM Advisors, Inc. ("WM Advisors") and WM Funds Distributor, Inc. ("WM

8    Distributor") provided investment management and distribution services, respectively, to the

9    Funds.  The Funds allegedly were sold to Plaintiff and the putative class members by Defendant

10   WM Financial Services, Inc. ("WMFS"), a securities broker-dealer that is registered with the SEC

11   and a member of the National Association of Securities Dealers, Inc.  Complaint ¶¶ 14-16.

12   Defendant Washington Mutual, Inc. ("WMI") is alleged to be the "parent entity" of the WM

13   Trusts, WM Distributor, WM Advisors, and WMFS.[2]  *Id.* ¶ 10.

14       After the close of the alleged class period, WM Advisors and WM Distributor were

15   acquired by a subsidiary of defendant Principal Financial Group, Inc. and renamed Edge Asset

16   Management, Inc. and Principal Funds Distributor, Inc., respectively.  Thereafter, in January

17   2007, all assets of the WM Trusts and the Funds were transferred to defendant Principal Investors

18   Fund, Inc., which is also a registered investment company, and all shareholders of the Funds

19   became shareholders of Principal Investors Fund, Inc.  *Id.* ¶¶ 17-20; *see* Request for Judicial

20   Notice and Declaration of Joseph E. Floren In Support of Motion to Dismiss By Defendants

21   Washington Mutual, Inc. and WM Financial Services, Inc. ("RJN") Exh. A at 2-3.  Defendants

22   WMI and WMFS remain independent of Principal Financial Group, Inc.[3]

23       **B.    Allegations of the Complaint**

24       The Complaint asserts a putative class action on behalf of all persons who purchased

25   [2]   As explained in Part VIII, below, WMI is the indirect parent company of Defendant WMFS,
26   and was the indirect parent of Defendants WM Advisors and WM Distributor during the
     class period, but was not and could not be the "parent" of the WM Trusts, which were owned
27   by their shareholders, including Plaintiff.

28   [3]   The WM Trusts, though still in existence, are now essentially defunct entities, with no assets
     or shareholders.  *See* RJN Exh. A at 2-3.

1    shares of any of the Funds issued by the WM Trusts between March 1, 2004 and March 1, 2005

2    (the "Class Period") through defendant WMFS.  Complaint ¶ 2.  The crux of Plaintiff's Complaint

3    is the allegation that the Funds' registration statement ("Registration Statement") and prospectus

4    dated as of March 1, 2004 (the "2004 Prospectus") under which Plaintiff and other class members

5    allegedly purchased shares of the Funds failed to disclose certain revenue-sharing arrangements

6    involving WMFS and the "investment adviser and/or distributor."  Complaint ¶¶ 1, 29-34.

7         The only allegedly misleading statements to which the Complaint refers are the following

8    passages from the 2004 Prospectus (emphases as added by Plaintiff):

9
10   > WM Advisors <u>may</u> make payments, at its expense, to dealers or other financial
     > intermediaries at an annual rate of up to 0.50% of the average daily net assets of
     > shares of the Portfolios. [¶]

11
12   > The Distributor, at its expense, <u>may</u> provide additional compensation to dealers.
     > These payments generally represent a percentage of a qualifying dealer's sales
     > and/or the value of shares of the Portfolios or Funds within a qualifying dealer's
13   > client accounts.  Such payments may also include reimbursement for expenses
     > associated with qualifying dealers' conferences, transaction (or "ticket") charges
     > and general marketing expenses. … [¶]
14

15   > The Distributor <u>may</u>, <u>from time to time</u>, pay to dealers, in connection with retail
     > sales or the distribution of shares of a Portfolio or Fund, material compensation in
16   > the form of promotional material or educational meetings.  Salespersons, including
     > representatives of WM Financial Services, Inc. (a subsidiary of Washington
17   > Mutual), and any other person entitled to receive any compensation for selling or
     > servicing Portfolio or Fund shares <u>may</u> receive different compensation with
18   > respect to one particular class of shares over another, and <u>may</u> receive additional
     > compensation or other incentives for selling Portfolio or Fund shares.  *Id.* ¶ 30.

19        Plaintiff claims that these disclosures were materially misleading because they "lead a

20   reasonable investor to believe that the kickback and incentive programs *may* or *may not* exist,

21   when in truth, the investment advisor and/or distributor had already entered into pre-determined,

22   specific, and negotiated arrangements for participation in the 'preferred list,' revenue sharing,

23   kickbacks and incentives to WMFS and its Salesmen."  *Id.* ¶ 33 (emphasis in original).  Plaintiff

24   maintains that these "arrangements" between the defendants created conflicts of interest because

25   they gave salespeople at WMFS an incentive to steer customers toward the Funds to the exclusion

26   of other investments.  *Id.* ¶ 34.  According to Plaintiff, the allegedly misleading disclosures in the

27   2004 Prospectus injured investors who purchased the Funds during the Class Period because, had

28   they known that the allegedly improper revenue sharing arrangements *did exist* – as opposed to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

4

1   may exist – they would not have purchased shares in the Funds but might instead have purchased

2   other securities that might have performed better.  *Id.* ¶¶ 43-44.  Although Plaintiff also alleges

3   that the "fees and charges at issue" reduced the net asset value ("NAV") of the Funds and

4   diminished the Funds' investment returns, *id.* ¶¶ 42-43, Plaintiff cannot claim that any such fees

5   were deducted from Fund assets, as all fees charged against the Funds were fully disclosed in the

6   Funds' Prospectus.  *See* RJN Exh. C at 38-45, 78 (Prospectus disclosures of all fees deducted

7   from Funds' assets).  Plaintiff admits her knowledge and acceptance of the fees charged against

8   the Funds, and acknowledges that her Complaint concerns the *uses* to which those fees were

9   allegedly put by defendants.  Complaint ¶ 44.

10          Against this background, Plaintiff, who claims to have purchased two of the Funds "in the

11   name of her mother" at an unstated time "in and after 2000," attempts to plead three types of

12   claims under the federal securities laws.  Complaint ¶ 9; RJN Exh. B at 1 (Plaintiff's Reform Act

13   Certification of purchases).  First, Plaintiff asserts that the "WAMU" defendants (defined as the

14   WM Trusts, WM Advisors, WM Distributor, WMFS, and WMI) are liable under Sections 11 and

15   12(a)(2) of the Securities Act, 15 U.S.C. §§ 77k, 77*l*(a)(2), for issuing or participating in the

16   issuance of the allegedly false and misleading 2004 Prospectus, and selling shares in the Funds to

17   Plaintiff and the putative class members pursuant to that prospectus.  Complaint ¶¶ 53-69.

18   Second, Plaintiff claims that the same "WAMU" defendants committed securities fraud in

19   violation of Section 10(b) of the Exchange Act and Rules 10b-5 and 10b-10 thereunder, 15 U.S.C.

20   § 78j; 17 C.F.R. §§ 240.10b-5, 240.10b-10, by selling the Funds by means of the alleged material

21   misstatements in the 2004 Prospectus, and are thus liable for unspecified damages suffered by

22   Plaintiff in connection with the purchases.  Complaint ¶¶ 76-92.  Finally, Plaintiff asserts indirect

23   liability claims under Section 15 of the Securities Act and Section 20(a) of the Exchange Act, 15

24   U.S.C. §§ 77*o*, 78t, against defendant WMI as the alleged "controlling person" of the "WAMU"

25   defendants.  Complaint ¶¶ 70-75, 93-97.

26   **III.    LEGAL STANDARD ON MOTION TO DISMISS**

27          A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims stated in the

28   complaint.  Dismissal is appropriate under Rule 12(b)(6) where the complaint fails to plead

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1    sufficient facts stating a claim to relief that is "plausible on its face." *See Bell Atlantic Corp. v.*

2    *Twombly,* 127 S. Ct. 1955, 1974 (2007) (dismissing complaint where "plaintiffs have not nudged

3    their claims across the line from conceivable to plausible"); *De La Cruz v. Tormey*, 582 F.2d 45,

4    48 (9th Cir. 1978), *cert. denied,* 441 U.S. 965 (1979).  In ruling on a 12(b)(6) motion, the court

5    may consider the facts alleged in the complaint, documents attached to or specifically referenced

6    within the complaint, and matters of which the court may take judicial notice.  *See United States*

7    *v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504

8    (9th Cir. 1986).  Defendants WMI and WMFS also move to dismiss for lack of jurisdiction over

9    the subject matter of this case, as a result of Plaintiff's lack of standing to sue under Article III of

10   the Constitution.  *See* Fed. R. Civ. Proc.12(b)(1).

11   **IV.    PLAINTIFF LACKS STANDING TO BRING THIS ACTION.**

12          In order to have standing to sue, Plaintiff must allege that she purchased the Funds during

13   the Class Period.  Plaintiff has not done so, however, nor can she amend to cure this defect.  The

14   case should be dismissed on this basis alone.

15          **A.    Plaintiff Lacks Article III Standing.**

16          The requirement that Plaintiff plead facts showing that she has standing to sue is

17   jurisdictional and derives from Article III of the Constitution.  *Warth v. Seldin*, 422 U.S. 490, 498

18   (1975) (requiring case or controversy and that plaintiff must assert his or her own legal rights);

19   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff bears the burden of meeting

20   each of the standing requirements).  In securities class actions, courts take special care to ensure

21   that standing requirements are met.  *See La Mar v. H&B Novelty & Loan Co.*, 498 F.2d 461, 469

22   (9th Cir. 1973) (standards are "exacting"); *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp.

23   1525, 1531 (D. Mass. 1991) ("Strict standing requirements are particularly important in the area

24   of securities litigation to curb the risks of vexatious litigation and abuse of discovery.").

25          Here, Plaintiff asserts that the Fund purchases on which this action is based were made *not*

26   in Plaintiff's name but "in the name of her mother, Maria Carmen Higareda."  Complaint ¶ 9.

27   What is more, the purchase occurred *not* during the Class Period as required, but "in and after

28   2000."  RJN Exh. B at 1, ¶ 3.  Finally, Plaintiff purports to sue concerning twenty-four different

1   Funds issued by the WM Trusts, but she alleges purchases concerning only two of the Funds.  *Id.*;

2   Complaint ¶ 9.  Even if Plaintiff were able to cure the other standing defects by amendment, she

3   could sue only concerning the two Funds actually purchased.

4           **1.      Plaintiff Is Not the Real Party in Interest and Has No Standing.**

5           Federal courts have jurisdiction to hear a dispute only if it is a "case" or "controversy."

6   U.S. Const. art. III, § 2; *see also Raines v. Bird,* 521 U.S. 811, 818 (1997).  One of the necessary

7   elements of the "case" or "controversy" requirement is that the Plaintiff establish that he or she

8   has standing to sue.  *Id.*  "To meet the standing requirements of Article III, '[a] plaintiff must

9   allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to

10  be redressed by the requested relief.'"  *Raines,* 521 U.S. at 818-19 (quoting *Allen v. Wright*, 468

11  U.S. 737, 751 (1984)) (emphasis added).  The Supreme Court has "consistently stressed that a

12  plaintiff's complaint must establish that [s]he has a 'personal stake' in the alleged dispute, and

13  that the alleged injury suffered is particularized as to [her]."  *Id.* (citing *Lujan,* 504 U.S. at 560-61

14  & n.1) (holding that, to have standing, a plaintiff must have suffered a "particularized" injury,

15  which means that "the injury must affect the plaintiff in a personal and individual way").

16          Accordingly, Plaintiff lacks standing to sue with respect to any Fund that she did not own.

17  The Court should therefore find that Plaintiff lacks Article III standing to sue with respect to the

18  Funds as to which she has not alleged an ownership interest.  This requires dismissal of all claims

19  as to all Funds except the WM Growth & Income Fund and West Coast Equity Fund.

20          Plaintiff also lacks standing under Article III with respect to these two Funds because the

21  Complaint alleges that Plaintiff's mother, not Plaintiff, owned them.  Accordingly, Plaintiff Luz

22  Zapien has not suffered any "personal injury" with respect to the alleged violations regarding

23  securities that she never purchased.  *See Lujan,* 504 U.S. at 561 & n.1 (to plead standing, a

24  complaint must set forth facts showing that the plaintiffs have "suffered a personal injury, which

25  is fairly traceable to the defendants' allegedly unlawful conduct, and that is likely to be redressed

26  by the relief requested").  Plaintiff does not have a "personal stake" in the alleged dispute – at

27  most, her mother might.  *Id.*  Because Plaintiff lacks Article III standing to sue, her claims do not

28  present a "case" or "controversy," and this Court lacks jurisdiction to adjudicate her Complaint.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

2.      **Plaintiff's Defective Reform Act Certification Confirms Her Lack of Standing Under Both Article III and the Securities Laws.**

Congress enacted the Private Securities Litigation Reform Act ("Reform Act") in 1995 to reduce abuses in securities litigation by, among other things, requiring strict certification and eligibility requirements by plaintiffs in securities class actions as a prerequisite to filing suit.  The Reform Act mandates, in pertinent part, "Each plaintiff seeking to serve as a representative party on behalf of a class shall provide a sworn certification, which shall be personally signed by such plaintiff and filed with the complaint."  15 U.S.C. §§ 77z-1(a)(2)(A)(iv), 78u-4(a)(2)(A)(iv).  The certification must "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint."  *Id.*  The Reform Act's language is not ambiguous.  Nor are the requirements that the certification be filed with the complaint, and that it specify the transactions during the class period.  *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 42 (D. Mass. 2003) ("Failure of the named Plaintiff to file a certification with the complaint . . . [is] fatal to maintenance of the putative class action.") (quoting *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996)).

Plaintiff failed to file the mandatory certification upon filing this action, and instead provided a defective certification one month later.  RJN Exh. B at 1.  In that certification, Plaintiff simply states that an "initial" purchase of $5,000 in two Funds, with a "reinvest option," occurred "in and after 2000."  *Id.* at 1, ¶ 3.  Plaintiff's certification thus indicates that *no* transactions occurred during the class period except for automatic reinvestments of dividends distributed by the Funds, which resulted not from any purchase decision during the Class Period, but from the "reinvest option" established upon the purchase in 2000.  *See id.*; RJN Exh. C at 71-72 (prospectus description of default automatic reinvestment option).  Even if she were able to sue on behalf of her mother, Plaintiff could not claim to have been defrauded into making a dividend reinvestment in 2004 when she made the decision to reinvest dividends in 2000.

Plaintiff's fatally flawed certification failed to identify any purchase transactions during the purported Class Period as required by the Reform Act.  As a result, Plaintiff lacks standing to sue under Article III and the securities laws, and the case should be dismissed with prejudice.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

8

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

### B.   **Plaintiff Lacks Statutory Standing to Assert Claims Concerning Funds She Did Not Purchase.**

Plaintiff cannot bring claims with respect to mutual funds that she never purchased, because she has no standing to do so.  *See In re Eaton Vance*, 219 F.R.D. 38; *see also Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713, 719 (8th Cir. 1978) (no standing to assert claims arising out of bond offering in which plaintiff did not participate); *Kauffman v. Dreyfus Fund, Inc.,* 434 F.2d 727, 734 (3d Cir. 1970) (mutual fund shareholder could not bring action on behalf of shareholders in similarly situated mutual funds in which he did not invest); *Goldberger v. Bear, Stearns & Co., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 91,287 (S.D.N.Y. Dec. 28, 2000) ("In order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased.  If the named Plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.").  Actions under the Securities Act or the Exchange Act may be brought *only* by purchasers or sellers of the securities at issue.  15 U.S.C. § 77*l*(a); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749 (1975); *see also In re AIG Advisor Group Sec. Litig.,* 2007 WL 1213395 at *11-12.  Further, at the pleading stage the named plaintiff must "set forth some 'general factual allegations of injury resulting from the defendant's conduct.'"  *In re AIG*, 2007 WL 1213395 at *11-12 (quoting *Lewis v. Casey*, 518 U.S. 343, 358 (1996)).  A named plaintiff in a securities fraud class action cannot allege an injury from the purchase or sale of funds in which she has never invested.  15 U.S.C. § 77*l*(a); *Blue Chip Stamps,* 421 U.S. at 749.

Plaintiff's mother is alleged to have purchased only two Funds, both issued by defendant WM Trust I, but Plaintiff purports to sue on behalf of investors in twenty-two other Funds issued by the WM Trusts – Funds in which neither she nor her mother *ever* invested.  RJN Exh. B at 1; Complaint ¶¶ 2, 9, 11-13.  Even if Plaintiff had standing to sue based on purchases by her mother (which she does not), and even if she had actually purchased Funds during the Class Period (which she did not), she could still bring suit only concerning those securities actually purchased – the WM Growth & Income Fund and the West Coast Equity Fund.  RJN Exh. B at 1.  Plaintiff cannot sue or seek recovery from funds in which she did not invest.  *In re AIG*, 2007 WL

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

9

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1213395 (dismissing complaint to the extent that it relates to funds other than the ones in which

plaintiffs alleged they invested); *see also Blue Chip Stamps,* 421 U.S. 723 (limiting recovery

under Exchange Act to purchasers or sellers of securities).  Since Plaintiff lacks statutory standing

under the securities laws to sue with respect to the twenty-two Funds that neither she nor her

mother ever purchased, her claims concerning those Funds should be dismissed with prejudice for

this separate and additional reason.

## V.  PLAINTIFF'S CLAIMS ARE TIME-BARRED.

Plaintiff's mother purchased the WM Growth & Income and West Coast Equity Funds

with a dividend reinvestment option in 2000.  As a result, all claims resulting from that purchase

have long since become time-barred by the three- and five-year statutes of repose for claims

under the Securities Act and the Exchange Act, which expired no later than 2003 and 2005,

respectively.  Plaintiff's purported claims are also barred by the one- and two-year notice

limitations periods under the Securities Act and Exchange Act, because Plaintiff and the class

were on inquiry notice (if not actual notice) as to any purported claims by no later than February

27, 2004, when the Funds filed their Registration Statement with the SEC *publicly disclosing* the

allegedly "hidden" fees paid to WMFS, through publication of the Form of Dealer Agreement

used by the WM Trusts.  RJN Exhs. C at 126; D; G at 1-2.  As if that were not enough, the Funds

filed a revised Registration Statement on December 30, 2004, and again on February 28, 2005,

broadcasting the supposedly undisclosed facts relating to WMFS and revenue sharing among the

defendants, and plainly putting Plaintiff on actual notice of her purported claims.  RJN Exhs. E at

5, F at 3-6, 8-10; G at 3-6.  As discussed more fully below, because Plaintiff did not file suit until

February 28, 2007, two years and one day after the last of these public disclosures, all of the

claims asserted in the Complaint are time-barred, and should be dismissed with prejudice.

### A.  The Securities Act Claims Are Time-Barred.

A plaintiff must bring a claim under the Securities Act "by the earlier of (a) three years

from the date the parties in the offering obligate themselves to perform, in the case of a Section

12(a)(2) claim . . . , or three years from the date of the initial registration statement, in the case of

a Section 11 claim . . . , or (b) one year from the date on which they are put on actual or

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

10

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1    constructive notice of the facts underlying the claim." 15 U.S.C. § 77m.  In other words,

2    Plaintiff's Section 12(a)(2) claim had to have been brought within three years of a purchase

3    transaction, and her Section 11 claim had to have been brought within three years of the date of

4    the registration statement.  Clearly, Plaintiff's claims with respect to purchases in 2000 are barred

5    by these statutes of repose.[4]

6          All of Plaintiff's alleged Securities Act claims were required to be filed within one year of

7    the date on which she had actual or inquiry notice of the facts indicating that the relevant

8    prospectus was materially false or misleading.  *In re Stac Elec. Sec. Litig.*, 89 F.3d at 1399, 1411

9    (9th Cir. 1996).  In the Ninth Circuit, "'the one-year statute of limitations period begins to run

10   once the investor, in the exercise of reasonable diligence, should have discovered the facts

11   underlying the alleged fraud.'"  *Berry v. Valence Technology, Inc.*, 175 F.3d 699, 704 (9th Cir.

12   1999) (quoting *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1201 (10th Cir. 1998)).  The two

13   questions courts ask in determining exactly when the statute of limitations begins to run are, first,

14   "did the . . . [triggering document] raise sufficient suspicion of fraud to cause a reasonable

15   investor to investigate the matter further" and, second, "when should a reasonably diligent

16   investor have discovered the facts underlying the alleged fraudulent activity?"  *Berry,* 175 F.3d at

17   704; *see also Betz v. Trainer Wortham & Co.,* 486 F.3d 590, 596 (9th Cir. 2007) (adopting

18   inquiry notice standard and analysis holding that "[a] plaintiff is on inquiry notice when there

19   exists sufficient suspicion of fraud to cause a reasonable investor to investigate the matter

20   further").  The answer to the second question determines when the statute of limitations period

21   begins to run. *Id.*

22          The 2004 Prospectus and Registration Statement on which the Complaint is based were

23   filed with the SEC on February 27, 2004.[5]  RJN Exhs. C at 1; G at 1-2.  Plaintiff alleges that she

24   _____

     [4]    To show that she made a purchase within the three-year statute of repose, Plaintiff must
25          allege that she purchased the Funds on or after *March 1, 2004*, three years before her filing of
            the Complaint on February 28, 2007.  She failed to do so.

26   [5]    The Funds filed their Registration Statement with the SEC on Form N1-A, which included
27          the Funds' Prospectus, Statement of Additional Information ("SAI"), and other information
            concerning the Funds, including the Form of Dealer Agreement.  RJN Exh. C at 126, RJN
28          Exh. D.  The Prospectus, which was delivered to all purchasers, informed investors that other
            information about the Funds, apart from that in the Prospectus and SAI, had been filed with

1   and the members of the proposed class received the Prospectus, Complaint ¶ 34, and is thus

2   obviously charged with knowledge of the contents of that document throughout the Class Period.

3   The language of the 2004 Prospectus itself necessarily put every purchaser on notice that WM

4   Advisors and WM Distributor may, at their own expense, pay additional fees to dealers selling the

5   Funds such as WMFS.  Moreover, the Funds' 2004 Registration Statement (of which the

6   Prospectus was a part) included a specimen "Form of Dealer Agreement" between WM

7   Distributor and WM Advisors and broker-dealers such as WMFS, specifically disclosing the

8   material terms under which WM Distributor and WM Advisors agreed to pay broker-dealers in

9   connection with sales of the Funds.[6]  RJN Exh. D at 5-7, 11.  These public disclosures at a

10  minimum put all purchasers who might be uncertain as to the nature of WMFS' compensation on

11  inquiry notice as to the existence of additional compensation, starting the one-year statute upon

12  the date of purchase.  *Berry,* 175 F.3d at 704.

13          The Funds also filed a revised Registration Statement with the SEC on December 30,

14  2004,[7] disclosing, in pertinent part:

15          WM ADVISORS ALSO OFFERS REVENUE SHARING PAYMENTS,
         REFERRED TO AS AN "ADVISOR PAID FEE" TO ALL FINANCIAL
16          INTERMEDIARIES WITH ACTIVE SELLING AGREEMENTS WITH THE
         DISTRIBUTOR.  THE ADVISOR FEE IS PAID AT AN ANNUAL RATE OF
17          UP TO 0.50% OF THE AVERAGE NET ASSETS OF CLASS A AND CLASS
         B SHARES OF THE PORTFOLIOS SOLD THROUGH SUCH
18          INTERMEDIARIES…. THESE PAYMENTS ARE MADE FROM WM
         ADVISORS' PROFITS AND MAY BE PASSED ON TO YOUR
19          INVESTMENT REPRESENTATIVE AT THE DISCRETION OF HIS OR HER
         FINANCIAL INTERMEDIARY FIRM. THESE PAYMENTS MAY CREATE
20          AN INCENTIVE FOR THE FINANCIAL INTERMEDIARIES AND/OR
         INVESTMENT REPRESENTATIVES TO  RECOMMEND OR OFFER

21  _____

22          and was publicly available through the SEC.  RJN Exh. C at 106 ("You may . . . request other
         information about the WM Group of Funds . . . by contacting your financial advisor, by
23          calling toll-free 1-800-222-5852, or by visiting www.wmgroupoffunds.com. . . .  [¶] You
         may also access reports and other information about the Portfolios and Funds on the EDGAR
24          database or the [SEC's] Internet website at http://www.sec.gov.").

25  [6]     As discussed further in Part VI.B, below, the disclosures in the Registration Statement also
         negate any claim of a material misstatement in the 2004 Prospectus, although the Court need
26          not reach that issue to find Plaintiff's claims barred by the statute of limitations.

27  [7]     As required for issuers that continuously offer securities, the Funds periodically filed "post-
         effective amendments" to their Registration Statement.  The December 30, 2004 Registration
28          Statement, filed pursuant to SEC Rule 485(a)(1), 17 C.F.R. § 230.485(a)(1), with registration
         to become effective March 1, 2005, was such an amendment.  RJN Exh. E at 1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9                                        12                    WM DEFENDANTS' MEMO. SUPPORTING
                                                                      MOTION TO DISMISS (07-CV-0385-DMS-CAB)

SHARES OF THE PORTFOLIOS OVER OTHER INVESTMENT ALTERNATIVES.

RJN Exh. E at 5 (emphasis in original).  The revised Registration Statement disclosed, in detail, the nature of payments made by WM Distributor to selling dealers such as WMFS, that some broker-dealers included the Funds on a "preferred list," and that increased distribution payments may give an incentive to an investment representative to recommend one fund family over another, and advised investors:  "Please speak with your investment representative to learn more about the total amounts paid to your investment representative and his or her financial intermediary by the Portfolios, the Distributor, WM Advisors and by sponsors of other mutual funds he or she may recommend to you."  RJN Exh. E at 6.  The Funds filed a final revised prospectus on February 28, 2005 repeating these disclosures with additional specifics.  RJN Exh. F at 3-6; 8-10.[8]

Even assuming, for purposes of argument, that Plaintiff somehow failed to be on inquiry notice earlier in 2004, there is no question that all investors in the Funds were on actual notice as a result of these public disclosures by December 30, 2004 of the facts constituting the alleged fraud of which Plaintiff now complains.  Plaintiff was required to file suit, at the latest, on December 29, 2005.  She did not do so until February 28, 2007, over one year after the notice statute of limitations for claims under the Securities Act had expired.  Accordingly, Plaintiff's Securities Act claims should be dismissed with prejudice.

**B.    The Exchange Act Claims Are Time-Barred.**

Under the Sarbanes-Oxley Act of 2002, claims for securities fraud under the Exchange Act must be asserted within two years of the date on which Plaintiff first had actual or inquiry notice of the facts underlying the asserted fraud.  28 U.S.C. § 1658(b).  Recently, the Ninth Circuit confirmed that the standard for inquiry notice it had applied to Securities Act claims in *Berry*

---

[8]    The February 28, 2005 Registration Statement contained a separate prospectus for the Strategic Asset Management Portfolios ("Portfolios").  *See* RJN Exh. F at 7.  The revenue-sharing payments by WM Advisors, as disclosed in the February 27, 2004 Prospectus, were made in connection with sales of shares of the Portfolios only.  *See* RJN Exh. C at 71; Complaint ¶ 30.  Therefore, these revenue-sharing payments were only disclosed in the 2005 Portfolio prospectus filed with the SEC in the February 28, 2005 Registration Statement.  *See* RJN Exh. F at 7.

1  likewise governs claims under the Exchange Act. *Betz*, 486 F.3d at 596; *see also Livid Holdings*

2  *Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 951 (9th Cir. 2005).

3      As explained above, Plaintiff had inquiry notice of the allegedly misleading statements by

4  no later than February 27, 2004, and actual notice by no later than December 30, 2004.  Plaintiff's

5  purported Exchange Act claims therefore expired no later than December 29, 2006, and her suit

6  filed two months later should be dismissed with prejudice.

7  **VI.    PLAINTIFF'S FRAUD CLAIMS FAIL ON THE MERITS**

8      If the Court determines that Plaintiff has standing with respect to claims concerning the

9  Growth & Income and West Coast Equity Funds and can avoid the limitations bar, her claims

10  nevertheless must be dismissed with prejudice on the merits.  First and fundamentally, Plaintiff

11  has not sufficiently alleged the essential element of a material misstatement or omission by the

12  defendants, which is crucial to all of her claims.  Nor can she do so in light of the facts actually

13  disclosed by the Funds.  The securities laws did not expressly mandate disclosure of the

14  additional details concerning compensation to WMFS that Plaintiff alleges should have been set

15  forth in the 2004 Prospectus.  As such, to assert a claim under either the Securities Act or the

16  Exchange Act, Plaintiff must allege particular facts concerning the omitted details, showing that

17  their omission rendered the affirmative statements in the Prospectus materially misleading.  *See*

18  *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 611-12 (6th Cir. 2005); *In re Solomon*

19  *Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 587 (S.D.N.Y. July 26, 2006); *see*

20  *also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 434

21  (S.D.N.Y. 2003).  Plaintiff has failed to do so.  The disclosures in the 2004 Registration

22  Statement show that the Prospectus was not misleading, much less materially so.  Plaintiff's

23  Exchange Act claims also fail because Plaintiff has not alleged specific facts giving rise to a

24  strong inference that defendants intended to defraud shareholders, or acted with deliberate

25  recklessness in the disclosures at issue.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,

26  — S. Ct. —, 2007 WL 1883208 (U.S. June 21, 2007).  For all these reasons, the Complaint

27  should be dismissed.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

14

**A.      There Is No Duty to Disclose the Allegedly Omitted Information.**

**1.      No Law or Rules Required the Allegedly Omitted Disclosures.**

Mutual funds, also called Open-Ended Management Investment Companies, are required to use SEC Form N-1A to register under the Investment Company Act of 1940 and offer shares for sale under the Securities Act.  *Registration Form Used by Open-Ended Management Investment Cos.*, SEC Release Nos. 33-7512, 34-39748, 63 Fed. Reg. 13916, 13916 (March 23, 1998), attached as RJN Exh. H at 1.  This form sets forth the federal requirements for the information that must be disclosed in a mutual fund's registration statement, which include its prospectus and its statement of additional information ("SAI").  *Id.* at 25.  Indeed, Form N-1A was designed by the SEC to set forth those disclosures that are material to investors in making their investment decisions without overwhelming them with less essential information.  *Id.* at 2-4.

Plaintiff has made no allegation that the 2004 Registration Statement or Prospectus failed to comply with the disclosure obligations set forth by the SEC in Form N-1A, or that they omitted any of the total costs borne by investors in connection with purchase, sale or holding of Fund shares.  There is no question that the Prospectus disclosed in detail the management and distribution fees charged against the Funds by WM Advisors and WM Distributor, respectively. *See* RJN Exh. C at 38-45, 78; *see also id.* at 111-18, 119-22 (portions of the SAI with further fee disclosures).  In fact, Form N-1A does *not* require disclosure of the information Plaintiff alleges was improperly omitted from the Prospectus.  *See In re Morgan Stanley & Van Kampen Mutual Fund Sec. Litig.*, 2006 WL 1008138, *7 (S.D.N.Y. 2006).  The Director of the SEC's Division of Investment Management expressly confirmed this fact in testimony before Congress in 2003, when it was considering legislation (never enacted) to mandate further disclosure.  Paul Roye, *Testimony Concerning the Mutual Funds Integrity and Fee Transparency Act of 2003*, at 6 (June 18, 2003) *available at* www.sec.gov/news/testimony/061803tspfr.htm) ("'Revenue-sharing' payments are not a fund expense because they are made from the adviser's own resources, rather than fund assets.  As a result, mutual funds are not required to disclose these payments."), attached at RJN Exh. I.  "The current SEC regulations impose no duty on defendants to disclose the allocation of broker compensation. . . . [Form N-1A] does not require disclosure of how

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

15

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1   differential compensation is allocated.  Nor does it require disclosure of sales contests or

2   management bonuses."  *In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, *7; *see also*

3   *Benzon*, 420 F.3d at 612 ("Current SEC regulations, including Form N1-A, do not impose a

4   disclosure obligation with respect to broker compensation.").  In short, Plaintiff cannot allege that

5   any of the defendants had a duty to disclose the allegedly omitted information in the Registration

6   Statement or Prospectus.

7               **2.      WMFS Complied with Rule 10b-10.**

8               SEC Rule 10b-10 requires broker-dealers (such as WMFS) to disclose certain information

9   to customers upon completion of a securities transaction, including "the source and amount of any

10  other remuneration received or to be received by the broker in connection with the transaction."

11  17 C.F.R. § 240.10b-10(a)(2)(i)(D).  As an initial matter, in order to invoke Rule 10b-10, Plaintiff

12  must necessarily allege that she completed a "securities transaction" that required generation of a

13  transaction confirmation during the Class Period.  Plaintiff has failed to so allege, as to herself or

14  her mother.  *See* RJN, Exh. B at 1, ¶ 3.  Moreover, under Rule 10b-10(b), no separate

15  confirmation is even generated for automatic dividend reinvestment transactions of the type that

16  occurred during the Class Period here, as these reinvestments are reported on account statements.

17  *See* Investment Company Institute, SEC No-Action Letter, 1993 WL 5191 (pub. avail. Jan. 7,

18  1993), attached as RJN Exh. J at 3.

19              Even if she had engaged in a relevant securities transaction during the Class Period,

20  Plaintiff's Rule 10b-10 claim fails.  The SEC has expressly confirmed that, with regard to

21  remuneration received by a broker-dealer not from the customer, but from others (such as a

22  mutual fund advisor or distributor), "'disclosure with precision is not necessary' with respect to

23  those types of payments."  *Press v. Quick & Reilly, Inc.*, 218 F.3d 121. 128 (2d Cir. 2000)

24  (quoting SEC *Amicus* Brief at 23).  Moreover, with regard to mutual funds, it is well settled that

25  broker-dealers "may rely on fund prospectuses and other documents publicly filed with the SEC

26  to satisfy their Rule 10b-10 disclosure obligations."  *Press*, 218 F.3d at 129; *see also* Roye

27  Testimony at 7 ("A broker-dealer may satisfy this disclosure obligation [regarding receipt of

28  revenue-sharing payments] by, among other things, delivering to its customer a copy of the fund's

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

16

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1   prospectus, at or before completion of the transaction, if the prospectus contains adequate

2   disclosures.").  The disclosures in the Funds' Prospectus, which advised investors of the

3   possibility of additional remuneration to WMFS, were more than sufficient for these purposes.  In

4   short, WMFS satisfied its 10b-10 obligations through the disclosures in the Funds' Prospectus.[9]

5            **B.      Plaintiff Has Failed to Allege a Material Misstatement or Omission.**

6            Since there is no statutory disclosure requirement, Plaintiff's claims fail unless she can

7   allege an affirmative material misstatement by defendants, or that the omission of certain material

8   facts rendered an affirmative statement misleading.  *See Benzon*, 420 F.3d at 611-12.  Federal

9   Rule of Civil Procedure 9(b) requires Plaintiff to allege "the circumstances constituting fraud . . .

10  with particularity" with respect to all of her claims.  Fed. R. Civ. P. 9(b).  Plaintiff was required to

11  allege facts providing "an explanation as to why the statement or omission complained of was

12  false or misleading."  *In re Stac Elec. Sec. Litig.*, 89 F.3d at 1404; *see* 15 U.S.C. § 78u-4(b)(1)

13  (pleading standard for Exchange Act claims, requiring Plaintiff to specify "each statement alleged

14  to have been misleading [and] the reason or reasons why the statement is misleading").  Plaintiff

15  has failed to meet the pleading standard.[10]  Under the facts alleged in the Complaint and those of

16  [9]    As referred to in the Complaint, the SEC has *proposed* a rule that would change the
        disclosure rules for revenue-sharing programs.  *See* RJN Exh. K (*Confirmation Requirements
17      and Point of Sale Disclosure Requirements for Transactions in Certain Mutual Funds and
        Other Securities, and Other Confirmation Requirement Amendments, and Amendments to
18      Registration From for Mutual Funds*, Release Nos. 33-8358, 34-49148, IC-26341, 59 Fed.
        Reg. 6438 (Feb. 10, 2004)) (cited in Complaint ¶ 25).  This rule was merely a proposal
19      during the entire Class Period, and remains so today.  "Proposed rules that have yet to be
        adopted have no force at law.  The possible imposition of a duty of disclosure after the fact
20      does not support a cognizable securities fraud claim."  *In re Merrill Lynch & Co., Inc.
        Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. 2003).  Furthermore,
21      Plaintiff's vague quotation of SEC official Linda Chatman Thomsen's press release about an
        enforcement proceeding not involving defendants, but other parties under different facts, is
22      irrelevant to this litigation.  (Complaint ¶ 23).  The conduct by the defendants in this case has
        never been the subject of any relevant regulatory action, nor has Plaintiff so alleged.  Further,
23      the statement Plaintiff quotes concerned a *non-litigated, administrative settlement*.  Such
        settlements are not, and cannot be, legal precedent, as they have neither been tested by the
24      adversary system nor subjected to judicial scrutiny.  *See In re Morgan Stanley & Van
        Kampen Mutual Fund Sec. Litig.*, 2006 WL 1008138, *5 (S.D.N.Y. Apr. 18, 2006).

25  [10]   Plaintiff attempts to avoid her obligation to plead misstatements and omissions with
26      particularity with respect to her Securities Act claims through boilerplate "disclaimers" of
        any fraud allegation, *see* Complaint ¶¶ 53, 61, 70, but the courts firmly reject such efforts in
27      cases, such as this, where the essence of the complaint sounds in fraud.  *See In re Stac Elec.
        Sec. Litig.*, 89 F. 3d at 1404-05 & n.2; *see also In re AIG*, 2007 WL 1213395 at *13
28      ("Plaintiffs may not escape the particularity requirements of Rule 9(b) and the PSLRA

1   which the Court should take judicial notice, here there are no misstatements, no omissions, and no

2   basis for concluding that any of the purported matters of which Plaintiff complains are material.

3                    **1.      The Funds Disclosed the Purportedly "Secret" Incentive Payments**

4          A complaint founded on allegations of securities fraud must be dismissed where, as here,

5   "the allegedly omitted or misrepresented information was in fact appropriately disclosed." *See*

6   *White v. Melton*, 757 F. Supp. 267, 272 (S.D.N.Y. 1991) (so holding where allegedly omitted

7   information was in fact disclosed in mutual fund's SAI); *see also Steckman v. Hart Brewing, Inc.*,

8   143 F.3d 1293, 1295-96 (9th Cir. 1998) (courts may disregard allegations contradicted by

9   documents referred to in the complaint); *In re Keyspan Corp. Sec. Litig.*, 383 F. Supp. 2d 358,

10  377 (S.D.N.Y. 2003) ("Even at the pleading stage, dismissal is appropriate where the complaint is

11  premised on the nondisclosure of information that was actually disclosed").  Here, with respect to

12  incentives paid by WM Distributor and WM Advisors, the allegedly "hidden" information was

13  actually and appropriately disclosed in the Funds' Registration Statement, contradicting

14  Plaintiff's contrary allegation and misleading focus solely upon the Prospectus.

15         The Funds' 2004 Registration Statement attached as an exhibit the "Form of Dealer

16  Agreement" between both WM Distributor and WM Advisors and selling broker-dealers, such as

17  WMFS, which expressly disclosed the terms under which WM Advisors made the supposedly

18  "hidden" incentive payments (the payments that the Prospectus said WM Advisors "may" make

19  for sales of "shares of the Portfolios").  The agreement states, in relevant part:

20             Whereas WM Advisors, Inc. recognizes that it will benefit from the
21             sale of Shares of WM Strategic Asset Management Portfolios, LLC,
               WM Advisors, Inc. hereby agrees to pay to Selling Broker-Dealer,
22             with respect to Shares of WM Strategic Asset Management
               Portfolios, LLC, a fee accrued daily and payable monthly at the
23             annual rate of 0.50% (0.25% for Class C Shares) of the average
               daily net assets of such Shares held by Customers for whom Selling
24             Broker-Dealer is the dealer of record, which fee is in addition to
               any dealer allowance, Sales Commissions and/or service fees
25             payable by WMFD as set forth above. WM Advisors reserves the

26  ────────────────────────────────

    merely by including template language disclaiming fraud"); *In re Sonus Networks, Inc. Sec.*
27  *Litig.*, 2006 WL 1308165, *7 (D. Mass. May 10, 2006) (rejecting Plaintiff's use of a
    "talismanic disclaimer" to avoid the pleading requirements of Rule 9(b) for Section 11 and
28  12(a)(2) claims asserted alongside Exchange Act fraud claims).

> right to change the amount of, or to cease paying, this fee upon
> fifteen (15) days prior written notice to Selling Broker-Dealer.

RJN Exh. D at 11.  There can be no dispute that the Funds' Registration Statement thus *disclosed* the actual incentive arrangement with respect to WM Advisors and WMFS.  Similarly, the agreement sets forth WM Distributor's agreement to pay certain compensation to selling broker-dealers.  *Id.* at 6, ¶ 10(e).  The Court can and should rely upon these publicly filed documents, which are referenced in the Complaint itself, in determining that Plaintiff's claims have no merit as a matter of law.  *See In re AIG*, 2007 WL 1213395 at * 7 (holding that the court "may consider publicly available documents—such as prospectuses and SAIs—relied upon or referenced in the complaint"); *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995) (holding that "a reasonable investor is presumed to have information that is in the public domain") (quoted in *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 703, n.4 (9th Cir. 1999)); *see also In re Stac Elec. Sec. Litig.*, 89 F. 3d at 1405 n.4 (holding it proper for the court to consider entire text of a registration statement, where portions were alleged in the complaint).  The SEC expressly confirms that mutual funds need not include all publicly disclosed information in the prospectus, and instead expressly authorizes funds to disclose certain information in the prospectus, while disclosing other information only in other parts of the registration statement.  *See* RJN Exh. L at 6-7 (Form N-1A and instructions).

Here, the statements in the 2004 Prospectus that such fee payments "may" be made put interested investors on notice to conduct further inquiry (either by asking their broker-dealer or consulting other publicly available information about the Funds) to confirm the existence of the fees.  *See Benzon*, 420 F.3d at 612; *In re AIG Advisor Group Sec. Litig.*, 2007 WL 1213395 at *8 n. 15.  In any case, those statements clearly were accurate with respect to the payments by WM Advisors given that the fee arrangements could be changed or terminated at any time, upon a mere 15 days written notice.  RJN Exh. D at 6, ¶ 10(e), Exh.D at 11.  Mutual fund prospectuses and registration statements, however, may be effective for as long as 16 months and generally are updated only once per year.  *See* 15 U.S.C. § 77j(a)(3) (prospectus must not use information more than 16 months old); 17 C.F.R. § 270.8b-16 (SEC rule requiring annual amendment of mutual

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

19

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1    fund registration statement, within 120 days of fiscal year end).  Meanwhile, of course, investors

2    purchase mutual fund shares pursuant to the most recent prospectus and registration statement

3    throughout the year.  Similarly, WM Distributor could enter into different arrangements with

4    different selling dealers, and was not mandated to provide "additional compensation" to all of

5    them.  In light of this, the Prospectus standing alone is wholly accurate.  Particularly given the

6    detailed further disclosures in the 2004 Registration Statement, Plaintiff's fraud claims collapse.

7                    **2.      The 2004 Prospectus Is Not Misleading.**

8            Even if it could be divorced from the additional disclosures in the Registration Statement

9    regarding WM Advisors' and WM Distributor's actual agreements with broker-dealers (which it

10   cannot), the challenged language in the 2004 Prospectus is not materially misleading as a matter

11   of law.  The courts have repeatedly held that the precise allocation of fees is *not* material

12   information under the securities laws.  *See Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F.

13   Supp. 2d 233, 238 (S.D.N.Y. 2006); *Castillo v. Dean Witter Discover & Co.*, 1998 WL 342050

14   (S.D.N.Y. June 25, 1998); *see also In re Morgan Stanley & Van Kampen Funds*, 2006 WL

15   1008138, *8 (S.D.N.Y. Apr. 18, 2006) ("In the absence of a "statutory or regulatory

16   requirement," defendants' omissions [regarding incentive programs for brokers] must be material.

17   They were not.").

18           The statements about which Plaintiff now complains did not suggest that there were no

19   revenue-sharing arrangements.  *See Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1007

20   (9th Cir. 2002) (public statement held not materially misleading where it did not create false

21   impression).  To the contrary, the 2004 Prospectus put Plaintiff and potential class members on

22   notice of the possibility of such arrangements.  *Benzon*, 420 F.3d at 612; *see also In re AIG*, 2007

23   WL 1213395 at * 8 n.15.  For exactly this reason, both the Sixth Circuit Court of Appeals and

24   courts in the Southern District of New York have *rejected* the very contention Plaintiff attempts

25   to advance in this case, *i.e.*, that it is materially misleading to state that a program incentivizing

26   brokers to sell particular mutual funds "may" exist when it does exist.  *Benzon*, 420 F.3d at 612;

27   *In re AIG Advisor Group Sec. Litig.*, 2007 WL 1213395 at * 8 n.15.

28           The Sixth Circuit Court of Appeals is the only federal appellate court to address this

1    question.  Applying the exact same legal standards that control in this circuit, that court held in

2    *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598 (6th Cir. 2005), that the difference

3    between a disclosure that dealers "may" receive sales incentives and one confirming  that they

4    "do" receive such incentives is "a semantic quibble." *Id.* at 612.  The *Benzon* court explained:

> If anything, the inclusion of this statement in the prospectus (which,
> again, was not mandated by any current SEC regulation) served to
> put prospective investors on notice that there was a possibility that
> brokers were being compensated more highly for the sale of certain
> class shares than others, such that investors could pursue that line of
> inquiry with their financial advisors if they were concerned about
> broker incentives.

9    *Id.*; *see also In re AIG*, 2007 WL 1213395 at * 8 n.15 (rejecting plaintiff's argument that "may"

10   language in mutual fund prospectuses was misleading because it failed to disclose that incentives

11   were "in fact" paid). [11]

12       This case concerns the sale of WM Funds, managed by WM Advisors, distributed by WM

13   Distributor, through the broker-dealer WMFS.  Plaintiff alleges that all of the parties involved

14   were part of the same corporate family under the control of WMI.  Complaint ¶ 10.  It should

15   come as no surprise to Plaintiff that WMFS and its representatives might have reasons to favor

16   sales of the WM Funds over other mutual funds.  In *Castillo v. Dean Witter Discover & Co.*, 1998

17   WL 342050 (S.D.N.Y. June 25, 1998), the court disposed of analogous claims against Dean

18   Witter, holding "Plaintiffs should have been aware that the sale of a Dean Witter fund, as opposed

19   to an outside fund, would mean greater compensation for the Dean Witter companies." *Id.* at *9.

20   The same reasoning applies here.

21       Disregarding the overwhelming contrary authority, Plaintiff apparently pins her hopes in

22   this litigation upon an order issued by a district court in San Francisco, which disagreed with

23   *Benzon* and allowed facially similar claims based upon "may" language in a prospectus to

24   proceed at the pleading stage in *Siemers v. Wells Fargo & Co.*, 2006 WL 2355411, *5 (N.D. Cal.

25   Aug. 14, 2006).  An attempted comparison of this case with *Siemers*, however, cannot survive

26   scrutiny.  Here the essential details of the alleged "hidden" arrangement were *actually disclosed*

27

---

[11]    Plaintiff does not allege that WMFS representatives failed to disclose incentive arrangements
to investors upon inquiry.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

21

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

in the Funds' Registration Statement, whereas in *Siemers* there was no such disclosure, the arrangements remained "secret," and the court found that the nature of the undisclosed arrangements rendered Wells Fargo's "may" disclosures misleading. *Id.* at *5-*6. This distinction alone renders *Siemers* irrelevant. Numerous other crucial differences dictate a contrary outcome in this case. For example, here the facts support the 2004 Prospectus' use of the word "may" (based on the possibility that fee-sharing arrangements could cease or change on 15 days' notice); no such support existed in *Siemers*. *See id.* In *Siemers*, the mutual fund advisers caused the funds' portfolios to be traded through Wells Fargo's broker-dealers at inflated commission rates, thus guaranteeing the broker-dealers a steady flow of commission revenue (known as "directed brokerage") that was not disclosed to investors. *Id.* at *3. There are no such allegations here. In *Siemers*, the securities regulators took enforcement action, on which Plaintiffs and the Court relied, against the Wells Fargo broker-dealers with respect to their practices at issue; no such regulatory action occurred with respect to defendants here. *See id.* at *1-*2, *5, *8. And the undisclosed payments that the *Siemers* court found to be potentially material (1.25% per annum for equity funds, plus $21 million in directed brokerage payments) far exceeded the fees that were publicly disclosed by the WM Funds at issue here (0.50% payment by WM Advisors with respect to the Portfolios). *Cf. id.* at *7. Finally, even if *Siemers* were otherwise applicable to the facts of this case (which it is not), the district court's reasoning there deserves little weight, as it is openly contrary to every other relevant decision and based exclusively upon that court's interpretation of "SEC administrative rulings" entered in approving non-litigated administrative settlements with several mutual fund issuers and brokerage firms, each of which had its own distinct set of facts but *none* of which involved private securities class action litigation, such as the instant case, and *none* of which was ever reviewed (much less endorsed) by a court. *Id.* at *1.

In this case, however, the Court need not decide whether to follow the lone voice of the *Siemers* district court, on the one hand, or the majority of courts represented by *Benzon, In re AIG, In re Morgan Stanley & Van Kampen*, and *Castillo*, on the other. Here the WM Funds disclosed the essential aspects of the fee-sharing arrangements, and any fraud claim must fail.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

22

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

### 3.      Plaintiff Fails to Plead that Any Alleged Omission Was Material.

As shown above, the essential fee-sharing arrangements at issue in Plaintiff's Complaint were disclosed in the Funds' Registration Statement.  Plaintiff's purported grievance, therefore, is reduced to her claim that sales of the Funds were tainted as a result of "office parties, training and educational meetings and conferences," other unspecified "non-cash compensation," and possible "reimbursement for expenses" that may have occurred (as to which no specifics are alleged) with respect to sales of the WM Funds.  *See* Complaint ¶¶ 27, 34.  These allegations are insufficient as a matter of law to support any claim of a material omission by defendants.

To support a securities fraud claim, Plaintiff must allege facts demonstrating that disclosure of the purportedly omitted matters would have been viewed by a reasonable investor "as having significantly altered the 'total mix' of information made available."  *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  Plaintiff has failed to meet this burden.  If and to the extent that any peripheral matters pertaining to the WM Funds were *not* fully disclosed in the 2004 Registration Statement, there is no basis in Plaintiff's Complaint for the Court to conclude that any such matters would have been material to investors.  Nowhere in the Complaint does Plaintiff make any allegation as to the value of any purportedly undisclosed payments, or provide information from which the value of any such payments could be calculated.  *See In re AIG*, 2007 WL 1213395 at *14 (holding that plaintiff failed to plead the materiality of omissions regarding revenue-sharing payments where the size of the undisclosed payments was not alleged and could not be calculated from the complaint).  Moreover, the Funds disclosed in February 2005 (two years and one day before this action was filed) that the total value of *all* additional payments by WM Distributor to all broker-dealers (including not only WMFS, but also 38 other financial service companies) in 2004 represented *only 0.03%* of the average daily net assets of the Funds.  RJN Exh. F at 4, 9.  Such modest payments could not possibly have been material to Plaintiff or the class she purports to represent as a matter of law.  *See In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, *2-*4, *8 (finding that undisclosed payments involving 0.15% to 0.20% of sales to broker-dealers, plus 0.05% on assets to broker-dealer sales representatives, as well as concert tickets,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

23

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1   hotel accommodations, and sales contest incentives, were immaterial).[12]  At worst, Plaintiff's

2   complaint is utterly spurious as a matter of law.  At best, her allegations about undisclosed

3   incentives "are too sparse to permit a determination whether its disclosure would be material."  *In*

4   *re AIG*, 2007 WL 1213395 at *15.  Either way, her securities fraud claims must be dismissed.

5         **C.**      <u>**Plaintiff Has Failed to Plead Facts Creating a Strong Inference of Scienter.**</u>

6         Plaintiff's Exchange Act claims are subject to the heightened pleading standards of the

7   Reform Act, which dictate that she "must plead, in great detail, facts that constitute strong

8   circumstantial evidence of deliberate recklessness or conscious misconduct" by each defendant.

9   *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).  General allegations of

10  intent do not suffice; rather, Plaintiff must set forth specific facts creating a "strong inference"

11  that each of the defendants either actually knew or must have known that its statements in

12  connection with WM Fund sales were materially misleading.  *See id.* at 977.  The *deliberate*

13  recklessness that Plaintiff must show is a form of intentional conduct, not merely a high degree of

14  negligence.  *Id.*  In the context of an alleged material omission, as here,

15          "reckless conduct may be defined as a highly unreasonable
       omission, involving not simply, or even inexcusable negligence, but
16          an extreme departure from the standards of ordinary care, and
       which presents a danger of misleading buyers or sellers that is
17          either known to the defendant or is so obvious that the actor must
       have been aware of it."

18

19  *Id.* at 976 (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990)).

20        Applying this standard, it is well settled that allegations of mere recklessness or motive

21  and opportunity to commit fraud by the defendants do *not* create the mandatory "strong

22  inference" of scienter necessary to sustain a claim at the pleading stage.  *Id.*  Moreover, the

23  Reform Act's "strong inference" standard requires the Court to consider at the motion to dismiss

24  stage not only the inferences urged by Plaintiff, but "*all* reasonable inferences to be drawn from

25  the allegations, including inferences unfavorable to the plaintiffs."  *Gommper v. VISX, Inc.*, 298

26        [12]    Plaintiff's allegations concerning materiality also fail insofar as she has not alleged that
       WMFS received materially higher payments on account of sales of the WM Funds than for
27        other mutual funds.  *See In re AIG*, 2007 WL 1213395 at *14 (holding that plaintiff failed to
       plead material omissions where plaintiff did not allege facts showing that the broker-dealers
28        were paid materially more for promoting the "preferred" mutual funds than for other funds).

1  F.3d 893, 897 (9th Cir. 2002) (emphasis in original); *see Tellabs, Inc. v. Makor Issues & Rights,*

2  *Ltd.*, — S. Ct. —, 2007 WL 1883208, \*3 (U.S. June 21, 2007).  A complaint must be dismissed

3  where the facts alleged, together with all facts of which the Court may take notice, create merely

4  a "'reasonable' or 'permissible'" inference of scienter; for the complaint to survive dismissal, the

5  facts must create an inference that is "cogent and at least as compelling as any opposing

6  inference" that the defendants acted with consciously fraudulent or deliberately reckless intent.

7  *Tellabs*, 2007 WL 1883208, \*7.

8       Given the disclosures in the 2004 Prospectus and Registration Statement, Plaintiff's

9  scienter allegations fall short.  The facts alleged do not create a strong inference of scienter, but

10  instead more strongly support the conclusion that defendants acted reasonably and without

11  pernicious intent.  Since the claims thus fail to meet the Reform Act's pleading standards, the

12  Court must dismiss the Complaint.  15 U.S.C. § 78u-4(b)(3)(A).[13]

### 1.  Plaintiff Fails to Plead Facts Supporting a Strong Inference of Intentional or Deliberately Reckless Misstatements by Defendants.

15       Plaintiff attempts to plead scienter by offering the conclusion in her Complaint, without

16  any corroborating details, that "WAMU" knew the statements in the 2004 Prospectus "were

17  materially false and misleading" because "WAMU's directors knew about the already in place

18  [incentive] arrangements but left in place watered-down disclosures."  Complaint ¶¶ 36-37.

19       Particularly in light of the actual content of the 2004 Registration Statement, the

20  allegations of the Complaint do not come close to creating a strong inference that any defendant

21  acted with scienter.  As discussed above (in Part VI.A), the Funds complied with the SEC's

22  applicable Form N-1A disclosure requirements in preparing the 2004 Registration Statement,

23  including the Prospectus contained therein.  More significantly, as also explained above (in Part

24  VI.B), the Funds' Registration Statement actually disclosed the Form of Dealer Agreement

25  setting forth the specifics of the fee-sharing agreements with WMFS and other dealers selling the

---

26  [13]  The Reform Act requires Plaintiff to satisfy these pleading standards *before* any discovery,

27  and without regard for any speculative claim that discovery might support her case.  The
Court accordingly should disregard Plaintiff's pleas concerning the purported availability of
additional, unspecified factual grounding for her scantily pled claims following discovery.

28  *See* 15 U.S.C. § 78u-4(b)(3)(B) (mandatory discovery stay); Complaint preamble, ¶ 35.

1    WM Funds, and there are no material omissions in the 2004 Registration Statement.  As another

2    court stated in dismissing similar allegations, "It cannot be conscious misbehavior or recklessness

3    for a defendant to fail to disclose in a prospectus information that is neither material nor required

4    to be disclosed under applicable SEC regulations."  *See In re Morgan Stanley & Van Kampen*,

5    2006 WL 1008138, *11 (quoting *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1191

6    (S.D.N.Y. 1996)).

7           Even if there were a material omission in the 2004 Registration Statement with respect to

8    any details of the defendants' revenue-sharing arrangements (which there was not), there would

9    be no reason to conclude any such omission supported a strong inference of deliberate

10   recklessness or intent to defraud.  Given that the SEC is still in the midst of its rulemaking

11   process with regard to disclosure of mutual fund fee allocation, defendants could reasonably have

12   believed that the law did not require further disclosure.  *See id.*  Indeed, both the Sixth Circuit and

13   courts in the Southern District of New York have found no material inaccuracy in similar

14   disclosures that brokers "may" receive additional compensation, strongly suggesting that

15   defendants in the case at bar acted reasonably and without scienter in reaching the same

16   conclusion and making their similar disclosures.  *Benzon*, 420 F.3d at 612; *In re AIG*, 2007 WL

17   1213395 at *8 n.15.  The instant case is further weakened by the disclosures in the Registration

18   Statement and the additional details disclosed in the revised version on December 30, 2004.

19   Plaintiff's obligation was to plead specific facts showing that an omission was so obviously

20   materially misleading that the defendants must have been aware of it.  *Silicon Graphics*, 183 F.3d

21   at 976.  Plaintiff has failed to do so, and her Exchange Act claims accordingly must be

22   dismissed.[14]

23   _____

     [14]   Plaintiff's allegation that defendants knew that the disclosures in the 2004 Prospectus were
24          improper because they changed the wording of the disclosures in later prospectuses, *see*
            Complaint ¶ 38; *see also* Part V.A (discussing later prospectuses), is a classic example of the
            rejected practice of pleading "fraud by hindsight."  *See In re Cabletron Systems, Inc.*, 311
25          F.3d 11, 31 (1st Cir. 2002); *Teachers' Retirement Sys. v. Hunter*, 477 F.3d 162, 183 (4th Cir.
            2007); *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) ("The
26          purpose of the [Reform Act's] heightened pleading requirement was generally to eliminate
            abusive securities litigation and particularly to put an end to the practice of pleading 'fraud
27          by hindsight.'").  That the Funds modified their disclosures later says nothing about
            defendants' state of mind with respect to the 2004 Registration Statement.  Plaintiff was
28          required to allege facts creating a strong inference that Defendants knew or must have known

### 2.   Plaintiff's Motive Allegations Do Not Create a Strong Inference of Scienter.

Plaintiff's perfunctory motive allegations fail to assist her in creating the required strong inference of scienter.  Plaintiff alleges that the existence of the challenged fee-sharing arrangements "indicates that WAMU believes these programs drive sales."  Complaint ¶ 37.  The economic motive to sell the Funds, however, was disclosed in the Prospectus.  *See Castillo*, 1998 WL 342050, *10 (rejecting motive allegations where plaintiffs pointed to no motive other than the economic gain that was disclosed in the prospectus).  Although allegations of motive and opportunity to defraud, without more, are generally insufficient to satisfy the Reform Act's pleading requirements, *see Silicon Graphics*, 183 F.3d at 974, here the Complaint does not even suggest a reason why defendants might be motivated to make a purportedly inaccurate disclosure that the revenue sharing payments "may" be provided, rather than that they "are" provided.  Indeed, no nefarious motive can reasonably be inferred here, and Plaintiff's claims must fail.

### 3.   Plaintiff's Group Allegations of Scienter Are Insufficient.

In addition to the foregoing defects, Plaintiff improperly lumps together the "WAMU" defendants (WM Advisors, WM Distributor, WMI, WMFS, and the WM Trusts) and alleges scienter against them as an undifferentiated group.  *See* Complaint ¶¶ 36-39.  The Reform Act does not allow such "group pleading" and requires Plaintiff to "plead facts showing scienter as to each defendant individually.  In other words, [Plaintiff] must allege the required state of mind as to *each* defendant who made an allegedly misleading statement."  *In re Silicon Storage Tech. Sec. Litig.*, No. C 05-0295 PJH, 2006 WL 648683, *22 (N.D. Cal. March 10, 2006) (emphasis added); *see* 15 U.S.C. § 78u-4(b)(2) (Plaintiff must "state with particularity facts giving rise to a strong inference that *the defendant* acted with the required stated of mind." (emphasis added)).  This Court has rejected such group-pled allegations of scienter as inconsistent with the Reform Act's heightened pleading standards.  *See, e.g.*, *In re Ligand Pharm., Inc. Sec. Litig.*, No. 04CV1620DMS(LSP), 2005 WL 2461151, *15 (S.D. Cal. Sept. 27, 2005); *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983, 1028-31 (S.D. Cal. 2005); *see also In re Lernout &*

that the statements were materially misleading *when the statements were made*.  She has not done so.

Morgan, Lewis &
Bockius LLP
Attorneys At Law

1-SF/7560974.9

27

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1   *Hauspie Sec. Litig.*, 230 F. Supp. 2d 152, 169-70 (D. Mass. 2002) (refusing to allow group

2   pleading to impute false or misleading statements to an affiliated company).

3        Rather than plead facts showing scienter as to each defendant, however, Plaintiff alleges

4   that the seven "WAMU" entities

5        "knew that the public documents and statements issued or
6        disseminated in the name of the Proprietary Funds were materially
     false or misleading, . . . knowingly and substantially participated or
     acquiesced in the issuance or dissemination of such statements or
7        documents. . . . WAMU, by virtue of their possession of
     information reflecting the true facts required the Proprietary Funds,
8        their control over, and/or receipt and/or modification of Proprietary
     Funds' materially misleading statements and/or their associations
9        with the Proprietary Funds which made them privy to confidential
     information regarding the Proprietary Funds, culpably participated
10       in the fraudulent conduct alleged herein."

11  Complaint ¶ 36. These impenetrable allegations do not satisfy Plaintiff's obligations under Rule

12  9(b) and the Reform Act to set forth the facts of each misstatement or omission by each

13  defendant, and how that defendant acted with the necessary intent, and as such the Complaint

14  should be dismissed. *See Ligand*, 2005 WL 2461151, *15; *see also Simpson v. AOL Time

15  Warner*, 452 F.3d 1040, 1046 (9th Cir. 2006) (discussing particularity requirement).

16  **VII.  PLAINTIFF HAS FAILED TO PLEAD DAMAGES OR LOSS CAUSATION**

17       **A.  Plaintiff Has Not Alleged Damages to Support the Securities Act Claims.**

18       Plaintiff's Securities Act claims are also deficient because she has failed to plead that she

19  suffered recoverable damages, which in this context must take the form of an out-of-pocket loss

20  resulting from depreciation in value of the Funds. Sections 11 and 12(a)(2) of the Securities Act

21  allow only for recovery of *depreciation in value* of the subject security. 15 U.S.C. §§ 77k(e),

22  77*l*(a)(2), (b); *see In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243,

23  253-54 (S.D.N.Y. 2003); *In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845, 866-67 (D. Md.

24  2005). If the Funds have instead appreciated in value between the time of any acquisition during

25  the class period and the present (or the time when such Funds were sold), then there can be no

26  recovery under the Securities Act. *See In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d at 867

27  (dismissing plaintiffs' Section 11 and 12 claims because they failed to allege facts demonstrating

28  that they did sell, or could have sold at the time of suit, their shares for an amount less than they

1  paid for those shares.)

2      Plaintiff alleges merely that she "sustained damages" as a result of the purported

3  violations of the Securities Act, but nowhere does she allege that her shares in the Funds

4  depreciated in value following her mother's acquisition.  Complaint ¶¶ 58, 67.  To the contrary,

5  the two WM Funds purchased by Plaintiff's mother generally increased in value during and after

6  the class period.  RJN Exhs. M, N.  Since Plaintiff has not alleged that she (or her mother) sold

7  her shares in the Funds at a loss, or could have sold them at a loss at the time of filing suit, her

8  Securities Act claims are deficient and should be dismissed.[15]  *See In re Mutual Funds Inv. Litig.*,

9  384 F. Supp. 2d at 867.

10      **B.    Plaintiff Has Not Alleged Loss Causation on the Exchange Act Claims.**

11      To state a claim under the Exchange Act, Plaintiff must do more than allege that she

12  would not have purchased the Funds had the allegedly omitted facts been disclosed, *i.e.*

13  "transaction causation."[16]  She must also allege that the acts or omissions of the Defendants

14  actually caused the losses she seeks to recover, *i.e.* "loss causation."  *See Dura Pharm., Inc. v.*

15  *Broudo*, 544 U.S. 336, 341 (2005).  In other words, she must link her alleged losses not merely to

16  her ownership of the Funds, but to the purported failure to disclose the incentive arrangement.  *Id.*

17  This she cannot do.

18      Plaintiff admits in her Complaint that the price of mutual fund shares is determined by the

19  "net asset value" ("NAV") of the fund, which is calculated by subtracting the mutual fund's

20  liabilities, such as fees and commissions, from its assets.  Complaint ¶ 41; *In re Morgan Stanley*

21  *& Van Kampen*, 2006 WL 1009138, *9 (setting forth the formula for determining NAV).  Any

22  decline in the NAV "is related to the success of the investment strategies of that fund . . . and

23

---

[15]    This is not merely a technical failure of pleading.  Plaintiff has not alleged any loss in value
of her Funds because she is unable to do so.  As Plaintiff undoubtedly knows, her mother's
account with WMFS reflects no purchases of Fund shares during the Class Period, and no
acquisitions of any kind other than automatic dividend reinvestments in December 2004,
which shares Plaintiff's mother then sold *at a profit* in November 2005.

[16]    Although Plaintiff alleges that she would not have purchased the Funds had she known of the
challenged incentive payments, Complaint ¶ 43, Plaintiff has not pled that she purchased the
Funds during the Class Period and after the purported misstatements in the 2004 Prospectus,
such that transaction causation would even be possible.  *See* Part IV.B, above.

1    bears no relationship to the compensation arrangements of the brokers." *Castillo*, 1998 WL

2    342050, *5 (rejecting theory that failure to disclose that a portion of certain mutual fund fees was

3    paid to brokers as an incentive for selling shares could cause plaintiffs' loss).  Plaintiffs make no

4    allegation that the total fees paid by the Funds were inaccurately or incompletely disclosed; her

5    complaint concerns the uses of such fees by WM Advisors and WM Distributor, "at [their own]

6    expense," *after* such fees were deducted from the Funds (and fully disclosed to investors).  *See*

7    Complaint ¶¶ 30, 44.  Only the total fees charged – not their allocation – impacts NAV.  *See In re*

8    *Morgan Stanley & Van Kampen*, 2006 WL 1009138, *9; *Castillo*, 1998 WL 342050, *5.

9    Whether or not the 2004 Registration Statement fully disclosed the allocation of these fees, and

10   regardless of whether the fee-sharing arrangements were in place or not, the NAV would be the

11   same based on the fees charged to the Funds, which were disclosed in full detail.  Therefore,

12   Plaintiff's allegation that she purchased shares of the funds at "an artificially inflated rate" is

13   incorrect as a matter of law.  *See In re Morgan Stanley & Van Kampen*, 2006 WL 1009138, *9

14   (holding plaintiff's claim that value of mutual fund shares would have been less if incentive fees

15   to brokers were disclosed is "incorrect as a matter of law").

16          Further, Plaintiff has not alleged that the Funds would have performed better had the

17   incentive payments been disclosed more fully, such that the failure to disclose the incentive

18   payments proximately caused any loss.  Thus, Plaintiff has pled no cognizable theory linking the

19   failure to more fully disclose the incentive payments to any loss.[17]  *See id.*; *Castillo*, 1998 WL

20   342050, * 5.  As a result, her Exchange Act claims should be dismissed.

21   **VIII.   PLAINTIFF'S CLAIMS AGAINST WMI MUST FAIL.**

22          For each of the reasons set forth above, this case should be dismissed in its entirety.  If any

23

---

24   [17]   Plaintiff alleges that had she known about the payments, she would not have paid them.
     (Complaint ¶ 44.)  Based on the pleading, the only way that one can assume Plaintiff's

25   mother might have avoided paying them is by not purchasing the funds in the first place,
     which supports the element of transaction causation, not loss causation.  Further, Plaintiff's

26   allegation that she might have invested in other funds and obtained a better rate of return is
     too speculative to support loss causation.  "It is long-established law that a shareholder

27   cannot recover for 'damages' based on hypothetical investments [s]he did not make."  *In re*
     *Morgan Stanley & Van Kampen*, 2006 WL 1008138, * 10; *see also Blue Chip Stamps v.*

28   *Manor Drug Stores*, 421 U.S. 723, 734 (1975) (holding plaintiffs have no claim for securities
     fraud based on allegations that they would have purchased a security but for fraud).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

allegations of the Complaint survive this motion, however, Plaintiff's claims as to defendant WMI, the publicly-traded indirect parent company of defendant WMFS and former parent of WM Advisors and WM Distributor, should not be among them.  Plaintiff has alleged two bases for liability against WMI – that it is primarily liable for its own supposed misconduct in defendants' "heinous" scheme to defraud, Complaint ¶¶ 10, 24, 28; and that it is liable as the "controlling person" of other "WAMU" defendants who are primarily liable.  Neither suffices to state a claim against WMI.

A.   <u>Plaintiff Has Failed to Plead Facts Establishing Grounds for Primary Liability.</u>

By their terms, Sections 11 and 12(a)(2) of the Securities Act may impose liability only upon persons who offer or sell securities, issue false prospectuses, or underwrite the securities offered by such false prospectuses.  15 U.S.C. §§ 77k(a), 77*l*(a)(2).  Plaintiff does not allege that WMI falls into any of these categories, and her direct Securities Act claims must fail as to WMI.

With respect to Plaintiff's claims under the Exchange Act, the Supreme Court has long rejected any theory of civil liability based upon claims that a defendant "aided and abetted" other principal actors in violating the law.  *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177-78 (1994); *see also In re Charter Comm., Inc., Sec. Litig.,* 443 F.3d 987, 992 (8th Cir. 2006).  To make out a claim for fraud under Section 10(b) of the Exchange Act, Plaintiff must plead, with particularity, facts showing that WMI (along with each of the other defendants against whom the claim is brought) itself violated Section 10(b) and Rule 10b-5.  *See Simpson v. AOL Time Warner*, 452 F.3d 1040, 1046, 1048 (9th Cir. 2006).  To meet this burden, Plaintiff must plead facts showing that WMI was either a "speaker" of the purportedly misleading statements, was intricately involved in the purportedly misleading statements' preparation, or engaged in conduct "that had the principal purpose and effect of creating a false appearance of fact in furtherance of the [purported] scheme" to defraud investors. *Id.* at 1048.

The Complaint fails to even specify which of the defendants made the purportedly misleading statements in the 2004 Prospectus.  *See* Complaint ¶¶ 30-39.  Nonetheless, the Court

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

31

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

1  may take judicial notice that the WM Trusts were the issuers of the 2004 Registration Statement

2  and Prospectus.  *See* RJN Exh. C at 1-2; G at 1-2.  What Plaintiff fails to specify, however, is

3  what role she contends WMI played in either the issuance or dissemination of the 2004

4  Registration Statement or any purportedly fraudulent scheme, such that it might be held liable as

5  a primary violator of the Exchange Act.  Indeed, there is no allegation that WMI signed or

6  approved the 2004 Registration Statement.  *Cf. Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1061

7  (9th Cir. 2000).

8  From Plaintiff's vague and conclusory group pleading, it cannot be determined whether

9  Plaintiff is contending that WMI did anything beyond being silently aware of what its affiliated

10  subsidiaries were doing.  *See* Complaint ¶¶ 36, 81.  Mere knowledge about what other companies

11  are doing cannot support a direct claim against WMI.  *See Paracor Fin., Inc. v. Gen. Elec.*

12  *Capital Corp.*, 96 F. 3d 1151, 1157 (9th Cir. 1996); *see also Simpson,* 452 F.3d at 1050

13  ("Participation in a legitimate transaction, which does not have a deceptive purpose or effect,

14  would not allow for a primary violation even if the defendant knew or intended that another party

15  would manipulate the transaction to effectuate a fraud.").

16  To the extent Plaintiff attempts to premise primary liability against any of the defendants

17  on a purported "scheme to defraud," she has failed to plead facts that could give rise to "scheme

18  liability" under Rule 10b-5.  To impose "scheme liability," Plaintiff must allege specific facts

19  showing that the defendants engaged in a "deceptive act," meaning a transaction or conduct that

20  had "the *principal purpose and effect* of . . . creat[ing] the false appearance of fact."  *See Simpson*,

21  452 F.3d at 1048.  Plaintiff has pled no such facts.  The incentive arrangements themselves are

22  not illegal or improper; and the transactions are undertaken to promote distribution of the Funds,

23  *not* for the principal purpose and effect of creating a "false appearance of fact."  *Id*.  There is

24  nothing in the Complaint from which it could be inferred that any of the defendants, much less

25  WMI, had a *principal deceptive purpose* in connection with the fee-sharing arrangements.

26  Therefore, any attempt to invoke "scheme liability" as a basis for finding WMI (or any other

27  defendant) to be a "primary violator" of the Exchange Act fails.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7560974.9

32

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS (07-CV-0385-DMS-CAB)

**B.**     **Plaintiff's "Controlling Person" Claims Must Fail.**

Plaintiff also alleges that WMI is secondarily liable under Section 15 of the Securities Act and Section 20(a) of the Exchange Act for the alleged primary violations of the other defendants, purportedly because WMI controlled the primary violators.  Complaint ¶¶ 70-75, 93-98.

Initially, control person liability may exist only where underlying claims against the alleged primary violators survive dismissal.  *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 883 (N.D. Cal. 2004).  Since Plaintiff's underlying claims fail for the reasons set forth above, the control person claims against WMI fail too.

Beyond this, Plaintiff's control person claims against WMI fail on their own terms, because Plaintiff has not alleged facts amounting to "actual control" and "culpable participation" by WMI with respect to the challenged revenue-sharing arrangements among WM Advisors, WM Distributor, and WMFS.[18]  *See In re Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal. 2003) ("The . . . defendant must have exerted actual control and have been a culpable participant in the alleged Securities Act violations.") (citing *Durham v. Kelly*, 810 F.2d 1500, 1504 (9th Cir. 1987)).  Plaintiff fails to allege how WMI had actual power or influence over the primarily liable defendants, or even to describe the exact nature of the relationship between the parties.  *Durham,* 810 F.2d at 1503-04 ("To establish that someone is a 'controlling person' the complainant must show that there was a relationship between the controlling and controlled person and that actual power or influence was exerted over the alleged controlled person").  Plaintiff's conclusory pleading that WMI is liable "by virtue of its position as a controlling person" does not satisfy her burden.  Complaint ¶¶ 72, 93; *see In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir. 1996) ("conclusory allegations of law and unwarranted inference are insufficient to defeat a motion to dismiss for failure to state a claim").  The control person claims should be dismissed.

---

[18]   Although Sections 15 and 20(a) differ with respect to the underlying primary violations, the same standard applies to both of the claims as they relate to WMI.  *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, n.4 (9th Cir. 1990); *see also Durham*, 810 F.2d at 1503; *In re Calpine*, 288 F. Supp. 2d at 1088.  As a result, Plaintiff's claims are addressed together here.

1   IX.   **<u>CONCLUSION</u>**

2        For the foregoing reasons and the reasons stated in Principal's Motion to Dismiss, the

3   Complaint should be dismissed, without leave to amend.

4   DATED:  June 25, 2007                    Respectfully submitted,

5                                            MORGAN, LEWIS & BOCKIUS LLP

6
                                             By: _____/s/_____
7                                                       Joseph E. Floren

8                                            Attorneys for Defendants Washington Mutual,
                                             Inc. and WM Financial Services, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28