1   **FINKELSTEIN & KRINSK LLP**
    Jeffrey R. Krinsk (State Bar No. 109234)
2   Mark L. Knutson (State Bar No. 131770)
    William R. Restis (State Bar No. 246823)
3   501 West Broadway, Suite 1250
    San Diego, California 9210-3579
4   Telephone: (619)238-1333
    Facsimile: (619) 238-5425
5
    Attorneys for plaintiff
6   Luz. M. Zapien

7

8                  **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**
9                        **AT SAN DIEGO**

10

11  LUZ M. ZAPIEN, Individually And On Behalf      )   Case No. 3:07-cv-00385-DMS-CAB
    Of All Others Similarly Situated,              )
12                                                 )
                                                   )
13                Plaintiff,                       )   **FIRST AMENDED CLASS ACTION**
                                                   )   **COMPLAINT FOR VIOLATION OF**
14                                                 )   **THE FEDERAL SECURITIES LAWS**
    v.                                             )
15                                                 )
                                                   )
16  WASHINGTON MUTUAL, INC., WM TRUST I,           )
    WM  TRUST  II,WM  STRATEGIC  ASSET             )
17  MANAGEMENT  PORTFOLIOS,  LLC,  WM              )   **JURY TRIAL DEMANDED**
    FINANCIAL SERVICES, INC., WM ADVISORS,         )
18  INC., WM FUNDS DISTRIBUTOR, INC., EDGE         )
    ASSET  MANAGEMENT,  INC.,  PRINCIPAL           )
19  FINANCIAL  GROUP,  INC.,  PRINCIPAL            )
    INVESTORS FUND, INC., PRINCIPAL FUNDS          )
20  DISTRIBUTOR, INC.,                             )
                                                   )
21                Defendants.                      )
                                                   )
22  _____      )

23

24

25

26

27

28

---
FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS
                                    PAGE 1

1    Plaintiff Luz M. Zapien ("Plaintiff"), by and through counsel, alleges the following based
2 upon the investigation of counsel, which included a review of United States Securities and Exchange
3 Commission ("SEC") filings, as well as other regulatory filings, reports, and advisories, press
4 releases, and media reports about Washington Mutual, Inc., and Principal Financial Group, Inc. and
5 their related entities also named herein as defendants. Plaintiff believes that substantial additional
6 evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for
7 discovery.

## INTRODUCTION

9    1.    This is a federal class action that seeks to redress a scheme by defendants to
10 defraud investors. For years, the WAMU Fund Companies (as defined herein) had an insidious
11 undisclosed "preferred list" of proprietary Washington Mutual mutual funds, and misleadingly
12 disclosed or omitted material information regarding their "revenue-sharing" (i.e. kickback) and other
13 non-cash incentive programs (the "Shelf-Space Programs"). The Shelf-Space Programs were
14 designed and instituted to drive sales and improperly incent the broker/dealers at Washington
15 Mutual Financial Services ("WMFS") to push Washington Mutual Inc.'s ("WAMU") proprietary
16 group of funds, the WM Group of Funds (the "Proprietary Funds") regardless of the appropriateness
17 of the Proprietary Funds or superior alternatives for the individual retail investor.[1] Instead of offering
18 fair, honest, and unbiased advice to Plaintiff and other investors, WMFS gave predetermined, biased
19 recommendations and pushed clients into its own funds. The Shelf-Space Programs allowed the
20 WAMU Fund Companies to improperly maximize returns at the expense of retail investors and
21 enjoy millions of dollars in kickbacks from other WAMU Fund Companies, with whom WMFS had
22 struck secret deals. The WAMU Fund Companies must be held liable for their failure to disclose

23

24

---

25    [1]The Proprietary Funds, as described in this complaint are: Money Market, Tax-Exempt
26 Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small
   Cap Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock, California
27 Money, Short Term Income, California Municipal, California Insured Intermediate Municipal,
   Growth, International Growth, Small Cap Growth, Strategic Growth, Conservative Growth,
28 Balanced, Conservative Balanced, and Flexible Income.

1  these "revenue sharing" kickback schemes and the inherent and insurmountable conflicts of interest
2  they created.

3        2.       Plaintiff brings this federal class action on behalf of all persons - other than
4  defendants and any person or entity related to or affiliated with any defendant - who purchased or
5  otherwise acquired shares, units or other like interests of any of the Proprietary Funds, as listed
6  below, between March 1, 2004 and March 1, 2005, inclusive, through WMFS, and were damaged
7  thereby. Plaintiff is pursuing remedies for defendants' violations of the Securities Act of 1933 (the
8  "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").[2]

9        3.       This action charges defendants with engaging in an unlawful and deceitful course
10  of conduct designed to improperly financially advantage the WAMU Fund Companies to the
11  detriment of Plaintiff and other members of the Class.  As an integral part of the WAMU Fund
12  Companies' scheme to enhance revenue, WAMU created layers of affiliate companies to skim fees
13  and other charges from its retail investors with the understanding that its retail brokerage arm,
14  WMFS (and its sales force), would steer as many unwitting clients as possible into these Proprietary
15  Funds under the guise of unbiased investment advice.

16        4.       The WAMU Fund Companies hid the existence and true nature of Shelf-Space
17  Programs from Plaintiff and the Class, knowing that if the truth were revealed, no reasonable
18  investor would invest in the Proprietary Funds due to the biased and conflicted advice of WMFS and
19  its sales team. The WAMU Fund Companies utilized disclosures stating that WMFS and its
20  "Investment Professionals" (hereinafter referred to as "Salesmen") "may" receive the kickbacks

21

22        [2] Plaintiff alleges violations of Section 11 of the Securities Act (15 U.S.C. § 77k, *material*
23  *misrepresentation or omission in registration statement*) against the Registrants and Principal
    Investors Fund; Section 12(a) of the Securities Act (15 U.S.C. § 77(l), *untrue statement or omission*
24  *in prospectus*) against the WAMU Fund Companies, WMFS and Principal Defendants; and Section
    15 of the Securities Act (15 U.S.C. § 77o, *control person liability Securities Act*) against WAMU
25  and the Principal Defendants. Plaintiff also alleges violations of Section 10(b) of the Exchange Act
    (15 U.S.C. § 78j(b)) and Rules 10b-5 (17 C.F.R. § 240.10b-5, *manipulative / deceptive artifice to*
26  *defraud - false / misleading statement*) by the Registrants and Principal Investors Fund;  and
27  violations of Rule10b-10 ( 17 C.F.R. § 240.10b-10, *failure by dealer to disclose remuneration*)
    against WMFS;  and violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t, *control*
28  *person liability Exchange Act*), by WAMU, the Principal Investors Fund, and Principal.

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1  complained of, despite having *already* entered into pre-determined, specific, and negotiated
2  arrangements for participation in the "preferred list(s)", "revenue sharing" kickbacks, and non-cash
3  incentives to WMFS and its Salesmen. The Registrants had the duty to state *all* facts that were
4  necessary to make their affirmative statements not misleading because the mutual fund asset market
5  requires crystal-clear disclosure understandable by the layman

6      5.     Of late, mutual fund issuers have been under increased scrutiny for violations of
7  various securities laws. Linda Chatman Thomsen, Deputy Director of the SEC's Division of
8  Enforcement, said recently that "undisclosed receipt of revenue sharing payments from a select group
9  of mutual fund families create[s] a conflict of interest. When customers purchase mutual funds, they
10  should be told about the *full nature and extent* of any conflict of interest that may affect the
11  transaction." (*emphasis added*) SEC Press Release, Edward Jones to Pay \$75 Million to Settle
12  Revenue Sharing Charges, at http://www.sec.gov/news/press/2004-177.htm.

13      6.     The SEC has recognized that partial or non-disclosure of incentive arrangements
14  for the sale of mutual funds create conflicts of interest and violate the anti-fraud provisions of the
15  federal securities laws. *See* Confirmation Requirements and Point of Sale Disclosure Requirements
16  for Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation Requirement
17  Amendments, and Amendments to the Registration Form for Mutual Funds, 69 Fed.Reg. 6438, at
18  6440 (Feb. 10, 2004).

19      7.     WAMU's illegal practices were particularly heinous given the nature of the clients
20  they defrauded. The typical mutual fund investor is an unmarried, middle-class individual in his or
21  her forties with a median household income of \$55,000. Approximately 98% of mutual fund
22  shareholders say their investments constitute long-term savings and about 77% cite retirement
23  savings as their primary financial goal. David J. Carter, *Mutual Fund Board and Shareholder Action*,
24  3 VILL. J. & INV. MGM'T at 8.

## JURISDICTION AND VENUE

26      8.     This Court has jurisdiction over the subject matter of this action pursuant to
27  section 22 of the Securities Act (15 U.S.C. § 77v); section 27 of the Exchange Act (15 U.S.C. §
28  78aa); and 28 U.S.C. §§ 1331, 1337.

1    9.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15

2 U.S.C. § 78aa) and 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged fraud, including

3 the preparation and dissemination of materially false and misleading information, occurred within

4 this District.

5    10.    In connection with the acts alleged herein, Defendants directly or indirectly, used

6 the means and instrumentalities of interstate commerce, including but not limited to the mails,

7 interstate telephone communications, and the facilities of the national securities markets.

8
## PARTIES

9    11.    Plaintiff Luz M. Zapien, is a resident of San Diego, California. Plaintiff Zapien

10 is a novice investor, who in 2000, made her very first investment by purchasing $5,000 worth of

11 shares, units or like interests of the Proprietary Funds (Growth & Income and West Coast Equity

12 Funds) through WMFS as broker in San Diego. As a direct and proximate result of each of the

13 Prospectus' false and misleading statements regarding the "revenue sharing" kickbacks and other

14 non-cash incentives paid to WMFS and its Salesmen, and the material omissions that the Proprietary

15 Funds were on a "preferred list", Plaintiff Zapien affirmatively elected to reinvest any dividends in

16 December of each year , and did in fact reinvest all dividends derived from the Proprietary Funds

17 back into additional shares, units or other like interests of the Proprietary Funds in December of each

18 year. Plaintiff Zapien's shares, units or like interest in the Proprietary Funds, although paid for by

19 Plaintiff Zapien, were placed in the name of her mother, Maria Carmen Higareda.

20    12.    Defendant Washington Mutual, Inc. ("WAMU") is a financial services company

21 organized as a Washington corporation, that at all times material maintained its corporate

22 headquarters at Seattle, Washington, and during the Class Period was the parent entity of defendants

23 WM Trust I, WM Trust II, WM Strategic Asset Management Portfolios, LLC, WM Financial

24 Services, Inc., WM Funds Distributor, Inc., WM Shareholder Services, Inc., and WM Advisors, Inc.

25    13.    Defendant WM Trust I is an open-end management investment company,

26 organized as a Massachusetts business trust, and issued the following Proprietary Funds during the

27 Class Period: Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income,

28

1  High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth & Income, West
2  Coast Equity, and Mid Cap Stock.

3      14.     Defendant WM Trust II is an open-end management investment company
4  organized as a Massachusetts business trust, and issued the following Proprietary Funds during the
5  Class Period: California Money, Short Term Income, California Municipal, California Insured
6  Intermediate Municipal, Growth, International Growth, and Small Cap Growth.

7      15.     Defendant WM Strategic Asset Management Portfolios, LLC ("WM Portfolios")
8  is an open-end management investment company, organized as a Massachusetts limited liability
9  company, and issued the following Proprietary Funds during the Class Period: Strategic Growth,
10  Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

11      16.     WM Trust I, WM Trust II, and WM Portfolios, are collectively referred to herein
12  as the "Registrants."

13      17.     Defendant WM Financial Services, Inc. ("WMFS")  is a financial services
14  company organized as a Washington corporation, that at all times material maintained its corporate
15  headquarters at Seattle, Washington, and during the Class Period, acted as broker/dealer for WAMU
16  and the Proprietary Funds.

17      18.     Defendant WM Advisors, Inc. ("WM Advisors") is a financial services company
18  organized as a Washington corporation, and during the Class Period, acted as the investment advisor
19  for the Registrants and the Proprietary Funds.

20      19.     Defendant WM Funds Distributor, Inc. ("WM Funds Distributor") is a financial
21  services company organized as a Washington corporation, and during the Class Period, acted as the
22  distributor for the Registrants and the Proprietary Funds.

23      20.     Defendant Edge Asset Management, Inc. ("Edge") is the successor in interest to
24  some or all of the liabilities of WM Advisors complained of herein.  Edge is a financial services
25  company organized as a Washington corporation, that at all times material maintained its corporate
26  headquarters at Seattle, Washington.

27      21.     The Registrants, WM Advisors, WM Funds Distributor, and Edge are collectively
28  referred to herein as the "WAMU Fund Companies".

1    22.    Defendant Principal Financial Group, Inc., ("Principal") is a financial services
2  company organized as a Delaware corporation, that at all times material maintained its corporate
3  headquarters at Des Moines, Iowa. As of January 2007, Principal acquired and became the parent
4  company of the Proprietary Funds, now merged into Principal Investors Fund, Inc.

5    23.    Defendant Principal Investors Fund, Inc. ("Principal Investors Fund") is the
6  successor in interest to WM Trust I, WM Trust II, and WM Strategic Asset Management Portfolios
7  (the "Registrants"), registrants for the Proprietary Funds. Principal Funds is a management
8  investment company organized as a Maryland corporation, that at all times material maintained its
9  corporate headquarters at Des Moines, Iowa.

10    24.    Defendant Principal Funds Distributor, Inc. ("Principal Funds Distributor") is the
11  successor in interest to some or all of the liabilities of WM Funds Distributor as complained of
12  herein. Principal Funds Distributor is organized as a Washington corporation, with its principal place
13  of business in Sacramento County California.

14    25.    Principal, Principal Investors Fund, and Principal Funds Distributor, are
15  collectively referred to herein as the "Principal Defendants."

16                              **SUBSTANTIVE ALLEGATIONS**

17    26.    While promoting the Proprietary Funds to Plaintiff and the Class, WMFS
18  represented them as being better than other funds available. WMFS clients were led to believe that
19  WMFS Salesmen were recommending the Proprietary Funds based on objective analysis which
20  indicated that such Funds would perform better than offerings from other fund companies.

21    27.    WMFS and its Salesmens' evaluation of the Proprietary Funds was neither
22  objective nor performance-based. Instead, unbeknownst to Plaintiff and the Class, the WAMU Fund
23  Companies blatantly abused their affiliation with WMFS and its Salesmen to gain access to WMFS
24  events, office parties, training and educational meetings and conferences. The Proprietary Funds
25  significantly benefitted by being placed on a "preferred list" requiring less overhead expenditures.
26  Representatives from the WAMU Fund Companies were given unrestricted access to WMFS branch
27  offices and were invited to corporate training and marketing events. Consequently, representatives
28  from the WAMU Fund Companies were given increased opportunities to interact with WMFS

1  Salesmen to promote the sale of the Proprietary Funds. The relevant Prospectuses failed to disclose
2  the nature and extent of the WAMU Fund Companies' access and influence over the sales practices
3  of WMFS and its Salesmen.

4       28.     During the Class Period, the WAMU Fund Companies channeled secret "revenue
5  sharing" kickbacks and other non-cash incentives to its retail brokerage arm, WMFS and its
6  Salesmen, pursuant to the Shelf-Space Program(s). The Shelf-Space Programs channeled investment
7  advisor fees, distributor commissions, 12b-1 fees, and other fees paid out of Plaintiff and the Class'
8  investment principal to improper "revenue sharing" payments to WMFS and its Salesmen. The
9  Shelf-Space Programs were instituted for the purpose of driving sales of the Proprietary Funds to
10 Plaintiff, the Class, and other retail investors, to the exclusion of other investments that did not
11 participate in WMFS' "preferred list" or "revenue sharing programs."

12      29.     The Registrants' deceived Plaintiff and the putative Class into thinking that the
13 fees complained of were for worthwhile investment advice or for something of value, when in fact,
14 such fees were merely a cover for funneling "revenue sharing" kickbacks to WMFS and its
15 Salesmen. Absent the fees and other cash and non-cash incentives complained of herein, Plaintiff
16 and the putative Class' total amount of fees, and thus the resulting diminution of the Proprietary
17 Funds' Net Asset Value ("NAV"), would have been less.

18      30.     Plaintiff and each of the Class members purchased shares or other ownership units
19 in the Proprietary Funds pursuant to a registration statement and prospectus. The registration
20 statements and prospectuses pursuant to which Plaintiff and the other Class members purchased their
21 shares or other ownership units in the Proprietary Funds are referred to collectively herein as the
22 "Prospectuses."

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1   **Misleading Statements And Omissions**

2   31.   In their March 1, 2000, March 1, 2001, March 1, 2002, and March 1, 2003

3   Proprietary Funds Prospectus, the Registrants issued the following materially misleading statements:

4
    The Distributor may, from time to time, pay to other dealers, in connection with retail
5   sales or the distribution of shares of a Portfolio or Fund, material compensation in the
    form of merchandise or trips. Salespersons, including representatives of WM
6   Financial Services, Inc. (a subsidiary of Washington Mutual), and any other person
    entitled to receive any compensation for selling or servicing Portfolio or Fund shares
7   may receive different compensation with respect to one particular class of shares over
    another, and may receive additional compensation or other incentives for selling
8   Portfolio or Fund shares.

9   32.   Plaintiff and members of the Class were entitled to and did receive the Registrants'

10  March 1, 2002, and March 1, 2003 Prospectuses, each of which failed to disclose the following

11  material facts:

12  (a) WAMU had adopted a policy to incent WMFS and its Salesmen to aggressively push

13  the Proprietary Funds on unsuspecting investors;

14  (b) pursuant to that policy, WMFS and its Salesmen in fact received valuable compensation

15  in the form of "revenue sharing" kickbacks, and other non-cash incentives for foisting the Proprietary

16  Funds on investors, the source and amount of which was not disclosed;

17  (c) the "revenue sharing" kickbacks provided by WAMU included and include, the

18  "Advisor Paid Fee" first disclosed in connection with the March 1, 2005 Prospectuses for the

19  Proprietary Funds, and unspecified compensation tied to the length of time Plaintiff and the Class

20  hold their Proprietary Funds;

21  (d) the source of funding for the "revenue sharing" kickbacks and non-cash compensation

22  are/were paid from investment advisor fees, distributor commissions, and 12b-1 fees paid by Plaintiff

23  and the Class from their investment principal;

24  (e) the "revenue sharing" kickbacks and non-cash compensation (including the Advisor

25  Paid Fee) received by WMFS and its Salesmen created incentives to push shares or other ownership

26  units of the Proprietary Funds to the exclusion of other investment alternatives;

27  (f) WMFS had placed the Proprietary Funds on a "preferred list" of funds in exchange for

28  the "revenue sharing" kickbacks and other non-cash compensation as described above;

1    (g) the commissions paid to Salesmen to push sales of the Proprietary Funds are higher than

2    commissions for comparable non-proprietary mutual funds offered by WMFS;

3    (h) the only investment advantage associated with Proprietary Funds relative to other

4    investments was almost always an advantage to the WAMU Fund Companies and WMFS, all at the

5    expense of Plaintiff and the Class;

6    (i) the "revenue sharing" kickbacks and non-cash compensation described herein created

7    insurmountable conflicts of interest between WMFS, its Salesmen and Plaintiff and the Class; and

8    (j) pursuant to the unlawful policies and practices described herein, defendants benefitted

9    financially at the expense of the Plaintiff and the Class.

10    33.    In their March 1, 2004 Proprietary Funds Prospectus, the Registrants issued the

11    following false and/or materially misleading statements:

12    WM Advisors may make payments, at its expense, to dealers or other financial
      intermediaries at an annual rate of up to 0.50% of the average daily net assets of
13    shares of the Portfolios.[ ¶ ]

14    The Distributor, at its expense, may provide additional compensation to dealers.
      These payments generally represent a percentage of a qualifying dealer's sales and/or
15    the value of shares of the Portfolios or Funds within a qualifying dealer's client
      accounts. Such payments may also include reimbursement for expenses associated
16    with qualifying dealers' conferences, transaction (or "ticket") charges and general
      marketing expenses. ... [¶]
17

18    The Distributor may, from time to time, pay to dealers, in connection with retail sales
      or the distribution of shares of a Portfolio or Fund, material compensation in the form
19    of promotional material or educational meetings. Salespersons, including
      representatives of WM Financial Services, Inc. (a subsidiary of Washington Mutual),
20    and any other person entitled to receive any compensation for selling or servicing
      Portfolio or Fund shares may receive different compensation with respect to one
21    particular class of shares over another, and may receive additional compensation or
      other incentives for selling Portfolio or Fund shares. (*emphasis added*).

22    34.    Plaintiff and members of the Class were entitled to and did receive the Registrants'

23    March 1, 2004 Prospectuses, each of which failed to disclose the following material facts:

24    (a) WAMU had adopted a policy to incent WMFS and its Salesmen to aggressively push

25    the Proprietary Funds on unsuspecting investors;

26    (b) pursuant to that policy, WMFS and its Salesmen in fact received valuable compensation

27    in the form of "revenue sharing" kickbacks, and other non-cash incentives for foisting the Proprietary

28    Funds on investors, the source and amount of which was not disclosed;

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1    (c) the "revenue sharing" kickbacks provided by WAMU included and include, *inter alia,*
2    the "Advisor Paid Fee" first disclosed in connection with the March 1, 2005 Prospectuses for the
3    Proprietary Funds, and unspecified compensation tied to the length of time Plaintiff and the Class
4    hold their Proprietary Funds;

5    (d) the statements that the challenged "payments" are "at [the WM Funds Distributor's]
6    expense, is false because WM Funds Distributor derives and derived its revenue exclusively from
7    fees paid by Plaintiff and the Class from investment principal.

8    (e) the source of funding for the "revenue sharing" kickbacks and non-cash compensation
9    are/were paid from investment advisor fees, distributor commissions, and 12b-1 fees paid by Plaintiff
10   and the Class from their investment principal;

11   (f) the "revenue sharing" kickbacks and non-cash compensation (including the Advisor Paid
12   Fee) received by WMFS and its Salesmen created incentives to push shares or other ownership units
13   of the Proprietary Funds to the exclusion of other investment alternatives;

14   (g) WMFS had placed the Proprietary Funds on a "preferred list" of funds in exchange for
15   the "revenue sharing" kickbacks described above;

16   (h) the commissions paid to Salesmen to push sales of the Proprietary Funds are higher than
17   commissions for comparable non-proprietary mutual funds offered by WMFS;

18   (i) the only investment advantage associated with Proprietary Funds relative to other
19   investments was almost always an advantage to the WAMU Fund Companies and WMFS, all at the
20   expense of Plaintiff and the Class;

21   (j) the "revenue sharing" kickbacks and non-cash compensation described herein created
22   insurmountable conflicts of interest between WMFS, its Salesmen and Plaintiff and the Class; and

23   (k) pursuant to the unlawful policies and practices described herein, defendants benefitted
24   financially at the expense of the Plaintiff and the Class.

25   35.   Prospectuses and their Statements of Additional Information ("SAI's) are required
26   to disclose all material facts in order to provide investors with information that will assist them in
27   making an informed decision about whether to invest in a mutual fund. The law requires that such

28

disclosures be in straightforward and easy to understand language such that it is readily comprehensible to the average investor.

36. Each of the Proprietary Funds Prospectuses and their SAIs issued during the Class Period failed to adequately disclose to Plaintiff and the Class material information about the "preferred lists," the "revenue sharing" kickbacks, and non-cash incentive programs associated with them.

37. The disclosures above lead a reasonable investor to believe that the "revenue sharing" kickback and incentive programs *may* or *may not* exist, when in truth, the WM Advisors and/or WM Funds Distributor had *already* entered into pre-determined, specific, and negotiated arrangements for participation in the "preferred list(s)", "revenue sharing" kickbacks, and non-cash incentives to WMFS and its Salesmen. The Registrants had the duty to state *all* facts that were necessary to make their affirmative statements not misleading.

38. On December 30, 2004, the Registrants' filed with the SEC a revised Registration Statement containing the March 1, 2005 Prospectus for the Proprietary Funds (the "Revised Prospectus"), which was not disseminated to Plaintiff and the Class until, at least, March 2005. The Revised Prospectus stated:

WM ADVISORS ALSO OFFERS <u>REVENUE SHARING PAYMENTS</u>, REFERRED TO AS AN "ADVISOR PAID FEE" TO ALL FINANCIAL INTERMEDIARIES WITH ACTIVE SELLING AGREEMENTS WITH THE DISTRIBUTOR. THE ADVISOR PAID FEE IS PAID AT AN ANNUAL RATE OF UP TO 0.50% OF THE AVERAGE NET ASSETS OF CLASS A AND CLASS B SHARES OF THE PORTFOLIOS SOLD THROUGH SUCH INTERMEDIARIES AND AN ANNUAL RATE OF UP TO 0.25% OF THE AVERAGE NET ASSETS OF CLASS C SHARES OF THE PORTFOLIOS SOLD THROUGH SUCH INTERMEDIARIES. THESE PAYMENTS ARE <u>MADE FROM WM ADVISORS' PROFITS</u> AND MAY BE PASSED ON TO YOUR INVESTMENT REPRESENTATIVE AT THE DISCRETION OF HIS OR HER FINANCIAL INTERMEDIARY FIRM. THESE PAYMENTS MAY CREATE AN INCENTIVE FOR THE FINANCIAL INTERMEDIARIES AND/OR INVESTMENT REPRESENTATIVES TO RECOMMEND OR OFFER SHARES OF THE PORTFOLIOS OVER OTHER INVESTMENT ALTERNATIVES.

In addition to the commissions paid at the time of sale, ongoing payments and the Advisor Paid Fee, some or all of which may be paid to financial intermediaries (and, in turn, to your investment representative), the Distributor and its affiliates, at their expense, currently provide additional payments to financial intermediaries that sell shares of the Portfolios for distribution services and educational support. Although payments made to each qualifying financial intermediary in any given year may vary, it will generally not exceed the sum of (a) XX% of the current year's sales of Portfolio

shares by that financial intermediary and (b) XX% of average daily net assets attributable to Portfolio shares that financial intermediary over the year. These sums include payments to reimburse directly or indirectly the costs incurred by these financial intermediaries and their associated investment representatives in connection with educational seminars and training and marketing efforts related to the WM Group of Funds for the firms' employees and/or their clients and potential clients. The costs and expenses associated with these efforts may include travel, lodging, entertainment and meals. For 2004, the Distributor's additional payments to these firms for distribution services and educational support related to the WM Group of Funds was approximately [0.xx]% of the average monthly assets of the WM Group of Funds, or approximately $[xxxxxx].

A number of factors are considered in determining the amount of these additional payments, including each financial intermediary's WM Group of Funds sales, assets and redemption rates, and the willingness and ability of the financial intermediary to give the Distributor access to its investment representatives for educational and marketing purposes. In some cases, financial intermediaries will include the WM Group of Funds on a "preferred list." The Distributor's goals include making the investment representatives who interact with current and prospective investors and shareholders more knowledgeable about the WM Group of Funds so that they can provide suitable information and advice about the Portfolios and related investor services.

IF ONE MUTUAL FUND SPONSOR MAKES GREATER DISTRIBUTION ASSISTANCE PAYMENTS THAN ANOTHER, YOUR INVESTMENT REPRESENTATIVE AND HIS OR HER FINANCIAL INTERMEDIARY MAY HAVE AN INCENTIVE TO RECOMMEND ONE FUND COMPLEX OVER ANOTHER. SIMILARLY, IF YOUR INVESTMENT REPRESENTATIVE OR HIS OR HER FINANCIAL INTERMEDIARY RECEIVES MORE DISTRIBUTION ASSISTANCE FOR ONE SHARE CLASS VERSUS ANOTHER, THEN THEY MAY HAVE AN INCENTIVE TO RECOMMEND THAT CLASS. (*emphasis added*).

39.     The Registrants' explicit disclosure of the "preferred list(s)," "advisor paid fees," and *the inherent conflict of interest therein,* is in stark contrast to previous purported disclosures as described above. The detail provided in the March 1, 2005 Prospectus demonstrates the Registrants' acknowledgment that such preferred list(s) and other previously undisclosed incentives are material to any reasonable investor.

40.     The WAMU Fund Companies put in place the "preferred list(s)", "revenue sharing" kickbacks, and non-cash incentives to WMFS and its Salesmen in 1997. Thereafter, in the Registrants' March 1998 prospectus, the Registrants' stated that WM Funds Distributor "may" pay "additional compensation or other incentives for selling [Proprietary Fund] shares." As demonstrated above, the Registrants utilized essentially identical language through 2003, with minimal additional detail in 2004 until finally revealing in 2005 that WMFS and its Salesmen were in fact involved in

1  the Shelf-Space Program(s). The Registrants' purported "disclosures" were not drafted in the
2  abstract, but were created in response to the Shelf-Space Programs. The fact that the disclosures
3  came after the Shelf-Space Programs were put in place, and evolution of the purported disclosures
4  over time demonstrate that the Registrants intentionally sought to disclose as little information as
5  possible about the Shelf-Space Programs.

6      41.     The Registrants' March 1, 2005 Prospectus did not actually or constructively put
7  Plaintiff or the Class on notice that the WAMU Fund Companies were *in the past* engaged in the
8  activities complained of, as purported "disclosures" during the Class Period were unclear and
9  intended by the Registrants to be vague and ambiguous. The March 1, 2005 Prospectus made no
10  remedial disclosures of past activity, and contained no statement that its purported disclosures
11  applied retroactively to amend previous prospectuses, and Plaintiff and the Class reasonably believed
12  that such purported disclosures represented a change in practice by the WAMU Fund Companies.

13      42.     The Registrants did not adequately disclose the Shelf-Space Programs as such, nor
14  did its disclosure state sufficient facts about such Programs for Plaintiff and the Class to appreciate
15  the dimension of the conflicts of interest inherent in them. Plaintiff and members of the Class never
16  would have paid the shelf-space fees had the existence or nature of the fees been disclosed.

17      43.     The WAMU Fund Companies have not been the subject of news reports
18  concerning their Shelf-Space Program(s). In addition, the WAMU Fund Companies and WMFS have
19  not been publicly reprimanded by the SEC, National Association of Securities Dealers ("NASD"),
20  or similar enforcement body for its efforts to "steer" clients into the Proprietary Funds. Accordingly,
21  Plaintiff and members of the Class did not have actual or constructive knowledge that the
22  undisclosed activities complained of herein were taking place during the Class Period.

23      44.     Although the various fees charged to mutual fund investors may seem small for
24  each individual investor, mutual funds are long-term investment vehicles where compounded
25  expenses have a significant impact on returns. Seemingly small, yet compounding, fees create drastic
26  erosion on returns over time. Because the majority of investors in mutual fund assets are working,
27  middle-class, and typically financially unsophisticated, the mutual fund asset market requires crystal-
28  clear disclosure understandable by the layman.

1    45.    Plaintiff is certain that, upon opportunity for discovery, testimony from WMFS
2  Salesmen will reveal systematic inducements and rigid requirements that Salesmen neglect their
3  duties to clients, and instead sell proprietary products laden with excessive and improper fees,
4  commissions and other incentives.

### Scienter Allegations

6    46.    As alleged herein, the Registrants acted with scienter in that the Registrants knew
7  that the public documents and statements issued or disseminated in the name of the Proprietary
8  Funds were materially false and misleading, knew that such statements and documents would be
9  issued or disseminated to the investing public, and knowingly and substantially participated or
10  acquiesced in the issuance or dissemination of such statements and documents as primary violations
11  of the federal securities laws. As set forth herein in detail, the Registrants, by virtue of their
12  possession of information reflecting the true facts regarding the Proprietary Funds, their control over,
13  and/or receipt and/or modification of Proprietary Funds' materially misleading statements and/or
14  their associations with the Proprietary Funds which made them privy to confidential information
15  concerning the Proprietary Funds, culpably participated in the fraudulent course of conduct alleged
16  herein.

17    47.    The fact that the Registrants have the Shelf-Space Program(s) in place indicates
18  that the Registrants know and believe such Programs drive and increase sales. By virtue of the
19  detailed descriptions of the Shelf-Space Program(s) and their inherent conflicts of interest contained
20  in purported disclosures after the Class Period, defendants recognized the existence and nature of
21  such Program(s) to be material to a reasonable investor. By virtue of the existence of the Shelf-Space
22  Program(s), the Registrants' directors knew about the already in place "preferred list(s)," "revenue
23  sharing" kickbacks and other non-cash incentives provided to WMFS and its Salesmen, but drafted,
24  authorized and thereafter left in place intentionally vague disclosures.

25    48.    The fact that the Registrants stated falsely in the March 1, 2005 Prospectus that
26  WM Advisor and WM Funds Distributor make payments "at its expense", when in reality those
27  payments were derived directly from Plaintiff and the Class' advisor fees, loads, commissions,
28

1  distributor fees and 12b-1 fees, indicates that the Registrants' knew the programs were improper and
2  were attempting to limit their exposure for engaging in the Shelf-Space Programs.

3      49.      The WAMU Fund Companies, WMFS and its Salesmen reaped huge rewards from
4  the Shelf-Space Program(s) and had an incentive to keep them secret. WMFS and its Salesmen
5  received excessive sales commissions and other payments, including non-cash incentives for selling
6  Proprietary Fund shares in lieu of other investments. WMFS and its Salesmen also received
7  undisclosed cash and non-cash remuneration when sales of the Proprietary Funds exceeded a certain
8  amount, or when Plaintiff and the Class held Proprietary Fund shares in excess of a specified period
9  of time. Similarly, increasing sales of the Proprietary Funds infused more assets and therefore more
10  fees to the WAMU Fund Companies, in the form of investment advisor fees, loads, commissions,
11  distributor fees and 12b-1 fees. As the WAMU Fund Companies and WMFS were all subsidiary
12  companies of WAMU, they were working under a common scheme to increase profits for the
13  common benefit of WAMU.

14      50.      The Registrants and WMFS disclosed their actions and policy only after the illegal
15  activities and scandals in the mutual fund industry were finally revealed to the public in 2004. The
16  Registrants took these actions in a transparent and belated attempt to "clean up" their disclosures
17  and minimize their potential liability. The Registrants therefore knew their policies and conduct
18  regarding Proprietary Fund sales were wrong and improper. In light of this conscious strategy, the
19  failure to disclose the full extent of the "preferred list", revenue-sharing, kickback and incentive
20  programs raises a strong inference of scienter.

21      51.      While the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78)
22  establishes a safe harbor to protect individuals and companies giving investment advice, the safe
23  harbor does not apply here. The safe harbor provision does not apply where defendants, as here,
24  knew at the time they were issuing statements that the statements contained false and misleading
25  information and thus lacked any reasonable basis for making them.

26                          **Damages Allegations**

27      52.      A mutual fund company is very different from a traditional corporation, in that a
28  mutual fund is a mere shell, a pool of assets consisting mostly of portfolio securities that belongs to

1 the individual investors holding shares in the fund. The management of this asset pool is largely in
2 the hands of an investment advisor, an independent entity which generally organizes the fund and
3 provides it with investment advice, management services, office space and staff.

4      53.      Unlike a traditional corporation, if those in charge of a mutual fund engage in
5 wrongful activities negatively impacting the mutual fund, investors are directly impacted because
6 a mutual fund is nothing more than a collection of the investors' money. When a cost is imposed
7 on a traditional corporation, that cost impacts the book value of the corporation, but it does not
8 necessarily impact the market price of the corporation's shares. Thus, there is no direct impact of
9 those costs on the shareholder. In contrast, costs imposed on a mutual fund directly reduce the price
10 at which the fund's shares are bought and sold, and do directly and immediately impact fund
11 shareholders.

12      54.      In addition, mutual fund shares do not trade at a price set by the public market.
13 Rather, they are bought from the fund and sold back to the fund at net asset value ("NAV") of the
14 fund per share in a method provided by statute. Opened ended mutual funds such as the Registrants'
15 Proprietary Funds are required to issue redeemable securities, which are defined as "any security...
16 under the terms of which the holder, upon its presentation to the issuer... is entitled... to receive
17 approximately his proportionate share of the issuer's current net assets, or the cash equivalent
18 thereof." 15 U.S.C. § 80a-2(a)(32). The value of an investor's mutual fund is determined by
19 subtracting a fund's liabilities from its assets to arrive at the fund's NAV. When paid, the
20 undisclosed fees and charges at issue here immediately reduced that Proprietary Funds' NAV per
21 share, decreasing the amount for which Plaintiff and the Class are entitled to redeem their shares.

22      55.      The Registrants did not disclose the Shelf-Space Program(s) that the undisclosed
23 fees were paying for. Plaintiff and the Class assumed wrongly – as a direct and proximate result of
24 the Registrants' non-disclosure and misrepresentation – that they would be paying out of their
25 principal only fees for services that accrued to the benefit of Plaintiff and members of the Class. In
26 reality, Plaintiff and the Class' principal was funding the Shelf-Space Program(s) system of
27 payments which were being used to induce Plaintiff and the Class members to hold their shares of
28 the Proprietary Funds, purchase additional shares of the Proprietary Funds, and induce third to

1  purchase shares of the Proprietary Funds, all of which provided no benefit to Plaintiff and the Class,
2  and in fact actually dissipated the NAV of their assets in the Proprietary Funds.

3      56.    The Shelf-Space Program(s) system of payments caused Plaintiff and the Class an
4  economic loss: absent those payments, Plaintiff and the Class' total amount of fees, and thus the
5  resulting diminution of their investment's NAV, would have been smaller

6      57.    As a result of WAMU's conduct alleged above, Plaintiff and the Class have
7  suffered damages. The damages suffered by Plaintiff and the Class were a foreseeable consequence
8  of WAMU's misleading statements, omissions and misconduct, particularly in light of the fact that
9  net returns for the Proprietary Funds were diminished as a result of the undisclosed and improper
10 kickbacks and incentives WMFS and its Salesmen took therefrom. Plaintiff and the Class would not
11 have purchased the Proprietary Funds, and paid the related commissions and fees associated with
12 the Proprietary Funds, had they known of the illegal and improper practices the Registrants used to
13 direct them into the Proprietary Funds as alleged above. By investing in the Proprietary Funds,
14 Plaintiff and the Class received a return on their investment that was substantially less than the return
15 on investment they would have received had they invested the same dollars in a mutual fund that did
16 not engage in the asset dissipating "revenue sharing" kickbacks and other non-cash incentives
17 employed by the WAMU Fund Companies and WMFS. Alternatively, investors could have invested
18 fewer dollars in non-Proprietary Funds to obtain a rate of return equal to or greater than that obtained
19 from the comparable Proprietary Fund.

20     58.    Additionally, Plaintiff and the Class were deceived into buying shares of the
21 Proprietary Funds at an artificially inflated rate. Plaintiff and the Class accepted, as an integral
22 aspect of purchasing shares of the Proprietary Funds, that they would be required to pay fees and
23 expenses against their ownership interests in the Proprietary Funds, with the understanding that those
24 charges were legitimate outlays for services that would benefit the mutual fund and contribute
25 positively to its value. In truth, a significant portion of those expenses were not being used to
26 provide the services promised, but rather to increase the profits of the WAMU Fund Companies and
27 WMFS by financing the Shelf-Space Programs challenged in this lawsuit. As a result, the values
28 of the Proprietary Funds were less than they appeared to Plaintiff and the Class.

1    59.    Plaintiff and the Class have also suffered damages through commissions paid by
2  them for their purchase of shares of the Proprietary Funds. Had Plaintiff and the Class known about
3  the practices alleged above, they would not have paid such commissions. Plaintiff and the Class'
4  damages as a result of the commissions, fees and other charges paid for shares of the Proprietary
5  Funds were a foreseeable consequence of Defendants' false and misleading statements and
6  omissions.

7                **PRINCIPAL'S ACQUISITION OF THE PROPRIETARY FUNDS**

8    60.    On July 25, 2006, Principal and its subsidiary, Principal Management Corporation
9  entered into an agreement with WAMU to acquire all of the outstanding stock of the following
10  subsidiaries: WM Advisors, WM Funds Distributor, and WM Shareholder Services, Inc. (the
11  "Acquisition"). On August 11, 2006, the Board of Trustees of WM Trust I, WM Trust II and WM
12  Portfolios approved the proposed Acquisition pursuant to which each of the Proprietary Funds would
13  combine with and into the corresponding separate acquiring fund of Principal Investors Fund (the
14  "Acquiring Funds"). The Acquisition was approved by the Proprietary Fund shareholders on
15  December 15, 2006. By January 2007, the Acquisition was instantiated.

16    61.    Under the Acquisition, (i) all the assets and certain stated liabilities of the
17  Proprietary Funds were transferred to its corresponding Acquiring Fund in exchange for Class A,
18  Class B, Class C and Institutional Class ("Class I") shares of the Acquiring Fund; (ii) holders of
19  Class A, Class B, Class C and Class I shares of the Proprietary Funds received, respectively, that
20  number of Class A, Class B, Class C and Class I shares of the corresponding Acquiring Fund equal
21  in value at the time of the exchange to the value of the holder's Proprietary Fund shares; and (iii) the
22  Proprietary Funds were liquidated and dissolved.

23    62.    WM Advisors was renamed Edge Asset Management, Inc., but remains in Seattle
24  and employs many of WM Advisors' portfolio managers.

25    63.    WM Funds Distributor formed the management and staff of Principal Funds
26  Distributor.

27

28

1   64.     Four members of the Board of Trustees for the Registrants were elected to the
2   board of Principal Investors Fund. This group includes Dick Yancey, Dan Pavelich, Kristi Blake and
3   William G. Papesh.

4   65.     The Principal defendants and the WAMU defendants thus share a unity of interest
5   with respect to the issues of this lawsuit and are the alter ego of their corresponding WAMU entity.
6   Such unity dictates that the Principal defendants be held jointly and severably liable for the
7   misconduct of the WAMU entities as alleged in this complaint. The Principal entities have acquired
8   the WAMU entities liabilities for the conduct as alleged in this lawsuit. The Registrants' board
9   members are now board members of Principal Investors fund.

10                              **CLASS ALLEGATIONS**

11  66.     Plaintiff brings this action as a class-action pursuant to Federal Rules of Civil
12  Procedure 23 on behalf of a Class consisting of all persons or entities that purchased or otherwise
13  acquired shares, units or like interests in any of the Proprietary Funds, between March 1, 2004 and
14  March 1, 2005, inclusive, through WMFS acting as broker, and who were damaged thereby.
15  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other
16  entity related to or affiliated with any defendant.

17  67.     The members of the Class are so numerous that joinder of all members is
18  impracticable. While the exact number of Class members is unknown to Plaintiff at this time and
19  can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of
20  members in the proposed Class. Record owners and other members of the Class may be identified
21  from records maintained by defendants, and may be notified of the pendency of this action by mail,
22  using the form of notice similar to that customarily used in securities class actions.

23  68.     Plaintiffs claims are typical of the claims of the members of the Class as all
24  members of the Class are similarly affected by Defendants' wrongful conduct complained of herein
25  in violation of federal law. Plaintiff does not have interests adverse to the Class.

26  69.     Plaintiff will fairly and adequately protect the interests of the members of the Class
27  and has retained counsel competent and experienced in class action and securities litigation.

28

70.     Common questions of law and fact exist as to all members of the Class and predominate over any questions wholly affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether statements made by defendants to the investing public during the Class period misstated, omitted or concealed material facts;

(b)     whether defendants' false and misleading statements and omissions are material as a matter of law;

(c)     whether Plaintiff and the Class' Proprietary Funds assets were dissipated by the "revenue sharing" kickback and other non-cash incentive payments pursuant to the Shelf-Space Programs;

(d)     whether the Registrants acted with scienter when issuing the false and misleading statements and omissions;

(e)     whether the Shelf-Space Program(s) created insurmountable conflict(s) of interest for WMFS and its Salesmen;

(f)     whether the federal securities laws were violated by Defendants' acts as alleged herein; and

(g)     to what extent the members of the Class have sustained damages and the proper measure of damages.

71.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

72.     Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

1

2

#### COUNT I
#### Against the Registrants and Principal Investors Fund
#### For Violations Of Section 11 Of The Securities Act

3    73.    Plaintiff repeats and re-alleges each and every allegation contained above as if

4  fully set forth herein, except that for purposes of this claim, Plaintiff expressly excludes and

5  disclaims any allegation that could be construed as alleging fraud or intentional or reckless

6  misconduct.

7    74.    This claim is brought pursuant to Section 11 of the Securities Act (15 U.S.C. §

8  77k) against the Registrants on behalf of Plaintiff and the Class.

9    75.    The Registrants were the registrant(s), and Principal Investors Fund is the

10  successor in interest to the Registrants, for one or more of the respective Proprietary Funds' shares

11  sold to Plaintiff and the Class. The Registrants issued, caused to be issued and participated in the

12  issuance of the materially false and misleading written statements and/or omissions of material fact

13  that were contained in the respective Prospectuses and are statutorily liable under Section 11.

14    76.    Prior to purchasing ownership units of the Proprietary Funds, Plaintiff was

15  provided the appropriate Prospectus(es) and, similarly, prior to purchasing the ownership units of

16  each of the other Proprietary Funds, all Class members likewise received the appropriate

17  Prospectus(es). Plaintiff and other Class members purchased shares of the Proprietary Funds

18  traceable to the false and misleading Prospectus(es).

19    77.    As set forth above, the statements contained in the Prospectuses were materially

20  false and misleading for a number of reasons, including that they failed to disclose, and actively

21  concealed, that it was the practice of the WAMU Fund Companies to reward WMFS and its

22  Salesman for selling the Proprietary Funds, while discouraging selling products offered by

23  competitors not on the "preferred list" or otherwise participating in the "revenue-sharing" kickback

24  and incentive Shelf-Space Programs described herein. The Prospectuses failed to disclose and

25  misrepresented material and adverse facts as described in paragraphs 32 and 34 of this complaint.

26    78.    Plaintiff and the Class have sustained damages as a result of WAMU's violations.

27    79.    At the time they purchased the Proprietary Funds shares traceable to the defective

28  Prospectuses, Plaintiff and the Class were without knowledge of the facts concerning the false and

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1  misleading statements or omissions alleged herein and could not reasonably have possessed such
2  knowledge.

3      80.    This claim was brought within the applicable statute of limitations.

4                                          **COUNT II**
       **Against the WAMU Fund Companies, WMFS and Principal Defendants**
5            **For Violations of Section 12(a) Of The Securities Act**

6      81.    Plaintiff repeats and re-alleges each and every allegation contained above as if
7  fully set forth herein, except that for purposes of this claim, Plaintiff expressly excludes and
8  disclaims any allegation that could be construed as alleging fraud or intentional or reckless
9  misconduct.

10     82.    This claim is brought pursuant to Section 12(a) of the Securities Act (15 U.S.C.
11  § 77l(a)), against the WAMU Fund Companies and WMFS for their failure to disclose the "revenue
12  sharing" kickbacks and non-cash compensation for the Shelf-Space Program(s) that created
13  insurmountable conflicts of interest.

14     83.    The WAMU Fund Companies and WMFS were the "offeror" and/or " seller", and
15  the Principal Defendants are the successor in interest to the "offeror" and/or " seller", within the
16  meaning of the Securities Act, for one or more of the respective Proprietary Fund shares sold to
17  Plaintiff and the Class members because they either: (a) transfer title to shares of the Proprietary
18  Funds to members of the Class; (b) transfer title to shares of the Proprietary Funds to the Proprietary
19  Funds distributors that in turn sold shares of the Proprietary Funds as agent for the Registrants;
20  and/or (c) solicited the purchase of shares in the Proprietary Funds by members of the Class,
21  motivated in part by a desire to serve the financial interests of WAMU to the detriment of Plaintiff
22  and the Class.

23     84.    During the Class Period, WAMU Fund Companies and WMFS' failed to disclose
24  the existence of the "preferred list", the "revenue sharing" kickbacks and other incentives alleged
25  herein that WMFS and its Salesman received in exchange for pushing WMFS clients into the
26  Proprietary Funds.  These incentives created insurmountable conflicts of interest that were never
27  disclosed to Plaintiff and the Class.

28

1    85.    The WAMU Fund Companies also caused to be issued to members of the Class

2  the Prospectuses that failed to disclose that fees, commissions, and other charges from the purchase

3  and maintenance of the Proprietary Funds were used to pay WMFS and its Salesman for directing

4  Plaintiff and the Class into the Proprietary Funds, and the existence of the conflicts of interest

5  described herein for WMFS and its Salesmen.

6    86.    As set forth above, when they became effective, the Proprietary Funds'

7  Prospectuses were misleading as they omitted or insufficiently disclosed the material facts alleged

8  in, at least, paragraphs 32 and 34 of this complaint.

9    87.    Plaintiff and the other members of the Class have sustained damages as a result

10  of the WAMU Fund Companies, WMFS, and the Principal Defendants' violations.

11    88.    At the time they purchased the Proprietary Fund shares traceable to the defective

12  Prospectuses, Plaintiff and the Class were without knowledge of the facts concerning the material

13  misleading statements and omissions alleged herein and could not reasonably have possessed such

14  knowledge.

15    89.    This claim was brought within the applicable statute of limitations.

16                              **COUNT III**
                **Against WAMU and the Principal Defendants**
17          **for Violation of Section 15 of the Securities Act**

18    90.    Plaintiff repeats and re-alleges each and every allegation contained above as if

19  fully set forth herein, except that for purposes of this claim, Plaintiff expressly excludes and

20  disclaims any allegation that could be construed as alleging fraud or intentional or reckless

21  misconduct.

22    91.    This claim is brought pursuant to Section 15 of the Securities Act (15 U.S.C. §

23  77o), against WAMU as a control person of the WAMU Fund Companies and WMFS, and against

24  the Principal Defendants as successors in interest to WAMU, the WAMU Fund Companies and

25  WMFS. It is appropriate to treat these defendants as a group for pleading purposes and presume that

26  the false, misleading, and incomplete information complained about herein are the collective actions

27  of WAMU, the WAMU Fund Companies, WMFS, and the Principal Defendants.

28

1    92.    The Registrants violated Section 11 of the Securities Act. And the WAMU Fund

2 Companies and WMFS violated Section 12(a) of the Securities Act by their acts and omissions as

3 alleged in this complaint. By virtue of their positions as controlling persons, WAMU and the

4 Principal Defendants are liable pursuant to Section 15 of the Securities Act.

5    93.    WAMU is and was a "control person" of the WAMU Fund Companies and WMFS

6 within the meaning of Section 15 of the Securities Act, by virtue of its position of operational control

7 and/or stock ownership in the WAMU Fund Companies and WMFS. At the time that the WAMU

8 Fund Companies and WMFS sold one or more shares of the Proprietary Funds to Plaintiff and the

9 Class – by virtue of its position of control and authority over the WAMU Fund Companies and

10 WMFS – WAMU directly and indirectly, had the power, authority, influence and control, and

11 exercised same, over the decision making and actions of the WAMU Fund Companies and WMFS

12 to engage in the wrongful conduct complained of herein. WAMU had the ability to prevent the

13 issuance of the statements alleged to be false and misleading or could have caused such statements

14 to be corrected.

15    94.    In particular, WAMU had direct supervisory involvement in the operations of the

16 WAMU Fund Companies and WMFS, and is presumed to have had the power to control or influence

17 the particular acts, misleading statements, and omissions giving rise to violations of the Securities

18 Act as alleged herein, and to have exercised same.

19    95.    As a direct and proximate result of WAMU's wrongful conduct, Plaintiff and the

20 Class suffered damages in connection with their purchases and/or sales of interests in the Proprietary

21 Funds during the Class Period.

22    96.    The Principal Defendants were "control person(s)" of the WAMU Fund

23 Companies and WMFS within the meaning of Section 15 of the Securities Act, by virtue of their

24 position of ownership, agency or otherwise and unity of interest as successor. The Principal

25 Defendants conducted due diligence into the operations of the WAMU Fund Companies and WMFS

26 before acquiring such entities in 2007 and had the ability to cause the statements alleged to be false

27 and misleading to be corrected.

28

1    97.    As a direct and proximate result of the Principal Defendants' wrongful conduct,

2    Plaintiff and the Class suffered damages in connection with their purchases and/or sales of interests

3    in the Proprietary Funds during the Class Period.

**COUNT IV**
**Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder Against the Registrants and Principal Investors Fund**

6    98.    Plaintiff repeats and re-alleges each and every allegation contained above as if

7    fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities

8    Act.

9    99.    This claim is brought against the Registrants pursuant to Section 10(b) of the

10   Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder.

11   100.   During the Class Period, the Registrants carried out a plan, scheme and course of

12   conduct which was intended to, and throughout the Class Period did, deceive the investing public,

13   including Plaintiff and the Class as alleged herein, and caused Plaintiff and the Class to purchase

14   Proprietary Funds containing improper fees, commissions and other charges, and to otherwise suffer

15   damages. In furtherance of this unlawful scheme, plan and course of conduct, the Registrants took

16   the actions set forth herein.

17   101.   The Registrants (i) employed devices, schemes, and artifices to defraud; (ii) made

18   untrue or misleading statements of material fact and/or omitted to state material facts necessary to

19   make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct

20   which operated as a fraud and deceit upon purchasers of the Proprietary Funds, including Plaintiff

21   and the Class, in an effort to enrich themselves through undisclosed manipulative tactics by which

22   they wrongly dissipated the assets of the Proprietary Funds in violation of Section 10(b) of the

23   Exchange Act and Rule 10b-5. The Registrants are sued as primary participants of the wrongful and

24   illegal conduct and scheme charged herein, and Principal Investors Fund is sued as the successor in

25   interest to the Registrants.

26   102.   The Registrants, individually and in concert, directly and indirectly, by the use,

27   means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in

28   a continuous course of conduct to conceal the adverse material information about the improper

1   "preferred list(s)", "revenue sharing" kickbacks and other incentives and the inherent conflicts of
2   interest alleged herein.

3           103.    The Registrants employed devices and artifices to defraud and engaged in a
4   course of conduct and scheme as alleged herein to unlawfully manipulate and profit from increased
5   sales and/or commissions, fees or other charges paid to them as a result of its undisclosed "preferred
6   list", "revenue sharing" kickback and incentive arrangements described above and thereby engaged
7   in transactions, practices and a course of conduct which operated as a fraud and deceit upon Plaintiff
8   and the Class.

9           104.    The Registrants had actual knowledge of the misrepresentations and omissions of
10  material facts set forth above, or acted with reckless disregard for the truth in that they failed to
11  ascertain and to disclose such facts, even though the facts were available to them. The Registrants'
12  material misleading statements and omissions were done knowingly or recklessly and for the purpose
13  and effect of concealing the truth.

14          105.    As a result of dissemination of the materially false and misleading information and
15  failure to disclose material facts, as set forth in paragraphs 32 and 34 above, the NAVs for the
16  Proprietary Funds were diminished during the Class Period. In ignorance of the fact that NAVs for
17  the Proprietary Funds were diminished, and relying directly or indirectly on the false and misleading
18  statements made by the Registrants, or upon the purported integrity of WAMU, the WAMU Fund
19  Companies and WMFS, and/or on the public absence of material adverse information that was
20  known to or recklessly disregarded by the Registrants but not disclosed in public statements by the
21  Registrants during the Class Period, Plaintiff and the Class paid fees, commissions, loads, and other
22  charges to the WAMU Fund Companies during the Class Period for the "revenue sharing"
23  kickbacks, "Advisor Paid Fees", and non-cash compensation to the WAMU Fund Companies and
24  WMFS and were damaged thereby.

25          106.    By virtue of the foregoing, the Registrants have violated Section 10(b) of the
26  Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5) promulgated thereunder.

27

28

1    107.    As a direct and proximate result of the Registrants' wrongful conduct, Plaintiff and
2    the Class suffered damages in connection with their respective purchases and/or sales of the
3    Proprietary Funds shares during the Class Period.

4    108.    This claim was brought within the applicable statute of limitations.

5                                                **COUNT V**
                 **Violation Of Section 10(b) Of The Exchange Act And Rule 10b-10**
6                           **Promulgated Thereunder Against WMFS**

7    109.    Plaintiff repeats and re-alleges each and every allegation contained above as if
8    fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities
9    Act.

10    110.    This claim is brought against WMFS for violation of Section 10(b) of the
11    Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-10 (17 C.F.R. § 240.10b-10) promulgated
12    thereunder.

13    111.    During the Class Period, WMFS and its Salesmen effected transactions in the
14    Proprietary Funds for or with the account of Plaintiff and the Class, and/or induced Plaintiff and the
15    Class to purchase the Proprietary Funds.

16    112.    At or before completion of Class members' purchases of shares, units or other like
17    interests in the Proprietary Funds, WMFS failed to disclose the source and amount of remuneration
18    WMFS and its Salesmen received from the WAMU Fund Companies in connection with Class
19    members' purchases of the Proprietary Funds, as required by Rule 10b-10 (17 C.F.R. § 240.10b-10),
20    promulgated under Section 10(b) of the Exchange Act.

21    113.    The WAMU Fund Companies' payment of such remuneration created
22    insurmountable and undisclosed conflicts of interest for WMFS and its Salesmen. Plaintiff and
23    Class members were thus ignorant of the source and amount of remuneration WMFS and its
24    Salesman received from the WAMU Fund Companies and of the resulting conflicts of interest
25    therein. Had Plaintiff and the Class known of the source and amount of such remuneration and the
26    resulting conflicts of interest, they would not have held, purchased or otherwise acquired shares of
27    the Proprietary Funds, and would not have paid any loads, commissions or fees paid as a result of

28

1  their acquisitions of the Proprietary Funds, and would not have paid the fees or costs associated with

2  ownership of the Proprietary Funds.

3      114.    As a direct and proximate result of Defendants' violations of Rule 10b-10,

4  Plaintiff and the Class suffered damages in connection with their respective purchases and/or sales

5  of the Proprietary Funds shares during the Class Period.

6      115.    At the time they purchased and/or sold the Proprietary Funds shares traceable to

7  the defective disclosures, Class members were without knowledge of the facts concerning the

8  material false and misleading statements and omissions alleged herein and could not reasonably have

9  possessed such knowledge.

10     116.    This claim was brought within the applicable statute of limitations.

11  **COUNT VI**
   **Against WAMU, the Principal Investors Fund, and Principal**
12  **for Violations of Section 20(a) of the Exchange Act**

13     117.    Plaintiff repeats and re-alleges each and every allegation contained above as if

14  fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities

15  Act.

16     118.    This claim is brought pursuant to Section 20(a) of the Exchange Act ( 15 U.S.C.

17  § 78t), against WAMU as a control person of the Registrants and WMFS, and against the Principal

18  Investors Fund as successor in interest to WAMU and the Registrants, and against Principal as

19  successor in interest to WAMU, and WMFS. It is appropriate to treat these defendants as a group

20  for pleading purposes and presume that the false, misleading, and incomplete information

21  complained about herein are the collective actions of WAMU, the Registrants, WMFS, the Principal

22  Investors Fund and Principal .

23     119.    The Registrants violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b))

24  and Rule 10b-5 (17 C.F.R. § 240.10b-5) by their acts, material false and misleading statements and

25  omissions as alleged in this complaint. By virtue of their positions as controlling persons, WAMU

26  and Principal Investors Fund are liable pursuant to Section 20(a) of the Exchange Act.

27     120.    WMFS violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule

28

1  10b-10 (17 C.F.R. § 240.10b-10) by failing to disclose the source and amount of remuneration
2  WMFS and its Salesmen received from the WAMU Fund Companies in connection with Class
3  members' purchases of the Proprietary Funds, as alleged above. By virtue of their positions as
4  controlling persons, WAMU and Principal are liable pursuant to Section 20(a) of the Exchange Act.

5       121.    WAMU was a "control person" of the Registrants and WMFS within the meaning
6  of Section 20 of the Exchange Act, by virtue of its position of operational control and/or ownership.
7  At the time that the Registrants issued the Prospectuses, and separately, at the time WMFS sold one
8  or more shares of the Proprietary Funds to Plaintiff and the Class – by virtue of its position of control
9  and authority over the Registrants and WMFS – WAMU, directly and indirectly, had the power,
10 authority, influence and control, and exercised same, over the decision making and actions of the
11 Registrants and WMFS to engage in the wrongful conduct complained of herein. WAMU had the
12 ability to prevent the issuance of the statements alleged to be false and misleading or could have
13 caused such statements to be corrected.

14      122.    In particular, WAMU had direct supervisory involvement in the operations of the
15 Registrants and WMFS, and is presumed to have had the power to control or influence the particular
16 acts, misleading statements, and omissions giving rise to violations of the Exchange Act as alleged
17 herein, and to have exercised same.

18      123.    As a direct and proximate result of WAMU's wrongful conduct, Plaintiff and the
19 Class suffered damages in connection with their purchases and/or sales of the Proprietary Funds
20 during the Class Period.

21                        **JURY TRIAL DEMAND**

22      124.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands
23 a trial by jury of all of the claims asserted in this Complaint so triable.

24                              **PRAYER**

25 WHEREFORE, Plaintiff and the Class pray for relief and judgement as follows:

26      1.      Judgment declaring that this action is properly maintained as a class action and
27 appointing Plaintiff as Lead Plaintiff and their counsel as Lead Counsel for the Class and certifying
28 them as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

1    2.      Awarding compensatory damages in favor of Plaintiff and the Class against all

2 defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing,

3 in an amount to be proven at trial, including interest thereon;

4    3.      Awarding Plaintiff and the Class recision of their contracts with the defendants,

5 including recovery of all fees which would otherwise apply and recovery of all fees paid to the

6 defendants pursuant to such agreements;

7    4.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in

8 this action, including counsel fees and expert fees; and

9    5.      Such other and further relief as this Court may deem just and proper.

10

11   DATED: 8/24/2007                          By:  ___/s/ William R. Restis___

12
                                              **FINKELSTEIN & KRINSK LLP**
13                                            JEFFREY R. KRINSK
                                              MARK L. KNUTSON
14                                            WILLIAM R. RESTIS
                                              501 West Broadway, Suite 1250
15                                            San Diego, CA 92101-3593
                                              Tel: (619) 238-1333
16                                            Fax: (619) 238-5425
                                              Email: jrk@classactionlaw.com
17
                                              Attorneys for Plaintiff
18                                            Luz M. Zapien

19

20

21

22

23

24

25

26

27

28

## FINKELSTEIN & KRINSK LLP

## WM GROUP OF FUNDS

### AMENDED CERTIFICATION OF NAMED PLAINTIFF
### PURSUANT TO FEDERAL SECURITIES LAWS

I, Luz M. Zapien ("Plaintiff"), declare as to the claims asserted under the federal securities laws, that I have reviewed the Complaint and authorized its filing.

1.      Plaintiff did not purchase the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action.

2.      Plaintiff is willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

3.      Plaintiff's transactions in the securities that are the subject of this action before and during the Class Period are as follows:

| Fund Series | Amount Purchased | Date |
| --- | --- | --- |
| WM Growth & Income and West Coast Equity Class A (Reinvest Option) | $5,000 (initially) | 2000 |
| WM Growth & Income and West Coast Equity Class A | Dividend Reinvestment | December 2000 |
| WM Growth & Income and West Coast Equity Class A | Dividend Reinvestment | December 2001 |
| WM Growth & Income and West Coast Equity Class A | Dividend Reinvestment | December 2002 |
| WM Growth & Income and West Coast Equity Class A | Dividend Reinvestment | December 2003 |
| WM Growth & Income and West Coast Equity Class A | Dividend Reinvestment | December 2004 |

4.      Plaintiff has not sought to serve or served as a representative party for a class in any actions filed under the Securities Exchange Act of 1934 or Securities Act of 1933 within the last three years.

5.      Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's *pro rata* share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

I declare under penalty or perjury that the foregoing is true and correct. Executed this **23** day of August, 2007, at San Diego, California

Signature

Luz. M. Zapien

1 **CERTIFICATE OF SERVICE**

2        I, Andrea Vasquez, certify that on August 24, 2007, I electronically filed the foregoing

3 **FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE**

4 **FEDERAL SECURITIES LAWS** with the Clerk of the Court using the CM/ECF system,

5 which sent notification of such filing to the following individuals:

6

7 **Morgan, Lewis, & Bockius LLP**
Joseph E. Floren
8 One Market
9 Spear Street Tower
San Francisco, CA 94105
10 Tel: 415.442.1000
Fax: 415.442.1001
11 Email: jfloren@morganlewis.com

12 **O'MELVENY & MYERS LLP**
13 Phillip R. Kaplan
610 Newport Center Dr.
14 Newport Beach, CA. 92660
15 Tel: 949 8236909
Fax: 949 8236994
16 Email: pkaplan@omm.com

17

18 DATED:  August 24, 2007          /s/ Andrea Vasquez

Andrea Vasquez
19                                **FINKELSTEIN & KRINSK LLP**
The Koll Center
20                                501 West Broadway, Suite 1250
21                                San Diego, CA 92101
Tel: 619.238.1333
22                                Fax: 619.238.5425

23

24

25

26

27

28

FIRST AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS