1   MORGAN, LEWIS & BOCKIUS LLP
    MICHAEL J. LAWSON, State Bar No. 66547
2   JOSEPH E. FLOREN, State Bar No. 168292
    LISA A. FREITAS, State Bar No. 227109
3   SHEILA A. JAMBEKAR, State Bar No. 239101
    One Market, Spear Street Tower
4   San Francisco, CA  94105-1126
    Tel:  415.442.1000
5   Fax:  415.442.1001
    Email: michael.lawson@morganlewis.com
6          jfloren@morganlewis.com
           lfreitas@morganlewis.com
7          sjambekar@morganlewis.com

8   Attorneys for Defendants Washington Mutual, Inc. and
    WM Financial Services, Inc.
9
    [Additional Parties and Counsel on Signature Page]
10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13

| | |
|---|---|
| 14  LUZ M. ZAPIEN, Individually And On Behalf Of All Others Similarly Situated, | Case No. 07-CV-0385-DMS-CAB |
| 15                        Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| 16                vs. | |
| 17  WASHINGTON MUTUAL, INC., *et al.*, | Date:       January 11, 2008 |
| 18                        Defendants. | Time:      1:30 p.m. Place:     Courtroom 10, 2nd Floor |
| 19 | Judge:    Hon. Dana M. Sabraw |

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION AND SUMMARY OF ARGUMENT .................................................. 1

II.    STATEMENT OF FACTS ................................................................................. 3

       A.     Parties.................................................................................................. 3

       B.     Factual Allegations of the FAC .............................................................. 4

       C.     Claims Alleged in the FAC .................................................................... 6

III.   LEGAL STANDARD ON MOTION TO DISMISS .................................................. 7

IV.    PLAINTIFF LACKS STANDING TO BRING THIS ACTION ................................... 7

       A.     Plaintiff Lacks Article III Standing.......................................................... 7

              1.     Plaintiff Is Not the Real Party in Interest and Has No Standing ................ 8

              2.     Plaintiff's Defective Reform Act Certification Confirms Her Lack
                     of Standing Under Both Article III and the Securities Laws ...................... 9

       B.     Plaintiff Lacks Statutory Standing to Assert Claims Concerning Funds She
              Did Not Purchase. ................................................................................. 10

V.     PLAINTIFF'S CLAIMS ARE TIME-BARRED ..................................................... 11

       A.     The Securities Act Claims Are Time-Barred .......................................... 12

       B.     The Exchange Act Claims Are Time-Barred .......................................... 15

VI.    PLAINTIFF'S CLAIMS FAIL ON THE MERITS ................................................. 15

       A.     There Is No Duty to Disclose the Allegedly Omitted Information...................... 16

              1.     No Law or Rules Required the Allegedly Omitted Disclosures ............... 16

              2.     Plaintiff's Rule 10b-10 Claim Fails ................................................. 18

       B.     Plaintiff Has Failed to Allege a Material Misstatement or Omission .................. 19

              1.     The Purportedly "Secret" Incentive Payments Were In Fact
                     Disclosed ................................................................................... 20

              2.     The 2004 Prospectus Is Not Misleading ............................................ 22

              3.     Plaintiff Fails to Plead that Any Alleged Misstatement or Omission
                     Was Material ............................................................................... 26

       C.     Plaintiff Has Failed to Plead Facts Creating a Strong Inference of Scienter ........ 27

              1.     Plaintiff Fails to Plead Facts Supporting a Strong Inference of
                     Intentional or Deliberately Reckless Misstatements by Defendants.......... 29

              2.     Plaintiff's Motive Allegations Do Not Create a Strong Inference of
                     Scienter ..................................................................................... 31

       D.     Plaintiff Has Failed to Plead Reliance or "Transaction Causation".................... 32

       E.     Plaintiff Fails to Plead "Scheme Liability" Under Rule 10b-5 ......................... 34

VII.   PLAINTIFF HAS FAILED TO PLEAD DAMAGES OR LOSS CAUSATION ............ 34

       A.     Plaintiff Has Not Alleged Damages to Support the Securities Act Claims .......... 34

       B.     Plaintiff Has Not Alleged Loss Causation on the Exchange Act Claims ............. 35

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF CONTENTS**
(continued)

2

Page

3    VIII.   PLAINTIFF'S CONTROLLING PERSON CLAIMS FAIL ........................................... 37

4    IX.    CONCLUSION ............................................................................................................ 40

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

()

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Allen v. Wright,*
    468 U.S. 737 (1984) ............................................................................................. 8

*Arnst v. Stifel, Nicolaus & Co., Inc.,*
    86 F.3d 973 (10th Cir. 1996) ............................................................................... 32

*Basic Inc. v. Levinson,*
    485 U.S. 224 (1988) ...................................................................................... 26, 32

*Bell Atlantic Corp. v. Twombly,*
    127 S. Ct. 1955 (2007) .......................................................................................... 7

*Benzon v. Morgan Stanley Distributors, Inc.,*
    420 F.3d 598 (6th Cir. 2005) ...................................................................... passim

*Berry v. Valence Tech., Inc.,*
    175 F.3d 699 (9th Cir. 1999) ....................................................................... passim

*Betz v. Trainer Wortham & Co.,*
    — F.3d —, 2007 WL 2874369,
    at *6 (9th Cir. Oct. 4, 2007) ......................................................................... 13, 15

*Binder v. Gillespie,*
    184 F.3d 1059 (9th Cir. 1999) ...................................................................... 32, 33

*Blue Chip Stamps v. Manor Drug Stores,*
    421 U.S. 723 (1975) ............................................................................. 10, 11, 37

*Brody v. Transitional Hospitals Corp.,*
    280 F.3d 997 (9th Cir. 2002) ............................................................................... 22

*Castillo v. Dean Witter Discover & Co.,*
    1998 WL 342050 (S.D.N.Y. June 25, 1998) ............................................... passim

*Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,*
    511 U.S. 164 (1994) ............................................................................................ 18

*Copper Mountain Sec. Litig.,*
    311 F. Supp. 2d 857 (N.D. Cal. 2004) ................................................................ 37

*De La Cruz v. Tormey,*
    582 F.2d 45 (9th Cir. 1978),
    *cert. denied,* 441 U.S. 965 (1979) ....................................................................... 7

*Dura Pharm., Inc. v. Broudo,*
    544 U.S. 336 (2005) ............................................................................................ 35

*Durham v. Kelly,*
    810 F.2d 1500 (9th Cir. 1987) ............................................................................ 38

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*Geiger v. Solomon-Page Group, Ltd.,*
   933 F. Supp. 1180 (S.D.N.Y. 1996)......................................................... 30

4

*Goldberger v. Bear, Stearns & Co., Inc.,*
   Fed. Sec. L. Rep. (CCH) ¶ 91,287,

5

   2000 WL 1886605

6

   (S.D.N.Y. Dec. 28, 2000)......................................................................... 10

7

*Gommper v. VISX, Inc.,*
   298 F.3d 893(9th Cir. 2002)..................................................................... 28

8

*Greebel v. FTP Software,*
   939 F. Supp. 57 (D. Mass. 1996) ............................................................... 9

9

10

*Hollinger v. Titan Capital Corp.,*
   914 F.2d 1564 (9th Cir. 1990).............................................................. 28, 38

11

*Howard v. Hui*, No. C 92-3742 (CRB),
   2001 WL 1159780

12

   (N.D. Cal. Sept. 24, 2001)........................................................................ 37

13

*In re AIG Advisor Group Sec. Litig.,*
   2007 WL 1213395

14

   (E.D.N.Y. Apr. 25, 2007) (*AIG I*) ................................................... passim

15

*In re AIG Advisor Group Sec. Litig.,*
   2007 WL 2750676

16

   (E.D.N.Y. Sept. 20, 2007) (*AIG II*)................................................... 26, 27

17

*In re Bank of Boston Corp. Sec. Litig.,*
   762 F. Supp. 1525 (D. Mass. 1991) ............................................................ 7

18

19

*In re Broderbund/Learning Co. Sec. Litig.,*
   294 F.3d 1201 (9th Cir. 2002).............................................................. 34, 35

20

*In re Cabletron Systems, Inc.,*
   311 F.3d 11 (1st Cir. 2002) ...................................................................... 30

21

22

*In re Calpine Corp. Sec. Litig.,*
   288 F. Supp. 2d 1054 (N.D. Cal. 2003) ................................................... 38

23

*In re Eaton Vance Corp. Sec. Litig.,*
   219 F.R.D. 38 (D. Mass. 2003)............................................................. 9, 10

24

25

*In re Keyspan Corp. Sec. Litig.,*
   383 F. Supp. 2d 358 (S.D.N.Y. 2003)....................................................... 20

26

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.,*
   289 F. Supp. 2d 429 (S.D.N.Y. 2003)...................................... 16, 17, 34

27

28

MORGAN, LEWIS &
   BOCKIUS LLP
 ATTORNEYS AT LAW
   SAN FRANCISCO

1-SF/7597506.7                                    ii                    MEMO. SUPPORTING MOTION TO
                                                                     DISMISS FIRST AMENDED COMPLAINT
                                                                           (07-CV-0385-DMS-CAB)

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Morgan Stanley & Van Kampen Mutual Fund Sec. Litig.*,
  2006 WL 1008138 (S.D.N.Y. 2006) .................................................................. passim

*In re Mutual Funds Inv. Litig.*,
  384 F. Supp. 2d 845 (D. Md. 2005) ................................................................. 34, 35

*In re Silicon Graphics, Inc. Sec. Litig.*,
  183 F.3d 970 (9th Cir. 1999) ............................................................... 3, 28, 31, 32

*In re Solomon Smith Barney Mutual Fund Fees Litig.*,
  441 F. Supp. 2d 579 (S.D.N.Y. July 26, 2006) ....................................................... 16

*In re Sonus Networks, Inc. Sec. Litig.*, 2006 WL 1308165
  (D. Mass. May 10, 2006) ......................................................................................... 20

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
  No. C 99-00109 SBA,
  2000 WL 1727405
  (N.D. Cal. Sept. 29, 2000) ................................................................................. 37, 38

*In re Stac Elec. Sec. Litig.*,
  89 F.3d at 1399 (9th Cir. 1996) .................................................................... 12, 20, 21

*In re Syntex Corp. Sec. Litig.*,
  95 F.3d 922 (9th Cir. 1996) .................................................................................... 38

*In re Vantive Corp. Sec. Litig.*,
  283 F.3d 1079 (9th Cir. 2002) ............................................................................... 30

*Kauffman v. Dreyfus Fund, Inc.*,
  434 F.2d 727 (3d Cir. 1970) .................................................................................. 10

*La Mar v. H&B Novelty & Loan Co.*,
  498 F.2d 461 (9th Cir. 1973) .................................................................................... 7

*Lewis v. Casey*,
  518 U.S. 343 (1996) ................................................................................................ 11

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
  416 F.3d 940 (9th Cir. 2005) .................................................................................. 15

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992) ......................................................................................... 7, 8, 9

*Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*,
  434 F. Supp. 2d 233 (S.D.N.Y. 2006) ................................................................ 22, 30

*MGIC Indem. Corp. v. Weisman*,
  803 F.2d 500 (9th Cir. 1986) .................................................................................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7

iii

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Morris v. Wachovia Sec., Inc.*,
   277 F. Supp. 2d 622 (E.D. Va. 2004)................................................................. 18, 31, 32

*Paracor Finance, Inc. v. General Electric Capital Corp.*,
   96 F.3d 1151 (9th Cir. 1996)............................................................................... 37

*Press v. Quick & Reilly, Inc.*,
   218 F.3d 121 (2d Cir. 2000)................................................................................ 19

*Raines v. Bird,*
   521 U.S. 811 (1997).............................................................................................. 8

*Registration Form Used by Open-Ended Management Investment Cos.*,
   SEC Release Nos. 33-7512,
   63 Fed. Reg. 13916 (March 23, 1998) ................................................................ 16

*Robertson v. Dean Witter Reynolds, Inc.*,
   749 F.2d 530 (9th Cir. 1984)............................................................................... 31

*Schwartz v. Pillsbury Inc.*,
    969 F.2d 840 (9th Cir. 1992)............................................................................... 39

*Siemers v. Wells Fargo & Co.*,
   2006 WL 2355411 (N.D. Cal. Aug. 14, 2006)............................................... 24, 25

*Simpson v. AOL Time Warner Inc.*,
   452 F.3d 1040 (9th Cir. 2006)............................................................................. 34

*Sterlin v. Biomune Sys.*,
   154 F.3d 1191 (10th Cir. 1998)........................................................................... 12

*Teachers' Retirement Sys. v. Hunter*,
   477 F.3d 162 (4th Cir. 2007).............................................................................. 30

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007)............................................................................. 16, 28, 30

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976)............................................................................................. 26

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003)................................................................................. 7

*Vervaecke v. Chiles, Heider & Co.*,
   578 F.2d 713 (8th Cir. 1978)............................................................................... 10

*Warth v. Seldin*,
   422 U.S. 490 (1975)............................................................................................... 7

*Whirlpool Fin. Corp. v. GN Holdings, Inc.*,
   67 F.3d 605 (7th Cir. 1995)................................................................................. 21

MORGAN, LEWIS &
   BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7

iv

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1

**TABLE OF AUTHORITIES**
(continued)

2

Page

3

*White v. Melton*,
    757 F. Supp. 267 (S.D.N.Y. 1991).......................................................................... 20

4

*Winer Family Trust v. Queen*,
    2007 WL 2753734
    (3d Cir. Sept. 24, 2007).......................................................................................... 10

6

**Statutes**

7

15 U.S.C.
    § 77*l*(a)............................................................................................................... passim

8

9

15 U.S.C.
    § 77m.................................................................................................................... 12

10

15 U.S.C.
    § 77j(a)(3)............................................................................................................ 22

11

12

15 U.S.C.
    § 77k.......................................................................................................... 6, 20, 34

13

15 U.S.C.
    § 77*o*...................................................................................................................... 6

14

15

15 U.S.C.
    § 78j(b)................................................................................................................... 6

16

15 U.S.C.
    § 78t....................................................................................................................... 6

17

18

15 U.S.C.
    § 78u-4(b)(1).......................................................................................................... 20

19

15 U.S.C.
    § 78u-4(b)(3)(A).................................................................................................... 29

20

21

15 U.S.C.
    § 78u-4(b)(3)(B).................................................................................................... 29

22

15 U.S.C.
    § 77z-1(a)(2)(A)(iv)................................................................................................. 9

23

24

15 U.S.C.
    § 78u-4(a)(2)(A)(iv)................................................................................................ 9

25

17 C.F.R.
    § 230.485(a)(1)...................................................................................................... 14

26

17 C.F.R.
    § 240.10b-10................................................................................... 6, 18, 19, 20, 31, 33

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                          v                    MEMO. SUPPORTING MOTION TO
                                                         DISMISS FIRST AMENDED COMPLAINT
                                                                (07-CV-0385-DMS-CAB)

1

**TABLE OF AUTHORITIES**
**(continued)**

2

**Page**

3

17 C.F.R.
§ 240.10b-5 ............................................................................................... 6, 20, 34

4

17 C.F.R.
5   § 270.8b-16 ...................................................................................................... 22

6

28 U.S.C.
§ 1658(b) ..................................................................................................... 15, 19

7

Fed. R. Civ. Proc.
8   12(b)(1) .............................................................................................................. 7

9

Federal Rule of Civil Procedure
9(b) .................................................................................................................. 20

10

**Constitutional Provisions**

11

U.S. Const. art. III, § 2 ................................................................................................ 8

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1-SF/7597506.7                                    vi        MEMO. SUPPORTING MOTION TO
                                                            DISMISS FIRST AMENDED COMPLAINT
                                                            (07-CV-0385-DMS-CAB)

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.**     <u>**INTRODUCTION AND SUMMARY OF ARGUMENT**</u>

3

Distilled to its essence, Plaintiff's First Amended Complaint ("FAC") continues to assert

4

the untenable claim that defendants perpetrated an insidious "scheme to defraud" in disclosing

5

that certain payments "***may***" be made among some of the defendants in connection with mutual

6

fund sales, when arrangements for those payments were already in place.  Even if Plaintiff had

7

accurately alleged the relevant disclosures on this subject (which she did not), her claim amounts

8

to what the Sixth Circuit Court of Appeals – the only federal appellate court that has addressed

9

similar claims – dismissed as a "semantic quibble."  Worse yet for Plaintiff's case, the SEC

10

filings by the mutual funds at issue in the WM Group of Funds (the "Funds" or "WM Funds")

11

*publicly disclosed* to Plaintiff and the putative class the dealer agreement in use by defendants,

12

which set forth in detail the very fee-sharing arrangements that Plaintiff complains were *not*

13

disclosed.  That agreement also specified that the fee-sharing arrangements could be changed or

14

terminated on short notice, making the word "may" particularly appropriate to describe the

15

arrangements in the Funds' annual prospectus.  Despite Plaintiff's attempts to avoid dismissal by

16

amending her complaint, this is not the stuff of which a securities fraud claim is made.  The FAC

17

must fail.

18

Plaintiff's case fails on preliminary procedural grounds even before her claims are

19

subjected to the exacting scrutiny required by federal law and Rule 9(b).  Plaintiff is not the real

20

party in interest because the purported purchases of the Funds were made not by Plaintiff, but "in

21

the name of her mother."  Plaintiff also lacks standing to assert her purported claims because she

22

has not alleged, and cannot allege, that she purchased the Funds during the putative Class Period

23

(March 1, 2004 to March 1, 2005).  Instead, she alleges only that the automatic reinvestment of

24

dividends occurred during the Class Period, and that they concerned only two of the twenty-four

25

Funds on which the FAC is based.  Beyond this, the FAC is barred in its entirety by the relevant

26

one- and two-year statutes of limitations, because the Funds publicly disclosed the nature and

27

extent of the purportedly "secret" fee payments among the defendants in prospectuses filed with

28

the SEC on December 30, 2004 and February 28, 2005 – over two years before Plaintiff filed this

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7

1

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   action.  Plaintiff's amendment confirms, and has not cured, these fatal defects.

2          Even if Plaintiff had standing and had timely filed this case, her claims must be dismissed

3   as a consequence of her inability to plead specific facts showing why the challenged statements

4   are allegedly false or misleading, as the law requires – something that is impossible given the

5   actual disclosures in this case.  Plaintiff also fails to plead specific facts creating the required

6   "*strong inference*" that defendants acted with intent to defraud.  Under the circumstances alleged

7   here, Plaintiff cannot possibly plead such facts.

8          Plaintiff's claims also fail as a matter of law for the independent reason that Plaintiff has

9   not adequately alleged any damages caused by the purported fraud.  With regard to her claims

10  under the Securities Act of 1933 (the "Securities Act"), Plaintiff has not pleaded – and cannot

11  plead – that she suffered an actual loss in Funds purchased during the Class Period, because the

12  value of the Funds at issue in this case has increased since that time.  As a result, Plaintiff has no

13  claim under the Securities Act.  As for her claims under the Securities Exchange Act of 1934

14  ("Exchange Act"), Plaintiff cannot allege loss causation – *i.e.*, that the purported fraud itself

15  actually caused a loss, as opposed to merely inducing a purchase transaction.  This conclusion is

16  inevitable because the purportedly "secret" arrangements between the defendants had *no impact*

17  *at all* upon the value of the Funds, which was determined *solely* by reference to the value of the

18  investments purchased by the Funds and the fees that were clearly disclosed in the Funds'

19  prospectus.  Indeed, the Funds' prospectus clearly and accurately disclosed *every penny* that was

20  charged against the Funds' assets.  Rather, Plaintiff's "semantic quibble" in this case concerns the

21  degree of clarity with which defendants disclosed that part of these fully disclosed fees would be

22  shared with the brokerage firm that allegedly sold the mutual funds in question, Defendant WM

23  Financial Services, Inc. ("WMFS") – a matter that has no effect upon the value of the Funds or

24  the total fees paid by the Funds and, thus, cannot possibly form the basis for a securities fraud

25  claim under the Exchange Act.

26         In addition, Plaintiff has indiscriminately sued numerous defendants that were not

27  involved in the events at issue and cannot possibly be liable under any theory, whether under the

28  "controlling person" statutes or as purported successors.  The defendants improperly caught up in

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                    2                    MEMO. SUPPORTING MOTION TO
                                                                      DISMISS FIRST AMENDED COMPLAINT
                                                                           (07-CV-0385-DMS-CAB)

1  Plaintiff's dragnet include the holding companies Washington Mutual, Inc. and Principal

2  Financial Group, Inc. and certain affiliated entities, as to which Plaintiff fails to plead facts

3  sufficient to establish successor liability.  These defendants should be dismissed from the case.

4      For these reasons, and because any further attempt at amendment would be futile, this

5  action should be dismissed with prejudice.

6  **II.    STATEMENT OF FACTS**[1]

7      **A.    Parties**

8      During the putative Class Period, Defendants WM Trust I, WM Trust II, and WM

9  Strategic Asset Management Portfolios, LLC (collectively, the "WM Trusts") were registered

10  with the U.S. Securities and Exchange Commission ("SEC") as open-end management

11  investment companies under the Investment Company Act of 1940.  As such, the WM Trusts

12  each issued several series of shares reflecting specific investment strategies, commonly known as

13  mutual funds.  These included the two Funds allegedly purchased by Plaintiff in the name of her

14  mother, the WM Growth & Income Fund and WM West Coast Equity Fund, both of which were

15  issued by WM Trust I.  FAC ¶¶ 11, 13.

16      Defendants WM Advisors, Inc. ("WM Advisors") and WM Funds Distributor, Inc. ("WM

17  Distributor") provided investment management and distribution services, respectively, to the

18  Funds.  The Funds allegedly were sold to Plaintiff and the putative class members by Defendant

19  WMFS, a securities broker-dealer that is registered with the SEC and a member of the National

20  Association of Securities Dealers, Inc. (now known as the Financial Industry Regulatory

21  Authority, Inc.).  FAC ¶ 17.  Defendant Washington Mutual, Inc. ("WMI") is alleged to be the

22  "parent entity" of the WM Trusts, WM Distributor, WM Advisors, and WMFS.[2]  *Id.* ¶ 12.

23      After the close of the alleged Class Period, WM Advisors and WM Distributor were

24

25  [1]    This motion is based on the facts alleged in the FAC and those of which the Court may properly take judicial notice.  *See, e.g.*, *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (approving judicial notice of documents referenced in complaint).

26

27  [2]    As explained in Part VIII, below, WMI is the indirect parent company of Defendant WMFS, and was the indirect parent of Defendants WM Advisors and WM Distributor during the Class Period, but was not and could not be the "parent" of the WM Trusts, which were owned by their shareholders, including Plaintiff.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7    3    MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1 acquired by a subsidiary of defendant Principal Financial Group, Inc. ("Principal") and renamed

2 Edge Asset Management, Inc. ("Edge") and Principal Funds Distributor, Inc. ("Principal

3 Distributor"), respectively.  Thereafter, in January 2007, all assets of the WM Trusts and the

4 Funds were transferred to defendant Principal Investors Fund, Inc. ("Principal Fund"), which is a

5 registered investment company, and all shareholders of the Funds became shareholders of the

6 Principal Fund.  *Id.* ¶¶ 60-65; *see* Request for Judicial Notice and Declaration of Joseph E. Floren

7 in Support of Defendants' Motion to Dismiss ("RJN") Exh. A at 2-3.  Defendants WMI and

8 WMFS remain independent of Principal.[3]

9       **B.**   **Factual Allegations of the FAC**

10     The FAC asserts a putative class action on behalf of all persons who purchased shares of

11 any of the Funds issued by the WM Trusts between March 1, 2004 and March 1, 2005 (the "Class

12 Period") through defendant WMFS.  FAC ¶ 2.  The crux of Plaintiff's FAC is the allegation that

13 the Funds' registration statement ("Registration Statement") and prospectus dated as of March 1,

14 2004 (the "2004 Prospectus"), under which Plaintiff and other class members allegedly purchased

15 shares of the Funds, failed to disclose certain revenue-sharing arrangements involving WMFS and

16 the Funds' "investment adviser and/or distributor."  *Id.* ¶¶ 1, 26-30.

17     The FAC alleges that the Funds' 2000, 2001, 2002, and 2003 Prospectuses made the

18 following supposedly misleading statements (emphases as added by Plaintiff):

19       The Distributor may, from time to time, pay to other dealers, in
20       connection with retail sales or the distribution of shares of a
      Portfolio or Fund, material compensation in the form of
21       merchandise or trips.  Salespersons, including representatives of
      WM Financial Services, Inc. (a subsidiary of Washington Mutual ),
22       and any other person entitled to receive any compensation for
      selling or servicing Portfolio or Fund shares may receive different
23       compensation with respect to one particular class of shares over
      another, and may receive additional compensation or other
24       incentives for selling Portfolio or Fund shares.  *Id.* at ¶ 31.

25     Plaintiff claims that these statements, all made before the Class Period, were materially

26 misleading because defendants had already adopted a "policy" under which WMFS and its sales

27 force received "revenue sharing" "kickbacks" and other incentives, the "*source and amount of*

___

[3]   The WM Trusts, though still in existence, are now essentially defunct entities, with no assets
or shareholders.  *See* RJN Exh. A at 2-3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7        4       MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

*which was not disclosed.*" *Id.* ¶ 32 (emphasis in original).  Plaintiff fails to recognize that the revenue-sharing at issue could be terminated or altered at any time on short notice, making the "may" language in the prospectuses both appropriate and accurate.

More significant are the allegedly misleading statements from the 2004 Prospectus, under which Plaintiff and the class allegedly purchased shares.  The FAC challenges the following statements in the 2004 Prospectus as supposedly misleading (emphases as added by Plaintiff):

> WM Advisors <u>may</u> make payments, at its expense, to dealers or other financial intermediaries at an annual rate of up to 0.50% of the average daily net assets of shares of the Portfolios. [¶]

> The Distributor, at its expense, <u>may</u> provide additional compensation to dealers.  These payments generally represent a percentage of a qualifying dealer's sales and/or the value of shares of the Portfolios or Funds within a qualifying dealer's client accounts.  Such payments may also include reimbursement for expenses associated with qualifying dealers' conferences, transaction (or "ticket") charges and general marketing expenses. … [¶]

> The Distributor <u>may</u>, <u>from time to time</u>, pay to dealers, in connection with retail sales or the distribution of shares of a Portfolio or Fund, material compensation in the form of promotional material or educational meetings.  Salespersons, including representatives of WM Financial Services, Inc. (a subsidiary of Washington Mutual), and any other person entitled to receive any compensation for selling or servicing Portfolio or Fund shares <u>may</u> receive different compensation with respect to one particular class of shares over another, and <u>may</u> receive additional compensation or other incentives for selling Portfolio or Fund shares.  *Id.* ¶ 33.

Plaintiff claims that these disclosures were materially misleading because they "lead a reasonable investor to believe that the kickback and incentive programs *may* or *may not* exist, when in truth, the investment advisor and/or distributor had already entered into pre-determined, specific, and negotiated arrangements for participation in the 'preferred list,' revenue sharing, kickbacks and incentives to WMFS and its Salesmen." *Id.* ¶ 33 (emphasis in original).  Plaintiff maintains that these "arrangements" between the defendants created conflicts of interest because they gave salespeople at WMFS an incentive to steer customers toward the Funds to the exclusion of other investments.  *Id.* ¶ 34.  According to Plaintiff, the allegedly misleading disclosures in the 2004 Prospectus injured investors who purchased the Funds during the Class Period because, had

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7

5

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    they known that the allegedly improper revenue sharing arrangements *did exist* – as opposed to

2    may exist – they would not have purchased shares in the Funds but might instead have purchased

3    other securities that might have performed better. *Id.* ¶¶ 57-59.  Although Plaintiff also alleges

4    that the "fees and charges at issue" reduced the net asset value ("NAV") of the Funds and

5    diminished the Funds' investment returns, *id.* ¶ 56, Plaintiff cannot claim that any of the

6    challenged fees were deducted from the Funds' assets, as all charges to the Funds themselves

7    were fully disclosed in the Funds' Prospectus. *See* RJN Exh. C at 38-45, 78 (Prospectus

8    disclosures of all fees deducted from Funds' assets).  Plaintiff admits her knowledge and

9    acceptance of the fees charged against the Funds, and acknowledges that the FAC concerns the

10    *uses* to which those fees were allegedly put by defendants *after* collecting them.  FAC ¶ 58.

11           **C.**      **Claims Alleged in the FAC**

12           Against this background, Plaintiff, who claims to have purchased two of the Funds "in the

13    name of her mother" in 2000, attempts to plead three types of claims under the federal securities

14    laws.  FAC ¶ 11.  First, Plaintiff asserts that the "Registrants" (defined as the WM Trusts) and

15    Principal Fund are liable under Section 11 of the Securities Act, 15 U.S.C. § 77k, for issuing or

16    participating in the issuance of the allegedly false and misleading 2004 Prospectus; and that the

17    "Registrants," WMFS, and the "Principal Defendants" (defined as Principal, Principal Fund, and

18    Principal Distributor) are liable under Section 12(a) of the Securities Act, 15 U.S.C. § 77*l*(a), for

19    selling shares in the Funds to Plaintiff and the putative class members pursuant to the 2004

20    Prospectus.  FAC ¶¶ 73-89.  Second, Plaintiff claims that the "Registrants" and Principal Fund

21    committed securities fraud in violation of Section 10(b) of the Exchange Act and Rule 10b-5

22    thereunder, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, and that WMFS violated Section 10(b) of

23    the Exchange Act and Rule 10b-10 thereunder, 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-10, by

24    selling the Funds by means of the alleged material misstatements in the 2004 Prospectus, and are

25    thus liable for unspecified damages suffered by Plaintiff in connection with the purchases.  FAC

26    ¶¶ 98-116.  Finally, Plaintiff asserts indirect liability claims under Section 15 of the Securities Act

27    and Section 20(a) of the Exchange Act, 15 U.S.C. §§ 77*o*, 78*t*, against defendant WMI and the

28    Principal Defendants as the alleged "controlling persons" of the alleged primary violators of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7          6          MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    securities laws.  FAC ¶¶ 90-97, 117-123.

2    **III.    LEGAL STANDARD ON MOTION TO DISMISS**

3            A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims stated in the

4    complaint, or in this case, the FAC.  Dismissal is appropriate under Rule 12(b)(6) where the

5    complaint fails to plead sufficient facts stating a claim to relief that is "plausible on its face."  *See*

6    *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 1974 (2007) (dismissing complaint where

7    "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible"); *see*

8    *also De La Cruz v. Tormey*, 582 F.2d 45, 48 (9th Cir. 1978), *cert. denied,* 441 U.S. 965 (1979).

9    In ruling on a 12(b)(6) motion, the court may consider the facts alleged in the complaint,

10   documents attached to or referenced within the complaint, and matters of which judicial notice is

11   proper.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *MGIC Indem. Corp. v.*

12   *Weisman*, 803 F.2d 500, 504 (9th Cir. 1986).  Defendants also move to dismiss for lack of

13   jurisdiction over the subject matter of this case, as a result of Plaintiff's lack of standing to sue

14   under Article III of the Constitution.  *See* Fed. R. Civ. Proc. 12(b)(1).

15   **IV.    PLAINTIFF LACKS STANDING TO BRING THIS ACTION.**

16           To have standing to sue, Plaintiff must allege that she purchased the Funds during the

17   Class Period.  Plaintiff has not done so, however, nor can she amend to cure this defect.  The case

18   should be dismissed with prejudice on this basis alone.

19           **A.    Plaintiff Lacks Article III Standing.**

20           The requirement that Plaintiff plead facts showing that she has standing to sue is

21   jurisdictional and derives from Article III of the Constitution.  *Warth v. Seldin*, 422 U.S. 490, 498

22   (1975) (requiring case or controversy and that plaintiff must assert his or her own legal rights);

23   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff bears the burden of meeting

24   each of the standing requirements).  In securities class actions, courts take special care to ensure

25   that standing requirements are met.  *See La Mar v. H&B Novelty & Loan Co.*, 498 F.2d 461, 469

26   (9th Cir. 1973) (standards are "exacting"); *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp.

27   1525, 1531 (D. Mass. 1991) ("Strict standing requirements are particularly important in the area

28   of securities litigation to curb the risks of vexatious litigation and abuse of discovery.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                    7                        MEMO. SUPPORTING MOTION TO
                                                                          DISMISS FIRST AMENDED COMPLAINT
                                                                          (07-CV-0385-DMS-CAB)

1   Here, Plaintiff asserts that the Fund purchases on which this action is based were made *not*

2   in Plaintiff's name but "in the name of her mother, Maria Carmen Higareda." FAC ¶ 11. What is

3   more, the purchase occurred *not* during the Class Period as required, but sometime in 2000. *Id.*

4   Finally, Plaintiff purports to sue concerning twenty-four different Funds issued by the WM

5   Trusts, but she alleges purchases concerning only two of the Funds. FAC ¶¶ 2, 11. Even if

6   Plaintiff were able to cure the other standing defects by amendment, she could sue only

7   concerning the two Funds actually purchased.

8   ### 1.   Plaintiff Is Not the Real Party in Interest and Has No Standing.

9   Federal courts have jurisdiction to hear a dispute only if it is a "case" or "controversy."

10  U.S. Const. art. III, § 2; *see also Raines v. Bird,* 521 U.S. 811, 818 (1997). One of the necessary

11  elements of the "case" or "controversy" requirement is that the Plaintiff establish that he or she

12  has standing to sue. *Id.* "To meet the standing requirements of Article III, '[a] plaintiff must

13  allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to

14  be redressed by the requested relief.'" *Raines,* 521 U.S. at 818-19 (quoting *Allen v. Wright*, 468

15  U.S. 737, 751 (1984)) (emphasis added). The Supreme Court has "consistently stressed that a

16  plaintiff's complaint must establish that [s]he has a 'personal stake' in the alleged dispute, and

17  that the alleged injury suffered is particularized as to [her]." *Id.* (citing *Lujan*, 504 U.S. at 560-61

18  & n.1) (holding that, to have standing, a plaintiff must have suffered a "particularized" injury,

19  which means that "the injury must affect the plaintiff in a personal and individual way").

20  Plaintiff cannot allege an injury that is personal and particularized as to her with respects

21  to Funds that she never purchased. Accordingly, Plaintiff lacks standing to sue with respect to

22  any Fund that she did not own. The Court should therefore find that Plaintiff lacks Article III

23  standing to sue with respect to the Funds as to which she has not alleged any ownership interest

24  or other connection at all. This clearly requires dismissal of all claims as to all Funds other than

25  the WM Growth & Income Fund and West Coast Equity Fund.

26  Plaintiff also lacks standing under Article III with respect to these two Funds because the

27  FAC alleges that Plaintiff's mother, not Plaintiff, owned them. Accordingly, Plaintiff Luz Zapien

28  has not suffered any "personal injury" with respect to the alleged violations regarding securities

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                              8              MEMO. SUPPORTING MOTION TO
                                                          DISMISS FIRST AMENDED COMPLAINT
                                                          (07-CV-0385-DMS-CAB)

that are not in her name and to which she is not a benefactor.  *See Lujan,* 504 U.S. at 561 & n.1 (to plead standing, a complaint must set forth facts showing that the plaintiffs have "suffered a personal injury, which is fairly traceable to the defendants' allegedly unlawful conduct, and that is likely to be redressed by the relief requested").  Plaintiff does not have a "personal stake" in the alleged dispute – at most, her mother might.  *Id.*  Because Plaintiff lacks Article III standing to sue, her claims do not present a "case" or "controversy," and this Court lacks jurisdiction to adjudicate this action.

### 2.    Plaintiff's Defective Reform Act Certification Confirms Her Lack of Standing Under Both Article III and the Securities Laws.

Congress enacted the Private Securities Litigation Reform Act ("Reform Act") in 1995 to reduce abuses in securities litigation by, among other things, requiring strict certification and eligibility requirements by plaintiffs in securities class actions as a prerequisite to filing suit.  The Reform Act mandates, in pertinent part, that the certification must "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint."  15 U.S.C. §§ 77z-1(a)(2)(A)(iv), 78u-4(a)(2)(A)(iv).  The Reform Act's language is not ambiguous.  Nor is the requirement that the certification specify the transactions during the class period.  *See In re Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38, 42 (D. Mass. 2003) ("Failure of the named Plaintiff to file a certification with the complaint . . . [is] fatal to maintenance of the putative class action.") (quoting *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996)).

Plaintiff filed a belated and defective certification, not along with the original complaint as required by law, but as an exhibit to her Motion for Appointment as Lead Plaintiff under the Reform Act on May 1, 2007.  That certification identified no transactions during the Class Period but instead stated that purchase(s) occurred "in and after 2000."  RJN Exh. B at 1.  Plaintiff filed an amended certification with her FAC identifying an "initial" purchase of $5,000 in two Funds at some point in 2000, with "dividend reinvestments" occurring each December from 2000 through 2004.  RJN Exh. B at 2-3.  Plaintiff's certification thus indicates that *no* transactions occurred during the Class Period except for automatic reinvestments of dividends distributed by the Funds,

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                     9

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

which resulted *not from any purchase decision* during the Class Period, but from the automatic

"reinvest option" established upon the purchase in 2000. *See id.*; RJN Exh. C at 71-72

(prospectus description of default automatic reinvestment option). Even if she were able to sue

on behalf of her mother, Plaintiff could not claim to have been defrauded into making a dividend

reinvestment in 2004 when she made the decision to reinvest dividends in 2000. *See Winer*

*Family Trust v. Queen,* 2007 WL 2753734, *4 (3d Cir. Sept. 24, 2007) (holding that plaintiff had

no standing to sue for securities fraud based on activities occurring after purchase of the security).

Plaintiff's fatally flawed certification failed to identify any purchase transactions during

the purported Class Period as required by the Reform Act. As a result, Plaintiff lacks standing to

sue under Article III and the securities laws, and the case should be dismissed with prejudice.

### B.    Plaintiff Lacks Statutory Standing to Assert Claims Concerning Funds She Did Not Purchase.

Plaintiff cannot bring claims with respect to mutual funds that she never purchased,

because she has no standing to do so. *See In re Eaton Vance,* 219 F.R.D. 38; *see also Vervaecke*

*v. Chiles, Heider & Co.*, 578 F.2d 713, 719 (8th Cir. 1978) (no standing to assert claims arising

out of bond offering in which plaintiff did not participate); *Kauffman v. Dreyfus Fund, Inc.,* 434

F.2d 727, 734 (3d Cir. 1970) (mutual fund shareholder could not bring action on behalf of

shareholders in similarly situated mutual funds in which he did not invest); *Goldberger v. Bear,*

*Stearns & Co., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 91,287, 2000 WL 1886605, at *1 (S.D.N.Y.

Dec. 28, 2000) ("In order to maintain a class action, Plaintiffs must first establish that they have a

valid claim with respect to the shares that they purchased. If the named Plaintiffs have no cause

of action in their own right, their complaint must be dismissed, even though the facts set forth in

the complaint may show that others might have a valid claim."). Actions under the Securities Act

or the Exchange Act may be brought *only* by purchasers or sellers of the securities at issue. 15

U.S.C. § 77*l*(a); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749 (1975); *see also In*

*re AIG Advisor Group Sec. Litig.,* 2007 WL 1213395, *11-12 (E.D.N.Y. Apr. 25, 2007) (*AIG I*).

Further, at the pleading stage the named plaintiff must "set forth some 'general factual allegations

of injury resulting from the defendant's conduct.'" *AIG I*, 2007 WL 1213395 at *11-12 (quoting

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                    10                    MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    *Lewis v. Casey,* 518 U.S. 343, 358 (1996)). A named plaintiff in a securities fraud class action

2    cannot allege an injury from the purchase or sale of funds in which she has never invested.  15

3    U.S.C. § 77*l*(a); *Blue Chip Stamps,* 421 U.S. at 749.

4           Plaintiff is alleged to have purchased only two Funds, both in the name of her mother and

5    both issued by defendant WM Trust I, but Plaintiff purports to sue on behalf of investors in

6    twenty-two other Funds issued by the three WM Trusts – Funds in which neither she nor her

7    mother *ever* invested.  RJN Exh. B at 1-2; FAC ¶¶ 2, 11, 13-15.  Even if Plaintiff had standing to

8    sue based on purchases by her mother (which she does not), and even if she had actually

9    purchased Funds during the Class Period (which she did not), she could still bring suit only

10   concerning those securities actually purchased – the WM Growth & Income Fund and the West

11   Coast Equity Fund.  FAC ¶ 11.  Plaintiff cannot sue or seek recovery from funds in which she did

12   not invest.  *AIG I,* 2007 WL 1213395, *6 (dismissing complaint to the extent that it related to

13   funds other than the ones in which plaintiffs alleged they invested); *see also Blue Chip Stamps,*

14   421 U.S. 723 (limiting recovery under Exchange Act to purchasers or sellers of securities and not

15   to individuals who simply failed to act).  Because Plaintiff lacks statutory standing under the

16   securities laws to sue with respect to the twenty-two Funds that neither she nor her mother ever

17   purchased, her claims concerning those Funds should be dismissed with prejudice for this

18   separate and additional reason.

19   **V.    PLAINTIFF'S CLAIMS ARE TIME-BARRED.**

20          Plaintiff's mother purchased the WM Growth & Income and West Coast Equity Funds

21   with a dividend reinvestment option in 2000.  As a result, all claims resulting from that purchase

22   have long since become time-barred by the three- and five-year statutes of repose for claims

23   under the Securities Act and the Exchange Act, which expired no later than 2003 and 2005,

24   respectively.  Plaintiff's purported claims with respect to dividend reinvestments during the Class

25   Period are also barred by the one- and two-year notice limitations periods under the Securities Act

26   and Exchange Act, because Plaintiff and the class were on inquiry notice (if not actual notice) as

27   to any purported claims by no later than February 27, 2004, when the Funds filed their

28   Registration Statement with the SEC *publicly disclosing* the allegedly "hidden" fees paid to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                              11                    MEMO. SUPPORTING MOTION TO
                                                                 DISMISS FIRST AMENDED COMPLAINT
                                                                 (07-CV-0385-DMS-CAB)

1    WMFS, through publication of the Form of Dealer Agreement used by the WM Trusts.  RJN

2    Exhs. C at 126; D; G at 1-2.  As if that were not enough, the Funds filed a revised Registration

3    Statement on December 30, 2004, and again on February 28, 2005, broadcasting the supposedly

4    undisclosed facts relating to WMFS and revenue sharing among the defendants, and plainly

5    putting Plaintiff on actual notice of her purported claims.  RJN Exhs. E at 5, F at 3-6, 8-10; G at

6    3-6.  As discussed more fully below, because Plaintiff did not file suit until February 28, 2007,

7    two years and one day after the last of these public disclosures, all of the claims asserted in the

8    FAC are time-barred, and should be dismissed with prejudice.

9           A.      **The Securities Act Claims Are Time-Barred.**

10          A plaintiff must bring a claim under the Securities Act "by the earlier of (a) three years

11   from the date the parties in the offering obligate themselves to perform, in the case of a Section

12   12(a)(2) claim . . . , or three years from the date of the initial registration statement, in the case of

13   a Section 11 claim. . . , or (b) one year from the date on which they are put on actual or

14   constructive notice of the facts underlying the claim."  15 U.S.C. § 77m.  In other words,

15   Plaintiff's Section 12(a)(2) claim had to have been brought within three years of a purchase

16   transaction, and her Section 11 claim had to have been brought within three years of the date of

17   the registration statement.  After Plaintiff's initial purchase in 2000, all alleged transactions were

18   limited to dividend reinvestments, not purchases or sales.  Clearly, Plaintiff's claims with respect

19   to purchases in 2000 are barred by these statutes of repose.[4]

20          All of Plaintiff's alleged Securities Act claims were also required to be filed within one

21   year of the date on which she had actual or inquiry notice of the facts indicating that the relevant

22   prospectus was materially false or misleading.  *In re Stac Elec. Sec. Litig.*, 89 F.3d at 1399, 1411

23   (9th Cir. 1996).  In the Ninth Circuit, "'the one-year statute of limitations period begins to run

24   once the investor, in the exercise of reasonable diligence, should have discovered the facts

25   underlying the alleged fraud.'"  *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 704 (9th Cir. 1999)

26   (quoting *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1201 (10th Cir. 1998)).  The two questions

27   _____

28   [4]    To show that she made a purchase within the three-year statute of repose, Plaintiff must
            allege that she purchased the Funds on or after *March 1, 2004*, three years before her filing of
            the FAC on February 28, 2007.  She failed to do so.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                              12                    MEMO. SUPPORTING MOTION TO
                                                                 DISMISS FIRST AMENDED COMPLAINT
                                                                 (07-CV-0385-DMS-CAB)

1   courts ask in determining exactly when the statute of limitations begins to run are, first, "did the .

2   . . [triggering document] raise sufficient suspicion of fraud to cause a reasonable investor to

3   investigate the matter further" and, second, "when should a reasonably diligent investor have

4   discovered the facts underlying the alleged fraudulent activity?"  *Berry,* 175 F.3d at 704; *see also*

5   *Betz v. Trainer Wortham & Co.,* — F.3d —, 2007 WL 2874369, at *6 (9th Cir. Oct. 4, 2007)

6   (adopting inquiry notice standard and analysis holding that "[a] plaintiff is on inquiry notice when

7   there exists sufficient suspicion of fraud to cause a reasonable investor to investigate the matter

8   further").  The answer to the second question determines when the statute of limitations period

9   begins to run.  *Id.*

10      The 2004 Prospectus and Registration Statement on which the FAC is based were filed

11   with the SEC on February 27, 2004.[5]  RJN Exhs. C at 1; G at 1-2.  Plaintiff alleges that she and

12   the members of the proposed class received the Prospectus, FAC ¶ 34, and is thus obviously

13   charged with knowledge of the contents of that document throughout the Class Period.  The

14   language of the 2004 Prospectus itself necessarily put every purchaser on notice that WM

15   Advisors and WM Distributor may, at their own expense, pay additional fees to dealers selling the

16   Funds such as WMFS.  Moreover, the Funds' 2004 Registration Statement (of which the

17   Prospectus was a part) included a specimen "Form of Dealer Agreement" between WM

18   Distributor and WM Advisors and broker-dealers such as WMFS, specifically disclosing the

19   material terms under which WM Distributor and WM Advisors agreed to pay broker-dealers in

20   connection with sales of the Funds.[6]  RJN Exh. D at 5-7, 11.  These public disclosures at a

---

[5]   The Funds filed their Registration Statement with the SEC on Form N1-A, which included the Funds' Prospectus, Statement of Additional Information ("SAI"), and other information concerning the Funds, including the Form of Dealer Agreement.  RJN Exh. C at 126, RJN Exh. D.  The Prospectus, which was delivered to all purchasers, informed investors that other information about the Funds, apart from that in the Prospectus and SAI, had been filed with and was publicly available through the SEC.  RJN Exh. C at 106 ("You may . . . request other information about the WM Group of Funds . . . by contacting your financial advisor, by calling toll-free 1-800-222-5852, or by visiting www.wmgroupoffunds.com. . . . [¶] You may also access reports and other information about the Portfolios and Funds on the EDGAR database or the [SEC's] Internet website at http://www.sec.gov.").

[6]   As discussed further in Part VI.A.B.1, below, the disclosures in the Registration Statement also negate any claim of a material misstatement in the 2004 Prospectus, although the Court need not reach that issue to find Plaintiff's claims barred by the statute of limitations.

1   minimum put all purchasers who might be uncertain as to the nature of WMFS' compensation on

2   inquiry notice as to the existence of additional compensation, starting the one-year statute upon

3   the date of purchase. *Berry,* 175 F.3d at 704.

4       The Funds also filed a revised Registration Statement with the SEC on December 30,

5   2004,[7] disclosing, in pertinent part:

6
7
8
9
10
11
12
13
14

> WM ADVISORS ALSO OFFERS REVENUE SHARING
> PAYMENTS, REFERRED TO AS AN "ADVISOR PAID FEE"
> TO ALL FINANCIAL INTERMEDIARIES WITH ACTIVE
> SELLING AGREEMENTS WITH THE DISTRIBUTOR.  THE
> ADVISOR FEE IS PAID AT AN ANNUAL RATE OF UP TO
> 0.50% OF THE AVERAGE NET ASSETS OF CLASS A AND
> CLASS B SHARES OF THE PORTFOLIOS SOLD THROUGH
> SUCH INTERMEDIARIES…. THESE PAYMENTS ARE MADE
> FROM WM ADVISORS' PROFITS AND MAY BE PASSED ON
> TO YOUR INVESTMENT REPRESENTATIVE AT THE
> DISCRETION OF HIS OR HER FINANCIAL INTERMEDIARY
> FIRM. THESE PAYMENTS MAY CREATE AN INCENTIVE
> FOR THE FINANCIAL INTERMEDIARIES AND/OR
> INVESTMENT REPRESENTATIVES TO  RECOMMEND OR
> OFFER SHARES OF THE PORTFOLIOS OVER OTHER
> INVESTMENT ALTERNATIVES.

15   RJN Exh. E at 5 (emphasis in original).  The revised Registration Statement also disclosed, in

16   detail, the nature of payments made by WM Distributor to selling dealers such as WMFS, that

17   some broker-dealers included the Funds on a "preferred list," and that increased distribution

18   payments may give an incentive to an investment representative to recommend one fund family

19   over another, and advised investors:  "Please speak with your investment representative to learn

20   more about the total amounts paid to your investment representative and his or her financial

21   intermediary by the Portfolios, the Distributor, WM Advisors and by sponsors of other mutual

22   funds he or she may recommend to you."  RJN Exh. E at 6.  The Funds filed a final revised

23   prospectus on February 28, 2005, repeating these disclosures with additional specifics.  RJN Exh.

24   F at 3-6; 8-10.[8]

25

26   [7]   As required for issuers that continuously offer securities, the Funds periodically filed "post-
effective amendments" to their Registration Statement.  The December 30, 2004 Registration
Statement, filed pursuant to SEC Rule 485(a)(1), 17 C.F.R. § 230.485(a)(1), with registration

27   to become effective March 1, 2005, was such an amendment.  RJN Exh. E at 1.

28   [8]   The 2005 Registration Statement included separate prospectuses for WM Trusts I and II, on

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7          14         MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    Even assuming, for purposes of argument, that Plaintiff somehow failed to be on inquiry

2    notice earlier in 2004, there is no question that all investors in the Funds were on actual notice as

3    a result of these public disclosures by December 30, 2004, of the facts constituting the alleged

4    fraud of which Plaintiff now complains.  Plaintiff was required to file suit, at the latest, on

5    December 29, 2005.  She did not do so until February 28, 2007, over one year after the notice

6    statute of limitations for claims under the Securities Act had expired.  Accordingly, Plaintiff's

7    Securities Act claims should be dismissed with prejudice.

8    **B.    The Exchange Act Claims Are Time-Barred.**

9    Under the Sarbanes-Oxley Act of 2002, claims for securities fraud under the Exchange Act

10   must be asserted within two years of the date on which Plaintiff first had actual or inquiry notice

11   of the facts underlying the asserted fraud.  28 U.S.C. § 1658(b).  Recently, the Ninth Circuit

12   confirmed that the standard for inquiry notice it had applied to Securities Act claims in *Berry*

13   likewise governs claims under the Exchange Act.  *Betz*, 2007 WL 2874369, at *6; *see also Livid*

14   *Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 951 (9th Cir. 2005).

15   As explained above, Plaintiff had inquiry notice of the allegedly misleading statements by

16   no later than February 27, 2004, and actual notice by no later than December 30, 2004.  Plaintiff's

17   purported Exchange Act claims therefore expired no later than December 29, 2006, and her suit

18   filed two months later should be dismissed with prejudice.

19   **VI.    PLAINTIFF'S CLAIMS FAIL ON THE MERITS**

20   If the Court determines that Plaintiff has standing with respect to claims concerning the

21   WM Growth & Income and West Coast Equity Funds and can avoid the limitations bar, her

22   claims nevertheless must be dismissed with prejudice on the merits.  First and fundamentally, the

23   FAC does not sufficiently allege the essential element of a material misstatement or omission by

24   the defendants, which is crucial to all of Plaintiff's claims.  Nor can she do so in light of the facts

25   the one hand, and the WM Strategic Asset Management Portfolios ("Portfolios"), on the
     other.  *See* RJN Exh. F at 7.  As all the prospectuses made clear, the challenged revenue-
26   sharing payments by WM Advisors were made only in connection with the WM Portfolios
     (which, not incidentally, Plaintiff never owned).  *See* RJN Exh. C at 71; FAC ¶ 33.
27   Therefore, these revenue-sharing payments were disclosed in the 2005 WM Portfolios'
     prospectus filed with the SEC in the February 28, 2005 Registration Statement, and not in the
28   prospectuses for WM Trusts I and II.  *See* RJN Exh. F at 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                          15                 MEMO. SUPPORTING MOTION TO
                                                          DISMISS FIRST AMENDED COMPLAINT
                                                              (07-CV-0385-DMS-CAB)

1  actually disclosed by the Funds.  The securities laws did not expressly mandate disclosure of the

2  additional details concerning compensation to WMFS that Plaintiff alleges should have been set

3  forth in the 2004 Prospectus.  As such, to assert a claim under either the Securities Act or the

4  Exchange Act, Plaintiff must allege *particular facts* concerning the omitted details, showing that

5  their omission rendered the affirmative statements in the 2004 Prospectus materially misleading.

6  *See Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 611-12 (6th Cir. 2005); *In re*

7  *Solomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 587 (S.D.N.Y. July 26,

8  2006); *see also In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429,

9  434 (S.D.N.Y. 2003).  Plaintiff has failed to do so.  The disclosures in the 2004 Registration

10  Statement show that the Prospectus was not misleading, much less materially so.  Plaintiff's

11  Exchange Act claims also fail because Plaintiff has not alleged specific facts giving rise to a

12  strong inference that defendants intended to defraud shareholders, or acted with deliberate

13  recklessness in the disclosures at issue.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.

14  Ct. 2499, 2508-10 (2007).  For all these reasons, the FAC should be dismissed.

**A.     There Is No Duty to Disclose the Allegedly Omitted Information.**

**1.     No Law or Rules Required the Allegedly Omitted Disclosures.**

17  Mutual funds, also known as Open-Ended Management Investment Companies, must use

18  SEC Form N-1A to register under the Investment Company Act of 1940 and offer shares for sale

19  under the Securities Act.  *Registration Form Used by Open-Ended Management Investment Cos.*,

20  SEC Release Nos. 33-7512, 34-39748, 63 Fed. Reg. 13916, 13916 (March 23, 1998), attached as

21  RJN Exh. H at 1.  This form provides the federal requirements for the information that must be

22  disclosed in a mutual fund's registration statement, which include its prospectus and its statement

23  of additional information ("SAI").  *Id.* at 25.  Moreover, Form N-1A was designed by the SEC to

24  delineate those disclosures that are material to investors in making their investment decisions

25  *without* overwhelming them with less essential information.  *Id.* at 2-4.

26  Plaintiff does *not* allege that the 2004 Registration Statement or Prospectus (or, for that

27  matter, any of the earlier prospectuses referenced in the FAC) failed to comply with the

28  disclosure obligations set forth by the SEC in Form N-1A.  Nor does Plaintiff allege that the 2004

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                16                MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1  Registration Statement or Prospectus omitted any of the total costs borne by investors in

2  connection with purchase, sale, or holding of Fund shares.  There is no question that the 2004

3  Prospectus disclosed in detail the total management and distribution fees charged against the

4  Funds by WM Advisors and WM Distributor, respectively.  *See* RJN Exh. C at 38-45, 78; *see*

5  *also id.* at 111-18, 119-22 (portions of the SAI with further fee disclosures).  There is also no

6  question that the SEC's Form N-1A does not require disclosure of the information Plaintiff

7  alleges was improperly omitted from the Prospectus.  *See In re Morgan Stanley & Van Kampen*

8  *Mutual Fund Sec. Litig.*, 2006 WL 1008138, *7 (S.D.N.Y. 2006).  The Director of the SEC's

9  Division of Investment Management expressly confirmed this in testimony before Congress in

10  2003, when it was considering legislation (never enacted) to mandate further disclosure.  Paul

11  Roye, *Testimony Concerning the Mutual Funds Integrity and Fee Transparency Act of 2003*, at 6

12  (June 18, 2003) *available at* www.sec.gov/news/testimony/061803tspfr.htm) ("'Revenue-sharing'

13  payments are not a fund expense because they are made from the adviser's own resources, rather

14  than fund assets.  As a result, mutual funds are not required to disclose these payments."),

15  attached at RJN Exh. I. "The current SEC regulations impose no duty on defendants to disclose

16  the allocation of broker compensation. . . .  [Form N-1A] does not require disclosure of how

17  differential compensation is allocated.  Nor does it require disclosure of sales contests or

18  management bonuses."  *In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, *7; *see also*

19  *Benzon,* 420 F.3d at 612 ("Current SEC regulations, including Form N1-A, do not impose a

20  disclosure obligation with respect to broker compensation.").  In short, Plaintiff cannot allege, as

21  a basis for either her Securities Act or her Exchange Act claims, that the Funds had a duty to

22  disclose the allegedly omitted information in the Registration Statement or Prospectus.[9]

23  _____

24  [9]  As referenced in FAC, the SEC has *proposed* a rule that would change the disclosure
requirements for revenue-sharing programs.  *See Confirmation Requirements and Point of*

25  *Sale Disclosure Requirements for Transactions in Certain Mutual Funds and Other*
*Securities, and Other Confirmation Requirement Amendments, and Amendments to*
*Registration From for Mutual Funds*, Release Nos. 33-8358, 34-49148, IC-26341, 59 Fed.

26  Reg. 6438 (Feb. 10, 2004) (cited in FAC ¶ 6) attached at RJN Exh. K.  This was merely a
proposed rule during the entire Class Period, and remains so today.  "Proposed rules that

27  have yet to be adopted have no force at law.  The possible imposition of a duty of disclosure
after the fact does not support a cognizable securities fraud claim."  *In re Merrill Lynch &*

28  *Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. 2003).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                  17                  MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

## 2.        Plaintiff's Rule 10b-10 Claim Fails.

Plaintiff also attempts to assert a claim against WMFS under SEC Rule 10b-10.  That rule requires broker-dealers, such as WMFS, to disclose certain information to customers upon completion of a securities transaction, including "the source and amount of any other remuneration received or to be received by the broker in connection with the transaction."  17 C.F.R. § 240.10b-10(a)(2)(i)(D).  As an initial matter, research has uncovered no decision holding that a private right of action exists for alleged violations of this administrative rule.  The few cases addressing claims under Rule 10b-10 have rejected them on other grounds, without deciding whether a private right of action exists.  *See, e.g.*, *Morris v. Wachovia Sec., Inc.*, 277 F. Supp. 2d 622, 638 (E.D. Va. 2004).  This Court should not recognize such a right; modern caselaw strictly limits the implication of private rights of action under the securities laws to circumstances where it is clear that Congress would have provided for such a right had the text of the rule been adopted as law.  *See, e.g.*, *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 177-80 (1994).  Here, where even the SEC's rulemaking has not reached the step of adopting regulations requiring disclosure of the challenged payments, there is no basis to claim that Congress anticipated a private right of action in this area.

Even if a private right of action existed, Plaintiff's Rule 10b-10 claim would fail because she has failed to plead facts demonstrating that WMFS violated Rule 10b-10 and Section 10(b) of the Exchange Act.  To invoke Rule 10b-10, Plaintiff must allege that she completed a "securities transaction" that required generation of a transaction confirmation during the Class Period, but she has failed to do so as to herself or her mother.  Under Rule 10b-10(b), no separate confirmation is even generated for automatic dividend reinvestment transactions of the type that admittedly occurred during the Class Period here (*see* FAC ¶ 11), as these reinvestments are

---

Furthermore, Plaintiff's vague quotation of SEC official Linda Chatman Thomsen's press release about an enforcement proceeding not involving defendants, but other parties under different facts, is irrelevant to this litigation.  FAC ¶ 5.  Plaintiff admits that the conduct by the defendants in this case has never been the subject of any relevant regulatory action.  FAC ¶ 43.  Further, the statement Plaintiff quotes concerned a *non-litigated, administrative settlement*.  Such settlements are not, and cannot be, legal precedent, as they have neither been tested by the adversary system nor subjected to judicial scrutiny.  *See In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, *5.

1   reported on account statements, not confirmations.  *See* Investment Company Institute, SEC No-

2   Action Letter, 1993 WL 5191 (pub. avail. Jan. 7, 1993), attached as RJN Exh. J at 3.  Therefore,

3   Rule 10b-10 is not applicable on its face here, since Plaintiff's fund acquisitions in 2004 were not

4   transactions for which a confirmation under Rule 10b-10 was required to be generated.[10]

5          Any Rule 10b-10 claim also fails as a substantive matter.  The SEC has expressly

6   confirmed that, with regard to remuneration received by a broker-dealer not from the customer,

7   but from others (such as a mutual fund advisor or distributor), "'disclosure with precision is not

8   necessary' with respect to those types of payments."  *Press v. Quick & Reilly, Inc.*, 218 F.3d 121,

9   128 (2d Cir. 2000) (quoting SEC *Amicus* Brief at 23).  Moreover, with regard to mutual funds, it

10  is well settled that broker-dealers "may rely on fund prospectuses and other documents publicly

11  filed with the SEC to satisfy their Rule 10b-10 disclosure obligations."  *Press*, 218 F.3d at 129;

12  *see also* RJN, Exh. I at 7 ("A broker-dealer may satisfy this disclosure obligation [regarding

13  receipt of revenue-sharing payments] by, among other things, delivering to its customer a copy of

14  the fund's prospectus, at or before completion of the transaction, if the prospectus contains

15  adequate disclosures.").  As discussed above, the disclosures in the Funds' 2004 Prospectus,

16  which put investors on notice of the additional remuneration to WMFS, were more than sufficient

17  for these purposes.  In short, WMFS satisfied its 10b-10 obligations through the disclosures in the

18  Funds' Prospectus, and Plaintiff's claim against WMFS pursuant to 10b-10 must fail.

19          **B.      Plaintiff Has Failed to Allege a Material Misstatement or Omission**

20          Since there is no statutory disclosure requirement, Plaintiff's claims fail unless she can

21  allege an affirmative material misstatement in the 2004 Prospectus, or that the omission of certain

22  material facts rendered an affirmative statement misleading.[11]  *See Benzon*, 420 F.3d at 611-12.

23

24  [10]   Furthermore, any 10b-10 claim based on Plaintiff's mother's purchase in 2000, when a
       confirmation would have been generated, is long time-barred.  *See* 28 U.S.C. § 1658(b).

25  [11]   The FAC alleges claims for fraud under the Securities Act and Exchange Act, all based on
26     supposed misstatements in the 2004 Prospectus.  FAC ¶¶ 73-89; 98-116.  Although Plaintiff
       includes allegations concerning earlier prospectuses, apparently as background, only the
27     2004 Prospectus was effective during the Class Period, the Complaint alleges that Plaintiff
       and the class members received the 2004 Prospectus, and any purchases during the Class
28     Period of Fund shares occurred pursuant to, and in connection with, that prospectus and the
       Registration Statement of which it was a part.  FAC ¶¶ 2, 34, 66; *see* 15 U.S.C. § 77*l*(a)(2);

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Furthermore, Federal Rule of Civil Procedure 9(b) requires Plaintiff to allege "the circumstances

2   constituting fraud . . . with particularity" with respect to all of her claims.  Fed. R. Civ. P. 9(b).

3   Plaintiff is thus required to allege facts providing "an explanation as to why the statement or

4   omission complained of was false or misleading."  *In re Stac Elec. Sec. Litig.*, 89 F.3d at 1404;

5   *see* 15 U.S.C. § 78u-4(b)(1) (pleading standard for Exchange Act claims, requiring Plaintiff to

6   specify "each statement alleged to have been misleading [and] the reason or reasons why the

7   statement is misleading").  The FAC falls well short of the minimum pleading standard.[12]  Under

8   the facts alleged in the FAC and those of which the Court should take judicial notice here, there

9   are no misstatements, no omissions, and no basis for concluding that any of the purported matters

10   of which Plaintiff complains are material.

11              **1.**      **The Purportedly "Secret" Incentive Payments Were In Fact Disclosed.**

12         A complaint founded on allegations of securities fraud must be dismissed where, as here,

13   "the allegedly omitted or misrepresented information was in fact appropriately disclosed."  *See*

14   *White v. Melton*, 757 F. Supp. 267, 272 (S.D.N.Y. 1991) (so holding where allegedly omitted

15   information was in fact disclosed in mutual fund's SAI); *In re Keyspan Corp. Sec. Litig.*, 383 F.

16   Supp. 2d 358, 377 (S.D.N.Y. 2003) ("Even at the pleading stage, dismissal is appropriate where

17   the complaint is premised on the nondisclosure of information that was actually disclosed.").

18   Here, with respect to incentives paid by WM Distributor and WM Advisors, the allegedly

19   "hidden" information was actually disclosed in the 2004 Registration Statement.

20

21       (imposing liability in connection with sales pursuant to prospectuses containing misleading
     statements); 15 U.S.C. § 77k (imposing liability in connection with sales pursuant

22   registration statements containing misleading statements); 17 C.F.R. § 240.10b-5 (requiring
     that the alleged fraud be made "in connection with" the purchase or sale of the security); 17

23   C.F.R. § 240.10b-10 (requiring certain disclosures upon completion of a "transaction").

24   [12]  Plaintiff attempts to avoid her obligation to plead misstatements and omissions with
     particularity with respect to her Securities Act claims through boilerplate "disclaimers" of

25   any fraud allegation, *see* FAC ¶¶ 73, 81, 90, but the courts firmly reject such efforts in cases,
     such as this, where the essence of the complaint sounds in fraud.  *See In re Stac Elec. Sec.*

26   *Litig.*, 89 F. 3d at 1404-05 & n.2; *see also AIG I*, 2007 WL 1213395 at *13 ("Plaintiffs may
     not escape the particularity requirements of Rule 9(b) and the PSLRA merely by including

27   template language disclaiming fraud."); *In re Sonus Networks, Inc. Sec. Litig.*, 2006 WL
     1308165, *7 (D. Mass. May 10, 2006) (rejecting Plaintiff's use of a "talismanic disclaimer"

28   to avoid the pleading requirements of Rule 9(b) for Section 11 and 12(a)(2) claims asserted
     alongside Exchange Act fraud claims).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                20          MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    The Funds' 2004 Registration Statement attached as an exhibit the "Form of Dealer

2  Agreement" between both WM Distributor and WM Advisors and selling broker-dealers, such as

3  WMFS, which expressly disclosed the terms under which WM Advisors made the supposedly

4  "hidden" incentive payments (the payments that the Prospectus said WM Advisors "may" make

5  for sales of "shares of the Portfolios").  The agreement states, in relevant part:

6
> Whereas WM Advisors, Inc. recognizes that it will benefit from the
> sale of Shares of WM Strategic Asset Management Portfolios, LLC,
7  > WM Advisors, Inc. hereby agrees to pay to Selling Broker-Dealer,
> with respect to Shares of WM Strategic Asset Management
8  > Portfolios, LLC, a fee accrued daily and payable monthly at the
> annual rate of 0.50% (0.25% for Class C Shares) of the average
9  > daily net assets of such Shares held by Customers for whom Selling
> Broker-Dealer is the dealer of record, which fee is in addition to
10 > any dealer allowance, Sales Commissions and/or service fees
> payable by WMFD as set forth above. WM Advisors reserves the
11 > right to change the amount of, or to cease paying, this fee upon
> fifteen (15) days prior written notice to Selling Broker-Dealer.
12

13  RJN Exh. D at 11.  Thus, the 2004 Registration Statement disclosed the actual incentive

14  arrangement with respect to WM Advisors and WMFS.  Similarly, the agreement sets forth WM

15  Distributor's agreement to pay certain compensation to selling broker-dealers.  *Id.* at 6, ¶ 10(e).

16  The Court can and should rely upon these publicly filed documents in determining that Plaintiff's

17  claims have no merit as a matter of law.  *See AIG I*, 2007 WL 1213395 at *7; *Whirlpool Fin.*

18  *Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995) (holding that "a reasonable investor

19  is presumed to have information that is in the public domain") (quoted in *Berry*, 175 F.3d at 703,

20  n.4); *see also In re Stac Elec. Sec. Litig.*, 89 F. 3d at 1405 n.4 (holding it proper for the court to

21  consider entire text of a registration statement, where portions were alleged in the complaint).

22  The SEC expressly confirms that mutual funds need not include *all* publicly disclosed

23  information in the prospectus, and instead expressly authorizes funds to disclose certain

24  information in the prospectus, while disclosing other information only in other parts of the

25  registration statement.  *See* RJN Exh. L at 6-7 (Form N-1A and instructions).

26    Here, the statements in the 2004 Prospectus that such fee payments "may" be made put

27  interested investors on notice to conduct further inquiry (either by asking their broker-dealer or

28  consulting other publicly available information about the Funds) to confirm the existence of the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                    21        MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1  fees.  *See Benzon*, 420 F.3d at 612; *AIG I*, 2007 WL 1213395 at *8 n.15.  In any case, those

2  statements clearly were accurate given that the fee arrangements could be changed or terminated

3  at any time, upon a mere 15 days written notice.  RJN Exh. D at 6, ¶ 10(e), Exh. D at 11.  Mutual

4  fund prospectuses and registration statements, however, may be effective for as long as 16

5  months and generally are updated only once per year.  *See* 15 U.S.C. § 77j(a)(3) (prospectus must

6  not use information more than 16 months old); 17 C.F.R. § 270.8b-16 (SEC rule requiring annual

7  amendment of mutual fund registration statement, within 120 days of fiscal year end).

8  Meanwhile, of course, investors purchase mutual fund shares pursuant to the most recent

9  prospectus and registration statement throughout the year.  Furthermore, WM Distributor could

10  enter into different arrangements with different selling dealers, and was not mandated to provide

11  "additional compensation" to all of them.  In light of this, the Prospectus standing alone is wholly

12  accurate.  Particularly given the detailed further disclosures in the 2004 Registration Statement,

13  Plaintiff's fraud claims collapse.

14  **2.      The 2004 Prospectus Is Not Misleading.**

15  Even if it could be divorced from the additional disclosures in the Registration Statement

16  regarding WM Advisors' and WM Distributor's actual agreements with broker-dealers (which it

17  cannot), the challenged language in the 2004 Prospectus is not materially misleading as a matter

18  of law.  The courts have repeatedly held that the precise allocation of fees is *not* material

19  information under the securities laws.  *See Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F.

20  Supp. 2d 233, 238 (S.D.N.Y. 2006); *Castillo v. Dean Witter Discover & Co.*, 1998 WL 342050,

21  *8 (S.D.N.Y. June 25, 1998), *see also In re Morgan Stanley & Van Kampen Funds*, 2006 WL

22  1008138, *8 (S.D.N.Y. Apr. 18, 2006) ("In the absence of a "statutory or regulatory

23  requirement," defendants' omissions [regarding incentive programs for brokers] must be material.

24  They were not.").

25  The statements about which Plaintiff complains did not suggest that there were no

26  revenue-sharing arrangements.  *See Brody v. Transitional Hospitals Corp.*, 280 F.3d 997, 1007

27  (9th Cir. 2002) (public statement held not materially misleading where it did not create false

28  impression).  To the contrary, the 2004 Prospectus put Plaintiff and potential class members on

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   notice of the possibility of such arrangements.  *Benzon*, 420 F.3d at 612; *see also AIG I*, 2007 WL

2   1213395 at * 8 n.15.  For exactly this reason, both the Sixth Circuit Court of Appeals and courts

3   in the Southern District of New York have *rejected* the very contention Plaintiff attempts to

4   advance in this case, *i.e.*, that it is materially misleading to state that a program possibly

5   encouraging brokers to sell particular mutual funds "may" exist when it does exist.  *Benzon*, 420

6   F.3d at 612; *AIG I*, 2007 WL 1213395 at * 8 n.15.

7           Applying the exact same legal standards that control in this circuit, the Sixth Circuit Court

8   of Appeals, which is the only federal appellate court to address this question, held in *Benzon v.*

9   *Morgan Stanley Distributors, Inc.* that the difference between a disclosure that dealers "may"

10  receive sales incentives and one confirming that they "do" receive such incentives is "a semantic

11  quibble."  *Benzon*, 420 F.3d at 612.  The *Benzon* court explained:

12              If anything, the inclusion of this statement in the prospectus (which,
                again, was not mandated by any current SEC regulation) served to
13              put prospective investors on notice that there was a possibility that
                brokers were being compensated more highly for the sale of certain
14              class shares than others, such that investors could pursue that line of
                inquiry with their financial advisors if they were concerned about
15              broker incentives.

16  *Id.*; *see also AIG I*, 2007 WL 1213395 at * 8 n.15 (rejecting plaintiff's argument that "may"

17  language in mutual fund prospectuses was misleading because it failed to disclose that incentives

18  were "in fact" paid).

19          Moreover, this case concerns the sale of WM Funds, managed by WM Advisors,

20  distributed by WM Distributor, through the broker-dealer WMFS.  Plaintiff alleges that all of the

21  parties involved were part of the same corporate family under the control of WMI.  FAC ¶¶ 12,

22  93, 121.  It should come as no surprise to Plaintiff that WMFS and its representatives might have

23  reasons to favor sales of the WM Funds over other mutual funds.  In *Castillo v. Dean Witter*

24  *Discover & Co.*, the court disposed of analogous claims against Dean Witter, holding "Plaintiffs

25  should have been aware that the sale of a Dean Witter fund, as opposed to an outside fund, would

26  mean greater compensation for the Dean Witter companies."  *Castillo v. Dean Witter Discover &*

27  *Co.*, 1998 WL 342050 at *9.  The same reasoning applies here.

28          Plaintiff also challenges as supposedly misleading the 2004 Prospectus statement that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                            23                        MEMO. SUPPORTING MOTION TO
                                                                                   DISMISS FIRST AMENDED COMPLAINT
                                                                                   (07-CV-0385-DMS-CAB)

1    certain payments were at the expense of WM Distributor, merely because WM Distributor

2    ultimately traced its own revenues to fees paid to it by the Funds.  FAC ¶ 34(d).  Nonsense.  It is

3    fully disclosed in the 2004 Prospectus and SAI that WM Distributor derives its revenue from fees

4    paid to it by the Funds.  *See* RJN, Ex. C at 70-71; 119-122.  The purportedly omitted fact under

5    Plaintiff's strained argument – that any payment made by WM Distributor must come from sums

6    that can be ultimately traced back to fees paid to WM Distributor from the Funds – is obvious

7    from the express language of the Prospectus and SAI.[13]  The fact that WM Distributor chooses to

8    spend a portion of the fully disclosed fees it receives from the Funds on payments to broker-

9    dealers does not make those payments any less "at its expense"; for example, it could choose not

10   to make those payments and yet retain the entire fee it is paid by the Funds.  *See* RJN, Ex. C at 70

11   (noting that even if fees paid to WM Distributor exceed WM Distributor's expenses, WM

12   Distributor may keep the entire fee).  Further confirmation of this point appears in 2003

13   Congressional testimony by the Director of the SEC's Division of Investment Management, Paul

14   Roye, who used almost the same terms as those challenged by Plaintiff to explain why mutual

15   funds were not required to disclose their investment advisors' revenue-sharing arrangements,

16   even though such advisors, just like mutual fund distributors, ultimately trace their revenue to

17   fees paid by the mutual funds from investment principal.  As Mr. Roye explained, "Revenue-

18   sharing' payments are *not a fund expense* because they are made from the adviser's *own*

19   *resources, rather than fund assets*."  RJN, Exh. I at 7 (emphasis added).

20          Disregarding the overwhelming contrary authority, Plaintiff apparently pins her hopes in

21   this litigation upon an order issued by a district court in San Francisco, which disagreed with

22   *Benzon* and allowed facially similar claims based upon "may" language in a prospectus to

23   proceed at the pleading stage in *Siemers v. Wells Fargo & Co.*, 2006 WL 2355411, *5 (N.D. Cal.

24   Aug. 14, 2006).  An attempted comparison of this case with *Siemers*, however, cannot survive

25   scrutiny.  Here, the essential details of the alleged "hidden" arrangement were *actually disclosed*

26   in the Funds' Registration Statement, whereas in *Siemers* there was no such disclosure, the

27   arrangements remained "secret," and the court found that the particular nature of the undisclosed

28
_____
[13]    The same logic would apply to any such payments by WM Advisors.

Morgan, Lewis &
Bockius LLP
Attorneys At Law
San Francisco

1-SF/7597506.7                    24              MEMO. SUPPORTING MOTION TO
                                                 DISMISS FIRST AMENDED COMPLAINT
                                                 (07-CV-0385-DMS-CAB)

1   arrangements (which were alleged with specificity in that case) rendered Wells Fargo's "may"

2   disclosures misleading.  *Id.* at *5-*6.  This distinction alone renders *Siemers* irrelevant.

3   Numerous other crucial differences dictate a contrary outcome in this case.  For example, here the

4   facts before the Court support the 2004 Prospectus' use of the word "may" (based on the

5   possibility that fee-sharing arrangements could cease or change on 15 days' notice); no such

6   support existed in *Siemers.  See id.*  In *Siemers*, the mutual fund advisers also caused the funds'

7   portfolios to be traded through Wells Fargo's broker-dealers at inflated commission rates, thus

8   guaranteeing the broker-dealers a steady flow of commission revenue (known as "directed

9   brokerage") that was not disclosed to investors.  *Id.* at *3.  There are no such allegations here.  In

10  *Siemers*, the securities regulators took enforcement action, on which Plaintiffs and the Court

11  relied, against the Wells Fargo broker-dealers with respect to their practices at issue; no such

12  regulatory action occurred with respect to defendants here.  *See id.* at *1-*2, *5, *8.  And the

13  undisclosed payments that the *Siemers* court found to be potentially material (1.25% per annum

14  for equity funds, plus $21 million in directed brokerage payments) far exceeded the fees that were

15  publicly disclosed by the WM Funds at issue here (0.50% payment by WM Advisors with respect

16  to the Portfolios).  *Cf. id.* at *7.  Finally, even if *Siemers* were otherwise applicable to the facts of

17  this case (which it is not), the district court's reasoning there deserves little weight, as it is openly

18  contrary to every other relevant decision and based exclusively upon that court's interpretation of

19  "SEC administrative rulings" entered in approving non-litigated administrative settlements with

20  several mutual fund issuers and brokerage firms, each of which had its own distinct set of facts

21  but *none* of which involved private securities class action litigation, such as the instant case, and

22  *none* of which was ever reviewed (much less endorsed) by a court.  *Id.* at *1.

23      In this case, however, the Court need not decide whether to follow the lone voice of the

24  *Siemers* district court, on the one hand, or the majority of courts represented by *Benzon, AIG I*, *In

25  re Morgan Stanley & Van Kampen*, and *Castillo*, on the other.  Here, the WM Funds disclosed the

26  essential aspects of the fee-sharing arrangements.  Thus, any fraud claim must fail and no further

27  amendment to the complaint can salvage the claims.

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

### 3. Plaintiff Fails to Plead that Any Alleged Misstatement or Omission Was Material.

As shown above, the essential fee-sharing arrangements at issue in Plaintiff's FAC were disclosed in the Funds' 2004 Registration Statement.  Plaintiff's purported grievance, therefore, is reduced to her claim that sales of the Funds were tainted as a result of "office parties, training and educational meetings and conferences," other unspecified "non-cash compensation," and possible "reimbursement for expenses" that may have occurred (as to which no specifics are alleged) with respect to sales of the WM Funds.  FAC ¶¶ 27, 37.  These allegations are insufficient as a matter of law to support any claim of a material omission by defendants.

To support a securities fraud claim, Plaintiff must allege facts demonstrating that disclosure of the purportedly omitted or misstated matters would have been viewed by a reasonable investor "as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988) (quoting *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976)).  Furthermore, under Federal Rule of Civil Procedure 9(b) and the Reform Act, Plaintiff must plead facts supporting materiality of the misstatement or omission with particularity, given that her allegations of falsity and materiality are the same.  *See In re AIG Advisor Group Sec. Litig.*, 2007 WL 2750676, *2 (E.D.N.Y. Sept. 20, 2007) (*AIG II*). Plaintiff has failed to meet this burden.

If and to the extent that any peripheral matters pertaining to the WM Funds were *not* fully disclosed in the 2004 Registration Statement, there is no basis in the FAC for the Court to conclude that any undisclosed matters would have been material to investors.  Nowhere in the FAC does Plaintiff make any allegation as to the value of any purportedly undisclosed payments to her salesperson, or to WMFS salespeople in general, or to provide information from which the value of any such payments could be calculated.  *See AIG I*, 2007 WL 1213395 at *14 (holding that plaintiff failed to plead the materiality of omissions regarding revenue-sharing payments where the size of the undisclosed payments was not alleged and could not be calculated from the complaint); *AIG II*, 2007 WL 2750676 at *3 (dismissing complaint with prejudice; holding that generalized allegations as to the total dollar amount earned from incentive arrangements across all

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7

26

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    broker-dealers was not sufficiently particular to withstand a motion to dismiss).  Moreover,

2    Plaintiff's allegations of bias are premised on the claim that her salesperson received more

3    compensation for selling the WM Funds than other funds (*see* FAC ¶¶ 1, 34(h)), yet she fails to

4    allege what her salesperson would have earned for selling the other funds, and alleges no facts

5    that would support a conclusion that any compensation difference actually had a material impact

6    on investment recommendations.  In short, the FAC provides no facts to support Plaintiff's

7    conclusory claim of a material undisclosed bias, and on that basis Plaintiff's claims must fail.  *See*

8    *AIG II*, 2007 WL 2750676 at *4 (dismissing claims of undisclosed bias where plaintiffs failed to

9    allege the amounts of any compensation differentials among different mutual funds investments).

10          Beyond this, the Funds disclosed publicly in February 2005 (two years and one day before

11   this action was filed) that the total value of *all* additional payments by WM Distributor to all

12   broker-dealers (including not only WMFS, but also 38 other financial service companies) in 2004

13   represented *only 0.03%* of the average daily net assets of the Funds.  RJN Exh. F at 4, 9.  Such

14   modest payments could not possibly have been material to Plaintiff or the class she purports to

15   represent as a matter of law.  *See In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, *2-

16   *4, *8 (finding that undisclosed payments involving 0.15% to 0.20% of sales to broker-dealers,

17   plus 0.05% on assets to broker-dealer sales representatives, as well as concert tickets, hotel

18   accommodations, and sales contest incentives, were immaterial).[14]  At worst, the FAC is utterly

19   spurious as a matter of law.  At best, her allegations about undisclosed incentives remain "too

20   sparse to permit a determination whether its disclosure would be material."  *AIG I*, 2007 WL

21   1213395 at *15.  Either way, her securities fraud claims must be dismissed.

22          **C.**     **Plaintiff Has Failed to Plead Facts Creating a Strong Inference of Scienter.**

23          Plaintiff's Exchange Act claims are subject to the heightened pleading standards of the

24   Reform Act, which dictates that she "must plead, in great detail, facts that constitute strong

25   —————————————————

26   [14]   Plaintiff's materiality case also fails because she has not alleged that WMFS salespeople
     received *materially* higher payments for sales of the WM Funds than for other funds.  *See*
27   *AIG I*, 2007 WL 1213395 at *14 (finding failure to plead material omissions where facts did
     not show that defendants were paid *materially* more for promoting "preferred" mutual funds
     than for other funds); *AIG II*, 2007 WL 2750676 at *5 (same; dismissing case with
28   prejudice).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                           27                    MEMO. SUPPORTING MOTION TO
                                                              DISMISS FIRST AMENDED COMPLAINT
                                                              (07-CV-0385-DMS-CAB)

1   circumstantial evidence of deliberate recklessness or conscious misconduct" by the defendants.

2   *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999).  General allegations of

3   intent do not suffice; rather, Plaintiff must set forth specific facts creating a "strong inference"

4   that each of the defendants either actually knew or must have known that its statements in

5   connection with WM Fund sales were materially misleading.  *See id.* at 977.  The *deliberate*

6   recklessness that Plaintiff must show is a form of intentional conduct, not merely a high degree of

7   negligence.  *Id.*  Indeed,

8          reckless conduct may be defined as a highly unreasonable omission,
       involving not simply, or even inexcusable negligence, but an

9          extreme departure from the standards of ordinary care, and which
       presents a danger of misleading buyers or sellers that is either

10         known to the defendant or is so obvious that the actor must have
       been aware of it.

11

12  *Id.* at 976 (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1569 (9th Cir. 1990)).

13  Applying this standard, it is well settled that allegations of mere recklessness or motive and

14  opportunity to commit fraud by the defendants do *not* create the mandatory "strong inference" of

15  scienter necessary to sustain a claim at the pleading stage.  *Id.*

16        Moreover, the Reform Act's "strong inference" standard requires the Court to consider at

17  the motion to dismiss stage not only the inferences of nefarious conduct urged by Plaintiff, but

18  "*all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to

19  the plaintiffs." *Gommper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002) (emphasis in original);

20  *see Tellabs,* 127 S. Ct. at 2510.  A complaint must be dismissed where the facts alleged, together

21  with all facts of which the Court may take notice, create merely a "'reasonable' or 'permissible'"

22  inference of scienter; for the complaint to survive dismissal, the facts must create an inference

23  that is "cogent and at least as compelling as any opposing inference" that the defendants acted

24  with consciously fraudulent or deliberately reckless intent. *Tellabs*, 127 S. Ct. at 2510.

25        Given the disclosures in the 2004 Prospectus and Registration Statement, Plaintiff's

26  scienter allegations fall short.  The facts alleged do not give rise to the necessary "cogent"

27  inference of scienter, but instead more strongly support the conclusion that defendants acted

28  reasonably and without pernicious intent. *See id*.  Since the Exchange Act claims thus fail to

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                    28                 MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    meet the Reform Act's pleading standards, the Court must dismiss them.  15 U.S.C. § 78u-

2    4(b)(3)(A).[15]

3              **1.      Plaintiff Fails to Plead Facts Supporting a Strong Inference of**
                         **Intentional or Deliberately Reckless Misstatements by Defendants.**
4

5              Plaintiff attempts to plead scienter by offering the conclusions in her Complaint, without

6    any corroborating details, that defendants knew the statements in the 2004 Prospectus "were

7    materially false and misleading" because they "knew about the already in place [incentive

8    arrangements] but drafted, authorized, and thereafter left in place intentionally vague

9    disclosures."  FAC ¶¶ 46-47.

10             Particularly in light of the actual content of the 2004 Registration Statement, the

11   allegations of the Complaint do not come close to creating a strong inference that any defendant

12   acted with scienter.  As discussed above, the WM Trusts complied with the SEC's applicable

13   Form N-1A disclosure requirements in preparing the 2004 Registration Statement, including the

14   Prospectus contained therein.  More significantly, as also explained above, the 2004 Registration

15   Statement actually disclosed the Form of Dealer Agreement setting forth the specifics of the fee-

16   sharing agreements with WMFS and other dealers selling the WM Funds, and there are no

17   material omissions in the Registration Statement.  The disclosure of the Form of Dealer

18   Agreement demolishes any purported inference that defendants were trying to keep these

19   payments a secret.  *See* FAC ¶ 49.  Furthermore, as explained above, there are no material

20   omissions or misleading statements in the 2004 Prospectus and SAI even when divorced from the

21   rest of the publicly-disclosed 2004 Registration Statement.

22             As another court stated in dismissing similar allegations, "It cannot be conscious

23   misbehavior or recklessness for a defendant to fail to disclose in a prospectus information that is

24   neither material nor required to be disclosed under applicable SEC regulations."  *See In re*

25   *Morgan Stanley & Van Kampen*, 2006 WL 1008138, *11 (quoting *Geiger v. Solomon-Page*

---

26   [15]    The Reform Act requires Plaintiff to satisfy these pleading standards *before* any discovery,
         and without regard for any speculative claim that discovery might support her case.  The
27       Court accordingly should disregard Plaintiff's pleas concerning the purported availability of
         additional, unspecified factual grounding for her scantily pled claims following discovery.
28       *See* 15 U.S.C. § 78u-4(b)(3)(B) (mandatory discovery stay); FAC preamble, ¶ 45.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    *Group, Ltd.*, 933 F. Supp. 1180, 1191 (S.D.N.Y. 1996)).

2           Even if there were a material misstatement or omission in the 2004 Prospectus with

3    respect to any details of the defendants' revenue-sharing arrangements (which there was not),

4    there would be no reason to conclude any such a misstatement or omission supported a strong

5    inference of deliberate recklessness or intent to defraud.  Plaintiff's allegation that the WM Trusts

6    knew that the disclosures in the 2004 Prospectus were improper because the disclosures were

7    reworded and made more specific in later prospectuses (*see* FAC ¶ 50) is an example of the

8    rejected practice of pleading "fraud by hindsight."  *See In re Cabletron Systems, Inc.*, 311 F.3d

9    11, 37 (1st Cir. 2002); *Teachers' Retirement Sys. v. Hunter*, 477 F.3d 162, 183 (4th Cir. 2007),

10   *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) ("The purpose of

11   the [Reform Act's] heightened pleading requirement was generally to eliminate abusive securities

12   litigation and particularly to put an end to the practice of pleading 'fraud by hindsight.'").  That

13   the WM Trusts modified their disclosures later says nothing about any defendant's state of mind

14   with respect to the 2004 Prospectus on which Plaintiff's claims are based.  Plaintiff was required

15   to allege facts creating a strong inference that the WM Trusts knew or must have known that the

16   statements were materially misleading *when the statements were made*.  She has not done so.

17          In order to determine whether the FAC alleges particular facts creating the required

18   "strong" or "compelling" inference of fraudulent intent, the Court must also consider opposing

19   inferences from the facts before it.  Only where the inference of fraudulent intent is "cogent and

20   at least as compelling as any opposing inference" may the claim survive dismissal.  *See Tellabs*,

21   127 S. Ct. at 2510.  Here the inferences of innocence are overwhelming.  Given that the SEC was

22   in 2004 (and still is) in the midst of its rulemaking process with regard to disclosure of mutual

23   fund fee allocation, defendants could reasonably have believed that the law did not require further

24   disclosure.  *See In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, *11; *Castillo*, 1998

25   WL 342050, *8. *see also* RJN Exh. I at 7 (noting that revenue-sharing arrangements need not be

26   disclosed in mid-2003); *Merrill Lynch Inv. Mgmt. Funds Sec. Litig.*, 434 F. Supp. 2d at 238

27   (holding that mutual funds are not required to disclose the allocation of a portion of the total fees

28   charged to pay for "shelf-space" programs).  Though around the time that the Funds filed the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                    30                    MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1  2004 Registration Statement with the SEC, Congress and the SEC were considering enacting new

2  law requiring additional disclosures regarding those arrangements, no such laws were yet enacted.

3  *See generally* RJN Exh. I (testimony before Congress regarding potential federal legislation);

4  Exh. K (proposed SEC regulation).  Indeed, both the Sixth Circuit and courts in the Southern

5  District of New York have found no material inaccuracy in similar mutual fund prospectus

6  disclosures, which stated that brokers "may" receive additional compensation, strongly

7  suggesting that defendants in the case at bar acted reasonably and without scienter in reaching the

8  same conclusion and making their similar disclosures.  *Benzon*, 420 F.3d at 612; *AIG I*, 2007 WL

9  1213395 at *8 n.15.  It defies reason to suggest that defendants "must have known" the 2004

10  Prospectus was materially misleading, where at least two separate federal courts have found

11  similar language *not* materially misleading.  The instant case is further weakened by the

12  disclosures in the Registration Statement and the additional details disclosed in the revised

13  version on December 30, 2004, none of which would have occurred if there was an illicit intent to

14  conceal material information.

15       Plaintiff's obligation was to plead specific facts showing that the disclosures were so

16  obviously materially misleading that the defendants must have been aware of it.  *Silicon*

17  *Graphics*, 183 F.3d at 976.  Plaintiff has failed to do so, and her Exchange Act claims accordingly

18  must be dismissed.[16]

19       **2.  Plaintiff's Motive Allegations Do Not Create a Strong Inference of Scienter.**

20

21       Plaintiff's perfunctory motive allegations fail to assist her in creating the required strong

22  inference of scienter.  Plaintiff alleges that the existence of the challenged fee-sharing

23  _____

[16]  Even if the Court were to recognize a private right of action under Rule 10b-10 (which it
24  should not, as explained *supra* at Part VI.A.2), Plaintiff's Rule 10b-10 claim against WMFS
would fail for the additional reason that any such claim would have to satisfy the scienter
25  requirements applicable to all private claims under Exchange Act Section 10(b).  *See, e.g.*,
*Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 540 (9th Cir. 1984) (holding that any
26  private cause of action based on SEC rules under Section 10(b) requires pleading and proof
of scienter); *Morris*, 277 F. Supp. 2d at 630 (scienter is a necessary element of any Section
27  10(b) claim).  In order to maintain a Rule 10b-10 claim, therefore, Plaintiff would have to
allege specific facts creating a strong inference that WMFS knew or must have known that
28  the 2004 Prospectus disclosures were false or misleading.  The FAC includes no such
allegations.  Nor could any such allegations survive scrutiny, for the reasons noted in the text.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                         31                   MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

arrangements "indicates that WAMU believes these programs drive sales." FAC ¶ 47. The economic motive to sell the Funds, however, was disclosed in the 2004 Prospectus. *See Castillo*, 1998 WL 342050, *10 (rejecting motive allegations where plaintiffs pointed to no motive other than the economic gain that was disclosed in the prospectus). Plaintiff's allegation that defendants were motivated to make misstatements and omissions to conceal the allegedly lucrative incentive arrangements (FAC ¶ 49) is absurd on its face. The 2004 Prospectus disclosures put investors on notice that incentive arrangements may exist, and additional details were publicly disclosed in the Registration Statement. These facts do not create a strong inference of scienter on the part of defendants; to the contrary, the lengths to which Plaintiff must stretch logic to conjure up "inferences" of illicit intent shows the weakness of her case. Indeed, no nefarious motive can reasonably be inferred here, and Plaintiff's Exchange Act claims must fail.[17]

### D.    Plaintiff Has Failed to Plead Reliance or "Transaction Causation"

Another necessary element of any Section 10(b) of the Exchange Act claim is reliance, also known as "transaction causation." *See Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th Cir. 1999)*; Morris*, 277 F. Supp. 2d at 632; *see also Arnst v. Stifel, Nicolaus & Co., Inc.*, 86 F.3d 973, 977 (10th Cir. 1996) (holding that, assuming a private right of action existed under SEC Rule 10b-10, the alleged violation of this rule must necessarily have impacted the plaintiff's decision to purchase or sell a security for a cause of action to be stated). As with any fraud claim, Plaintiff must have relied on the alleged misstatement or omission, such that "but for" the misstatement or omission, she would not have purchased the mutual fund shares. *See Arnst*, 86 F.3d at 977. Where the case is primarily based on an omission or where there is an efficient market for the security, however, reliance can be presumed. *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988) (holding that reliance may be presumed where the price of the security is reflective of all publicly available information regarding the security); *Binder v. Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999) (holding that reliance may be presumed where the case primarily alleges material

---

[17]    Even if Plaintiff had made coherent allegations on this subject, allegations of motive and opportunity to defraud, without more, are generally insufficient to satisfy the Reform Act's requirements for pleading scienter. *See Silicon Graphics*, 183 F.3d at 974.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                        32                         MEMO. SUPPORTING MOTION TO
                                                                                DISMISS FIRST AMENDED COMPLAINT
                                                                                (07-CV-0385-DMS-CAB)

1   omissions).

2           Plaintiff admits that there is not an efficient market for mutual fund shares.  *See* FAC ¶ 54.

3   Therefore, Plaintiff attempts to avoid the necessity of pleading reliance by characterizing this case

4   as being one of omission.  *See* FAC ¶¶ 1, 4.  Simply labeling the case as one based on omissions,

5   however, does not make it so.  *See Binder*, 184 F. 3d at 1063-64 (rejecting plaintiff's argument

6   that a presumption of reliance could apply because the district court's ruling that the plaintiff

7   alleged misstatements and omissions, and the plaintiff did not primarily allege omissions).

8   Indeed, the gravamen of the FAC focuses not upon statements that were *not* made in the 2004

9   Prospectus.  Rather, Plaintiff's principal complaint is about statements that *were* made.  Namely,

10  she complains that the 2004 Prospectus stated that the revenue sharing arrangements "may" be in

11  place, when they were in place, and that the WM Distributor revenue sharing arrangements were

12  said to be at WM Distributor's expense.  Because she complains about affirmative statements in

13  the 2004 Prospectus, this case is best characterized, not as one of alleged omission, but one of

14  alleged misrepresentation.

15          Cases involving alleged misrepresentations require allegations of reliance on those

16  misrepresentations.  *Binder*, 184 F.3d at 1064.  Plaintiff's allegation that she would not have

17  purchased the funds had she known about the revenue sharing arrangements (FAC ¶ 57),

18  however, is contradicted by her allegation that the only acquisition of WM Funds shares she (or

19  her mother) made during the putative Class Period were through automatic dividend

20  reinvestments (FAC ¶ 11).  Indeed, she cannot plead reliance where the acquisition was made

21  through an automatic dividend reinvestment because the acquisition would have occurred

22  regardless of whether Plaintiff was actively monitoring her mother's account or was ignoring her

23  completely.  Because Plaintiff's conclusory allegation of reliance is contradicted by her

24  allegations that her only acquisition was made through an automatic dividend reinvestment, for

25  which no confirmation under Rule 10b-10 is even necessary (*see* Part VI.A.2), and because no

26  presumption of reliance can be applied in this case, her Exchange Act claims must fail.

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

E.    **Plaintiff Fails to Plead "Scheme Liability" Under Rule 10b-5**

Plaintiff's theory that certain defendants engaged in a "scheme to defraud" investors in violation of Rule 10b-5(a) and (c) also fails.  To impose "scheme liability," Plaintiff must plead specific facts showing that the defendants engaged in a "deceptive act," meaning a transaction or conduct that had "the *principal purpose and effect* of . . . creat[ing] the false appearance of fact." *See Simpson v. AOL Time Warner Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006).  Plaintiff has made no such allegations; rather, this is a case about alleged misstatements, not actions designed for the purpose of deception.  Moreover, Plaintiff herself alleges that the principal purpose and effect of the challenged incentive arrangements was to increase profits, not to create a "false appearance of fact."  FAC ¶ 49.  There is no basis for "scheme liability" here.  *See Simpson,* 452 F.3d at 1050 ("Participation in a legitimate transaction, which does not have a deceptive purpose or effect, would not allow for a primary violation.").[18]

VII.    **PLAINTIFF HAS FAILED TO PLEAD DAMAGES OR LOSS CAUSATION**

A.    **Plaintiff Has Not Alleged Damages to Support the Securities Act Claims.**

Plaintiff's Securities Act claims are also deficient because she has failed to plead that she suffered recoverable damages, which in this context must take the form of an out-of-pocket loss resulting from depreciation in value of the Funds.  Sections 11 and 12(a)(2) of the Securities Act allow only for recovery of *depreciation in value* of the subject security.  15 U.S.C. §§ 77k(e), 77*l*(a)(2), (b); *see In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203, 1205 (9th Cir. 2002); *In re Merrill Lynch & Co. Research Reports Sec. Litig.,* 272 F. Supp. 2d 243, 253-54 (S.D.N.Y. 2003); *In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845, 866-67 (D. Md. 2005).  If the Funds have instead appreciated in value between the time of any acquisition during the Class Period and the present (or the time when such Funds were sold), then there can be no recovery under the Securities Act.  *See In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d at 867 (dismissing

---

[18]    Plaintiff alleges primary liability under Rule 10b-5 only against the WM Trusts and Principal Fund.  No scheme liability under Rule 10b-5 could possibly attach to the other defendants.  Even if the challenged statements did have a deceptive effect (which they do not), mere knowledge that *another* entity is making misleading statements is not sufficient to make one liable for securities fraud.  *See Simpson,* 452 F.3d at 1050.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                   34                            MEMO. SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    plaintiffs' Section 11 and 12 claims because they failed to allege facts demonstrating that they did

2    sell, or could have sold at the time of suit, their mutual fund shares for an amount less than they

3    paid for those shares); *see also In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d at 1204, 1205

4    (dismissing Section 11 and 12 claims because the security increased in value between the date of

5    purchase and the date when the stock was disposed of).

6         Plaintiff alleges merely that she "sustained damages" as a result of the purported

7    violations of the Securities Act, but nowhere does she allege that the shares in the Funds

8    depreciated in value following her mother's acquisition.  FAC ¶¶ 78, 87.  To the contrary, the two

9    WM Funds purchased by Plaintiff's mother generally increased in value during and after the

10   Class Period, and after the dividend reinvestments in December 2004.  RJN Exhs. M, N.  Since

11   Plaintiff has not alleged that she (or her mother) sold her shares in the Funds at a loss, or could

12   have sold them at a loss at the time of filing suit, her Securities Act claims are deficient and must

13   be dismissed.[19]  *See In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d at 867.

14   **B.     Plaintiff Has Not Alleged Loss Causation on the Exchange Act Claims.**

15        To state a claim under the Exchange Act, Plaintiff must do more than allege that she

16   would not have purchased the Funds had the allegedly omitted facts been disclosed, *i.e.*

17   "transaction causation."[20]  She must also allege that the acts or omissions of the defendants

18   actually caused the losses she seeks to recover, *i.e.* "loss causation."  *See Dura Pharm., Inc. v.*

19   *Broudo*, 544 U.S. 336, 341 (2005).  In other words, she must link her alleged losses not merely to

20   her ownership of the Funds, but to the purported failure to disclose the incentive arrangement.  *Id.*

21   This she cannot do.

---

[19]   This is not merely a technical failure of pleading.  Plaintiff has not alleged any loss in value
23     of her Funds because she is unable to do so.  As Plaintiff undoubtedly knows, her mother's
       account with WMFS reflects no purchases of Fund shares during the Class Period, and no
24     acquisitions of any kind other than the automatic dividend reinvestments in December 2004,
       shares that Plaintiff's mother sold *at a profit* in November 2005.  Plaintiff cannot pursue any
25     Securities Act claim.

26   [20]   Although Plaintiff alleges that she would not have purchased the Funds had she known of the
       challenged incentive payments, (FAC ¶ 57), Plaintiff has not pleaded that she purchased
27     Fund shares, as opposed to having passively acquired shares through automatic dividend
       reinvestment, during the Class Period and after the purported misstatements in the 2004
28     Prospectus, such that transaction causation would even be possible.  *See* Part IV.A.2, above.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Plaintiff admits in her FAC that the price of mutual fund shares is determined by the "net

2    asset value" ("NAV") of the fund, which is calculated by subtracting the mutual fund's liabilities,

3    such as fees and commissions, from its assets.  FAC ¶ 54; *In re Morgan Stanley & Van Kampen*,

4    2006 WL 1009138 at *9 (setting forth the formula for determining NAV).  Any decline in the

5    NAV "is related to the success of the investment strategies of that fund . . . and bears no

6    relationship to the compensation arrangements of the brokers."  *Castillo*, 1998 WL 342050 at *5

7    (rejecting theory that failure to disclose that a portion of certain mutual fund fees was paid to

8    brokers as an incentive for selling shares could cause plaintiffs' loss).  Plaintiff makes no

9    allegation that the *total* fees paid by the Funds were inaccurately or incompletely disclosed; her

10   complaint concerns the uses of such fees by WM Advisors and WM Distributor, *after* such fees

11   were deducted from the Funds (and fully disclosed to investors).  *See* FAC ¶¶ 33, 58.  Only the

12   total fees charged – not their allocation – impacts NAV.  *See In re Morgan Stanley & Van*

13   *Kampen*, 2006 WL 1009138 at *9; *Castillo*, 1998 WL 342050 at *5.  Whether or not the 2004

14   Prospectus fully disclosed the allocation of these fees, and regardless of whether the fee-sharing

15   arrangements were in place or not, *the NAV would be the same* based on the fees charged to the

16   Funds, which were disclosed in full detail.  Therefore, Plaintiff's allegations that she purchased

17   shares of the funds at "an artificially inflated rate" and that the incentive payments "dissipated the

18   NAV" are incorrect as a matter of law.  *See In re Morgan Stanley & Van Kampen*, 2006 WL

19   1009138 at *9 (holding plaintiff's claim that value of mutual fund shares would have been less if

20   incentive fees to brokers were disclosed is "incorrect as a matter of law").[21]

21   Further, Plaintiff has not alleged that the Funds would have performed better had the

22   incentive payments been disclosed more fully, such that the failure to disclose the incentive

23   payments proximately caused any loss.  Thus, Plaintiff has pleaded no cognizable theory linking

24

_____

25   [21]   Indeed, with respect to the fees paid to WM Distributor, Plaintiff's allegation that she was led
      to believe that the entire amount of those fees – the total of which was fully disclosed in the
26   Prospectus and SAI – would be used exclusively for the benefit of Fund investors (*see* FAC ¶
      55) is contradicted by the 2004 Prospectus itself.  The 2004 Prospectus makes clear that the
27   fees paid to WM Distributor were *not* directly related to its expenses in that if the fees paid to
      WM Distributor exceeded its expenses, it was *not* required to return the excess to the Funds,
28   even though that excess would not benefit Fund investors.  RJN Exh. C at 70, 122.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                              36                    MEMO. SUPPORTING MOTION TO
                                                                 DISMISS FIRST AMENDED COMPLAINT
                                                                 (07-CV-0385-DMS-CAB)

1   the failure to more fully disclose the incentive payments to any loss, and Plaintiff's Exchange Act

2   claims must fail for this reason as well.[22]  *See id*; *Castillo*, 1998 WL 342050 at * 5.

3   **VIII.   PLAINTIFF'S CONTROLLING PERSON CLAIMS FAIL**

4        For each of the reasons set forth above, this case should be dismissed in its entirety.  If any

5   allegations of the Complaint survive this motion, however, Plaintiff's claims as to defendants WMI,

6   the publicly-traded indirect parent company of defendant WMFS, Principal, Principal Fund, and

7   Principal Distributor should not be among them.  The FAC alleges no factual basis for any claims

8   against these defendants, but claims that they are secondarily liable under Section 15 of the

9   Securities Act and Section 20(a) of the Exchange Act for the alleged primary violations of the other

10  defendants, purportedly because these defendants allegedly controlled the primary violators.  FAC

11  ¶¶ 90-97, 117-23.

12       Control person liability may exist only where underlying claims against the alleged

13  primary violators survive dismissal.  *Paracor Finance, Inc. v. General Electric Capital Corp.*, 96

14  F.3d 1151, 1161 (9th Cir. 1996); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d 857, 883

15  (N.D. Cal. 2004).  Because Plaintiff's underlying claims fail for the reasons set forth above, the

16  controlling person claims against WMI, Principal, Principal Distributor, and Principal Fund fail as

17  well.

18       Plaintiff's controlling person claims also fail on their own terms, because Plaintiff has failed

19  to allege control person liability with particularity.  *See Howard v. Hui*, No. C 92-3742 (CRB),

20  2001 WL 1159780, *4 (N.D. Cal. Sept. 24, 2001) (holding that "a plaintiff must plead the

21  circumstances of the control relationship with sufficient particularity to satisfy rule 9(b)"); *In re*

22  *Splash Tech. Holdings, Inc. Sec. Litig.*, No. C 99-00109 SBA, 2000 WL 1727405, * 15 (N.D. Cal.

23

24  [22]  Plaintiff alleges that had she known about the payments, she would not have paid them.  FAC
     ¶ 59.  Based on the pleading, the only way that one can assume Plaintiff's mother might have

25   avoided paying them is by not purchasing the funds in the first place, which supports the
     element of transaction causation, not loss causation.  Further, Plaintiff's allegation that she

26   might have invested in other funds and obtained a better rate of return is too speculative to
     support loss causation.  "It is long-established law that a shareholder cannot recover for

27   'damages' based on hypothetical investments [s]he did not make."  *In re Morgan Stanley &*
     *Van Kampen*, 2006 WL 1008138, * 10; *see also Blue Chip Stamps v. Manor Drug Stores*,

28   421 U.S. 723, 734 (1975) (holding plaintiffs have no claim for securities fraud based on
     allegations that they would have purchased a security but for fraud).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                  37                        MEMO. SUPPORTING MOTION TO
                                                                         DISMISS FIRST AMENDED COMPLAINT
                                                                              (07-CV-0385-DMS-CAB)

1   Sept. 29, 2000) ("In order to adequately plead the second element of a control person liability

2   claim, the complaint must plead the circumstances of the control relationship with particularity.").

3   With regard to WMI, Plaintiff's controlling person claims fail because she has not alleged facts

4   amounting to "actual control" and "culpable participation" by WMI with respect to the challenged

5   revenue-sharing arrangements among WM Advisors, WM Distributor, and WMFS.[23]  *See In re*

6   *Calpine Corp. Sec. Litig.*, 288 F. Supp. 2d 1054, 1081 (N.D. Cal. 2003) ("The . . . defendant must

7   have exerted actual control and have been a culpable participant in the alleged Securities Act

8   violations.") (citing *Durham v. Kelly*, 810 F.2d 1500, 1504 (9th Cir. 1987)).  Plaintiff fails to

9   allege how WMI had actual power or influence over the primarily liable defendants, or even to

10  describe the exact nature of the relationship between the parties.  *Durham,* 810 F.2d at 1503-04

11  ("To establish that someone is a 'controlling person' the complainant must show that there was a

12  relationship between the controlling and controlled person and that actual power or influence was

13  exerted over the alleged controlled person.").  Plaintiff's conclusory pleading that WMI is a

14  controlling person "by virtue of its position of operational control and/or ownership" does not

15  satisfy her burden.  FAC ¶ 121; *see In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 926 (9th Cir.

16  1996) ("conclusory allegations of law and unwarranted inference are insufficient to defeat a

17  motion to dismiss for failure to state a claim").  While unclear, if Plaintiff is alleging Section 15

18  claims against the "WAMU Fund Companies" and WMFS and Section 20 claims against the

19  "Registrants" and WMFS, they should also be dismissed for the same reasons.  FAC ¶¶ 91, 118.

20          With regard to Principal, Principal Distributor, and Principal Fund, Plaintiff's allegations

21  that they are successors to WMI, the WM Trusts, the WM Fund Companies and WMFS for this

22  alleged liability do not satisfy the heightened pleading requirement for these fraud-based claims,

23  *see In re Splash Tech. Holdings, Inc. Sec. Litig.*, 2000 WL 1727405, at *15, for a number of

24  reasons.  First, as noted above, Plaintiff does not adequately plead that the alleged predecessor

25  _____

26  [23]   Although Sections 15 and 20(a) differ with respect to the underlying primary violations, the
        same standard applies to both of the claims as they relate to WMI, Principal, Principal
27      Distributor, and Principal Fund.  *Hollinger*, 914 F.2d at 1568 n.4; *see also Durham*, 810 F.2d
        at 1503; *In re Calpine*, 288 F. Supp. 2d at 1088.  As a result, Plaintiff's claims are addressed
28      together here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                      38                     MEMO. SUPPORTING MOTION TO
                                                                          DISMISS FIRST AMENDED COMPLAINT
                                                                          (07-CV-0385-DMS-CAB)

1    entities (WMI, the WM Trusts, the WM Fund Companies, and WMFS) were themselves control

2    persons, and thus there is no basis to impose liability on an alleged successor.  Second, Plaintiff

3    does not plead facts that could establish an exception to the rule that asset purchasers are not

4    liable as successors for the liabilities of the selling corporation.  *See Schwartz v. Pillsbury Inc*.,

5    969 F.2d 840, 844-45 (9th Cir. 1992).

6          For these reasons, Plaintiff's controlling person claims should be dismissed.

7    ///

8    ///

9    ///

10   ///

11   ///

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                                    39                        MEMO. SUPPORTING MOTION TO
                                                                           DISMISS FIRST AMENDED COMPLAINT
                                                                           (07-CV-0385-DMS-CAB)

1   IX.   **CONCLUSION**

2          For the foregoing reasons, the First Amended Complaint should be dismissed, with

3   prejudice and without leave to amend.

4   DATED:  October 15, 2007                    Respectfully submitted,

5                                               MORGAN, LEWIS & BOCKIUS LLP
                                                MICHAEL J. LAWSON, SBN 66547
6                                               JOSEPH E. FLOREN, SBN 168292
                                                LISA A. FREITAS, SBN 227109
7                                               SHEILA A. JAMBEKAR, SBN 239101
                                                One Market, Spear Street Tower
8                                               San Francisco, CA  94105-1126
                                                Tel:  415.442.1000
9                                               Fax:  415.442.1001
                                                Email: michael.lawson@morganlewis.com
10                                                      jfloren@morganlewis.com
                                                        lfreitas@morganlewis.com
11                                                      sjambekar@morganlewis.com

12
                                                By: _____/s/_____
13                                                              Joseph E. Floren

14                                              Attorneys for Defendants Washington Mutual,
                                                Inc. and WM Financial Services, Inc.
15
    DATED:  October 15, 2007                    O'MELVENY & MYERS LLP
16                                              PHILLIP R. KAPLAN, SBN 76949
                                                MARCUS S. QUINTANILLA, SBN 205994
17                                              ANDREW R. ESCOBAR, SBN 249242
                                                610 Newport Center Drive, 17th Floor
18                                              Newport Beach, CA 92660-6429
                                                Tel:  949.760.9600
19                                              Fax:  949.823.6994
                                                Email: pkaplan@omm.com
20                                                      mquintanilla@omm.com
                                                        aescobar@omm.com
21
                                                By: _____/s/_____
22                                                              Phillip R. Kaplan

23                                              Attorneys for Defendants WM Advisors, Inc.,
                                                WM Distributor, Inc., Edge Asset
24                                              Management, Inc., Principal Financial Group,
                                                Inc., Principal Investors Fund, Inc., Principal
25                                              Funds Distributor, Inc., WM Trust I, WM
                                                Trust II, and WM Strategic Asset Management
26                                              Portfolios LLC

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7597506.7                    40         MEMO. SUPPORTING MOTION TO
                                             DISMISS FIRST AMENDED COMPLAINT
                                             (07-CV-0385-DMS-CAB)