1  **FINKELSTEIN & KRINSK LLP**
   Jeffrey R. Krinsk (State Bar No. 109234)
2  Mark L. Knutson (State Bar No. 131770)
   William R. Restis (State Bar No. 246823)
3  501 West Broadway, Suite 1250
   San Diego, California 9210-3579
4  Telephone: (619)238-1333
   Facsimile: (619) 238-5425
5
   Attorneys for plaintiff
6  Luz. M. Zapien

7

8              **UNITED STATES DISTRICT COURT**
                **SOUTHERN DISTRICT OF CALIFORNIA**
9                      **AT SAN DIEGO**

10

11  LUZ M. ZAPIEN, Individually And On Behalf     )  Case No. 3:07-cv-00385-DMS-CAB
    Of All Others Similarly Situated,             )
12                                                )
                                                  )
13                Plaintiff,                      )  **PLAINTIFF'S OPPOSITION TO**
                                                  )  **DEFENDANTS' MOTION TO**
14                                                )  **DISMISS PLAINTIFF'S FIRST**
    v.                                            )  **AMENDED COMPLAINT**
15                                                )
                                                  )  Date:     January 11, 2008
16  WASHINGTON MUTUAL, INC., WM TRUST I, )  Time:     1:30 p.m.
    WM  TRUST  II,WM  STRATEGIC  ASSET )  Place:    Courtroom 10, 2nd Floor
17  MANAGEMENT PORTFOLIOS, LLC, WM )  Judge:    Hon. Dana M. Sabraw
    FINANCIAL SERVICES, INC., WM ADVISORS, )
18  INC., WM FUNDS DISTRIBUTOR, INC., EDGE )
    ASSET  MANAGEMENT,  INC.,  PRINCIPAL )
19  FINANCIAL  GROUP,  INC.,  PRINCIPAL )
    INVESTORS FUND, INC., PRINCIPAL FUNDS )
20  DISTRIBUTOR, INC.,                            )  **JURY TRIAL DEMANDED**
                                                  )
21                Defendants.                     )  **ORAL ARGUMENT REQUEST**
                                                  )
22  _____ )

23

24

25

26

27

28
    _____

**TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ................................................................. 2

II.  ADDITIONAL FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT ...... 4

III.  STANDARDS FOR 12(b)(6) MOTION TO DISMISS ............................. 5

IV.  ARGUMENT ..................................................................... 6

    A.  PLAINTIFF HAS STANDING TO ASSERT ALL CLAIMS AS ALLEGED ... 6

        1.  Plaintiff's Purchase of The Proprietary Funds Confers Standing Even Though The Proprietary Funds Were Placed In The Name of Her Mother ...... 7

        2.  Plaintiff's Reinvestment of Dividends Constitute Purchases Within The Class Period ................................................................. 8

        3.  Plaintiff's Purchase Of Shares In Two Funds Confers Standing To Prosecute Claims Arising From The Same Prospectus ....................... 9

    B.  PLAINTIFF'S CLAIMS ARE NOT TIME BARRED .................... 11

        1.  The Ninth Circuit Uses An "Inquiry-Plus-Reasonable-Diligence Test" . 12

        2.  Defendants' March 2004 Purported "Disclosures" Were Not Probative Of Fraud .................................................................. 13

        3.  The "Form Of Dealer Agreement" Was Not Part Of The Prospectus Or SAI, And Was Not Referenced By Those Documents ............... 15

        4.  The March 1, 2005 Prospectus Did Not Put Plaintiff On Inquiry Notice Because The Disclosures Therein Were Not Corrective And Purported To Reflect A Change In Practice ............................... 16

    C.  STATEMENTS THAT REVENUE SHARING PAYMENTS "MAY" OCCUR WHEN SUCH PAYMENTS WERE IN FACT OCCURRING CONSTITUTES FRAUD ....................................................... 18

        1.  The Misleading Statements And Omissions ...................... 18

        2.  Form N1-A Requires Defendants To Disclose The Shelf Space Program Using Clear And Simple Language ............................. 19

        3.  Defendants Affirmative Statements Omitted Material Information and Were Also Misleading .......................................... 20

        4.  Undisclosed Aspects of the Shelf Space Programs Were Material ..... 22

5.    The Form Of Dealer Agreement Did Not Disclose
The Shelf Space Programs . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

D.    PLAINTIFF HAS ADEQUATELY PLED TRANSACTION CAUSATION BY
ALLEGING THAT SHE WOULD NOT HAVE PURCHASED PROPRIETARY
FUNDS BUT FOR CONCEALMENT OF THE SCHEME . . . . . . . . . . . . . . . 26

E.    DEFENDANTS DEPLETION OF PROPRIETARY FUND ASSETS THROUGH
IMPROPER FEES CONSTITUTE RECOVERABLE DAMAGES AND LOSS
CAUSATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

F.    PLAINTIFF HAS ALLEGED FACTS CREATING A STRONG INFERENCE OF
SCIENTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

1.    The Tellabs Requirement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

2.    Allegations Of Public Statements Contradicting Present Knowledge
Constitute A Strong Inference Of Scienter . . . . . . . . . . . . . . . . . . . . . . 29

3.    Scienter Is Established By Allegations Of Motive . . . . . . . . . . . . . . . . . 31

4.    Defendants Motion Does Not Establish An Innocent Explanation More
Cogent Than Plaintiff's Allegations . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

G.    WMFS' VIOLATION OF RULE 10b-10 CONSTITUTED A VIOLATION OF
SECTION 10(b) OF THE EXCHANGE ACT . . . . . . . . . . . . . . . . . . . . . . . . . 33

H.    THE PRINCIPAL DEFENDANTS' ACQUISITION OF THE WAMU FUND
COMPANIES CREATES SUCCESSOR LIABILITY . . . . . . . . . . . . . . . . . . . 34

I.    CONTROL PERSON LIABILITY IS PROPERLY ALLEGED . . . . . . . . . . . . 34

IV.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ii

## TABLE OF AUTHORITIES

### FEDERAL CASES

**Page**

Adams v. Johnson
355 F.3d 1179 (9th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Affiliated Ute Citizens of Utah v. United States
406 U.S. 128 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,27

AIG Advisor Group
2007 WL 1213395, . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,25,29

American High-Income Trust v. AlliedSignal
Fed. Sec. L. Rep. 93,817, 2006 WL 838992 (S.D.N.Y.,2006) . . . . . . . . . . . . . . . . . . . . . . . . . 17

Arduini/Messina P'ship v. National Med. Fin. Servs. Corp.
74 F.Supp.2d 352 (S.D.N.Y.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Backhaus v. Streamedia Commc'n, Inc.
Fed. Sec. L. Rep. 91,964, 2002 WL 1870272 at (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . 13

Basic Inc. v. Levinson
485 U.S. 224 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20,26

Bell Atlantic Corp. v. Twombly
__ U.S. __, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P.
435 F.3d 396 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Benzon v. Morgan Stanley Distribs., Inc.
420 F.3d 598 (6th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23,24,25

Betz v. Trainer Wortham & Co., Inc.
__ F.3d. __, 2007 WL2874369 at *7 (9th Cir. Oct. 4, 2007) . . . . . . . . . . . . . . . . . . . . . . . 12,14,16

Binder v. Gillespie
184 F.3d 1059 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Blue Chip Stamps v. Manor Drug Stores
421 U.S. 723 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Blum v. Yaretsky
457 U.S. 991 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

Briskin v. Ernst & Ernst
589 F.2d 1363 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Bull v. Chandler
Fed. Sec. L. Rep. 96,567, 1992 WL 103686 (N.D.Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Calvi v. Prudential Secs., Inc.
861 F.Supp. 69 (C.D.Cal.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Cetel v. Kirwan Financial Group, Inc..
460 F.3d 494 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Commc'n Workers of America Plan for Employees' Pensions and Death Benefits v. CSK Auto Corp.
2007 WL 2808652 (D.Ariz. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,29

CSK Auto Corp.
2007 WL 2808652 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29,33

Dale v. Rosenfeld
229 F.2d 855 (2d Cir.1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

DeBruyne v. Equitable Life Assur. Soc. of U.S.
920 F.2d 457 (7th Cir.1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Dodds v. Cigna Securities, Inc.
12 F.3d 346 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Dura Pharmaceuticals, Inc. v. Broudo
544 U.S. 336 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Emergent Capital Inv. Mgmt. v. Stonepath Group, Inc.
343 F.3d 189 (2d Cir.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Fallick v. Nationwide Mut. Ins. Co.
162 F.3d 410 (6th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Fishbury, Ltd. v. Connetics Corp.
2006 U.S. Dist. LEXIS 90696 (S.D.N.Y. Dec. 14, 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Franze v. Equitable Assurance
296 F.3d 1250 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Goldman v. Belden
754 F.2d 1059 (2d Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Gratz v. Bollinger
539 U.S. 244 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

Great Rivers Coop. of S.E. Iowa v. Farmland Indus., Inc.
120 F.3d 893 (8th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Hanon v. Dataproducts Corp.
976 F.2d 497 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Havenick v. Network Exp., Inc.
981 F.Supp. 480 (E.D.Mich.,1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Herman & MacLean v. Huddleston
459 U.S. 375 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Hevesi v. Citigroup, Inc.
366 F.3d 70 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Howard v. Everex Sys., Inc.
228 F.3d 1057 (9th Cir.2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

In re Alger, Columbia, Janus, MFS, One Group, Putnam Mut. Fund Litig.
320 F.Supp.2d 352 (D.Md. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Apple Computer Sec. Litig .
886 F.2d 1109 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

In re Atmel Corp. Derivative Litig.
Fed. Sec. L. Rep. at 94,425, 2007 WL 2070299 (N.D.Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . 11

In re Bank of Boston Corp. Sec. Litig.
762 F.Supp. 1525 (D.Mass. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Calbetron Sys., Inc.
311 F.3d 11 (1st Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

In re Complete Mgmt. Inc. Sec. Litig
153 F.Supp.2d 314 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Consumers Power Co. Sec.. Litig,
105 F.R.D. 583 (E.D.Mich.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Convergent Tech. Sec. Litig.
948 F.2d 507 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

In re Cylink Secs. Litig.,
178 F.Supp.2d 1077 (N.D. Cal.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

In re Daou Sys. Inc.
411 F.3d 1006 (9th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

In re Dynegy, Inc. Sec. Litig
226 F.R.D. 263 (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Franklin Mut. Funds Fee Litig.
388 F.Supp.2d 451 (D.N.J.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

In re Immune Response Sec. Litig.
375 F. Supp.2d 983 (S.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29,30,31

In re Infonet Serv. Corp. Sec. Litig.
310 F.Supp.2d 1106 (C.D.Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Integrated Resources Real Estate Ltd. Partnerships Sec. Litig.
850 F.Supp. 1105 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Intelligroup Sec. Litig.
468 F.Supp.2d 670 (D.N.J.,2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

In re Lilco Sec.Litig,
111 F.R.D 663 (E.D.N.Y. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ZAPIEN v. WASHINGTON MUTUAL, INC. *et al.*
USDC Case No. 3:07-cv-00395-DMS-CAB

In re Merck & Co., Inc. Sec., Derivative & ""Erisa" Litig.
483 F.Supp.2d 407 (D.N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

In re Metropolitan Sec. Litig.
2007 WL 3274893 (E.D.Wash.,2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

In re Mutual Funds Inv. Litig.
F.Supp.2d – , 2007 WL 3052301 (D.Md. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

In re Parmalat Sec. Litig.
376 F.Supp.2d 472 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

In re Parmalat Sec. Litig.
493 F.Supp.2d 72 (S.D.N.Y.2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

In re Prudential Ins. Co. of Am. Sales Practices Litig.
975 F.Supp. 584 (D.N.J.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Read-Rite Corp.
335 F.3d 843 (9th Cir. 2003.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

In re Salomon Smith Barney Mut. Fund Fees Litig.
441 F.Supp.2d 579 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,6

In re Scott Paper Co. Sec. Litig.
142 F.R.D. 611 (E.D.Pa.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In re Sterling Foster & Co., Inc., Sec. Litig.
222 F.Supp.2d 216 (E.D.N.Y.2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,25

In re TCW/DW N. Am. Gov't Income Trust Sec. Litig.
941 F. Supp. 326 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re VMS Sec. Litig.
136 F.R.D. 466  (N.D.Ill.1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Iqbal v. Hasty
490 F.3d 143 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Kaufman v. Dreyfus Fund, Inc.
434 F.2d 727 (3d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Lapin v. Goldman Sachs Group, Inc.
506 F.Supp.2d 221 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lee v. City of Los Angeles
250 F.3d 668 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Lepow Equities Corp. v. Pinola
1991 WL 32210 (C.D.Cal.,1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Levitin v. PaineWebber, Inc.
933 F.Supp. 325 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Lewis v. Casey
518 U.S. 343 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

Livid Holdings Ltd. v. Salomon Smith Barney, Inc.
416 F.3d 940 (9th Cir. 2005) .................................................... 5

Lujan v. Defenders of Wildlife
504 U.S. 555 (1992) ........................................................... 6

Marlow v. Gold
Fed. Sec.L. Rep. 96,112, 1991 WL 107268 (S.D.N.Y. June 6, 1991) ..................... 14

Marx v. Computer Sciences Corp.
507 F.2d 485 (9th Cir. 1974) ................................................... 21

Mathews v. Kidder, Peabody & Co.
260 F.3d 239 (3d Cir.2001) .................................................... 12

Meadows v. Pac. Inland Sec. Corp.
36 F.Supp.2d 1240 (S.D.Cal.1999) ........................................... 16,18

Mendell v. Greenberg
927 F.2d 667 (2d Cir.1990) .................................................... 25

Merrill Lynch Inv. Mgmt. Funds Sec. Litig.
434 F.Supp.2d 233 (S.D.N.Y. 2006) .......................................... 23,24

Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.
501 U.S. 252 (1991) ........................................................... 6

Middlesex Retirement System v. Quest Software Inc.
2007 WL 3286784 (C.D.Cal. 2007) .............................................. 35

Miller v. Thane Intern., Inc.
_ F.3d _, 2007 WL 4147327  (9th Cir. Nov. 26, 2007) ...................... 15,17,22,25

Milman v. Box Hill Sys. Corp.
72 F.Supp.2d 220 (S.D.N.Y.1999) .............................................. 25

Morris v. Wachovia Securities, Inc.
277 F.Supp.2d 622 (E.D.Va. 2003) ............................................. 33

Mutchka v. Harris
373 F.Supp.2d 1021 (C.D. Cal. 2005) ......................................... 9,26

Neilson v. Union Bank of California, N.A.
290 F.Supp.2d 1101 (C.D.Cal. 2003) ............................................ 6

Nesbit v. McNeil
896 F.2d 380 (9th Cir.1990) ................................................... 28

Newman v. Warnaco Group
335 F.3d 187 (2d Cir. 2003) ............................................... 12,14,18

Nursing Home Pension Fund Local 144 v. Oracle Corp.
380 F.3d 1226 (9th Cir. 2004) ................................................. 30

Olsen v. New York Comty Bancorp, Inc.
233 F.R.D. 101  (E.D.N.Y. 2005) ............................................... 8

Pinter v. Dahl
486 U.S. 622 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Provenz v. Miller
102 F.3d 1478 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Randall v. Loftsgaarden
478 U.S. 647 (1986); Affiliated Ute, 406 U.S. at 155 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Rubin v. United States
449 U.S. 424 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

S. E. C. v. Seaboard Corp.
677 F.2d 1301 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

S.E.C. v. Zandford
535 U.S.813 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Schuyt v. Rowe Price Prime Reserve Fund, Inc.
663 F.Supp. 962 (S.D.N.Y.,1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Siemers v. Wells Fargo & Co.
243 F.R.D. 369 (N.D.Cal. July 1,2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Siemers v. Wells Fargo & Co.,
Fed. Sec. L. Rep. 93,954, 2006 WL 2355411 (N.D.Cal. Aug. 14, 2006) . . . . . . . . . . 21,24,31,35

Siemers v. Wells Fargo & Co.
(Slip Copy) 2007 WL 760750 (Mar. 9, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26,27

Silvers v. Sony Pictures Entm't, Inc.
402 F.3d 881 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,8

Simpson v. AOL Time Warner Inc.
452 F.3d 1040 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Tellabs, Inc. v. Makor Issues & Rights, Ltd.
127 S.Ct. 2499 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29,32

Trendsetter Investors, LLC v. Hyperdynamics Corp.
2007 WL 172627 (S.D.Tex.,2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

TSC Indus.,Inc. v. Northway, Inc.
426 U.S. 438 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Naftalin
441 U.S. 768 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Vaughn v. Teledyne, Inc.
628 F.2d 1214 (9th Cir.1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Virginia Bankshares, Inc. v. Sandberg
501 U.S. 1083 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

viii

Vucinich v. Paine, Webber, Jackson & Curtis, Inc.
739 F.2d 1434 (9th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Whitmore v. Ark.
495 U.S. 149 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Zell v. Int'l Income Sec. Inc.
675 F.2d 1041 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# STATUTES

15 U.S.C. § 77o . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,34

15 U.S.C. § 77l . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,19

15 U.S.C. § 77b . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. § 77k . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,7,27

15 U.S.C. § 78j . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,11

15 U.S.C. § 78t . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,34

15 U.S.C. § 80a-2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

17 C.F.R. § 270.22c-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

17 C.F.R. § 230.405 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

17 C.F.R. § 230.411. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

17 C.F.R. § 230.421 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,22,32

17 C.F.R. § 240.10b-10 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,11,33

17 C.F.R. § 240.10b-5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,11

17 C.F.R. § 240.12b-20 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

28 U.S.C. § 1658(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

1    Plaintiff Luz. M. Zapien ("Plaintiff") respectfully submits this Opposition to Defendants'
2  Motion to Dismiss Plaintiff's First Amended Complaint (the "Motion").

3  **I.    INTRODUCTION**

4    This is a class action seeking to redress a scheme by defendants to defraud investors.
5  Between at least 1997 until March 2005, the WAMU Fund Companies[1] had a concealed scheme in
6  place to steer Plaintiff and other members of the Class into Washington Mutual Inc.'s ("WAMU")
7  proprietary group of mutual funds, the WM Group of Funds (the "Proprietary Funds"). As an integral
8  part of this scheme, WAMU created layers of affiliate companies to skim fees and other charges
9  from Plaintiff and the Class with the participation of retail brokerages, such as Washington Mutual
10 Financial Services ("WMFS"), that steered clients into the Proprietary Funds under the guise of
11 unbiased investment advice. Plaintiff's First Amended Complaint ("FAC"), ¶ 3.

12   The Proprietary Funds' investment advisor – WM Advisors, Inc. ("WM Advisors") – and
13 funds distributor – WM Funds Distributor, Inc. ("WM Funds Distributor") – channeled investment
14 advisor fees, distributor commissions, 12b-1 fees, and other fees paid out of Plaintiff and the Class'
15 investment principal to broker dealers such as WMFS and its "Investment Professionals," i.e.
16 "Salesmen." FAC ¶ 28.[2] Plaintiff collectively refers to the WAMU Fund Companies' efforts as the
17 "Shelf Space Program." On March 1, 2004, the Registrants (as defined in § II, herein) misleadingly
18 disclosed in the Proprietary Fund Prospectus (the "March 1, 2004 Prospectus")[3] that certain of the

19

20   [1] WM Trust I, WM Trust II, and WM Portfolios, WM Advisors, WM Funds Distributor, and
21 Edge Asset Management are collectively referred to herein as the "WAMU Fund Companies."

22   [2] An integral part of the Advisors and Distributors' kickback scheme was to have the
   Proprietary Funds placed on undisclosed "preferred list(s)" of funds, whereby brokers would
23 automatically push the preferred funds to the exclusion of other investments. FAC ¶ 34. WM
   Advisors and WM Funds Distributor also systematically abused their affiliation with WMFS and
24 its Salesmen to gain access to WMFS events, office parties, training and educational meetings and
25 conferences. FAC ¶ 27.

26   [3] Although Plaintiff's FAC focuses on the March 1, 2004 Prospectus, the prospectuses for
   the Registrants' earlier fund offering were at least as false and misleading in violation of the federal
27 securities laws because, they too, omitted and failed to accurately disclose the Shelf Space Program.
28 See FAC ¶ ¶ 31 and 40.

1  Shelf Space Program payments "may", "from time to time" occur. *See* FAC ¶ 33. Certain other
2  material aspects of the Shelf Space Program were not disclosed at all. FAC ¶ 34.

3      The Securities and Exchange Commission ("SEC") has recognized that partial or non-
4  disclosure of incentive arrangements for the sale of mutual funds create conflicts of interest and
5  violate the anti-fraud provisions of the federal securities laws.[4]  Linda Chatman Thomsen, Deputy
6  Director of the SEC's Division of Enforcement, said recently that "undisclosed receipt of revenue
7  sharing payments from a select group of mutual fund families create[s] a conflict of interest. When
8  customers purchase mutual funds, they should be told about the *full nature and extent* of any conflict
9  of interest that may affect the transaction." (*emphasis added*.)[5] FAC ¶¶ 5,6. The March 1, 2004
10  Prospectus at issue herein failed to disclose the nature and extent of the WAMU Fund Companies'
11  access and influence over the sales practices of brokers such as WMFS and its Salesmen. FAC ¶ 27.

12      Defendant's Motion is completely without merit and should be denied. Their obvious goal
13  is to distract this Court with a "kitchen sink" approach. Defendants try to diminish the significance
14  of the kickback scheme, arguing that the payments involved were immaterial as a matter of law. *See*
15  Defendants' Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss
16  ("Def. Mtn."), at § VI.B.  To the contrary, the detailed allegations of the FAC confirm that
17  Defendants were highly motivated to steer clients into the Proprietary Funds in exchange for
18  kickbacks. FAC ¶¶ 1, 3, 27, 28, 34, 49. Furthermore, the Shelf Space Program created undisclosed
19  conflicts of interest that any reasonable investor would consider as crucial information when
20  determining whether to trust his "investment professional's" recommendation to buy a particular
21  mutual fund. FAC ¶¶ 1, 5, 34, 39.

22

23

24      [4] *See e.g.,* Confirmation Requirements and Point of Sale Disclosure Requirements for
25  Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation Requirement
26  Amendments, and Amendments to the Registration Form for Mutual Funds, 69 Fed.Reg. 6438, at
   6440 (Feb. 10, 2004).

27      [5] SEC Press Release, Edward Jones to Pay $75 Million to Settle Revenue Sharing Charges,
28  at http://www.sec.gov/news/press/2004-177.htm.

1   Plaintiff has been injured by the Shelf Space Program kickback scheme. Defendants'
2   assertion to the contrary is without merit and belied by the express allegations of the FAC, as well
3   as FIRA[6] and SEC enforcement actions against mutual fund companies for virtually identical
4   kickback programs. *See* FN 19, *infra.* Under applicable law, these determinations by the SEC are
5   entitled to substantial deference by this Court.

6   The FAC pleads several different bases for proving loss causation and damages under the
7   federal securities laws. Plaintiff and the Class accepted, as an integral aspect of their Proprietary
8   Funds purchases, that payment of fees and expenses to be charged against their ownership interests
9   in the Proprietary Funds would be legitimate outlays for services that would benefit the Funds and
10  contribute positively to their return on investment. FAC ¶ 54. As alleged in the FAC, a significant
11  portion of those expenses were not being used to provide the services promised, but rather to line
12  the pockets of the WAMU Fund Companies through the Shelf Space Program kickback scheme.
13  FAC ¶¶ 52-59.

14  WMFS recommendations of the Proprietary Funds' shares merely to obtain increased
15  compensation is analogous to a broker's "churning" of a client's portfolio, a well-recognized
16  violation of Section 10(b) of the Securities Exchange Act. *See* Nesbit v. McNeil, 896 F.2d 380, 385
17  (9th Cir.1990). In such a situation, the correct measure of damages is "the difference between the
18  fair value that [the plaintiff] received and the fair value of what he would have received had there
19  been no fraudulent conduct." Randall v. Loftsgaarden, 478 U.S. 647, 668 (1986); Affiliated Ute
20  Citizens of Utah v. United States, 406 U.S. 128, 155 (1972).

21  **II.    ADDITIONAL FACTS ALLEGED IN THE FIRST AMENDED COMPLAINT**

22  Plaintiff brings this class action on behalf of all persons who purchased or otherwise
23  acquired shares, units or other like interests of any of the Proprietary Funds, between March 1, 2004
24  and March 1, 2005, inclusive (the "Class Period"), through WMFS, and were damaged thereby (the

25
26
27

28  [6] "FIRA" refers to the Financial Industry Regulatory Association of Securities Dealers, Inc.,
    formerly the National Association of Securities Dealers ("NASD"),

1  "Class".) Plaintiff is pursuing remedies for defendants' violations of the Securities Act of 1933 (the

2  "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").[7]

3  Washington Mutual, Inc. ("WAMU") is the parent entity of the WAMU Fund Companies

4  herein. *See* FAC ¶ 21. WM Trust I, WM Trust II, and WM Strategic Asset Management Portfolios,

5  LLC ("WM Portfolios") are referred to as the "Registrants" because they jointly issued the March

6  1, 2004 Prospectus about which Plaintiff complains. FAC ¶ 16. Defendant Edge Asset Management,

7  Inc. ("Edge") is the successor in interest to some or all of the liabilities of WM Advisors complained

8  of herein. FAC ¶ 20.

9  Defendant Principal Financial Group, Inc., ("Principal") in January 2007, acquired and

10  became the parent company of the Proprietary Funds, now merged into Principal Investors Fund, Inc.

11  ("Principal Investors Fund"). FAC ¶ 22-23. Defendant Principal Funds Distributor, Inc. ("Principal

12  Funds Distributor") is the successor in interest to some or all of the liabilities of WM Funds

13  Distributor. FAC ¶ 24. Principal, Principal Investors Fund, and Principal Funds Distributor, are

14  collectively referred to herein as the "Principal Defendants."

15  **III.  STANDARDS FOR 12(b)(6) MOTION TO DISMISS**

16  A motion to dismiss for failure to state a claim shall be denied unless it "appears beyond

17  doubt that the plaintiff can prove no set of facts in support of the claim entitling plaintiff to relief."

18  Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).[8]  When

19

20  [7] Plaintiff alleges violations of Section 11 of the Securities Act (15 U.S.C. § 77k, *material

21  misrepresentation or omission in registration statement*) against the Registrants and Principal
   Investors Fund; Section 12(a) of the Securities Act (15 U.S.C. § 77(l), *untrue statement or omission

22  in prospectus*) against the WAMU Fund Companies, WMFS and Principal Defendants; and Section
   15 of the Securities Act (15 U.S.C. § 77o, *control person liability Securities Act*) against WAMU

23  and the Principal Defendants. Plaintiff also alleges violations of Section 10(b) of the Exchange Act
   (15 U.S.C. § 78j(b)) and Rules 10b-5 (17 C.F.R. § 240.10b-5, *manipulative / deceptive artifice to

24  defraud - false / misleading statement*) by the Registrants and Principal Investors Fund; and
   violations of Rule10b-10 ( 17 C.F.R. § 240.10b-10, *failure by dealer to disclose remuneration*)

25  against WMFS; and violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t, *control

26  person liability Exchange Act*), by WAMU, the Principal Investors Fund, and Principal.

27  [8] Defendants argue that Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S.Ct. 1955 (2007)

28  governs this case. Def. Mtn. at 7:6. However, Twombly merely held that an allegation of parallel
   (continued...)

1 ruling on a motion to dismiss, the court must "accept all factual allegations in the complaint as true."
2 Tellabs, Inc. v. Makor Issues & Rights, Ltd. _ U.S. _, 127 S.Ct. 2499, 2509 (2007) and "the
3 allegations are construed in the light most favorable to the non-moving party." Adams v. Johnson,
4 355 F.3d 1179, 1183 (9th Cir.2004) "The task of the court in ruling on a Rule 12(b)(6) motion is
5 merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which
6 might be offered in support thereof." Neilson v. Union Bank of California, N.A., 290 F.Supp.2d
7 1101, 1151 (C.D.Cal. 2003) (internal citations / quotations omitted). And "factual challenges to a
8 plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."
9 Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotations / citations
10 omitted).

11 **IV. ARGUMENT**

12     **A. PLAINTIFF HAS STANDING TO ASSERT ALL CLAIMS ALLEGED**

13     Defendants argument that Plaintiff has no standing (Def. Mtn. at § IV) fails in the face of
14 Plaintiff's allegation that she purchased and provided the consideration for her Proprietary Fund
15 shares. FAC ¶ 11; *see* Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).

16     For the purposes of determining standing, the court must accept as true all material
17 allegations set forth in plaintiffs' complaint and must construe those facts in plaintiff's favor. Metro.
18 Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 264 (1991).
19 A plaintiff may survive a motion to dismiss charging lack of injury in fact by merely alleging that
20 a string of occurrences commencing with the challenged act has caused her injury, at which point
21 the court is to presume that "general allegations embrace those specific facts that are necessary to
22 support the claim." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990); *see also* Whitmore v.
23 Ark., 495 U.S. 149, 158-59 (1990).

24

25

26

    [8](...continued)

27 conduct by competitors, without more, does not suffice to plead an antitrust violation under Section
28 1 of the Sherman Act. *Id.* at 1961. The "plausibility" standard of Twombly does not apply outside
the context of claims under Section 1. Iqbal v. Hasty, 490 F.3d 143, 156 (2d Cir. 2007).

1

2

### 1. Plaintiff's Purchase of The Proprietary Funds Confers Standing Even Though The Proprietary Funds Were Placed In The Name of Her Mother

Plaintiff has brought claims under the Securities Act and the Exchange Act. *See* FAC ¶ 2, FN 2. Under both the Securities Act and the Exchange Act, a person has standing to bring a private cause of action if they were purchasers and/or sellers of the security. *See* Silvers v. Sony Pictures Entm't, Inc., 402 F.3d 881, 906 (9th Cir. 2005); (private suit under Section 10(b) of Exchange Act limited to "purchasers or sellers"); 15 U.S.C. § 77k(a) ("any person acquiring" a security issued pursuant to a materially false registration statement may sue under Section 11 of Securities Act); 15 U.S.C. § 77l(a) (recovery under Section 12(a)(2) of Securities Act for purchasers or sellers of securities). Under the Exchange Act, the term "purchase" is defined to include "any contract to buy, purchase, or *otherwise acquire*" securities. 15 U.S.C. § 78c (a)(13) (emphasis added.)

Defendants' put forth the *ipsit dixit* argument that Plaintiff lacks standing because "Plaintiff's mother, not Plaintiff, owned [the shares]." Def. Mtn. at 8:27. However, Plaintiff alleges that only she "purchas[ed] $5,000 worth of shares, units or like interests of the Proprietary Funds (Growth & Income and West Coast Equity Funds) through WMFS as broker in San Diego." FAC ¶ 11. The fact that Plaintiff *paid for* her shares in the Proprietary Funds, but "placed [the Funds] in the name of her mother" (FAC ¶ 11) is of no moment, and Defendants' argument that "ownership" is the test of standing is not supported by the Exchange Act's definition of "purchase," which includes "any contract to buy, purchase, or otherwise acquire" securities. *See* 15 U.S.C. § 78c (a)(13).[9] Because Plaintiff paid the consideration for her Proprietary Fund shares, and is the beneficial owner thereof,

21

22

23

24

25

26

27

28

---

[9] The Securities Act does not define the term "purchase." However, the Supreme Court has stated that "the soundest interpretation of the term, however, is as a correlative to both 'sell' and 'offer,' at least to the extent that the latter entails active solicitation of an offer to buy." Pinter v. Dahl, 486 U.S. 622, 645 (1988). Under the Securities Act, "[t]he term 'sale' or 'sell' shall include every contract of sale or disposition of a security or interest in a security, for value." 15 U.S.C. § 77b(a)(3). *See* United States v. Naftalin, 441 U.S. 768, 773 (1979). ("The statutory terms ["offer" and "sell"], which Congress expressly intended to define broadly, ... are expansive enough to encompass the entire selling process."); *see also*, Rubin v. United States, 449 U.S. 424, 430 (1981) ("It is not essential under the terms of the [Securities] Act that full title pass to a transferee for the transaction to be an 'offer' or a 'sale' ").

1  she is a "purchaser"with standing under the Securities, and Exchange Acts, regardless of whether

2  her mother was the mere record owner. Silvers, 402 F.3d at 906.

3
### 2.   Plaintiff's Reinvestment of Dividends Constitute Purchases Within The Class Period
4

5  Defendants concede that "to show that [Plaintiff] made a purchase within the three-year

6  statute of repose, Plaintiff must allege that she purchased the Funds on or after March 1, 2004." Def.

7  Mtn. at 12:FN4. Plaintiff has met this burden by alleging that she "affirmatively elected to reinvest

8  any dividends in **December of each year**" (FAC ¶ 11 emphasis added) and specifically in December

9  of 2004. Plaintiff's Private Securities Litigation Reform Certification, Docket No. 35, Def. Req. J.

10  Not., Ex. C at 71.   This fact alone is sufficient to reject Defendants' standing argument.

11  Persons who make purchases of securities pursuant to a dividend reinvestment program are

12  routinely held to have standing to sue and be purchaser class representatives. In re Alger, Columbia,

13  Janus, MFS, One Group, Putnam Mut. Fund Litig. 320 F.Supp.2d 352, 354 (D.Md. 2004) ("persons

14  who bought shares pursuant to a dividend reinvestment program during the class period are deemed

15  to be purchasers for purposes of Rule 10(b)(5). [Citation]."); In re Scott Paper Co. Sec. Litig. 142

16  F.R.D. 611, 617 (E.D.Pa.1992) ("shareholder was properly certified as class representative, though

17  he made one stock purchase during proposed class period as automatic dividend reinvestment.")[10]

18

19

20  [10] *See also* Olsen v. New York Comty Bancorp, Inc. 233 F.R.D. 101, *106 (E.D.N.Y. 2005)

21  (individual who purchased shares pursuant to dividend reinvestment program found to be proper class representative but not selected as lead plaintiff because institutional investor had greater

22  losses); In re Bank of Boston Corp. Sec. Litig. 762 F.Supp. 1525, 1532, n. 5 (D.Mass. 1991)

23  (plaintiff who purchased stock pursuant to dividend reinvestment program " assumed to have standing to sue under Section 11 and Section 12(2)"); In re Mut. Funds Inv. Litig. 384 F.Supp.2d

24  845, 855 (D.Md.2005) (because many mutual fund shareholders participate in dividend reinvestment program, "many persons who purchased their initial shares prior to the class period nevertheless

25  would be included in a class of purchasers during the class period"); Lepow Equities Corp. v. Pinola

26  1991 WL 32210, *1 (C.D.Cal.,1991) (purchasers pursuant to dividend reinvestment plan included in securities class action settlement); In re VMS Sec. Litig., 136 F.R.D. 466, (N.D.Ill.1991); In re

27  Lilco Sec.Litig., 111 F.R.D 663, 673-74 (E.D.N.Y. 1986); In re Consumers Power Co. Sec.. Litig.,

28  105 F.R.D. 583, 602-04 (E.D.Mich.1985).

1    Because Plaintiff alleges that she "affirmatively elected to reinvest any dividends in

2  December of each year" (FAC ¶ 11) and all allegations are taken as true, Defendants argument that

3  dividends do not constitute purchases must fail.

### 3.    Plaintiff's Purchase Of Shares In Two Funds Confers Standing To Prosecute Claims Arising From The Same Prospectus

Plaintiff Zapien asserts claims on behalf of all purchasers of Proprietary Funds during the

Class Period. FAC ¶ 66. Although Plaintiff purchased Fund shares in two of the 24 Proprietary

Funds, she has standing to pursue claims on behalf of all Fund purchasers because all Proprietary

Funds were issued pursuant to the *same* registration statement / prospectus, that had the *same* false

and misleading statements. *See e.g.,* FAC ¶ 33; Defendants' Request For Judicial Notice ("Def. Req.

J. Not."), Ex. C.

The Supreme Court has addressed class action standing in three seminal cases. Blum v.

Yaretsky, 457 U.S. 991 (1982), Lewis v. Casey, 518 U.S. 343 (1996), and Gratz v. Bollinger, 539

U.S. 244 (2003). Blum, Lewis, and Gratz, collectively hold that a plaintiff has Article III standing

to assert a claim where she plausibly alleges that (1) she has suffered an injury in fact traceable to

a defendant and redressable by the court, and (2) her claimed injury is shared in common with others

who have been similarly harmed by the same defendant's actions. In re Mutual Funds Inv. Litig.,

_F.Supp.2d _ , 2007 WL 3052301, * 4 (D.Md. 2007); Blum, 457 U.S. at 999; Lewis, 518 U.S. at

349; Gratz, 539 U.S. at 265.

Traditionally, courts bifurcated the inquiries required by Article III and Federal Rule of Civil

Procedure 23. *See generally* Fallick v. Nationwide Mut. Ins. Co., 162 F.3d 410, 421-24 (6th

Cir.1998) ("Once his [individual standing vis-vis the defendant] has been established, whether a

plaintiff will be able to represent the class ... depends solely on whether he is able to meet the

additional criteria encompassed in Rule 23 of the Federal Rules of Civil Procedure."); Mutchka v.

Harris, 373 F.Supp.2d 1021, 1024 (C.D.Cal.2005) ( "At least on standing grounds, there is no basis

for precluding the [plaintiffs] from asserting claims against the defendants on the basis that they

managed funds other than the one in which the [plaintiffs] invested.... They have pled facts which

establish an actual controversy and injury with respect to each defendant, and that is sufficient for

1   standing. Whether the [plaintiffs] can represent the holders of other funds on a class basis is a
2   question to be addressed if and when they attempt to certify such a class."); In re ML-Lee
3   Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig.,
4   848 F.Supp. 527, 560-61 (D.Del.1994) (where it was undisputed that two mutual funds were
5   "substantially identical", the two investors in one mutual fund could represent investor in a second
6   fund); *see also* In re Franklin Mut. Funds Fee Litig., 388 F.Supp.2d 451, 460-62 (D.N.J.2005); In
7   re Mutual Funds Inv. Litig., 2007 WL 3052301 at *4 (holding that plaintiff who "made plausible
8   allegations that investment advisors, traders, and brokers who engaged in market timing and late
9   trading activities caused the same type of harm by the same type of misconduct to shareholders in
10  various mutual funds within the same family of funds" had Article III standing to represent class of
11  purchasers in *different* funds in *same fund family*.)

12      In this case, Plaintiff seeks to represent purchasers of 24 WAMU Proprietary Funds that
13  issued the *same - verbatim -* false and misleading statements and omissions, pursuant to the *same*
14  prospectus. FAC ¶ 33, 34, 36, 48 and 66.[11] Because Plaintiff has alleged an injury in fact as to her
15  purchases of 2 of the Proprietary Funds (*see* §§ V.A.1 and 2 above), under Blum, Lewis, and Gratz
16  she has standing to represent purchasers of all Proprietary Funds pursuant to the same Prospectus.[12]

17

18  [11] Plaintiff's invested in "Growth & Income" and "West Coast Equity" in the Proprietary
19  Funds family, issued by Defendant WM Trust I. FAC ¶¶ 11, 13. WM Trust I issued 12 of the 24
    Proprietary Funds. FAC ¶ 13. The other 12 were issued by Defendants WM Trust II and WM
20  Portfolios. FAC ¶¶ 14, 15. Although the 24 Proprietary Funds were issued by 3 different registrants,
    WM Trust I, WM Trust II, and WM Portfolios all filed the same prospectus. *See* Def. Req. J. Not.,
21  Ex. C at 1.

22      [12] Instead of citing the above controlling cases, Defendants' instead allude to Blue Chip
23  Stamps v. Manor Drug Stores, 421 U.S. 723 (1975) (Def. Mtn. at 10:23-25.) In Blue Chip rejected
    standing under Section 10(b) for *holders* of securities that did not purchase or sell such security
24  pursuant to a false or misleading statement or omission. *Id.* at 755. The Blue Chip case does not deal
    with the issue raised by Defendants' Motion, *i.e.*, whether Plaintiff (who has standing to sue on her
25  own behalf, *see* §§ V.A.1 and 2, above) has standing to represent *other purchasers* of Proprietary
26  Fund shares in the *same fund family* as Plaintiff, and issued pursuant to the *same prospectus*. Def.
    Mtn. at 10:12-13.Defendants' citation to Kaufman v. Dreyfus Fund, Inc.(Def. Mtn. at 10:16-17,) is
27  also inapposite because the court held that "appellee, as a shareholder of the four funds, *does not*
    *have standing to assert a personal action*, it is evident that he may not serve as a class
28  (continued...)

1  As detailed above, Plaintiff has Article III standing to assert claims on behalf of all
2  purchasers of Proprietary Fund shares during the Class Period.[13]

3  ## B.  PLAINTIFF'S CLAIMS ARE NOT TIME BARRED

4  Defendants cannot escape the fact that Plaintiff brought this lawsuit on February 28, 2007,
5  less than three years after Defendants' March 1, 2004 Prospectus, and well less than Plaintiff's
6  December 2004 reinvestment of fund dividends. *Compare* FAC ¶ 11 (alleging Plaintiff's annual
7  dividend reinvestment practice) with Def. Req. J. Not., Ex. C at 71 (confirming that dividend
8  reinvestments occur each calender year in December). Conspicuously absent from Defendants'
9  Motion is any mention that Plaintiff's claims pursuant to Section 10(b) of the Exchange Act (15
10  U.S.C. § 78j(b),) for violation of Rules 10b-5 (17 C.F.R. § 240.10b-5) and 10b-10 (17 C.F.R. §
11  240.10b-10) promulgated thereunder, are governed by a **five** year limitation period. In re Atmel
12  Corp. Derivative Litig., Fed. Sec. L. Rep. at 94,425, 2007 WL 2070299, *7 (N.D.Cal.2007). 28
13  U.S.C. § 1658(b). Because Plaintiff filed this action within the limitation periods for all claims, the
14  Court should reject Defendants' prolix and confusing statute of limitations argument.

15  Realizing that Plaintiff's claims are timely brought, Defendants fall back on the position that
16  the very statements in the March 1, 2004 Prospectus Plaintiff contends contain materially misleading
17  statements and omissions put Plaintiff on notice of the alleged fraud! Def. Mtn. at 13:14-14:3.
18  However, whether statements in a prospectus were sufficient to constitute inquiry notice is a question
19  of fact and not a proper basis to grant a motion to dismiss where a rational juror could conclude that

20

21  [12](...continued)
22  representative." 434 F.2d 727, 734 (3d Cir. 1970)

23  [13] In enacting the PSLRA, Congress established a procedure for selecting a lead plaintiff to
24  direct the prosecution of the action. 15 U.S.C. §§78u-4(a)(3). It is clear, however, that "the lead
plaintiff in a securities class action need not have standing to sue on all causes of action raised in the
25  underlying class complaint." Fishbury, Ltd. v. Connetics Corp., 2006 U.S. Dist. LEXIS 90696, at
*12 (S.D.N.Y. Dec. 14, 2006); Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir. 2004). To be sure,
26  "[i]f certain class claims cannot be advanced because of standing or class-certification issues, this
deficiency can be corrected by the designation of other members of the purported class as named
27  plaintiffs or class representatives." *Id.* at 13. Accordingly, if the Court determines that Plaintiff
lacks standing for some of the claims asserted in the Complaint, the appropriate time to remedy that
28  issue is at the class certification stage, not at the pleading stage.

1   the statements were not sufficiently probative of fraud. Betz v. Trainer Wortham & Co., Inc., _ F.3d.

2   _, 2007 WL 2874369 at *7 (9th Cir. Oct. 4, 2007); Vucinich v. Paine, Webber, Jackson & Curtis,

3   Inc., 739 F.2d 1434, 1437 (9th Cir.1984) (per curium).

4          The Registrants' misleading "disclosures" did not create "sufficient suspicion of fraud to

5   cause a reasonable investor to investigate the matter further." Betz, at *6. This is particularly true

6   in light of the fact that "[t]he WAMU Fund Companies have not been the subject of news reports

7   concerning their Shelf-Space Program(s) [and] ... have not been publicly reprimanded by the SEC,

8   National Association of Securities Dealers ('NASD') or similar enforcement body for their efforts

9   to 'steer' clients into the Proprietary Funds." FAC ¶ 43. And even if a reasonable investor had been

10  put on inquiry notice of the WAMU Fund Companies activities by the Registrants' purported

11  "disclosures," the Court is required to examine the "plaintiff's particular circumstances from the

12  perspective of a reasonable investor" on a full record. Betz at * 6 (emphasis added.)

13         **1.     The Ninth Circuit Uses An "Inquiry-Plus-Reasonable-Diligence Test"**

14         On October 4, 2007, the Ninth Circuit reformulated its analytical framework for determining

15  whether limitation periods have expired under the securities laws. In Betz v. Trainer Wortham &

16  Co., Inc., supra, the Ninth Circuit for the first time adopted the "inquiry-plus-reasonable-diligence"

17  test used by the Tenth Circuit. 2007 WL 2874369 at *6.

18         Under that standard, to determine when the statute of limitations begins running, we
           first determine when the plaintiff had inquiry notice of the facts giving rise to his or
19         her securities fraud claim. A plaintiff is on inquiry notice when there exists sufficient
           suspicion of fraud to cause a reasonable investor to investigate the matter further.
20         Like our sister circuits, we caution that inquiry notice should not be construed so
           broadly that the particular plaintiff cannot bring his or her suit within the limitations
21         period. The facts constituting inquiry notice "must be sufficiently probative of fraud-
           sufficiently advanced beyond the stage of a mere suspicion ... to incite the victim to
22         investigate." [Citations]. Once a plaintiff has inquiry notice, we ask when the
           investor, in the exercise of reasonable diligence, should have discovered the facts
23         constituting the alleged fraud. The answer to that second question tells us when the
           statute of limitations began to run.

24
    Id. (emphasis added).
25
           The question of whether inquiry notice exists is objective and contemplates a
26         "reasonable investor" or "reasonable person" standard. See, e.g., Newman v. Warnaco
           Group, Inc., 335 F.3d 187, 193 (2d Cir.2003) [] (holding that inquiry notice of
27         securities fraud is triggered when the plaintiff receives "sufficient storm warnings to
           alert a reasonable person to the probability that there were either misleading
28         statements or significant omissions involved"); Mathews v. Kidder, Peabody & Co.,

260 F.3d 239, 252 (3d Cir.2001) (holding that inquiry notice exists where "a reasonable investor of ordinary intelligence would have discovered the [suspicious] information and recognized it" as suspicious); *Great Rivers Coop. of S.E. Iowa v. Farmland Indus., Inc.,* 120 F.3d 893, 896 (8th Cir.1997) (inquiry notice is present "when the victim is aware of facts that would lead a reasonable person to investigate and consequently acquire actual knowledge of the defendant's misrepresentations.")

*Id.*.

Defendants' attempt to have Plaintiff's claims dismissed at the pleading stage is undercut by the fact that mutual fund investors "stand[] in a disadvantaged position in terms of identifying information probative of problems affecting his or her investments" and "storm warnings as to a direct investor's fraud claims will arise upon a much lower threshold of information than storm warnings surrounding a mutual fund investor" In re Merck & Co., Inc. Sec., Derivative & "Erisa" Litig. 483 F.Supp.2d 407, 423, 424 (D.N.J. 2007) *citing* Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgmt. L.P. 435 F.3d 396, 397 (3d Cir. 2006). *See* FAC ¶ ¶ 7, 11, 44 (plaintiff a novice investor and mutual fund investors are generally unsophisticated.)

**2.    Defendants' March 2004 Purported "Disclosures" Were Not Probative Of Fraud**

Defendants argue that the very statements in the March 1, 2004 Prospectus that Plaintiff contends contain materially misleading statements and omissions put Plaintiff on notice of the alleged fraud. Def. Mtn. at 13:14-14:3. However, "[m]isleading statements in the Prospectus or in other public statements, without an event that would reveal the misleading nature of the statements, are not enough to put investors on inquiry notice."Backhaus v. Streamedia Commc'n, Inc., Fed. Sec. L. Rep. 91,964, 2002 WL 1870272 at *3 (S.D.N.Y. 2002) *citing* In re Sterling Foster & Co., Inc., Sec. Litig., 222 F.Supp.2d 216, 249-50 (E.D.N.Y. 2002).[14]

In cases where courts find disclosures in prospectuses sufficient to put a plaintiff on inquiry notice, the statements therein are *definite*, and not equivocal. *See* Dodds v. Cigna Sec., Inc., 12 F.3d

---

[14]Triggering events typically consist of "any financial, legal, or other data, such as public disclosures in the media about the financial condition of the corporation and other lawsuits alleging fraud committed by the defendants, [and also] by the suspension of trading in the issuer's stock, public reports of federal or state investigations of the registrant, notice that the issuer has filed for reorganization or bankruptcy, a sharp decline in stock value, or public disclosure of the adverse financial condition of the issuer. [Citation.]" In re Infonet Serv. Corp. Sec. Litig. 310 F.Supp.2d 1106, 1114 (C.D.Cal. 2003). No such events occurred with the Proprietary Funds.

346, 350-51 (2d Cir. 1993) *cert denied* 511 U.S. 1019 (where investor alleged broker induced purchase of unsuitable and illiquid investment, prospectus that stated "[t]here is no current public or secondary market for the [security] nor is one likely to develop" sufficient to put investor on inquiry notice).[15]

The Registrants' purported disclosures were not definite, but instead stated that certain aspects of the Shelf Space Program "may" "from time to time" occur. *See* FAC ¶ 33. The March 1, 2004 Prospectus "lead[s] a reasonable investor to believe that the 'revenue sharing' kickback and incentive programs *may* or *may not* exist..." FAC ¶ 37. Critically, **there is nothing in the March 1, 2004 Prospectus excerpt that is at all probative of *fraud.*** FAC ¶ 33. As the Ninth Circuit explained, "[t]he facts constituting inquiry notice 'must be sufficiently probative of fraud" Betz, 2007 WL 2874369 at *6; Newman v. Warnaco Group, 335 F.3d 187, 193 (2d Cir. 2003) ("The [existence of] fraud must be probable, not merely possible.")

In addition, the above quoted purported disclosure in the March 1, 2004 Prospectus (*See* FAC ¶ 33.) in no way revealed, *inter alia*, that the revenue sharing arrangements and other financial inducements to WMFS and its Salesmen were for inclusion of the Proprietary Funds in a "preferred list" (FAC ¶ 34(g).) In fact, it was never in the public record, and Defendants do not deny that the Proprietary Funds were on a "preferred list" as alleged during the Class Period. This fact alone is sufficient to reject Defendants' argument the Plaintiff was on notice of the alleged fraud.

---

[15] *See also* Bull v. Chandler, Fed. Sec. L. Rep. 96,567, 1992 WL 103686, *4 (N.D.Cal. 1992) (where "[m]ost if not all of the offering documents expressly stated that the investments were illiquid, were without a market, and were designed as tax shelters, but disclaimed any assurance of tax benefit and disclaimed any assurance of cash distribution" held sufficient for inquiry notice); In re Complete Mgmt. Inc. Sec. Litig. 153 F.Supp.2d 314, 337-38 (S.D.N.Y. 2001) (statement in prospectus that "[t]here can be no assurance that the Company will be able to manage growth effectively, and any failure to do so could have a material adverse effect on the Company's business, financial condition and results of operations and the price of the Common Shares and Debentures."held not to contradict plaintiff's allegations of fraud and did not serve to put reasonable investor on notice); In re Prudential Ins. Co. of Am. Sales Practices Litig. 975 F.Supp. 584, *600 (D.N.J.1996) (in vanishing premium case, where prospectus disclosed "We will decide each year what part, if any, of our surplus to credit to this contract as a dividend.... We do not expect to credit any dividends to this contract," held sufficient for inquiry notice). *See also* Marlow v. Gold,Fed.Sec.L.Rep. 96,112, at 90,633-35, 1991 WL 107268 (S.D.N.Y. June 6, 1991); Calvi v. Prudential Secs., Inc., 861 F.Supp. 69, 72 (C.D.Cal.1994)

1

2

### 3.    The "Form Of Dealer Agreement" Was Not Part Of The Prospectus Or SAI, And Was Not Referenced By Those Documents

3        Defendants incorrectly argue that some document cryptically entitled "Form of Dealer

4   Agreement" put Plaintiff on inquiry notice. Def. Mtn. at 13:16-20. Defendants admit that the "Form

5   of Dealer Agreement" ("FDA") was never provided or made available to Plaintiff or other members

6   of the Class. Def. Mtn. at 13:FN5. Yet Defendants claim because there was an 800 number and

7   website address in the Prospectus with a note that "[y]ou may ... request other information about the

8   WM Group of Funds" (Def. Mtn. at 13:FN5,) Plaintiff was on inquiry notice of the contents of FDA.

9   Defendants stretch the facts and misinterpret the law.

10        In Miller v. Thane Int'l, Inc., the Ninth Circuit found that:

11        Investors are not generally required to look beyond a given document to discover
          what is true and what is not. *See In re Apple Computer Sec. Litig .,* 886 F.2d 1109,
12        1114 (9th Cir.1989) ("Ordinarily, omissions by corporate insiders are not rendered
          immaterial by the fact that the omitted facts are otherwise available to the public.");
13        *Dale v. Rosenfeld,* 229 F.2d 855, 858 (2d Cir.1956) ("Availability elsewhere of
          truthful information cannot excuse untruths or misleading omissions in the
14        prospectus. Readiness and willingness to disclose are not equivalent to disclosure.")
          (internal quotation marks omitted).

15

   _F.3d_ , 2007 WL 4147327 at *6 (9th Cir., Nov. 26, 2007).

16

        The FDA was not provided to Plaintiff with either the Prospectus or Statement of Additional

17

   Information ("SAI"), and the FDA was not mentioned in either of those documents. The Registrants'

18

   did not incorporate the FDA into the Prospectus as provided by SEC regulation:

19

        Information incorporated by reference shall be clearly identified in the reference by
20        page, paragraph, caption or otherwise. If the information is incorporated by reference
          to a previously filed document, the file number of such document shall be included.
21        Where only certain pages of a document are incorporated by reference and filed with
          the statement, the document from which the information is taken shall be clearly
22        identified in the reference. An express statement that the specified matter is
          incorporated by reference shall be made at the particular place in the registration
23        statement where the information is required.

24   17 C.F.R. § 230.411(d). Because the Registrants did not attempt to incorporate the FDA into the

25   Prospectus, Defendants' argument must fail. *See* Def. Req. J. Not., Ex. D at 11.

26

27

28

1    Plaintiff and the Class were not provided or otherwise alerted to the existence of the "Form

2  of Dealer Agreement," it cannot therefore not serve to put them on inquiry notice.[16] Indeed, the FDA

3  is only available on the SEC website as a document indecipherably entitled

4  "v94553bpexv99wxeyx2y.txt."[17] Accordingly, Plaintiff cannot be charged with knowledge of the

5  FDA unless language in the Prospectus put her on inquiry notice because "[a] reasonable investor

6  is deemed to have knowledge of *well publicized* and *widely available* information in the public

7  domain." Meadows v. Pac. Inland Sec. Corp., 36 F.Supp.2d 1240, 1246 (S.D.Cal.1999) (emphasis

8  added); Betz, 2007 WL 2874369 at *6 ("Once a plaintiff has inquiry notice, we ask when the

9  investor, in the exercise of reasonable diligence, should have discovered the facts constituting the

10  alleged fraud.")

11    To hold that the FDA put Plaintiff on inquiry notice would run contrary to the Ninth Circuit's

12  explicit instruction that "inquiry notice should not be construed so broadly that the particular plaintiff

13  cannot bring his or her suit within the limitations period." Betz, 2007 WL 2874369 at *6.

14  Accordingly Plaintiff was not on inquiry notice of either the existence of the FDA or its contents,

15  and certainly not as a matter of law.

16    **4.    The March 1, 2005 Prospectus Did Not Put Plaintiff On Inquiry Notice Because**
    **The Disclosures Therein Were Not Corrective And Purported To Reflect A**
17    **Change In Practice**

18    The Registrants' March 1 2005 Prospectus contained far more detailed information about the

19  Shelf Space Programs. *See* FAC ¶ 38. To wit, "[Defendants'] explicit disclosure of the 'preferred

20  list(s),' 'advisor paid fees,' and *the inherent conflict of interest therein,* is in stark contrast to

21  previous purported disclosures" in the March 1, 2004 Prospectus." FAC ¶ 39. As alleged in the FAC,

22
        The Registrants' March 1, 2005 Prospectus did not actually or constructively put
23        Plaintiff or the Class on notice that the WAMU Fund Companies were *in the*

24

25    [16] *See* DeBruyne v. Equitable Life Assur. Soc. of U.S., 920 F.2d 457, 466 n. 18 (7th Cir.1990)
    (noting that "plaintiffs cannot avoid the statute of limitations by possessing, but failing to read, the
26    documents that would put them on inquiry notice") (emphasis added); Franze v. Equitable Assurance
    296 F.3d 1250, 1254 -55 (11th Cir. 2002).
27

28    [17] http://www.sec.gov/Archives/edgar/data/200159/000095014804000433/0000950148-04-
    000433-index.htm

1

2

3

4

*past* engaged in the activities complained of, as purported "disclosures" during the Class Period were unclear and intended by the Registrants to be vague and ambiguous. The March 1, 2005 Prospectus made no remedial disclosures of past activity, and contained no statement that its purported disclosures applied retroactively to amend previous prospectuses, and Plaintiff and the Class reasonably believed that such purported disclosures represented a change in practice by the WAMU Fund Companies.

5   FAC ¶ 41.

6   Defendants contend that the March 1, 2005 Prospectus put Plaintiff on notice that the Shelf

7   Space Programs were in place during the Class Period. Def. Mtn. at 14:4-15:7. But because the

8   Registrants' disclosures were not remedial, Plaintiff was not on inquiry notice of the Shelf Space

9   Programs. In cases where subsequent disclosures in a registration statement/ prospectus are found

10   to be "storm warnings" of *past* fraud, such discloses involve *corrective statements*. *See* Havenick

11   v. Network Exp., Inc., 981 F.Supp. 480, *521 (E.D.Mich.,1997) (e.g. " we are revising our estimate

12   for Japan downward"); In re Dynegy, Inc. Sec. Litig., 226 F.R.D. 263, 292 (S.D.Tex. 2005) (10-Q

13   restating previously reported financials put investor on inquiry notice); Lapin v. Goldman Sachs

14   Group, Inc., 506 F.Supp.2d 221, 238 (S.D.N.Y. 2006) ("corrective information must be conveyed

15   to the public with a degree of intensity and credibility sufficient to counter-balance effectively any

16   misleading information created by the alleged statements"); In re Integrated Resources Real Estate

17   Ltd. P'ships Sec. Litig., 850 F.Supp. 1105, 1121 (S.D.N.Y. 1993) ("correction" in subsequent private

18   placement memorandum put plaintiff on inquiry notice); American High-Income Trust v.

19   AlliedSignal, Fed. Sec. L. Rep. 93,817, 2006 WL 838992 at *2 (S.D.N.Y.,2006) (corrective

20   accounting charge in 10-K and 10-Q).

21   The March 1, 2005 Prospectus did not purport to correct the 2004 Prospectus. To the

22   contrary, the March 1, 2005 Prospectus explicitly stated that WM Funds Distributor "currently

23   provide[s] additional payments to financial intermediaries." FAC ¶ 38. In Miller v. Thane Intern.,

24   Inc., the Ninth Circuit rebuked the district court for relying on prior, tentative drafts of a prospectus

25   to conclude that investors would "connect the dots." 2007 WL 4147327 at *6. Even though

26   Defendants' included more detailed disclosure about the Shelf Space Program in an amended

27   registration statement on December 30, 2004 (after the Funds' annual reinvestment of dividends),

28   such filing by its very terms was not effective until March 1, 2005. Def. Req. J. Not., Ex. E at 1. Nor

1  do Defendants allege that Plaintiff (or anyone else) received such document until after it was

2  disseminated to Plaintiff and the Class sometime after March 1, 2005. *See* FAC ¶ 48 ("not

3  disseminated to Plaintiff and the Class until, at least, March 2005."); Meadows, 36 F.Supp.2d at

4  1246 ("reasonable investor is deemed to have knowledge of well publicized and widely available

5  information in the public domain"); In re Merck & Co., 483 F.Supp.2d at 423, 424 (mutual fund

6  investors "stand[] in a disadvantaged position in terms of identifying information probative of

7  problems affecting his or her investments").

8        Defendants have failed to meet their "heavy burden in establishing that the plaintiff was on

9  inquiry notice as a matter of law. Inquiry notice exists only when uncontroverted evidence irrefutably

10  demonstrates when plaintiff discovered or should have discovered the fraudulent conduct." Newman

11  v. Warnaco Group, Inc. 335 F.3d 187, 194-95 (2d Cir. 2003). Cetel v. Kirwan Financial Group, Inc..

12  460 F.3d 494, 507 (3d Cir. 2006) ("burden is on the defendant to show the existence of 'storm

13  warnings.') Such heavy burden exists because the question of when fraud is discovered is for the

14  trier of fact. S. E. C. v. Seaboard Corp. 677 F.2d 1301, 1309-10 (9th Cir. 1982) *citing* Briskin v.

15  Ernst & Ernst, 589 F.2d 1363 (9th Cir. 1978). Accordingly, Defendants argument that Plaintiff's

16  claims are time barred should be rejected.

17  
18        **C.    STATEMENTS THAT REVENUE SHARING PAYMENTS "MAY" OCCUR
            WHEN SUCH PAYMENTS WERE IN FACT OCCURRING CONSTITUTES
            FRAUD**

19        **1.    The Misleading Statements And Omissions**

20        Defendants' March 1, 2004 Prospectus (*see* FAC ¶ 33) failed to disclose, *inter alia*, that:

21  brokers such as WMFS and its Salesmen to had a practice to aggressively push the Proprietary

22  Funds; the Self Space Program kickbacks were *in fact* in place, the source and amount of which were

23  not disclosed; the statements that the challenged "payments" are "at [the WM Funds Distributor's]

24  expense," *is false* because WM Funds Distributor derived its revenue exclusively from fees paid

25  from investment principal;[18] brokers such as WMFS had placed the Proprietary Funds on a

26  

27        [18] Investment Advisors (i.e. Defendant WM Advisors) are not permitted to use "advisory (or

28  other) fees *as a conduit* for financing ongoing distribution... for steering their clients into the funds."
                                                                              (continued...)

1   "preferred list" of funds in exchange for Shelf Space Program kickbacks; and the Shelf Space

2   Program payments created insurmountable conflicts of interest between WMFS, its Salesmen and

3   Plaintiff and the Class. FAC ¶ 34 (*see* FAC ¶ 34 for detailed allegations of why the Prospectus is

4   misleading.)

### 2.   Form N1-A Requires Defendants To Disclose The Shelf Space Program Using Clear And Simple Language

7   SEC Form N1-A governs the requirements for registration statements of mutual funds, also

8   known as Open-Ended Management Investment Companies. *Registration Form Used by Open-*

9   *Ended Management Investment Cos.,* SEC Release Nos. 33-7512, 34-39748, 63 Fed. Reg. 13916

10   (March 23, 1998). Form N1-A, which delineates the required content and form of mutual fund

11   registration statements, states that it is "intended to promote effective communication between the

12   Fund and prospective investors.... using concise, straightforward and easy to understand language."

13   Form N1-A § C.1(a), Def. Req. J. Not, Ex. L at 6. Mutual fund prospectuses are "intended to elicit

14   information for an average or typical investor who may not be sophisticated in legal or financial

15   matters." Form N1-A § C.1(b). Form N1-A requires disclosures to "be as simple and direct as

16   reasonably possible" and must "avoid lengthy sentences and paragraphs that may make the

17   prospectus difficult for many investors to understand." Form N1-A § C.1(c). Most importantly,

18   issuers are required to use "**definite**, **concrete**, everyday language." 17 C.F.R. § 230.421(d)(2)(ii)

19   (emphasis added). Although, the Securities Act and Exchange Act impose broader disclosure

20

21   [18](...continued)

22   Siemers v. Wells Fargo & Co. 243 F.R.D. 369, 371 (N.D.Cal. 2007). The SEC has denounced the

use of legitimate fees for revenue sharing payment. *Payment of Asset-Based Sales Loads by*

23   *Registered Open-End Management Investment Companies*, 53 Fed. Reg. 23258, *23271 (Jun. 21,

1988). "In determining whether there is an indirect use of fund assets, it is appropriate to relate a

24   fund's payments pursuant to the advisory contract to the adviser's expenditures for distribution and

to view such expenditures as having been made *from the adviser's profits*." Schuyt v. Rowe Price

25   Prime Reserve Fund, Inc., 663 F.Supp. 962, 987 (S.D.N.Y.,1987) *citing* SEC Docket, Vol. 21, No.

5, (Nov. 11, 1980.) If fees are *not* from the advisor's profits, the fees deducted from fund principal

26   constitute improper "conduits." *See* 15 U.S.C. § 80a-35(b) ("the investment adviser of a registered

27   investment company shall be deemed to have a fiduciary duty with respect to the receipt of

compensation for services, or of payments of a material nature, paid by such registered investment

28   company")

1   requirements than those mandated by Form N-1A, a violation of Form N-1A often constitutes a *per*
2   *se* violation of those Acts. In re TCW/DW N. Am. Gov't Income Trust Sec. Litig., 941 F. Supp. 326,
3   339 (S.D.N.Y. 1996).

4       The Registrants had a duty imposed by SEC Form N1-A to disclose the Shelf-Space
5   Programs in a clear and unequivocal manner. the Registrants breached this duty by stating that
6   certain types of revenue sharing and kickbacks "may" occur, " when in truth, the WM Advisors
7   and/or WM Funds Distributor had *already* entered into pre-determined, specific, and negotiated
8   arrangements for participation in the "preferred list(s)", "revenue sharing" kickbacks, and non-cash
9   incentives to WMFS and its Salesmen." FAC ¶ 37. Such failure to abide by the requirements of NA-
10  1 rendered Defendants' March 1, 2004 Prospectus misleading. *See* Basic Inc. v. Levinson, 485 U.S.
11  224, 239 n. 17 (1988).

12
13      **3.    Defendants Affirmative Statements Omitted Material Information and Were Also Misleading**

14      Defendants stated that certain portions of the Shelf Space Program "may" or "from time to
15  time" occur, when such activities were *in fact* occurring. *See* FAC ¶¶ 33, 34. Such equivocal
16  language rendered the purported disclosures misleading. The Prospectus was also misleading
17  because it failed to disclose *at all* other aspects of the Shelf-Space Program such as the "preferred
18  list" or the inherent conflict of interest created by the Program. FAC ¶ 34; *see* Def. Mtn. at 20:8-10.

19      In ruling on a case with nearly identical facts, Judge William Alsup of the Northern District
20  of California held that:

21          there is a difference between a circumstance where a fund *may* award future business
            on the basis of sales, on the one hand, and a circumstance where a fund *already has*
22          fixed payback arrangements in place, on the other hand. Defendants had a duty to
            state all facts that were necessary to make their affirmative statements not
23          misleading. The representation left the impression that the payback arrangement
            might (or might not) materialize when it was, in reality, already a done deal. This was
24          misleading. This conclusion is consistent with the recent SEC orders holding that
            various broker-dealers had not disclosed adequately the paybacks they received to
25          push various funds.

26
27
28

1   Siemers v. Wells Fargo & Co., Fed. Sec. L. Rep. 93,954, 2006 WL 2355411, *5 (N.D.Cal. Aug. 14,

2   2006) (italics in original, underscoring added).[19] The SEC opinions relied on by the Seimers court

3   are also persuasive authority here.[20]

4       Defendants spuriously contend that the Seimers court "disregard[ed] the overwhelming

5   contrary authority" in reaching the above conclusion. Def. Mtn. at 24:20. Defendants completely

6   ignore the legion of case law from the Supreme Court and every Circuit, holding that partial

7   disclosure, or "half-truths" are misleading, material, and violate the securities laws. *See* Herman &

8   MacLean v. Huddleston, 459 U.S. 375, 381 (1983). ("To allege a claim under Section 11 of the

9   Securities Act, a plaintiff need show that a registration statement: ... 'omitted to state a material fact

10  'necessary to make the statement therein not misleading.' "); In re Apollo Group Inc. Sec. Litig., 509

11  F.Supp.2d 837, 841 (D.Ariz.2007) *citing* Hanon v. Dataproducts Corp., 976 F.2d 497, *504 (9th Cir.

12  1992) ("Rule 10b-5 imposes a duty to disclose material facts that are necessary to make disclosed

13  statements, whether mandatory or volunteered, not misleading"); Vaughn v. Teledyne, Inc., 628 F.2d

14  1214, 1221, n. 7 (9th Cir.1980) *citing* Marx v. Computer Sciences Corp., 507 F.2d 485, 489-92 (9th

15  Cir. 1974) ("partial disclosure of financial projections makes them material facts, and an individual

16

17

18      [19] *citing* Morgan Stanley DW, Inc., Exch. Act Release No. 48789 / Sec. Act Release 8,339
19  (Nov. 17, 2003); Am. Express Fin. Advisors, Inc., Exch. Act Release No. 52,861 / Sec. Act Release
    No. 8,637 (Dec. 1, 2005); Mass. Fin. Srvs. Co., Inv. Advisers Act of 1940 Release No. 2,224 / Inv.
20  Co. Act of 1940 Release No. 26,409 (Mar. 31, 2004); Franklin Advisers, Inc. & Franklin /
    Templeton Distribs., Inc., Exch. Act Release No. 50,841 / Inv. Advisers Act of 1940 Release No.
21  2,337 / Inv. Co. Act of 1940 Release No. 26,692 (Dec. 13, 2004)); Putnam Inv. Mgmt., LLC, Inv.
    Advisers Act of 1940 Release No. 2,370 / Inv. Co. Act of 1940 Release No. 26,788 (Mar. 23, 2005);
22  Putnam Inv. Mgmt., LLC, Inv. Advisers Act of 1940 Release No. 2,370/2,337/Inv. Co. Act of 1940
23  Release No. 26,788 (Mar. 23, 2005); Putnam Inv. Mgmt. LLC, Inv. Advisers Act of 1940 Release
    No. 2,370/2,337/Inv. Co. Act of 1940 Release No. 26,788 (Mar. 23, 2005); Edward D. Jones & Co.,
24  Sec. Act Release No. 8,520 / Exch. Act Release No. 50,910 (Dec. 22, 2004).

25      [20] Opinions of the SEC are persuasive authority to the extent that they are reasonable in light
26  of the statutory authority. *See* S.E.C. v. Zandford, 535 U.S.813, 819-20 (2002) ("[The SEC's]
    interpretation of the ambiguous text of § 10(b), in the context of formal adjudication, is entitled to
27  deference if it is reasonable"). To the extent that the SEC considers the non-disclosure of conflicts
    of interest and revenue sharing to be illegal, the SEC's position is controlling. Simpson v. AOL Time
28  Warner Inc. 452 F.3d 1040, 1048 (9th Cir. 2006)

1  may be liable under Rule 10b-5 if those projections are not disclosed thereafter completely and
2  accurately"); 17 C.F.R. § 240.12b-20.

3        On November 26, 2007, the Ninth Circuit issued an opinion in Miller v. Thane Int'l, Inc.,
4  __ F.3d __ , 2007 WL 4147327 (9th Cir. Nov. 26, 2007). In Miller, the Ninth Circuit held that
5  "literal truth is not the standard for determining whether statements in a prospectus are misleading."
6  The Ninth Circuit, quoting the holding in In re Convergent Tech. Sec. Litig. 948 F.2d 507 (9th Cir.
7  1991), reiterated that "[s]ome statements, although literally accurate, can become, through their
8  context and manner of presentation, devices which mislead investors." Miller at * 5. Thus, while it
9  may have been literally true that certain activities "may" or "from time to time" occur, it was
10  misleading to omit disclosure of the full scope of the Shelf Space Program. *See* Def. Mtn. at 22:1-3.[21]

11        Further, Defendants' purported "disclosure" statements were located near the end of the
12  Prospectus in sections unrelated to fund strategies, shareholder fees or fund management, and did
13  not disclose that the source of the additional payments were the fees charged to investors. FAC ¶ 34
14  (b) & (c); 17 C.F.R. § 230.421 ("The information required in a prospectus ... shall not, however, be
15  set forth in such fashion as to obscure any of the required information or any information necessary
16  to keep the required information from being incomplete or misleading")

17        **4.    Undisclosed Aspects of the Shelf Space Programs Were Material**

18        Defendants' attempt to downplay their misdeeds by stating that the partial disclosures and
19  omissions in the March 1, 2004 Prospectus were immaterial, runs counter to reason and established
20  case law. In an opinion very selectively cited by Defendants (Def. Mtn. at 23:16-18) the Eastern

21

22

23

24        [21] Not every mixture with the true will neutralize the deceptive. If it would take a financial
25  analyst to spot the tension between the one and the other, whatever is misleading will remain
     materially so, and liability should follow. Virginia Bankshares, Inc. v. Sandberg, 501 U.S. 1083,
26  1097 (1991) ("It is not sufficient that overtones might have been picked up by the sensitive antennae
     of investment analysts."). While Defendants argue that the Investment Advisor Fee (one aspect of
27  the Shelf Space Program) was subject to change upon 15 days notice (Def. Mtn. at 22: 2-3), they do
     not dispute the fact that the Investment Advisor Fee was **never terminated** until the sale of the
28  Proprietary Funds to the Principal Defendants in January 2007.

1  District of New York disapprovingly discussed AIG's use of "directed brokerage"[22] to incent broker

2  dealers to sell mutual fund shares. The court in AIG Advisor Group held that "even if defendants are

3  correct that they fully complied with their Form N1-A disclosure obligations, it does not follow that

4  their failure to disclose the AIG Brokers' alleged conflict of interest is necessarily immaterial." (slip

5  opp.) 2007 WL 1213395, at *9 (E.D.N.Y. 2007) *citing* Benzon v. Morgan Stanley Distribs., Inc., 420

6  F.3d 598, 612 (6th Cir.2005).

7       Finding a "not immaterial" conflict of interest in the context of a motion to dismiss, the Court

8  stated:

9       What the prospectus does not mention is that commissions might also be paid out
        from fund assets in return for broker-dealers promoting the fund to would-be
10      investors. If such a payment existed, it would create an incentive for broker-
        dealers to push the fund when advising potential investors. **That undisclosed**
11      **interest would conflict with a potential investor's interest in not paying**
        **commissions which, unlike the brokerage and research services mentioned in**
12      **the prospectus, deplete fund assets with no corresponding return to owners of**
        **those assets.** The MFS prospectus thus illustrates that the failure of a prospectus to
13      disclose the payment system alleged by plaintiffs amounts to a **failure to disclose a**
        **conflict of interest** presented by broker-dealers who stand to receive those payments.
14                                          * * *
        From the point of view of a potential investor, such a conflict of interest is
15      **materially undesirable**. The more conflicted the broker-dealer, the greater the
        possibility that his advice will not be consistent with the investor's self-interest
16                                          * * *
         Accordingly, insofar as the misrepresentations and omissions by the AIG Brokers
17      in fact concerned such a conflict of interest, they were **not immaterial as a matter**
        **of law**.
18
   AIG Advisor Group, at *8 (emphasis added.)
19
         In the instant matter, Plaintiff alleges that Defendants' Shelf Space Program created an
20
   insurmountable conflict of interest (FAC ¶¶ 34(j), 42) and that the "Shelf-Space Program(s) system
21
   of payments caused Plaintiff and the Class an economic loss: absent those payments, Plaintiff and
22
   the Class' total amount of fees, and thus the resulting diminution of their investment's NAV, would
23
   have been smaller." FAC ¶ 56; *see also* FAC ¶ ¶ 27, 44, 55. Any intentional misappropriation from
24
   the common fund would be material to investors: a red flag, a negative risk factors of material
25

26
       [22] "Directed Brokerage" is where a mutual fund allows a brokerage firm to execute trades in
27  the fund's underlying portfolio and earn the commissions thereon, in exchange for the brokerage firm
    selling shares of the fund to its clients. Merrill Lynch Inv. Mgm't Funds Sec. Litig., 434 F.Supp.2d
28  233, 236 n. 4 (S.D.N.Y. 2006).

1  interest. Piper v. Chris-Craft Indus., Inc., 430 U.S. 1, 56, n. 5 (1977); Zell v. Int'l Income Sec. Inc.,

2  675 F.2d 1041, 1046 (9th Cir. 1982).

3       The Northern District of California, also held that the use of "may" to disclose already

4  existent, negotiated programs was materially misleading. Judge Alsup found that:

5       A reasonable investor is more likely to view the broker-dealer's recommendations
        with skepticism if he or she knows for sure that the brokerdealer's objectivity has
6       already been compromised, as opposed to the mere possibility that the broker-dealer's
        objectivity might (or might not) be compromised. If a reasonable investor knows the
7       broker-dealer has a payback agreement to showcase a particular fund, the investor is
        likely to take a harder look at the recommendation.

8
        The very nature of the program suggests that the failure to disclose it was material.
9       **The investment advisers who compensated the broker-dealers obviously
        believed that the payments led to increased sales of their funds. If the
10      investment advisers believed that the payments were enough to drive sales, then
        it is reasonable now for us to infer the same.** If the payments were enough to drive
11      sales, disclosure of them would have been material to an investor considering a
        broker's advice to buy those shares.

12

13  Siemers v. Wells Fargo & Co., 2006 WL 2355411, *6 (Aug. 14, 2006) (emphasis added). The

14  reasoning of Judge Alsup in Seimers applies with equal force in this case, particularly given the

15  facts as alleged. *See* FAC ¶ 47.[23]

16       Defendants hang their argument on a decision by the Sixth Circuit in Benzon v. Morgan

17  Stanley Distributors., 420 F.3d 598. In Benzon, the court noted that "[t]he only statement in the

18  prospectus related to broker compensation is: '[s]ales personnel *may* receive different compensation

19  for selling each Class of share.' (Emphasis added)." Benzon at 612. The "disclosures" complained

20  of by Plaintiff are far more misleading. Not only was the compensation described in the Prospectus

21  *in fact* in fact being paid as in Benzon, but there were entire aspects of the Shelf Space Program

22  related to such payments, such as *inter alia*, the "preferred list" and "Advisor Paid Fee" that was not

23  _____

24       [23] The cases cited by Defendants are inapposite at best. In Merrill Lynch Inv. Mgmt. Funds
        Sec. Litig., *supra*, the court concluded that the precise allocation of 12b-1 fees was not material. 434
25      F.Supp.2d at 236, 238.  Defendants' Shelf Space Program is distinguishable from the scenario in
        Merrill Lynch because Plaintiff is not challenging the *allocation* of fees. Instead, Plaintiff alleges she
26      was paying fees for which she received no corresponding benefit. FAC ¶ 55. Plaintiff alleges that
        the *true purpose* of the fees remained undisclosed. All the Shelf Space Program payments did was
27      bring in more investors. The addition of new investors did nothing to benefit *existing investors*, such
        as Plaintiff. FAC ¶ 55.
28

1  at all disclosed. FAC ¶¶ 33, 34. Perhaps most importantly, the "insurmountable conflict of interest"

2  inherent in the Shelf Space Programs was not disclosed. FAC ¶ 34(j); AIG Advisor Group, 2007 WL

3  1213395, at *8. As such, Benzon is distinguishable and inapplicable.

4        Whether the misleading "disclosures" as pled are material create a question of fact that must

5  be determined by a jury at the trial of this action. See TSC Indus.,Inc. v. Northway, Inc. 426 U.S.

6  438, 450 (1976); Mendell v. Greenberg, 927 F.2d 667, 673 (2d Cir.1990); FAC ¶ 70(b) (common

7  question for class certification whether false and misleading disclosures material.)[24]

8       **5.**     **The Form Of Dealer Agreement Did Not Disclose The Shelf Space Programs**

9        Defendants' claim that some contract not mentioned in the March 1, 2004 Prospectus and

10  available only on the SEC website as "v94553bpexv99wxeyx2y.txt,"[25] "actually disclosed" the

11  "hidden information." Def. Mtn. at 20:19. Defendants admit that the Form of Dealer Agreement

12  ("FDA")  was never provided or made available to Plaintiff or other members of the  Class. Def.

13  Mtn. at 13:FN5.

14        As mentioned above, the Ninth Circuit in Miller v. Thane Intern., Inc., held that "[i]nvestors

15  are not generally required to look beyond a given document to discover what is true and what is not.

16  [Citations.]" 2007 WL 4147327 at *6. In truth, there is no nexus between the FDA and the

17  statements in the March 1, 2004 Prospectus because the Registrants did not incorporate the FDA into

18  the Prospectus as provided by SEC regulation. See 17 C.F.R. § 230.411; Def. Req. J. Not., Ex. D at

19  11.

20        Moreover, Defendants' emphasis on the FDA is unavailing because it does not disclose the

21  "insurmountable conflict of interest" in the Shelf Space Program, nor the "preferred list," nor the

22

23      [24] Although a court may dismiss a claim on the ground that a misstatement or omission was
not material, "the standard for doing so is high." Milman v. Box Hill Sys. Corp., 72 F.Supp.2d 220,

24  227 (S.D.N.Y.1999). "[A] complaint may not properly be dismissed pursuant to Rule 12(b)(6) ... on
the ground that the alleged misstatements or omissions are not material unless they are so obviously

25  unimportant to a reasonable investor that reasonable minds could not differ on the question of their
importance." In re Sterling Foster. 222 F.Supp.2d at 262-63 citing Goldman v. Belden, 754 F.2d

26  1059, 1067 (2d Cir.1985).

27

28      [25] http://www.sec.gov/Archives/edgar/data/200159/000095014804000433/0000950148-04-
000433-index.htm

1  "unspecified compensation tied to the length of time Plaintiff and the Class hold their Proprietary

2  Funds." FAC ¶ 34. Nor did the FDA disclose that the source of the compensation were fees charged

3  against investors' investment principle. FAC ¶ 34.

4      **D.    PLAINTIFF HAS ADEQUATELY PLED TRANSACTION CAUSATION BY**
        **ALLEGING   THAT   SHE   WOULD   NOT   HAVE   PURCHASED**
5      **PROPRIETARY FUNDS BUT FOR CONCEALMENT OF THE SCHEME**

6          An element of Plaintiff's Section 10(b) claim is reliance, also known as "transaction

7  causation." Transaction causation requires allegations that "but for the fraud, plaintiffs would not

8  have engaged in the transaction at issue." In re Daou Systems, Inc., 411 F.3d 1006, 1025 (9th Cir.

9  2005). "It is relatively easy to allege facts sufficient to satisfy the transaction causation element,

10  since the plaintiff need only assert that the plaintiff relied on defendant's false or misleading

11  statement to purchase the stock in question." In re Intelligroup Sec. Litig., 468 F.Supp.2d 670, *681

12  (D.N.J.,2006) *citing* Emergent Capital Inv. Mgmt. v. Stonepath Group, Inc., 343 F.3d 189, 197 (2d

13  Cir.2003) and Basic Inc. v. Levinson, 485 U.S. at 241-47.

14          The Northern District of California held that transaction causation was properly pled where

15  plaintiffs alleged that they "would not have purchased the funds but for the concealment of the

16  scheme." Siemers v. Wells Fargo & Co. 2007 WL 760750, at * 14 (N.D. Cal., Mar. 9, 2007) *citing*

17  Daou. *See also* In re Salomon Smith Barney Mut. Fund Fees Litig., 441 F.Supp.2d 579, 589

18  (S.D.N.Y. 2006) ("Plaintiffs' assertion that they would not have purchased the Fund shares had they

19  known of the complained-of practices... makes out transaction causation.") *citing* Arduini/Messina

20  P'ship v. National Med. Fin. Servs. Corp., 74 F.Supp.2d 352 (S.D.N.Y.1999).

21          In this case, Plaintiff has adequately pled transaction causation by stating that "Plaintiff and

22  the Class would not have purchased the Proprietary Funds, and paid the related commissions and

23  fees associated with the Proprietary Funds, had they known of the illegal and improper practices the

24  Registrants used to direct them into the Proprietary Funds as alleged above." FAC ¶ 57.

25          Further, while Defendants contend that Plaintiff's claims are inappropriate for class treatment

26  (Def. Mtn. at 32:22-33:14), the amenability of Plaintiff's claims for class treatment are appropriately

27  left for class certification.    Mutchka v. Harris, 373 F.Supp.2d 1021, 1024 (C.D. Cal. 2005)

28  ("Whether the [plaintiffs] can represent the holders of other funds on a class basis is a question to

1    be addressed if and when they attempt to certify such a class.") [26]

2    **E.    DEFENDANTS DEPLETION OF PROPRIETARY FUND ASSETS
3          THROUGH IMPROPER FEES CONSTITUTE RECOVERABLE DAMAGES
          AND LOSS CAUSATION**

4          Defendants correctly state that "Sections 11 and 12(a)(2) of the Securities Act allow only for

5    recovery of *depreciation in value* of the subject security." Def. Mtn. at 34:17-18, *citing* 15 U.S.C.

6    §§ 77k(e), 77l(a)(2)(b). Plaintiff has accordingly alleged that her funds decreased in value:

7          [M]utual fund shares do not trade at a price set by the public market. Rather, they are
          bought from the fund and sold back to the fund at net asset value ("NAV") of the
8          fund per share in a method provided by statute. Opened ended mutual funds such as
          the Registrants' Proprietary Funds are required to issue redeemable securities, which
9          are defined as "any security... under the terms of which the holder, upon its
          presentation to the issuer... is entitled... to receive approximately his proportionate
10         share of the issuer's current net assets, or the cash equivalent thereof." 15 U.S.C. §
          80a-2(a)(32). The value of an investor's mutual fund is determined by subtracting
11         a fund's liabilities from its assets to arrive at the fund's NAV. When paid, the
          undisclosed fees and charges at issue here immediately reduced that Proprietary
12         Funds' NAV per share, decreasing the amount for which Plaintiff and the Class are
          entitled to redeem their shares.

13   FAC ¶ 54.
14
15         Plaintiff and the Class assumed wrongly – as a direct and proximate result of the
          Registrants' non-disclosure and misrepresentation – that they would be paying out
16         of their principal only fees for services that accrued to the benefit of Plaintiff and
          members of the Class. In reality, Plaintiff and the Class' principal was funding the
17         Shelf-Space Program(s) system of payments which were being used to induce
          Plaintiff and the Class members to hold their shares of the Proprietary Funds,
18         purchase additional shares of the Proprietary Funds, and induce third parties to
          purchase shares of the Proprietary Funds, all of which provided no benefit to Plaintiff
19         and the Class, and in fact actually dissipated the NAV of their assets in the
          Proprietary Funds.

20   FAC ¶ 55.

21   _____

22   [26] For example, the <u>Seimers</u> court, addressing the issue of class wide transaction causation,
     found "with respect to the issue of reliance, we are concerned here with half-truths. The sale of
23   mutual fund shares carries with it an implied representation that all fees, even high fees, are used
24   only for the authorized purposes and that there are no material conflicts of interest beyond those
     disclosed. Prospective investors ordinarily so presume. They ordinarily presume that mutual fund
25   fees, even if high, will be used for authorized purposes and will not be charades. When the implied
     representations are false, as here alleged, then reliance is presumed." <u>Siemers</u>, 2007 WL 760750, 14
26   (N.D.Cal. Mar. 9, 2007.) In <u>Affiliated Ute</u>, the Supreme Court held that in Section 10(b) cases
     "*involving primarily* a failure to disclose, positive proof of reliance is not a prerequisite to recovery.
27   All that is necessary is that the facts withheld be material in the sense that a reasonable investor
     might have considered them important in the making of this decision." 406 U.S. 128, 153-54 (1972);
28   *see also* <u>Binder v. Gillespie</u> 184 F.3d 1059, 1064 (9th Cir.1999).

> The Shelf-Space Program(s) system of payments caused Plaintiff and the Class an economic loss: absent those payments, Plaintiff and the Class' total amount of fees, and thus the resulting diminution of their investment's NAV, would have been smaller.

FAC ¶ 56.

> Plaintiff and the Class accepted, as an integral aspect of purchasing shares of the Proprietary Funds, that they would be required to pay fees and expenses against their ownership interests in the Proprietary Funds, with the understanding that those charges were legitimate outlays for services that would benefit the mutual fund and contribute positively to its value. In truth, a significant portion of those expenses were not being used to provide the services promised, but rather to increase the profits of the WAMU Fund Companies and WMFS by financing the Shelf-Space Programs challenged in this lawsuit. As a result, the values of the Proprietary Funds were less than they appeared to Plaintiff and the Class.

FAC ¶ 58. By alleging diminution in value of her Proprietary Fund shares, Plaintiff has adequately alleged damages under the Securities Act.

In churning cases under Section 10(b), the Ninth Circuit has specifically approved a measure of damages based on the excess in commissions due to churning in an investment account. Nesbit v. McNeil, 896 F.2d at 385. Churning of fees is analogous to the Shelf Space Program in this case. In Dura Pharmaceuticals, Inc. v. Broudo, the Supreme Court held that in a Section 10(b) case, a stock-price drop is one usual way to prove damages and loss causation. 544 U.S. 336, 347(2005) But the Court in Dura did not limit plaintiffs to that single method, instead saying that "ordinary pleading rules are not meant to impose a great burden upon a plaintiff" and that "it should not prove burdensome for a plaintiff ... to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." Id. at 347. The Ninth Circuit has interpreted Dura narrowly and held that a plaintiff can establish loss causation by demonstrating a causal connection between the deceptive acts that form the basis of the securities fraud claim and the injury suffered by the plaintiff. In re Daou Sys. Inc., 411 F.3d 1006, 1025 (9th Cir.2005). Plaintiff has satisfied the loss causation requirement.

As described above, mutual fund share prices are based solely on the value of the underlying assets. 17 C.F.R. 270.22c-1. In this case, the Shelf Space Program payments came out of the mutual fund assets. FAC ¶ 52-57. Without the Program payments, the net assets of the Proprietary Funds would have been greater, thus saving Plaintiff and the Class money and increasing their net return

1   on investment. All the Program kickbacks did was bring in more investors. The addition of new

2   investors did nothing to benefit *existing investors*, such as Plaintiff. By paying for the undisclosed

3   and misleadingly disclosed Shelf Space Program payments, investors were unwittingly paying extra

4   and getting nothing in return. *See* FAC ¶ 44, 55-57, 105; Seimers, 2007 WL 760750, at *14 (Mar.

5   9, 2007) (finding damages and loss causation where alleged that improper fees diminished the net

6   asset value of fund assets); AIG Advisor Group, 2007 WL 1213395, *11 (same).

7

8   **F.     PLAINTIFF HAS ALLEGED FACTS CREATING A STRONG INFERENCE OF SCIENTER**

9   **1.     The Tellabs Requirement**

10   As the Supreme Court recently clarified, for an inference of scienter to be strong "a

11   reasonable person would deem the inference of scienter cogent and at least as compelling as any

12   opposing inference one could draw from the facts alleged." Tellabs,127 S.Ct. at 2510. Allegations

13   of Defendants' intent may not be considered in isolation. Rather, "the significance that can be

14   ascribed to an allegation of motive, or lack thereof, depends on the entirety of the complaint." *Id.* at

15   2511. The level of certainty required for a "strong inference" was debated between the majority and

16   concurring opinions in Tellabs. Justice Ginsberg, writing for the majority, concluded that an

17   inference of scienter need only be as plausible as opposing inferences of nonculpable intent. Justice

18   Scalia, writing in concurrence, would have required that the inference of scienter be more plausible

19   than the inference of innocence. *Id.* at 2513. Justice Scalia's view was explicitly rejected by the

20   majority, and the Supreme Court made clear that a tie goes to the Plaintiff. Commc'n Workers of

21   America Plan for Employees' Pensions and Death Benefits v. CSK Auto Corp., (slip opp.) 2007 WL

22   2808652, *3 (D.Ariz. 2007) ("CSK Auto Corp.").

23

24   **2.     Allegations Of Public Statements Contradicting Present Knowledge Constitute A Strong Inference Of Scienter**

25   In the Ninth Circuit, "falsity and scienter are generally inferred from the same set of facts."

26   In re Read-Rite Corp., 335 F.3d 843, 845 (9th Cir. 2003.) Ninth Circuit decisional authority provides

27   that "these two requirements may be combined into a unitary inquiry under the PSLRA." In re

28   Immune Response Sec. Litig., 375 F. Supp.2d 983, 1019 (S.D. Cal. 2005). Furthermore, "[s]cienter

1   can be established by direct or circumstantial evidence." Provenz v. Miller, 102 F.3d 1478, 1490 (9th

2   Cir. 1996). The preferable way for a plaintiff to show scienter is by putting forth contemporaneous

3   reports or data which contradict the allegedly misleading statements. Nursing Home Pension Fund

4   Local 144 v. Oracle Corp., 380 F.3d 1226, 1230 (9th Cir. 2004); Immune Response, 375 F.Supp.2d.

5   at 1022 ("The fact that the defendants published statements **when they knew facts suggesting the**

6   **statements were inaccurate or misleadingly incomplete is classic evidence of scienter**")

7   (emphasis added).

8        Plaintiff's FAC alleges a sequence of events that very cogently demonstrates an attempt to

9   conceal and defraud. Most importantly, the FAC demonstrates that the Shelf Space Program was in

10   place as far back as *1997*, yet it took the revenue sharing scandals and SEC enforcement actions in

11   late 2004 for Defendants to finally come clean in their March 1, 2005 Prospectus.

12        The FAC alleges that:

13        The WAMU Fund Companies put in place the "preferred list(s)", "revenue sharing"
          kickbacks, and non-cash incentives to WMFS and its Salesmen in 1997. Thereafter,
14        in the Registrants' March 1998 prospectus, the Registrants' stated that WM Funds
          Distributor "may" pay "additional compensation or other incentives for selling
15        [Proprietary Fund] shares." As demonstrated above, the Registrants utilized
          essentially identical language through 2003, with minimal additional detail in 2004
16        until finally revealing in 2005 that WMFS and its Salesmen were in fact involved in
          the Shelf-Space Program(s). The Registrants' purported "disclosures" were not
17        drafted in the abstract, but were created in response to the Shelf-Space Programs. The
          fact that the disclosures came after the Shelf-Space Programs were put in place, and
18        evolution of the purported disclosures over time demonstrate that the Registrants
          intentionally sought to disclose as little information as possible about the Shelf-Space
19        Programs.

20   FAC ¶ 40. *See* FAC ¶ 31, 33, 38 for evolution of "disclosure" statements for the Shelf Space

21   Programs in the Registrants' Prospectuses.

22        Plaintiff also alleges that:

23        The fact that the Registrants have the Shelf-Space Program(s) in place indicates that
          the Registrants know and believe such Programs drive and increase sales. By virtue
24        of the detailed descriptions of the Shelf-Space Program(s) and their inherent conflicts
          of interest contained in purported disclosures after the Class Period, defendants
25        recognized the existence and nature of such Program(s) to be material to a reasonable
          investor. By virtue of the existence of the Shelf-Space Program(s), the Registrants'
26        directors knew about the already in place "preferred list(s)," "revenue sharing"
          kickbacks and other non-cash incentives provided to WMFS and its Salesmen, but
27        drafted, authorized and thereafter left in place intentionally vague disclosures.

28   FAC ¶ 47.

1
2
3
4

The fact that the Registrants stated falsely in the March 1, 2005 Prospectus that WM Advisor and WM Funds Distributor make payments "at its expense", when in reality those payments were derived directly from Plaintiff and the Class' advisor fees, loads, commissions, distributor fees and 12b-1 fees, indicates that the Registrants' knew the programs were improper and were attempting to limit their exposure for engaging in the Shelf-Space Programs.

FAC ¶ 48.

5
6
7
8
9

The Registrants and WMFS disclosed their actions and policy only after the illegal activities and scandals in the mutual fund industry were finally revealed to the public in 2004. The Registrants took these actions in a transparent and belated attempt to "clean up" their disclosures and minimize their potential liability. The Registrants therefore knew their policies and conduct regarding Proprietary Fund sales were wrong and improper. In light of this conscious strategy, the failure to disclose the full extent of the "preferred list", revenue-sharing, kickback and incentive programs raises a strong inference of scienter.

10  FAC ¶ 50. Allegations virtually *identical* to the above were held to create the strong inference of

11  scienter required by the PSLRA. *See* Siemers v. Wells Fargo & Co. 2006 WL 2355411, *9 (Aug. 14,

12  2006).

13  **3.    Scienter Is Bolstered By Allegations Of Motive**

14  In addition, scienter may be bolstered by alleging facts to show that Defendants had a motive

15  to commit fraud. Immune Response, 375 F. Supp.2d at 1023. Plaintiff has established motive by

16  alleging the vast amount of additional income received by the WAMU fund companies as a direct

17  result of the Shelf Space Programs.

18
19
20
21
22
23

The WAMU Fund Companies, WMFS and its Salesmen reaped huge rewards from the Shelf-Space Program(s) and had an incentive to keep them secret. WMFS and its Salesmen received excessive sales commissions and other payments, including non-cash incentives for selling Proprietary Fund shares in lieu of other investments. WMFS and its Salesmen also received undisclosed cash and non-cash remuneration when sales of the Proprietary Funds exceeded a certain amount, or when Plaintiff and the Class held Proprietary Fund shares in excess of a specified period of time. Similarly, increasing sales of the Proprietary Funds infused more assets and therefore more fees to the WAMU Fund Companies, in the form of investment advisor fees, loads, commissions, distributor fees and 12b-1 fees. As the WAMU Fund Companies and WMFS were all subsidiary companies of WAMU, they were working under a common scheme to increase profits for the common benefit of WAMU.

24  FAC ¶ 49, *see also* FAC ¶ 1, 3,4, 27. Based on Plaintiff's allegations, a reasonable person would be

25  hard pressed to come to any conclusion except that the statements complained of were calculated to

26  deceive.

27
28

**4.     Defendants Motion Does Not Establish An Innocent Explanation More Cogent Than Plaintiff's Allegations**

As detailed below, Defendants have not pointed to any "competing inferences rationally drawn from the facts alleged" Tellabs, at 2504. Defendants again rely on the Form of Dealer Agreement ("FDA") (*see* § IV.A.5, *above*) in support of their argument that the Registrants were not acting with scienter. Def. Mtn. at 29:14-19; *but see*17 C.F.R. § 230.421. What is conspicuously absent from Defendants' brief is an explanation as to why Defendants did not *actually and affirmatively* disclose the nature and scope of the Shelf Space Program in the Prospectus itself?

Defendants also try to eviscerate Plaintiff's allegations of scienter by arguing that the Shelf Space Program and their inherent conflicts of interest were immaterial, and ergo there was no intent to defraud by omitting such information. Def. Mtn. at 29:22-24. Defendants *ipsit dixit* argument is circular and incorrect under controlling case law (*see* §IV.A.4, *above*), and highlights the scant – if any – competing inferences Defendants can put forth.

Defendants also attempt to characterize as "fraud by hindsight" Plaintiff's allegations that more complete "clean up" disclosure only surfaced after revenue sharing scandals came to light and SEC enforcement actions ensued in late 2004. Def. Mtn. at 30:5-8 *citing* FAC ¶ 50. However, the concept of "fraud by hindsight" occurs where a Plaintiff "seize[s] upon disclosures made later and allege[s] that they should have been made earlier" in the absence of facts that the defendants *actually knew* of the information at the time of prior disclosures. In re Calbetron Sys., Inc., 311 F.3d 11, 37 (1st Cir. 2002) *cited at* Def. Mtn. 30:8. In this case, Defendants' earlier prospectuses 2000 demonstrate that the Shelf Space Program was in place by 2000. FAC ¶ 31. The Shelf Space Programs is not analogous to a financial result the existence or significance of which can be overlooked at the time of initial disclosure, but were instead a deliberate *marketing program* orchestrated and executed for the purpose of driving sales and increasing the WAMU Fund Companies' revenue to the detriment of Plaintiff and the Class. Defendants cannot seriously contend they did not know what was going on when they crafted the March 1, 2004 Prospectus.

Finally, to counter Plaintiff's allegations of motive, Defendants make the bold statement that "[t]he economic motive to sell the Funds ... was disclosed in the 2004 Prospectus." Def. Mtn. at

32:2. Tellingly however, Defendants are unable to point to any portion of the March 1, 2004 Prospectus that makes such a disclosure. In the face of such thin – if any – evidence to support a finding that the Registrants' acted with innocent intent, Defendants are valiantly creative in their arguments. Defendants arguments however, fall far short of painting a picture of innocent intent *more compelling* than the facts as alleged in the FAC. CSK Auto Corp., *supra*, 2007 WL 2808652, *3 ("The Supreme Court has now made clear, however, that a tie goes to the Plaintiff.")

### G.   WMFS' VIOLATION OF RULE 10b-10 CONSTITUTED A VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT

WMFS violated Section 10(b) of the Exchange Act by violating SEC Rule 10b-10 promulgated thereunder in connection with the Shelf Space Programs. SEC Rule 10b-10 states that:

> **It shall be unlawful** for any broker or dealer to effect for or with an account of a customer any transaction in, or to induce the purchase or sale by such customer of, any security (other than U.S. Savings Bonds or municipal securities) unless such broker or dealer, at or before completion of such transaction, gives or sends to such customer written notification disclosing: [ ¶ ] **The source and amount of any other remuneration received or to be received by the broker in connection with the transaction.**

17 C.F.R. § 240.10b-10(a)(2)(i)(D). Courts have found that a violation of Rule 10b-10 can constitute a violation of the Exchange Act if is a violation of Section 10(b). Morris v. Wachovia Securities, Inc. 277 F.Supp.2d 622, 630 (E.D.Va. 2003); Levitin v. PaineWebber, Inc. 933 F.Supp. 325, 329 -30 (S.D.N.Y. 1996).[27]

Here Plaintiff alleges that WMFS and its Salesmen effected transactions in the Proprietary Funds with Plaintiff and the Class (FAC ¶ 111), and failed to disclose the renumeration received in connection with the Shelf Space Programs prior to effecting such transactions. FAC ¶ 112. As alleged in the FAC, payments to WMFS and its Salesmen "created insurmountable and undisclosed conflicts of interest for WMFS and its Salesmen." FAC ¶ 113. Had Plaintiff and the Class known

---

[27] Defendants argument that there is no private right of action under Rule 10b-10 is contradicted by the fact that the rule was promulgated pursuant to Section 10(b) of the Exchange Act. Press v. Quick & Reilly, Inc., 218 F.3d 121 (2d Cir. 2000). The private right of action does not arise from violation of the Rule itself, but from violation in the context of a scheme to defraud. Morris, 277 F.Supp.2d at 630.

1   about such conflicts of interest, they would not have purchased Proprietary Fund Shares. FAC ¶ 113;
2   *See also* § IV.C-F, *above*. For the reasons set out in detail above, WMFS failure to disclose the
3   compensation related to the Shelf-Space Program constituted a violation of Section 10(b) and Rule
4   10b-5.

5
6   ### H.   THE PRINCIPAL DEFENDANTS' ACQUISITION OF THE WAMU FUND COMPANIES CREATES SUCCESSOR LIABILITY

7       Successor liability exists when (1) there has been an express or implied agreement to assume
8   the other company's debts and obligations, (2) the transaction was fraudulent, (3) there has been a
9   de facto merger or consolidation of the companies, or (4) the purchasing company is a mere
10  continuation of the selling company. In re Parmalat Sec. Litig. 493 F.Supp.2d 723, 729
11  (S.D.N.Y.2007). When the Principal Defendants acquired all the outstanding stock of WM Advisors,
12  WM Funds Distributor, and WM Shareholder Services, and the Registrants approved the
13  combination of the Proprietary Funds with the Principal Investors Fund in January 2007, the
14  Principal Defendants became the successors in interest to the liabilities arising out of the Shelf Space
15  Programs. *See* FAC ¶¶ 60-65, 75, 83, 91.

16  ### I.   CONTROL PERSON LIABILITY IS PROPERLY ALLEGED

17      Plaintiff alleges control person liability under Section 15 of the Securities Act (15 U.S.C. §
18  77o) against WAMU as a control person of the WAMU Fund Companies and WMFS, and against
19  the Principal Defendants as successors in interest to WAMU, the WAMU Fund Companies and
20  WMFS for the WAMU fund companies' violations of Sections 11 and 12(a)(2) of the Securities Act.
21  FAC ¶ 91. Plaintiff also alleges control person liability against WAMU, the Principal Investors Fund,
22  and Principal under Section 20(a) of the Exchange Act (15 U.S.C. § 78t) for the Registrants'
23  violation of Section 10(b) and Rule 10b-5, and WMFS' violation of Section 10(b) and Rule 10b-10.
24      In order to prove a prima facie case under Section 20(a) or Section 15, a plaintiff must plead:
25  (1) "a primary violation of federal securities law" and (2) "that the defendant exercised actual power
26  or control over the primary violator." Howard v. Everex Sys., Inc. 228 F.3d 1057, 1065 (9th
27  Cir.2000). "[I]n order to make out a prima facie case, it is not necessary to show actual participation
28

1   or the exercise of power; however, a defendant is entitled to a good faith defense if he can show no

2   scienter and an effective lack of participation." *Id.*

3       Whether a defendant is a controlling person is "an intensely factual question, involving

4   scrutiny of the defendant's participation in the day-to-day affairs of the corporation and the

5   defendant's power to control corporate actions.' " *Id.* "Control" is defined in SEC regulations as "the

6   possession, direct or indirect, of the power to direct or cause the direction of the management and

7   policies of a person, whether **through the ownership of voting securities**, by contract, or

8   otherwise." 17 C.F.R. § 230.405.

9       Defendants assertion that the elements of control person liability must be pled with

10  particularity runs counter to Ninth Circuit case law holding that "to establish the liability of a

11  controlling person, the plaintiff does not have the burden of establishing that person's scienter

12  distinct from the controlled corporation's scienter." Howard v. Everex Systems, Inc. 228 F.3d 1057,

13  1065 (9th Cir. 2000). Holding that particularity was not required of control person allegations, the

14  Northern District found:

15

16      Rule 9(b), however, requires only that "the circumstances constituting fraud ... shall
        be stated with particularity." The control exerted by [parent company] is not a

17      circumstance that constitutes fraud. Plaintiff is only required to assert fraud with
        particularity as to the primary violations. At the control-person level, liability exists

18      irrespective of the control person's scienter.

19  Siemers v. Wells Fargo & Co. 2006 WL 2355411, *14 (Aug. 14, 2006)

20      Accordingly, "it is sufficient, at the pleading stage, to identify the defendants' positions and

21  allege that they 'had the power to control and influence [the defendant], which they exercised.'" In

22  re Cylink Secs. Litig., 178 F.Supp.2d 1077, 1089 (N.D. Cal. 2001); In re Metropolitan Sec. Litig.,

23  2007 WL 3274893, * 28 (E.D. Wash. 2007) (same); Middlesex Retirement System v. Quest Software

24  Inc., 2007 WL 3286784, *26 (C.D.Cal. 2007) (particularity not required); In re Parmalat Sec. Litig.,

25  376 F.Supp.2d 472, 517 (S.D.N.Y. 2005) (control person allegations pled in accordance with FRCP

26  8(a)); Trendsetter Investors, LLC v. Hyperdynamics Corp., 2007 WL 172627, *15 (S.D.Tex.,2007)

27  (same). Defendants' attempt to seize upon a few unpublished decisions to counter clear Ninth Circuit

28  case law should be ignored.

1     Plaintiff has alleged primary violations of the Securities Act and Exchange Act against

2 Defendants. *See* § IV.A - D, *above.* The FAC also gives Defendants fair notice that Plaintiff is basing

3 her control person claims on WAMU's status as the parent entity of the WAMU Fund Companies

4 and Principal Defendants as the successors in interest to WAMU. *See* FAC ¶ 60-65, 90-97, 117-123.

5 Defendants' motion to dismiss Plaintiff's control person claims should therefore be denied.

6     **V.**     **CONCLUSION**

7     For the reasons stated above, Plaintiff respectfully requests that Defendants' Motion be

8 denied in its entirety.

9 DATED: 11/30/2007                  By: \_\_ /s/ William R. Restis

10                          **FINKELSTEIN & KRINSK LLP**
                             JEFFREY R. KRINSK

11                              MARK L. KNUTSON
                             WILLIAM R. RESTIS

12                              501 West Broadway, Suite 1250
                             San Diego, CA 92101-3593

13                              Tel: (619) 238-1333
                             Fax: (619) 238-5425

14                              Email: jrk@classactionlaw.com
                             Attorneys for Plaintiff

15                              Luz M. Zapien

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Andrea Vasquez, certify that on November 30, 2007, I electronically filed the foregoing **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following individuals:

**Morgan, Lewis, & Bockius LLP**
Joseph E. Floren
One Market
Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
Email: jfloren@morganlewis.com

**O'MELVENY & MYERS LLP**
Phillip R. Kaplan
610 Newport Center Dr.
Newport Beach, CA. 92660
Tel: 949 8236909
Fax: 949 8236994
Email: pkaplan@omm.com

DATED: November 30, 2007      /s/ Andrea Vasquez

Andrea Vasquez
**FINKELSTEIN & KRINSK LLP**
The Koll Center
501 West Broadway, Suite 1250
San Diego, CA 92101
Tel: 619.238.1333
Fax: 619.238.5425