1   MORGAN, LEWIS & BOCKIUS LLP
    MICHAEL J. LAWSON, State Bar No. 66547
2   JOSEPH E. FLOREN, State Bar No. 168292
    LISA A. FREITAS, State Bar No. 227109
3   SHEILA A. JAMBEKAR, State Bar No. 239101
    One Market, Spear Street Tower
4   San Francisco, CA  94105-1126
    Tel:  415.442.1000
5   Fax:  415.442.1001
    Email:  michael.lawson@morganlewis.com
6           jfloren@morganlewis.com
            lfreitas@morganlewis.com
7           sjambekar@morganlewis.com

8   Attorneys for Defendants Washington Mutual, Inc. and
    WM Financial Services, Inc.
9
    [Additional Parties and Counsel on Signature Page]
10

11              UNITED STATES DISTRICT COURT

12            SOUTHERN DISTRICT OF CALIFORNIA

13
    LUZ M. ZAPIEN, Individually And On      Case No. 07-CV-0385-DMS-CAB
14  Behalf Of All Others Similarly Situated,
                                            **REPLY IN SUPPORT OF DEFENDANTS'**
15                     Plaintiff,           **MOTION TO DISMISS PLAINTIFF'S**
                                            **FIRST AMENDED COMPLAINT**
16              vs.
                                            Date:      January 11, 2008
17  WASHINGTON MUTUAL, INC., *et al.*,      Time:      1:30 p.m.
                                            Place:     Courtroom 10, 2nd Floor
18                     Defendants.          Judge:     Hon. Dana M. Sabraw

19

20

21

22

23

24

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5

REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................1

II.   PLAINTIFF LACKS STANDING TO BRING THIS ACTION ................1

    A.   Plaintiff Is Not the Real Party in Interest and Has No Standing ............1

    B.   Dividend Reinvestment By Plaintiff's Mother Does Not Confer Standing ...........3

    C.   Plaintiff Lacks Standing to Sue Concerning Funds She Did Not Purchase ...........5

III.  PLAINTIFF'S CLAIMS ARE TIME-BARRED ......................................7

    A.   The Securities Act Claims Are Time-Barred .......................................8

IV.  PLAINTIFF'S CLAIMS FAIL ON THE MERITS ................................10

    A.   There Is No Duty to Disclose the Allegedly Omitted Information......................10

        1.   No Law or Rules Required the Allegedly Omitted Disclosures ..............10

        2.   Plaintiff's Rule 10b-10 Claim Fails.........................................11

    B.   Plaintiff Has Failed to Allege a Material Misstatement or Omission ..................12

        1.   The Challenged Disclosures Were Not Materially Misleading ...............12

        2.   Allegedly "Omitted" Information Was Not Material...............................15

    C.   Plaintiff Has Failed to Plead Facts Creating a Strong Inference of Scienter ........17

        1.   Plaintiff Alleges No Facts Creating a Strong Inference that any Defendant's Statements Were Contradicted By Its Knowledge ..............18

        2.   Plaintiff's Motive Allegations Do Not Create an Inference of Scienter ..................20

    D.   Plaintiff Has Failed to Plead "Transaction Causation".......................................20

V.   PLAINTIFF HAS FAILED TO PLEAD DAMAGES OR LOSS CAUSATION ............21

    A.   Plaintiff Has Not Alleged Damages to Support the Securities Act Claims ..........21

    B.   Plaintiff Has Not Alleged Loss Causation on the Exchange Act Claims .............22

VI.  PLAINTIFF'S "CONTROL PERSON" CLAIMS MUST FAIL. .................23

VII. CONCLUSION ........................................................................................25

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5

i

REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

# TABLE OF AUTHORITIES

Page

**Cases**

*Allen v. Wright*,
468 U.S. 737 (1984) ..................................................................................................2

*Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.*,
74 F. Supp. 2d 352 (S.D.N.Y. 1999) .......................................................................22

*Benzon v. Morgan Stanley Distributors, Inc.*,
420 F.3d 598 (6th Cir. Aug. 22, 2005) .............................................................passim

*Berry v. Valence Tech., Inc.*,
175 F.3d 699 (9th Cir. 1999) ...............................................................................9, 10

*Betz v. Trainer Wortham & Co., Inc.*,
504 F.3d 1017 (9th Cir. 2007) .............................................................................8, 10

*Blue Chip Stamps v. Manor Drug Stores*,
421 U.S. 723 (1975) ...............................................................................................3, 5

*Blum v. Yaretsky*,
457 U.S. 991 (1982) ...............................................................................................6, 7

*Castillo v. Dean Witter Discover & Co.*,
1998 WL 342050 (S.D.N.Y. June 5, 1998) .......................................................17, 20

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005) ................................................................................................22

*Eckstein v. Balcor Film Investors*,
58 F.3d 1162 (7th Cir. 1995) ....................................................................................9

*Goldberger v. Bear, Stearns & Co., Inc.*,
Fed. Sec. L. Rep. (CCH) ¶ 91,287, 2000 WL 1886605 (S.D.N.Y. Dec. 28, 2000) ...................5

*Gratz v. Bollinger*,
539 U.S. 244 (2003) ...............................................................................................6, 7

*Herman & McLean v. Huddleston*,
459 U.S. 375 (1983) ................................................................................................13

*Howard v. Hui*,
No. C 92-3742, 2001 WL 1159780 (N.D. Cal. Sept. 24, 2001) ..............................24

*In re AIG Advisor Group Sec. Litig.*,
2007 WL 1213395 (E.D.N.Y. Apr. 25, 2007) (*AIG I*) ..............................................5

*In re Alger, Columbia, Janus, MFS, One Group, Putnam Mut. Fund Litig.*,
320 F. Supp. 2d 352 (D. Md. 2004) ..........................................................................4

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                    ii                    REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

**TABLE OF AUTHORITIES**
(continued)

Page

*In re Broderbund/Learning Co. Sec. Litig.*,
294 F.3d 1201 (9th Cir. 2002) ........................................................21

*In re Copper Mountain Sec. Litig.*,
311 F. Supp. 2d 857 (N.D. Cal. 2004) ........................................24

*In re Digital Island Sec. Litig.*,
223 F. Supp. 2d 546 (D. Del. 2002) ...........................................24

*In re Eaton Vance Corp. Sec. Litig.*,
219 F.R.D. 38 (D. Mass. 2003) ...............................................5, 6

*In re Emex Corp. Sec. Litig.*,
No. 01-Civ-4886, 2002 WL 31093612 (S.D.N.Y. Sept, 18, 2002) ....24

*In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*,
289 F. Supp. 2d 429 (S.D.N.Y. 2003) .......................................20

*In re Morgan Stanley & Van Kampen Mutual Fund Sec. Litig.*,
2006 WL 1008138 (S.D.N.Y. 2006) ..........................11, 14, 19, 21

*In re Mutual Funds Inv. Litig.*,
2007 WL 3052301 (D. Md. Oct. 19, 2007) ..............................6, 21

*In re Oak Technologies Sec. Litig.*,
No. 96-20552 SW, 1997 WL 448168 (N.D. Cal. Aug. 1, 1997) ........24

*In re Salomon Smith Barney Mut. Fund Fees Litig.*,
441 F. Supp. 2d 579 (S.D.N.Y. 2006) ........................................22

*In re Scott Paper Co. Sec. Litig.*,
142 F.R.D. 611 (E.D. Pa. 1992) ...............................................4, 5

*In re Seagate Tech. II Sec. Litig.*,
1989 WL 222969 (N.D. Cal. May 3, 1989) .................................16

*In re Splash Tech. Holdings, Inc. Sec. Litig.*,
No. C 99-00109, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000) ......24

*In re TCW/DW N. Am. Gov't Income Sec. Litig.*,
941 F. Supp. 326 (S.D.N.Y. 1996) .............................................11

*In re Yukos Oil Co. Sec. Litig.*,
No. 04-5243, 2006 WL 3026024 (S.D.N.Y. Oct. 25, 2006) .............24

*Lapin v. Goldman Sachs Group, Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006) ........................................24

*Levitin v. PaineWebber, Inc.*,
933 F. Supp. 325 (S.D.N.Y. 1996) .............................................11

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5            iii            REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

**TABLE OF AUTHORITIES**
(continued)

Page

*Lewis v. Casey,*
  518 U.S. 343 (1996) ........................................................................................................6, 7

*Lujan v. Defenders of Wildlife,* 504 U.S. 555 (1992) ...............................................................2

*Morris v. Wachovia Sec. Inc.,*
  277 F. Supp. 2d 622 (E.D. Va. 2003) ....................................................................................11

*Nesbit v. McNeil,*
  896 F.2d 380 (9th Cir. 1990) ...............................................................................................23

*Paracor Finance, Inc. v. General Electric Capital Corp.,*
  96 F.3d 1151 (9th Cir. 1996) ...............................................................................................23

*Piper v. Chris-Craft Indus. Inc.,*
  430 U.S. 1 (1977) ................................................................................................................17

*Raines v. Bird*
  521 U.S. 811 (1997) ..............................................................................................................2

*Recupito v. Prudential Sec., Inc.,*
  112 F. Supp. 2d 449 (D. Md. 2000) .................................................................................16, 17

*Rich v. Maidstone Financial, Inc.,*
  No. 98-Civ-2569, 2001 WL 286757 (S.D.N.Y. March 23, 2001) ........................................24

*Robertson v. Dean Witter Reynolds, Inc.,*
  749 F.2d 530 (9th Cir. 1984) ...............................................................................................15

*Rubin v. United States,*
  449 U.S. 424 (1981) ..............................................................................................................3

*Salinger v. Projectavision, Inc.,*
  934 F. Supp. 1402 (S.D.N.Y. 1996) ......................................................................................9

*See Binder v. Gillespie,*
  184 F.3d 1059 (9th Cir. 1999) .............................................................................................21

*Siemers v. Wells Fargo & Co.,*
  2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) ................................................................13, 14

*Silvers v. Sony Pictures Entm't, Inc.,*
  402 F.3d 881 (9th Cir. 2005) ..............................................................................................2, 3

*Simpson v. AOL Time Warner, Inc.,*
  452 F.3d 1040 (9th Cir. 2006) .............................................................................................14

*Smith v. Ayres,*
  977 F.2d 946 (5th Cir. 1992) ..............................................................................................2, 3

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                              iv                    REPLY SUPPORTING MOTION TO
                                                                 DISMISS FIRST AMENDED COMPLAINT
                                                                 (07-CV-0385-DMS-CAB)

**TABLE OF AUTHORITIES**
(continued)

Page

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
127 S. Ct. 2499 (2007) ....................................................................................17, 18

*Vervaecke v. Chiles, Heider & Co.*,
578 F.2d 713 (8th Cir. 1978) ...................................................................................5

*Waldock v. M.J. Select Global, Ltd.* ,
No. 03-C-5293, 2005 WL 3542527 (N.D. Ill. Dec. 27, 2005) ................................24

*Zell v. Int'l Income Sec. Inc.*,
675 F.2d 1041 (9th Cir. 1982) ...............................................................................17

**Statutes**

15 U.S.C.
§ 78u-4(b)(2) ...........................................................................................................17

**Rules**

American Heritage Dictionary (4th ed. 2000) .............................................................11

*Franklin Advisers, Inc.*, SEC Release No. 34-50841, 2004 WL 2884102 (Dec. 13, 2004).....14, 15

*Morgan Stanley DW, Inc.*, SEC Release No. 34-48789, 2003 WL 22703073 (Nov. 17, 2003) ....15

*Putnam Inv. Mgmt., LLC*, SEC Release No. IC-26788, 2005 WL 673295 (Mar. 23, 2005) ...14, 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                                    v                    REPLY SUPPORTING MOTION TO
                                                                      DISMISS FIRST AMENDED COMPLAINT
                                                                      (07-CV-0385-DMS-CAB)

1    Defendants respectfully submit this Reply Supporting their Motion to Dismiss Plaintiff's

2  First Amended Complaint ("Motion").

3  **I.      INTRODUCTION**

4    Like her First Amended Complaint ("FAC"), there is much less to Plaintiff's Opposition

5  brief ("Opp.") than meets the eye.  Plaintiff's conspicuous lack of standing to sue on behalf of her

6  mother mandates dismissal.  The absence of any affirmative purchase of Fund shares during the

7  class period is an equally fatal standing flaw.  The expiration of the statutes of limitations before

8  Plaintiff filed suit, based on the notice resulting from the same disclosures of which Plaintiff

9  complains, is a further absolute bar to any recovery here.  These defects cannot be cured through

10  another amendment, and the action should be dismissed with prejudice.

11    Beyond this, for all her tortuous argument, mischaracterizations of her own allegations,

12  and numerous mis-citations of irrelevant cases, Plaintiff's claim is no more than a "semantic

13  quibble" about the difference between the words "may" and "will" – a distinction without a legal

14  difference in this case.  Defendants explained this in their Motion and in their unopposed Request

15  for Judicial Notice ("RJN"), which establish beyond any dispute the well-grounded basis for

16  Defendants' accurate use of the word "may" in the prospectus disclosures to describe the

17  challenged payments among the Defendants.  Plaintiff ignores the substance of Defendants'

18  arguments on this fundamental point in her Opposition, instead quibbling about the supposed

19  obscurity of the Funds' Registration Statement – a public record document that is published on

20  the internet.  As established in Defendants' Motion and summarized below, Plaintiff's claims

21  have no legal basis and should be dismissed.

22  **II.      PLAINTIFF LACKS STANDING TO BRING THIS ACTION.**

23      **A.      Plaintiff Is Not the Real Party in Interest and Has No Standing.**

24    Plaintiff unsuccessfully attempts to fabricate the appearance of standing to sue.  The Fund

25  purchases on which this action is based were made *not* by or for Plaintiff but "in the name of her

26  mother, Maria Carmen Higareda."  FAC ¶ 11.  This is not a case in which Plaintiff alleges she

27  acted as trustee or nominee in purchasing the Fund shares in question.  Plaintiff is a complete

28  stranger to Defendants, has no account or contract with any Defendant, and nothing in the FAC

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                    1                    REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    suggests otherwise.  Recognizing this fatal defect, Plaintiff simply misstates her own allegations

2    and argues that she is the "beneficial owner" of the Funds in question.  Opp. at 7.  *No such*

3    *allegation appears in the FAC.*  At most, construing the allegations liberally, Plaintiff handled the

4    purchase *in 2000* of Fund shares for her mother, in her mother's name.  *Id.*  But Plaintiff does not

5    allege that she ever acquired title to the Fund shares, whether as agent or otherwise, and it is

6    uncontested on the pleadings that Plaintiff's mother was the record owner of the Fund shares in

7    question in 2004, when the dividend reinvestments occurred on which this action is based.

8            "To meet the standing requirements of Article III, '[a] plaintiff must allege *personal*

9    *injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by

10   the requested relief.'"  *Raines v. Bird,* 521 U.S. 811, 818-19 (1997) (quoting *Allen v. Wright,* 468

11   U.S. 737, 751 (1984)) (emphasis added).  The Supreme Court has "consistently stressed that a

12   plaintiff's complaint must establish that [s]he has a 'personal stake' in the alleged dispute, and

13   that the alleged injury suffered is particularized as to [her]."  *Id.* (citing *Lujan v. Defenders of*

14   *Wildlife*, 504 U.S. 555, 560-61 & n.1 (1992)) (holding standing requires a "particularized" injury,

15   which means that "the injury must affect the plaintiff in a personal and individual way").  Plaintiff

16   here has not suffered any "personal injury" with respect to the securities that are not in her name

17   and in which she has no ownership interest.  *See Lujan,* 504 U.S. at 561 & n.1.

18           Plaintiff cites several inapposite cases in an effort to support her claim that mere

19   involvement in a purchase on behalf of another can create standing.  First, Plaintiff cites the

20   irrelevant case of *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881 (9th Cir. 2005), in which the

21   court held that an assignee with no legal or beneficial interest in a copyright cannot sue for

22   infringement under the 1976 Copyright Act.  402 F.3d at 890.  *Silvers* has nothing to do with the

23   "purchaser" requirement for claims under the Exchange Act, much less any bearing on

24   Defendants' standing argument.  Opp. at 7.  The passage Plaintiff references is actually part of the

25   dissent, and refers to a Fifth Circuit case that is also inapplicable.  *Silvers*, 402 F.3d at 906 (Bea,

26   J., dissenting) (citing *Smith v. Ayres*, 977 F.2d 946 (5th Cir. 1992)).  The plaintiff in *Smith*, who

27   owned one share of stock in a company, sued the company's general counsel for securities fraud.

28   977 F.2d at 948.  The plaintiff had not purchased his stock, however, and the one share had been

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                                    2                    REPLY SUPPORTING MOTION TO
                                                                       DISMISS FIRST AMENDED COMPLAINT
                                                                       (07-CV-0385-DMS-CAB)

1    granted to him for the sole purpose of manufacturing the appearance of standing for the claim at

2    issue. *Id.* The Fifth Circuit upheld dismissal "where the assignment appeared to have been made

3    for the purpose of creating standing and pursuing a vexatious lawsuit." *Id.* at 951. In short,

4    neither *Silvers* nor *Smith* even relates to (much less supports) Plaintiff's position.

5        Plaintiff also cites *Rubin v. United States*, 449 U.S. 424, 430 (1981), allegedly for the

6    proposition that a claim may be asserted under the securities laws without passage of full title.

7    *Rubin*, however, considered whether a pledge of stock as collateral for a bank loan may constitute

8    an "offer or sale" of the pledged stock under Section 17(a) of the Securities Act. The Supreme

9    Court held that, although the pledges "transfer less than absolute title, the interest thus transferred

10   nonetheless is an 'interest in a security'" that invokes Section 17(a). *Id.* at 429. *Rubin* does not

11   aid Plaintiff here, as it is precisely the "interest" *on the part of Plaintiff* that is lacking, as Plaintiff

12   did not have any title to the mutual fund shares at issue. Notwithstanding her mischaracterization

13   of her own allegations, Plaintiff has alleged no "personal stake" in this dispute. *Id.* Because

14   Plaintiff thus lacks Article III standing, this Court lacks jurisdiction to adjudicate this action.

15       **B.    Dividend Reinvestment By Plaintiff's Mother Does Not Confer Standing.**

16       Plaintiff lacks standing to sue under the securities laws for the independent reason that the

17   transactions in December 2004 on which the action is based were automatic reinvestments of

18   dividends to Plaintiff's mother – dividends generated by the Fund shares purchased in 2000 –

19   rather than the product of any investment decision during the alleged class period. While the

20   FAC alleges that Plaintiff "*affirmatively* elected to reinvest any dividends in December of each

21   year," FAC ¶ 11 (emphasis added), Plaintiff concedes that the annual reinvestment occurred

22   automatically, as set forth clearly in the Funds' prospectus; that it was made not in Plaintiff's

23   name, but in her mother's; and that any "election" to establish such dividend reinvestment was

24   made in 2000, when the Fund shares were purchased. RJN Exh. B at 2-3, Exh. C at 71-72. In

25   short, the only "affirmative election" that could have been made during the class period would be

26   a decision by Plaintiff's mother *not* to reinvest dividends, which did not occur. A decision to

27   "stand pat" is not a "purchase or sale" that is actionable under the securities laws. *See Blue Chip

28   Stamps v. Manor Drug Stores*, 421 U.S. 723, 749 (1975). None of the cases cited by Plaintiff

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                            3                    REPLY SUPPORTING MOTION TO
                                                              DISMISS FIRST AMENDED COMPLAINT
                                                              (07-CV-0385-DMS-CAB)

1   supports her position that her mother's automatic dividend reinvestment can confer standing.  A

2   review of the two main cases on which she relies suffices to prove the point.

3        First, Plaintiff cites *In re Alger, Columbia, Janus, MFS, One Group, Putnam Mut. Fund*

4   *Litig.*, 320 F. Supp. 2d 352 (D. Md. 2004).  *In re Alger* is multi-district litigation involving

5   alleged claims concerning mutual fund "market timing" and "late trading" practices, in which a

6   group of plaintiffs moved to remand certain of the constituent cases to state court.  *Id.*  The issue

7   before the *Alger* court was whether claims concerned misstatements or manipulative or deceptive

8   devices "in connection with the purchase or sale of [a] security" for purposes of the removal

9   provisions of the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. § 77p.  320 F.

10  Supp. 2d at 354.  Plaintiff misleadingly quotes *Alger* as stating "persons who bought shares

11  pursuant to a dividend reinvestment program during the class period are deemed to be purchasers

12  for purposes of Rule 10(b)(5) [sic]," while *omitting the word "If"* at the beginning of the quoted

13  passage, which appears in a footnote and describes a hypothetical situation in which such

14  "purchasers" might be required to be excluded from a putative state court class action in order to

15  avoid removal.  *Id.* at 354 n.3.  Furthermore, the *Alger* court, while deferring ruling on the remand

16  motion, merely stated that "a national forum should be open" to "holders of mutual fund shares

17  [who] *suffered dilution* of the value of their shares from wrongdoing in a securities market . . .

18  regardless of whether or not they purchased or sold shares during the class period."  *Id.* at 356

19  (emphasis added).  *Alger* does not address whether automatic dividend reinvestments resulting

20  from a failure to rescind an earlier election to reinvest dividends are "purchases" within the class

21  period sufficient to confer standing.

22       Plaintiff's error in quoting *Alger* could be brushed aside if it stood alone, but her

23  Opposition teems with similar blatant misquotations and mis-citations of caselaw, betraying the

24  lack of true legal support for Plaintiff's claims.  Another example is her misplaced reliance upon

25  *In re Scott Paper Co. Sec. Litig.*, 142 F.R.D. 611 (E.D. Pa. 1992).  The *Scott Paper* court

26  addressed a motion for class certification and, contrary to Plaintiff's argument (Opp. at 8),

27  *disregarded* a proposed class representative's acquisition of stock through dividend reinvestment

28  and instead focused upon that plaintiff's separate, private stock purchases during the proposed

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                    4                    REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    class period as qualifying him to be a class representative. *Id.* at 617. Plaintiff here, by contrast,

2    does not allege that she made any Fund purchases during the proposed class period. There are

3    only the automatic dividend reinvestments made in her mother's name. *Scott Paper* is completely

4    inapposite.

5         None of Plaintiff's cases are analogous to the present one. None support the notion that

6    one whose mother acquires mutual fund shares through automatic dividend reinvestment can sue

7    for securities fraud in connection with those transactions. These standing defects cannot be cured

8    by amendment. Plaintiff was well aware of these defects before filing the FAC, yet elected to

9    proceed as the sole named class representative. Since she has declined the opportunity to add or

10   substitute plaintiffs who would have standing, her FAC should be dismissed with prejudice.

11        **C.**    **Plaintiff Lacks Standing to Sue Concerning Funds She Did Not Purchase.**

12        Plaintiff purports to sue concerning twenty-four different Funds issued by the WM Trusts,

13   but alleges transactions in the name of her mother concerning only two of the Funds, both issued

14   by Defendant WM Trust I. FAC ¶¶ 2, 11. There are no dealings alleged with respect to any of

15   the twenty-two other Funds, or any Funds at all issued by Defendants WM Trust II or WM

16   Strategic Asset Management Portfolios, LLC ("WM Portfolios"). RJN Exh. B at 2-3; FAC ¶¶ 2,

17   11, 13-15. Even if Plaintiff could avoid or cure the other standing defects, she could sue only

18   concerning the two Funds actually purchased; she has no standing to assert claims with respect to

19   other Funds because she indisputably never purchased any shares in such other Funds. *See In re*

20   *Eaton Vance Corp. Sec. Litig.*, 219 F.R.D. 38 (D. Mass. 2003); *see also Vervaecke v. Chiles,*

21   *Heider & Co.*, 578 F.2d 713, 719 (8th Cir. 1978); *Goldberger v. Bear, Stearns & Co., Inc.*, Fed.

22   Sec. L. Rep. (CCH) ¶ 91,287, 2000 WL 1886605, at *1 (S.D.N.Y. Dec. 28, 2000). Actions under

23   the Securities Act or the Exchange Act may be brought *only* by purchasers or sellers of the

24   securities at issue. 15 U.S.C. § 77*l*(a); *Blue Chip Stamps*, 421 U.S. at 749; *see also In re AIG*

25   *Advisor Group Sec. Litig.,* 2007 WL 1213395, *11-12 (E.D.N.Y. Apr. 25, 2007) ("*AIG I*").

26        Contrary to Plaintiff's argument, the FAC and other facts properly before the Court on

27   Defendants' unopposed Request for Judicial Notice establish numerous crucial differences

28   between the Funds with respect to the conduct at issue. Most significantly, the up-to 0.50% fee-

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5        5        REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   sharing that "may" be paid by WM Advisors, which is the centerpiece of Plaintiff's claims,

2   indisputably applied *only* with respect to the WM Portfolios – Funds that Plaintiff never

3   purchased at all.  FAC ¶¶ 11, 33.  Both the Prospectus and the Form of Dealer Agreement clearly

4   state that this fee-sharing arrangement concerned only the WM Portfolios.  RJN Exh. C at 71,

5   Exh. D at 11.  In short, the fees about which Plaintiff principally complains did not even apply to

6   any of the Funds that her mother *ever* owned or purchased.  *Id.*  Moreover, although the Funds

7   use the same overall prospectuses, the separate portions of those prospectuses relevant to each

8   Fund make clear that the Funds have dramatically different overall investment objectives and fee

9   structures, with the necessary result that the relevance or irrelevance of any fee-sharing

10  arrangements must be evaluated on a case-by-case basis for each fund.[1]  While Plaintiff purports

11  to challenge the manner in which the Funds were marketed during the class period, she does not

12  allege that all Funds were marketed in the same manner to the same persons; nor could she.

13         For these reasons, this case is like *AIG I* and *Eaton Vance*, decisions that Plaintiff makes

14  no attempt to distinguish in which courts rejected similar attempts by others seeking to sue on

15  behalf of mutual funds that they never purchased.  This case is also fundamentally different from

16  *In re Mutual Funds Inv. Litig.*, 2007 WL 3052301 (D. Md. Oct. 19, 2007), and the general

17  standing cases of *Blum v. Yaretsky*, 457 U.S. 991 (1982), *Lewis v. Casey*, 518 U.S. 343 (1996) ,

18  and *Gratz v. Bollinger*, 539 U.S. 244 (2003), on which Plaintiff relies.  The *Mutual Funds* case

19  involved allegations of manipulative trading practices that allegedly affected all funds in a family

20  alike, and included "plausible allegations that investment advisers, traders, and brokers who

21  engaged in market timing and late trading activities caused the *same type of harm* by the *same

22  type of misconduct* to shareholders in various mutual funds within the same family of funds."  *Id.*

23  at *4.  Here, that is not the case, as the challenged fee-sharing practices indisputably were

24  materially different for different Funds and in the most significant respect did not affect the two

[1]  Each of the Funds pursues a distinct investment objective and has different essential characteristics.  *See, e.g.*, RJN Exh. C at 16, 26, 46, 75.  Importantly, the fees and operating expenses for the vast number of Funds available to investors vary considerably depending upon the particular Fund.  *Id.* at 38-44.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   Funds that Plaintiff's mother purchased at all.[2]

2          Even if Plaintiff had standing to sue based on purchases by her mother (which she does

3   not), and even if she had actually purchased Funds during the Class Period (which she did not),

4   she could still bring suit only concerning those securities actually purchased – the WM Growth &

5   Income Fund and the West Coast Equity Fund.  FAC ¶ 11.  Because Plaintiff lacks statutory

6   standing to sue with respect to the twenty-two Funds that neither she nor her mother ever

7   purchased, her claims concerning those Funds should be dismissed with prejudice.

8   **III.    PLAINTIFF'S CLAIMS ARE TIME-BARRED.**

9          Plaintiff's original alleged investment decision for her mother, to purchase the WM

10  Growth & Income and West Coast Equity Funds with a dividend reinvestment option, occurred in

11  2000.  Consequently, all claims resulting from that purchase have long since become time-barred

12  by the three- and five-year statutes of repose for claims under the Securities Act and the

13  Exchange Act, which expired no later than 2003 and 2005, respectively.

14         Even if one were to ignore the standing defect, Plaintiff's purported claims with respect to

15  dividend reinvestments during the class period are also barred by the one- and two-year notice

16  limitations periods under the Securities Act and Exchange Act.  Plaintiff and the class were on at

17  least inquiry notice (if not actual notice) as to any purported claims by no later than February 27,

18  2004.  On that date, the Funds filed their Registration Statement with the SEC *publicly disclosing*

19  the allegedly "hidden" fees paid to WMFS through publication of the Form of Dealer Agreement

20  used by the WM Trusts, and publishing the fact that such fees "may" be paid in the Prospectus

21  itself.  RJN Exhs. C at 126; D; G at 1-2.  In addition, the Funds filed a revised Registration

22  Statement on December 30, 2004, and again on February 28, 2005, broadcasting the supposedly

23  undisclosed facts relating to WMFS and revenue-sharing among Defendants, putting Plaintiff on

24  *actual* notice of her purported claims.  RJN Exhs. E at 5, F at 3-6, 8-10; G at 3-6.  Plaintiff did not

25  file suit until February 28, 2007, two years and one day after the last of these public disclosures.

26  Therefore, all of Plaintiff's claims are time-barred, and should be dismissed with prejudice.

---

[2]  Moreover, in *Blum, Lewis* and *Gratz*, the court found that the plaintiffs clearly had Article III standing, which is not the case here.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5          7          REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

A.     The Securities Act Claims Are Time-Barred.

After Plaintiff's initial purchase in 2000, all alleged transactions were limited to dividend reinvestments, not purchases or sales.  Any claims concerning the purchases in 2000 are plainly barred by the statutes of repose.  Plaintiff's allegation that she "affirmatively elected" to reinvest dividends each year following the purchase does not allow her to circumvent the limitations bar. In the Funds' dividend reinvestment program, dividends are *automatically reinvested,* unless the investor affirmatively elects *not* to do so.  RJN Exh. C at 71-72.  Even if Plaintiff "affirmatively" decided to do nothing, allowing her mother's automatic dividend reinvestment to continue, her claim would fail because Plaintiff was on notice of the facts of which she complains.[3]

Plaintiff argues at length about her alleged lack of "inquiry notice" under *Betz v. Trainer Wortham & Co., Inc.*, 504 F.3d 1017, 1024 (9th Cir. 2007) (adopting inquiry notice standard, holding "[a] plaintiff is on inquiry notice when there exists sufficient suspicion of fraud to cause a reasonable investor to investigate the matter further").  There can be no serious question, however, that the Funds' public disclosures put Plaintiff on notice at least to inquire further whether some of the fees paid to WM Advisors or WM Distributors were being shared with her mother's brokerage firm, WMFS, thus necessarily creating the "potential conflict of interest" that she complains was not disclosed.

Even if the Court were to excuse Plaintiff from noticing the contents of the Funds' SEC filings – which is fundamentally inconsistent with her claims – the "may" language in the same Prospectus that Plaintiff claims to have read (FAC ¶¶ 31-34) itself plainly alerted Plaintiff that WM Advisors and WM Distributors may pay additional fees to dealers selling the Funds such as WMFS, requiring Plaintiff to have investigated further if those matters were important to her. Minimal inquiry would have led Plaintiff to the Funds' 2004 Registration Statement (of which the Prospectus was a part), which included the specimen "Form of Dealer Agreement" between WM Distributor, WM Advisors, and broker-dealers such as WMFS, specifically disclosing the material terms under which WM Distributor and WM Advisors agreed to pay broker-dealers in

[3]    Since Plaintiff's claims are based upon purported inaction rather than action, they fail for the separate but related reason that there could not have been reliance connected to any misstatements in 2004.  *See* Section IV.D, *infra.*

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                              8                      REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   connection with sales of the Funds.  RJN Exh. D at 5-7, 11.  These public disclosures at a

2   minimum put all purchasers who might be uncertain as to the nature of WMFS' compensation on

3   inquiry notice as to the existence of additional compensation, starting the one-year statute upon

4   the date of purchase.  *Berry v. Valence Tech., Inc.*, 175 F.3d 699, 704 (9th Cir. 1999).

5          Plaintiff protests that the "Form of Dealer Agreement" was not provided to her and was

6   not part of the Prospectus or SAI (Opp. at 15-16).  It is well-settled, however, that the public

7   disclosure of information in SEC filings puts investors on notice of that information.  *See, e.g.*,

8   *Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1410 (S.D.N.Y. 1996).  This includes

9   information in a registration statement, such as the "Form of Dealer Agreement."  *See, e.g.*,

10  *Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1168 (7th Cir. 1995).  As the Seventh Circuit

11  observed in *Eckstein*, "The registration statement is a public document, well known to all of the

12  underwriters and dealers plus many of the brokers, and accessible to anyone else who wants it."

13  *Id.*  Accordingly, investors have constructive knowledge of the facts concerning purported

14  misstatements that they could look up in a registration statement.  *Id.*  Plaintiff's attempt to

15  downplay Defendants' public disclosure of the Form of Dealer Agreement simply because the

16  document's internet link has a coded name, as do all SEC filings that are publicly available

17  through the SEC's EDGAR database, falls flat.[4]  The document is clearly described as Exhibit

18  (e)(2) in Part C of the Registration Statement, RJN Exh. C at 126, and is described as "Ex-

19  99(e)(2)," one of only four exhibits to the Registration Statement, on the SEC's website.  RJN

20  Exh. G at 1.  This public record may be accessed in less than 60 seconds by anyone over the

21  internet.  Investors are properly held to notice of these matters disclosed in the Registration

22  Statement for purposes of the statutes of limitation.

23         Significantly, *Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 612 (6th Cir.

24  2005), concerned virtually identical allegations of misstatements in mutual fund sales where the

25  funds disclosed that sales personnel "may" receive certain compensation.  Unpersuaded by the

26  plaintiff's "semantic quibble" that the salespeople did, in fact, receive such compensation, the

27
    [4]   For example, *all* SEC filings by the Funds, including the Prospectus, have similar weblinks.
28        *See* RJN Exh. G.  So do the SEC filings of countless other issuers.  This does not render the
          filings or their content obscure or mysterious.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                                    9                      REPLY SUPPORTING MOTION TO
                                                                        DISMISS FIRST AMENDED COMPLAINT
                                                                        (07-CV-0385-DMS-CAB)

1    Court of Appeals observed that "the inclusion of this statement in the prospectus (which, again,

2    was not mandated by any current SEC regulation) *served to put prospective investors on notice*

3    that there was a possibility that brokers were being compensated . . . such that investors could

4    pursue that line of inquiry with their financial advisors if they were concerned about broker

5    incentives." *Id.* (emphasis added).  There should be no dispute that Defendants' similar

6    disclosures here put investors on notice for limitations purposes under *Berry* and *Betz.*

7         Plaintiff also devotes several pages to the irrelevant argument that the disclosures were not

8    "corrective" and therefore did not give notice to Plaintiff.  This misstates the standard of inquiry

9    notice.  Plaintiff was on inquiry notice no later than February 27, 2004, as explained above and in

10   the Motion.  Defendants' later disclosures did not make *corrections,* but rather provided investors

11   with additional information that Defendants had no obligation to provide in the Prospectus.[5]

12        There should be no question that all investors in the Funds were on actual notice as a

13   result of these public disclosures by December 30, 2004, of the facts constituting the alleged fraud

14   of which Plaintiff now complains.  Plaintiff was required to file suit, at the latest, on December

15   29, 2005.  She did not do so until February 28, 2007, over one year after the notice statute of

16   limitations for claims under the Securities Act had expired. Furthermore, Plaintiff's purported

17   Exchange Act claims expired no later than December 29, 2006.  Accordingly, Plaintiff's Securities

18   Act and Exchange Act claims should be dismissed with prejudice.

19   **IV.    PLAINTIFF'S CLAIMS FAIL ON THE MERITS**

20        **A.    There Is No Duty to Disclose the Allegedly Omitted Information.**

21             **1.    No Law or Rules Required the Allegedly Omitted Disclosures.**

22        Plaintiff does not dispute that the 2004 Prospectus and SAI *fully disclosed all costs* borne

23   by investors in connection with the purchase, sale, or holding of Fund shares.  *See* RJN Exh. C at

24   38-45, 78; *see also id.* at 111-18, 119-22.  There also is no dispute that the SEC's Form N-1A,

25   used for all mutual fund prospectuses and registration statements, did not require disclosure of the

26   [5]   For example, the amended Prospectus filed on February 28, 2005 explicitly states that WM
     Funds Distributor "currently provide[s] additional payments to financial intermediaries."
27   FAC ¶ 38.  The prior statements made in Defendants' Prospectuses were accurate; the
     additional statement in the 2005 Prospectus did not *correct* any prior misstatement, but simply
28   provided investors with additional information.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                    10                    REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    alleged revenue-sharing arrangements about which Plaintiff complains in this action.  *See In re*

2    *Morgan Stanley & Van Kampen Mutual Fund Sec. Litig.*, 2006 WL 1008138, *7 (S.D.N.Y.

3    2006); *see also* RJN Exh. I (2003 testimony of SEC Investment Management Division Director

4    Paul Roye).  Because the Form N-1A is designed to delineate those disclosures that the SEC

5    believes are material to investors without overwhelming them with non-essential information, the

6    necessary conclusion is that the SEC did not consider information concerning allocation of fees

7    after they are paid by a mutual fund to be material at the time of the 2004 Prospectus.  *See*

8    *Registration Form Used by Open-Ended Management Investment Cos.,* SEC Release Nos. 33-

9    7512, 34-39748, 63 Fed. Reg. 13916 (March 23, 1998), at RJN Exh. H at 2-5.

10          Grasping for any basis to challenge Defendants' compliance with the Form N-1A

11   disclosure requirements, Plaintiff contends that the "may" disclosures are not in the "clear and

12   simple" language required by the Form.  There is no merit to this argument.  Plaintiff fails to

13   identify any prolix or technical language in the complained-about disclosures, and her claim that

14   the everyday word "may" is not plain English is absurd on its face.  Opp. at 19-20.  The 2004

15   Prospectus uses the word in its ordinary sense, to indicate "likelihood or possibility."  *See*

16   American Heritage Dictionary (4th ed. 2000).  Where, as here, the payment arrangements could

17   be modified or terminated on short notice during the year in which the prospectus was to be

18   effective, the disclosure that such payments "may" be made was a clear and concise way of

19   alerting investors to the facts.  *See* RJN Exh. D at 6, ¶ 10(e); Exh. D at 11.[6]

20               **2.      Plaintiff's Rule 10b-10 Claim Fails.**

21          Contrary to her assertion, the cases Plaintiff cites in connection with her Rule 10b-10

22   claim each *expressly declined* to decide whether a private right of action exists under that Rule.

23   *See Morris v. Wachovia Sec. Inc.*, 277 F. Supp. 2d 622, 638 (E.D. Va. 2003); *Levitin v.*

24   *PaineWebber, Inc.*, 933 F. Supp. 325, 329-30 (S.D.N.Y. 1996).  No basis exists to extend the law

25   to recognize such an action here.  Even if a private right of action existed, and even if one were to

26

27   _____

     [6]   Plaintiff mis-cites *In re TCW/DW N. Am. Gov't Income Sec. Litig.*, 941 F. Supp. 326, 339
     (S.D.N.Y. 1996), supposedly for the proposition that a violation of Form N-1A "often
28   constitutes a *per se* violation" of the Securities Act and the Exchange Act.  There is no such
     holding in that case, and no mention of either Form N-1A or the Exchange Act.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                              11                     REPLY SUPPORTING MOTION TO
                                                                  DISMISS FIRST AMENDED COMPLAINT
                                                                  (07-CV-0385-DMS-CAB)

1  disregard the supposed merits of the claim (which Defendants address in their Motion), Plaintiff

2  ignores the fact that the allegations at issue *cannot* invoke Rule 10b-10.  Plaintiff did not engage

3  in a securities transaction that required generation of a transaction confirmation under Rule 10b-

4  10 during the alleged class period.  Plaintiff fails to contest that no transaction confirmation was

5  issued or required in connection with the automatic dividend reinvestments in December 2004,

6  with the result that Rule 10b-10 is inapplicable on its face.

7        **B.**      **Plaintiff Has Failed to Allege a Material Misstatement or Omission**

8                **1.**      **The Challenged Disclosures Were Not Materially Misleading**

9        The SEC's rules do not require prospectuses to include all publicly disclosed information.

10  *See* RJN Exh. L at 6-7 (Form N-1A and instructions).  As noted above, no rule required

11  disclosure of revenue-sharing arrangements in the 2004 Prospectus.

12        Here, as noted above, the statements in the 2004 Prospectus that such payments "may" be

13  made put interested investors on notice to conduct further inquiry (either by asking their broker-

14  dealer or consulting other publicly available information about the Funds) regarding the fees paid

15  to selling broker-dealers such as WMFS.  *See Benzon*, 420 F.3d at 612; *AIG I*, 2007 WL 1213395

16  at *8 n.15.  An obvious public source for additional information regarding the Funds is their 2004

17  Registration Statement, and anyone interested in the specific arrangements with broker-dealers

18  selling the Funds would turn to the Form of Dealer Agreement filed with the Registration

19  Statement.  Beyond this, the Form of Dealer Agreement *proves* the accuracy of the statements at

20  issue in the 2004 Prospectus, because the fee arrangements could be modified or terminated on

21  fifteen days' notice.  RJN Exh. D at 6, ¶ 10(e), Exh. D at 11.  The 2004 Prospectus, published in

22  February 2004, could not state with certainty what fee-sharing, if any, would be in effect with

23  WMFS in December 2004 when Plaintiff's mother's automatic dividend reinvestments occurred.

24        Even if the Court were to ignore the existence and content of the specimen Dealer

25  Agreement (as Plaintiff does), the only federal appellate court to address similar claims has

26  expressly *rejected* the notion that there is any material difference between disclosures that dealers

27  "may" receive certain incentive payments and disclosures that they "do" receive such payments.

28  *See Benzon*, 420 F.3d at 612; *see also AIG I*, 2007 WL 1213395, *8 n. 15.  As Defendants

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5             12              REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    anticipated, Plaintiff asks the Court to ignore *Benzon* and other cases holding that the difference

2    between "may" and "do" is immaterial, and relies exclusively on *Siemers v. Wells Fargo & Co.*,

3    2006 WL 2355411 (N.D. Cal. Aug. 14, 2006), to support her argument that the use of the word

4    "may" can be misleading.  Indeed, not one of the other cases on which Plaintiff relies actually

5    addresses the question at hand – whether using "may" in a disclosure regarding payments is

6    misleading if the payments were in fact occurring.[7]

7         Given her heavy reliance on *Siemers*, Plaintiff's failure to respond to Defendants'

8    explanation (at pages 24-25 of their Motion) of the important distinctions between that case and

9    this one is telling.  Contrary to Plaintiff's assertion (Opp. at 20), even cursory analysis shows that

10   the facts here are nowhere near "identical" to those in *Siemers*.  Here, unlike in *Siemers*, the

11   essential details of the alleged "hidden" arrangement were *actually disclosed* in the 2004

12   Registration Statement and the facts support the use of the word "may."  *See* RJN Exh. D (Form

13   Dealer Agreement); *Siemers*, 2006 WL 2355411 at *5-*6.  Defendants here could not possibly

14   have had a "concealed scheme" to make these publicly disclosed payments.  In *Siemers*, unlike

15   this case, the securities regulators took enforcement action, on which the plaintiffs and court

16   relied, against the Wells Fargo broker-dealers with respect to their practices at issue.  *See id.* at

17   *1-*2, *5, *8.  And the undisclosed payments that the *Siemers* court found to be potentially

18   material (1.25% per annum for equity funds, plus $21 million in directed brokerage payments) far

19   exceeded the fees that were publicly disclosed by the WM Funds at issue here (0.50% payment by

20   WM Advisors with respect to the WM Portfolios only).  *Cf. id.* at *7.[8]

---

[7]   Plaintiff's citation to *Herman & McLean v. Huddleston*, 459 U.S. 375, 381 (1983), is another
      error on her part.  That case does not address whether supposed "half-truths" can create
      liability under the securities laws.  Nor does the language quoted in Plaintiff's parenthetical
      following the citation even appear in the Court's opinion.

[8]   Plaintiff also accuses Defendants of fraud in stating that the payments at issue were made at
      the expense of WM Distributor.  Opp. at 18, 26.  She apparently concedes these statements
      were accurate, but finds fault simply because these entities' assets can be traced back to their
      separate fees charged against Fund assets (all of which were fully disclosed in the 2004
      Prospectus).  But Plaintiff fails to address the fact that the WM Distributor could choose not
      to make any revenue-sharing payments and still keep the full amount of fees it was paid by
      the Funds, and that such payments are necessarily deducted from WM Distributor's profits,
      *not* from the Funds.  *See* RJN Exh. C at 70.  The Director of the SEC Division of Investment
      Management has confirmed as much.  *See* RJN Exh. I at 7.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                          13                    REPLY SUPPORTING MOTION TO
                                                             DISMISS FIRST AMENDED COMPLAINT
                                                                  (07-CV-0385-DMS-CAB)

1    Plaintiff's contention that the "SEC opinions" relied upon by *Siemers* are persuasive

2    authority here is misplaced.  Those "opinions" were all non-litigated consent decrees arising out

3    of settlement offers, which were not ratified or reviewed by any court and were not even the

4    product of adversary proceedings.  Accordingly, they are not, and cannot be, legal precedent.  *See*

5    *In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, *5 (S.D.N.Y. 2006).[9]  Beyond this,

6    *Siemers* and the SEC consent decrees on which she relies all involved allegations of undisclosed

7    *directed brokerage* practices by mutual funds and their dealers – practices that are not at issue in

8    this case.  "Directed brokerage" practices exist when a mutual fund's advisor compensates a

9    dealer for selling fund shares *not* through a cash payment from its own pocket, but by steering

10   proportionally more of the fund's securities trading business to that particular dealer as a reward

11   for the sales, thereby allowing the dealer to charge *the fund* additional commissions for

12   performing those trades.  *See, e.g., Franklin Advisers, Inc.*, SEC Release No. 34-50841, at ¶ 8,

13   2004 WL 2884102 (Dec. 13, 2004).  Directed brokerage practices have a clear and immediate

14   impact upon mutual fund assets, because the commission payments come from the fund's assets

15   rather than from advisers or other service providers that have already collected their fully

16   disclosed fees from the fund.  Through directed brokerage practices, fund advisers may create

17   added incentives for dealers to sell their funds *without* paying anything from their own assets, and

18   without sharing any part of the fees the advisers receive.  *See id.*  Also unlike the practices at

19   issue in this case, disclosure of directed brokerage arrangements is expressly mandated by SEC

20   rules, in Item 16(c) of the Form N-1A.  *See, e.g., Putnam Inv. Mgmt., LLC*, SEC Release No. IC-

21   26788, ¶ 28, 2005 WL 673295 (Mar. 23, 2005).  In any event, only three of the SEC consent

22   decrees cited by Plaintiff and *Siemers* involved allegations of inaccurate prospectus or SAI

23   disclosures (like this case), and each of those decrees focused upon the funds' failure to disclose

24   _____

25   [9]    Plaintiff mis-cites *Simpson v. AOL Time Warner, Inc.*, 452 F.3d 1040, 1048 (9th Cir. 2006), to support her claim that "[t]o the extent the SEC considers the non-disclosure of conflicts of interest and revenue-sharing to be illegal, the SEC's position is controlling."  *See* Opp. at 21 n.20.  While the Ninth Circuit in *Simpson* noted that SEC arguments "are only persuasive authority," it *rejected* the SEC's theory of scheme liability to the extent it permitted aiding and abetting or co-conspirator liability.  452 F.3d at 1048 n.3.  *Simpson* says *nothing* about non-disclosure of conflicts of interest or revenue-sharing, and the SEC has never declared "illegal" the disclosures at issue here.  *See* RJN Exh. I at 6; *see also Benzon*, 420 F.3d at 612.

28

1   directed brokerage practices of the funds at issue. *See id.*; *Franklin Advisers*, *supra*; *In re Mass.*

2   *Fin Svcs. Co.*, SEC Release No. IC-26409, 2004 WL 635594 (Mar. 31, 2004).[10]  Plaintiff makes

3   no such claims in this case.[11]

4          Plaintiff also complains, without support, that the positioning of the disclosures was

5   insufficiently prominent.  Opp. at 22.  This argument fails given that there was no legal obligation

6   to disclose such matters in the first place.  *See* Section IV.A.1, *supra*.  Regardless, Plaintiff

7   inexcusably ignores the numerous references in the Prospectus directing investors to the

8   "Additional Information Regarding Dealer Compensation" section.  *See* RJN, Exh. C at 40, 42,

9   44, 65.  Finally, contrary to Plaintiff's assertion, the 2004 Prospectus and SAI fully disclosed that

10  WM Advisors and WM Distributor derived their income from fees charged to the Funds, from

11  which fees to dealers were then paid.  *See* RJN Exh. C at 70-71; 111-117; 119-122.

12                    **2.    Allegedly "Omitted" Information Was Not Material**

13         Plaintiff's attempt to distinguish this case from *Benzon*, 420 F.3d at 612, by urging that

14  "entire aspects" of the challenged revenue-sharing arrangements were not disclosed (Opp. at 24),

15  does not withstand scrutiny.  First, the claim that some "Advisor Paid Fee" was "not at all

16  disclosed" in the 2004 Prospectus and first appeared in 2005 (Opp. at 24-25) is disposed of by

17  Plaintiff's own allegations that the *disclosure* of such payments in 2004 was inadequate because it

18  said "WM Advisors may make payments, at its expense, to dealers or other financial

19  intermediaries at an annual rate of up to .50% of the average daily net assets of the shares of the

20  Portfolios."  FAC ¶ 33; *see* RJN Exh. C at 71, Exh. D at 11 (disclosures for 2004); RJN Exh. F at

21  9 (disclosure for 2005).  The differences in wording are immaterial given that the substance of

22  these concepts was fully disclosed in the 2004 Prospectus and Registration Statement.  *See*

---

23  [10]   Additionally, the SEC, unlike Plaintiff, was not required to prove scienter in enforcing Rule
       10b-10 where dealers made no disclosure of their directed brokerage arrangements.  *See*
24     *Morgan Stanley DW, Inc.*, SEC Release No. 34-48789, at ¶ 26.a, 2003 WL 22703073 (Nov.
       17, 2003); *see also Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 540 (9th Cir.
25     1984) (scienter required for private actions under Section 10(b) of Exchange Act).

26  [11]   Plaintiff's selective reliance on *AIG I* is misleading for the same reason (particularly given
       that she dismisses the rest of the opinion).  As Plaintiff notes, that court "disapprovingly
27     discussed AIG's use of '*directed brokerage*' to incent broker dealers to sell mutual fund
       shares."  Opp. at 23 (emphasis added).  As explained above, directed brokerage arrangements
28     are irrelevant to the case at bar.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    *Recupito v. Prudential Sec., Inc.*, 112 F. Supp. 2d 449, 457-58 (D. Md. 2000) (holding that

2    defendant's failure to use plaintiff's chosen language in disclosures was immaterial); *In re*

3    *Seagate Tech. II Sec. Litig.*, 1989 WL 222969, *4 (N.D. Cal. May 3, 1989) (same).

4            Similarly, Plaintiff has not alleged there was any <u>material</u> "*unspecified* compensation tied

5    to the length of time the Plaintiff and the Class hold their Proprietary Funds." *See* FAC ¶ 34(c)

6    (emphasis added).  There is no basis for concluding that such "unspecified" compensation, if it

7    existed at all, was material, particularly given that it would have been part of the allocation of

8    fully disclosed fees after they were charged to the Funds.  To the extent this vague allegation

9    refers to reimbursements for costs of seminars or marketing efforts, those matters *are* disclosed in

10   the 2004 Prospectus.  *See* FAC ¶ 33; RJN Exh. C at 71.  The FAC does not allege facts showing

11   these peripheral payments could have been material, and there is no dispute that such additional

12   payments amounted to only 0.03% of the average daily net assets of the Funds, making them

13   immaterial as a matter of law.  *See* Motion at 26-27.

14           Plaintiff also contends that the 2004 Prospectus' failure to discuss whether WMFS placed

15   the WM Funds on a "preferred list" was misleading.  Since each broker-dealer's practice may be

16   different, and the Funds were sold through numerous different dealers (*see* RJN Exh. F, at 10),

17   however, there would be no reason for any such disclosure to appear in the Funds' Prospectus,

18   which is the sole focus of Plaintiff's case.  Indeed, the 2005 Prospectus states only that "in some

19   cases" dealers may include the Funds on a "preferred list."  FAC ¶ 38.  Moreover, even under

20   Plaintiff's argument, the only potentially material aspect of a "preferred list" is the payment of

21   fees to the dealer supposedly so that the fund may gain admittance to the list (the so-called "shelf

22   space" or "revenue-sharing" payment).  As established at length in Defendants' Motion and

23   above, Defendants' limited fee-sharing practices were fully disclosed, even though disclosure was

24   not required.  There was nothing more of substance to disclose, and added disclosures that some

25   dealers who receive fees may maintain lists of preferred investment products would add nothing

26   material.  *Cf. Recupito*, 112 F. Supp. 2d at 458 (holding that, where material substance of a

27   particular risk was disclosed, it was not material to omit specifics underlying that risk).

28           Similarly, Plaintiff argues without analysis that the Prospectus was misleading because it

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                           16                    REPLY SUPPORTING MOTION TO
                                                              DISMISS FIRST AMENDED COMPLAINT
                                                                  (07-CV-0385-DMS-CAB)

1  did not disclose that there was an "'insurmountable conflict of interest' inherent in Shelf Space

2  Programs." The potential conflicts of interest are self-evident in the Funds' disclosures. If a

3  salesperson receives additional compensation for selling a mutual fund, he or she may prefer

4  selling that fund over others. This is a common-sense deduction that any investor can be

5  expected to understand. *See id.* at 457 (holding that the securities laws do not require

6  prospectuses to state the obvious). One might argue that *all* fees paid to a broker, including

7  brokerage commission, create potential conflicts of interest between the broker and the investor,

8  but this is obvious and needs no separate disclosure. Thus, for example, the Funds disclosed all

9  brokerage commissions paid in connection with Fund sales, but they did not have to broadcast

10  any "conflict of interest" that might have resulted – even though those sales commissions were far

11  more significant than the immaterial fee-sharing at issue in this case. *See* RJN Exh. C, at 66, 70

12  (reflecting sales charges from 2.0% to 5.5% depending on Fund and amount invested).[12]

13       Finally, Plaintiff's attack on the sale of WM Funds by WMFS is particularly ill-conceived

14  given the companies' brand affiliation. As the court held in *Castillo v. Dean Witter Discover &*

15  *Co.*, 1998 WL 342050, *9 (S.D.N.Y. 1998), with respect to sales of Dean Witter proprietary

16  funds, it should come as no surprise to investors that WMFS representatives would have reasons

17  to favor sales of WM Funds over other funds. Plaintiff fails even to address this point.

18       **C.    Plaintiff Has Failed to Plead Facts Creating a Strong Inference of Scienter.**

19       Plaintiff's scienter argument fails on multiple levels. Plaintiff improperly attempts to shift

20  the burden to the Defendants to demonstrate a strong inference of innocence. *See* Opp. at 32-33.

21  Congress has made clear, however, that it is *Plaintiff's* burden to plead facts that give rise to a

22  "strong inference" of scienter. 15 U.S.C. § 78u-4(b)(2). Plaintiff must demonstrate that the

23  inference of scienter is "more than merely 'reasonable' or 'permissible'" but rather is "cogent and

24  compelling." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007). The

[12]  Plaintiff mis-cites *Piper v. Chris-Craft Indus. Inc.*, 430 U.S. 1, 56 n.5 (1977), and *Zell v. Int'l Income Sec. Inc.*, 675 F.2d 1041, 1046 (9th Cir. 1982), for the proposition that "[a]ny intentional misappropriation from the common fund would be material to investors: a red flag, a negative risk factor of material interest." Opp. at 23-24. Even putting aside the fact that Plaintiff's citation to *Piper* is from the dissenting opinion, neither of these cases stand for that proposition or were even decided under the SEC regulations at issue in this case.

1    inference of fraudulent intent must be at least as compelling as any opposing inference of

2    innocent or merely negligent conduct.  *See id.*  Here, none of Plaintiff's allegations are sufficient

3    to give rise to the necessary strong and cogent inference of scienter.  Particularly when considered

4    in total, together with the facts shown by judicial notice, there can be no inference of fraud here,

5    much less a cogent or compelling one.  Plaintiff's Exchange Act claims accordingly must fail.

6           **1.      Plaintiff Alleges No Facts Creating a Strong Inference that any
                       Defendant's Statements Were Contradicted By Its Knowledge.**

7
             Plaintiff's principal scienter argument erroneously assumes what it sets out to prove, that
8
     Defendants' public statements were contradicted by their then-present knowledge.  The fact that
9
     the WM Trusts knew that WM Advisors' and WM Distributor's revenue-sharing arrangements
10
     with WMFS could change quickly during the effective period of the 2004 Prospectus shows that
11
     the Funds' knowledge at the time of the Prospectus was in complete accord with the statements
12
     that such payments "may" be made.  *See* RJN, Exh. D.
13
             Courts may draw a strong inference of scienter under such circumstances only where a
14
     statement is so obviously false or misleading that it would be highly unreasonable to have made it
15
     in light of present knowledge without realizing it was false or misleading.  *See In re Silicon*
16
     *Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 976 (9th Cir. 1999).  The Form of Dealer Agreement
17
     illuminates the matter, showing that the use of "may" cannot be said to be unreasonable at all,
18
     much less highly unreasonable.  Even had there been no such disclosure, other decisions finding
19
     the difference between "may" and "does" in this context to be a "semantic quibble" preclude any
20
     finding that the use of "may" was so obviously false or misleading as to give rise to a strong
21
     inference of scienter.  *See Benzon*, 420 F.3d at 611-12.[13]
22
             Similarly, there can be no strong inference of scienter in statements that the payments
23
     were made at WM Distributor's expense, as even the SEC Director in charge of Investment
24
     Management characterizes the payments in this manner.  *See* RJN, Exh. I at 7 (explaining that
25

---

[13]  Plaintiff's footnoted claim that Defendants "do not dispute the fact that the Investment
26        Advisor Fee [sic] was *never terminated* until the sale of the . . . Funds" in 2007 (Opp. at 22
          n.21, emphasis in original) is disingenuous in the extreme.  Defendants had no basis to dispute
27        this supposed "fact" because Plaintiff has *not* made any such allegation.  What is more, any
          claim that the challenged fees remained unchanged would be false, and Plaintiff cannot allege
28        otherwise consistent with Rule 11 of the Federal Rules of Civil Procedure.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    revenue-sharing payments "are not a fund expense because they are made from the adviser's own

2    resources, rather than fund assets").

3         To the extent Plaintiff's scienter argument is based on supposed omissions (rather than

4    misstatements), it fails because there is and was no obvious duty to disclose the allegedly omitted

5    information; nor were any alleged omissions obviously material, such that Defendants must have

6    known of the need to disclose them. *See Silicon Graphics*, 183 F.3d at 976.  There was no

7    express duty to disclose the revenue-sharing arrangements in the 2004 Prospectus.  More

8    significantly, Defendants' *public disclosure* of the Form of Dealer Agreement utterly demolishes

9    any inference, that Defendants intended to conceal its contents or their significance.  "It cannot be

10   conscious misbehavior or recklessness for a defendant to fail to disclose in a prospectus

11   information that is neither material nor required to be disclosed under applicable SEC

12   regulations." *See In re Morgan Stanley & Van Kampen*, 2006 WL 1008138, *11 (quoting *Geiger*

13   *v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1191 (S.D.N.Y. 1996)).  At a minimum, the

14   alleged omissions are not so clearly material as to support an inference of scienter from the mere

15   fact of them, as Plaintiff urges. *See Silicon Graphics*, 183 F.3d at 976.

16        Other than her faulty motive argument, Plaintiff can only attempt to plead "fraud by

17   hindsight" based upon the WM Trusts' more detailed prospectus disclosures in 2005, after "the

18   revenue sharing scandals and SEC enforcement actions in late 2004."  Opp. at 30.  As pointed out

19   in Defendant's Motion, that the WM Trusts modified their disclosures later says nothing about

20   their state of mind regarding the 2004 Prospectus when it was issued.  Plaintiff was required to

21   allege facts creating a strong inference that the WM Trusts knew or must have known that the

22   statements were materially misleading *when the statements were made*.

23        Finally, the facts alleged support the inference that the Funds found it appropriate to

24   provide further details about revenue-sharing arrangements in the 2005 Prospectus due to the

25   significant newfound regulatory attention to mutual fund revenue-sharing disclosures in 2004, *see*

26   FAC ¶ 50, and a newly proposed SEC rule (which has still not been adopted) that could change

27   disclosure requirements in this area, *see* FAC ¶ 6; RJN Exh. K.[14]  Given the undisputed evolving

---

[14]    Importantly, the SEC's proposed new disclosure rule was merely a proposal, then and now.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                                    19                         REPLY SUPPORTING MOTION TO
                                                                        DISMISS FIRST AMENDED COMPLAINT
                                                                              (07-CV-0385-DMS-CAB)

1   nature of disclosure standards during this time period, there is no basis for inferring an equally

2   cogent and compelling inference of fraud on the part of any Defendant.

3           **2.      Plaintiff's Motive Allegations Do Not Create an Inference of Scienter.**

4           Allegations of motive and opportunity, without more, are insufficient to give rise to a

5   strong inference of scienter.  *See Silicon Graphics*, 183 F.3d at 974.  Plaintiff has nothing more

6   here, and her motive allegations themselves are contradicted by the facts alleged and those subject

7   to judicial notice.  First, Plaintiff's argument that a motive to reap the supposed "vast amount of

8   additional income received by the WAMU fund companies" supports scienter (Opp. at 31) makes

9   no sense.  WMFS' economic motive to sell shares of the Funds was fully disclosed in the 2004

10  Prospectus, and it is axiomatic that other Defendants' compensation would increase with

11  additional sales.  *See* RJN Exh. C at 70-71; 111-117; 119-122.  Thus, these allegations must be

12  rejected.  *See Castillo*, 1998 WL 342050, *10.  Second, the challenged practices could not have

13  directly increased revenue to "the WAMU fund companies," since all they did was allocate

14  payments between service providers *after* all fees were fully disclosed and paid by the Funds.

15  The total amount of revenue necessarily did not change.  Third, Defendants' public disclosure of

16  the payments belies the notion that Defendants had a motive to keep them secret.  Under

17  Plaintiff's nefarious hypothesis of fraudulent intent, Defendants would have said nothing in the

18  Prospectus about the payments at issue, and certainly would never have placed the details of these

19  arrangements in the Form of Dealer Agreement that was filed in the public record and made

20  available over the internet.  In short, the only inference supported by the facts is that Defendants

21  had no motive to keep these payments secret.  Plaintiff's scienter argument fails.

22          **D.      Plaintiff Has Failed to Plead "Transaction Causation"**

23          Plaintiff argues that she pled transaction causation, or reliance, because she alleged that

24  she would not have purchased the Funds had she known about the revenue-sharing arrangements.

25  *See* FAC ¶ 57; *see also* Opp. at 26.  As Defendants explained, however, Plaintiff's conclusory

26  claim to this effect is contradicted by her allegation that her (or, more accurately, her mother's)

27

28  The rule has no force of law and cannot support a securities fraud claim.  *See In re Merrill
    Lynch & Co., Inc. Research Reports Sec. Litig.*, 289 F. Supp. 2d 429, 437 (S.D.N.Y. 2003).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                                      20                    REPLY SUPPORTING MOTION TO
                                                                         DISMISS FIRST AMENDED COMPLAINT
                                                                         (07-CV-0385-DMS-CAB)

1    only acquisition of WM Funds shares during the putative class period was through an *automatic*

2    dividend reinvestment that would have occurred regardless of whether she was actively

3    monitoring her mother's account.  *See* Motion at 33; RJN Exh. C at 71-72.  Plaintiff does not

4    contest this.  Where the acquisition was made automatically, without any decisionmaking

5    required by Plaintiff, it is not possible to plead reliance.[15]  Accordingly, Plaintiff cannot allege a

6    necessary element of her Section 10(b) claims.  *See Binder v. Gillespie*, 184 F.3d 1059, 1065 (9th

7    Cir. 1999).[16]

8    **V.    PLAINTIFF HAS FAILED TO PLEAD DAMAGES OR LOSS CAUSATION**

9        **A.    Plaintiff Has Not Alleged Damages to Support the Securities Act Claims.**

10       The parties agree that the Securities Act permits Plaintiff to recover only for depreciation

11   in the subject security's value.  *See* Opp. at 27.  There is no dispute that there can be no claim for

12   damages under the Securities Act where the Funds have instead appreciated in value between the

13   time of acquisition during the Class Period and the present (or the time when such Funds were

14   sold).  *See In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d at 867; *see also In re*

15   *Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1204 (9th Cir. 2002).  Plaintiff does *not*

16   allege that the Funds allegedly acquired during the class period depreciated in value at all

17   between then and the time when they were sold (nor could she).  Instead, Plaintiff repeats the

18   allegations in her FAC without analysis, to support her contention that she has stated damages to

19   support her Securities Act claims.  The language she quotes, however, fails to support that the

20   Fund shares purchased depreciated in value in any way so as to allow the potential for damages

21   under Sections 11 and 12(a) of the Securities Act.[17]  Plaintiff also does not dispute that the two

22   WM Funds purchased by Plaintiff's mother generally increased in value during and after the

23

---

24   [15]  Defendants do not merely contend that Plaintiff's claims are inappropriate for class treatment.
     As demonstrated, Plaintiff herself is incapable of alleging transaction causation due to the
     manner in which *she (or her mother)* allegedly acquired Fund shares during the class period.

25   [16]  Plaintiff also fails to respond to Defendants' contention that she has failed to plead a basis for
     scheme liability.  Accordingly, she concedes this point as well.

26   [17]  "[T]he only damages recoverable under Sections 11 and 12(a)(2) are based on price
     differentials."  *See In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d at 867.  Mutual fund share

27   prices are determined by a fund's "net asset value" ("NAV"), which is calculated by
     subtracting the fund's liabilities, such as all fees and commissions, from its assets.  FAC ¶ 54;

28   *In re Morgan Stanley & Van Kampen*, 2006 WL 1009138 at *9 (describing NAV formula).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                    21                    REPLY SUPPORTING MOTION TO
                                                       DISMISS FIRST AMENDED COMPLAINT
                                                       (07-CV-0385-DMS-CAB)

1    dividend reinvestments in December 2004.  RJN Exhs. M, N.  This should end the inquiry.  Since

2    this defect clearly cannot be cured by amendment, the Securities Act claims should be dismissed

3    with prejudice.

4            **B.       Plaintiff Has Not Alleged Loss Causation on the Exchange Act Claims.**

5            Plaintiff argues that she is not required to show a drop in price to establish loss causation

6    for her Exchange Act claims.  Nonetheless, she must plead that the "the defendants'

7    misstatements or omissions were 'the reason the transaction[s] turned out to be losing . . . one[s]."

8    See *Arduini/Messina P'ship v. Nat'l Med. Fin. Servs. Corp.*, 74 F. Supp. 2d 352, 360 (S.D.N.Y.

9    1999) (quoting *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172 (2nd Cir. 1999)).[18]  Plaintiff has

10   not even pled a money-losing transaction, much less linked a loss to the alleged misstatements.

11           As Defendants' Motion and RJN establish, only the total fees paid to WM Advisors and

12   WM Distributor impacts the Funds' net asset value, or "NAV".[19]  Plaintiff has not alleged, and

13   cannot allege, that the fees paid to WM Advisors and WM Distributor were inaccurately or

14   incompletely disclosed.  *See* RJN, Exh. C at 70-71, 117, 122.  Thus, regardless of whether or not

15   the 2004 Prospectus expressly detailed how WM Advisors and WM Distributor *spent* their

16   revenue after taking it in, and regardless of whether the challenged fee-sharing arrangements were

17   in place, *the NAV would not change*.  Accordingly, Plaintiff has no basis to plead loss causation

18   on these facts.  *See In re Salomon Smith Barney Mut. Fund Fees Litig.*, 441 F. Supp. 2d 579, 589-

19   91 (S.D.N.Y. 2006) (holding that plaintiff could not plead loss causation where the total fees were

20

21   [18]  Plaintiff's quotation from *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005),
     inaccurately suggests that courts should be lenient in requiring plaintiffs to plead facts relating
22   to loss causation, by omitting the rest of the quoted passage, which reads:

23   "We concede that ordinary pleading rules are not meant to impose a great burden on a
     plaintiff.  But it should not prove burdensome for a plaintiff who has suffered an economic
24   loss to provide a defendant with some indication of the loss and the causal connection that the
     plaintiff has in mind.  At the same time, allowing a plaintiff to forgo giving any indication of
25   the economic loss and proximate cause that the plaintiff has in mind would bring about harm
     of the very sort the statutes seek to avoid."  *Dura*, 544 U.S. at 347.

26   [19]  Plaintiff contends that she is not challenging the allocation of fees, but instead is challenging
     that she was paying fees "for which she received no corresponding benefit."  *See* Opp. at n.23.
27   This is a distinction without a difference.  As set forth herein, her complaint is about what
     WM Advisors and WM Distributor did with their fees after they were deducted from the
28   Funds (and fully disclosed to investors) – in other words, how they chose to allocate the fees.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                              22                    REPLY SUPPORTING MOTION TO
                                                                 DISMISS FIRST AMENDED COMPLAINT
                                                                 (07-CV-0385-DMS-CAB)

1  disclosed in the mutual fund prospectus).  Loss causation in this context requires Plaintiff to

2  allege that the Funds would have performed better had there been more disclosure of incentive

3  payments, rather than simply pleading that her mother allegedly would not have purchased the

4  Funds had she known the facts (transaction causation).  On its face, her argument that the "net

5  assets of the Proprietary Funds would have been greater" without the revenue-sharing payments

6  cannot support loss causation.  *See* Opp. at 28.

7      Further, Plaintiff's reference to the "churning" cases does not help her loss causation

8  argument.  In churning claims – which are plaintiff-specific and typically inappropriate for class

9  action treatment – a plaintiff is directly damaged because the transaction fees paid exceed those

10  expected based on a broker's disclosures.  In those cases, the broker's intent to trade an account

11  excessively – thereby generating higher fees – is concealed.  The case Plaintiff cites, *Nesbit v.*

12  *McNeil*, 896 F.2d 380 (9th Cir. 1990), involved a claim by an investor who was *not* apprised at

13  the outset of the relationship of the total commissions that she would ultimately pay to her broker.

14  Rather, over time, as the broker engaged in excessive trading, the commissions grew to be more

15  than was appropriate for proper management of the account.  *See id.* at 384-85.  In such churning

16  cases, the misstatement or omission is causally related to the loss caused by the excessive fees.

17      As stated above, here, Plaintiff cannot dispute that the total fees paid to WM Advisors and

18  WM Distributor (and thus all fees paid from fund assets) were fully disclosed.  Because the Funds

19  disclosed the total amount of fees at issue, Plaintiff's alleged omissions relate to how these fees

20  were allocated and are *not* related to the Funds' value or their performance.  In sum, Plaintiff's

21  churning analogy is fatally flawed and should be rejected.

22  **VI.  PLAINTIFF'S "CONTROL PERSON" CLAIMS MUST FAIL.**

23      Plaintiff argues that Defendants WMFS, Principal, Principal Fund, and Principal

24  Distributor are secondarily liable under Section 15 of the Securities Act and Section 20(a) of the

25  Exchange Act because these Defendants allegedly controlled those who committed primary

26  violations.  At the outset, these "control person" claims must be dismissed because Plaintiff has

27  not adequately alleged a primary violation.  *See Paracor Finance, Inc. v. General Electric*

28  *Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996); *In re Copper Mountain Sec. Litig.*, 311 F.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5    23    REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   Supp. 2d 857, 883 (N.D. Cal. 2004). The control person claims also fail because Plaintiff has not

2   pleaded them with the particularity that Rule 9(b) and the PSLRA require.

3          Plaintiff asserts that actual control and culpable participation need not be pleaded with

4   particularity in the Ninth Circuit (Opp. at 35), but she cites no appellate decisions on this point.

5   Indeed, many courts – both within the Ninth Circuit and throughout the country – have held that

6   particularized pleading is required. *See, e.g.*, *Howard v. Hui*, No. C 92-3742, 2001 WL 1159780,

7   *4 (N.D. Cal. Sept. 24, 2001) (requiring plaintiffs to meet the particularity requirement of Rule

8   9(b) when pleading the control relationship); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, No. C

9   99-00109, 2000 WL 1727405, *15 (N.D. Cal. Sept. 29, 2000) (same); *In re Oak Technologies*

10  *Sec. Litig.*, No. 96-20552 SW, 1997 WL 448168, * 15 (N.D. Cal. Aug. 1, 1997) (dismissing

11  control person claims because plaintiffs failed to plead control relationship with particularity as

12  required by Rule 9(b) and the PSLRA); *In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 561-

13  62 (D. Del. 2002) (same); *In re Yukos Oil Co. Sec. Litig.*, No. 04-5243, 2006 WL 3026024, *23

14  (S.D.N.Y. Oct. 25, 2006) (requiring that plaintiffs plead the "culpable participation" element of

15  control person claims with particularity); *Lapin v. Goldman Sachs Group, Inc.*, 506 F. Supp. 2d

16  221, 246–47 (S.D.N.Y. 2006) (same); *Waldock v. M.J. Select Global, Ltd.* , No. 03-C-5293, 2005

17  WL 3542527, *6 (N.D. Ill. Dec. 27, 2005) (requiring plaintiffs to plead the control relationship

18  with particularity); *In re Emex Corp. Sec. Litig.*, No. 01-Civ-4886, 2002 WL 31093612, *9-*10

19  (S.D.N.Y. Sept, 18, 2002) (holding that the "culpable participation" element "is subject to the

20  PLSRA's heightened pleading requirements); *Rich v. Maidstone Financial, Inc.*, No. 98-Civ-

21  2569, 2001 WL 286757, *8 (S.D.N.Y. March 23, 2001) (holding that a "bare allegation of

22  'control status'" is insufficient to state a control person claim).[20]

23         Plaintiff's meager effort to plead control – for example, "WAMU was a 'control person'

24  . . . by virtue of its position of operational control and/or ownership," FAC ¶¶ 121-23 – is

25  _____

26  [20]  Plaintiff claims that the cases supporting her position (Opp. at 35) trump the California district court decisions cited in the Motion because Defendants' cases are not published. (Meanwhile, the majority of cases Plaintiff cites elsewhere in her brief are similarly not

27  published in official reports.) The significant point, however, is that the reasoning of *Hui* and its many companion cases that apply the strict pleading standards of the PSLRA to the

28  control issue is correct and should be followed here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5        24       REPLY SUPPORTING MOTION TO
DISMISS FIRST AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

insufficiently particularized, and the Section 15 and 20(a) claims therefore must be dismissed.

Finally, the "Principal Defendants" – Principal, Principal Investors Fund, and Principal Funds Distributor – are named because they supposedly are successors to other alleged control entities. However, Plaintiff does not even make a competent allegation of the first step of this argument. Specifically, Plaintiff in no way alleges that the Principal Defendants acquired or merged with WMI or WMFS, which are (inadequately) alleged to have control person liability. *See* FAC ¶¶ 22-24. Moreover, Plaintiff has not adequately pleaded that the "Registrants" allegedly acquired by the Principal Defendants (WM Trusts and WM Portfolios) were themselves control persons, and thus has provided no reason to impose control person liability on the Principal Defendants as alleged successors to those entities. *See* FAC ¶¶ 90-97, 117-23. The Section 15 and 20(a) claims against the Principal Defendants should therefore be dismissed.

## VII.   <u>CONCLUSION</u>

For the foregoing reasons, the First Amended Complaint should be dismissed, with prejudice and without leave to amend.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
MICHAEL J. LAWSON, SBN 66547
JOSEPH E. FLOREN, SBN 168292
LISA A. FREITAS, SBN 227109
SHEILA A. JAMBEKAR, SBN 239101
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
Email: michael.lawson@morganlewis.com
      jfloren@morganlewis.com
      lfreitas@morganlewis.com
      sjambekar@morganlewis.com


By: _____/s/_____
        Joseph E. Floren

Attorneys for Defendants Washington Mutual, Inc. and WM Financial Services, Inc.


DATED:  December 20, 2007

O'MELVENY & MYERS LLP
PHILLIP R. KAPLAN, SBN 76949
MARCUS S. QUINTANILLA, SBN 205994
ANDREW R. ESCOBAR, SBN 249242
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660-6429
Tel:  949.760.9600
Fax:  949.823.6994
Email: pkaplan@omm.com
      mquintanilla@omm.com
      aescobar@omm.com


By: _____/s/_____
        Phillip R. Kaplan

Attorneys for Defendants WM Advisors, Inc., WM Distributor, Inc., Edge Asset Management, Inc., Principal Financial Group, Inc., Principal Investors Fund, Inc., Principal Funds Distributor, Inc., WM Trust I, WM Trust II, and WM Strategic Asset Management Portfolios LLC


DATED:  December 20, 2007

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1-SF/7637918.5                                                          25                        REPLY SUPPORTING MOTION TO
                                                                                                 DISMISS FIRST AMENDED COMPLAINT
                                                                                                 (07-CV-0385-DMS-CAB)