# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ M. ZAPIEN, Individually And On Behalf Of All Others Similarly Situated,, <br><br> Plaintiffs, <br><br> vs. <br><br> WASHINGTON MUTUAL, INC., WM TRUST I, WM TRUST II, WM STRATEGIC ASSET MANAGEMENT PORTFOLIOS, LLC, WM FINANCIAL SERVICES, INC., WM ADVISORS, INC., WM FUNDS DISTRIBUTOR, INC., EDGE ASSET MANAGEMENT, INC., PRINCIPAL FINANCIAL GROUP, INC., PRINCIPAL INVESTORS FUND, INC., PRINCIPAL FUNDS DISTRIBUTOR, INC., <br><br> Defendants. | CASE NO. 07cv385 DMS (CAB) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |

This matter comes before the Court on Defendant's motion to dismiss Plaintiff's First Amended Complaint (FAC). The motion was fully briefed by the parties, and the Court heard oral argument on January 11, 2008. Howard Finkelstein appeared for Plaintiff and Phillip Kaplan and Joseph Floren appeared for Defendants. Defendants' motion to dismiss is granted for the reasons set forth below.

## I.

## BACKGROUND

This FAC alleges a class-action securities fraud perpetrated by Defendants against Plaintiff.

Defendants are a group of entities related to Washington Mutual, Inc. ("WMI"), allegedly involved to varying degrees in a sale of mutual funds (the "Proprietary Funds") to Plaintiff.

Plaintiff alleges she is a "novice investor" who purchased $5,000 of shares, units, or like interests of Defendant's Proprietary Funds in 2000. (FAC ¶ 11). Plaintiff allegedly used her money to purchase the shares, but purchased them in the name of her mother, Maria Carmen Higareda. (*Id.*) Plaintiff alleges she affirmatively elected to automatically reinvest dividends earned, (FAC ¶ 11; RJN Exh. C at 71-72),[1] and that the dividends were reinvested each December from 2000 through 2004. (FAC ¶ 11, RJN Exh. B at 2-3). In particular, the dividend reinvestment of December 2004 is at issue in this case.[2] Plaintiff claims to represent a class of persons "who purchased or otherwise acquired shares, units or other like interests of any of the Proprietary funds...between March 1, 2004 and March 1, 2005." (FAC ¶ 2).

Plaintiff alleges Defendants gave buying advice based upon financial incentives, including "millions of dollars in kickbacks from other [Washington Mutual] Fund Companies" to sell their Proprietary Funds without properly notifying buyers of these incentives. (*Id.* ¶ 1). In particular, the prospectuses published in March each year from 2000-2004 indicated that the distributor of funds "may receive" financial incentives of this type. (*Id.* ¶ 31, 33). Plaintiff alleges this is a "materially misleading statement" because Plaintiff was not told Defendant Washington Mutual Funds Services ("WMFS") "in fact" received compensation in the form of revenue sharing and other non-cash incentives for selling the Proprietary Funds. (*Id.* ¶ 32). According to Plaintiff, these disclosures "lead a reasonable investor to believe that the revenue sharing kickback and incentive programs may or may not exist, when in truth, [Defendant] WM Advisors and/or [Defendant] WM Funds Distributor had

---

[1] The FAC alleges "Plaintiff Zapien affirmatively elected to reinvest any dividends in December of each year, and did in fact reinvest all dividends derived from the Proprietary Funds back into additional shares, units, or other like interests of the Proprietary funds in December of each year." (FAC ¶ 11). This allegation could be interpreted two ways. Plaintiff's subsequent pleadings intimate without specifically stating that Plaintiff made a separate, affirmative decision each year. Defendants argue that Plaintiff made a decision to reinvest annual dividends only once, in 2000. (RJN, Ex. C, at 72). Regardless, it is undisputed that the owner of the funds retained the option to *cease* reinvesting each year, and this was never done.

[2] The December 2004 reinvestment is the only purchase of funds that Plaintiff alleges she made during the proposed class period of March 1, 2004 and March 1, 2005. (FAC ¶ 66). The parties appear to agree that this dividend reinvestment is the subject of this action. (Opp. at 11, Reply at 3).

*already* entered into pre-determined, specific, and negotiated arrangements for participation in the [incentives.]" (*Id.* ¶ 37).

In contrast, in March, 2005, the prospectus explicitly set forth the incentive program and explained why it might create a conflict of interest. (*Id.* ¶ 38). Plaintiff claims this change demonstrates acknowledgment that the incentives are material to any reasonable investor. (*Id.* ¶ 39).

Plaintiff alleges these facts give rise to six claims for relief: (1) Material Misrepresentation; (2) Violations of Section 12(a) of the Securities Act (15 U.S.C. § 77*l*(a)); (3) Violations of Section 15 of the Securities Act (15 U.S.C. § 77o), against WMI as the "control person" of the other WM Entities; (4) Violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5); (5) Violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-10 promulgated thereunder (17 C.F.R. § 240.10b-10), against WMFS; (6) Violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t) against WMI as a "control person."

Defendants argue the FAC in its entirety should be dismissed for five reasons: (1) Plaintiff lacks constitutional and statutory standing to bring this action; (2) Plaintiff's claims under both the Securities Act and the Exchange Act are time-barred; (3) Plaintiff's claims fail on the merits; (4) Plaintiff has failed to plead damages or loss causation; and (5) Plaintiff's "controlling person" claims fail.

The Court grants Defendants' motion for the reasons set forth below.

### III.

### LEGAL STANDARD

When ruling on a motion to dismiss a an action brought pursuant to Exchange Act § 10(b), the court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___ U.S. ___, 127 S.Ct. 2499, 2509 (2007). The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions, in particular, documents incorporated into the complaint by reference, and matters of which the court

may take judicial notice."³ *Id.* at 2509. Dismissal is appropriate under Rule 12(b)(6) when the complaint fails to plead sufficient facts stating a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

Article III of the United States Constitution places the burden on Plaintiff to plead facts showing "[s]he has a personal stake in the alleged dispute, and that the alleged injury suffered is particularized as to [her]." *See Raines v. Bird*, 521 U.S. 811, 819 (1997). In securities cases, when considering whether a plaintiff purporting to represent a class has standing, "the courts have manifested a marked degree of restraint." *La Mar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 469 (9th Cir. 1973). *See also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991) (collecting cases, and noting, "[s]trict standing requirements are particularly important in the area of securities litigation to curb the risks of vexatious litigation and abuse of discovery.")

In addition, the Securities Act and the Exchange Act both promulgate statutory standing requirements. To sustain Plaintiff's Securities Act claims, Plaintiff must allege she is a "person purchasing" the security from a person selling or offering a security in violation of certain provisions of the Security Act. 15 U.S.C. § 77*l*(a). Additionally, "[i]n order to maintain a private action under Section 10(b) and Rule 10b-5 [of the Exchange Act], a plaintiff must be an actual purchaser or seller of securities who sustained a loss as a result of the alleged misrepresentations by the defendant." *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. at 1531, *citing Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737-38 (1975).

## IV.
## DISCUSSION

Defendants first argue that Plaintiff does not have standing to bring this lawsuit because Plaintiff initially purchased the funds in her mother's name. Standing, however, is conferred by statute upon purchasers or sellers of the property, regardless of the identity of the record owner. Since the FAC alleges Plaintiff was the purchaser of the shares in 2000, Plaintiff has properly alleged standing to sue under the Securities and Exchange Acts for any misrepresentations made at the time of the

---

³ Defendants requested that the Court take judicial notice of several publicly filed documents and recently enacted legislation. As the request is unopposed, and the Court agrees judicial notice of Defendants' attached exhibits is proper, the Court takes judicial notice of these documents..

initial purchase in 2000.

Even if Plaintiff was the purchaser of shares in 2000, Defendant correctly points out that under the relevant statute of limitations Plaintiff may no longer bring a claim arising out of the initial purchase in 2000. First, the Securities Act requires a plaintiff to bring a claim "by the earlier of (a) three years from the date the parties in the offering obligate themselves to perform, in the case of a Section 12(a)(2) claim..., or three years from the date of the initial registration statement, in the case of a Section 11 claim..., or (b) one year from the date on which they are put on actual or constructive notice of the facts underlying the claim." 15 U.S.C. § 77m. Claims for violations of Rules 10b-5, and 10b-10 of the Exchange Act are generally governed by a five year limitation that begins running at the time of the violation, or a two year limitation from the date on which Plaintiff first had actual or inquiry notice of the facts underlying the alleged fraud. 28 U.S.C. § 1658(b). Regardless of which statute of limitations applies, the statute of limitations on the initial purchase of 2000 has clearly expired.

Plaintiff argues that since she "affirmatively elected to reinvest any dividends in December of each year," (FAC ¶ 11), and specifically in December of 2004, the automatic reinvestment constitutes a "purchase" that is not time barred and confers standing under the Securities Act and Exchange Act. The Court agrees that the reinvestment is a purchase that confers standing on the person who reinvested the funds. *Deutschman v. Beneficial Corp.*, 761 F. Supp. 1080, 1087 (D. Del. 1991) ("The courts appear to agree that participants in automatic dividend reinvestment programs meet the threshold requirement of standing to bring suit pursuant to the federal securities laws."). As for the statute of limitations, the parties disagree about the year in which the dividend reinvestment purchase occurred. Defendants argue it occurred in 2000 when Plaintiff made the initial decision to purchase the stock without declining the automatic reinvestment provision. (Reply at 3). Plaintiff argues the purchase took place in December, 2004, when the dividends were actually reinvested. (Opp. at 11). The Court agrees with Plaintiff. A purchase occurs when the investor "incur[s] an irrevocable liability to take and pay for the stock." *Blau v. Ogsbury,* 210 F.2d 426, 427 (2d Cir. 1954). When, as here, the owner of the fund has the option to cease reinvesting each year, courts have treated dividend reinvestments as a series of purchases, each occurring at the time of the reinvestment. *See, e.g.*

*Deutschman*, 761 F. Supp. at 1087.

However, since the purchase at issue occurred in December, 2004, Plaintiff could not have been the purchaser of those securities purchased through reinvestment. The FAC indicates Plaintiff's *mother* was the record owner of the Proprietary Funds, and was therefore the record owner of the dividends funding the reinvestment. (FAC ¶ 11, Opp. at 8). Although Plaintiff now argues Plaintiff was the "beneficial owner" of such Funds (Opp. at 7), no such allegation appears in the FAC, and Plaintiff has presented no judicially noticeable documents indicating she retained or was given beneficial ownership of the Proprietary Funds. Even if Plaintiff had properly alleged beneficial ownership, Plaintiff has pointed the Court to no case indicating the original purchaser *or* beneficial owner of the Funds has standing to bring suit when the purchase at issue was funded entirely by property titled to someone other than Plaintiff. Plaintiff has therefore not met her burden to establish standing.

At oral argument, Plaintiff conceded the standing argument and requested leave to add or substitute her mother as lead plaintiff, and to plead additional facts. The Court agrees that leave to amend is appropriate under the circumstances.

## IV.

## CONCLUSION

Although Plaintiff established standing as a "purchaser" of the Proprietary Funds in 2000, the statute of limitations has expired on that purchase. While the 2004 dividend reinvestment does constitute a purchase that took place in December 2004, the FAC fails to allege Plaintiff funded that purchase. Plaintiff does not have standing to bring a claim arising out of a purchase she did not make. As this discussion is dispositive, the Court declines to address Defendants' other arguments. Defendant's motion is therefore GRANTED without prejudice. Plaintiff is granted leave to amend the FAC to conform to the representations made at oral argument. The Second Amended Complaint shall be filed within 20 days of this order being stamped "filed."

**IT IS SO ORDERED.**

1 | DATED: January 17, 2008

HON. DANA M. SABRAW
United States District Judge