1   **FINKELSTEIN & KRINSK LLP**
Jeffrey R. Krinsk (State Bar No. 109234)
2   Mark L. Knutson (State Bar No. 131770)
William R. Restis (State Bar No. 246823)
3   501 West Broadway, Suite 1250
San Diego, California 9210-3579
4   Telephone: (619) 238-1333
Facsimile: (619) 238-5425

5

Attorneys for plaintiffs
6   Luz. M. Zapien and Maria Carmen Higareda

7

8                   **UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**
9                         **AT SAN DIEGO**

10

11   LUZ M. ZAPIEN, and MARIA CARMEN   )   Case No. 3:07-cv-00385-DMS-CAB
HIGAREDA, Individually And On Behalf Of All  )
12   Others Similarly Situated,   )
   )
13   )   **SECOND AMENDED CLASS ACTION**
   Plaintiff,   )   **COMPLAINT FOR VIOLATION OF**
14   )   **THE FEDERAL SECURITIES LAWS**
   )
15   v.   )
   )
16   )
   WASHINGTON MUTUAL, INC., WM TRUST I, )
17   WM  TRUST  II,WM  STRATEGIC  ASSET  )   **JURY TRIAL DEMANDED**
   MANAGEMENT  PORTFOLIOS,  LLC,  WM  )
18   FINANCIAL SERVICES, INC., WM ADVISORS,  )
   INC., WM FUNDS DISTRIBUTOR, INC., EDGE  )
19   ASSET  MANAGEMENT, INC.,  PRINCIPAL  )
   FINANCIAL  GROUP,  INC.,  PRINCIPAL  )
20   INVESTORS FUND, INC., PRINCIPAL FUNDS  )
   DISTRIBUTOR, INC.,   )
21   )
   Defendants.   )
22   )
   )
23   )

24

25

26

27

28

1    Plaintiffs Luz M. Zapien and Maria Carmen Higareda ("Plaintiffs"), by and through
2  counsel, allege the following based upon the investigation of counsel, which included, inter alia, a
3  review of United States Securities and Exchange Commission ("SEC") filings, other regulatory
4  filings, reports, and advisories, press releases, and media reports about Washington Mutual, Inc.,
5  ("WAMU, Inc.") and Principal Financial Group, Inc. ("Principal") and their related entities also
6  named herein as defendants. Plaintiffs believe that substantial additional evidentiary support will
7  exist for the allegations set forth herein after a reasonable opportunity for discovery.

8  **I. INTRODUCTION**

9    1.    This is a federal class action that seeks to recover damages under the Securities
10  Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act")[1]
11  for defendants' failure to disclose payments by the WM Group of Funds'[2] investment advisor to
12  broker/dealers selling the WM Group of Funds' (the "WAMU Funds") as required by law.  Such
13  undisclosed payments were part of a comprehensive "steering" program devised by defendants'
14  highest management that was intended to, and did, compromise the objectivity of broker / dealers
15  in their dealing with customers and created insurmountable, undisclosed conflicts of interest.

16

17    [1] Plaintiffs allege violations of Section 11 of the Securities Act (15 U.S.C. § 77k, *material*
18  *misrepresentation or omission in registration statement*) against the Registrants and Principal
    Investors Fund; Section 12(a) of the Securities Act (15 U.S.C. § 77(l), *untrue statement or omission*
19  *in prospectus*) against the Registrants, the WAMU Distributor, WMFS and Principal Defendants;
    and Section 15 of the Securities Act (15 U.S.C. §  77o, *control person liability Securities Act*)
20  against WAMU, Inc. and WAMU Advisor.  Plaintiffs also allege violations of Section 10(b) of the
21  Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5, *manipulative / deceptive*
    *artifice to defraud - false / misleading statement*) by the Registrants and Principal Investors Fund;
22  and violations of Section 10(b) and Rule10b-10 promulgated thereunder (17 C.F.R. § 240.10b-10,
    *failure by dealer to disclose remuneration*) against WMFS;  and violations of Section 20(a) of the
23  Exchange Act (15 U.S.C. § 78t, *control person liability Exchange Act*), by WAMU, Inc., the WAMU
24  Advisor, and WAMU Distributor.

25    [2] The WAMU Funds, as described in this complaint are: Money Market, Tax-Exempt Money
    Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT, Small Cap
26  Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock, California Money,
    Short Term Income, California Municipal, California Insured Intermediate Municipal, Growth,
27  International Growth, Small Cap Growth, Strategic Growth, Conservative Growth, Balanced,
28  Conservative Balanced, and Flexible Income.

1    2.    Defendants WM Trust I, WM Trust II, and WM Strategic Asset Management
2  Portfolios, LLC (collectively the "Registrants") are the issuers of the WAMU Funds. Each year
3  during the relevant time period, the Registrants jointly filed a registration statement with the SEC
4  that failed to disclose the above payments and resulting conflicts of interest.

5    3.    Each month during the relevant time period, Plaintiffs and the Class[3] paid
6  "management fees" that were debited from their investment principal in the WAMU Funds to the
7  Funds' investment advisor, defendant WM Advisors, Inc. (the "WAMU Advisor"). Such
8  "management fees" were ostensibly to compensate the WAMU Advisor for its expertise in making
9  investment decisions for the WAMU Funds, and provide value to Plaintiffs and the Class by
10  increasing investment returns. Undisclosed to Plaintiffs and the Class, from at least March 1, 2000
11  through March 1, 2005, greater than fifty percent of such "management fees" were then diverted
12  from the WAMU Advisor to all broker/dealers (including defendant WM Mutual Financial Services,
13  Inc., *i.e.*, "Brokers") to sell those WAMU Funds most profitable to the Advisor.

14    4.    The WAMU Advisor annually paid each respective Broker an undisclosed
15  "Advisor Paid Fee" calculated as 75 basis points (0.75 percent) of such WAMU Funds' assets
16  sold/managed by the particular Broker. Specifically, each Broker was paid 75 basis points ("BP")
17  of such WAMU Fund assets sold in a particular year, plus a 75 BP residual commission of the
18  *market value of* all such WAMU Fund assets sold in previous years. The Advisor Paid Fee was paid
19  to Brokers *in addition to* and *separate from* an ongoing 25 BP Rule 12b-1[4] commission. The
20  resulting incentive was enormous and created undisclosed material conflicts of interest for the
21  Registrants, the WAMU Advisor, and Brokers selling the WAMU Funds.

22

23    [3] As detailed in paragraph 86 of this Complaint, the Class is defined as: All persons or
24  entities that purchased or otherwise acquired shares, units or like interests in any of the WAMU
    Funds (including through the reinvestment of Fund dividends), on or before, at least, March 1, 2005,
25  or such other class, classes or periods of time as the Court deems appropriate.

26    [4] A "12b-1 fee" is an extra fee charged mutual fund investors for marketing and selling fund
    shares, including compensating brokers and paying for advertising. 12b-1 fees are authorized by SEC
27  Rule 12b-1, which provides that an investment company may "engage[] directly or indirectly in
    financing any activity which is primarily intended to result in the sale of shares" **only** pursuant to a
28  Rule 12b-1 plan. 17 C.F.R. § 270.12b-1.

1    5.    The existence of the Advisor Paid Fee was highly material. For example, in fiscal

2    year 2004 alone, the WAMU Advisor paid Brokers approximately $67,000,000 in Advisor Paid Fees

3    for which Plaintiffs and the Class received no benefit. If not improperly deducted from the WAMU

4    Funds, the money representing the Advisor Paid Fee would have remained in the WAMU Funds'

5    respective investment pools to grow and compound over time. Regardless of whether the WAMU

6    Funds increased or decreased in value, Plaintiffs and the Class' investment principal was

7    continuously drained to pay conflicted Brokers the Advisor Paid Fee.

8    6.    The Registrants' deceived Plaintiffs and the Class into believing that the

9    "management fees" paid to the WAMU Advisor were for actual investment advice or similar

10    valuable services. In fact, such fees were merely a cover to funnel the Advisor Paid Fees to incurably

11    biased Brokers. Absent the hundreds of millions of dollars in Advisor Paid Fees, Plaintiffs and the

12    Class' total amount of "management fees" deducted from their investment, and thus the resulting

13    diminution of the WAMU Funds' Net Asset Value ("NAV"), would have been substantially less.

14    7.    In addition to the Advisor Paid Fee, the Registrants' relevant Prospectuses and

15    statements of additional information ("SAI") failed to disclose that the WAMU Advisor and/or

16    defendant WM Funds Distributor, Inc. (the "WAMU Distributor") paid Brokers to place the WAMU

17    Funds on "preferred list(s)" of mutual funds. These "preferred list(s)" caused Brokers to principally

18    recommend to clients only those listed funds, regardless of their appropriateness or the availability

19    of superior alternatives.

20    8.    The undisclosed Advisor Paid Fee and "preferred list(s)" (jointly the "Steering

21    Programs") caused Brokers to give predetermined, biased recommendations to the detriment of

22    Plaintiffs and the Class. The Registrants' hid the existence and true nature of the Steering Programs,

23    knowing that if the truth were revealed, no reasonable investor would invest in the WAMU Funds.

24    9.    While promoting the WAMU Funds to Plaintiffs and the Class, Brokers (including

25    defendant WM Financial Services, Inc., the "WMFS") benefitting from the Steering Programs

26    represented them as being better than other funds available.  Plaintiffs and the Class were led to

27    believe that Brokers were recommending the WAMU Funds based on objective criteria indicating

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1   that such Funds would perform better than other investment alternatives. However, Brokers' advice

2   and services relative to the WAMU Funds was neither objective nor its basis properly disclosed.

3   10.    The Registrants' annual Prospectuses from, at least, 2000 to 2004[5] completely

4   failed to disclose that "management fees" deducted from all WAMU Funds were used to pay Brokers

5   the Advisor Paid Fee. The Registrants' 2000 through at least, 2004 Prospectuses also failed to

6   disclose that "preferred lists" existed and were similarly used to steer Plaintiffs and the Class into

7   the WAMU Funds. The relevant Prospectuses provided inadequate, fragmentary and incomplete

8   disclosure, representing only that unspecified compensation "may", "from time to time" be made to

9   Brokers. In truth, the WAMU Advisor and Distributor had *already* entered into formulated, specific,

10  negotiated arrangements with Brokers providing for payment of the Advisor Paid Fee and use of

11  "preferred list(s)".

12  11.    WAMU's practices as described herein were particularly egregious given the

13  nature of clients that were defrauded. A typical mutual fund investor is an unmarried, middle-class

14  individual in his or her forties with a median household income of $55,000. Approximately 98% of

15  mutual fund shareholders state their investments constitute their long-term savings and about 77%

16  cite retirement savings as their primary financial goal.[6] **A 1% annual fee, by way of example,**

17  **reduces an ending account balance by 17% on an investment held for 20 years.**[7] The Registrants

18  duty to state *all* facts necessary to make their affirmative statements not misleading was accordingly

19  all the more compelling because the mutual fund market requires very clear disclosure

20  understandable to the layman.

21

22

23     [5] The relevant prospectuses had effective dates of March 1, 2000; March 1, 2001; March 1,

24  2002; March 1, 2003; and March 1, 2004 (collectively the "Prospectuses").

25     [6] David J. Carter, *Mutual Fund Board and Shareholder Action*, 3 VILL. J. & INV. MGM'T at
    8.

26

27     [7] *Testimony of Arthur Levitt, Chairman U.S. Securities and Exchange Commission, before
    House Subcommittee on Finance and Hazardous Materials, Committee on Commerce, Concerning
28  Transparency in the United States Debt Market and Mutual Fund Fees and Expenses,* Sept. 29,
    1998, available at 1998 WL 717068 at 7.

12.     The SEC has long recognized that partial or non-disclosure of incentive arrangements with Brokers for the sale of select mutual funds create conflicts of interest and violate the anti-fraud provisions of the federal securities laws.[8] The Deputy Director of the SEC's Division of Enforcement recently stated that "undisclosed receipt of revenue sharing payments from a select group of mutual fund families create[s] a conflict of interest. When customers purchase mutual funds, they should be told about the *full nature and extent* of any conflict of interest that may affect the transaction."[9] (emphasis added).

## II.  SUBSTANTIVE ALLEGATIONS

### A.      Rule 12b-1 Plans

13.     Section 12(b) of the Investment Company Act of 1940 (the "1940 Act") outlawed open-ended investment companies such as the Registrants from acting as their own broker-dealers, but authorized the SEC to prescribe rules and regulations governing the circumstances mutual funds may bear the expenses of selling, marketing and advertising shares. 15 U.S.C. § 80a-12(b). By 1980, the mutual fund industry prevailed on the SEC to make an important exception to this restriction, found in SEC Rule 12b-1. 17 C.F.R. § 270.12b-1.

14.     Rule 12b-1 reflected a sharp change in SEC policy by permitting mutual funds to bear distribution-related expenses under *limited circumstances* provided certain conditions are met. The requirements of the Rule are triggered whenever a mutual fund engages in financing "any activity which is primarily intended to result in the sale" of its shares, including "advertising, **compensation of** underwriters, **dealers, and sales personnel**, the printing and mailing of prospectuses to other than current shareholders, and the printing and mailing of sales literature." 17 C.F.R. § 270.12b-1(a)(2) (emphasis added).

---

[8] *See*, Confirmation Requirements and Point of Sale Disclosure Requirements for Transactions in Certain Mutual Funds and Other Securities, and Other Confirmation Requirement Amendments, and Amendments to the Registration Form for Mutual Funds, 69 Fed.Reg. 6438, at 6440 (Feb. 10, 2004).

[9] SEC Press Release, Edward Jones to Pay $75 Million to Settle Revenue Sharing Charges, at http://www.sec.gov/news/press/2004-177.htm.

1    15.    Rule 12b-1 allows distribution related expenses, *i.e.,* payments to Brokers, only
2  pursuant to a "12b-1 Plan". Any other payments to Brokers are outlawed by Section 12(b) of the
3  1940 Act. The 12b-1 Plan must be written, and describe "all material aspects of the proposed
4  financing and distribution" of the mutual fund's shares. 17 C.F.R. § 270.12b-1(b). Such Plan must
5  be approved by a majority of the fund's board of directors, including a majority of the disinterested
6  directors. Id. at § 270.12b-1(b), (c). The Plan must also be approved by a majority of the fund's
7  outstanding voting shares. Id The plan may be implemented or continued "only if the directors who
8  vote to approve such implementation or continuation conclude, in the exercise of reasonable business
9  judgment and in light of their fiduciary duties under state law and under sections 36(a) and (b)(15
10  U.S.C. 80a-35 (a) and (b)) of the [1940] Act, that there is a reasonable likelihood that the plan will
11  benefit the company and its shareholders." Id. at § 270.12b-1(e).

12    16.    SEC Form N1-A sets forth the requirements for information that must be contained
13  in offering prospectuses and statements of additional information. Form N1-A requires mutual fund
14  companies to disclose in their prospectuses all fees paid pursuant to 12b-1 Plans, including a
15  description of all principal activities for which payments are made, and an itemized list of amounts
16  paid to Brokers. Form N1-A requires additional 12b-1 data to be supplied in a fund's SAI. Copies
17  of 12b-1 Plans must be exhibits to the registration statements.

18    17.    Although Rule 12b-1 does not limit the amount that a fund's shareholders may be
19  charged under such a plan, the National Association of Securities Dealers ("NASD", now the
20  Financial Industry Regulatory Authority "FINRA") has limited Rule 12b-1 fees to a maximum of
21  **one quarter of 1%** of a fund's average daily net assets per year. NASD Rule 2830(d)(5).

22    **B.    The Registrants' 12b-1 Plan**

23    18.    The Registrants enacted a 12b-1 Plan that continued from year to year. During the
24  relevant time period, the Registrants' ratified the Plan on March 6, 2001, filed as an exhibit to the
25  Registrants' December 28, 2001 registration statement, and again on February 20, 2003 as exhibit
26  to the March 1, 2003 WAMU Funds' registration statement.

27

28

1   19.   Pursuant to the 12b-1 Plan, the Registrants charged "12b-1 fees" against the assets
2   of all WAMU Funds. The amount and purpose of such 12b-1 fees were listed in the WAMU Funds'
3   Prospectuses and SAIs during all relevant times.

4   20.   Pursuant to the Registrants' 12b-1 Plan, the WAMU Distributor paid Brokers a
5   25 BP, 12b-1 commission (the *maximum allowed* by NASD Rule 2830(d)(5)) on all sales of the
6   WAMU Funds, as well as a 25 BP residual 12b-1 commission on all past sales.

7   **C.   The Advisor Paid Fee**

8   21.   In addition to "12b-1 fees", Plaintiff and the Class had "management fees" and
9   separately, "other expenses" charged against their interests in the WAMU Funds. However, neither
10   the Registrants, nor the WAMU Advisor or Distributor could use such "management fees" or "other
11   expenses" for compensation to Brokers without being in violation of Section 12(b) of the 1940 Act,
12   because such fees were not within the scope of the Registrants' 12b-1 Plan. In addition, since the
13   Registrants 12b-1 commissions to Brokers were already 25BP, no additional compensation could
14   be paid to Brokers without being in violation of NASD Rule 2830(k).

15   22.   However, as detailed below, the Registrants, with material assistance from the
16   WAMU Advisor and/or Distributor sought to, and did circumvent the limitations of Section 12(b)
17   of the 1940 Act, and Rule 12b-1 promulgated thereunder, by making payments to Brokers of 75 BP,
18   *in addition to* and *separate* from the Registrants' 12b-1 Plan.

19   23.   During the relevant time period there were 24 WAMU Funds issued by the
20   Registrants pursuant to joint Prospectuses. Registrants WM Trust I and WM Trust II issued 18 of
21   the 24 WAMU Funds;[10] Registrant WAMU Portfolio issued the remaining six (a subset of the
22   WAMU Funds denominated herein the "WAMU Portfolio Funds").[11] The WAMU Portfolio Funds

23

---

24   [10] The 18 WAMU Funds issued by WM Trust I and WM Trust II are: Money Market, Tax-
25   Exempt Money Market, U.S. Government Securities, Income, High Yield, Tax-Exempt Bond, REIT,
       Small Cap Value, Equity Income, Growth & Income, West Coast Equity, Mid Cap Stock, California
26   Money, Short Term Income, California Municipal, California Insured Intermediate Municipal,
       Growth, International Growth, Small Cap Growth.
27

28   [11] The six WAMU Portfolio Funds issued by WAMU Portfolio are: Conservative Growth,
       Balanced, Conservative Balanced, and Flexible Income.

1  invest exclusively in securities of the other 18 WAMU Funds. Mutual funds that invest in other
2  mutual funds are commonly called "fund-of-funds".

3      24.     Because the WAMU Portfolio Funds invest directly in other WAMU Funds, the
4  WAMU Advisor is essentially paid twice to do the same investment management. Specifically, the
5  Portfolio Funds' shareholders directly pay "management fees" (and other fees) to the WAMU
6  Advisor, and indirectly pay "management fees" against the underlying WAMU Funds comprising
7  the Portfolio. For the WAMU Portfolio Funds, the WAMU Advisor is permitted to "double-dip" on
8  fees, and investment in Portfolio Fund shares correspondingly increases investment in all WAMU
9  Funds.

10     25.     The WAMU Advisor paid the undisclosed 75BP Advisor Paid Fee to Brokers as
11  described above for selling WAMU *Portfolio* Funds because such Funds generated the most profit
12  for the WAMU Advisor, Distributor and ultimately, control person defendant WAMU Inc. However,
13  the Portfolio Funds paid *65* BP to the WAMU Advisor in "management fees", 10BP *less* than the
14  Advisor Paid Fee. In essence, the WAMU Advisor improperly inflated its "management fees" for
15  *all* WAMU Funds as a scheme to channel investors into the WAMU Portfolio Funds, increase assets
16  under management, and therefore increase fee income. Plaintiffs and the Class all paid inflated
17  "management fees" to the Advisor, and received nothing for their money.

18     26.     Payment of the Advisor Paid Fee was not made pursuant to the Registrants' March
19  6, 2001, or February 20, 2003 12b-1 Plan even though such Advisor Paid Fee fell within the scope
20  of Rule 12b-1. In addition, payment of the Advisor Paid Fee was not "approved by a vote of at least
21  a majority of the outstanding voting securities" of the WAMU Funds. *See* 17 C.F.R. § 270.12b-
22  1(b)(1). **In short, the Advisor Paid Fee was illegal under Section 12(b) of the 1940 Act.**

23     27.     The WAMU Advisor is responsible for formulating the WAMU Funds' investment
24  policies, analyzing economic trends, monitoring each WAMU Fund's investment performance and
25  reporting to the Registrants' Board of Trustees. The Registrants authorized the WAMU Advisor to
26  debit "management fees" from WAMU Funds assets, ostensibly for managing the day-to-day
27  investment decisions of the WAMU Funds. However, the WAMU Advisor was merely a conduit for
28  passing the preponderant part of such "management fees" to Brokers.

1   28.   The WAMU Advisor owes fiduciary duties to Plaintiffs and the Class concerning

2   the receipt of compensation from the WAMU Funds. This fiduciary duty requires, at least, that the

3   WAMU Advisor not charge "management fees" to create a kickback slushfund that compromises

4   Brokers' investment advice.

5   29.   Plaintiffs and each of the Class members purchased shares or other ownership

6   units in the WAMU Funds pursuant to a registration statement and Prospectus. The registration

7   statements and Prospectuses pursuant to which Plaintiffs and the other Class members purchased

8   their shares or other ownership units in the WAMU Funds had effective dates of: March 1, 2000,

9   March 1, 2001, March 1, 2002, March 1, 2003 and/or March 1, 2004.

10   **D.   Misleading Statements And Omissions**

11   30.   Prospectuses and their Statements of Additional Information ("SAI"s) are required

12   to disclose all material facts in order to provide investors with information that will assist them in

13   making an informed decision about whether to invest in a mutual fund. The law requires that such

14   disclosures be in straightforward and easy to understand language such that it is readily

15   comprehensible to the average investor.

16   31.   In the March 1, 2000, March 1, 2001, March 1, 2002 and March 1, 2003 WAMU

17   Funds Prospectuses, the Registrants made the following materially false and misleading statements:

18   The Distributor may, from time to time, pay to other dealers, in connection with retail
    sales or the distribution of shares of a Portfolio or Fund, material compensation in the
19   form of merchandise or trips. Salespersons, including representatives of WM
    Financial Services, Inc. (a subsidiary of Washington Mutual), and any other person
20   entitled to receive any compensation for selling or servicing Portfolio or Fund shares
    may receive different compensation with respect to one particular class of shares over
21   another, and **may receive additional compensation or other incentives for selling
    Portfolio or Fund shares**.

22   (emphasis added).

23   32.   Plaintiffs and members of the Class were entitled to and did receive the

24   Registrants' March 1, 2000, March 1, 2001, March 1, 2002 and March 1, 2003 Prospectuses, each

25   of which failed to disclose the following material facts:

26

27

28

1  (a)  WAMU Inc., the Registrants, the WAMU Advisor and WAMU Distributor had

2  adopted the Steering Programs to incent Brokers to aggressively push the WAMU Funds on

3  unsuspecting investors;

4  (b)  the Steering Programs described herein created insurmountable conflicts of interest

5  between Registrants, the WAMU Advisor and WAMU Distributor and Brokers;

6  (c)  Brokers in fact received 75BP payments in the form of Advisor Paid Fees, and fees

7  for placing the WAMU Funds on "preferred lists";

8  (d)  the Advisor Paid Fee was paid not only when Brokers made an initial sale of the

9  WAMU Portfolio Funds, but was paid every year as a residual commission on past sales as well;

10  (e)  the "management fees" paid out of all WAMU Funds to the WAMU Advisor were

11  the source of the Advisor Paid Fee;

12  (f)  the Advisor Paid Fee was **illegal** under Section 12(b) of the 1940 Act because not

13  authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. § 270.12b-1);

14  (g)  the Advisor Paid Fee was *three times* the allowable commission to Brokers under

15  NASD Rule 2830(d)(5), and was in addition to the maximum 25 BP 12b-1 commission paid to

16  Brokers;

17  (h)  Brokers selling the WAMU Funds were in fact paid valuable consideration for

18  placing the WAMU Funds on "preferred lists";

19  (i)  Brokers selling the WAMU funds were in fact paid valuable compensation tied

20  to the length of time Plaintiffs and the Class hold their WAMU Funds;

21  (j)  the Steering Programs created undisclosed incentives to push shares or other

22  ownership units of the WAMU Funds to the exclusion of other investment alternatives;

23  (k)  the only investment advantage associated with WAMU Funds was almost always

24  an advantage to the Registrants, the WAMU Advisor, WAMU Distributor and Brokers, all at the

25  expense of Plaintiffs and the Class; and

26  (l)  pursuant to the wrongful Steering Programs described herein, defendants

27  benefitted financially at the expense of Plaintiffs and members of the Class.

28

1  33.  In the March 1, 2002, and March 1, 2003 WAMU Funds' Statement of Additional

2  Information, filed with the registration statement containing the March 1, 2002, and March 1, 2003

3  WAMU Funds' Prospectuses, the Registrants made the following materially false and misleading

4  statements:

5  In **determining to approve the most recent annual extension of the Trusts'**
**investment advisory agreement with the Advisor (the "Advisory Agreement")**
6  **... the Trustees met over the course of the Trusts' last fiscal year with the**
**relevant investment advisory personnel and considered information** provided by
7  the Advisor and the Sub-advisors relating to the education, experience and number
of investment professionals and other personnel providing services under the
8  Advisory Agreement and each Sub-advisory Agreement.

9  * * *

10  The Trustees evaluated the records of the Advisor and Sub-advisors with respect to
regulatory compliance and compliance with the investment policies of the Portfolios
11  and Funds. **The Trustees also evaluated the procedures of the Advisor and each**
**Sub-advisor designed to fulfill their fiduciary duties to the Portfolios and Funds**
12  **with respect to possible conflicts of interest, including the codes of ethics of the**
**Advisor** and each of the Sub-advisors (regulating the personal trading of its officers
13  and employees (see "Codes of Ethics" above under "Management")) the procedures
by which the Advisor allocates trades among its various investment advisory clients,
14  **the integrity of the systems in place to ensure compliance with the foregoing and**
**the record of the Adviser and the Sub-advisors in these matters**.

15  * * *

16
17  **Based on the foregoing, the Trustees concluded that the fees to be paid the**
**Advisor and the Sub-advisors under the Advisory Agreement and each Sub-**
**advisory Agreement were fair and reasonable,** given the scope and quality of the
18  services rendered by the Advisor and the Sub-advisors.

19  34.  Plaintiffs and members of the Class were entitled to and did receive the

20  Registrants' March 1, 2002, and March 1, 2003 Prospectuses, each of which failed to disclose the

21  following material facts:

22  (a)  The WAMU Advisor had material conflicts of interest with Plaintiffs and the Class

23  as to its receipt of "management fees" because such fees were used to fund the Advisor Paid Fee;

24  (b)  The Registrants' "evaluat[ion] of the procedures of the Advisor ...designed to

25  fulfill their fiduciary duties to the Portfolios and Funds with respect to possible conflicts of interest"

26  was inadequate, non-existent and/or contrived;

27
28

1    (c)    The "fees paid to the Advisor ... under the Advisory agreement" were not fair nor

2    reasonable because such fees were materially inflated due to the Advisors' payment of the illegal

3    Advisor Paid Fee;

4    35.    In the March 1, 2004 WAMU Funds SAI, the Registrants made statements

5    identical to those described in paragraph 33 above, which were materially false and misleading

6    because they omitted the material facts described in paragraph 34 above. Plaintiffs and members of

7    the Class were entitled to and did receive the Registrants' March 1, 2004 WAMU Funds SAI.

8    36.    In the March 1, 2004 WAMU Funds Prospectus, the Registrants made the

9    following materially false and misleading statements:

10    **WM Advisors may make payments, at its expense, to dealers or other financial
      intermediaries at an annual rate of up to 0.50% of the average daily net assets**
11    **of shares of the Portfolios.[ ¶ ]**

12    The Distributor, at its expense, may provide additional compensation to dealers.
      These payments generally represent a percentage of a qualifying dealer's sales and/or
13    the value of shares of the Portfolios or Funds within a qualifying dealer's client
      accounts. ... [¶]

14

15    Salespersons, including representatives of WM Financial Services, Inc. (a subsidiary
      of Washington Mutual), and any other person entitled to receive any compensation
      for selling or servicing Portfolio or Fund shares ... **may receive additional**
16    **compensation or other incentives for selling Portfolio or Fund shares**. (emphasis
      added).

17

18    37.    Plaintiffs and members of the Class were entitled to and did receive the

19    Registrants' March 1, 2004 Prospectus, which failed to disclose the following material facts:

20    (a)    WAMU Inc., the Registrants, the WAMU Advisor and WAMU Distributor had

      adopted the Steering Programs to incent Brokers to aggressively push the WAMU Funds on
21
      unsuspecting investors;
22
      (b)    the Steering Programs described herein created insurmountable conflicts of interest
23
      between Registrants, the WAMU Advisor, WAMU Distributor and Brokers;
24
      (c)    the statement that Brokers received "up to 0.50% of the average daily net assets
25
      of shares of the Portfolios" was false as Brokers received **75BP** (0.75%) payments in the form of
26
      Advisor Paid Fees;
27

28

1    (d)    the Advisor Paid Fee was paid not only when Brokers made an initial sale of the

2    WAMU Portfolio Funds, but was paid every year as a residual commission on past sales as well;

3    (e)    the "management fees" paid out of all WAMU Funds to the WAMU Advisor were

4    the source of the Advisor Paid Fee;

5    (f)    the Advisor Paid Fee was **illegal** under Section 12(b) of the 1940 Act because not

6    authorized or paid for pursuant to the Registrants 12b-1 Plan (17 C.F.R. § 270.12b-1);

7    (g)    the Advisor Paid Fee was *three times* the allowable commission to Brokers under

8    NASD Rule 2830(d)(5)), and was in addition to the maximum 25 BP 12b-1 commission paid to

9    Brokers;

10    (h)    Brokers selling the WAMU Funds were in fact paid valuable consideration for

11    placing the WAMU Funds on "preferred lists";

12    (i)    Brokers selling the WAMU funds were in fact paid valuable compensation tied

13    to the length of time Plaintiffs and the Class hold their WAMU Funds;

14    (j)    the Steering Programs created undisclosed incentives to push shares or other

15    ownership units of the WAMU Funds to the exclusion of other investment alternatives;

16    (k)    the only investment advantage associated with WAMU Funds was almost always

17    an advantage to the Registrants, the WAMU Advisor, WAMU Distributor and Brokers, all at the

18    expense of Plaintiffs and the Class; and

19    (l)    pursuant to the wrongful Steering Programs described herein, defendants

20    benefitted financially at the expense of Plaintiffs and members of the Class.

21    38.    The disclosures above lead a reasonable investor to believe, at best, that the

22    Steering Programs *may* or *may not* exist, when in truth, the WAMU Advisor and/or WAMU

23    Distributor had *already* entered into pre-determined, specific, and negotiated arrangements with

24    Brokers to steer Plaintiffs and the Class into the WAMU Funds pursuant to the Advisor Paid Fee and

25    "preferred list(s)". The Registrants had the duty to state *all* facts that were necessary to make their

26    affirmative statements not misleading.

27    39.    On December 30, 2004, the Registrants' filed with the SEC a revised registration

28    statement containing the March 1, 2005 prospectuses for the WAMU Funds. However, unlike

1    previous years, the Registrants' March, 1, 2005 registration contained separate prospectuses for the

2    WAMU Portfolio Funds and other 18 WAMU Funds. The December 30, 2004 filing was a *draft*,

3    and had an effective date of March 1, 2005. The final version of the two prospectuses contained in

4    the Registrants' December 30, 2004 filing were not disseminated to Plaintiffs and members of the

5    Class until, at least, March 1, 2005. The draft March 1, 2005 WAMU *Portfolio* Funds' prospectus

6    contained in the December 30, 2004 filing stated:

7    WM ADVISORS ALSO OFFERS REVENUE SHARING PAYMENTS, REFERRED
     TO AS AN "ADVISOR PAID FEE" TO ALL FINANCIAL INTERMEDIARIES
8    WITH ACTIVE SELLING AGREEMENTS WITH THE DISTRIBUTOR. THE
     ADVISOR PAID FEE IS PAID AT AN ANNUAL RATE OF UP TO 0.50% OF THE
9    AVERAGE NET ASSETS OF CLASS A AND CLASS B SHARES OF THE
     PORTFOLIOS SOLD THROUGH SUCH INTERMEDIARIES AND AN ANNUAL
10   RATE OF UP TO 0.25% OF THE AVERAGE NET ASSETS OF CLASS C
     SHARES OF THE PORTFOLIOS SOLD THROUGH SUCH INTERMEDIARIES.
11   THESE PAYMENTS ARE MADE FROM WM ADVISORS' PROFITS AND MAY
     BE PASSED ON TO YOUR INVESTMENT REPRESENTATIVE AT THE
12   DISCRETION OF HIS OR HER FINANCIAL INTERMEDIARY FIRM. THESE
     PAYMENTS MAY CREATE AN INCENTIVE FOR THE FINANCIAL
13   INTERMEDIARIES AND/OR INVESTMENT REPRESENTATIVES TO
     RECOMMEND OR OFFER SHARES OF THE PORTFOLIOS OVER OTHER
14   INVESTMENT ALTERNATIVES.

15   In addition to the commissions paid at the time of sale, ongoing payments and the
     Advisor Paid Fee, some or all of which may be paid to financial intermediaries (and,
16   in turn, to your investment representative), the Distributor and its affiliates, at their
     expense, currently provide additional payments to financial intermediaries that sell
17   shares of the Portfolios for distribution services and educational support. Although
     payments made to each qualifying financial intermediary in any given year may vary,
18   it will generally not exceed the sum of (a) XX% of the current year's sales of Portfolio
     shares by that financial intermediary and (b) XX% of average daily net assets
19   attributable to Portfolio shares that financial intermediary over the year. These sums
     include payments to reimburse directly or indirectly the costs incurred by these
20   financial intermediaries and their associated investment representatives in connection
     with educational seminars and training and marketing efforts related to the WM Group
21   of Funds for the firms' employees and/or their clients and potential clients. The costs
     and expenses associated with these efforts may include travel, lodging, entertainment
22   and meals. For 2004, the Distributor's additional payments to these firms for
     distribution services and educational support related to the WM Group of Funds was
23   approximately [0.xx]% of the average monthly assets of the WM Group of Funds, or
     approximately $[xxxxxx].

24   ... In some cases, financial intermediaries will include the WM Group of Funds on a
25   "preferred list." The Distributor's goals include making the investment representatives
     who interact with current and prospective investors and shareholders more
26   knowledgeable about the WM Group of Funds so that they can provide suitable
     information and advice about the Portfolios and related investor services.

27   IF ONE MUTUAL FUND SPONSOR MAKES GREATER DISTRIBUTION
28   ASSISTANCE PAYMENTS THAN ANOTHER, YOUR INVESTMENT

---

1   REPRESENTATIVE AND HIS OR HER FINANCIAL INTERMEDIARY MAY
    HAVE AN INCENTIVE TO RECOMMEND ONE FUND COMPLEX OVER
2   ANOTHER. SIMILARLY, IF YOUR INVESTMENT REPRESENTATIVE OR HIS
    OR HER FINANCIAL INTERMEDIARY RECEIVES MORE DISTRIBUTION
3   ASSISTANCE FOR ONE SHARE CLASS VERSUS ANOTHER, THEN THEY
    MAY HAVE AN INCENTIVE TO RECOMMEND THAT CLASS. (emphasis
4   added).

5       40.     The Registrants' explicit disclosure of the Advisor Paid Fee and "preferred list(s)",

6   is in stark contrast to previous purported "disclosures" as described above. The detail provided in

7   the draft March 1, 2005 WAMU *Portfolio* Funds prospectus demonstrated the Registrants'

8   acknowledgment that the Steering Programs are material to any reasonable investor. However, such

9   draft registration statement did not contain similar disclosures in the draft prospectus for the other

10  18 WAMU Funds. The draft registration statement failed to disclose the following material facts:

11      (a)     the Advisor Paid Fee was not made from the WAMU Advisor's profits as the

12  inflated "management fees" paid out of **all** WAMU Funds were *actually* the source of the Advisor

13  Paid Fee;

14      (b)     Brokers *actually* received 75 BP (not "UP TO 0.50%") in the form of Advisor Paid

15  Fee for sales of *all* WAMU Portfolio Fund shares;

16      (c)     the Steering Programs in fact created insurmountable conflicts of interest between

17  the Registrants, WAMU Advisor, WAMU Distributor and/or WMFS;

18      (d)     the Advisor Paid Fee was paid not only when Brokers made an initial sale of the

19  WAMU Portfolio Funds, but was paid every year as a residual commission on past sales as well;

20      (e)     The Advisor Paid Fee is **illegal** under Section 12(b) of the 1940 Act because not

21  authorized or paid for pursuant to the Registrants' 12b-1 Plan (17 C.F.R. § 270.12b-1);

22      (f)     The Registrants did not amend their 12b-1 Plan to account for payment of the

23  Advisor Paid Fee;

24      (g)     the Advisor Paid Fee was *three times* the allowable commission to Brokers under

25  NASD Rule 2830(d)(5)), and was in addition to the maximum 25 BP 12b-1 commission paid to

26  Brokers;

27      41.     The Registrants' March 1, 2005 Portfolio Funds prospectus did not actually or

28  constructively put Plaintiffs or the Class on notice that the Registrants, the WAMU Advisor and

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1   Distributor were *in the past* engaged in the Steering Programs, as purported "disclosures" prior to

2   March 1, 2005 were unclear and intended by the Registrants to be vague and ambiguous. The March

3   1, 2005 Portfolio Funds prospectus made no remedial disclosures of past activity, and contained no

4   statement that its purported disclosures applied retroactively to amend previous prospectuses, and

5   Plaintiffs and the Class reasonably believed that such purported disclosures represented a change in

6   practice by the Registrants, the WAMU Advisor and Distributor.

7        42.      The Registrants' registration statements after March 1, 2005, including the March

8   1, 2006 WAMU Funds registration statement, the Registrants made statements identical to those

9   described in paragraph 39 above, which were materially false and misleading because they omitted

10   the material facts described in paragraph 40 above. Plaintiffs and/or members of the Class were

11   entitled to and did receive the Registrants' March 1, 2006 WAMU Funds prospectus(es). Although

12   the Registrants' improved their disclosures concerning the Steering Programs by March 1, 2005, the

13   Registrants continued the Advisor Paid Fee until the sale of the WAMU Funds (as well as the

14   WAMU Advisor and WAMU Distributor) to the Principal Defendants. **However, while the Advisor**

15   **Paid Fee was discontinued for new sales, it was "grandfathered" to Brokers with then existing**

16   **arrangements to receive the Advisor Paid Fee.** Plaintiffs believe to be true and believe there will

17   be substantial evidentiary basis   that the Principal Investors Fund continues to pay such

18   "grandfathered" Advisor Paid Fees for WAMU Fund Sales occurring up the WAMU Funds' sale to

19   the Principal Defendants.

20        43.      The Registrants, the WAMU Advisor and WAMU Distributor have not been the

21   subject of news reports concerning their Steering Programs, nor been publicly reprimanded by the

22   SEC, NASD/FINRA, or similar enforcement body for their concerted efforts to "steer" clients into

23   the WAMU Funds. Accordingly, Plaintiffs and members of the Class did not have actual or

24   constructive knowledge that the undisclosed activities complained of herein were taking place

25   before, at least March 1, 2005.

26        44.      Plaintiffs are certain that, as the evidence develops, testimony from WMFS

27   "Investment Professionals" (*i.e.*, "Salesmen") will confirm systematic inducements and rigid

28

1   requirements that Salesmen neglect their duties to clients, and instead sell proprietary products laden

2   with excessive and improper fees, commissions and other incentives.

### E.   Scienter Allegations

4   45.   The Registrants the WAMU Advisor and Distributor, led by William Papesh,

5   instituted the Advisor Paid Fee and "preferred list(s)" in 1997. Thereafter, in the Registrants' March

6   1998 prospectus, the Registrants' stated that the WAMU Distributor "may" pay "additional

7   compensation or other incentives for selling [WAMU Fund] shares." As demonstrated above, the

8   Registrants utilized essentially identical language through 2003, with minimal additional detail in

9   2004 until finally revealing in 2005 that WMFS and its Salesmen were in fact involved in the

10  Steering Programs. The Registrants' purported "disclosures" were not drafted in the abstract, but

11  were created in response to the Steering Programs. The fact that the disclosures came after the

12  Steering Programs were put in place, and evolution of the purported disclosures over time

13  demonstrate that the Registrants intentionally sought to disclose as little information as possible

14  about the Steering Programs.

15  46.   The prohibitions on payments to Brokers by Section 12(b) of the 1940 Act, as well

16  as the limitations on legitimate payments contained in SEC Rule 12b-1 are common knowledge in

17  the mutual fund industry. The Registrants' knowledge and/or reckless disregard of these limitations

18  as they relate to the Advisor Paid Fee raises a strong inference of scienter.

19  47.   The Registrants' false statements that the "Advisor[] may make payments ... at an

20  annual rate of up to 0.50% of the average daily net assets of shares of the Portfolios", when the

21  Registrants' that such payment was actually 75 BP (0.75%), raises a strong inference of scienter.

22  48.   The fact that the Registrants have the Steering Program(s) in place indicates that

23  the Registrants know and believe such Programs drive and increase sales. By virtue of the detailed

24  descriptions of the Steering Program(s) contained in purported disclosures after March 1, 2005,

25  defendants recognized the existence and nature of such Program(s) to be material to a reasonable

26  investor. By virtue of the existence of the Steering Program(s), the Registrants' directors knew about

27  the already in place Advisor Paid Fee and "preferred list(s)," but drafted, authorized and thereafter

28  left in place intentionally vague disclosures. The Steering Programs are not analogous to a financial

1   result the existence or significance of which can be overlooked at the time of initial disclosure, but

2   were instead a deliberate *marketing program* orchestrated and executed for the purpose of driving

3   sales and increasing the WAMU Fund Companies' revenue to the detriment of Plaintiff and the

4   Class. Defendants cannot seriously contend they did not know what was going on when they crafted

5   the relevant registration statements/prospectuses.

6       49.     The fact that the Registrants stated falsely in the March 1, 2005 prospectus that

7   WAMU Advisor and WAMU Distributor make payments "at its expense", when in reality those

8   payments were derived directly from Plaintiffs and the Class' "management fees", and "other

9   expenses", indicates that the Registrants' knew the programs were improper and were attempting

10   to limit their exposure for engaging in the Shelf-Space Programs.

11       50.     The Registrants', the WAMU Advisor and WAMU Distributor reaped huge profits

12   from the Steering Programs and had an incentive to keep them secret. Increasing sales of the WAMU

13   Funds infused more assets and therefore more fees to the WAMU Advisor and WAMU Distributor

14   in the form of "management fees", loads, commissions, and 12b-1 fees. As the Registrants, the

15   WAMU Advisor, WAMU Distributor and WMFS were all wholly owned entities of WAMU, Inc.,

16   they were working under a common scheme to increase profits for the common benefit of WAMU,

17   Inc.

18       51.     The Registrants disclosed the Steering Programs only after the illegal activities and

19   scandals in the mutual fund industry were finally revealed to the public in 2004. The Registrants took

20   these actions in a transparent and belated attempt to "clean up" their disclosures and minimize their

21   potential liability. The Registrants therefore knew the Steering Programs regarding WAMU Fund

22   sales were wrong and improper. In light of this conscious strategy, the failure to disclose the full

23   extent of the Steering Programs even in the March 1, 2005 registration statement (and after) raises

24   a strong inference of scienter.

25       52.     While the Private Securities Litigation Reform Act ("PSLRA") (15 U.S.C. § 78)

26   establishes a safe harbor to protect individuals and companies giving investment advice, the safe

27   harbor does not apply here. The safe harbor provision does not apply where defendants, as here,

28

1  knew at the time they were issuing statements that the statements contained false and misleading
2  information and thus lacked any reasonable basis for making them.

3  ### F.   Damages Allegations

4       53.   A mutual fund company is very different from a traditional corporation, in that a
5  mutual fund is a mere shell, a pool of assets consisting mostly of portfolio securities that belongs to
6  the individual investors holding shares in the fund. The management of this asset pool is largely in
7  the hands of an investment advisor, an independent entity which generally organizes the fund and
8  provides it with investment advice, management services, office space and staff.

9       54.   Unlike a traditional corporation, if those in charge of a mutual fund engage in
10 wrongful activities negatively impacting the mutual fund, investors are directly impacted because
11 a mutual fund is nothing more than a collection of the investors' money. When a cost is imposed
12 on a traditional corporation, that cost impacts the book value of the corporation, but it does not
13 necessarily impact the market price of the corporation's shares. Thus, there is no direct impact of
14 those costs on the shareholder. In contrast, costs imposed on a mutual fund directly reduce the price
15 at which the fund's shares are bought and sold, and do directly and immediately impact fund
16 shareholders.

17      55.   In addition, mutual fund shares do not trade at a price set by the public market.
18 Rather, they are bought from, and sold back to the fund at net asset value ("NAV") per share in a
19 method provided by statute. Opened ended mutual funds such as the WAMU Funds are required to
20 issue redeemable securities, which are defined as "any security... under the terms of which the
21 holder, upon its presentation to the issuer... is entitled... to receive approximately his proportionate
22 share of the issuer's current net assets, or the cash equivalent thereof." 15 U.S.C. § 80a-2(a)(32).
23 The value of an investor's mutual fund is determined by subtracting a fund's liabilities from its
24 assets to arrive at the fund's NAV. When paid, the undisclosed fees and charges at issue here
25 immediately reduced that WAMU Funds' NAV per share, decreasing the amount for which Plaintiffs
26 and the Class are entitled to redeem their shares.

27

28

1   56.     Although the various fees charged to mutual fund investors may seem small for
2   each individual investor, mutual funds are long-term investment vehicles where compounded
3   expenses have a significant impact on returns. Seemingly small, yet compounding, fees create drastic
4   erosion on returns over time.

5   57.     Plaintiffs and the Class accepted, as an integral aspect of purchasing shares of the
6   WAMU Funds, that they would be required to pay fees and expenses against their ownership
7   interests therein, with the understanding that those charges were legitimate outlays for services that
8   would benefit the Funds and contribute positively to their value. In truth, a significant portion of
9   those expenses were not being used to provide the services promised, but rather to increase the
10  profits of the Registrants, the WAMU Advisor, WAMU Distributor and Brokers by financing the
11  Steering Programs challenged in this lawsuit.

12  58.     Plaintiffs and the Class assumed wrongly – as a direct and proximate result of the
13  Registrants' non-disclosure and misrepresentation – that they would be paying out of their principal
14  only fees for services that accrued to the benefit of Plaintiffs and members of the Class. In reality,
15  Plaintiffs and the Class' principal was funding the Steering Programs which were being used to
16  induce Plaintiffs and the Class members to hold their shares of the WAMU Funds, purchase
17  additional shares of the WAMU Funds, and induce third parties to purchase shares of the WAMU
18  Funds, all of which provided no benefit to Plaintiffs and the Class, and in fact actually dissipated the
19  NAV of their assets in the WAMU Funds.

20  59.     The Steering Programs system of payments caused Plaintiffs and the Class an
21  economic loss: absent those payments, Plaintiffs and the Class' total amount of fees, and thus the
22  resulting diminution of their investment's NAV, would have been smaller.

23  60.     The Registrants did not adequately disclose the Steering Programs as such, nor did
24  their disclosure state sufficient facts about such Programs for Plaintiffs and the Class to appreciate
25  the dimension of the conflicts of interest inherent in them. Plaintiffs and members of the Class would
26  not have purchased the WAMU Funds, nor paid the related commissions and fees used to finance
27  the Steering Programs had the existence or nature of the Steering Programs been disclosed.

28

1    61.    As a result of the Registrants' conduct alleged above, Plaintiffs and the Class have

2 suffered damages. The damages suffered by Plaintiffs and the Class were a foreseeable consequence

3 of WAMU's misleading statements, omissions and misconduct. By investing in the WAMU Funds,

4 Plaintiffs and the Class received a return on their investment that was substantially less than the

5 return on investment they would have received had the Registrants, WAMU Advisor and Distributor

6 not engaged in the asset dissipating Steering Programs.

7    62.    Plaintiffs and the Class have also suffered damages through commissions paid by

8 them for their purchase of WAMU Funds shares. Had Plaintiffs and the Class known about the

9 practices alleged above, they would not have paid such commissions. Plaintiffs and the Class'

10 damages as a result of the commissions, fees and other charges paid for shares of the WAMU Funds

11 were a foreseeable consequence of Defendants' false and misleading statements and omissions.

12    **G.    Unity of Interest Between the Registrants, WAMU Advisor, WAMU Distributor, WMFS and WAMU, Inc.**

13

14    63.    The Registrants, the WAMU Advisor, WAMU Distributor and WMFS are wholly

15 owned entities of control person defendant WAMU Inc. The ownership, management and operation

16 of such entities are inextricably intertwined giving such entities a unity of interest for purposes of

17 liability as alleged herein.

18    64.    The Registrants (WM Trust I, WM Trust II, and WAMU Portfolios) are governed

19 by a common Board of Trustees that oversees the Registrants' activities. The officers of the

20 Registrants are also officers and/or employees of the WAMU Advisor and/or WAMU Distributor.

21    65.    For example, the Chairman of the Registrants' common Board of Trustees,

22 William G. Papesh, is also the President, Chief Executive Officer ("CEO") and Director of the

23 WAMU Advisor and Distributor. Monte D. Calvin, who served as First Vice President ("VP"), Chief

24 Financial Officer ("CFO") and Treasurer of the Registrants also served as First VP and Director of

25 the WAMU Advisor and Distributor. Sandy Cavanaugh served as Senior VP to the Registrants and

26 President, Director and Senior VP to the WAMU Distributor and Director of the WAMU Advisor.

27 Alex Ghazanfari served as VP and Assistant Compliance Officer to the Registrants and VP and the

28 Distributor as well as senior level positions at WMFS. Sharon L. Howells served as First VP of the

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1  Registrants and First VP, Secretary and Director of the WAMU Advisor and Distributor. Gary J.
2  Pokrzywinski served as First VP and VP of the Registrants, and First VP of the WAMU Advisor.
3  Stephen Q. Spencer served as First VP of the Registrants and First VP to the WAMU Advisor. John
4  Q. West served as First VP, Secretary and Officer of the Registrants and First VP of the WAMU
5  Advisors and Distributor. Randall L. Yokum served as Senior VP and First VP of the Registrants
6  and Senior VP, Chief Investment Strategist and Director of the WAMU Advisor and Director of the
7  Distributor.

## H.    **Successor Liability for the Principal Defendants**

66.    On July 25, 2006, Principal and its subsidiary, Principal Management Corporation
entered into an agreement with WAMU to acquire all of the outstanding stock of the following
subsidiaries: WAMU Advisors, WAMU Distributor, and WM Shareholder Services, Inc. (the
"Acquisition"). On August 11, 2006, the Registrants' common Board of Trustees approved the
proposed Acquisition pursuant to which each of the WAMU Funds would combine with and into
the corresponding separate acquiring fund of Principal Investors Fund (the "Acquiring Funds"). The
Acquisition was approved by the WAMU Fund shareholders on December 15, 2006. By January
2007, the Acquisition was instantiated.

67.    Under the Acquisition, (i) all the assets and certain stated liabilities of the WAMU
Funds were transferred to its corresponding Acquiring Fund in exchange for Class A, Class B, Class
C and Institutional Class ("Class I") shares of the Acquiring Fund; (ii) holders of Class A, Class B,
Class C and Class I shares of the WAMU Funds received, respectively, that number of Class A,
Class B, Class C and Class I shares of the corresponding Acquiring Fund equal in value at the time
of the exchange to the value of the holder's WAMU Fund shares; and (iii) the WAMU Funds were
liquidated and dissolved.

68.    The WAMU Advisor became investment advisor to the Principal Investors Fund.
WAMU Advisor was renamed defendant Edge Asset Management, Inc. ("Edge"), but remains in
Seattle and employs many of WAMU Advisors' officers and employees listed in paragraph 65,
above. The officers and employees of WAMU Funds Distributor formed the management and staff
of Principal Funds Distributor, the distributor to the Principal Investors Fund. Four members of the

1 Board of Trustees for the Registrants were elected to the board of Principal Investors Fund. This
2 group includes Richard Yancey, Daniel Pavelich, Kristianne Blake and William G. Papesh.

3       69.     The Principal defendants and the WAMU defendants thus share a unity of interest
4 with respect to the issues of this lawsuit and are the alter ego of their corresponding WAMU entity.
5 Such unity dictates that the Principal defendants be held jointly and severably liable for the
6 misconduct of the WAMU entities as alleged in this complaint. The Principal entities have acquired
7 the WAMU entities liabilities for the conduct as alleged in this lawsuit. The Registrants' board
8 members are now board members of Principal Investors Fund.

9 **III. JURISDICTION AND VENUE**

10       70.     This Court has jurisdiction over the subject matter of this action pursuant to
11 section 22 of the Securities Act (15 U.S.C. § 77v); section 27 of the Exchange Act (15 U.S.C. §
12 78aa); and 28 U.S.C. §§ 1331, 1337.

13       71.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15
14 U.S.C. § 78aa) and 28 U.S.C. § 1391. Substantial acts in furtherance of the alleged fraud, including
15 the preparation and dissemination of materially false and misleading information, occurred within
16 this District.

17       72.     In connection with the acts alleged herein, Defendants directly or indirectly, used
18 the means and instrumentalities of interstate commerce, including but not limited to the mails,
19 interstate telephone communications, and the facilities of the national securities markets.

20 **IV. PARTIES**

21       73.     Plaintiff Luz M. Zapien ("Zapien"), a resident of San Diego, California, is the
22 daughter of Plaintiff Maria Carmen Higareda ("Higareda"). Plaintiffs Zapien and Higareda are
23 novice investors. In 2000, Plaintiffs together visited the San Diego branch of defendant WMFS. At
24 that time, Plaintiffs purchased $5,000 worth of shares, units or like interests of the WAMU Funds
25 (Growth & Income and West Coast Equity) pursuant to the Registrants' March 1, 2000 Prospectus.
26 Although Plaintiff Zapien made the investment decision, and the Funds for the purchase were hers,
27 Plaintiffs decided to register the shares, units or other like interests of the WAMU Funds solely in
28 the name of Plaintiff Higareda, who signed the relevant paperwork. Plaintiffs at all times considered

1    Plaintiff Zapien to be the beneficial owner of the WAMU Funds, and provided WM Financial
2    Services, Inc. with Plaintiff Zapien's address for the service of all account statements. As a direct
3    and proximate result of each of the relevant false and misleading statements and omissions regarding
4    the Advisor Paid Fee, absence of conflicts of interest, and "preferred list" as described herein,
5    Plaintiff Higareda affirmatively elected to reinvest any dividends in December of each year, and did
6    in fact reinvest all dividends derived from the WAMU Funds back into additional shares, units or
7    other like interests of the WAMU Funds in December of each year.

8          74.    Defendant Washington Mutual, Inc. ("WAMU, Inc.") is a financial services
9    company organized as a Washington corporation, that at all times material maintained its corporate
10   headquarters at Seattle, Washington. During the Class Period WAMU, Inc. was the sole owner of
11   defendants WM Trust I, WM Trust II, WM Strategic Asset Management Portfolios, LLC, WM
12   Financial Services, Inc., WM Funds Distributor, Inc., and WM Advisors, Inc.

13         75.    Defendant WM Trust I is an open-end management investment company,
14   organized as a Massachusetts business trust. WM Trust I issued the following WAMU Funds during
15   the Class Period: Money Market, Tax-Exempt Money Market, U.S. Government Securities, Income,
16   High Yield, Tax-Exempt Bond, REIT, Small Cap Value, Equity Income, Growth & Income, West
17   Coast Equity, and Mid Cap Stock.

18         76.    Defendant WM Trust II is an open-end management investment company
19   organized as a Massachusetts business trust. WM Trust II issued the following WAMU Funds during
20   the Class Period: California Money, Short Term Income, California Municipal, California Insured
21   Intermediate Municipal, Growth, International Growth, and Small Cap Growth.

22         77.    Defendant WM Strategic Asset Management Portfolios, LLC (the "WAMU
23   Portfolio") is an open-end management investment company, organized as a Massachusetts limited
24   liability company. WAMU Portfolios issued the following WAMU Funds during the Class Period:
25   Strategic Growth, Conservative Growth, Balanced, Conservative Balanced, and Flexible Income.

26         78.    Defendant WM Financial Services, Inc. ("WMFS") is a financial services company
27   organized as a Washington corporation, that at all times material maintained its corporate

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1  headquarters at Seattle, Washington, and during the Class Period, acted as broker/dealer for WAMU
2  and the WAMU Funds.

3  79.  Defendant WM Advisors, Inc. ("WAMU Advisors") is a financial services
4  company organized as a Washington corporation, and during the Class Period, acted as the
5  investment advisor for the Registrants and the WAMU Funds.

6  80.  Defendant WM Funds Distributor, Inc. ("WAMU Distributor") is a financial
7  services company organized as a Washington corporation, and during the Class Period, acted as the
8  distributor for the Registrants and the WAMU Funds.

9  81.  Defendant Principal Financial Group, Inc., ("Principal") is a financial services
10  company organized as a Delaware corporation, that at all times material maintained its corporate
11  headquarters at Des Moines, Iowa. As of January 2007, Principal acquired and became the parent
12  company of the WAMU Funds, now merged into Principal Investors Fund, Inc.

13  82.  Defendant Principal Investors Fund, Inc. ("Principal Investors Fund") is the
14  successor in interest to WM Trust I, WM Trust II, and WM Portfolios, registrants for the WAMU
15  Funds. Principal Investors Fund is a management investment company organized as a Maryland
16  corporation, that at all times material maintained its corporate headquarters at Des Moines, Iowa.

17  83.  Defendant Edge Asset Management, Inc. ("Edge") is the successor in interest to
18  some or all of the liabilities of WAMU Advisors complained of herein and is investment advisor to
19  some or all of the former WAMU Funds in the Principal Investors Funds. Edge is a financial services
20  company organized as a Washington corporation, that at all times material maintained its corporate
21  headquarters at Seattle, Washington.

22  84.  Defendant Principal Funds Distributor, Inc. ("Principal Distributor") is the
23  successor in interest to some or all of the liabilities of the WAMU Distributor as complained of
24  herein, and is the distributor for some or all of the former WAMU Funds in the Principal Investors
25  Funds. Principal Distributor is organized as a Washington corporation, with its principal place of
26  business in Sacramento County California.

27  85.  Principal, Principal Investors Fund, Principal Distributor, and Edge are collectively
28  referred to herein as the "Principal Defendants."

1

## V. CLASS ALLEGATIONS

2       86.    Plaintiffs bring this action as a class-action pursuant to Federal Rules of Civil
3 Procedure 23 on behalf of a Class consisting of: All persons or entities that purchased or otherwise
4 acquired shares, units or like interests in any of the WAMU Funds (including through the
5 reinvestment of Fund dividends), on or before, at least, March 1, 2005, or such other class, classes
6 or periods of time as the Court deems appropriate. Excluded from the Class are defendants herein
7 and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

8       87.    The members of the Class are so numerous that joinder of all members is
9 impracticable. While the exact number of Class members is unknown to Plaintiffs at this time and
10 can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of
11 members in the proposed Class. Record owners and other members of the Class may be identified
12 from records maintained by defendants, and may be notified of the pendency of this action by mail,
13 using the form of notice similar to that customarily used in securities class actions.

14      88.    Plaintiffs' claims are typical of the claims of the members of the Class as all
15 members of the Class are similarly affected by Defendants' wrongful conduct complained of herein
16 in violation of federal law. Plaintiffs do not have interests adverse to the Class.

17      89.    Plaintiffs will fairly and adequately protect the interests of the members of the
18 Class and has retained counsel competent and experienced in class action and securities litigation.

19      90.    Common questions of law and fact exist as to all members of the Class and
20 predominate over any questions wholly affecting individual members of the Class. Among the
21 questions of law and fact common to the Class are:

22      (a)    whether statements made by the Registrants to the investing public before, at least,
23 March 1, 2005 concerning the existence of, source of funding for, purpose and effect of the Steering
24 Programs misstated, omitted or concealed material facts;

25      (b)    whether the Registrants' false and misleading statements and omissions are
26 material as a matter of law;

27      (c)    whether Plaintiffs and the Class' WAMU Funds assets were dissipated by the
28 Steering Programs and the fees deducted therefore;

(d)     whether the Registrants acted with scienter when issuing the false and misleading statements and omissions;

(e)     whether the Steering Programs created insurmountable conflict(s) of interest for the Registrants, the WAMU Advisor, WAMU Distributor and/or Brokers;

(f)     whether the federal securities laws were violated by defendants' acts as alleged herein; and

(g)     to what extent Plaintiff and members of the Class have sustained damages and the proper measure of damages.

91.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it virtually impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

92.     Defendants have acted on grounds generally applicable to the entire Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

**COUNT I**
**Against the Registrants and Principal Investors Fund**
**For Violations Of Section 11 Of The Securities Act**

93.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

94.     This claim is brought pursuant to Section 11 of the Securities Act (15 U.S.C. § 77k) against the Registrants on behalf of Plaintiffs and the Class.

95.     The Registrants were the registrant(s), and Principal Investors Fund is the successor in interest to the Registrants, for one or more of the respective WAMU Funds' shares sold to Plaintiffs and the Class.  The Registrants issued, caused to be issued and participated in the

1  issuance of the materially false and misleading written statements and/or omissions of material fact

2  that were contained in the respective Prospectus(es) and are statutorily liable under Section 11.

3        96.     Prior to purchasing ownership units of the WAMU Funds, Plaintiffs were provided

4  the appropriate Prospectus(es) and, similarly, prior to purchasing the ownership units of each of the

5  other WAMU Funds, all Class members likewise received the appropriate Prospectus(es). Plaintiffs

6  and other Class members purchased shares of the WAMU Funds traceable to the false and

7  misleading Prospectus(es).

8        97.     As set forth above, the statements contained in the Prospectuses were materially

9  false and misleading for a number of reasons, including that they failed to disclose, and actively

10  concealed, that it was the practice of the Registrants, the WAMU Advisor and Distributor to reward

11  Brokers for selling the WAMU Funds, while discouraging selling products offered by competitors

12  not on the "preferred list" or otherwise participating in the Steering Programs. The Prospectuses

13  failed to disclose and misrepresented material and adverse facts as described in paragraphs 31

14  through 42 of this complaint.

15        98.     Plaintiffs and the Class have sustained damages as a result of the Registrants'

16  violations.

17        99.     At the time they purchased the WAMU Funds shares traceable to the defective

18  Prospectuses, Plaintiffs and the Class were without knowledge of the facts concerning the false and

19  misleading statements or omissions alleged herein and could not reasonably have possessed such

20  knowledge.

21        100.    This claim was brought within the applicable statute of limitations.

22  **COUNT II**
**Against the Registrants, the WAMU Distributor, WMFS and Principal Defendants**
23  **For Violations of Section 12(a) Of The Securities Act**

24        101.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully

25  set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any

26  allegation that could be construed as alleging fraud or intentional or reckless misconduct.

27        102.    This claim is brought pursuant to Section 12(a) of the Securities Act (15 U.S.C.

28  § 77l(a)), against the Registrants, the WAMU Distributor and WMFS, for their failure to disclose

1   the Steering Programs that created insurmountable conflicts of interest and the Principal Defendants

2   as successors in interest to the Registrants, the WAMU Distributor and WMFS.

3   103.   The Registrants, the WAMU Distributor and WMFS, were the "offeror" and/or

4   "seller", and the Principal Defendants are the successor in interest to the "offeror" and/or " seller",

5   within the meaning of the Securities Act, for one or more of the respective WAMU Fund shares sold

6   to Plaintiffs and the Class members because they either: (a) transfer title to shares of the WAMU

7   Funds to members of the Class; (b) transfer title to shares of the WAMU Funds to the WAMU Funds

8   distributors that in turn sold shares of the WAMU Funds as agent for the Registrants; and/or (c)

9   solicited the purchase of shares in the WAMU Funds by members of the Class, motivated in part by

10  payment of the monies pursuant to the Steering Programs to the detriment of Plaintiffs and the Class.

11  104.   Before at least March 1, 2005, the Registrants, the WAMU Distributor and WMFS

12  failed to disclose the existence of the Steering Programs payments Brokers received in exchange for

13  pushing clients into the WAMU Funds. These incentives created insurmountable conflicts of interest

14  that were never disclosed to Plaintiffs and the Class.

15  105.   The WAMU Fund Companies also caused to be issued to members of the Class

16  the Prospectuses that failed to disclose that fees, commissions, and other charges from the purchase

17  and maintenance of the WAMU Funds were used to pay Brokers for directing Plaintiffs and the

18  Class into the WAMU Funds, and the existence of the conflicts of interest described herein for

19  Brokers including WMFS and its Salesmen.

20  106.   As set forth above, when they became effective, the WAMU Funds' Prospectuses

21  were misleading as they omitted or insufficiently disclosed the material facts alleged in, at least,

22  paragraphs 31 through 42 of this complaint.

23  107.   Plaintiffs and the other members of the Class have sustained damages as a result

24  of the Registrants, WAMU Distributor, WMFS and Principal Defendants' violations.

25  108.   At the time they purchased the WAMU Fund shares traceable to the defective

26  Prospectuses, Plaintiffs and the Class were without knowledge of the facts concerning the material

27  misleading statements and omissions alleged herein and could not reasonably have possessed such

28  knowledge.

1      109.     This claim was brought within the applicable statute of limitations.

**COUNT III**
**Against WAMU, Inc. and WAMU Advisor**
**for Violation of Section 15 of the Securities Act**

4      110.     Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein, except that for purposes of this claim, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct.

7      111.     This claim is brought pursuant to Section 15 of the Securities Act (15 U.S.C. § 77o), against WAMU, Inc. and WAMU Advisor as control persons of the Registrants, the WAMU Distributor and WMFS. It is appropriate to treat these defendants as a group for pleading purposes and presume that the false, misleading, and incomplete information complained about herein are the collective actions of WAMU, Inc., the WAMU Advisor, Registrants, WAMU Distributor and WMFS.

13      112.     The Registrants violated Section 11 of the Securities Act. And the Registrants, the WAMU Distributor and WMFS violated Section 12(a) of the Securities Act by their acts and omissions as alleged in this complaint. By virtue of their positions as controlling persons, WAMU, Inc., and the WAMU Advisor are liable pursuant to Section 15 of the Securities Act.

17      113.     WAMU, Inc. and the WAMU Advisor are and were "control person(s)" of the Registrants, the WAMU Distributor and WMFS within the meaning of Section 15 of the Securities Act, by virtue of their positions of operational control and/or stock ownership in the Registrants, the WAMU Distributor and WMFS. At the time the Registrants, the WAMU Distributor and WMFS sold one or more shares of the WAMU Funds to Plaintiffs and the Class – by virtue of their positions of control and authority over the Registrants, the WAMU Distributor and WMFS – WAMU, Inc. and the WAMU Advisor, directly and indirectly, had the power, authority, influence and control, and exercised same, over the decision making and actions of the Registrants, the WAMU Distributor and WMFS to engage in the wrongful conduct complained of herein. WAMU, Inc. and the WAMU Advisor had the ability to prevent the issuance of the statements alleged to be false and misleading or could have caused such statements to be corrected.

1    114.    In particular, WAMU, Inc. had direct supervisory involvement in the operations

2 of the Registrants, the WAMU Distributor and WMFS by virtue of total stock ownership in those

3 defendants, and is presumed to have had the power to control or influence the particular acts,

4 misleading statements, and omissions giving rise to violations of the Securities Act as alleged herein,

5 and to have exercised same.

6    115.    As a direct and proximate result of WAMU, Inc. and the WAMU Advisor's

7 wrongful conduct, Plaintiffs and the Class suffered damages in connection with their purchases

8 and/or sales of interests in the WAMU Funds before, at least,  March 1, 2005.

9                                   **COUNT IV**
**Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder**
10                **Against the Registrants and Principal Investors Fund**

11    116.    Plaintiffs repeat and re-allege each and every allegation contained above as if

12 fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities

13 Act.

14    117.    This claim is brought against the Registrants and the Principal Investors Fund

15 pursuant to Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. §

16 240.10b-5) promulgated thereunder. The Registrants are sued as primary violators of Section 10(b)

17 and Principal Investors Fund as successor in interest to the Registrants.

18    118.    During the Class Period, the Registrants  carried out a plan, scheme and course of

19 conduct which was intended to, and before, at least, March 1, 2005 did, deceive the investing public,

20 including Plaintiffs and the Class as alleged herein, and caused Plaintiffs and the Class to purchase

21 WAMU Funds containing improper fees, commissions and other charges, and to otherwise suffer

22 damages.  In furtherance of this unlawful scheme, plan and course of conduct, the Registrants took

23 the actions set forth herein.

24    119.    The Registrants (i) employed devices, schemes, and artifices to defraud; (ii) made

25 untrue or misleading statements of material fact and/or omitted to state material facts necessary to

26 make the statements not misleading; and (iii) engaged in acts, practices, and a course of conduct

27 which operated as a fraud and deceit upon purchasers of the WAMU Funds, including Plaintiffs and

28 the Class, in an effort to enrich themselves through undisclosed manipulative tactics by which they

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS

1  wrongly dissipated the assets of the WAMU Funds in violation of Section 10(b) of the Exchange Act
2  and Rule 10b-5. The Registrants are sued as primary participants of the wrongful and illegal conduct
3  and scheme charged herein, and Principal Investors Fund is sued as the successor in interest to the
4  Registrants.

5      120.    The Registrants, individually and in concert, directly and indirectly, by the use,
6  means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in
7  a continuous course of conduct to conceal the adverse material information about the improper
8  Steering Programs  the inherent conflicts of interest alleged herein.

9      121.    The Registrants employed devices and artifices to defraud and engaged in a course
10  of conduct and scheme as alleged herein to unlawfully manipulate and profit from increased sales
11  and/or commissions, fees or other charges paid to them as a result of its undisclosed Steering
12  Programs described above and thereby engaged in transactions, practices and a course of conduct
13  which operated as a fraud and deceit upon Plaintiffs and the Class.

14      122.    The Registrants had actual knowledge of the misrepresentations and omissions of
15  material facts set forth above, or acted with reckless disregard for the truth in that they failed to
16  ascertain and to disclose such facts, even though the facts were available to them. The Registrants'
17  material misleading statements and omissions were done knowingly or recklessly and for the purpose
18  and effect of concealing the truth.

19      123.    As a result of dissemination of the materially false and misleading information and
20  failure to disclose material facts, as set forth in paragraphs 31 through 42 above, the NAVs for the
21  WAMU Funds were diminished before, at least, March 1, 2005. In ignorance of the fact that NAVs
22  for the WAMU Funds were diminished, and relying directly or indirectly on the false and misleading
23  statements made by the Registrants, or upon the purported integrity of WAMU, Inc., the Registrants,
24  the WAMU Advisor, WAMU Distributor and WMFS, and/or on the public absence of material
25  adverse information that was known to or recklessly disregarded by the Registrants but not disclosed
26  in public statements by the Registrants before, at least, March 1, 2005, Plaintiffs and the Class paid
27  fees, commissions, loads, and other charges to the Registrants, the WAMU Advisor, WAMU

28

Case 3:07-cv-00385-DMS-CAB   Document 50   Filed 02/06/08   Page 34 of 38

ZAPIEN, *et. al.* v. WASHINGTON MUTUAL, INC. *et. al.*

1 Distributor and WMFS during the Class Period for the Steering Programs and were damaged
2 thereby.

3      124.     By virtue of the foregoing, the Registrants and Principal Investors Fund have
4 violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. §
5 240.10b-5) promulgated thereunder.

6      125.     As a direct and proximate result of the Registrants and Principal Investors Fund's
7 wrongful conduct, Plaintiffs and the Class suffered damages in connection with their respective
8 purchases and/or sales of WAMU Funds shares before, at least March 1, 2005.

9      126.     This claim was brought within the applicable statute of limitations.

10
11

**COUNT V**
**Violation Of Section 10(b) Of The Exchange Act And Rule 10b-10**
**Promulgated Thereunder Against WMFS**

12      127.     Plaintiffs repeat and re-allege each and every allegation contained above as if
13 fully set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities
14 Act.

15      128.     This claim is brought against WMFS for violation of Section 10(b) of the
16 Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-10 (17 C.F.R. § 240.10b-10) promulgated
17 thereunder.

18      129.     Before, at least, March 1, 2005, WMFS and its Salesmen effected transactions in
19 the WAMU Funds for or with the account of Plaintiffs and members of the Class, and/or induced
20 Plaintiffs and members of the Class to purchase the WAMU Funds.

21      130.     At or before completion of Class members' purchases of shares, units or other like
22 interests in the WAMU Funds, WMFS failed to disclose the source and amount of remuneration
23 WMFS and its Salesmen received from the WAMU Advisor and WAMU Distributor in connection
24 with Class members' purchases of the WAMU Funds, as required by Rule 10b-10 (17 C.F.R. §
25 240.10b-10), promulgated under Section 10(b) of the Exchange Act.

26      131.     WMFS and its Salesmen knew of the limitation on broker commissions found in
27 NASD Rule 2830(e), yet accepted the Advisor Paid Fee.

28

SECOND AMENDED CLASS ACTION COMPLAINT FOR
VIOLATION OF THE FEDERAL SECURITIES LAWS
                                 PAGE 34

1     132.    The WAMU Advisor and WAMU Distributor's payment of such remuneration

2   created insurmountable and undisclosed conflicts of interest for WMFS and its Salesmen. Plaintiffs

3   and members of the Class were thus ignorant of the source and amount of remuneration WMFS and

4   its Salesman received from the WAMU Advisor and WAMU Distributor and of the resulting

5   conflicts of interest therein. Had Plaintiffs and members of the Class known of the source and

6   amount of such remuneration and the resulting conflicts of interest, they would not have held,

7   purchased or otherwise acquired shares of the WAMU Funds, and would not have paid any loads,

8   commissions or fees paid as a result of their acquisitions of the WAMU Funds, and would not have

9   paid the fees or costs associated with ownership of the WAMU Funds.

10    133.    As a direct and proximate result of WMFS's violations of Rule 10b-10, Plaintiffs

11   and members of the Class suffered damages in connection with their respective purchases and/or

12   sales of the WAMU Funds shares before, at least March 1, 2005.

13    134.    At the time they purchased and/or sold the WAMU Funds shares traceable to the

14   defective disclosures, Class members were without knowledge of the facts concerning the material

15   false and misleading statements and omissions alleged herein and could not reasonably have

16   possessed such knowledge.

17    135.    This claim was brought within the applicable statute of limitations.

18                                   **COUNT VI**
     **Against WAMU, Inc., the WAMU Advisor, WAMU Distributor**
19              **for Violations of Section 20(a) of the Exchange Act**

20    136.    Plaintiffs repeat and re-allege each and every allegation contained above as if fully

21   set forth herein, explicitly excepting and disclaiming claims brought pursuant to the Securities Act.

22    137.    This claim is brought pursuant to Section 20(a) of the Exchange Act (15 U.S.C.

23   § 78t), against WAMU, Inc. as a control person of the Registrants and WMFS, and against the

24   WAMU Advisor and WAMU Distributor as control persons of the Registrants. It is appropriate to

25   treat these defendants as a group for pleading purposes and presume that the false, misleading, and

26   incomplete information complained about herein are the collective actions of the Registrants,

27   WMFS, the WAMU Advisor, WAMU Distributor, and WAMU, Inc.

28

1    138.    The Registrants violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b))

2   and Rule 10b-5 (17 C.F.R. § 240.10b-5) by their acts, material false and misleading statements and

3   omissions as alleged in this complaint.  By virtue of their positions as controlling persons, WAMU,

4   Inc. is liable pursuant to Section 20(a) of the Exchange Act.

5    139.    WMFS violated Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule

6   10b-10 (17 C.F.R. § 240.10b-10) by failing to disclose the source and amount of remuneration

7   WMFS and its Salesmen received from the WAMU Advisor and WAMU Distributor in connection

8   with Class members' purchases of the WAMU Funds, as alleged above.  By virtue of their positions

9   as controlling persons, WAMU, Inc., the WAMU Advisor, and WAMU Distributor are liable

10   pursuant to Section 20(a) of the Exchange Act.

11    140.    WAMU, Inc., the WAMU Advisor, and WAMU Distributor were "control

12   persons" of the Registrants and WMFS within the meaning of Section 20 of the Exchange Act, by

13   virtue of their positions of operational control and/or complete stock ownership in the Registrants

14   and WMFS.  At the time that the Registrants issued the Prospectuses, and separately, at the time

15   WMFS sold one or more shares of the WAMU Funds to Plaintiffs and the Class – by virtue of their

16   positions of control and authority over the Registrants and WMFS – WAMU, Inc., the WAMU

17   Advisor, and WAMU Distributor directly and indirectly, had the power, authority, influence and

18   control, and exercised same, over the decision making and actions of the Registrants and WMFS to

19   engage in the wrongful conduct complained of herein. WAMU, Inc., the WAMU Advisor, and

20   WAMU Distributor  had the ability to prevent the issuance of the statements alleged to be false and

21   misleading registration statements or could have caused such statements to be corrected.

22    141.    In particular, WAMU, Inc., the WAMU Advisor, and WAMU Distributor had

23   direct supervisory involvement in the operations of the Registrants and WMFS, and are presumed

24   to have had the power to control or influence the particular acts, misleading statements, and

25   omissions giving rise to violations of the Exchange Act as alleged herein, and to have exercised

26   same.

27

28

1 142. As a direct and proximate result of WAMU, Inc., the WAMU Advisor, and

2 WAMU Distributor's wrongful conduct, Plaintiffs and the Class suffered damages in connection

3 with their purchases and/or sales of the WAMU Funds during the Class Period.

4 **JURY TRIAL DEMAND**

5 143. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

6 a trial by jury of all of the claims asserted in this Complaint so triable.

7 **PRAYER**

8 WHEREFORE, Plaintiffs and the Class pray for relief and judgement as follows:

9 1. Judgment declaring that this action is properly maintained as a class action and

10 certifying Plaintiffs as Class representatives under Rule 23 of the Federal Rules of Civil Procedure;

11 2. Awarding compensatory damages in favor of Plaintiffs and the Class against all

12 defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing,

13 in an amount to be proven at trial, including interest thereon;

14 3. Awarding Plaintiffs and the Class recision of their contracts with the defendants,

15 including recovery of all fees which would otherwise apply and recovery of all fees paid to the

16 defendants pursuant to such agreements;

17 4. Awarding Plaintiffs and the Class their reasonable costs and expenses incurred in

18 this action, including counsel fees and expert fees; and

19 5. Such other and further relief as this Court may deem just and proper.

20

21 DATED: 2/6/2008 By: ___ /s/ William R. Restis ___

22

23 **FINKELSTEIN & KRINSK LLP**
JEFFREY R. KRINSK
MARK L. KNUTSON

24 WILLIAM R. RESTIS
501 West Broadway, Suite 1250

25 San Diego, CA 92101-3593
Tel: (619) 238-1333

26 Fax: (619) 238-5425
Email: jrk@classactionlaw.com

27 Attorneys for Plaintiffs

28 Luz M. Zapien and Maria Carmen Higareda

ZAPIEN, *et. al.* v. WASHINGTON MUTUAL, INC. *et. al.*

1

**CERTIFICATE OF SERVICE**

2

3   I, Chris Christensen, certify that on February 6, 2008, I electronically filed the foregoing

**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE**

4   **FEDERAL SECURITIES LAWS** with the Clerk of the Court using the CM/ECF system, which

5   sent notification of such filing to the following individuals:

6

7   **Morgan, Lewis, & Bockius LLP**
Joseph E. Floren
8   One Market
Spear Street Tower
9   San Francisco, CA 94105
10  Tel:  415.442.1000
Fax: 415.442.1001
11  Email:  jfloren@morganlewis.com

12
**O'MELVENY & MYERS LLP**
13  Phillip R. Kaplan
610 Newport Center Dr.
14  Newport Beach, CA. 92660
Tel:  949 8236909
15  Fax:  949 8236994
16  Email:  pkaplan@omm.com

17

18  DATED:  February 6, 2008          /s/ Chris Christensen

                                   Chris Christensen
19                                  **Finkelstein & Krinsk LLP**
                                   501 West Broadway, Suite 1250
20                                  San Diego, CA  92101
                                   Tel: (619) 238-1333
21                                  Fax: (619) 238-5425

22

23

24

25

26

27

28