1  MORGAN, LEWIS & BOCKIUS LLP
   MICHAEL J. LAWSON, State Bar No. 66547
2  JOSEPH E. FLOREN, State Bar No. 168292
   LISA A. FREITAS, State Bar No. 227109
3  SHEILA A. JAMBEKAR, State Bar No. 239101
   One Market, Spear Street Tower
4  San Francisco, CA  94105-1126
   Tel:  415.442.1000
5  Fax:  415.442.1001
   Email: michael.lawson@morganlewis.com
6          jfloren@morganlewis.com
           lfreitas@morganlewis.com
7          sjambekar@morganlewis.com

8
   Attorneys for Defendants Washington Mutual, Inc.
9  and WaMu Investments, Inc. (f/k/a WM Financial
   Services, Inc.)
10

11              UNITED STATES DISTRICT COURT

12           SOUTHERN DISTRICT OF CALIFORNIA

13

14  LUZ M. ZAPIEN, and MARIA CARMEN          Case No. 07-CV-0385-DMS-CAB
    HIGAREDA, Individually And On Behalf
15  Of All Others Similarly Situated,        **MEMORANDUM OF POINTS AND**
                                             **AUTHORITIES IN SUPPORT OF**
16                Plaintiff,                  **DEFENDANTS' MOTION TO DISMISS**
                                             **SECOND AMENDED COMPLAINT**
17        vs.
                                             Date:      May 9, 2008
18  WASHINGTON MUTUAL, INC., WM              Time:      1:30 p.m.
    TRUST I, WM TRUST II, WM                 Place:     Courtroom 10, 2d Floor
19  STRATEGIC ASSET MANAGEMENT               Judge:     Hon. Dana M. Sabraw
    PORTFOLIOS LLC.,  WM FINANCIAL
20  SERVICES, INC., WM ADVISORS, INC.,
    WM FUNDS DISTRIBUTOR, INC.,
21  EDGE ASSET MANAGEMENT, INC.,
    PRINCIPAL FINANCIAL GROUP, INC.,
22  PRINCIPAL INVESTORS FUND, INC.,
    PRINCIPAL FUNDS DISTRIBUTOR,
23  INC.,

24                Defendants.

25

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED
COMPLAINT (07-CV-0385-DMS-CAB)

# **TABLE OF CONTENTS**

I.      INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II.     STATEMENT OF FACTS ......................................................................................... 3

        A.      Parties................................................................................................................ 3

        B.      Relevant Allegations of the SAC ..................................................................... 4

III.    LEGAL STANDARD ON MOTION TO DISMISS ................................................ 6

IV.     PLAINTIFFS LACK STANDING TO BRING THIS ACTION. .................................... 6

        A.      Lead Plaintiff Lacks Article III and Statutory Standing. ........................................ 7

        B.      Higareda Has Neither Sought Nor Obtained Court Appointment as Lead
                Plaintiff and Has No Right to Pursue the Litigation; Her Claims Should Be
                Dismissed ........................................................................................................ 7

        C.      Plaintiffs Are Not the "Real Parties in Interest" with Respect to Their
                Claims and Lack Article III Standing. ............................................................ 9

        D.      Plaintiffs Lack Statutory Standing to Assert Their Claims, Which Concern
                Funds They Did Not Purchase. ........................................................................ 10

V.      THE SAC IMPROPERLY EXPANDS THE PUTATIVE CLASS............................... 13

        A.      Plaintiff Cannot Extend the Class Period............................................................ 13

        B.      Plaintiffs Cannot Expand the Class Definition. .................................................. 14

VI.     PLAINTIFFS' CLAIMS ARE TIME-BARRED. ..................................................... 15

        A.      The Securities Act Claims Are Time-Barred. ................................................... 16

        B.      The Exchange Act Claims Are Time-Barred. .................................................... 19

VII.    CONCLUSION ................................................................................................... 20

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3                                   i                WM DEFENDANTS' MEMO. SUPPORTING
                                                                 MOTION TO DISMISS SECOND AMENDED
                                                                 COMPLAINT (07-CV-0385-DMS-CAB)

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3
*Allen v. Wright*
    468 U.S. 737 (1984) ............................................................................................... 10

4

*Bell Atlantic Corp. v. Twombly*
5    127 S. Ct. 1955 (2007) ............................................................................................. 6

6
*Berry v. Valence Technology, Inc.*
    175 F.3d 699 (9th Cir. 1999) ................................................................... 17, 18, 19
7

*Besig v. Dolphin Boating & Swimming Club*
8    683 F.2d 1271 (9th Cir. 1982) ............................................................................... 13

9
*Betz v. Trainer Wortham & Co.*
    486 F.3d 590 (9th Cir. 2007) ......................................................................... 17, 19
10

*Blue Chip Stamps v. Manor Drug Stores*
11    421 U.S. 723 (1975) ............................................................................................... 11

12
*Blum v. Yaretsky*
    457 U.S. 991 (1982) ............................................................................................... 12
13

*De La Cruz v. Tormey*
14    582 F.2d 45 (9th Cir. 1978)
    *cert. denied,* 441 U.S. 965 (1979) ......................................................................... 6

15

*Goldberger v. Bear, Stearns & Co., Inc.*
16    Fed. Sec. L. Rep. (CCH) ¶ 91,287 (S.D.N.Y. Dec. 28, 2000) ............................... 10

17
*Gratz v. Bollinger*
    539 U.S. 244 (2003) ............................................................................................... 12
18

*In re AIG Advisor Group Sec. Litig.*
19    2007 WL 1213395 .......................................................................................... 10, 11

20
*In re Bank of Boston Corp. Sec. Litig.*
    762 F. Supp. 1525 (D. Mass. 1991) ......................................................................... 7
21

*In re Cendant Corp. Litig.*
22    264 F.3d 201 (3d Cir. 2001) .................................................................................... 8

23
*In re Cendant Corp. Sec. Litig.*
    404 F.3d 173 (3d Cir. 2005) .................................................................................... 8
24

*In re Eaton Vance*
25    219 F.R.D. 38 (D. Mass 2003) ............................................................................... 10

26
*In re Exodus Comm. Sec. Litig.*
    2006 U.S. Dist. LEXIS 60735 (N.D. Cal. Aug. 14, 2006) ....................................... 9
27

*In re Mercury Interactive Corp. Sec. Litig.*
28    2007 U.S. Dist. LEXIS 59171 (N.D. Cal. July 30, 2007) ...................................... 15

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*In re Mutual Funds Inv. Litig.*
   2007 WL 3052301 (D. Md. Oct. 19, 2007)............................................................... 12

*In re Silicon Graphics, Inc. Sec. Litig.*
   183 F.3d 970 (9th Cir. 1999)............................................................................................ 3

*In re Stac Electronics Sec. Litig.*
   82 F.3d 1480 (9th Cir. 1996)................................................................................... 13, 16

*In re Syntex Corp. Sec. Litig.*
   95 F.3d 922 (9th Cir. 1996)..................................................................................... 13, 15

*Kauffman v. Dreyfus Fund, Inc.*
   434 F.2d 727 (3d Cir. 1970)........................................................................................... 10

*La Mar v. H&B Novelty & Loan Co.*
   498 F.2d 461 (9th Cir. 1973)............................................................................................ 6

*Lewis v. Casey*
   518 U.S. 343 (1996)................................................................................................. 11, 12

*Lierboe v. State Farm Mutual Automobile Ins. Co.*
   350 F.3d 1018 (9th Cir. 2003).......................................................................................... 9

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*
   416 F.3d 940 (9th Cir. 2005).......................................................................................... 19

*Lujan v. Defenders of Wildlife*
   504 U.S. 555 (1992).................................................................................................. 6, 10

*McClune v. Shamah*
   593 F.2d 482 (3d Cir. 1979)............................................................................................ 9

*MGIC Indem. Corp. v. Weisman*
   803 F.2d 500 (9th Cir. 1986)............................................................................................ 6

*Raines v. Bird*
   521 U.S. 811 (1997).................................................................................................. 9, 10

*Sterlin v. Biomune Sys.*
   154 F.3d 1191 ................................................................................................................ 17

*United States v. Ritchie*
   342 F.3d 903 (9th Cir. 2003)............................................................................................ 6

*Vervaecke v. Chiles, Heider & Co.*
   578 F.2d 713 (8th Cir. 1978).......................................................................................... 10

*Walters v. Edgar*
   163 F.3d 430 (7th Cir. 1998)............................................................................................ 9

*Warth v. Seldin*
   422 U.S. 490 (1975)......................................................................................................... 6

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

**Statutes**

15 U.S.C. § 77*l*.................................................................................................... 1, 6, 8, 11, 14

15 U.S.C. § 77m ............................................................................................................ 16

15 U.S.C. § 78j(b) ........................................................................................................... 6

15 U.S.C. §78u-4............................................................................................... 1, 8, 14

Fed. R. Civ. P. 12(b)(6)................................................................................................... 6

**Other Authorities**

S. Rep. No. 104-98, at 10 (1995). ................................................................................... 8

**Constitutional Provisions**

U.S. Constitution, Article III............................................................................. 6, 7, 9, 10, 12

**Regulations**

SEC Rule 485(a)(1)
    17 C.F.R. § 230.485(a)(1) ...................................................................................... 18

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.      INTRODUCTION AND SUMMARY OF ARGUMENT**

3

In accordance with the Court's March 6, 2008 Order Following Telephonic Conference,

4

this Motion to Dismiss addresses the threshold defects in the Second Amended Complaint

5

("SAC") concerning standing, the statute of limitations, and class definition.

6

The SAC suffers from the same fatal defects as the previous two complaints filed in this

7

action, and reveals other fundamental flaws in the case.  Lead Plaintiff Luz Zapien ("Lead

8

Plaintiff") lacks standing for the reasons that the Court determined and Lead Plaintiff conceded

9

during the January 11, 2008 hearing on Defendants' last motion to dismiss.  As for the claims

10

asserted by newly joined plaintiff Maria Carmen Higareda ("Higareda") – a potential plaintiff

11

who has been known to Lead Plaintiff's counsel since before this action was filed – Plaintiffs and

12

their counsel have simply and inexcusably ignored Congress' mandate under the Private

13

Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 77*l*, 78u-4 ("Reform Act"), that only the

14

Court-appointed Lead Plaintiff is entitled to file complaints and pursue this litigation.  Higareda

15

has neither sought nor received Court appointment as a lead plaintiff in this action.

16

More fundamentally, Plaintiffs lack standing because the SAC makes clear that the

17

alleged misstatements at issue did not affect them.  The SAC complains of an allegedly

18

undisclosed fee paid to brokers selling the <u>WM Portfolios</u> by the investment advisor to those

19

funds.  Plaintiffs <u>never</u> purchased the WM Portfolios.  Even if the Court were to overlook the

20

procedural impropriety of Lead Plaintiff's counsel trying to switch one lead plaintiff for another

21

at this juncture, Higareda is not the real party in interest with respect to the claims alleged

22

concerning the WM Portfolios that she never purchased, and has neither statutory nor

23

constitutional standing to sue.  The SAC should be dismissed with prejudice for this reason alone.

24

The SAC also improperly blurs and attempts to expand dramatically the definition of the

25

putative class of plaintiffs.  Both the original and First Amended Complaints ("FAC"), as well as

26

the public notice issued at the outset of this case under the Reform Act, 15 U.S.C. §§

27

77*l*(a)(3)(A)(i), 78u-4(a)(3)(A)(i), defined the putative class as those persons who purchased WM

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law

1-SF/7681274.3                                              1

WM DEFENDANTS' MEMO. SUPPORTING
MOTION TO DISMISS SECOND AMENDED
COMPLAINT (07-CV-0385-DMS-CAB)

1   Funds from Defendant WM Financial Services, Inc. ("WMFS"),[1] from March 1, 2004 through

2   March 1, 2005 (the "established class period").  Plaintiffs now attempt through the SAC to add

3   vast numbers of new persons to the putative class by expanding the class to include anyone

4   purchasing WM Funds from any of the dozens of brokerage firms that sold them (not just

5   WMFS), and by dramatically extending the class period to include purchasers "on or before, at

6   least, March 1, 2005, or such other class, classes or periods of time as the Court deems

7   appropriate."  This fuzzy class definition is no definition at all, and is a step backwards from the

8   prior versions of the complaint.  Before filing suit a plaintiff is required under the Reform Act to

9   have a particularized basis for alleging what injury has been suffered, and who was injured.  It is

10  simply impermissible to require the Court to determine the fundamental pleading issue of who is

11  suing in this case, leaving it unclear to the Defendants who is purported to be in the plaintiff class.

12  It is not the job of the Court to edit Plaintiffs' class definition, and Plaintiffs' failure to plead a

13  clearly defined class is another reason that the SAC must be rejected.

14          In addition, the claims of the purported expanded class do not relate back to the original

15  complaint under controlling precedent; the new claims are clearly time-barred and should be

16  dismissed.  Furthermore, the expansion of the putative class is inconsistent with the leave to

17  amend that the Court granted when dismissing the FAC.

18          Finally, the SAC is barred in its entirety by the relevant one- and two-year statutes of

19  limitations because the Funds publicly disclosed the nature and extent of the purportedly "secret"

20  fee payments to brokers selling the WM Portfolios in great detail in prospectuses filed with the

21  SEC and publicly available on December 30, 2004 and February 28, 2005 – over two years before

22  Plaintiff filed this action, by which time all claims had expired.  If and to the extent the Plaintiffs

23  claim there was some other undisclosed fee payment, the SAC does not even attempt to allege

24  when and how such "facts" were "discovered" by Plaintiffs – a requirement for pleading around

25  the statutes of limitations.

26

27   [1]   WM Financial Services, Inc. recently changed its name to WaMu Investments, Inc.  For
        convenience and consistency of reference with the SAC and the prospectuses at issue in this
28      case, this motion refers to Defendant WaMu Investments, Inc. by its former name WM
        Financial Services, Inc. and acronym "WMFS."

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

2

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    For these reasons, the SAC should be dismissed in its entirety, with prejudice.

2    **II.    <u>STATEMENT OF FACTS</u>**[2]

3        **A.    <u>Parties</u>**

4        During the established class period, Defendants WM Trust I, WM Trust II (collectively,

5    the "WM Trusts"), and WM Strategic Asset Management Portfolios, LLC (the "WM Portfolios"

6    and, together with the WM Trusts, the "WM Funds") were registered with the U.S. Securities and

7    Exchange Commission ("SEC") as open-end management investment companies under the

8    Investment Company Act of 1940.  The WM Trusts and WM Portfolios each issued several series

9    of shares reflecting specific investment strategies, commonly known as mutual funds.  These

10   included the two Funds allegedly purchased by Plaintiff Higareda, the WM Growth & Income

11   Fund and WM West Coast Equity Fund, both of which were issued by WM Trust I.  SAC ¶¶ 73,

12   75.

13       Defendants WM Advisors, Inc. ("WM Advisors") and WM Funds Distributor, Inc. ("WM

14   Distributor") provided investment management and distribution services, respectively, to the

15   Funds.  The Funds allegedly were sold to non-lead Plaintiff Higareda and the putative class

16   members by Defendant WM Financial Services, Inc. ("WMFS"), a securities broker-dealer that is

17   registered with the SEC and a member of the National Association of Securities Dealers, Inc.

18   (now known as the Financial Industry Regulatory Authority, Inc., or FINRA), as well as through

19   other broker-dealers that are not defendants.  SAC ¶¶ 78-80.  Defendant Washington Mutual, Inc.

20   ("WMI") is alleged to be the "sole owner" of the WM Trusts, WM Portfolios, WM Distributor,

21   WM Advisors, and WMFS.  *Id.* ¶ 74.

22       After the close of the alleged class period, WM Advisors and WM Distributor were

23   acquired by a subsidiary of defendant Principal Financial Group, Inc. and renamed Edge Asset

24   Management, Inc. and Principal Funds Distributor, Inc., respectively.  Thereafter, in January

25   2007, all assets of the WM Funds were transferred to defendant Principal Investors Fund, Inc.,

26   which is also a registered investment company, and all shareholders of the Funds became

27

28

---

[2]    This motion is based on the facts alleged in the SAC and those of which the Court may
properly take judicial notice.  *See, e.g.*, *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970,
986 (9th Cir. 1999) (approving judicial notice of documents referenced in complaint).

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    shareholders of Principal Investors Fund, Inc. *Id.* ¶¶ 81-85; *see* Request for Judicial Notice and

2    Declaration of Joseph E. Floren In Support of Defendants' Motion to Dismiss ("RJN") Exh. A at

3    2-3.  Defendants WMI and WMFS remain independent of Principal Financial Group, Inc.[3]

**B.      Relevant Allegations of the SAC**

5          The allegations addressed by this motion are limited to the threshold issues of standing,

6    statute of limitations, and class period.  Any additional allegations reaching the merits of this action

7    will be addressed in a future motion to dismiss, if the Court deems it necessary.

8          The SAC asserts a putative class action on behalf of Lead Plaintiff Luz Zapien – who the

9    Court previously determined and counsel for Lead Plaintiff conceded lacks standing – along with

10   new Plaintiff Maria Carmen Higareda, who is neither lead plaintiff nor co-lead plaintiff.  The

11   SAC dramatically expands the putative class in two obvious and inappropriate ways.  First, the

12   time period defining the class – previously limited to purchasers of the WM Funds from March 1,

13   2004 through March 1, 2005 – is now more vaguely identified as purchasers "*on or before, at*

14   *least*, March 1, 2005, or such other class, classes or periods of time as the Court deems

15   appropriate."  SAC ¶¶ 3 n.3, 86.  Second, the putative class – previously limited to those who

16   purchased WM Funds through defendant WMFS – now includes anyone who purchased WM

17   Funds from any of the dozens of different brokerage firms that sold those funds.  *Id.*

18         Prior versions of the complaint alleged that Defendant WM Advisors "secretly" paid a fee

19   of 50 basis points (0.50% of assets) to WMFS to induce sales of the WM Portfolios during the

20   established class period, and that the Funds' 2004 Prospectus was materially false and misleading in

21   disclosing that such fee "may" be paid when the fee arrangements were already in place.  FAC ¶¶

22   33, 38.  The WM Portfolios' Registration Statement filed with the SEC in 2004 undisputedly

23   included a specimen copy of the Dealer Agreement covering all sales of the WM Funds, and that

24   Dealer Agreement contained an express provision of the terms under which WM Advisors agreed

25   to pay a 50 basis point fee to dealers selling the WM Portfolios.  RJN Exh. D at 11.  Amendments

26   to the Registration Statements filed with the SEC later in 2004 and in February 2005 disclosed

---

[3]      The WM Trusts and WM Portfolios, though still in existence, are now essentially defunct
         entities, with no assets or shareholders.  *See* RJN Exh. A at 2-3.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    additional details and specifics concerning these fee arrangements.  RJN Exhs. E at 5; F at 3-6, 8-

2    10; G at 3-6.  The 50 basis point fee at issue applied solely to purchases of the WM Portfolios, in

3    which Plaintiffs did not invest.[4]  It did not apply to sales of the funds purchased by Plaintiffs.  RJN

4    Exh. C at 38-45, 78.

5            The SAC changes direction, and no longer focuses upon the "may" language that was at

6    issue in the FAC and original complaint.  Instead, Plaintiffs now claim that WM Advisors

7    actually paid a 75 basis point fee (0.75% of assets) to dealers selling the WM Portfolios, not up to

8    50 basis points as stated in the Prospectus and Registration Statement.  Plaintiffs contend the

9    purported 75 basis point fee on sales of the WM Portfolios was illegal, was not disclosed, and

10   created undisclosed sales incentives and conflicts of interest.  SAC ¶¶ 25, 37, 39-40.  Plaintiffs

11   also now allege purported misstatements in the Funds' prospectuses on this subject all the way

12   back to the year 2000, when they made their first and only alleged purchase of WM Funds, even

13   though the Court has already ruled that any such allegations are barred by the statutes of

14   limitations.  SAC ¶¶ 31-34; Order Granting Defendant's Motion to Dismiss (Docket No. 49) at 5

15   (Jan. 17, 2008) (hereafter "January 2008 Order").

16           The SAC confirms that Plaintiffs, in the name of Higareda, purchased shares of the WM

17   West Coast Equity Fund and WM Growth & Income Fund, both of which were issued by WM

18   Trust I.  SAC ¶ 73.  Higareda thereafter allegedly decided to allow the annual dividends to be

19   reinvested in those funds each year through 2004.[5]  *Id.*  There are no allegations that any

20   undisclosed or otherwise improper fees were paid in connection with sales of the mutual funds

21   that Plaintiffs purchased.[6]  Plaintiffs do not allege that they ever purchased any funds issued by

22   ───────────────
     [4]    There were six different mutual funds issued by the WM Portfolios:  the Flexible Income
23          Portfolio, Conservative Balanced Portfolio, Balanced Portfolio, Conservative Growth
            Portfolio, Strategic Growth Portfolio, and Money Market Fund.  RJN Exh. C at 21, 71, 5-11,
24          29.  Plaintiffs purchased none of these.  SAC ¶ 73.

25   [5]    The Court previously ruled that the acquisitions through automatic dividend reinvestment in
            2004 could be deemed purchases by Higareda (who was not a party to the case) for standing
26          purposes at the motion to dismiss stage.  January 2008 Order at 5-6.  Accordingly, this
            motion does not address that issue.

27   [6]    The SAC also does not allege that Plaintiffs had any human interaction with a sales person in
            2004 with respect to the dividend reinvestments, even though the thrust of their claim is that
28          the purported undisclosed fees created improper sales incentives for the brokers selling

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3                                    5                    DEFENDANTS' MEMO. SUPPORTING MOTION
                                                                       TO DISMISS SECOND AMENDED COMPLAINT
                                                                                    (07-CV-0385-DMS-CAB)

1   the WM Portfolios, as to which the undisclosed fees that are the subject of the SAC were

2   allegedly paid.

3   **III.    LEGAL STANDARD ON MOTION TO DISMISS**

4          A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the claims stated in the

5   complaint.  Dismissal is appropriate under Rule 12(b)(6) where the complaint fails to plead

6   sufficient facts stating a claim to relief that is "plausible on its face."  *See Bell Atlantic Corp. v.*

7   *Twombly,* 127 S. Ct. 1955, 1974 (2007) (dismissing complaint where "plaintiffs have not nudged

8   their claims across the line from conceivable to plausible"); *De La Cruz v. Tormey*, 582 F.2d 45,

9   48 (9th Cir. 1978), *cert. denied,* 441 U.S. 965 (1979).  In ruling on a 12(b)(6) motion, the Court

10  may consider the facts alleged in the complaint, documents attached to or specifically referenced

11  within the complaint, and other matters of which the Court may take judicial notice.  *See United*

12  *States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *MGIC Indem. Corp. v. Weisman*, 803 F.2d

13  500, 504 (9th Cir. 1986).  Defendants also move to dismiss for lack of jurisdiction over the

14  subject matter of this case, as a result of Plaintiff's lack of standing to sue under the securities

15  laws and  Article III of the Constitution.  *See* Fed. R. Civ. Proc. 12(b)(1).

16  **IV.    PLAINTIFFS LACK STANDING TO BRING THIS ACTION.**

17         The requirement that Plaintiffs plead facts showing that they have standing to sue is

18  jurisdictional and derives from Article III of the Constitution.  *Warth v. Seldin*, 422 U.S. 490, 498

19  (1975) (requiring case or controversy and that plaintiff must assert his or her own legal rights);

20  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (plaintiff bears the burden of meeting

21  each of the standing requirements).  Moreover, all of the claims alleged in the SAC arise under

22  the federal securities laws, which allow only persons who purchased or sold the securities at issue

23  to sue for relief.  *See* 15 U.S.C. §§ 77*l*(a), 78j(b).  In securities class actions, courts take special

24  care to ensure that these standing requirements are met.  *See La Mar v. H&B Novelty & Loan Co.*,

funds.  Rather, the SAC alleges only that Higareda "affirmatively elected" to reinvest, and
that Plaintiffs bought after reviewing the Funds' prospectus. SAC ¶¶ 29, 73.  Since no sales
person could have been "improperly" induced by the receipt of undisclosed fee-sharing in
these alleged sales, Higereda could not have been injured by those payments, regardless
whether they were disclosed or not.  Moreover, any alleged "injury" to Plaintiffs could only
have occurred through the original purchase in 2000, as to which all claims are time-barred.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3

6

1   498 F.2d 461, 469 (9th Cir. 1973) (standards are "exacting"); *In re Bank of Boston Corp. Sec.*

2   *Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991) ("Strict standing requirements are particularly

3   important in the area of securities litigation to curb the risks of vexatious litigation and abuse of

4   discovery.").

5          Plaintiffs do not come close to meeting either the constitutional or statutory standing

6   requirements.  Lead Plaintiff did not purchase any Funds at all during the established class period.

7   Assuming for purposes of this motion, as the Court previously ruled, that Higareda's dividend

8   reinvestment in 2004 could confer statutory standing to sue, she has not been appointed, nor has

9   she sought to be appointed lead plaintiff.  She cannot assume that status through amendment or

10  intervention in this action where the Lead Plaintiff has lacked standing from the outset.  Even if

11  Plaintiffs could overcome these obstacles, the purported fee-sharing practices that are now the

12  focus of the SAC did not affect the mutual funds that Plaintiffs purchased, with the result that

13  they suffered no injury and lack constitutional and statutory standing.

14          A.      **Lead Plaintiff Lacks Article III and Statutory Standing.**

15          The Court granted Defendants' motion to dismiss this case with respect to Lead Plaintiff

16  on the ground that she lacks standing.  That has not changed.  The only mutual fund purchase in

17  which Lead Plaintiff allegedly was involved occurred in 2000, and the Court has already ruled

18  that any claim based upon that purchase would be time-barred.  The SAC fails to present new

19  allegations that would provide her with standing to maintain any claim, either on her own behalf

20  or as a putative class representative.  Lead Plaintiff continues to lack standing for the same

21  reasons that the Court determined – and counsel for Plaintiffs conceded – during the hearing on

22  January 11, 2008.  January 2008 Order at 6; RJN H (Jan. 11, 2008 Hearing Tr.) at 5:4–6:25.  Her

23  claims should be summarily dismissed with prejudice.

24          B.      **Higareda Has Neither Sought Nor Obtained Court Appointment as Lead
                    Plaintiff and Has No Right to Pursue the Litigation; Her Claims Should Be**
25                  **Dismissed**

26          In an effort to evade standing requirements, the SAC now seeks to join as a plaintiff Maria

27  Carmen Higareda.  Higareda is a potential plaintiff of whom Plaintiffs' counsel has known since

28  filing the original complaint over a year ago.  Despite Defendants' encouragement to include

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

7

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

Higareda at the outset of this case to avoid numerous amendments and motions, counsel for Lead

Plaintiff refused to seek to add her until more than a year had passed and well after the 60-day

notice period mandated under the Reform Act.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

In passing the Reform Act, Congress intended for lead plaintiffs – and not lawyers – to

drive securities class actions.  S. Rep. No. 104-98, at 10 (1995).  For this reason, the Reform Act

sets forth mandatory and specific procedures for the appointment of a lead plaintiff in every

securities class action.  15 U.S.C. §78u-4(a)(3)(A) and (B).  The notice period is intended to allow

other potential plaintiffs to step up and seek to be appointed lead plaintiff.  As the Third Circuit

Court of Appeals explained in a leading case:

> [T]he goal of the Reform Act's lead plaintiff provision is to locate a person or entity whose sophistication and interest in the litigation are sufficient to permit that person or entity to function as an active agent for the class.  [¶]  Thus, the PSLRA strives to ensure that the lead plaintiff will have both the incentive and the capability to supervise its counsel in the best interests of the class. We noted in *Cendant I* that the PSLRA's "detailed procedures for choosing the lead plaintiff ... indicat[e] that Congress attached great importance to ensuring that the right person or group is selected."  From this fact, we inferred that Congress meant to give the lead plaintiff significant responsibility in controlling the litigation.

*In re Cendant II  Corp. Sec. Litig.*, 404 F.3d 173, 192 (3d Cir. 2005) (citing *In re Cendant I Corp.*

*Litig.*, 264 F.3d 201, 266, 273 (3d Cir. 2001), internal quotations and citations omitted).

Here, counsel for Plaintiffs was fully aware that another potential plaintiff existed and

deliberately chose to continue with a Lead Plaintiff who lacked standing.[7]  Defendants should not

be made to suffer the consequences of Plaintiffs' delay.  Nor should the Court countenance the

attempted replacement of Lead Plaintiff with Higareda through the device of an amendment to the

complaint.  To the contrary, "**where the named plaintiffs in a class action lack standing, the**

---

[7]    Indeed, Lead Plaintiff's counsel admitted at the January 11, 2008 hearing that he was intentionally proceeded with Luz Zapien as the sole plaintiff in the FAC with knowledge that Higareda was the legal owner of the funds and only turned to persuading Higareda to permit herself to be added as a plaintiff once it became clear that he was in jeopardy of losing the standing motion as to Ms. Zapien.  RJN Exh. H (Jan. 11, 2008 Hearing Tr.) at 14:4-6, 8-16.  This use by Plaintiffs' counsel of a "place-holder" plaintiff to attempt to toll the statute of limitations while they work to recruit the real party in interest to participate as a party does not satisfy the requirements of the lead plaintiff process set forth in the Reform Act or the rules for tolling of statutes of limitations.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3

8

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   **action must be dismissed and new named plaintiffs with standing may not intervene.  Put**

2   **another way, 'intervention will not be permitted to breathe life into a nonexistent lawsuit.'"**

3   *In re Exodus Comm. Sec. Litig.*, 2006 U.S. Dist. LEXIS 60735, at \*4 (N.D. Cal. Aug. 14, 2006)

4   (denying motion to intervene where named plaintiff lacked standing) (emphasis added; citing

5   *Lierboe v. State Farm Mutual Automobile Ins. Co.*, 350 F.3d 1018, 1022-23 & n.6 (9th Cir. 2003)

6   (holding class action must be dismissed where named plaintiff lacks standing; noting "this is not a

7   mootness case, in which substitution or intervention might have been possible"); *Walters v.*

8   *Edgar*, 163 F.3d 430, 432-33, 437 (7th Cir. 1998) (affirming dismissal of class action where

9   named plaintiffs lacked standing; rejecting argument that other members of the class should have

10  been named as class representatives); quoting *McClune v. Shamah*, 593 F.2d 482, 486 (3d Cir.

11  1979)).

12      Higareda has neither sought nor received court appointment as lead or co-lead plaintiff

13  entitled to manage this action.  As Lead Plaintiff never had standing to sue, the case cannot be

14  resuscitated – it never was a case or controversy.  Instead, the action must be dismissed and

15  Higareda should be required to file a new action if she wishes to proceed with her purported

16  claims.[8]  Even if Higareda had properly been appointed a lead plaintiff in this action, however,

17  she would still lack standing to bring the claims alleged in the SAC.

18      **C.**    **Plaintiffs Are Not the "Real Parties in Interest" with Respect to Their Claims**
    **and Lack Article III Standing.**

19      Federal courts have jurisdiction to hear a dispute only if it is a "case" or "controversy."

20  U.S. Const. art. III, § 2; *see also Raines v. Bird,* 521 U.S. 811, 818 (1997).  One of the necessary

21

---

[8]   During the January 11, 2008 hearing on Defendants' motion to dismiss the FAC, after it
became clear that the Court would dismiss the complaint for Lead Plaintiff's lack of
standing, Lead Plaintiff's counsel proposed for the first time to join Higareda as a plaintiff.
RJN H (Jan. 11, 2008 Hearing Tr.) at 4:15-17.  Defendants objected, pointing out that no
such relief had been requested in response to the motion to dismiss, the issue had not been
briefed, and that Higareda was not before the Court and had not sought to intervene as lead
plaintiff or otherwise.  The Court and parties discussed whether Defendants' objections to the
proposed substitution of plaintiffs should be addressed via requiring a motion to amend by
Lead Plaintiff or via motion to dismiss an amended complaint.  *Id.*  The Court did not resolve
the newly raised issue of whether Higareda could join as a plaintiff, nor could it have done so
as Higareda was not a party or movant subject to the Court's jurisdiction at that time.  Rather,
the Court granted <u>Lead Plaintiff</u> leave to file a Second Amended Complaint.  January 2008
Order.  Furthermore, even if Higareda had sought to intervene and be named lead plaintiff,
intervention have been improper for the reasons noted above.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3

9

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   elements of the "case" or "controversy" requirement is that the Plaintiff establish that he or she

2   has standing to sue.  *Id.*  "To meet the standing requirements of Article III, '[a] plaintiff must

3   allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to

4   be redressed by the requested relief.'"  *Raines,* 521 U.S. at 818-19 (quoting *Allen v. Wright*, 468

5   U.S. 737, 751 (1984)) (emphasis added).  The Supreme Court has "consistently stressed that a

6   plaintiff's complaint must establish that [s]he has a 'personal stake' in the alleged dispute, and

7   that the alleged injury suffered is particularized as to [her]."  *Id*. (citing *Lujan,* 504 U.S. at 560-61

8   & n.1) (holding that, to have standing, a plaintiff must have suffered a "particularized" injury,

9   which means that "the injury must affect the plaintiff in a personal and individual way").

10          Plaintiffs allege no injury in fact or personal stake relative to the twenty-two Funds at

11   issue in this action that they never purchased, including all of the Funds issued by WM Trust II

12   and the WM Portfolios.  Since this case concerns alleged fee practices affecting only sales of the

13   WM Porfolios, as discussed in further detail below, Plaintiffs lack Article III standing to sue with

14   respect to their purported claims as to those other Funds.  *See In re AIG Advisor Group Sec.*

15   *Litig.*, 2007 WL 1213395 (S.D.N.Y. Apr. 25, 2007).  This requires dismissal of all claims as to all

16   Funds except the WM Growth & Income Fund and West Coast Equity Fund.

17          **D.      Plaintiffs Lack Statutory Standing to Assert Their Claims, Which Concern**
                       **Funds They Did Not Purchase.**

18

19          Plaintiffs cannot bring claims with respect to mutual funds that they never purchased,

20   because they have no standing to do so.  *See In re Eaton Vance*, 219 F.R.D. 38 (D. Mass 2003);

21   *see also Vervaecke v. Chiles, Heider & Co.*, 578 F.2d 713, 719 (8th Cir. 1978) (no standing to

22   assert claims arising out of bond offering in which plaintiff did not participate); *Kauffman v.*

23   *Dreyfus Fund, Inc.,* 434 F.2d 727, 734 (3d Cir. 1970) (mutual fund shareholder could not bring

24   action on behalf of shareholders in similarly situated mutual funds in which he did not invest);

25   *Goldberger v. Bear, Stearns & Co., Inc.*, Fed. Sec. L. Rep. (CCH) ¶ 91,287 (S.D.N.Y. Dec. 28,

26   2000) ("In order to maintain a class action, Plaintiffs must first establish that they have a valid

27   claim with respect to the shares that they purchased.  If the named Plaintiffs have no cause of

28   action in their own right, their complaint must be dismissed, even though the facts set forth in the

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3

10

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   complaint may show that others might have a valid claim.").  Actions under the Securities Act or

2   the Exchange Act may be brought *only* by purchasers or sellers of the securities at issue.  15

3   U.S.C. § 77*l*(a); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 749 (1975); *see also In*

4   *re AIG,* 2007 WL 1213395, at *11-12.  Further, at the pleading stage the named plaintiff must

5   "set forth some 'general factual allegations of injury resulting from the defendant's conduct.'"  *In*

6   *re AIG,* 2007 WL 1213395, at *11-12 (quoting *Lewis v. Casey,* 518 U.S. 343, 358 (1996)).  A

7   named plaintiff in a securities fraud class action cannot allege an injury from the purchase or sale

8   of funds in which she has never invested.  15 U.S.C. § 77*l*(a); *Blue Chip Stamps,* 421 U.S. at 749.

9        Plaintiffs are alleged to have purchased only two Funds, both issued by defendant WM

10  Trust I, but Plaintiffs purport to sue on behalf of investors in twenty-two other Funds issued by

11  the WM Trusts and the WM Portfolios – Funds in which neither Lead Plaintiff nor Plaintiff

12  Higareda *ever* invested.  RJN Exh. B at 1, 4; SAC ¶ 73.  Even if Plaintiffs, or one of them,[9] had

13  standing to sue based on the dividend reinvestments during the established class period, Plaintiffs

14  could still bring suit only concerning those securities actually purchased – the WM Growth &

15  Income Fund and the West Coast Equity Fund.  RJN Exh. B at 1, 4.  Plaintiffs cannot sue or seek

16  recovery from funds in which they did not invest.  *In re AIG*, 2007 WL 1213395 (dismissing

17  complaint to the extent that it relates to funds other than the ones in which plaintiffs alleged they

18  invested); *see also Blue Chip Stamps,* 421 U.S. 723 (limiting recovery under Exchange Act to

19  purchasers or sellers of securities).

20       The principal – and new – theory of recovery in the SAC is the alleged impropriety and

21  illegality of an undisclosed 75 basis point Advisor-Paid Fee that was supposedly paid by WM

22  Advisors to induce sales of WM Portfolios.  The SAC concedes, however, that the purported fee

23  was paid <u>only</u> on sales of the WM Portfolios, and not the two WM Trust I Funds purchased by

24  Plaintiffs.  SAC ¶ 25.  Because the alleged misstatements, all deriving from the supposed 75 basis

---

25  [9]   Plaintiffs have muddied the waters regarding who owns the mutual funds at issue here.  The

26       claim in the SAC is that Lead Plaintiff Zapien funded the initial purchase and is actually their
         "beneficial owner," while it was Higareda who supposedly "affirmatively elected" to reinvest

27       dividends each year.  At the January 11, 2008 hearing on Defendants' last motion to dismiss,
         counsel asserted that Lead Plaintiff Zapien was more of a "financial advisor" while Higareda

28       had the "absolute right" to the Funds.  SAC ¶ 73; RJN Exh. H (Jan. 11, 2008 Hearing Tr.) at
         5:11-14; 15:3-6.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

11     DEFENDANTS' MEMO. SUPPORTING MOTION
                                              TO DISMISS SECOND AMENDED COMPLAINT
                                              (07-CV-0385-DMS-CAB)

1   point fee, relate only to the WM Portfolios, the only individuals who might have standing to

2   complain about the alleged 75 basis point fee would be those who purchased the WM

3   Portfolios.[10]

4        This case is fundamentally different from *In re Mutual Funds Investment Litigation*, 519

5   F. Supp. 2d 580 (D. Md. Oct. 19, 2007), and the general standing cases of *Blum v. Yaretsky*, 457

6   U.S. 991 (1982), *Lewis v. Casey*, 518 U.S. 343 (1996), and *Gratz v. Bollinger*, 539 U.S. 244

7   (2003), on which Lead Plaintiff previously relied in opposing Defendants' earlier motions to

8   dismiss.  *Mutual Funds* involved allegations of manipulative trading practices that allegedly

9   affected all funds advised by the same investment advisor, and included "plausible allegations

10  that investment advisers, traders, and brokers who engaged in market timing and late trading

11  activities caused the *same type of harm* by the *same type of misconduct* to shareholders in various

12  mutual funds within the same family of funds."  *Id.* at 587 (emphasis added).  Here, that is

13  manifestly not the case.  The alleged 75 basis point Advisor-Paid Fee did not affect the two WM

14  Funds purchased by Plaintiffs.  Neither Higareda nor Lead Plaintiff ever owned any of the WM

15  Portfolio Funds.  Thus, the alleged harm at issue exclusively would affect individuals who have

16  interests in the WM Portfolios, and in any case would have no relation to any (nonexistent)

17  "harm" allegedly suffered by Plaintiffs with respect to their purchases of WM Trust I Funds.  In

18  short, the *Mutual Funds* case has no application here, and Plaintiffs do not have standing to sue

19  concerning the practices at issue in the SAC.[11]

20       Since Plaintiffs lack statutory standing under the securities laws to sue with respect to the

21  WM Portfolios and the other twenty-two WM Funds that Plaintiffs never purchased, their claims

22  concerning those Funds should be dismissed with prejudice.

23

24

25

[10]   This is also true with respect to the 50 basis point Advisor-Paid Fee alleged in Lead
26     Plaintiff's initial complaint and FAC, which was also fully disclosed in all of the relevant
       prospectuses cited throughout these complaints and the SAC.

27
[11]   Moreover, in *Blum, Lewis* and *Gratz*, the court found that the plaintiffs had Article III
28     standing, which is not the case here.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3                                    12          DEFENDANTS' MEMO. SUPPORTING MOTION
                                                             TO DISMISS SECOND AMENDED COMPLAINT
                                                                         (07-CV-0385-DMS-CAB)

**V.   THE SAC IMPROPERLY EXPANDS THE PUTATIVE CLASS.**

Plaintiff cannot attempt to evade statute of limitations and standing by improperly extending both the class period and class definition.  Neither at the hearing in January 2008 nor in its January 2008 Order did the Court grant Lead Plaintiff leave to expand either the class period or class definition.[12]  By doing so in the SAC, however, Plaintiffs have impermissibly attempted to add vast numbers of persons to the putative class – persons who were not included within the Reform Act notice at the outset of this case and who have completely different claims both from each other and from the established class alleged in the original complaint and FAC.

**A.   Plaintiff Cannot Extend the Class Period.**

New plaintiffs and new claims joined through an amended complaint may relate back to the date of filing an action only when three requirements are met.  First, the original complaint must have given the defendant adequate notice of the claims that the new plaintiffs now allege.  Second, the relation back cannot prejudice the defendant.  And, finally, there must be an identity of interests between the original and newly proposed plaintiffs.  *See In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996) (citing *Besig v. Dolphin Boating & Swimming Club,* 683 F.2d 1271, 1278-79 (9th Cir. 1982)).  Plaintiffs cannot extend the class period in an amended complaint when they already suspected the supposed fraud at the time they filed their original complaint.  *See id.* (Plaintiffs "discovered" facts that related to potential claims by the time the earlier complaint was filed, therefore, expansion of the class period in a later amended complaint was denied.).  If fraud is suspected at the time the first complaint is filed, then the plaintiffs have notice and cannot attempt to evade statute of limitations and add new plaintiffs by expanding the

---

[12]   The SAC's addition of the expanded and extended class period and, more significantly, the new falsity allegation concerning a purported undisclosed 75 basis point Adivsor Paid Fee directly contradict the representations Plaintiffs' counsel made to the Court during the January 11, 2008 hearing.  During the hearing, Plaintiffs' counsel assured that Court that if granted leave to replead, "[i]t is not our intention to reshape the case" and "[w]e are not changing the theory of the case."  RJN H (Jan. 11, 2008 Hearing Tr. at 23:9–23:18).  While Plaintiffs' counsel did state that "[w]e are going to add additional factual allegations that support the allegations that already exist," the SAC's new allegation of an undisclosed 75 basis point fee can only be viewed as a new (and unsupported) claim that completely contradicts what was alleged in the previous iterations of the complaint.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3

13

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   class period in subsequent amendments to the complaint.  *Id.*; *see also In re Stac Electronics Sec.*

2   *Litig.*, 82 F.3d 1480, 1492 (9th Cir. 1996) (same).

3          The SAC purports to extend the class period indefinitely, both backwards and forwards, to

4   include purchasers of WM Funds "on or before, at least, March 1, 2005, or such other class,

5   classes or periods of time as the Court deems appropriate."  SAC ¶¶3 n.3, 86.  Given the new

6   allegations in the SAC of misstatements as long ago as 2000, this obviously represents a dramatic

7   expansion of the well-defined established class period of March 1, 2004 through March 1, 2005.

8   Plaintiffs plainly suspected fraudulent activity since the action was filed.  Plaintiffs cannot argue

9   that the new allegations were discovered from documents of which they were not aware when the

10  first complaint was filed, particularly when Plaintiffs fail to allege how or when they

11  "discovered" the "facts" that led to the new allegations.

12         Allowing the new claims to relate back to the date of the original complaint would

13  prejudice Defendants.  Plaintiffs raise new claims that contradict previous claims raised in the two

14  prior complaints.  Moreover, there would be no identity of interest between the putative class

15  established in the earlier complaints and the proposed new class members, who purchased WM

16  Funds at different times, under different Prospectuses and Registration Statements, at different

17  prices, and from different brokerage firms that may or may not have had similar practices.

18         The Reform Act clearly states that there must be notice of the class period published

19  within 20 days after the complaint is filed, in addition to notice of the claims asserted.  15 U.S.C.

20  §78u-4(a)(3)(A)(i)(I).  When the allegations are different and the class period is expanded

21  considerably as in this SAC, a new action must be filed and a new lead plaintiff must petition for

22  appointment pursuant to the notice requirements of the Reform Act.

23         **B.      Plaintiffs Cannot Expand the Class Definition.**

24         The SAC also attempts to expand the substantive definition of the previously established

25  putative plaintiff class.  The class now purportedly includes anyone purchasing WM Funds from

26  any brokerage firm, not just WMFS, and includes purchases during the newly expanded and

27  hopelessly vague class period.  This extension of the class definition also requires the filing of a

28

Morgan, Lewis &
Bockius LLP
Attorneys At Law

1-SF/7681274.3                                        14        DEFENDANTS' MEMO. SUPPORTING MOTION
                                                               TO DISMISS SECOND AMENDED COMPLAINT
                                                               (07-CV-0385-DMS-CAB)

1  new complaint, which cannot relate back to the date that the Complaint was originally filed in this

2  action.

3      First, as noted above, Lead Plaintiff did not give Defendants any notice or indication that

4  an amended complaint would expand the class definition, and the Court did not grant Lead

5  Plaintiff leave to make such an amendment.  Second, allowing relation back to the original

6  complaint would prejudice Defendants particularly because the class has expanded, not only in

7  definition, but in time and in a vague and overreaching manner.  It is a matter of public record

8  disclosed in the Funds' Registration Statement that the WM Funds at issue were sold through at

9  least 38 different brokerage firms, including most of the leading firms in the industry.  RJN Exh.

10  F at 4-5.  Third, there is no identity of interests between the members of the original class – who

11  purchased WM Funds through WMFS – and the proposed newly expanded class who purchased

12  the WM Funds from other brokerage firms not affiliated with WMI.  The different sales and

13  disclosure practices of each of the different brokerage firms, for example, clearly signify that the

14  proposed new class members would each involve different interests and factual and legal claims

15  from each other, rendering this action unmanageable.  These varying interests among the

16  proposed new class members and between them and the original class members compel the

17  conclusion that any proposed new class definition cannot relate back to the filing of the original

18  complaint in this action. *See In re Syntex Corp. Sec. Litig.*, 95 F.3d at 935; *see also In re Mercury*

19  *Interactive Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 59171, *17-18 (N.D. Cal. July 30, 2007)

20  (granting motion to dismiss as to expanded class period, holding that there was not an identity of

21  interest between plaintiffs in the extended class and plaintiffs in the original class and the new

22  allegations were time barred).  Because any new such claims would be time-barred, they must be

23  dismissed.

24  **VI.    PLAINTIFFS' CLAIMS ARE TIME-BARRED.**

25      Plaintiffs purchased the WM Growth & Income and West Coast Equity Funds with a

26  dividend reinvestment option in 2000.  As a result, all claims resulting from that purchase have

27  long since become time-barred by the three- and five-year statutes of repose for claims under the

28  Securities Act and the Exchange Act, which expired no later than 2003 and 2005, respectively.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

15

1    Plaintiffs' purported claims are also barred by the one- and two-year notice limitations periods

2    under the Securities Act and Exchange Act, because Plaintiffs and the class were on inquiry

3    notice (if not actual notice) as to any purported claims by no later than February 27, 2004, when

4    the Funds filed their Registration Statement with the SEC *publicly disclosing* the allegedly

5    "hidden" fees paid to WMFS on sales of the WM Portfolios, through publication of the Form of

6    Dealer Agreement used by the WM Trusts and WM Portfolios.  RJN Exhs. C at 126; D; G at 1-2.

7    The Funds also filed a revised Registration Statement on December 30, 2004, and again on

8    February 28, 2005, broadcasting the supposedly undisclosed facts relating to WMFS and revenue

9    sharing among the defendants, and plainly putting Plaintiffs on actual notice of their purported

10   claims.  RJN Exhs. E at 5, F at 3-6, 8-10; G at 3-6.

11         To the extent Plaintiffs' claims are now based on a purported undisclosed 75 basis point

12   fee-sharing practice with respect to the WM Portfolios, the SAC wholly fails to allege when or

13   even how this alleged "fact" was "discovered" by Plaintiffs as required to plead around the

14   statutes of limitations.  As discussed more fully below, because Plaintiffs did not file suit until

15   February 28, 2007, two years and one day after the last of these public disclosures, all of the

16   claims asserted in the SAC are time-barred, and should be dismissed with prejudice.

17         **A.**     **The Securities Act Claims Are Time-Barred.**

18         A plaintiff must bring a claim under the Securities Act "by the earlier of (a) three years

19   from the date the parties in the offering obligate themselves to perform, in the case of a Section

20   12(a)(2) claim . . . , or three years from the date of the initial registration statement, in the case of

21   a Section 11 claim . . . , or (b) one year from the date on which they are put on actual or

22   constructive notice of the facts underlying the claim."  15 U.S.C. § 77m.  In other words,

23   Plaintiffs' Section 12(a)(2) claim had to have been brought within three years of a purchase

24   transaction, and their Section 11 claim had to have been brought within three years of the date of

25   the registration statement.  Plaintiffs' claims with respect to purchases in 2000 are barred by these

26   statutes of repose.  Only the December 2004 dividend reinvestment by Plaintiff Higareda might

27   qualify as a purchase within the statute of repose, but she has not complied with the requirements

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3

16

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   of the Reform Act to become a lead plaintiff and her claim is barred by the one-year notice

2   limitations period.

3        All of Plaintiffs' alleged Securities Act claims were required to be filed within one year of

4   the date on which they had actual or inquiry notice of the facts indicating that the relevant

5   prospectus was materially false or misleading.  *In re Stac Elec. Sec. Litig.*, 89 F.3d at 1399, 1411

6   (9th Cir. 1996).  In the Ninth Circuit, "'the one-year statute of limitations period begins to run

7   once the investor, in the exercise of reasonable diligence, should have discovered the facts

8   underlying the alleged fraud.'"  *Berry v. Valence Technology, Inc.*, 175 F.3d 699, 704 (9th Cir.

9   1999) (quoting *Sterlin v. Biomune Sys.,* 154 F.3d 1191, 1201 (10th Cir. 1998)).  The two

10   questions courts ask in determining exactly when the statute of limitations begins to run are, first,

11   "did the . . . [triggering document] raise sufficient suspicion of fraud to cause a reasonable

12   investor to investigate the matter further" and, second, "when should a reasonably diligent

13   investor have discovered the facts underlying the alleged fraudulent activity?"  *Berry,* 175 F.3d at

14   704; *see also Betz v. Trainer Wortham & Co.,* 486 F.3d 590, 596 (9th Cir. 2007) (adopting

15   inquiry notice standard and analysis holding that "[a] plaintiff is on inquiry notice when there

16   exists sufficient suspicion of fraud to cause a reasonable investor to investigate the matter

17   further").  The answer to the second question determines when the statute of limitations period

18   begins to run.  *Id.*

19        The 2004 Prospectus and Registration Statement on which the SAC is based were filed

20   with the SEC on February 27, 2004.[13]  RJN Exhs. C at 1; G at 1-2.  Plaintiffs allege that they and

21   the members of the proposed class received the Prospectus, SAC ¶ 37, and are thus obviously

22   charged with knowledge of the contents of that document throughout the class period.  The

23

---

[13]   The Funds filed their Registration Statement with the SEC on Form N1-A, which included
the Funds' Prospectus, Statement of Additional Information ("SAI"), and other information
concerning the Funds, including the Form of Dealer Agreement.  RJN Exh. C at 126, RJN
Exh. D.  The Prospectus, which was delivered to all purchasers, informed investors that other
information about the Funds, apart from that in the Prospectus and SAI, had been filed with
and was publicly available through the SEC.  RJN Exh. C at 106 ("You may . . . request other
information about the WM Group of Funds . . . by contacting your financial advisor, by
calling toll-free 1-800-222-5852, or by visiting www.wmgroupoffunds.com. . . .  [¶] You
may also access reports and other information about the Portfolios and Funds on the EDGAR
database or the [SEC's] Internet website at http://www.sec.gov.").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3           17       DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   language of the 2004 Prospectus itself necessarily put every purchaser on notice that WM

2   Advisors and WM Distributor may, at their own expense, pay additional fees to dealers such as

3   WMFS selling the WM Portfolios.  Moreover, the Funds' 2004 Registration Statement (of which

4   the Prospectus was a part) included a specimen "Form of Dealer Agreement" between WM

5   Distributor and WM Advisors and broker-dealers such as WMFS, specifically disclosing the

6   material terms under which WM Distributor and WM Advisors agreed to pay broker-dealers in

7   connection with sales of the Funds, including the Advisor-Paid Fee in connection with the WM

8   Portfolios.[14]  RJN Exh. D at 5-7, 11.  These public disclosures at a minimum put all purchasers

9   who might be uncertain as to the nature of WMFS' compensation on inquiry notice as to the

10  existence of additional compensation, starting the one-year statute upon the date of purchase.

11  *Berry*, 175 F.3d at 704.

12      The Funds also filed a revised Registration Statement with the SEC on December 30,

13  2004,[15] disclosing, in pertinent part:

14          WM ADVISORS ALSO OFFERS REVENUE SHARING PAYMENTS,
            REFERRED TO AS AN "ADVISOR PAID FEE" TO ALL FINANCIAL
15          INTERMEDIARIES WITH ACTIVE SELLING AGREEMENTS WITH THE
            DISTRIBUTOR.  THE ADVISOR FEE IS PAID AT AN ANNUAL RATE OF
16          UP TO 0.50% OF THE AVERAGE NET ASSETS OF CLASS A AND CLASS
            B SHARES OF THE PORTFOLIOS SOLD THROUGH SUCH
17          INTERMEDIARIES…. THESE PAYMENTS ARE MADE FROM WM
            ADVISORS' PROFITS AND MAY BE PASSED ON TO YOUR
18          INVESTMENT REPRESENTATIVE AT THE DISCRETION OF HIS OR HER
            FINANCIAL INTERMEDIARY FIRM. THESE PAYMENTS MAY CREATE
19          AN INCENTIVE FOR THE FINANCIAL INTERMEDIARIES AND/OR
            INVESTMENT REPRESENTATIVES TO RECOMMEND OR OFFER
20          SHARES OF THE PORTFOLIOS OVER OTHER INVESTMENT
            ALTERNATIVES.
21
22  RJN Exh. E at 5 (emphasis in original).  The revised Registration Statement disclosed, in detail,

23  the nature of payments made to selling dealers such as WMFS, that broker-dealers and investment

24  _____

    [14]  The disclosures in the Registration Statement also negate any claim of a material
25      misstatement in the 2004 Prospectus, although the Court need not reach that issue to find
        Plaintiff's claims barred by the statute of limitations, and this brief does not address that
26      issue.

27  [15]  As required for issuers that continuously offer securities, the Funds periodically filed "post-
        effective amendments" to their Registration Statement.  The December 30, 2004 Registration
28      Statement, filed pursuant to SEC Rule 485(a)(1), 17 C.F.R. § 230.485(a)(1), with registration
        to become effective March 1, 2005, was such an amendment.  RJN Exh. E at 1.

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

18

1   representatives may as a result be incented to recommend the WM Portfolios over other

2   investment alternatives, and advised investors:  "Please speak with your investment representative

3   to learn more about the total amounts paid to your investment representative and his or her

4   financial intermediary by the Portfolios, the Distributor, WM Advisors and by sponsors of other

5   mutual funds he or she may recommend to you."  RJN Exh. E at 6.  The Funds filed a final

6   revised prospectus on February 28, 2005 repeating these disclosures with additional specifics.

7   RJN Exh. F at 3-6; 8-10.

8          There is also no dispute that investors in the Funds were on actual notice as a result of

9   these public disclosures by December 30, 2004 of the facts constituting the alleged fraud of which

10   Plaintiffs now complain.  Plaintiffs were required to file suit, at the latest, on December 29, 2005.

11   Lead Plaintiff did not do so until February 28, 2007, over one year after the notice statute of

12   limitations for claims under the Securities Act had expired, and Plaintiff Higareda did not do so

13   until February 6, 2008, almost two years after it expired.  Accordingly, Plaintiffs' Securities Act

14   claims should be dismissed with prejudice.

15          **B.      The Exchange Act Claims Are Time-Barred.**

16          Under the Sarbanes-Oxley Act of 2002, claims for securities fraud under the Exchange Act

17   must be asserted within two years of the date on which Plaintiff first had actual or inquiry notice

18   of the facts underlying the asserted fraud.  28 U.S.C. § 1658(b).  Recently, the Ninth Circuit

19   confirmed that the standard for inquiry notice it had applied to Securities Act claims in *Berry*

20   likewise governs claims under the Exchange Act.  *Betz*, 486 F.3d at 596; *see also Livid Holdings*

21   *Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 951 (9th Cir. 2005).

22          As explained above, Plaintiffs had inquiry notice of the allegedly misleading statements by

23   no later than February 27, 2004, and actual notice by no later than December 30, 2004.  Plaintiffs'

24   purported Exchange Act claims therefore expired no later than December 29, 2006, and their suit

25   filed two months later should be dismissed with prejudice.

26

27

28

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW

1-SF/7681274.3

19

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-385-DMS-CAB)

**VII.   CONCLUSION**

This is Defendants' third motion to dismiss in this case, and Plaintiffs' moving-target pleading has not improved.  Despite three attempts to plead claims for federal securities fraud, first on behalf of Lead Plaintiff and now Higareda, Plaintiffs have utterly failed to satisfy even the threshold requirements of standing and statutes of limitations on their purported claims.  These defects are not matters of form or technicality, but are inherent in the Plaintiffs themselves and cannot be cured by amendment.  Thus, the SAC should be dismissed with prejudice.

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP
MICHAEL J. LAWSON, SBN 66547
JOSEPH E. FLOREN, SBN 168292
LISA A. FREITAS, SBN 227109
SHEILA A. JAMBEKAR, SBN 239101
One Market, Spear Street Tower
San Francisco, CA  94105-1126
Tel:  415.442.1000
Fax:  415.442.1001
Email: michael.lawson@morganlewis.com
       jfloren@morganlewis.com
       lfreitas@morganlewis.com
       sjambekar@morganlewis.com


By: _____/s/_____
          Joseph E. Floren

Attorneys for Defendants Washington Mutual, Inc. and WaMu Investments, Inc. (f/k/a WM Financial Services, Inc.)

DATED:  March 21, 2008

O'MELVENY & MYERS LLP
PHILLIP R. KAPLAN, SBN 76949
MARCUS S. QUINTANILLA, SBN 205994
ANDREW R. ESCOBAR, SBN 249242
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660-6429
Tel:  949.760.9600
Fax:  949.823.6994
Email: pkaplan@omm.com
       mquintanilla@omm.com
       aescobar@omm.com

By: _____/s/_____
          Phillip R. Kaplan

Attorneys for Defendants WM Advisors, Inc., WM Distributor, Inc., Edge Asset Management, Inc., Principal Financial Group, Inc., Principal Investors Fund, Inc., Principal Funds Distributor, Inc., WM Trust I, WM Trust II, and WM Strategic Asset Management Portfolios LLC

DATED:  March 21, 2008

Morgan, Lewis &
Bockius LLP
Attorneys At Law

1-SF/7681274.3

20

DEFENDANTS' MEMO. SUPPORTING MOTION
TO DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)