1  **FINKELSTEIN & KRINSK LLP**
   Jeffrey R. Krinsk (State Bar No. 109234)
2  Mark L. Knutson (State Bar No. 131770)
   William R. Restis (State Bar No. 246823)
3  501 West Broadway, Suite 1250
   San Diego, California 9210-3579
4  Telephone: (619)238-1333
   Facsimile: (619) 238-5425
5
   Attorneys for plaintiff
6  Luz. M. Zapien and Maria Carmen Higareda

7

8                **UNITED STATES DISTRICT COURT**
                 **SOUTHERN DISTRICT OF CALIFORNIA**
9                       **AT SAN DIEGO**

10

11 | LUZ M. ZAPIEN, and MARIA CARMEN          )   Case No. 3:07-cv-00385-DMS-CAB
   | HIGAREDA, Individually And On Behalf Of All )
12 | Others Similarly Situated,                )
                                              )
13 |                    Plaintiffs,            )   **PLAINTIFFS' AMENDED**
                                              )   **OPPOSITION TO DEFENDANTS'**
14 |                                          )   **MOTION TO DISMISS PLAINTIFFS'**
                                              )   **SECOND AMENDED COMPLAINT**
15 | v.                                        )
                                              )   Date:    May 9, 2008
16 |                                          )   Time:    1:30 p.m.
   | WASHINGTON MUTUAL, INC., WM TRUST I,      )   Place:   Courtroom 10, 2nd Floor
17 | WM TRUST II, WM STRATEGIC ASSET           )   Judge:   Hon. Dana M. Sabraw
   | MANAGEMENT PORTFOLIOS, LLC, WM            )
18 | FINANCIAL SERVICES, INC., WM ADVISORS,    )
   | INC., WM FUNDS DISTRIBUTOR, INC., EDGE    )
19 | ASSET MANAGEMENT, INC., PRINCIPAL         )
   | FINANCIAL GROUP, INC., PRINCIPAL          )
20 | INVESTORS FUND, INC., PRINCIPAL FUNDS     )
   | DISTRIBUTOR, INC.,                        )
21 |                                          )
   |                    Defendants.            )
22 |                                          )
   | _____  )
23

24

25

26

27

28 | PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
   | COMPLAINT

# TABLE OF CONTENTS

I. INTRODUCTION .................................................... 1

II. SUMMARY AND BACKGROUND OF FACTS IN THE SECOND AMENDED COMPLAINT ..................................................... 2

III. STANDARDS FOR 12(b)(6) MOTION TO DISMISS .......................... 3

IV. ARGUMENT ...................................................... 4

    A. THE JOINDER OF PLAINTIFF HIGAREDA IS PROPER ................. 4

    B. PLAINTIFFS HAVE STANDING TO ASSERT ALL CLAIMS ALLEGED ... 6

        1. Plaintiffs Have Article III Standing Against Each Defendant Because Money Was Diverted From All WAMU Funds For The APF ................ 6

        2. Plaintiff Has Statutory Standing To Sue Because All WAMU Funds Were Issued Pursuant To Joint Registration Statements/Prospectuses ........ 9

    C. PLAINTIFF'S CLAIMS ARE NOT TIME BARRED ................... 12

        1. The Ninth Circuit Uses An "Inquiry-Plus-Reasonable-Diligence Test" ...................... 13

        2. Defendants' March 2004 Purported "Disclosures" Were Not Probative Of Fraud ............................... 14

        3. The "Form Of Dealer Agreement" Was Not Part Of The Prospectus Or SAI, And Was Not Referenced By Those Documents ........................................ 15

        4. The March 1, 2005 Prospectus Did Not Put Plaintiff On Inquiry Notice Because The Disclosures Therein Were Not Corrective And Purported To Reflect A Change In Practice ...... 17

    D. THE COURT'S JANUARY 17, 2008 ORDER GRANTING LEAVE TO AMEND PERMITTED ENLARGEMENT OF THE CLASS DEFINITION BASED ON NEW FACTS ......................................................... 18

E.      THE SAC'S CLASS DEFINITION IS NOT A MATTER FOR A MOTION TO
        DISMISS ........................................................ 19

F.      PLAINTIFFS MAY EXPAND THE SCOPE OF THE CLASS ............. 21

G.      PLAINTIFFS ARE NOT REQUIRED TO FILE AN ADDITIONAL PSLRA
        NOTICE ......................................................... 22

H.      THE CLAIMS OF PLAINTIFF HIGAREDA RELATE BACK TO THE ORIGINAL
        COMPLAINT ..................................................... 22

        1.      Plaintiff Zapien's Original Complaint Gave
                Defendants Adequate Notice ................................... 22

        2.      Defendants Are Not Prejudiced By Amending
                the Class Definition ........................................ 23

        3.      Plaintiffs Zapien and Higareda Share
                an Identity of Interest ..................................... 24

V.      CONCLUSION .................................................... 25

ii

1

**TABLE OF AUTHORITIES**

2

3

**FEDERAL CASES**

4  Abdallah v. Coca-Cola Co.

5      Civ.A. 1:98CV3679-RW, 1999 WL 527835 (N.D.Ga.1999) . . . . . . . . . . . . . . . 20

6  Adams v. Johnson

7      355 F.3d 1179 (9th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8  Andrews v. Bechtel Power Corp.

9      780 F.2d 124 (1st Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

10  Backhaus v. Streamedia Commc'n, Inc.

11      Fed. Sec. L. Rep. 91,964, 2002 WL 1870272 (S.D.N.Y. 2002) . . . . . . . . . . . . . 14

12  Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgm't L.P.

13      435 F.3d 396 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

14  Besig v. Dolphin Boating & Swimming Club

15      683 F.2d 1271 (9th Cir.1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

16  Betz v. Trainer Wortham & Co., Inc.

17      _F.3d_,2008 WL 495890 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15,16,18

18  Blue Chip Stamps v. Manor Drug Stores

19      421 U.S. 723 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,12

20  Briskin v. Ernst & Ernst

21      589 F.2d 1363 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

22  Bromley v. Michigan Educ.Ass'n - NEA

23      178 F.R.D. 148 (E.D. Mich., 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

24  Bull v. Chandler

25      C-86-5710 MHP 1992 WL 103686 (N.D.Cal., 1992) . . . . . . . . . . . . . . . . . . . . . 14

26  Calvi v. Prudential Secs., Inc.

27      861 F.Supp. 69  (C.D.Cal.,1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28

iii

Cetel v. Kirwan Financial Group, Inc.

      460 F.3d 494 (3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cheney v. Cyberguard Corp.

      213 F.R.D. 484 (S.D.Fla.2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Clair v. DeLuca

      232 F.R.D. 219 (W.D.Pa. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Cooperman v. Individual Inc.

      171 F.3d 43 (1st Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Dale v. Rosenfeld

      229 F.2d 855 (2d Cir. 1956) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

DeBruyne v. Equitable Life Assur. Soc. of U.S.

      920 F.2d 457 (7th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Dodds v. Cigna Sec., Inc.

      12 F.3d 346 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Fallick v. Nationwide Mut. Ins. Co.

      162 F.3d 410 (6th Cir.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fishbury, Ltd. v. Connetics Corp.

      06CIV.11496SWK, 2006 WL 3711566 (S.D.N.Y., Dec. 14, 2006) . . . . . . . . . . 10

Franze v. Equitable Assurance

      296 F.3d 1250 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fuller v. Volk

      351 F.2d 323 (3d Cir.1965) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Goldberger v. Bear, Stearns & Co., Inc.

      98 CIV. 8677 (JSM) 2000 WL 1886605 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . . 7

Great Rivers Coop. of S.E. Iowa v. Farmland Indus., Inc.

      120 F.3d 893 (8th Cir.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Green v. Wolf Corp.

  406 F.2d 291 (2d Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hacker v. Guaranty Trust Co.

  117 F.2d 95 (2d Cir.1941) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Hardy v. City Optical Inc.

  39 F.3d 765 (7th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Havenick v. Network Exp., Inc.

  981 F.Supp. 480 (E.D.Mich.1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Hevesi v. Citigroup, Inc.,

  366 F.3d 70 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Hnot v. Willis Group Holdings Ltd.

  1Civ. 6588(GEL), 2006 WL 3476746(S.D.N.Y. Nov. 30, 2006) . . . . . . . . . . . . 23

In re AIG Advisor Group Sec. Litig.

  98 Civ 8677(JSM), 2007 WL 1213395 (E.D.N.Y., Apr. 25, 2007) . . . . . . . . . . 7,8

In re Apple Computer Sec. Litig.

  886 F.2d 1109 (9th Cir.1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

In re Complete Mgmt. Inc. Sec. Litig.

  153 F.Supp.2d 314 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Dreyfus Aggressive Growth Mutual Fund Litig.

  98 CIV.4318(HB), 2000 WL 1357509 (S.D.N.Y., Sept. 20, 2000) . . . . . . . . . . . 10

In re Dynegy, Inc. Sec. Litig.

  226 F.R.D. 263 (S.D.Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

In re Eaton Vance Corp. Sec. Litig.

  219 F.R.D.38 (D. Mass. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,10

In re Exodus Comm. Sec. Litig.

  C-01-2661, MMC,2006 WL 2355071(N.D. Cal., Aug. 14, 2006) . . . . . . . . . . . . 5

1

2    In re Enron Corp. Sec., Derivative & Erisa Litig.

3                MDL-1446, Civ.A. H-01-3624, 2004 WL 405886

4                (S.D.Tex., Feb. 25, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

5    In re Franklin Mutual Funds Fee Litig.

6                388 F.Supp.2d 451 (D.N.J. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7    In re Global Crossing, Ltd. Sec. Litig.

8                313 F.Supp.2d 189 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

9    In re HiEnergy Tech., Inc. Sec. Litig.

10                8:04CV01226 DOCJTLX, 2006 WL 2780058 (C.D.Cal., Sept. 26, 2006) . . . . 22

11   In re Infonet Serv. Corp. Sec. Litig.

12                310 F.Supp.2d 1106 (C.D.Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

13   In re Initial Pub. Offering Sec. Litig.

14                224 F.R.D. 550 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

15   In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund

16   (Retirement Accounts) II, L.P. Sec. Litig.

17                848 F.Supp. 527 (D.Del. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

18   In re Merck & Co., Inc. Sec., Derivative & "Erisa" Litig.

19                483 F.Supp.2d 407 (D.N.J. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

20   In re Merck & Co., Inc. Sec. Litig.

21                432 F.3d 261 (3d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5,18

22   In re Merrill Lynch Inv. Mgm't Funds Sec. Litig.

23                434 F.Supp.2d 233 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

24   In re Monumental Life Ins. Co.

25                365 F.3d 408 (5th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

26   In re Mutual Funds Inv. Litig.

27                519 F.Supp.2d 580 (D.Md. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28                                                    vi

In re Pressure Sensitive Labeldstock Antitrust Litig.

       1556 3:03-MDL-1556, 2006 WL 433891 (M.D.Pa., Feb. 21, 2006) . . . . . . . . . . 24

In re Prudential Ins. Co. of Am. Sales Practices Litig.

       975 F.Supp. 584 (D.N.J.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Select Comfort Corp. Sec.Litig.

       202 F.R.D. 598 (D. Minn. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

In re Sterling Foster & Co., Inc., Sec. Litig.

       222 F.Supp.2d 216 (E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

In re Syntex Corp. Sec. Litig.

       95 F.3d 922 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,24,25

In re Walmart Wage and Hour Litig.

       505 F.Supp.2d 609 (N.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19,20

Kauffman v. Dreyfus Fund, Inc.

       434 F.2d 727 (3d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

L.H. v. Schwarzenegger

       CIV. S-06-2042 LKK/GGH, 2008 WL 268983 (E.D.Cal., Jan. 29, 2008) . . . . . 24

Lapin v. Goldman Sachs Group, Inc.

       506 F.Supp.2d 221 (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lierboe v. State Farm Mut. Automobile Ins. Co.

       350 F.3d 1018 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Livid Holdings Ltd. v. Salomon Smith Barney, Inc.

       416 F.3d 940 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lujan v. Defenders of Wildlife

       504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,9

Lujan v. Nat'l Wildlife Fed'n.

       497 U.S. 871 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,9

1  Marlow v. Gold

        89 Civ. 8589 (JSM), 1991 WL 107268 (S.D.N.Y. June 6, 1991) . . . . . . . . . . . 15

3  Mathews v. Kidder, Peabody & Co.

        260 F.3d 239 (3d Cir.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

5  McClune v. Shamah

        593 F.2d 482 (3d Cir.1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7  Meadows v. Pac. Inland Sec. Corp.

        36 F.Supp.2d 1240 (S.D.Cal.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16,18

9  Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.

        501 U.S. 252 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11  Miller v. Thane Int'l, Inc.

        _F.3d_ , 2008 WL 706858 (9th Cir., Mar. 18, 2008) . . . . . . . . . . . . . . . . 15,16,17

13  Mills v. Foremost Ins. Co.

        511 F.3d 1300 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

15  Mutchka v. Harris

        373 F.Supp.2d 1021 (C.D.Cal.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6,7

17  Myers v. MedQuist, Inc.

        No. 05-4608, 2006, WL 3751210 (D.N.J. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . 20

19  Negrete v. Allianz Life Ins. Co. of North America

        238 F.R.D. 482 (C.D.CaL., 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

21  Neilson v. Union Bank of California, N.A.

        290 F.Supp.2d 1101 (C.D.Cal. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

23  Newman v. Warnaco Group, Inc.

        335 F.3d 187 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,15,18

P Stolz Family Partnership v. Duam

    355 F.3d 92 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Pigford v. Johanns

    416 F.3d 12 (D.C. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Pitt v. City of Portsmouth, Va.

    221 F.R.D. 438 (E.D. Va. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Robidoux v. Celan

    987 F.2d 931 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

S.E. C. v. Seaboard Corp.

    677 F.2d 1301 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Shin v. Cobb County Bd. of Educ.

    248 F.3d 1061 (11th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Steel Co. v. Citizens for a Better Env't

    523 U.S. 83 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,10

Stringfellow v. Concerned Neighbors in Action

    480 U.S. 370 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Tellabs, Inc. v. Makor Issues & Rights, Ltd.

    127 S.Ct. 2499 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Turner v. Murphy Oil USA, Inc.

    234 F.R.D. 597 (E.D.La. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Vervaecke v. Chiles, Heider & Co., Inc.

    578 F.2d 713 (8th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8,11

Vucinich v. Paine, Webber, Jackson & Curtis, Inc.

    739 F.2d 1434 (9th Cir.1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Walters v. Edgar

    163 F.3d 430 (7th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1   Warden v. Crown American Realty Trust

2       Civ. A. 96-25J, 1998 WL 725946 (W.D.Pa., Oct. 15, 1998) . . . . . . . . . . . . . . . . 5

3                                **STATUTES**

4   15 U.S.C. § 77l(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,11

5   15 U.S.C. § 77k(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

6   15 U.S.C. § 77m . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

7   15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8   15 U.S.C. § 80a-12(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,24

9   28 U.S.C. § 1658(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

10  17 C.F.R. § 230.411(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11  17 C.F.R. § 270.12b1(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

12  NASD Rule 2830(d)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,3

13                            **OTHER AUTHORITY**

14  FEDERAL PRACTICE AND PROCEDURE CIVIL §1785.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

15  Fed.R.Civ.P. 15(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        x

1    Plaintiffs Luz. M. Zapien ("Zapien") and Maria Carmen Higareda ("Higareda," collectively

2    "Plaintiffs") respectfully submit this Opposition to Defendants' Motion to Dismiss Plaintiffs' Second

3    Amended Complaint (the "Motion"). The Court has instructed the parties to address the issues of:

4    1) standing, 2) statutes of limitations, and 3) class definition. Docket No. 63.

5    **I.     INTRODUCTION**

6    Although Plaintiff Higareda was added to cure standing issues at the express direction of

7    the Court following the January 11, 2008 hearing, Defendants' central argument is that the Court was

8    incorrect in its ruling. Def. Mot. § IV.B. However, Defendants have not sought reconsideration of

9    the Court's January 17, 2008 Order, nor sought interlocutory appeal to the Ninth Circuit under 28

10   U.S.C. § 1292(b). Their attempt to revisit issues already decided, for example, that Plaintiff Higareda

11   may not be joined (Def. Mot. § IV.B), or that dividend reinvestments are not "purchases" under the

12   securities laws (Def. Mot. at 5:12, 5:n.6) are simply improper and inappropriate.

13   Defendants' Motion is replete with issues unsupported by citation to authority. *See e.g.*,

14   Def. Mot. 2:8-12, 2:23-25, 13:5-8, 14:20-22, 14:27-15:2, 16:12-14. Those arguments tethered to

15   citation often prove to be withdrawn or vacated opinions (Def. Mot. at ii:9, iii:4), or *simulated quotes*

16   from controlling authority. Def. Mot. at 16:18-22. Defendants also address irrelevant issues (*e.g.*,

17   PSLRA notice, Def. Mot. at 13:5-8; 14:18-22) and provide cursory analysis of what are often

18   technical legal rules (*e.g.*, statutory standing, Def. Mot. at § IV.D), proving that the *sub*

19   *judice* Motion is meritless.

20   Although Plaintiffs' factual allegations in the Second Amended Complaint ("SAC")

21   significantly fortify the case and establish that Defendants were engaged in highly improper, even

22   illegal programs, Defendants have chosen not to address these new facts, instead attempting to

23   question the veracity of those allegations by stating that Plaintiffs failed to allege how these facts

24   were discovered. Def. Mot. at 16:12. And although Defendants claim to be prejudiced by the

25   addition of Plaintiff Higareda and the enlargement of the potential class (Def. Mot. at 14:12-13),

26

27

28

Defendants have not identified what this phantom prejudice is, other than insistence on accountability for their misdeeds.

## II.   SUMMARY AND BACKGROUND OF FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

Plaintiff Zapien filed this lawsuit on February 28, 2007. Docket No. 1. According to the complaint, Defendants systematically adopted a scheme intended to cause broker-dealers to abdicate their fiduciary obligations to customers by providing an undisclosed financial incentive to sell mutual funds in the WM Group of Funds (the "WAMU Funds"). Docket No. 1. Defendants WM Trust I, WM Trust II and WM Strategic Asset Management Portfolios (collectively the "Registrants"), used payments to WM Advisors, Inc. ("WAMU Advisor") and WM Funds Distributor, Inc. ("WAMU Distributor") to surreptitiously kickback a percentage of the funds under management to broker dealers in exchange for placing clients in WAMU Funds. Docket No. 1, at ¶ 24. This conflict of interest, as intended, compromised client interests and precluded consideration of alternative investments. Docket No. 1, at 34(c).

On August 24, 2007, Plaintiff Zapien filed a First Amended Complaint ("FAC"), alleging that the steering programs extended back to, at least, March 1, 2000. Docket No. 35, at ¶¶ 31, 32. Zapien's FAC identified the portions of the joint registration statement/prospectuses prior to March 1, 2004 that failed to disclose the payments made to broker/dealers through the WM Advisor. Docket No. 35 at ¶ 31 The payments, called "Advisor Paid Fees" ("APF") are the central allegation of the FAC and SAC. *See*, 23(c).

On February 6, 2008, as the Court instructed, Plaintiff Higareda was joined as an additional plaintiff. The SAC takes issue with representations in the Registrants' March 1, 2004 and 2005 prospectuses stating that an APF of 50 basis points ("BP") "may" be paid, when such statements were false. *E.g.*, SAC ¶ 47. While the APF was **75** BP during all relevant times (SAC ¶¶ 32(c), 37(c),) payment of the APF, whatever the amount, was in addition to the amounts paid to brokers pursuant to the Defendants' "12b-1 plan", and was thus illegal under section 12(b) of the Investment Advisor Act of 1940 (SAC ¶¶ 13-21; 15 U.S.C. § 80a-12(b),) and NASD Rule 2830(d)(5). SAC ¶ 17.

1    SEC Rule 12b-1 only allows Defendants to bear distribution related expenses such as sales

2  compensation and advertising under strictly controlled circumstances, and only pursuant to a "12b-1

3  plan" approved by the fund's shareholders.17 C.F.R. § 270.12b1(b). Defendants had a 12b-1 plan

4  (SAC § II.B) and were paying brokers the maximum amount allowed – 25 BP – pursuant to that plan.

5  *See* NASD Rule 2830(d)(5). The APF was *three times* the maximum allowed by law and was in

6  addition to and separate from Defendants' 12b-1 plan, and did not follow the strictures of SEC Rule

7  12b-1.

8    In 2004 alone, approximately $67,000,000 was siphoned from putative class members'

9  "management fees" to fund the APF . SAC ¶ 5. Based on this new information, Plaintiffs identified

10  additional purported disclosures from the March 1, 2002 and March 1, 2003 WAMU Funds

11  prospectus that were false and misleading in light of the APF program. *See* FAC ¶ 33. Finally, in light

12  of the additional allegations in the SAC, Plaintiffs recrafted the class definition to include:

13      All persons or entities that purchased or otherwise acquired shares, units or like
        interests in any of the WAMU Funds (including through the reinvestment of Fund
14      dividends), on or before, at least, March 1, 2005, or such other class, classes or
        periods of time as the Court deems appropriate.

15  SAC ¶ 86.

16  **III.    STANDARDS FOR 12(b)(6) MOTION TO DISMISS**

17    A motion to dismiss for failure to state a claim shall be denied unless it "appears beyond

18  doubt that the plaintiff can prove no set of facts in support of the claim entitling plaintiff to relief."[1]

19  When ruling on a motion to dismiss, the court must accept all factual allegations in the complaint as

20  true[2] and "the allegations are construed in the light most favorable to the non-moving party."[3] The

21  task of the court in ruling on a Rule 12(b)(6) motion is "merely to assess the legal feasibility of the

22  complaint, not to assay the weight of the evidence which might be offered in support thereof." [4]

23

24      [1] Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).

25      [2] Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007).

26      [3] Adams v. Johnson, 355 F.3d 1179, 1183 (9th Cir.2004) .

27      [4] Neilson v. Union Bank of California, N.A., 290 F.Supp.2d 1101, 1151 (C.D.Cal. 2003).

28  PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
    COMPLAINT

1  IV.  **ARGUMENT**

2  **A.  THE JOINDER OF PLAINTIFF HIGAREDA IS PROPER**

3      Defendants simultaneously assert that they "should not be made to suffer the consequences

4  of Plaintiffs' delay" in adding Plaintiff Higareda (Def. Mot. at 8:19), yet "Higareda should be required

5  to file a new action if she wishes to proceed with her purported claims." Def. Mot. at 9:15. But this

6  Court has previously directed that Plaintiff Higareda could be joined as Plaintiff to moot Defendants'

7  argument.[5] In fact, the addition of Ms. Higareda was at least partially in response to Defendants'

8  earlier position in seeking dismissal of the FAC that Higareda is the real party in interest. *See* Docket

9  No. 41-2, at 10:19-21, 18:4-5.

10     Defendants' attempt to color a joinder/intervention issue as one of "standing" (Def. Mot. at

11  §§ IV.A, and B), is baseless because the addition of Plaintiff Higareda is a procedural matter that this

12  Court has an absolute right under FRCP 24(b)(2) and 25(c) to allow.[6] This Court's earlier resolution

13  tracks In re Enron Corp. Sec., Derivative & Erisa Litig. where the issue was similarly resolved:

14          even though intervention "contemplates an existing suit in a court of competent
            jurisdiction," if the original claims have been dismissed for lack of jurisdiction, a
15          court has the discretion to treat a pleading for intervention, where the intervenor has
            a separate and independent basis for jurisdiction and where the failure to adjudicate
16          the claim will only result in unnecessary delay, as a separate action that may continue
            the suit. Fuller v. Volk, 351 F.2d 323, 328-29 (3d Cir.1965) ("By allowing the suit
17          to continue with respect to the intervening party, the court can avoid the senseless
            'delay and expense of a new suit, which at long last will merely bring the parties to
18          the point where they now are." '), citing Hacker v. Guaranty Trust Co., 117 F.2d 95,
            98 (2d Cir.1941), cert. denied, 313 U.S. 559, 61 S.Ct. 835, 85 L.Ed. 1520 (1941).
19
        No. MDL-1446, Civ.A. H-01-3624, 2004 WL 405886, * 7 (S.D.Tex., Feb. 25, 2004).
20
        Defendants' position that Plaintiff Higareda should be required to file a new action (Def. Mot. at
21
        9:15) is precisely the type of "senseless delay," which courts routinely
22

23
            [5] *See* Docket No. 49 at 6 (Plaintiff Zapien "requested leave to add or substitute her mother
24      as lead plaintiff, and to plead additional facts. The Court agrees that leave to amend is appropriate.")

25          [6] *See* Stringfellow v. Concerned Neighbors in Action, 480 U.S. 370, 382 (1987) ("the
        decision whether to grant permissive intervention resides largely in the discretion of the district
26      court."); In re Bernal 207 F.3d 595, 598 (9th Cir. 2000) (substitution per FRCP 25(c) is
27      discretionary).

28

seek to avoid. Id..[7]

As to Defendants' equally bold assertion that the addition of Plaintiff Higareda does not satisfy the "lead plaintiff" requirements of the Private Securities Litigation Reform Act ("PSLRA") (Def. Mot., at 8), the law contradicting this premise is legion. A defendant does not have standing to contest a court's lead plaintiff appointment.[8] Further, Plaintiff Zapien's motion for appointment as lead plaintiff disclosed that Plaintiff Higareda was the record owner of her daughter's shares, foreclosing any notion of prejudice.[9] In addition, Plaintiff Higareda may be appointed lead (or co-lead) Plaintiff should the Court so require.[10] The above authority makes clear that revisiting this issue is unnecessary.

---

[7] The cases cited by Defendants are inapposite. The unpublished opinion of In re Exodus Comm. Sec. Litig. is distinguishable because decided upon a *motion* to intervene, where this Court has already ruled on the issue of Higareda's joinder. C-01-2661 MMC, 2006 WL 2355071(N.D. Cal., Aug. 14, 2006). The case of Lierboe v. State Farm Mut. Automobile Ins. Co. was decided on appeal. The court vacated class certification after a subsequent ruling by the trial court held the named plaintiff had no cognizable claim under state law. 350 F.3d 1018, 1020 (9th Cir. 2003). The Lierboe court was *solely* addressing whether the named plaintiff could satisfy the requirements of FRCP 23, and did not address addition or substitution of parties. Id. at 1022-23. The case of Walters v. Edgar was also an appeal of dismissal following certification, and its discussion only addressed the context of *certified* class actions. 163 F.3d 430, 432 (7th Cir. 1998).

McClune v. Shamah, 593 F.2d 482, 486 (3d Cir.1979) was not a class action, and its logic thus inapposite. Warden v. Crown American Realty Trust, Civ. A. 96-25J, 1998 WL 725946, *5 (W.D.Pa., Oct. 15, 1998) (McClune rule applies "outside the class action context"), *aff'd*, 229 F.3d 1140 (3d Cir. 2000); Bromley v. Michigan Educ.Ass'n - NEA , 178 F.R.D. 148, 157 (E.D. Mich., 1998) ("*McClune* does not hold that plaintiffs cannot intervene prior to class certification as party representatives in a class action to cure a deficiency.")

[8] In re Merck & Co., Inc. Sec. Litig. 432 F.3d 261, 267 (3d Cir.2005) ("weight of authority" holds that defendants do not have standing to challenge lead plaintiff designation. "This makes sense because defendants will rarely have the best interests of the class at heart"); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (allowing only "a member of the purported plaintiff class" to rebut the lead plaintiff presumptions).

[9] *See* Complaint, Docket No. 1, at ¶ 9 ("Plaintiff [Zapien] purchased her shares, units or other like interests in the name of her mother, Maria Carmen Higareda").

[10] *See e.g.,* In re Initial Pub. Offering Sec. Litig., 224 F.R.D. 550, 552 (S.D.N.Y., 2004) (granting request to substitute lead plaintiff where it was determined that existing lead plaintiff had not purchased shares during the alleged class period).

---

**B.    PLAINTIFFS HAVE STANDING TO ASSERT ALL CLAIMS ALLEGED**

Defendants broadly claim that Plaintiffs do not have "standing" to assert Securities Act and Exchange Act claims on behalf of purchasers of shares in the entire family of WAMU Funds. Def. Mot. at §§ IV.C and D. This is untrue. Shareholders in one mutual fund have standing to assert claims on behalf of shareholders in the same *family of funds*.[11]

While both Article III standing and statutory standing may be implicated here,[12] Defendants' analysis impermissibly conflates separate issues (Def. Mot. at §§ IV.C and D), and unsurprisingly arrives at the erroneous conclusion that Plaintiffs' lack standing. However, for the purposes of determining standing, the Court is directed to accept as true all material allegations set forth in Plaintiffs' SAC and construe those facts in Plaintiffs' favor.[13] And under controlling authority, Defendants arguments charging lack of Article III standing are to be rejected if Plaintiffs allege that Defendants' actions caused them injury, at which point the Court is to presume that "general allegations embrace those specific facts that are necessary to support the claim."[14]

**1.    Plaintiffs Have Article III Standing Against Each Defendant Because Money Was Diverted From All WAMU Funds For The APF**

To have Article III standing, a Plaintiff must allege: (1) an injury-in-fact that is (2) traceable to the challenged act of the defendant, and (3) redressable by the court.[15] Addressing Article III standing in an identical context, the court in In re Franklin Mutual Funds Fee Litig.[16] held that "in

---

[11] Mutchka v. Harris 373 F.Supp.2d 1021, 1024 (C.D.Cal., 2005); In re Mutual Funds Inv. Litig., 519 F.Supp.2d 580, 583-90 (D.Md. 2007); In re Merrill Lynch Inv. Mgm't Funds Sec. Litig., 434 F.Supp.2d 233, 236 (S.D.N.Y. 2006).

[12] In re Mutual Funds Inv. Litig., 519 F.Supp.2d at 583-90.

[13] Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc., 501 U.S. 252, 264 (1991).

[14] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 889 (1990).

[15] Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

[16] In re Franklin Mutual Funds Fee Litig., 388 F.Supp.2d 451, 461 (D.N.J. 2005); *see also* Id. at 461-62 ("plaintiffs may assert claims on behalf of investors in the one hundred other funds, but only to the extent that the named plaintiffs properly pleaded direct claims against those defendants.")

---

1    order to establish standing in the class action context, for each named defendant, at least one named

2    plaintiff must be able to allege injury traceable to that defendant."

3          To the same effect is Mutchka v. Harris,[17] where Judge Selna from the Central District of

4    California observed:

5          At least on standing grounds, there is no basis for precluding the [plaintiffs] from
           asserting claims against the defendants on the basis that they managed funds other
6          than the one in which the [plaintiffs] invested. Fallick v. Nationwide Mut. Ins. Co.,
           162 F.3d 410, 422-24 (6th Cir.1998). They have pled facts which establish an actual
7          controversy and injury with respect to **each defendant**, and that is sufficient for
           standing. Whether the [plaintiffs] can represent the holders of other funds on a class
8          basis is a question to be addressed if and when they attempt to certify such a class.
           Id. at 423.
9
      Mutchka, 373 F.Supp.2d at 1024 (emphasis added).
10
             In cases where plaintiffs were held not to have Article III standing to sue on behalf of other
11
      mutual funds, the plaintiff were unable to trace injury to a defendant involved in the 'other' funds.
12
      For example, the plaintiff did not have individual standing[18] the 'other' funds were from a different
13
      fund family,[19]
14

15

16

17

18
           [17] Mutchka v. Harris 373 F.Supp.2d at 1024.

19         [18] Kauffman v. Dreyfus Fund, Inc. 434 F.2d 727, 734 (3d Cir. 1970) ("Because appellee, as
20    a shareholder of the four funds, does not have standing to assert a personal action, it is evident that
      he may not serve as a class representative"); Goldberger v. Bear, Stearns & Co., Inc., 98CIV. 8677
21    (JSM), 2000 WL 1886605, * 1 (S.D.N.Y. 2000) ("Although the complaint seeks to assert claims on
      behalf of investors who purchased through thirteen different introducing brokers, the named
22    plaintiffs did not purchase through seven of those brokers, nor did they purchase any of the stocks
23    allegedly manipulated by those brokers").

24         [19] *Cf.* In re Merrill Lynch Inv. Mgm't Funds Sec. Litig., 434 F.Supp.2d 233, 236 (S.D.N.Y.
      2006) (plaintiff sued on behalf of multiple fund families; held to have standing to represent funds
25    in *same family* but not other fund families); *with* Kauffman at 729-30; In re AIG Advisor Group Sec.
      Litig., 98 Civ. 8677(JSM), 2007 WL 1213395, * 3 (E.D.N.Y., Apr. 25, 2007) ("Plaintiffs wish to
26    represent investors in one or more mutual fund families set forth in an exhibit to the complaint...
27    That exhibit lists 19 families of funds.").

28
      PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
      COMPLAINT

1  issued pursuant to different prospectuses/offering,[20] or by a different corporate entity.[21] But that is not
2  the case here.

3  Defendants' assertion that Plaintiffs were not harmed by payment of the APF (Def. Mot. at
4  12:15-17) or the false statements thereon (Def. Mot. at 1:17) is untrue. Although the 75 basis point
5  APF was used to compensate brokers for the sale of *certain* WAMU Funds, the monies used to fund
6  these payments were illegally diverted (*see* SAC ¶ ¶ 13-22, 26) from "management fees" paid by
7  investors in *all* of the WAMU Funds. SAC ¶¶ 3, 23-25. In fact, greater than *fifty percent* of such
8  "management fees" paid by Plaintiffs and the putative class – ostensibly intended to compensate the
9  fund managers for investment expertise – were used to purchase the objectivity of the broker/dealers.
10  SAC ¶ 3. Plaintiffs had money improperly taken from their accounts and unambiguously suffered
11  "injury in fact" as a result. *See* SAC ¶¶ 5, 6.

12  The fact that Plaintiff did not own 22 of the 24 WAMU Funds is irrelevant because
13  Plaintiff's connection to all Registrants (and thus all Funds) exists from their practice of issuing *joint*
14  registration statements/prospectuses for **all** WAMU Funds. *E.g.,* SAC ¶ 31, 33, 36. Each year from
15  2000 through 2004, the Registrants' issued their joint prospectuses that contained the same *verbatim*
16  false and misleading statements and omissions applicable to all WAMU Funds. *See* SAC ¶¶ 31-38.

17  In addition, each Registrant was involved in the administration of the APF, about which
18  Plaintiffs complain. SAC ¶¶ 18, 19, 24, 25. As stated above, money was diverted from the WAMU
19  Funds issued by WM Trust I and WM Trust II, and used to sell the Funds issued by Registrant
20  WAMU Portfolio. SAC ¶¶ 23-25. The Registrants had a joint "12b-1 plan" (SAC ¶ 18) which
21  Plaintiff alleges was deficient. SAC ¶¶ 13-24, 26. The Registrants also had a common Board of
22  Trustees (SAC ¶ 64), and a general "unity of interest" with each other and the "WAMU" defendants

23
24  [20] Vervaecke v. Chiles, Heider & Co., Inc., 578 F.2d 713, 714-5 (8th Cir. 1978) (bonds "were issued in two series, Series 1973 and Series 1976; appellant Vervaecke purchased only the former bonds, though he seeks to represent allegedly defrauded bond purchasers of both series of bonds"); AIG Advisor Group, 2007 WL 1213395 at * 3 (each individual fund had separate prospectus).
25

26  [21] In re Eaton Vance Corp. Sec. Litig. 219 F.R.D. 38, 40 (D. Mass. 2003) (each individual mutual fund a separate corporation *with a separate prospectus*).
27

28

because the Registrants' common officers and directors are also officers and/or directors of the WAMU Advisor and/or WAMU Distributor. SAC ¶¶ 63-65; *see also* Counts I, II, and IV. In this way, Plaintiffs injury stems not just from WM Trust I, which issued the WM Growth & Income and West Coast Equity funds, but also from WM Trust II, and WM Strategic Asset Management Portfolios.

As to the other Defendants, they were equally involved in Plaintiffs' injuries. Defendants WM Distributor and WMFS were the "offerors" and/or "sellers" of the WAMU Funds. SAC Count II; 15 U.S.C. § 77l(a). WAMU and the WAMU Advisor acted as "control persons" by being actively involved in administration of the APF. SAC ¶¶ 63-5; Counts III and VI. Finally, the Principal Defendants are the successors in interest to the liabilities of the Registrants, WM Distributor, WMFS, WM Advisor, and WAMU. SAC ¶¶ 66-9; Counts I, II, and IV. Accordingly, Plaintiffs have traced their injury to each Defendant as required by the second prong of Lujan v. Defenders of Wildlife, 504 U.S. at 560-61.

The amount of money improperly debited from each WAMU Fund is a liquidated sum, and as such, the amount of damages suffered by the putative class is readily apparent and quantifiable. In 2004 alone approximately $67,000,000 was improperly diverted by Defendants from the accounts of putative class members. SAC ¶ 5. Since Plaintiffs are requesting, *inter alia*, restitution of the many millions of dollars wrongfully diverted (SAC, *Prayer*), Defendants' misconduct is "redressable" by this Court. Given the Court's presumption that "general allegations embrace those specific facts that are necessary to support the claim,"[22] Plaintiffs demonstrate Article III standing.

2. **Plaintiff Has Statutory Standing To Sue Because All WAMU Funds Were Issued Pursuant To Joint Registration Statements / Prospectuses**

Separate from Article III standing, statutory standing directs a court to examine the statutory elements of the cause of action, and is therefore often closely connected to the merits of a case.[23] Because statutory standing is not the same as Article III standing, Defendants' arguments on this ground "do not invoke a threshold question of the constitutional jurisdiction of this Court. ...

[22] Lujan v. Nat'l Wildlife Fed'n, 497 U.S. at 889.

[23] Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 97 n. 2 (1998).

Therefore, this Court need not decide the question of statutory standing prior to reaching the issue of class certification."[24]

Defendants' argument as to statutory standing, to the extent it can be distilled from their Motion, seems to be that "[a]ctions under the Securities Act or the Exchange Act may be brought only by purchasers or sellers of the securities at issue." Def. Mot. at 11:1-2. But this Court has previously and properly determined that Plaintiff Higareda's dividend reinvestments constitute "purchases" for the purpose of the Securities and Exchange Acts.[25] Although Plaintiff did not own 22 of the 24 WAMU Funds, she is a purchaser of *securities* in the "Growth & Income" and "West Coast Equity" WAMU Funds. SAC ¶ 73. Plaintiffs' allegation to that effect satisfy the elemental requirement that the "purchases" be of "securities."[26] But this has nothing to do with standing. Whether Plaintiffs purchases of two funds allows them to represent funds in the same family is a question for class certification.[27]

---

[24] In re Eaton Vance Corp. Sec. Litig., 219 F.R.D. at 41-2; *see also* Cooperman v. Individual Inc., 171 F.3d 43, 47 n.3 (1st Cir. 1999); Steel Co., 523 U.S. at 97 (statutory standing is not a jurisdictional question of whether there is case or controversy under Article III).

[25] Docket No. 49 ("The Court agrees that the reinvestment is a purchase that confers standing on the person who reinvested the funds. [Citation.]")

[26] It is clear that "the lead plaintiff in a securities class action need not have standing to sue on all causes of action raised in the underlying class complaint." Fishbury, Ltd. v. Connetics Corp., 06CIV.11496SWK, 2006 WL 3711566, at *12 (S.D.N.Y. Dec. 14, 2006); Id. at 13 ("[i]f certain class claims cannot be advanced because of standing or class-certification issues, this deficiency can be corrected by the designation of other members of the purported class as named plaintiffs or class representatives." Hevesi v. Citigroup, Inc., 366 F.3d 70, 82 (2d Cir. 2004) Accordingly, if the Court determines that either Plaintiff Zapien or Higareda lack standing for some of the claims asserted in the Complaint, the appropriate time to remedy that issue is at the class certification stage, not at the pleading stage.

[27] *See* In re ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. Sec. Litig., 848 F.Supp. 527, 560-61 (D.Del.1994) (certification where it was undisputed that two mutual funds were "substantially identical" and "marketed pursuant to the same prospectus") *citing* Green v. Wolf Corp., 406 F.2d 291, 299 (2d Cir.1968), *cert. denied,* 395 U.S. 977; *see also* In re Dreyfus Aggressive Growth Mutual Fund Litig., 98 CIV.4318(HB), 2000 WL 1357509 (S.D.N.Y., Sept. 20, 2000) (certifying class where lead plaintiff purchased only some funds in family where misstatements applied to all funds).

---

Even assuming *arguendo* that Defendants' argument does raise an issue of statutory standing, which it does not, the answer to whether shares of Plaintiffs' two WAMU Funds are the same "security" as shares of the other WAMU Funds is found in the seminal Supreme Court case of Blue Chip Stamps v. Manor Drug Stores.[28] In Blue Chip, the Supreme Court affirmed that for claims under 10b-5, the focus of is on the prospectus or representation that creates liability, in this case, Defendants' joint registration statements. The Court said:

> The virtue of the Birnbaum rule, simply stated, in this situation, is that it limits the class of plaintiffs to those who have at least dealt in the security **to which the prospectus, representation, or omission relates.** And their dealing in the security, whether by way of purchase or sale, will generally be an objectively demonstrable fact in an area of the law otherwise very much dependant upon oral testimony. In the absence of the Birnbaum doctrine, bystanders **to the securities marketing process** could await developments on the sidelines without risk, claiming that inaccuracies in the disclosure caused nonselling in a falling market and that unduly pessimistic predictions by the issuer followed by a rising market caused them to allow retrospectively golden opportunities to pass.

Blue Chip, 421 U.S. at 747 (emphasis added).[29]

The above analysis by the Supreme Court is confirmed by examining the scope of who can sue under Sections 11 and 12(a)(2) of the Securities Act. Congress' focus was on those persons injured in reliance on untrue statement(s) in the challenged *registration statement/prospectus.* Congress expressly conferred standing to sue under Section 11 "[i]n case *any part of the registration statement*, when such became effective, contained an untrue statement of material fact..."[30] Similarly, under Section 12(a)(2), standing to sue is conferred upon any person acquiring a security "*by means of* a prospectus or oral communication."[31]

Because the Registrants in this case issued **joint** registration statements that governed all WAMU Funds, including the ones owned by Plaintiffs, Plaintiffs "dealt in the security to which the

---

[28] Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723 (1975).

[29] *See also* Vervaecke , 578 F.2d at 719 ("The plaintiff in the instant case never dealt in the 1976 issue nor was he *defrauded by the allegedly misleading 1976 offering statement. "*) (emphasis added) (citing Blue Chip, 421 U.S. at 747).

[30] 15 U.S.C. § 77k(a) (emphasis added).

[31] 15 U.S.C. § 77*l*(a) (emphasis added).

1   prospectus, representation, or omission relates" and were not "bystanders" to Defendants' "marketing
2   process." Blue Chip, 421 U.S. at 747

3   ## C. PLAINTIFFS' CLAIMS ARE NOT TIME BARRED

4   The Exchange Act provides a statute of limitation requiring that Plaintiffs file their claim
5   within five years from the date of the alleged violation.[32] For a false registration statement/prospectus,
6   the statute of limitations runs from the *effective date* of the registration statement, and not as
7   Defendants contend, from the date of filing with the SEC.[33] In this case, the Registrants' prospectuses
8   had annual effective dates of March 1st for the years 2002 through 2005. *See e.g.,* Def. Req. J. Not.,
9   Ex. C at 1. Given the five year statute of limitations for the Registrants' March 1, 2002 prospectus,
10  Plaintiffs were required to file suit on or before March 1, 2007. For the March 1, 2003 prospectus,
11  Plaintiffs had to file suit on or before March 1, 2008. Plaintiff Zapien filed her complaint on February
12  28, 2007, allowing Plaintiffs to represent a class from the time of the March 1, 2002 prospectus
13  through the 2005 prospectus. Docket No. 1.

14  Plaintiffs' claim under Section 12(a)(2) of the Securities Act requires Plaintiffs' assertion
15  of claims within three years of a "sale" of WAMU Funds,[34] determined by this Court to be, at least,
16  Plaintiff Higareda's dividend reinvestment in December of 2004. *See* Docket No. 49 at 5:23-6:3. This
17  suit was filed on February 28, 2007, less than three years from Plaintiffs' December 2004 purchases
18  pursuant to the March 1, 2004 prospectus. Similarly, Plaintiffs' claim for violation of Section 11 of
19  the Securities Act pursuant to the March 1, 2004 prospectus had to be filed before March 1, 2007, and
20  is accordingly also not time barred.

21  As demonstrated above, Plaintiffs are within the applicable statute of limitations alleging
22  violations of section 10(b) of the Exchange Act for the period after March 1, 2002. Plaintiffs'

24  [32] 28 U.S.C. § 1658(b).

25  [33] P Stolz Family Partnership v. Duam, 355 F.3d 92, 99 (2d Cir. 2004); Def. Mot. at 16:3.

26  [34] 15 U.S.C. § 77m. Defendants, innocently of course, misquote this section in their brief.
27  *See* Def. Mot. at 16:18-22.

28  PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
COMPLAINT

1  Securities Act claims are within the statute of limitations with respect to the March 1, 2004 and

2  March 1, 2005 prospectuses.

3      Defendants implicitly concede the above but fall back on the position that the very

4  statements in the March 1, 2004 Prospectus Plaintiffs contend contain materially misleading

5  statements and omissions put Plaintiffs on notice of the alleged fraud! Def. Mtn. at 16:4-6. However,

6  the Registrants' misleading "disclosures" did not create the level of "sufficient suspicion of fraud to

7  cause a reasonable investor to investigate the matter further."[35]

8          **1.      The Ninth Circuit Uses An "Inquiry-Plus-Reasonable-Diligence Test"**

9          In Betz v. Trainer Wortham & Co., Inc., *supra*, the Ninth Circuit for the first time adopted

10  the "inquiry-plus-reasonable-diligence" test.

11          Under that standard, to determine when the statute of limitations begins running, we
            first determine when the plaintiff had inquiry notice of the facts giving rise to his or
12          her securities fraud claim. A plaintiff is on inquiry notice when there exists sufficient
            suspicion of fraud to cause a reasonable investor to investigate the matter further.
13          Like our sister circuits, we caution that inquiry notice should not be construed so
            broadly that the particular plaintiff cannot bring his or her suit within the limitations
14          period. The facts constituting inquiry notice "must be sufficiently probative of fraud-
            sufficiently advanced beyond the stage of a mere suspicion ... to incite the victim to
15          investigate." [Citations]. Once a plaintiff has inquiry notice, we ask when the
            investor, in the exercise of reasonable diligence, should have discovered the facts
16          constituting the alleged fraud. The answer to that second question tells us when the
            statute of limitations began to run.

17
    _ F.3d. _, 2008 WL 495890 at *11 (9th Cir. Feb. 26, 2008) (emphasis added).
18
            The question of whether inquiry notice exists is objective and contemplates a
19          "reasonable investor" or "reasonable person" standard. *See, e.g., Newman v. Warnaco
            Group, Inc.,* 335 F.3d 187, 193 (2d Cir.2003) [] (holding that inquiry notice of
20          securities fraud is triggered when the plaintiff receives "sufficient storm warnings to
            alert a reasonable person to the probability that there were either misleading
21          statements or significant omissions involved"); *Mathews v. Kidder, Peabody & Co.,*
            260 F.3d 239, 252 (3d Cir.2001) (holding that inquiry notice exists where "a
22          reasonable investor of ordinary intelligence would have discovered the [suspicious]
            information and recognized it" as suspicious); *Great Rivers Coop. of S.E. Iowa v.
23          Farmland Indus., Inc.,* 120 F.3d 893, 896 (8th Cir.1997) (inquiry notice is present
            "when the victim is aware of facts that would lead a reasonable person to investigate
24          and consequently acquire actual knowledge of the defendant's misrepresentations.")

25  Id..

26  ────────────

27          [35] Betz, 2008 WL 495890 at *11.

28  ────────────────────────────────────────────────────────

**2. Defendants' March 2004 Purported "Disclosures" Were Not Probative Of Fraud**

While Defendants put particular emphasis on their purported "disclosures," Plaintiff invites the Court to read the actual language that Defendants contend put Plaintiffs on inquiry notice in the March 1, 2004 prospectus. *See* Def. Req. J. Not., Exs C at 126; D at 5-7, 11; G at 1-2.     I t   i s axiomatic that "[m]isleading statements in the Prospectus or in other public statements, without an event that would reveal the misleading nature of the statements, are not enough to put investors on inquiry notice."[36] No "triggering events" were present here. This is particularly true in light of the fact that Defendants "have not been the subject of news reports concerning their Steering Program(s) [and] ... have not been publicly reprimanded by the SEC, NASD/FINRA, or similar enforcement body for their concerted efforts to 'steer' clients into the WAMU Funds." SAC ¶ 43.

In cases where courts find disclosures in prospectuses sufficient to raise "storm warnings," the statements therein are *definite*, and not equivocal.[37] The Registrants' prospectuses fail to raise

---

[36] Backhaus v. Streamedia Commc'n, Inc., 01 CIV. 4889 (LMM/THK), 2002 WL 1870272 at *3 (S.D.N.Y. 2002) *citing* In re Sterling Foster & Co., Inc., Sec. Litig., 222 F.Supp.2d 216, 249-50 (E.D.N.Y., Aug. 14, 2002). Triggering events typically consist of "any financial, legal, or other data, such as public disclosures in the media about the financial condition of the corporation and other lawsuits alleging fraud committed by the defendants, [and also] by the suspension of trading in the issuer's stock, public reports of federal or state investigations of the registrant, notice that the issuer has filed for reorganization or bankruptcy, a sharp decline in stock value, or public disclosure of the adverse financial condition of the issuer. [Citation.]" In re Infonet Serv. Corp. Sec. Litig. 310 F.Supp.2d 1106, 1114 (C.D.Cal. 2003). No such events occurred with the WAMU Funds.

[37] *See* Dodds v. Cigna Sec., Inc., 12 F.3d 346, 350-51 (2d Cir. 1993) *cert denied* 511 U.S. 1019 (where investor alleged broker induced purchase of unsuitable and illiquid investment, prospectus that stated "[t]here is no current public or secondary market for the [security] nor is one likely to develop" sufficient to put investor on inquiry notice);*see also* Bull v. Chandler,C-86-5710 (MHP), 1992 WL 103686, *4 (N.D.Cal., Mar. 12, 1992) (where "[m]ost if not all of the offering documents expressly stated that the investments were illiquid, were without a market, and were designed as tax shelters, but disclaimed any assurance of tax benefit and disclaimed any assurance of cash distribution" held sufficient for inquiry notice); In re Complete Mgmt. Inc. Sec. Litig. 153 F.Supp.2d 314, 337-38 (S.D.N.Y. 2001) (statement in prospectus that "[t]here can be no assurance that the Company will be able to manage growth effectively, and any failure to do so could have a material adverse effect on the Company's business, financial condition and results of operations and the price of the Common Shares and Debentures."held not to contradict plaintiff's allegations of

---

storm warnings because they state the programs at issue "may" occur, and do so "from time to time" when the APF was being paid, and continually. *See* SAC ¶ 31. The March 1, 2004 Prospectus, for example, "lead[s] a reasonable investor to believe that the 'revenue sharing' kickback and incentive programs *may* or *may not* exist..." SAC ¶ 38. Critically, **there is nothing in the March 1, 2004 Prospectus excerpt that is at all probative of *fraud*.** SAC ¶ 31.[38] Wisdom and case law teach that "statements that are literally true may nonetheless be misleading when considered in context."[39]

Defendants' attempt to dismiss investor claims at the pleading stage is undercut by the recognized fact that mutual fund investors "stand[] in a disadvantaged position in terms of identifying information probative of problems affecting his or her investments" and "storm warnings as to a direct investor's fraud claims will arise upon a much lower threshold of information than storm warnings surrounding a mutual fund investor"[40]

### 3. The "Form Of Dealer Agreement" Was Not Part Of The Prospectus Or SAI, And Was Not Referenced By Those Documents

Defendants incorrectly argue that some document cryptically entitled "Form of Dealer Agreement"("FDA") put Plaintiff on inquiry notice of their illegal conduct. Def. Mtn. at 18:4. Defendants position runs afoul of clear law that does not require investors to search every nook and cranny to unearth a potential "warning." The Ninth Circuit recently affirmed the rule:

---

fraud and did not serve to put reasonable investor on notice); In re Prudential Ins. Co. of Am. Sales Practices Litig. 975 F.Supp. 584, 600 (D.N.J.1996) (in vanishing premium case, where prospectus disclosed "We do not expect to credit any dividends to this contract," held sufficient for inquiry notice). *See also* Marlow v. Gold, 89 CIV 8589(JSM), 1991 WL 107268 (S.D.N.Y., June 6, 1991); Calvi v. Prudential Secs., Inc., 861 F.Supp. 69, 72 (C.D.Cal. 1994).

[38] Betz, 2008 WL 495890 at *11; Newman v. Warnaco Group, 335 F.3d 187, 193 (2d Cir. 2003) ("The [existence of] fraud must be probable, not merely possible.")

[39] Miller v. Thane Int'l, Inc., _F.3d_ , 2008 WL 706858 at *5 (9th Cir., Mar. 18, 2008).

[40] In re Merck & Co., Inc. Sec., Derivative & "Erisa" Litig. 483 F.Supp.2d 407, 423, 424 (D.N.J. 2007) *citing* Benak ex rel. Alliance Premier Growth Fund v. Alliance Capital Mgm't L.P. 435 F.3d 396, 397 (3d Cir. 2006). *See* SAC ¶¶ 11, 73 (plaintiff a novice investor and mutual fund investors are generally unsophisticated.)

1 Investors are not generally required to look beyond a given document to discover
what is true and what is not. *See In re Apple Computer Sec. Litig .,* 886 F.2d 1109,
2 1114 (9th Cir.1989) ("Ordinarily, omissions by corporate insiders are not rendered
immaterial by the fact that the omitted facts are otherwise available to the public.");
3 *Dale v. Rosenfeld,* 229 F.2d 855, 858 (2d Cir.1956) ("Availability elsewhere of
truthful information cannot excuse untruths or misleading omissions in the
4 prospectus. Readiness and willingness to disclose are not equivalent to disclosure.")

5 Miller v. Thane Int'l, Inc., 2008 WL 706858 at \*7.

6 The FDA referred to by Defendants was not provided to Plaintiffs, was not mentioned or

7 incorporated by either the Prospectus or Statement of Additional Information ("SAI"), and was not

8 mentioned in any other documents provided Plaintiffs and the putative class. Tellingly, the

9 Registrants' did not incorporate the FDA into the Prospectus as provided by SEC regulation. 17

10 C.F.R. § 230.411(d); *Cf.* Def. Req. J. Not., Ex. C at 123(a)(1)(A) *with* 126(e)(2).

11 Because Plaintiff and the members of the putative class were not provided or otherwise

12 alerted to the FDA, it cannot serve to put them on inquiry notice.[41] Indeed, the FDA is apparently only

13 available on the SEC website as a document indecipherably entitled "v94553bpexv99wxeyx2y.txt,"[42]

14 and is a draft contract, not a disclosure. Accordingly, Plaintiff cannot be charged with knowledge of

15 the FDA unless language in the Prospectus put her on inquiry notice because "[a] reasonable investor

16 is deemed to have knowledge of *well publicized* and *widely available* information in the public

17 domain."[43]

18

19

20

21 [41] *See* DeBruyne v. Equitable Life Assur. Soc. of U.S., 920 F.2d 457, 466 n. 18 (7th Cir.1990)
22 (noting that "plaintiffs cannot avoid the statute of limitations by possessing, but failing to read, the
documents that would put them on inquiry notice") (emphasis added); Franze v. Equitable Assurance
23 296 F.3d 1250, 1254 -55 (11th Cir. 2002).

24 [42] Def. Req. J. Not., Ex. G at 1.

25 [43] Meadows v. Pac. Inland Sec. Corp., 36 F.Supp.2d 1240, 1246 (S.D.Cal.1999) (emphasis
added); Betz, 2008 WL 495890 at \*11("Once a plaintiff has inquiry notice, we ask when the
26 investor, in the exercise of reasonable diligence, should have discovered the facts constituting the
27 alleged fraud.").

28 

1    To hold that the FDA put Plaintiff on inquiry notice would run contrary to the Ninth

2  Circuit's explicit instruction that "inquiry notice should not be construed so broadly that the particular

3  plaintiff cannot bring his or her suit within the limitations period."[44]

4  
5  

### 4.    The March 1, 2005 Prospectus Did Not Put Plaintiff On Inquiry Notice Because The Disclosures Therein Were Not Corrective And Purported To Reflect A Change In Practice

6    Defendants place considerable emphasis on a *draft* version of the March 1, 2005 prospectus

7  that was purportedly posted on the SEC website on December 30, 2004. Def. Mot. at 16:10. However,

8  as particularized above, the relevant date for the purpose of statute of limitation inquiry is the *effective*

9  *date* of the December 30 document, which was March 1, 2005.[45]

10    Separately, because the Registrants' disclosures were not remedial, Plaintiffs were not on

11  inquiry notice of the Steering Programs. In cases where subsequent disclosures in a registration

12  statement/ prospectus are found to be "storm warnings" of *past* fraud, such disclosures involve

13  *corrective* statements.[46] *See* SAC ¶ 41.

14    The March 1, 2005 Prospectus did not purport to correct the 2004 (or other prior)

15  prospectuses. To the contrary, the March 1, 2005 prospectus explicitly stated that WM Funds

16  Distributor "currently provide[s] additional payments to financial intermediaries." SAC ¶ 39. In

17  Miller v. Thane Intern., Inc., the Ninth Circuit rebuked the district court for relying on prior, tentative

18  drafts of a prospectus to conclude that investors would "connect the dots."[47] Defendants do not allege

19  that Plaintiffs (or anyone else) received such document until after it was disseminated to Plaintiff and

20  

21    [44] Id..

22    [45] In re Global Crossing, Ltd. Sec. Litig., 313 F.Supp.2d 189, 198 (S.D.N.Y. 2003); *cf.* Def. Req. J. Not., Ex. E at 1.

23  
24  
25  
26    [46] *See* Lapin v. Goldman Sachs Group, Inc., 506 F.Supp.2d 221, 238 (S.D.N.Y. 2006) ("corrective information must be conveyed to the public with a degree of intensity and credibility sufficient to counter-balance effectively any misleading information created by the alleged statements"); Havenick v. Network Exp., Inc., 981 F.Supp. 480, 521 (E.D.Mich. 1997) (*e.g.,* "we are revising our estimate for Japan downward"); In re Dynegy, Inc. Sec. Litig., 226 F.R.D. 263, 292 (S.D.Tex. 2005) (10-Q restating previously reported financials put investor on inquiry notice).

27    [47] 2008 WL 706858, at *7.

28

1  the Class sometime after March 1, 2005.[48]

2      Defendants have failed to meet their "heavy burden in establishing that the plaintiff was on

3  inquiry notice as a matter of law. Inquiry notice exists only when uncontroverted evidence irrefutably

4  demonstrates when plaintiff discovered or should have discovered the fraudulent conduct."[49] Such

5  heavy burden exists because the question of when fraud is discovered is for the trier of fact on a full

6  record.[50] This requires discovery. Accordingly, Defendants argument that Plaintiffs' claims are time

7  barred should be rejected.

8      **D.    THE COURT'S JANUARY 17, 2008 ORDER GRANTING LEAVE TO**
       **AMEND PERMITTED ENLARGEMENT OF THE CLASS DEFINITION**
9      **BASED ON NEW FACTS**

10      The Court's January 17, 2008 Order granting Plaintiff leave to amend stated: "[a]t oral

11  argument, Plaintiff ... requested leave to add or substitute her mother as lead plaintiff, and to plead

12  additional facts. The Court agrees that leave to amend is appropriate under the circumstances."

13  Docket No. 49 at 6:13-5. The Court accordingly "granted leave to amend the FAC to conform to the

14  representations made at oral argument." Id. at 6:23-4.

15      At oral argument, counsel for Plaintiff requested leave to amend to: "add additional

16  substantive allegations based on information that has come to light pursuant to our ongoing

17  investigation, which we think will add to the scienter allegations and the factual allegations." Def.

18  Req. J. Not., Ex. H at 4:19-22. Counsel for Plaintiff clarified by stating:

19

20      [48] *See* SAC ¶ 39 ("not disseminated to Plaintiff and members of the Class until, at least,
21  March 2005."); Meadows, 36 F.Supp.2d at 1246 ("reasonable investor is deemed to have knowledge
    of well publicized and widely available information in the public domain"); In re Merck & Co., 483
22  F.Supp.2d at 423, 424 (mutual fund investors "stand[] in a disadvantaged position in terms of
    identifying information probative of problems affecting his or her investments").
23
        [49] Betz, 2008 WL 495890 at *11; Vucinich v. Paine, Webber, Jackson & Curtis, Inc., 739
24  F.2d 1434, 1437 (9th Cir.1984). Newman v. Warnaco Group, Inc. 335 F.3d 187, 194-95 (2d Cir.
    2003); Cetel v. Kirwan Financial Group, Inc., 460 F.3d 494, 507 (3d Cir. 2006) ("burden is on the
25  defendant to show the existence of 'storm warnings.')

26      [50] S. E. C. v. Seaboard Corp. 677 F.2d 1301, 1309-10 (9th Cir. 1982) *citing* Briskin v. Ernst
    & Ernst, 589 F.2d 1363 (9th Cir. 1978).
27

28

> It is not our intention to reshape the case. The case is fairly simple and straightforward. Once we get past these problems, we think it either is going to have merit or not in the Court's mind to get us past the motion to dismiss. [ ¶ ] We are going to add additional factual allegations that support the allegations that already exist. We are not changing the theory of the case. And we would obviously add the additional class plaintiff, or substitute her entirely and withdraw Ms. Zapien.

Def. Req. J. Not., Ex. H at 23:10-18. Plaintiff's SAC comports with the above representations.

Plaintiffs added additional allegations regarding the falsity of the Registrants' March 1, 2004 and 2005 disclosures that the APF in fact 75 BP (*see* SAC ¶ 46, 37(c),) the circumvention of Defendants' "12b-1 plan" (SAC ¶¶ 18-22), and the undisclosed grandfathering of the APF after acquisition of the WAMU Funds by the Principal Defendants (SAC ¶ 42). Plaintiff also identified additional statements in the Registrants' joint registration statements of March 1, 2002 and 2003 that were false and misleading in light of the additional facts alleged. *See* SAC ¶ 33.

Based on the investigative effort underpinning the new allegations that reveal Defendants' misconduct was far more egregious than previously understood, Plaintiffs' counsel determined that the Registrants' disclosures before March 1, 2004 and after March 1, 2005 were similarly false, misleading, and deficient under the federal securities laws, and redrafted the class definition to comport with the additional facts.

Defendants are incorrect that the new allegations "completely contradict[] what was alleged in previous iterations of the complaint." Def. Mot. at 13, n. 12. In reality, Defendants conduct as alleged in the SAC is the same scheme alleged in previous complaints, only more particular and supported by additional information discerned after the original complaint was filed. Extending the class period back also poses no difficulty because the underlying Programs were the same and ongoing for the entire time period, save that the Registrants' disclosures thereon become more deficient the farther back we go. *Cf.* SAC ¶ 31 *with* ¶ 36.

### E.   THE SAC'S CLASS DEFINITION IS NOT A MATTER FOR A MOTION TO DISMISS

As an initial matter, Plaintiffs are aware of no circumstance where dismissal of a complaint is appropriate based on the class definition. In In re Walmart Wage and Hour Litig., the defendants

---

PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1  attempted to dismiss the complaint arguing that the class definitions were merits based.[51] The court

2  noted that it was the wrong argument at the wrong time:

3  > Wal-Mart has not answered in this case, discovery has not yet commenced, and no
   > motion for class certification has been filed. In the absence of any discovery or

4  > specific arguments related to class certification, the Court is not prepared to rule on
   > the propriety of the class allegations and explicitly reserves such a ruling. While

5  > plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs
   > should at least be given the opportunity to make the case for certification based on

6  > appropriate discovery.

7  Walmart 505 F.Supp.2d at 615-16. The Walmart court found that "the granting of motions to dismiss

8  class allegations before discovery has commenced is rare."[52]

9  In addition, district courts maintain broad discretion over the class definition. Defendants

10  are incorrect to assert that this Court cannot redefine the class. Def. Mot. at 2:12.[53] In fact, "[a] court

11  is not bound by the class definition proposed in the complaint and should not dismiss the action

12  simply because the complaint seeks to define the class too broadly."[54] As such, now is not the time

13

14  _____
    [51] In re Walmart Wage and Hour Litig., 505 F.Supp.2d 609, 614-16 (N.D. Cal. 2007).

15  [52] Id. at 615; *see also* Mills v. Foremost Ins. Co., 511 F.3d 1300, 1308-9 (11th Cir. 2008)
    (district court committed reversible error in granting motion to dismiss determining class action

16  treatment was not appropriate as a matter of law); Myers v. MedQuist, Inc., No. 05-4608, 2006 WL

17  3751210, *4 (D.N.J., Dec. 20, 2006) (declining to strike class allegations because discovery had not
    yet commenced and observing that most courts deny such motions if brought prior to discovery); *see*

18  *also* Abdallah v. Coca-Cola Co., Civ.A. 1:98CV3679-RW, 1999 WL 527835 (N.D.Ga., July 16,
    1999) (dismissal of class allegations prior to discovery premature); 7AA WRIGHT, MILLER & KANE,

19  FEDERAL PRACTICE AND PROCEDURE CIVIL § 1785.3 (3d 2005) (the practice employed in the
    overwhelming majority of class actions is to resolve class certification only after an appropriate

20  period of discovery).

21  [53] Turner v. Murphy Oil USA, Inc., 234 F.R.D. 597, 611 (E.D.La. 2006) *citing* In re
    Monumental Life Ins. Co., 365 F.3d 408, 414 (5th Cir. 2004) ("[D]istrict courts enjoy discretion to

22  'limit or modify class definitions to provide the necessary precision.' [Citation], and that "class

23  definition is a process of 'ongoing refinement and give-and-take', and as such, a district court's role
    is to define a precise class.").

24  [54] Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir.1993); Shin v. Cobb County Bd. of Educ.,

25  248 F.3d 1061, 1065 (11th Cir. 2001) ("[t]he district judge may review his certification order at any
    time and may consider redefine or more narrowly tailor classes or subclasses."); Pitt v. City of

26  Portsmouth, Va., 221 F.R.D. 438, 443 (E.D. Va. 2004) ("Even after a certification order is entered,

27  the judge remains free to modify it in the light of subsequent developments in the litigation.")

28  _____

1  to argue or consider arguments properly left for the class certification stage. The question on a motion

2  to dismiss is whether Plaintiffs have *stated a claim*.

3  ### F.   PLAINTIFFS MAY EXPAND THE SCOPE OF THE CLASS

4  The class or classes Plaintiffs seek to eventually certify will partially be dependant on the

5  applicable statute of limitations for the respective claims. Indeed, courts routinely certify classes that

6  are definitionally bound by the applicable statute(s) of limitation.[55] In this case, Plaintiffs defined the

7  putative class as:

8  > All persons or entities that purchased or otherwise acquired shares, units or like
   > interests in any of the WAMU Funds (including through the reinvestment of Fund

9  > dividends), on or before, at least, March 1, 2005, or such other class, classes or
   > periods of time as the Court deems appropriate.

10

11  SAC ¶ 86. Plaintiffs placed no specific time limitation on the class definition because the SAC

     demonstrates that Defendants actively concealed and misrepresented their activities with respect to
12
     the APF, and that the truth concerning the APF was never publicly disclosed. *See e.g.,* SAC ¶¶ 31,
13
     37(c), 43. This raises the issue of when Plaintiffs and the putative class were put on inquiry notice.
14
     This will require discovery. Similarly, the Court may well rule that Defendants' March 1, 2005
15
     prospectus failed to adequately disclose the APF program, its application or features, and thus the
16
     class definition should not be bounded by March 1, 2005. *See* SAC ¶¶ 39-42.
17
     In addition, Plaintiffs expanded the class definition to include purchasers of WAMU Funds
18
     from any broker/dealer, not just from defendant WMFS. SAC ¶ 83. Plaintiffs' SAC alleges that *all*
19
     brokers that sold WAMU Portfolio Funds were entitled to, and did, receive the illegal APF. SAC ¶¶
20
     4, 26. Similarly, all purchasers of the WAMU Funds during the time period alleged in the SAC had
21
     scandalous sums diverted from their "management fees" paid to defendant WM Advisor, regardless
22

23  (citation omitted); In re Select Comfort Corp. Sec.Litig., 202 F.R.D. 598, 604 (D.Minn. 2001)
     (district courts have "broad authority to define or redefine the class until judgment is entered or to
24  otherwise alter or amend any class certification order before the decision on the merits").

25  [55] *E.g.,* Hardy v. City Optical Inc. 39 F.3d 765, 771 (7th Cir. 1994) (upheld certification of
     class defined as "all persons who within the statute of limitations..."); Negrete v. Allianz Life Ins.
26  Co. of North America, 238 F.R.D. 482, 497 (C.D.Cal., 2006) (certified class defined as "all persons
     who within the applicable statute of limitations...").
27

28

1  of where the Funds were purchased. SAC ¶¶ 23-25. Accordingly, expansion of the class definition

2  to include these similarly damaged plaintiffs is appropriate.

3  However, as discussed below, the above issues are premature because they can and should

4  be addressed at the certification stage.

5  ### G. PLAINTIFFS ARE NOT REQUIRED TO FILE AN ADDITIONAL PSLRA NOTICE

6

7  Defendants contend that the class definition "impermissibly attempted to add vast numbers

8  of persons to the putative class - persons who were not included within the Reform Act notice at the

   outset of this case." Def. Mot. at 13:5-7. However, any purported deficiency in Plaintiff's PSLRA
9
   notice, 1) is not a basis to grant a motion to dismiss, as Defendants are not proper party to challenge
10
   notice;[56] 2) is no basis for denying lead plaintiff status,[57] and 3) is not grounds to deny class
11
   certification.[58]
12

13  ### H. THE CLAIMS OF PLAINTIFF HIGAREDA RELATE BACK TO THE ORIGINAL COMPLAINT

14  The Ninth Circuit has developed a three-part test for determining whether an amendment

15  adding a plaintiff relates back.[59] The amendment relates back if (1) the original complaint gave the

16  defendant adequate notice, (2) the relation back does not unfairly prejudice the defendant, and (3)

17  there is an identity of interests between the original plaintiff and the newly-proposed plaintiff.[60]

18  ### 1. Plaintiff Zapien's Original Complaint Gave Defendants Adequate Notice

19  In In re St. Paul Travelers Sec. Litig. II, the court focused on the subject matter of the

20  original complaint as a benchmark to determine whether the original complaint gave defendants

21

22

23  [56] In re HiEnergy Tech., Inc. Sec. Litig., 8:04CV01226 DOCJTLX, 2006 WL 2780058, *6 (C.D.Cal., Sept. 26, 2006).

24  [57] Clair v. DeLuca, 232 F.R.D. 219, 223-24 (W.D.Pa.. 2005).

25  [58] Cheney v. Cyberguard Corp. 213 F.R.D. 484, 488-89 (S.D.Fla. 2003).

26  [59] In re Syntex Corp. Sec. Litig., 95 F.3d 922, 935 (9th Cir.1996).

27  [60] Id..

28  PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

1  adequate notice.[61] Citing the commentary to FRCP Rule 15(c), the St. Paul Travelers court stated that
2  notice depends on whether "defendant knew or should have known that it would be called on to
3  defend against claims asserted by the newly-added plaintiff."[62] The court stated that because "the
4  claims of the new purchasers and the original putative class members consist of identical causes of
5  action based on the same set of operative facts," and the changes were "temporal rather than
6  substantive" the defendants were on adequate notice, and the claims related back.[63]

7  As discussed above, the same fraudulent activity with respect to the APF that formed the
8  basis of liability as to Defendants' March 1, 2004 prospectus was ongoing in prior years, the only
9  distinction that Defendants disclosed *less* about their fraud. *Cf.* SAC ¶ 31 *with* ¶ 36. Defendants could
10 not be unaware that the activity targeted in the original complaint was ongoing in previous years, and
11 improper.

12 Separately, Plaintiff Zapien's FAC, filed on August 24, 2007, described in detail how the
13 Steering Programs were ongoing back at least 2000, and identified the misleading disclosures in the
14 prospectuses from 2000 to 2005. Docket No. 35 at ¶¶ 31, 32.

15 **2.     Defendants Are Not Prejudiced By Plaintiffs Amending the Class Definition**

16 Defendants' purported prejudice is that "Plaintiffs raise new claims that contradict previous
17 claims raised in the two prior complaints." Def. Mot. at 14:13. This is untrue. Cases that prohibit
18 expansion of a plaintiff class as a result of prejudice to the defendant do so only after multi-year
19 inaction by the plaintiff,[64] after class certification and significant litigation expenditure into examining
20

21  [61] In re St. Paul Travelers Sec. Litig. II, 04-4697 (JRT/FLN), 2007 WL 1589524, * 6
22 (D.Minn., Jun. 1, 2007).

23  [62] Id., 2007 WL 1589524, at * 5.

    [63] Id., at * 6.

24  [64] Andrews v. Bechtel Power Corp., 780 F.2d 124, 129, 131(1st Cir. 1985) (prejudice to
25 defendants in seeking to expand class after case lay fallow for more than three years); Hnot v. Willis
   Group Holdings Ltd., 1Civ. 6588(GEL), 2006 WL 3476746, *5 (S.D.N.Y., Nov. 30, 2006)
26 (intervener could not be joined and expand temporal reach of class because case pending for six
27 years).

28

the claims of the class as defined,[65] or after settlement.[66] This case is just over one year old, and in the pleading stage. Indeed the Defendants' misconduct prior to March 1, 2004 – the boundary in Plaintiff's original and first amended complaints – arose out of the conduct set forth in the original complaint.

The SAC alleges violations of the same statutes that have been pled since the original complaint. Plaintiff does allege that payment of the APF was illegal under section 12(b) of the Investment Company Act of 1940 (15 U.S.C. § 80a-12(b), *see* SAC ¶¶ 13-22), but Plaintiffs do not plead a cause of action thereon. Plaintiff also alleges that the APF was actually 75 BP, not 50 BP as previously thought. SAC ¶¶ 36, 37. But these allegations are not a change, as Plaintiffs continue to maintain that the underlying scheme was the same. The new allegations only emphasize the culpability of the behavior Plaintiffs seek to redress. Since Defendants have not articulated that prejudice exists, the Court can easily dispose of Defendants' argument thereon.

### 3. Plaintiffs Zapien and Higareda Share an Identity of Interest

In determining whether there is an identity of interests, the Court is directed to focus on the "central issue of th[e] litigation," the "goals" of the litigants, and the relief sought.[67] In Syntex Corp, the Ninth Circuit was concerned that addition of a new plaintiff seeking to represent an enlarged class would have different interests from class members for other time periods because they "bought stock at different values and after different disclosures and statements were made by Defendants and analysts."[68] Such is not the case with mutual funds, as each share of the WAMU Funds was debited

___

[65] L.H. v. Schwarzenegger, CIV. S-06-2042 LKK/GGH, 2008 WL 268983, *4-5 (E.D.Cal., Jan. 29, 2008) (prejudice to defendant in adding unrelated class claims after extensive discovery, class certification and motion for summary judgement); In re Pressure Sensitive Labeldstock Antitrust Litig., 1556 3:03-MDL-1556, 2006 WL 433891 *1-2 (M.D.Pa., Feb. 21, 2006) (no undue prejudice to defendants in expanding class definition back three years after class discovery revealed price fixing behavior).

[66] Pigford v. Johanns, 416 F.3d 12, 21-2 (D.C. Cir. 2005) (discussing prejudice in expanding plaintiff claimants after settlement).

[67] Besig v. Dolphin Boating & Swimming Club, 683 F.2d 1271, 1278-79 (9th Cir.1982).

[68] Syntex Corp., 95 F.3d at 935.

1  "management fees" in a specific dollar amount per year (*see* SAC ¶ 54, 55), so the price fluctuation

2  consideration that was the primary concern of the court in <u>Syntex</u> is irrelevant here. And since the

3  goal of Plaintiffs, as well as all putative class members, new and old, would be to get back the monies

4  wrongfully diverted from their investments, the goals of the litigation and the relief sought are the

5  same.

6  ## V.  **CONCLUSION**

7  For the reasons stated above, Plaintiff respectfully requests that Defendants' Motion be

8  denied in its entirety.

9  DATED: April 21, 2008                        By: ___ /s/ William R. Restis ___

10                                              **FINKELSTEIN & KRINSK LLP**
                                                JEFFREY R. KRINSK
11                                              MARK L. KNUTSON
                                                WILLIAM R. RESTIS
12                                              501 West Broadway, Suite 1250
                                                San Diego, CA 92101-3593
13                                              Tel: (619) 238-1333
                                                Fax: (619) 238-5425
14                                              Email: jrk@classactionlaw.com

15                                              Attorneys for Plaintiffs
                                                Luz M. Zapien and Maria Carmen Higareda
16

17

18

19

20

21

22

23

24

25

26

27

28  PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED
    COMPLAINT

**CERTIFICATE OF SERVICE**

I, Andrea Vasquez, certify that on April 21, 2008, I electronically filed the foregoing **PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following individuals:

**Morgan, Lewis, & Bockius LLP**
Joseph E. Floren
One Market
Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
Email: jfloren@morganlewis.com

**O'MELVENY & MYERS LLP**
Phillip R. Kaplan
610 Newport Center Dr.
Newport Beach, CA. 92660
Tel: 949 8236909
Fax: 949 8236994
Email: pkaplan@omm.com

DATED:  April 21, 2008 '

Andrea Vasquez
**FINKELSTEIN & KRINSK LLP**
The Koll Center
501 West Broadway, Suite 1250
San Diego, CA 92101
Tel: 619.238.1333
Fax: 619.238.5425

PLAINTIFFS' AMENDED OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT