MORGAN, LEWIS & BOCKIUS LLP
MICHAEL J. LAWSON, State Bar No. 66547
JOSEPH E. FLOREN, State Bar No. 168292
LISA A. FREITAS, State Bar No. 227109
SHEILA A. JAMBEKAR, State Bar No. 239101
One Market, Spear Street Tower
San Francisco, CA 94105-1126
Tel: 415.442.1000
Fax: 415.442.1001
Email: michael.lawson@morganlewis.com
       jfloren@morganlewis.com
       lfreitas@morganlewis.com
       sjambekar@morganlewis.com

Attorneys for Defendants Washington Mutual, Inc. and WaMu Investments, Inc. (f/k/a WM Financial Services, Inc.)

[Additional Parties and Counsel on Signature Page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ M. ZAPIEN, and MARIA CARMEN HIGAREDA, Individually And On Behalf Of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>WASHINGTON MUTUAL, INC., *et al.*,<br><br>Defendants. | Case No. 07-CV-0385-DMS-CAB<br><br>**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>Date:   May 9, 2008<br>Time:  1:30 p.m.<br>Place:  Courtroom 10, 2nd Floor<br>Judge:  Hon. Dana M. Sabraw |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION .................................................................................................... 1

II.   PLAINTIFFS LACK STANDING TO BRING THIS ACTION ...................................... 2

    A.   The Joinder of Plaintiff Higareda is Improper ........................................... 2

    B.   Plaintiffs Do Not Have Article III Standing To Assert Their Claims ..................... 3

    C.   Plaintiffs Have No Statutory Standing To Assert Claims About Funds They Never Purchased ........................................................................ 4

III.   PLAINTIFFS' CLAIMS ARE TIME-BARRED ............................................................ 5

    A.   The Securities Act Claims Are Time-Barred ............................................. 5

    B.   The Exchange Act Claims Are Time-Barred. ............................................ 8

IV.   PLAINTIFFS SHOULD NOT BE ALLOWED TO UNILATERALLY EXPAND THE CLASS PERIOD AND DEFINITION .......................................................... 9

V.   CONCLUSION ..................................................................................................... 10

Morgan, Lewis & Bockius LLP
Attorneys At Law
San Francisco

i

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

# TABLE OF AUTHORITIES

**Cases**

*Berry v. Valence Technology, Inc.,*
  175 F.3d 699 (9th Cir. 1999) .................................................................................. 6

*Betz v. Trainer Wortham & Co, Inc.,*
  486 F.3d 590 (9th Cir. 2007) .................................................................................. 8

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) ............................................................................................ 3, 5

*Colin v. Onyx Acceptance Corp.*,
  31 Fed. Appx. 359, 360 (9th Cir. 2002) .............................................................. 1, 3

*Eckstein v. Balcor Film Investors*,
  58 F.3d 1162 (7th Cir. 1995) ............................................................................ 2, 6, 7

*In re AIG Advisor Group Sec. Litig.,*
  2007 WL 1213395
  (E.D.N.Y. Apr. 25, 2007) (*AIG I*) ........................................................................... 5

*In re Donna Karan International Sec. Litigation*,
  1998 WL. 637547
  (E.D.N.Y. Aug. 14, 1998) .................................................................................... 1, 3

*In re Eaton Vance*,
  219 F.R.D. 38 (D. Mass. 2003) ............................................................................... 4

*In re Franklin Mutual Funds Fee Litigation*,
  388 F. Supp. 2d 451 (D.N.J. 2005) ......................................................................... 3

*In re Global Crossing, Ltd. Securities Litigation*,
  313 F. Supp. 2d 189 (S.D.N.Y. 2003) .................................................................. 2, 8

*In re Infonet Services Corp. Sec. Litigation*,
  310 F. Supp. 2d 1106 (C.D. Cal. 2003) .................................................................. 6

*In re ML-Lee Acquisition Fund II, L.P.*,
  848 F. Supp. 527 (D. Del. 1994) .......................................................................... 4, 5

*In re Mercury Interactive Corp. Sec. Litigation,*
  No. C 05-3395 JF (PVT),
  2007 U.S. Dist. LEXIS 59171
  (N.D. Cal. July 30, 2007) ..................................................................................... 10

*In re Syntex Corp. Sec. Litigation*,
  95 F.3d 922 (9th Cir. 1996) ................................................................................ 9, 10

*Miller v. Thane*,
  —F.3d —, 2008 WL 706858
  (9th Cir. Mar. 18, 2008) .......................................................................................... 7

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

# TABLE OF AUTHORITIES
### (continued)

*Mutchka v. Harris*,
    373 F. Supp. 2d 1021 (C.D. Cal. 2005) ................................................................. 4

*P Stolz Family Partnership v. Duam*,
    355 F.2d 92 (2d Cir. 2004) .............................................................................. 2, 8

*Salinger v. Projectavision, Inc.*,
    934 F. Supp. 1402 (S.D.N.Y. 1996) ..................................................................... 6

*Santa Fe Industrial, Inc. v. Green*,
    430 U.S. 462 (1977) ........................................................................................ 1, 3

*Whirlpool Finance Corp. v. G.N. Holdings, Inc.*,
    67 F.3d 605 (7th Cir. 1995) ................................................................................ 6

**Constitutional Provisions**

U.S. Constitution, Article III ........................................................................................ 3

**Miscellaneous**

Harold S. Bloomenthal, *Securities Law Handbook, Vol. I*, § 13.47 at 914 ....................... 8

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

## I. INTRODUCTION

In their opposition brief (the "Opposition" or "Opp."), Plaintiffs do not even attempt to argue that Lead Plaintiff Luz Zapien has either constitutional or statutory standing. Accordingly, the Second Amended Complaint ("SAC") should be dismissed with prejudice as to her.

Regarding the claims of newly joined Plaintiff Maria Carmen Higareda ("Higareda"), Plaintiffs avoid the central points in Defendants' Motion concerning Plaintiffs' lack of standing, class definition, and statute of limitations. Specifically, Plaintiffs' response to Defendants' standing arguments consists of two sentences (Opp. at 8:3-11), in which Plaintiffs *concede* that: (a) they did not purchase the WM Portfolios, for which the allegedly unlawful undisclosed advisor-paid fee ("APF") was paid; and (b) no such APF was paid concerning the funds they did purchase, issued by WM Trust I. Accordingly, Plaintiffs' hollow complaint is nothing more than that defendant WM Advisors (which was the investment advisor to their funds) allegedly made undisclosed payments on sales of other funds – the WM Portfolios – to third parties.

Higareda lacks standing because the APF about which she complains was never paid in connection with the only two funds that she purchased. All of the fees Higareda paid were fully disclosed, as was the fact that WM Advisors paid the APF *at its own expense* to dealers that sold funds within the WM Portfolios family, none of which Higareda owned. Higareda thus suffered no injury from the payment of the APF, and lacks standing to complain about this fee. Plaintiffs also cannot invent securities law injury by complaining that Higareda's management fees should have been lower because the fund was paying the manager too much for advisory fees. Whatever issue Higareda may have regarding whether the management fees she paid could have been better spent, these are not securities law injuries because the amount of management fees that she was obligated to pay in purchasing the funds was *fully disclosed* to her before her initial purchase and in connection with every dividend reinvestment thereafter.[1]

---

[1] *Santa Fe Indus., Inc. v. Green*, 430 U.S. 462, 477 (1977) (holding mismanagement does not fall within the Exchange Act); *Colin v. Onyx Acceptance Corp.*, 31 Fed. Appx. 359, 360 (9th Cir. 2002) ("Section 10(b) does not embrace causes of action for breach of fiduciary duties or corporate mismanagement"); *In re Donna Karan Int'l Sec. Litig.*, 1998 WL 637547, *9 (E.D.N.Y. Aug. 14, 1998) ("courts repeatedly have found that allegations constituting nothing more than assertions of general mismanagement, or nondisclosures of mismanagement, cannot support claims under § 10(b) of the Exchange Act or §§ 11 and 12 of the Securities Act").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

The SAC also fails on statute of limitations grounds. With respect to the Securities Act Claims, the three-year statute of repose bars all but the dividend reinvestments made in December 2004. The shorter discovery limitations periods under the Securities Act and Exchange Act operate to bar all of the claims in the SAC. For purposes of notice inquiry, Plaintiffs erroneously assert that the Court should ignore the dates on which disclosure materials are publicly filed in favor of later "effective dates." (Opp. at 12:4-13). Plaintiffs' authority on this point is inapposite, as both cited cases hold that the statute of *repose* for Securities Act claims involving securities offerings runs from the registration statement's effective date because the shares could not be sold before that point.[2] Thus, Plaintiffs' cases do not speak to the shorter discovery limitations period at issue here. Plaintiffs erroneously argue that the form of dealer agreement was not incorporated into the registration statement (it was) and fail to explain why a reasonable investor is not charged with notice of information filed as part of the registration statement on the internet.[3]

As established in Defendants' opening memorandum and summarized below, the defects in the SAC with respect to Plaintiffs' lack of standing, statute of limitations and class definition cannot be cured through another amendment, and the action should be dismissed with prejudice.

## II.   PLAINTIFFS LACK STANDING TO BRING THIS ACTION.

### A.   The Joinder of Plaintiff Higareda is Improper.

Plaintiffs mischaracterize this Court's order by asserting that the Court has already determined that Higareda is a proper plaintiff and "previously directed that Plaintiff Higareda could be joined as Plaintiff." (Opp. at 4:5-7, fn. 5). The Court simply granted Plaintiff Zapien leave to amend to add Higareda and to include the additional factual allegations to which Zapien alluded at the hearing. The Court did not have before it Defendants' arguments regarding whether Higareda was a proper plaintiff or whether she had standing – nor could it have addressed these questions before she was a party to the case – and the Court did not foreclose

---

[2] *P Stolz Family Partnership v. Duam*, 355 F.2d 92, 99 (2d Cir. 2004); *In re Global Crossing, Ltd. Securities Litigation* 313 F. Supp. 2d 189 (S.D.N.Y. 2003).

[3] *See Eckstein v. Balcor Film Investors*, 58 F.3d 1162, 1169 (7th Cir. 1995) ("[T]he presence of the information in the registration statement does give . . . constructive notice to ordinary investors.").

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1   these challenges in a motion to dismiss.  At no time did the Court <u>adjudicate</u> Higareda's standing

2   or "direct" that Higareda is a proper plaintiff.  The Court did, however, determine – and counsel

3   for Plaintiffs conceded – that Lead Plaintiff Luz Zapien lacks standing.  Docket No. 49 at 6.

**B.  Plaintiffs Do Not Have Article III Standing To Assert Their Claims.**

Plaintiffs fail to explain in their Opposition how they were "injured" or "harmed" by the alleged failure to disclose APF practices affecting only sales of the WM Portfolios, which Plaintiffs never purchased.  (Opp. at 6:15-8:19).   Nowhere in the SAC do Plaintiffs allege that they purchased or sold a security in connection with the alleged misrepresentations of which they complain, or that the purchasers of the WM Trusts were harmed by such misrepresentations.  As such, Plaintiffs lack standing. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).

Plaintiffs argue that they have Article III standing because they suffered an injury when they paid excessive management fees for advisory services.  (Opp. at 8; SAC ¶ 6.)  But this alleged mismanagement injury bears no relation to the legal claims Plaintiffs allege in the SAC, and is not a recoverable injury under the Securities Act or Exchange Act. *Santa Fe Indus.,* 430 U.S. at 477.  There is no question that the amount of the management fees was fully disclosed. Even if Plaintiffs had some complaint as to the funds they purchased (for allegedly charging too much for advisory services), that would be a mismanagement claim, not a disclosure claim.  It is not a claim that can be addressed by the SAC's legal causes of action. *Santa Fe Indus.,* 430 U.S. at 477; *Colin*, 31 Fed. Appx. at 360; *Donna Karan*, 1998 WL 637547, at *9.

The authorities cited by Plaintiffs actually support Defendants' position.  As in this action, the plaintiffs in *In re Franklin Mutual Funds Fee Litigation*, 388 F. Supp. 2d 451 (D.N.J. 2005), filed suit claiming injuries stemming from the funds investment advisers' use of, *inter alia*, revenue-sharing arrangements and preferred lists.  Significantly, however, the *Franklin* plaintiffs asserted mismanagement and breach-of-fiduciary duty causes of action under the Investment Company Act of 1940 ("ICA") and the Investment Advisers Act of 1940 ("IAA"), statutes which are designed to remedy such purported violations and as to which the particular plaintiffs there had standing. *Franklin*, 388 F. Supp. 2d at 457-59 (holding that plaintiffs had standing to assert own claims, but dismissing complaint because plaintiffs had not clearly pleaded standing to assert

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

claims for funds they did not own). Similarly, in *Mutchka v. Harris*, 373 F. Supp. 2d 1021, 1022 (C.D. Cal. 2005), plaintiffs filed mismanagement claims against the mutual fund managers under the ICA. Because plaintiffs there clearly did have standing to seek redress under the ICA for their claims, the court rejected the defendants' argument that plaintiffs could not allege class claims against other allegedly mismanaged funds that they did not own, and instead held that the issue should be raised at class certification because it spoke to whether plaintiffs were appropriate class representatives. *Id*. Here, by contrast, neither plaintiff has standing to sue at all.

### C. Plaintiffs Have No Statutory Standing To Assert Claims About Funds They Never Purchased.

Plaintiffs' complaints about alleged fee practices affecting only sales of the WM Portfolios, which Plaintiffs never purchased (Opp. at 6:15-8:19), do not confer on them statutory or constitutional standing.[4] Nowhere in the SAC do Plaintiffs allege that they purchased or sold a security in connection with the alleged misrepresentations of which they complain or that the purchasers of the WM Trusts were harmed.

Plaintiffs' back-up contention is that they have statutory standing to sue because their WM Trust I Funds, as well as the WM Portfolios, were issued pursuant to joint registration statements and prospectuses. (Opp. at 9:21-12:2). The law does not support their position. No case suggests that a joint prospectus covering multiple, dissimilar mutual funds magically confers statutory standing under the federal securities laws on purchasers of Fund A to sue for a disclosure that relates only to Fund B, which they did not purchase. Although the Funds and Portfolios use the same overall prospectuses, the separate portions of those prospectuses relevant to each Fund make clear that the Funds have dramatically different overall investment objectives and fee structures, with the necessary result that the relevance or irrelevance of any fee-sharing arrangements must be evaluated on a case-by-case basis for each fund. The case at bar is thus fundamentally different from *In re ML-Lee Acquisition Fund II, L.P.*, 848 F. Supp. 527, 560-61

---

[4] Plaintiffs deceptively quote *In re Eaton Vance*, 219 F.R.D. 38 (D. Mass. 2003), to suggest that this Court need not resolve statutory standing issues until class certification. (Opp. at 9-10.) *Eaton* does not stand for this proposition. Instead, the *Eaton* court noted that because statutory standing does not attack the court's jurisdiction, the court did not need to address the defendants' argument on the issue before a then-pending class certification motion. *Id*.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1    (D. Del. 1994), on which Plaintiffs rely.  The court in *ML-Lee* allowed a class to be certified

2    despite the fact that the named plaintiff owned shares in only one of the funds because the funds

3    were "substantially identical," which is plainly not the case here.  Moreover, Plaintiffs are dead

4    wrong in suggesting that statutory standing is a question only for class certification.  Where

5    plaintiffs clearly have statutory standing as to the funds they actually purchased (which is not the

6    case here), questions about those plaintiffs' ability to represent purchasers of other funds as well

7    may be certification issues under the judicial link doctrine and Rule 23, as discussed in the cases

8    on which the Opposition relies.  (Opp. at 10.)  However, the *In re AIG Advisor Group Securities*

9    *Litigation* court <u>rejected</u> arguments under that doctrine at the motion to dismiss stage, and instead

10   dismissed a complaint similar to Plaintiffs' on standing grounds to the extent it related to mutual

11   funds other than ones in which the named plaintiffs invested.  2007 WL 1213395, *6

12   (E.D.N.Y. Apr. 25, 2007).

13   Plaintiffs' quotation from *Blue Chip Stamps v. Manor Drug Stores* further supports

14   Defendants' position that Plaintiffs do not have standing with respect to funds they never

15   purchased or sold.  *Blue Chip Stamps* limits securities plaintiffs to those who have at least "dealt

16   in the security to which the prospectus, representation, or omission relates...by way of purchase or

17   sale[.]"  421 U.S. at 747 (emphasis deleted).  Here Higareda dealt in only the two WM Trust I

18   Funds.  Since Plaintiffs have not said, and cannot say, that they "dealt in" any securities other

19   than the two WM Trust I funds that they purchased, they have no standing under the securities

20   laws to sue.

21   Because Plaintiffs lack statutory standing to sue with respect to the twenty-two funds that

22   they never purchased, Plaintiffs' claims should be dismissed with prejudice.

23   **III.    PLAINTIFFS' CLAIMS ARE TIME-BARRED.**

24         **A.    The Securities Act Claims Are Time-Barred.**

25   Plaintiffs' Section 12(a)(2) claim had to have been brought within three years of a

26   purchase transaction, and their Section 11 claim had to have been brought within three years of

27   the date of the registration statement.  Plaintiffs' claims with respect to purchases in 2000 – 2003

28   are barred by these statutes of repose.  Only the December 2004 dividend reinvestment by

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

Higareda might qualify as a purchase within the statute of repose, but that claim is barred by the one-year notice limitations period.

As noted in Defendants' opening memorandum, the 2004 Prospectus and Registration Statement on which the SAC is based were filed with the SEC on February 27, 2004.  RJN Exhs. C at 1; G at 1-2.  Plaintiffs allege that they and the members of the proposed class received the Prospectus (SAC ¶ 37) and are accordingly charged with knowledge of the contents of that document throughout the class period.  Minimal inquiry would have led Plaintiff to the Funds' 2004 Registration Statement (of which the Prospectus was a part), <u>which included</u> the specimen "Form of Dealer Agreement" between WM Distributor, WM Advisors, and broker-dealers such as WMFS, specifically disclosing the material terms under which WM Distributor and WM Advisors agreed to pay broker-dealers in connection with sales of the Funds.[5]  RJN Exh. D at 5-7, 11.  These public disclosures put all purchasers on inquiry notice as to the existence of additional compensation, starting the one-year statute upon the date of purchase.  *See Berry v. Valence Technology, Inc.*, 175 F.3d 699, 704 (9th Cir. 1999).

Plaintiffs protest that they were not provided with a copy of the "Form of Dealer Agreement."  (Opp. at 15:14-17:3).  It is well-settled, however, that the public disclosure of information in SEC filings puts investors on notice of that information.  *See, e.g.*, *Salinger v. Projectavision, Inc.*, 934 F. Supp. 1402, 1410 (S.D.N.Y. 1996); *accord Whirlpool Fin. Corp. v. G.N. Holdings, Inc.*, 67 F.3d 605, 610 (7th Cir. 1995) ("A reasonable investor is presumed to have information in the public domain, and therefore . . . is imputed with constructive knowledge of this information."); *In re Infonet Services Corp. Sec. Litig.,* 310 F. Supp. 2d 1106, 1114 n.7 (C.D. Cal. 2003) (same).  This includes information in a registration statement, such as the "Form of Dealer Agreement."  *See, e.g.*, *Eckstein*, 58 F.3d at 1168.[6]  Plaintiffs' attempt to downplay the

---

[5]  Plaintiffs erroneously claim that the SAI did not reference or mention the Form of Dealer Agreement.  (Opp. at 16:6-10).  To the contrary, the Registration Statements publicly filed with the SEC include the Form of Dealer Agreement, *and* the SAIs do, in fact, reference the Form of Dealer Agreement.  (*See, e.g.,* RJN Exh. C at 126.)

[6]  As the Seventh Circuit observed in *Eckstein*, "The registration statement is a public document, well known to all of the underwriters and dealers plus many of the brokers, and accessible to anyone else who wants it."  58 F.3d at 1168.  Accordingly, investors have constructive knowledge of the facts concerning purported misstatements that they could look up in a

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

public disclosure of the Form of Dealer Agreement simply because the document's internet link includes a code (or, as Plaintiffs state, is "indecipherably entitled") falls flat, as all public filings that are readily available through the SEC's EDGAR database bear similarly "indecipherable" internet links.[7] In addition, the "Form of Dealer Agreement" is clearly described as "Ex-99(e)(2)" in Part C of the Registration Statement, and is one of only four exhibits to the Registration Statement. (RJN Exhs. C at 126, G at 1.) This public record may be accessed in less than 60 seconds by anyone over the internet by visiting http://www.sec.gov. Thus, the full contents of the Registration Statement were readily available, thereby placing ordinary investors on constructive notice of the "Form of Dealer Agreement." *Eckstein*, 58 F.3d at 1169.[8]

The funds also filed a revised Registration Statement with the SEC on December 30, 2004 disclosing, in greater detail, the nature of payments made to selling dealers such as WMFS, that broker-dealers and investment representatives may as a result be incented to recommend the WM Portfolios over other investment alternatives, and that investors speak with their investment representatives. RJN Exh. E at 6.[9] Investors in the Funds were thereby placed on inquiry notice

---

registration statement. *Id.* at 1169.

[7] For example, *all* SEC filings by the Funds, including the Prospectus, have similar weblinks. *See* RJN Exh. G. So do the SEC filings of countless other issuers. This does not render the filings or their content obscure or mysterious.

[8] *Miller v. Thane*, — F.3d —, 2008 WL 706858 (9th Cir. Mar. 18, 2008), does not excuse an investor from accessing information in a publicly available proposed registration statement that squarely puts the investor on notice of an issue. In *Miller*, the issue was that the publicly filed draft prospectus stated that as a condition of a merger, Thane shares would be listed on NASDAQ or another national exchange. Thane changed its mind about when to list, and dropped the reference to the condition in the final prospectus. However, the final prospectus still left the impression that Thane was committed to list on a national exchange. Because this condition was not included in the final prospectus, the district court held that investors were placed on notice that Thane had ultimately not committed to the NASDAQ listing. The Ninth Circuit reversed, holding that the final prospectus was misleading and that investors are not placed on inquiry notice when the only way they can acquire corrective information is to "connect the dots" across various publicly filed versions of a prospectus. By contrast, here the February 27, 2004 final prospectus, December 30, 2004 draft prospectus, and the February 28, 2005 final prospectus all disclosed that WM Advisors may make payments to brokers (the APF) in connection with sales of the WM Portfolios. Thus, investors in WM Portfolio Funds (notably not these Plaintiffs) did not need to "connect the dots" to know that an APF might be paid in connection with sales of those funds, and are not excused from reviewing the full registration statement to see that the attached "Form of Dealer Agreement" did include an APF payment.

[9] The Funds filed a final revised prospectus on February 28, 2005 repeating these disclosures with additional specifics. RJN Exh. F at 3-6; 8-10.

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1  by December 30, 2004 of the facts constituting the alleged fraud of which Plaintiffs now
2  complain. As such, Plaintiffs were required to file their Securities Act claims by, at the latest,
3  December 29, 2005. Lead Plaintiff did not do so until February 28, 2007, well over one year after
4  the notice statute of limitations for claims under the Securities Act had expired. Accordingly,
5  Plaintiffs' Securities Act claims should be dismissed with prejudice.

6  Hoping to evade this conclusion, Plaintiffs argue that the statute of limitations runs from
7  the December 30, 2004 registration statement's March 1, 2005 "effective date," rather than the
8  date the statement was filed with the SEC and became publicly available.[10] Their argument
9  confuses statutes of repose – which do not involve concepts of notice or discovery – with the
10 shorter statute of limitations that governs inquiry notice under the federal securities laws. Indeed,
11 Plaintiffs' authority is wholly consistent with Defendants' position. Both *P. Stolz Fam. P'ship v.*
12 *Duam*, 355 F.2d 92, 99 (2d Cir. 2004), and *In re Global Crossing Ltd. Sec. Litig.*, 313 F. Supp. 2d
13 189 (S.D.N.Y. 2003), held that the statute of <u>repose</u> for Securities Act claims involving securities
14 offerings runs from a registration statement's effective date. Because the statute of repose
15 establishes the cutoff date for bringing claims, regardless of whether the alleged fraud could have
16 been discovered by a plaintiff, those cases selected the "effective date" of a prospectus as the
17 appropriate date to commence running of the period. *P Stolz*, 355 F.2d at 99; *Global Crossing*,
18 313 F. Supp. 2d at 196, 198. These cases do *not* speak to the shorter discovery limitations period
19 at issue here, which is triggered when sufficient information becomes available to place a plaintiff
20 on inquiry notice of the facts giving rise to his or her fraud claim. *Betz v. Trainer Wortham & Co,*
21 *Inc.*, 486 F.3d 590, 596 (9th Cir. 2007). Neither Plaintiffs nor their authority provide any reason
22 why investors should be entitled to ignore a preliminary registration statement that is publicly
23 available on the internet during the months before its effective date.

24  **B.    The Exchange Act Claims Are Time-Barred.**

25  As explained above, Plaintiffs had inquiry notice of the allegedly misleading statements by

---

[10] The proposed effective date has nothing to do with the date on which the registration statement is made available to the public. *See* Harold S. Bloomenthal, *Securities Law Handbook, Vol. I*, § 13.47 at 914 (Regardless of the effective date proposed by registrant, securities "[f]ilings are now available at the [SEC's] EDGAR database on a real time basis so that filings can be accessed the same day they are received by the [SEC].").

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

1  no later than February 27, 2004, and in any event no later than December 30, 2004. Plaintiffs'

2  purported Exchange Act claims therefore expired no later than December 29, 2006, and their suit

3  filed two months later should be dismissed with prejudice.

4  **IV.    PLAINTIFFS SHOULD NOT BE ALLOWED TO UNILATERALLY EXPAND THE CLASS PERIOD AND DEFINITION.**

5

6  The SAC purports to arbitrarily extend the class period to include purchasers of any of the

7  WM Funds "on or before, at least, March 1, 2005, or such other class, classes or periods of time

8  as the Court deems appropriate." SAC ¶¶3 n.3, 86. The SAC also attempts to expand the

9  putative class to include anyone who purchased Funds from any brokerage firm, not just

10 defendant WMFS. Neither at the hearing in January 2008 nor in its January 2008 Order, did the

11 Court grant leave to expand either the class period or class definition (RJN Ex. H (Jan. 11, 2008

12 Hearing Tr. at 23:9–23:18); Docket No. 49), and the Court should not accept these purported

13 amendments to permit Plaintiffs to escape the statutes of limitations or their lack of standing.

14 As stated above, all of Plaintiffs' claims are time-barred because they did not file them

15 within the applicable discovery limitations periods. Therefore, to the extent that Plaintiffs seek to

16 add additional class plaintiffs by expanding the class definition and period, these individuals'

17 claims are also time-barred. And even if the claims for the original class were timely, the new

18 putative class members' claims do not relate back to the original complaint. Under the Ninth

19 Circuit's test, an amendment adding a party plaintiff only relates back to the original complaint

20 when the following three conditions are met: (1) the original complaint gave the defendant

21 adequate notice of the claims of the newly proposed plaintiff; (2) the relation back does not

22 unfairly prejudice defendants; and (3) there is an identity of interests between the original and

23 newly proposed plaintiff. *In re Syntex Corp. Sec. Litig.*, 95 F.3d 922, 935 (9th Cir. 1996).

24 Because the alleged plaintiffs in the newly proposed class cannot satisfy this test, their claims

25 must be dismissed as untimely.

26 First, the claims alleged by the new class differ significantly from those alleged in earlier

27 versions of the complaint. Contrary to the representations of Plaintiffs' counsel at the January 11,

28 2008 hearing, the SAC changed the theory of the case. Prior versions of the complaint alleged that

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

the 2004 prospectuses were false because they stated that Defendant WM Advisors "may" pay an APF of up to 50 basis points (0.50% of assets) to dealers to induce sales of the WM Portfolios when in fact the fee arrangements were allegedly already in place. FAC ¶¶ 33, 38. But the SAC changes direction and no longer focuses upon the "may" language that was at issue in the FAC and original complaint. Instead, Plaintiffs now claim that WM Advisors actually paid an undisclosed 75 basis point APF (0.75% of assets) to dealers selling the WM Portfolios, not up to 50 basis points as stated in the Prospectus and Registration Statement. Plaintiffs contend the purported 75 basis point fee on sales of the WM Portfolios was illegal, was not disclosed, and created undisclosed sales incentives and conflicts of interest. SAC ¶¶ 25, 37, 39-40.[11] The original complaint gave no notice of these new allegations – which actually contradict the original complaint. The new putative class claims cannot relate back to the original complaint and are therefore time-barred.

Second, Plaintiffs' expansion of the class definition and period is unfairly prejudicial because it adds plaintiffs who bought many different funds from dozens of different brokers, mostly non-parties, vastly changing the nature of the claims and the scope of this proceeding.

Third, there is no identity of interest between the clearly defined putative class alleged in the earlier complaints and PSLRA Notice and the proposed new class members, who purchased WM Funds at different times, under different Prospectuses and Registration Statements, at different prices, and from different brokerage firms that may or may not have had similar practices. *See Syntex*, 95 F.3d at 935; *see also In re Mercury Interactive Corp. Sec. Litig.*, No. C 05-3395 JF (PVT), 2007 U.S. Dist. LEXIS 59171, *17-18 (N.D. Cal. July 30, 2007).

## V. CONCLUSION.

The SAC should be dismissed, with prejudice and without leave to amend.

---

[11] Plaintiffs also now allege purported misstatements in the Funds' prospectuses on this subject all the way back to the year 2000, when they made their first and only alleged purchase of WM Funds, even though the Court has already ruled that any such allegations are barred by the statutes of limitations. SAC ¶¶ 31-34; Order Granting Defendant's Motion to Dismiss (Docket No. 49) at 5 (Jan. 17, 2008).

MORGAN, LEWIS & BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)

Respectfully submitted,

| | |
|---|---|
| MORGAN, LEWIS & BOCKIUS LLP<br>MICHAEL J. LAWSON, SBN 66547<br>JOSEPH E. FLOREN, SBN 168292<br>LISA A. FREITAS, SBN 227109<br>SHEILA A. JAMBEKAR, SBN 239101<br>One Market, Spear Street Tower<br>San Francisco, CA 94105-1126<br>Tel: 415.442.1000<br>Fax: 415.442.1001<br>Email: michael.lawson@morganlewis.com<br>         jfloren@morganlewis.com<br>         lfreitas@morganlewis.com<br>         sjambekar@morganlewis.com | O'MELVENY & MYERS LLP<br>PHILLIP R. KAPLAN, SBN 76949<br>MARCUS S. QUINTANILLA, SBN 205994<br>ANDREW R. ESCOBAR, SBN 248242<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660-6429<br>Tel: 949.760.9600<br>Fax: 949.823.6994<br>Email: pkaplan@omm.com<br>         mquintanilla@omm.com<br>         aescobar@omm.com<br><br>By: _____/s/_____<br>         Phillip R. Kaplan |
| By: _____/s/_____<br>         Joseph E. Floren<br><br>Attorneys for Defendants Washington Mutual, Inc. and WaMu Investments, Inc. (f/k/a WM Financial Services, Inc.) | Attorneys for Defendants WM Advisors, Inc., WM Distributor, Inc., Edge Asset Management, Inc., Principal Financial Group, Inc., Principal Investors Fund, Inc., Principal Funds Distributor, Inc., WM Trust I, WM Trust II, and WM Strategic Asset Management Portfolios LLC |
| DATED: April 25, 2008 | DATED: April 25, 2008 |

MORGAN, LEWIS &
BOCKIUS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

REPLY SUPPORTING MOTION TO
DISMISS SECOND AMENDED COMPLAINT
(07-CV-0385-DMS-CAB)