# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LUZ M. ZAPIEN, Individually And On Behalf Of All Others Similarly Situated,, <br><br> Plaintiffs, <br><br> vs. <br><br> WASHINGTON MUTUAL, INC., WM TRUST I, WM TRUST II, WM STRATEGIC ASSET MANAGEMENT PORTFOLIOS, LLC, WM FINANCIAL SERVICES, INC., WM ADVISORS, INC., WM FUNDS DISTRIBUTOR, INC., EDGE ASSET MANAGEMENT, INC., PRINCIPAL FINANCIAL GROUP, INC., PRINCIPAL INVESTORS FUND, INC., PRINCIPAL FUNDS DISTRIBUTOR, INC., <br><br> Defendants. | CASE NO. 07cv385 DMS (CAB) <br><br> **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO STRIKE AS MOOT** <br><br> **[Docs 52, 66 & 77]** |

    This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' Second Amended Complaint (SAC). The Complaint alleges, on behalf of a putative class, securities fraud perpetrated by Defendants against Plaintiffs. Plaintiffs filed an opposition, and Defendants filed a reply. The matter was taken under submission without oral argument pursuant to Local Civil Rule 7.1(d)(1). The motion is granted for the reasons set forth below.

/ / /

/ / /

# I.

# BACKGROUND

In 2000, Plaintiff Luz Zapien purchased certain securities "in the name of her mother, [Plaintiff] Maria Carmen Higareda." (Compl. ¶9). Plaintiff Higareda then reinvested the dividends that were paid on those securities, and did so in December of each year until and including 2004.

On February 28, 2007, Plaintiff Zapien filed a Complaint alleging violations of the Securities and Exchange Acts arising out of Defendants' alleged misrepresentations about "kickback programs" and other "incentive schemes" designed to encourage brokers to sell Defendants' funds. (Doc. 1). On May 1, 2007, pursuant to 15 U.S.C. § 78u-4(a)(3)(b), Zapien filed a Motion for Appointment of Luz Zapien as Lead Plaintiff and Approval of Finkelstein & Krinsk as Lead Counsel. (Doc. 7). In that motion, Zapien represented that "[d]uring the Class Period,[1] she purchased units in Washington Mutual's Growth & Income and West Coast Equity mutual funds and has suffered losses as a result of wrongs perpetrated by Defendants."[2] (Doc. 7-2 at 3:4-6). The motion was unopposed, and the Court granted the motion on June 6, 2007.

On June 25, 2007, Defendant filed a motion to dismiss the Complaint, attacking the substantive sufficiency of the pleadings. (Doc. 13). However, on August 24, 2007, Zapien filed a First Amended Complaint. ("FAC," Doc. 35). The FAC rendered the motion to dismiss the initial complaint moot, and the Court denied the pending motion on that basis. (Doc. 38).

In the FAC, Zapien claimed to represent a class of persons "who purchased or otherwise acquired shares, units or other like interests of any of [Defendants' proprietary] funds...between March 1, 2004 and March 1, 2005." (FAC ¶ 2). Zapien alleged she purchased $5,000 worth of shares, units, or like interests of Defendants' funds in 2000. (FAC. ¶ 11). Although she used her money to purchase the shares, she purchased them in the name of her mother, Maria Carmen Higareda. (*Id.*) In 2000, Higareda affirmatively elected to automatically reinvest dividends earned. (*Id.*). Dividends were

---

[1] At the time of the motion, the class period was March 1, 2004 to March 1, 2005.

[2] Plaintiffs now argues "Plaintiff Zapien's motion for appointment as lead plaintiff disclosed that Plaintiff Higareda [rather than Zapien] was the record owner of her daughter's shares..." but cites the complaint, rather than the motion. The motion clearly and erroneously attributed the purchases during the class period to Zapien.

reinvested each December from 2000 through 2004. (Doc. 7).[3] Consequently, the dividend reinvestment of December 2004 was the only purchase of securities that Zapien alleged in the FAC that she or her mother made during the proposed class period of March 1, 2004 and March 1, 2005. (FAC ¶ 66). In subsequent proceedings on the FAC, the parties agreed that the December 2004 dividend reinvestment was the basis for all alleged violations in the FAC. (Mot. to Dismiss FAC Opp. at 11, Reply at 3).

On October 15, 2007, Defendants moved to dismiss the FAC on grounds that, *inter alia*, Zapien lacked standing to pursue a claim of securities fraud surrounding purchases made by her mother, Higareda. On January 17, 2008, the Court granted Defendant's motion to dismiss for lack of standing. It noted that Zapien was involved in only one purchase, in 2000, and that any allegations arising out of that purchase were time-barred. (Order, January 17, 2008, Doc. 49 at 5, hereinafter "Order"). Because the subsequent 2004 dividend reinvestment was purchased by Higareda, Zapien lacked standing to sue for harm arising out of that purchase. (Order at 6). The Court dismissed the FAC for lack of standing, declined to rule on the balance of Defendants' arguments, and granted Zapien leave to amend, consistent with her representation at oral argument that "it is not our intention to reshape the case...We are going to add additional factual allegations that support the allegations that already exist. We are not changing the theory of the case. And we would obviously add the additional class plaintiff [Higareda], or substitute her entirely and withdraw Ms. Zapien." (Opp. at 19) (Order, Doc. 49). The Court made no ruling on the propriety of the suggested substitution, as the issue was not properly before the Court at that time. Instead, the Court specifically stated at the hearing that it would deal with such issues if and when Defendant chose to file a motion to dismiss the second amended complaint.

On February 6, 2008, a Second Amended Complaint was filed, naming both Zapien and Higareda as named Plaintiffs purporting to represent "[a]ll persons or entities that purchased or otherwise acquired shares, units or like interests in any of the [Defendants'] Funds (including through the reinvestment of Fund dividends), on or before, at least, March 1, 2005, or such other class, classes,

---

[3] This allegation was not made in the FAC, but instead was made in a "certification" attached as an exhibit to Zapien's Motion for Appointment as Lead Plaintiff under the Reform Act filed on May 1, 2007.

or periods of time as the Court deems appropriate." (SAC ¶ 86, Doc. 50).

On March 6, 2008, the parties appeared telephonically upon Defendants' request to file a motion to dismiss the SAC. Following the telephonic conference, the Court issued an order setting forth a bifurcated motion to dismiss briefing schedule, whereby a first motion to dismiss would address "procedural threshold issues including standing, the statute of limitations, and the class definition." The second phase would include briefing on the substantive sufficiency of the SAC, if needed. (Doc. 63). On February 26, 2008, Defendants filed the instant motion to dismiss the SAC, limiting its discussion to issues of standing, the statute limitations, and the class definition.

Defendants argue the SAC in its entirety should be dismissed for three reasons: (1) Plaintiffs lack Constitutional and statutory standing to bring this action (Mot. at 6); (2) the SAC improperly "expands the putative class" (Mot. at 13); and (3) all claims are time barred. (Mot. at 15).

## II.

## LEGAL STANDARD

Article III of the United States Constitution places the burden on the plaintiff to plead facts showing "he has a personal stake in the alleged dispute, and that the alleged injury suffered is particularized as to him." *See Raines v. Bird*, 521 U.S. 811, 819 (1997). In securities cases, when considering whether a plaintiff purporting to represent a class has standing, "the courts have manifested a marked degree of restraint." *La Mar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 469 (9th Cir. 1973). *See also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991) (collecting cases, and noting, "[s]trict standing requirements are particularly important in the area of securities litigation to curb the risks of vexatious litigation and abuse of discovery.")

In addition, the Securities Act and the Exchange Act both promulgate statutory standing requirements. To sustain Plaintiffs' Securities Act claims, each Plaintiff must allege she is a "person purchasing" the security from a person selling or offering a security in violation of certain provisions of the Security Act. 15 U.S.C. § 77*l*(a). Additionally, "[i]n order to maintain a private action under Section 10(b) and Rule 10b-5 [of the Exchange Act], a plaintiff must be an actual purchaser or seller of securities who sustained a loss as a result of the alleged misrepresentations by the defendant." *In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. at 1531, *citing Blue Chip Stamps v. Manor Drug*

*Stores,* 421 U.S. 723, 737-38 (1975).

### III.

### DISCUSSION

As an initial matter, Plaintiffs have pled no new facts that confer standing on Zapien. Accordingly, Zapien is dismissed from the action with prejudice. As Zapien cannot be a named Plaintiff, Plaintiffs have attempted to replace her with Higareda, who allegedly made the 2004 purchase. Plaintiffs argue Federal Rules of Civil Procedure 24(b)(2) and 25(c) allow Higareda to continue this action despite the fact that the original named Plaintiff's claim was dismissed for lack of standing. (Opp. at 4). As set forth below, Plaintiffs' reliance on these rules is unavailing.

Rule 24(b)(2) governs interventions "by a government officer or agency," which Plaintiffs do not claim Higareda to be. Even if Plaintiffs intended to refer to Rule 24(b)(1), which allows permissive intervention at the discretion of the court, intervention under these circumstances is impermissible. When the sole named plaintiff in a class action lawsuit lacks standing, intervention or substitution of another named plaintiff is not permissible, and the court must dismiss the claim. *Lierboe v. State Farm Mutual Automobile Insurance Co.,* 350 F.3d 1018, 1023 (9th Cir. 2003) ("where the sole named plaintiff 'never had standing' . . . and where 'she never was a member of the class she was named to represent,' the case must be remanded with instructions to dismiss.") (citation omitted); *See also In re Exodus Comm. Sec. Litig.,* 2006 U.S.Dist. LEXIS 60735, at *4 (N.D. Cal. Aug. 14, 2006) ("where the named plaintiffs in a class action lack standing, the action must be dismissed and new named plaintiffs with standing may not intervene. Put another way, intervention will not be permitted to breathe life into a nonexistent lawsuit.").

Rule 25(c) also does not apply. It allows substitution of parties only "if an interest is transferred." Here, as Zapien never had an interest in this litigation, she could not have transferred it to Higareda. Since Plaintiffs may not substitute Higareda under the circumstances, their attempted amendment cannot cure the standing defect.

Plaintiffs contend that "this Court has previously directed that Plaintiff Higareda could be joined as Plaintiff to moot Defendants' argument." (Opp. at 4). The scope of the Court's Order, however, merely provided that Zapien had no standing to bring the claims alleged, and thus granted

Plaintiff leave to amend in order to cure the standing defect. The Order did not address whether Higareda could be joined or intervene as a *proper* Plaintiff. For the reasons set forth above, Higareda may not intervene, and the action must be dismissed. As any attempt to further amend the complaint would be futile, Defendants' motion to dismiss is granted without leave to amend. Plaintiffs' motion to strike is denied as moot.[4] The Clerk shall terminate this action.

**IT IS SO ORDERED.**

DATED: June 17, 2008

HON. DANA M. SABRAW
United States District Judge

---

[4] Because the foregoing ruling is dispositive, the Court does not address the remainder of Defendants' arguments.