1  **FINKELSTEIN & KRINSK LLP**
   Jeffrey R. Krinsk (State Bar No. 109234)
2  Mark L. Knutson (State Bar No. 131770)
   William R. Restis (State Bar No. 246823)
3  501 West Broadway, Suite 1250
   San Diego, California 92101-3579
4  Telephone: (619) 238-1333
   Facsimile: (619) 238-5425
5
   Attorneys for Plaintiffs
6  Luz M. Zapien and Maria Carmen Higareda

7

8

9

10

```
FILED

SEP 1 1 2008

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          A K R          DEPUTY
```

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
## AT SAN DIEGO

11  LUZ M. ZAPIEN, and MARIA CARMEN ) Case No. 07-CV-0385 DMS CAB
    HIGAREDA, Individually And On Behalf Of )
12  All Others Similarly Situated,          )
                                            ) CLASS ACTION
13                                          ) _____
              Plaintiffs,                   )
14                                          ) **PLAINTIFFS' NOTICE OF APPEAL TO**
                                            ) **THE NINTH CIRCUIT**
15        v.                                )
                                            )
16                                          )
    WASHINGTON   MUTUAL,   INC.,   WM       )
17  TRUST I, WM TRUST II, WM STRATEGIC      )
    ASSET  MANAGEMENT  PORTFOLIOS,          )
18  LLC, WM FINANCIAL SERVICES, INC.,       )
    WM  ADVISORS,  INC.,  WM  FUNDS         )
19  DISTRIBUTOR,  INC.,  EDGE  ASSET        )
    MANAGEMENT,  INC.,  PRINCIPAL           )
20  FINANCIAL  GROUP,  INC.,  PRINCIPAL     )
    INVESTORS  FUND,  INC.,  PRINCIPAL      )
21  FUNDS DISTRIBUTOR, INC.,                )
                                            )
22            Defendants.                   )
    _____        )
23

24

25

26

27

28

1   TO ALL PARTIES AND THE CLERK OF THE COURT:

2   PLEASE TAKE NOTICE that plaintiffs Luz M. Zapien and Maria Carmen Higareda

3   ("Plaintiffs"), through their attorneys of record, hereby jointly file this Notice of Appeal to the Ninth

4   Circuit Court of Appeals from the United States District Court for the Southern District of

5   California, San Diego Division Order and Judgment entered June 17, 2008, granting dismissal

6   pursuant to FED.R., CIV.P. 12(b) in favor of defendants Washington Mutual, Inc., WM Trust I, WM

7   Trust II, WM Strategic Asset Management Portfolios, LLC, WM Financial Services, Inc., WM

8   Advisors, Inc., WM Funds Distributor, Inc., Edge Asset Management, Inc., Principle Financial

9   Group, Inc., Principle Investors Fund, Inc., Principle Funds Distributor, Inc., and dismissing this

10  action. True and correct copies of the June 17, 2008 Order Granting Defendant's Motion to Dismiss,

11  and the June 17, 2008 Clerk's Judgment in Favor of Defendants are attached hereto as Exhibits "A"

12  and "B," respectively. Plaintiffs also appeal from the Court's Order entered January 17, 2008, a true

13  and correct copy of which is attached hereto as Exhibit "C."

14  On July 1, 2008, Plaintiffs moved for reconsideration of the Court's June 17, 2008, Order

15  Granting Defendant's Motion to Dismiss, and the June 17, 2008 Clerk's Judgment in Favor of

16  Defendants pursuant to FED.R., CIV.P. 59(e) and 60(b). Plaintiff's motion for reconsideration was

17  denied on August 19, 2008. A true and correct copy of the August 19, 2008 Order is attached hereto

18  as Exhibit "D."

19  Dated:          September 11, 2008          Respectfully submitted,

20  **FINKELSTEIN & KRINSK LLP**

21  William R. Restis

22

23  Jeffrey R. Krinsk
    Mark L. Knutson
    501 West Broadway, Suite 1250
24  San Diego, California 9210-3579
    Telephone: (619) 238-1333
25  Facsimile: (619) 238-5425

26  Attorneys for Plaintiffs
    Luz M. Zapien and Maria Carmen Higareda

27

28

# EXHIBIT A

1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

# SOUTHERN DISTRICT OF CALIFORNIA

10

11 | LUZ M. ZAPIEN, Individually And On Behalf Of All Others Similarly Situated,,

CASE NO. 07cv385 DMS (CAB)

12

Plaintiffs,

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO STRIKE AS MOOT**

13 | vs.

14

15 | WASHINGTON MUTUAL, INC., WM TRUST I, WM TRUST II, WM STRATEGIC ASSET MANAGEMENT PORTFOLIOS, LLC, WM FINANCIAL SERVICES, INC., WM ADVISORS, INC., WM FUNDS DISTRIBUTOR, INC., EDGE ASSET MANAGEMENT, INC., PRINCIPAL FINANCIAL GROUP, INC., PRINCIPAL INVESTORS FUND, INC., PRINCIPAL FUNDS DISTRIBUTOR, INC.,

**[Docs 52, 66 & 77]**

16
17
18
19
20

Defendants.

21

22 |     This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' Second

23 | Amended Complaint (SAC). The Complaint alleges, on behalf of a putative class, securities fraud

24 | perpetrated by Defendants against Plaintiffs. Plaintiffs filed an opposition, and Defendants filed a

25 | reply. The matter was taken under submission without oral argument pursuant to Local Civil Rule

26 | 7.1(d)(1). The motion is granted for the reasons set forth below.

27 | / / /

28 | / / /

1   reinvested each December from 2000 through 2004. (Doc. 7).[3] Consequently, the dividend

2   reinvestment of December 2004 was the only purchase of securities that Zapien alleged in the FAC

3   that she or her mother made during the proposed class period of March 1, 2004 and March 1, 2005.

4   (FAC ¶ 66). In subsequent proceedings on the FAC, the parties agreed that the December 2004

5   dividend reinvestment was the basis for all alleged violations in the FAC. (Mot. to Dismiss FAC Opp.

6   at 11, Reply at 3).

7          On October 15, 2007, Defendants moved to dismiss the FAC on grounds that, *inter alia*,

8   Zapien lacked standing to pursue a claim of securities fraud surrounding purchases made by her

9   mother, Higareda. On January 17, 2008, the Court granted Defendant's motion to dismiss for lack of

10  standing. It noted that Zapien was involved in only one purchase, in 2000, and that any allegations

11  arising out of that purchase were time-barred. (Order, January 17, 2008, Doc. 49 at 5, hereinafter

12  "Order"). Because the subsequent 2004 dividend reinvestment was purchased by Higareda, Zapien

13  lacked standing to sue for harm arising out of that purchase. (Order at 6). The Court dismissed the FAC

14  for lack of standing, declined to rule on the balance of Defendants' arguments, and granted Zapien

15  leave to amend, consistent with her representation at oral argument that "it is not our intention to

16  reshape the case...We are going to add additional factual allegations that support the allegations that

17  already exist. We are not changing the theory of the case. And we would obviously add the additional

18  class plaintiff [Higareda], or substitute her entirely and withdraw Ms. Zapien." (Opp. at 19) (Order,

19  Doc. 49). The Court made no ruling on the propriety of the suggested substitution, as the issue was not

20  properly before the Court at that time. Instead, the Court specifically stated at the hearing that it would

21  deal with such issues if and when Defendant chose to file a motion to dismiss the second amended

22  complaint.

23         On February 6, 2008, a Second Amended Complaint was filed, naming both Zapien and

24  Higareda as named Plaintiffs purporting to represent "[a]ll persons or entities that purchased or

25  otherwise acquired shares, units or like interests in any of the [Defendants'] Funds (including through

26  the reinvestment of Fund dividends), on or before, at least, March 1, 2005, or such other class, classes,

---

28        [3] This allegation was not made in the FAC, but instead was made in a "certification" attached
    as an exhibit to Zapien's Motion for Appointment as Lead Plaintiff under the Reform Act filed on May
    1, 2007.

1    or periods of time as the Court deems appropriate." (SAC ¶ 86, Doc. 50).

2           On March 6, 2008, the parties appeared telephonically upon Defendants' request to file a

3    motion to dismiss the SAC. Following the telephonic conference, the Court issued an order setting

4    forth a bifurcated motion to dismiss briefing schedule, whereby a first motion to dismiss would address

5    "procedural threshold issues including standing, the statute of limitations, and the class definition."

6    The second phase would include briefing on the substantive sufficiency of the SAC, if needed. (Doc.

7    63). On February 26, 2008, Defendants filed the instant motion to dismiss the SAC, limiting its

8    discussion to issues of standing, the statute limitations, and the class definition.

9           Defendants argue the SAC in its entirety should be dismissed for three reasons: (1) Plaintiffs

10   lack Constitutional and statutory standing to bring this action (Mot. at 6); (2) the SAC improperly

11   "expands the putative class" (Mot. at 13); and (3) all claims are time barred. (Mot. at 15).

12                                                    **II.**

13                                          **LEGAL STANDARD**

14          Article III of the United States Constitution places the burden on the plaintiff to plead facts

15   showing "he has a personal stake in the alleged dispute, and that the alleged injury suffered is

16   particularized as to him." *See Raines v. Bird*, 521 U.S. 811, 819 (1997).  In securities cases, when

17   considering whether a plaintiff purporting to represent a class has standing, "the courts have

18   manifested a marked degree of restraint." *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 469 (9th

19   Cir. 1973). *See also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991)

20   (collecting cases, and noting, "[s]trict standing requirements are particularly important in the area of

21   securities litigation to curb the risks of vexatious litigation and abuse of discovery.")

22          In addition, the Securities Act and the Exchange Act both promulgate statutory standing

23   requirements. To sustain Plaintiffs' Securities Act claims, each Plaintiff must allege she is a "person

24   purchasing" the security from a person selling or offering a security in violation of certain provisions

25   of the Security Act. 15 U.S.C. § 77*l*(a). Additionally, "[i]n order to maintain a private action under

26   Section 10(b) and Rule 10b-5 [of the Exchange Act], a plaintiff must be an actual purchaser or seller

27   of securities who sustained a loss as a result of the alleged misrepresentations by the defendant." *In*

28   *re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. at 1531, *citing Blue Chip Stamps v. Manor Drug*

1  *Stores*, 421 U.S. 723, 737-38 (1975).

2                                    **III.**

3                              **DISCUSSION**

4          As an initial matter, Plaintiffs have pled no new facts that confer standing on Zapien.

5  Accordingly, Zapien is dismissed from the action with prejudice. As Zapien cannot be a named

6  Plaintiff, Plaintiffs have attempted to replace her with Higareda, who allegedly made the 2004

7  purchase. Plaintiffs argue Federal Rules of Civil Procedure 24(b)(2) and 25(c) allow Higareda to

8  continue this action despite the fact that the original named Plaintiff's claim was dismissed for lack

9  of standing. (Opp. at 4). As set forth below, Plaintiffs' reliance on these rules is unavailing.

10         Rule 24(b)(2) governs interventions "by a government officer or agency," which Plaintiffs do

11 not claim Higareda to be. Even if Plaintiffs intended to refer to Rule 24(b)(1), which allows permissive

12 intervention at the discretion of the court, intervention under these circumstances is impermissible.

13 When the sole named plaintiff in a class action lawsuit lacks standing, intervention or substitution of

14 another named plaintiff is not permissible, and the court must dismiss the claim.  *Lierboe v. State*

15 *Farm Mutual Automobile Insurance Co.,* 350 F.3d 1018, 1023 (9th Cir. 2003) ("where the sole named

16 plaintiff 'never had standing' . . . and where 'she never was a member of the class she was named to

17 represent,' the case must be remanded with instructions to dismiss.") (citation omitted); *See also In*

18 *re Exodus Comm. Sec. Litig.,* 2006 U.S.Dist. LEXIS 60735, at *4 (N.D. Cal. Aug. 14, 2006) ("where

19 the named plaintiffs in a class action lack standing, the action must be dismissed and new named

20 plaintiffs with standing may not intervene. Put another way, intervention will not be permitted to

21 breathe life into a nonexistent lawsuit.").

22         Rule 25(c) also does not apply. It allows substitution of parties only "if an interest is

23 transferred." Here, as Zapien never had an interest in this litigation, she could not have transferred it

24 to Higareda. Since Plaintiffs may not substitute Higareda under the circumstances, their attempted

25 amendment cannot cure the standing defect.

26         Plaintiffs contend that "this Court has previously directed that Plaintiff Higareda could be

27 joined as Plaintiff to moot Defendants' argument." (Opp. at 4). The scope of the Court's Order,

28 however, merely provided that Zapien had no standing to bring the claims alleged, and thus granted

                                      - 5 -                                       07cv385

1  Plaintiff leave to amend in order to cure the standing defect. The Order did not address whether

2  Higareda could be joined or intervene as a *proper* Plaintiff. For the reasons set forth above, Higareda

3  may not intervene, and the action must be dismissed. As any attempt to further amend the complaint

4  would be futile, Defendants' motion to dismiss is granted without leave to amend.  Plaintiffs' motion

5  to strike is denied as moot.[4] The Clerk shall terminate this action.

6  **IT IS SO ORDERED.**

7

8  DATED:  June 17, 2008

9

10                                               HON. DANA M. SABRAW
                                                 United States District Judge
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27  ─────────────────

28        [4] Because the foregoing ruling is dispositive, the Court does not address the remainder of
    Defendants' arguments.

# EXHIBIT B

# UNITED STATES DISTRICT COURT

### Southern District of California

Luz M. Zapien, et al.

                                    Plaintiff,

v.                                                    Case No.: 3:07−cv−00385−DMS−CAB
                                                      Judge  Dana M. Sabraw

Washington Mutual, Inc, et al.

                                    Defendant.

---

### JUDGMENT IN A CIVIL CASE

_____  **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

___X___  **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED Defendants' motion to dismiss is Granted without leave to amend. Plaintiffs' motion to strike is denied as moot.

                                                      W. Samuel Hamrick, Jr.,
                                                      Clerk of the Court

Date: 6/17/08

                                                      By: s/ L. Odierno, Deputy Clerk

                                                      ENTERED ON: June 17, 2008

# EXHIBIT C

1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  LUZ M. ZAPIEN, Individually And On          CASE NO. 07cv385 DMS (CAB)
    Behalf Of All Others Similarly Situated,,
12                                              **ORDER GRANTING**
                                Plaintiffs,     **DEFENDANT'S MOTION TO**
13      vs.                                     **DISMISS**

14  WASHINGTON MUTUAL, INC., WM
    TRUST I, WM TRUST II, WM STRATEGIC
15  ASSET MANAGEMENT PORTFOLIOS,
    LLC, WM FINANCIAL SERVICES, INC.,
16  WM ADVISORS, INC., WM FUNDS
    DISTRIBUTOR, INC., EDGE ASSET
17  MANAGEMENT, INC., PRINCIPAL
    FINANCIAL GROUP, INC., PRINCIPAL
18  INVESTORS FUND, INC., PRINCIPAL
    FUNDS DISTRIBUTOR, INC.,
19
                                Defendants.
20

21      This matter comes before the Court on Defendant's motion to dismiss Plaintiff's First

22  Amended Complaint (FAC). The motion was fully briefed by the parties, and the Court heard oral

23  argument on January 11, 2008. Howard Finkelstein appeared for Plaintiff and Phillip Kaplan and

24  Joseph Floren appeared for Defendants. Defendants' motion to dismiss is granted for the reasons set

25  forth below.

26                                      **I.**

27                               **BACKGROUND**

28      This FAC alleges a class-action securities fraud perpetrated by Defendants against Plaintiff.

1  Defendants are a group of entities related to Washington Mutual, Inc. ("WMI"), allegedly involved

2  to varying degrees in a sale of mutual funds (the "Proprietary Funds") to Plaintiff.

3         Plaintiff alleges she is a "novice investor" who purchased $5,000 of shares, units, or like

4  interests of Defendant's Proprietary Funds in 2000. (FAC ¶ 11). Plaintiff allegedly used her money to

5  purchase the shares, but purchased them in the name of her mother, Maria Carmen Higareda. (*Id.*)

6  Plaintiff alleges she affirmatively elected to automatically reinvest dividends earned, (FAC ¶ 11; RJN

7  Exh. C at 71-72),[1] and that the dividends were reinvested each December from 2000 through 2004.

8  (FAC ¶ 11, RJN Exh. B at 2-3). In particular, the dividend reinvestment of December 2004 is at issue

9  in this case.[2] Plaintiff claims to represent a class of persons "who purchased or otherwise acquired

10 shares, units or other like interests of any of the Proprietary funds...between March 1, 2004 and March

11 1, 2005." (FAC ¶ 2).

12        Plaintiff alleges Defendants gave buying advice based upon financial incentives, including

13 "millions of dollars in kickbacks from other [Washington Mutual] Fund Companies" to sell their

14 Proprietary Funds without properly notifying buyers of these incentives. (*Id.* ¶ 1). In particular, the

15 prospectuses published in March each year from 2000-2004 indicated that the distributor of funds

16 "may receive" financial incentives of this type. (*Id.* ¶ 31, 33). Plaintiff alleges this is a "materially

17 misleading statement" because Plaintiff was not told Defendant Washington Mutual Funds Services

18 ("WMFS") "in fact" received compensation in the form of revenue sharing and other non-cash

19 incentives for selling the Proprietary Funds. (*Id.* ¶ 32). According to Plaintiff, these disclosures "lead

20 a reasonable investor to believe that the revenue sharing kickback and incentive programs may or may

21 not exist, when in truth, [Defendant] WM Advisors and/or [Defendant] WM Funds Distributor had

22

23        [1] The FAC alleges "Plaintiff Zapien affirmatively elected to reinvest any dividends in
24 December of each year, and did in fact reinvest all dividends derived from the Proprietary Funds back
   into additional shares, units, or other like interests of the Proprietary funds in December of each year."
25 (FAC ¶ 11). This allegation could be interpreted two ways. Plaintiff's subsequent pleadings intimate
   without specifically stating that Plaintiff made a separate, affirmative decision each year. Defendants
26 argue that Plaintiff made a decision to reinvest annual dividends only once, in 2000. (RJN, Ex. C, at
   72). Regardless, it is undisputed that the owner of the funds retained the option to *cease* reinvesting
27 each year, and this was never done.

28        [2] The December 2004 reinvestment is the only purchase of funds that Plaintiff alleges she made
   during the proposed class period of March 1, 2004 and March 1, 2005. (FAC ¶ 66). The parties appear
   to agree that this dividend reinvestment is the subject of this action. (Opp. at 11, Reply at 3).

1   *already* entered into pre-determined, specific, and negotiated arrangements for participation in the

2   [incentives.]" (*Id.* ¶ 37).

3       In contrast, in March, 2005, the prospectus explicitly set forth the incentive program and

4   explained why it might create a conflict of interest. (*Id.* ¶ 38). Plaintiff claims this change demonstrates

5   acknowledgment that the incentives are material to any reasonable investor. (*Id.* ¶ 39).

6       Plaintiff alleges these facts give rise to six claims for relief: (1) Material Misrepresentation;

7   (2) Violations of Section 12(a) of the Securities Act (15 U.S.C. § 77*l*(a)); (3) Violations of Section 15

8   of the Securities Act (15 U.S.C. § 77o), against WMI as the "control person" of the other WM Entities;

9   (4) Violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated

10   thereunder (17 C.F.R. § 240.10b-5); (5) Violation of Section 10(b) of the Exchange Act (15 U.S.C.

11   § 78j(b)) and Rule 10b-10 promulgated thereunder (17 C.F.R. § 240.10b-10), against WMFS; (6)

12   Violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t) against WMI as a "control person."

13       Defendants argue the FAC in its entirety should be dismissed for five reasons: (1) Plaintiff

14   lacks constitutional and statutory standing to bring this action; (2) Plaintiff's claims under both the

15   Securities Act and the Exchange Act are time-barred; (3) Plaintiff's claims fail on the merits; (4)

16   Plaintiff has failed to plead damages or loss causation; and (5) Plaintiff's "controlling person" claims

17   fail.

18       The Court grants Defendants' motion for the reasons set forth below.

19                         **III.**

20               **LEGAL STANDARD**

21       When ruling on a motion to dismiss a an action brought pursuant to Exchange Act § 10(b), the

22   court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues &*

23   *Rights, Ltd.*, ___ U.S. ___, 127 S.Ct. 2499, 2509 (2007). The court "must consider the complaint in

24   its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions,

25   in particular, documents incorporated into the complaint by reference, and matters of which the court

26

27

28

1    may take judicial notice."[3] *Id.* at 2509. Dismissal is appropriate under Rule 12(b)(6) when the

2    complaint fails to plead sufficient facts stating a claim upon which relief can be granted. Fed. R. Civ.

3    P. 12(b)(6).

4        Article III of the United States Constitution places the burden on Plaintiff to plead facts

5    showing "[s]he has a personal stake in the alleged dispute, and that the alleged injury suffered is

6    particularized as to [her]." *See Raines v. Bird*, 521 U.S. 811, 819 (1997). In securities cases, when

7    considering whether a plaintiff purporting to represent a class has standing, "the courts have

8    manifested a marked degree of restraint." *La Mar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 469 (9th

9    Cir. 1973). *See also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991)

10    (collecting cases, and noting, "[s]trict standing requirements are particularly important in the area of

11    securities litigation to curb the risks of vexatious litigation and abuse of discovery.")

12        In addition, the Securities Act and the Exchange Act both promulgate statutory standing

13    requirements. To sustain Plaintiff's Securities Act claims, Plaintiff must allege she is a "person

14    purchasing" the security from a person selling or offering a security in violation of certain provisions

15    of the Security Act. 15 U.S.C. § 77*l*(a). Additionally, "[i]n order to maintain a private action under

16    Section 10(b) and Rule 10b-5 [of the Exchange Act], a plaintiff must be an actual purchaser or seller

17    of securities who sustained a loss as a result of the alleged misrepresentations by the defendant." *In*

18    *re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. at 1531, *citing Blue Chip Stamps v. Manor Drug*

19    *Stores,* 421 U.S. 723, 737-38 (1975).

20                       **IV.**

21                   **DISCUSSION**

22        Defendants first argue that Plaintiff does not have standing to bring this lawsuit because

23    Plaintiff initially purchased the funds in her mother's name. Standing, however, is conferred by statute

24    upon purchasers or sellers of the property, regardless of the identity of the record owner. Since the

25    FAC alleges Plaintiff was the purchaser of the shares in 2000, Plaintiff has properly alleged standing

26    to sue under the Securities and Exchange Acts for any misrepresentations made at the time of the

27

28       [3] Defendants requested that the Court take judicial notice of several publicly filed documents and recently enacted legislation. As the request is unopposed, and the Court agrees judicial notice of Defendants' attached exhibits is proper, the Court takes judicial notice of these documents..

1    initial purchase in 2000.

2           Even if Plaintiff was the purchaser of shares in 2000, Defendant correctly points out that under

3    the relevant statute of limitations Plaintiff may no longer bring a claim arising out of the initial

4    purchase in 2000. First, the Securities Act requires a plaintiff to bring a claim "by the earlier of (a)

5    three years from the date the parties in the offering obligate themselves to perform, in the case of a

6    Section 12(a)(2) claim..., or three years from the date of the initial registration statement, in the case

7    of a Section 11 claim..., or (b) one year from the date on which they are put on actual or constructive

8    notice of the facts underlying the claim." 15 U.S.C. § 77m. Claims for violations of Rules 10b-5, and

9    10b-10 of the Exchange Act are generally governed by a five year limitation that begins running at the

10   time of the violation, or a two year limitation from the date on which Plaintiff first had actual or

11   inquiry notice of the facts underlying the alleged fraud. 28 U.S.C. § 1658(b). Regardless of which

12   statute of limitations applies, the statute of limitations on the initial purchase of 2000 has clearly

13   expired.

14          Plaintiff argues that since she "affirmatively elected to reinvest any dividends in December of

15   each year," (FAC ¶ 11), and specifically in December of 2004, the automatic reinvestment constitutes

16   a "purchase" that is not time barred and confers standing under the Securities Act and Exchange Act.

17   The Court agrees that the reinvestment is a purchase that confers standing on the person who

18   reinvested the funds. *Deutschman v. Beneficial Corp.*, 761 F. Supp. 1080, 1087 (D. Del. 1991) ("The

19   courts appear to agree that participants in automatic dividend reinvestment programs meet the

20   threshold requirement of standing to bring suit pursuant to the federal securities laws."). As for the

21   statute of limitations, the parties disagree about the year in which the dividend reinvestment purchase

22   occurred. Defendants argue it occurred in 2000 when Plaintiff made the initial decision to purchase

23   the stock without declining the automatic reinvestment provision. (Reply at 3).  Plaintiff argues the

24   purchase took place in December, 2004, when the dividends were actually reinvested. (Opp. at 11).

25   The Court agrees with Plaintiff. A purchase occurs when the investor "incur[s] an irrevocable liability

26   to take and pay for the stock." *Blau v. Ogsbury,* 210 F.2d 426, 427 (2d Cir. 1954). When, as here, the

27   owner of the fund has the option to cease reinvesting each year, courts have treated dividend

28   reinvestments as a series of purchases, each occurring at the time of the reinvestment. *See, e.g.*

07cv385

1  *Deutschman*, 761 F. Supp. at 1087.

2  However, since the purchase at issue occurred in December, 2004, Plaintiff could not have

3  been the purchaser of those securities purchased through reinvestment. The FAC indicates Plaintiff's

4  *mother* was the record owner of the Proprietary Funds, and was therefore the record owner of the

5  dividends funding the reinvestment. (FAC ¶ 11, Opp. at 8). Although Plaintiff now argues Plaintiff

6  was the "beneficial owner" of such Funds (Opp. at 7), no such allegation appears in the FAC, and

7  Plaintiff has presented no judicially noticeable documents indicating she retained or was given

8  beneficial ownership of the Proprietary Funds. Even if Plaintiff had properly alleged beneficial

9  ownership, Plaintiff has pointed the Court to no case indicating the original purchaser *or* beneficial

10 owner of the Funds has standing to bring suit when the purchase at issue was funded entirely by

11 property titled to someone other than Plaintiff. Plaintiff has therefore not met her burden to establish

12 standing.

13 At oral argument, Plaintiff conceded the standing argument and requested leave to add or

14 substitute her mother as lead plaintiff, and to plead additional facts. The Court agrees that leave to

15 amend is appropriate under the circumstances.

16 **IV.**

17 **CONCLUSION**

18 Although Plaintiff established standing as a "purchaser" of the Proprietary Funds in 2000, the

19 statute of limitations has expired on that purchase. While the 2004 dividend reinvestment does

20 constitute a purchase that took place in December 2004, the FAC fails to allege Plaintiff funded that

21 purchase. Plaintiff does not have standing to bring a claim arising out of a purchase she did not make.

22 As this discussion is dispositive, the Court declines to address Defendants' other arguments.

23 Defendant's motion is therefore GRANTED without prejudice. Plaintiff is granted leave to amend the

24 FAC to conform to the representations made at oral argument. The Second Amended Complaint shall

25 be filed within 20 days of this order being stamped "filed."

26

27 **IT IS SO ORDERED.**

28

1  DATED:  January 17, 2008

2

3                                                    HON. DANA M. SABRAW
                                                     United States District Judge
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07cv385

# EXHIBIT D

1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **SOUTHERN DISTRICT OF CALIFORNIA**
10

11   LUZ M. ZAPIEN, Individually And On          CASE NO. 07cv385 DMS (CAB)
     Behalf Of All Others Similarly Situated,,
12                                               **ORDER DENYING PLAINTIFFS'**
                                   Plaintiffs,   **MOTION FOR**
13        vs.                                    **RECONSIDERATION**

14   WASHINGTON MUTUAL, INC., WM                 [Doc. 89]
15   TRUST I, WM TRUST II, WM STRATEGIC
     ASSET MANAGEMENT PORTFOLIOS,
16   LLC, WM FINANCIAL SERVICES, INC.,
     WM ADVISORS, INC., WM FUNDS
17   DISTRIBUTOR, INC., EDGE ASSET
     MANAGEMENT, INC., PRINCIPAL
18   FINANCIAL GROUP, INC., PRINCIPAL
     INVESTORS FUND, INC., PRINCIPAL
19   FUNDS DISTRIBUTOR, INC.,

20                                 Defendants.
21

22        This matter comes before the Court on Plaintiffs' motion for reconsideration of the Court's

23   June 17, 2008 Order and Judgment granting Defendants' motion to dismiss the second amended

24   complaint. The matter has been fully briefed. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds

25   this matter suitable for submission without oral argument. Accordingly, no appearances are required

26   at this time. The motion is denied.

27        The Court may grant reconsideration to (1) correct manifest errors of law or fact upon which

28   the judgment is based, (2) allow parties to present newly discovered or previously unavailable

1    evidence, (3) apply an intervening change in the law, or (4) prevent manifest injustice. *McDowell v.*

2    *Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999).

3    　　On January 17, 2008, this Court granted Defendant's motion to dismiss the First Amended

4    Complaint because Plaintiff Zapien lacked standing to sue as a purchaser of securities because all

5    purchases made during the statutory limitations period were effected with funds titled to Zapien's

6    mother rather than Zapien. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975)

7    (Only "actual purchasers and actual sellers" of securities have standing to sue under Section 10(b).)

8    Plaintiffs amended their complaint to include Zapien's mother as a Plaintiff and Defendant moved to

9    dismiss the Second Amended Complaint ("SAC"). On June 17, 2008, the Court granted Defendant's

10   motion to dismiss, noting Plaintiff had alleged no new facts conferring standing on Zapien, and

11   holding that Zapien's mother could not intervene in a lawsuit in which the original Plaintiff never had

12   standing to sue. (Doc. 87).

13   　　Although Plaintiffs did not address Zapien's standing in their response to Defendant's motion

14   to dismiss the SAC, they now move for reconsideration of the Court's ruling of January 17, 2008 that

15   Zapien lacked standing. Plaintiffs do not argue that there has been an intervening change in law, or that

16   they have discovered new facts. Instead, their argument rests upon their assertion that the January 17,

17   2008 order was based upon manifest errors of fact and law; namely: (1) the Court misunderstood

18   counsel's statements at the January 11, 2008 oral argument as a concession that Zapien lacked

19   standing; (2) the Court erroneously applied the law to find Zapien lacked standing.

20   　　As an initial matter, the Court notes that Plaintiffs did not challenge the Court's understanding

21   of their representations at oral argument in their opposition to Defendant's subsequent motion to

22   dismiss the Second Amended Complaint, nor did they do so at oral argument on that motion. In any

23   event, neither the January nor the July order depended upon Plaintiffs' apparent concession of the

24   standing issue. As discussed briefly below, Plaintiff Zapien simply was not the purchaser of the stocks

25   purchased through dividend reinvestment in 2004.

26   　　In support of their argument to the contrary, Plaintiffs point the Court to the rule that

27   purchasers of funds have standing to bring lawsuits, regardless of the record owner of the funds. (Mot.

28   at 2). The Court is aware of this rule, which would have applied to grant Zapien standing to bring a

- 2 -

1    claim arising out of her original purchase of funds in 2000, even though the purchased funds were

2    placed in the name of her mother, Plaintiff Higareda. (See Order, January 17, 2008, Doc. 49).

3    However, as discussed in the January 17, 2008 order, the initial purchase in 2000 no longer is

4    actionable because it occurred beyond the statute of limitations. (*Id.*). The relevant purchase is the

5    purchase of stock through dividend reinvestment in March, 2004. The purchaser of *that* stock was

6    Plaintiff Higareda, who owned the dividends that effected the purchase of the new stock in 2004. In

7    other words, while the record owner of the *purchased* stock is not controlling, the record owner of the

8    *funds that purchased* the stock is relevant to the question of who ultimately made the purchase for

9    standing purposes. The SAC states the reinvested funds were "solely in the name of Plaintiff Higareda,

10   who signed the relevant paperwork." (SAC ¶ 73). Although Zapien received the account statements

11   at her address, it was "Plaintiff Higareda" who allegedly "affirmatively elected to reinvest any

12   dividends in December of each year." (*Id.*).

13        Plaintiffs now nonetheless argue that a person can qualify for "purchaser" standing if the

14   person has "some form of involvement, even *de minimis*, in the investment decision." (Mot. at 3). In

15   support of this position, Plaintiffs cite *Medline Industries v. Blunt, Ellis & Loewi, Inc.*, 1993 WL

16   13436 (N.D. Ill. Jan. 21, 1993), an unpublished decision from the Northern District of Illinois. *Medline*

17   is inapposite for two reasons.

18        First, the decision was issued *before* Congress passed the Private Securities Litigation Reform

19   Act of 1995 (PSLRA), which does not address the standing requirement but did send a clear signal that

20   Congress intended to reduce lawyer-driven litigation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127

21   S.Ct. 2499, 2509 (2007). (The "twin goals" of the PSLRA were "to curb frivolous, lawyer-driven

22   litigation, while preserving investors' ability to recover on meritorious claims."). Since the PSLRA

23   took effect, courts hesitate to expand standing to persons who have mere influence over a purchasing

24   decision. *See, e.g. Smith v. Pennington*, 352 F.3d 884, 890 (4th Cir. 2004). In *Smith*, as here, the

25   plaintiff claimed to be a "de facto beneficiary" even though he had no legal or contractual control over

26   the investment decisions. The *Smith* court noted that even if plaintiff *were* a beneficiary, he still must

27   be a "purchaser" of securities to obtain standing. Because he "did not actually make the relevant

28   purchases,... did not own the funds used for the purchases, .... was not a beneficiary of the trust for

1  which the purchases were made, and ... lacked any authority to control the purchasing decisions, [he

2  was] *not* a 'person purchasing' under section 77*l*." *Id.* (emphasis in original).  Indeed, in the post-

3  PSLRA climate, courts disagree as to whether even formal investment advisors posses "purchaser"

4  standing in the absence of express written authority to act on the client's behalf. *Employers-Teamsters*

5  *Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 922 n.1 (9th Cir.

6  2007). Even the most expansive construction of "purchaser" now appears to require some decision-

7  making authority. *See, e.g. EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441-42

8  (W.D. Pa. 2001) ("investment advisors with the delegated authority to make investment decisions for

9  clients are purchasers under the securities laws.")

10      Plaintiff Zapien does not allege she had any authority over the purchasing decision of 2004.

11 Indeed, at oral argument in January, Plaintiffs admitted, "in point of fact [Zapien's] mother has the

12 absolute right under our law to access these funds and do what she wishes with them." (Mot. at 4). At

13 most, Plaintiffs claim, but do not allege, that Zapien "influenced" any reinvestment decision made in

14 2004, but the only decision Zapien is alleged to have "made" was the decision to purchase the original

15 stocks, and perhaps the initial decision to participate in the dividend reinvestment program. However,

16 both decisions were made in 2000, which is beyond the statute of limitations. (Mot. at 5).With respect

17 to the only relevant stock purchase, the SAC alleges that only Plaintiff *Higareda* decided to reinvest

18 dividends in 2004. (SAC ¶ 73).

19      Accordingly, the SAC does not sufficiently allege purchaser standing in Zapien and the Court

20 committed no manifest errors of law or fact. The motion for reconsideration is therefore denied.

21 **IT IS SO ORDERED.**

22

23 DATED:  August 19, 2008

24                                   _____

25                                     HON. DANA M. SABRAW
                                    United States District Judge

26

27

28

07cv385

# CERTIFICATE OF SERVICE

I, Andrea Vasquez, certify that on September 11, 2008, I electronically mailed and sent it through U.S. mail the foregoing **PLAINTIFFS' NOTICE OF APPEAL TO THE NINTH CIRCUIT** to the following individuals:

**Morgan, Lewis, & Bockius LLP**
Joseph E. Floren
One Market
Spear Street Tower
San Francisco, CA 94105
Tel: 415.442.1000
Fax: 415.442.1001
Email:  jfloren@morganlewis.com


**O'MELVENY & MYERS LLP**
Phillip R. Kaplan
610 Newport Center Dr.
Newport Beach, CA. 92660
Tel:  949 8236909
Fax:  949 8236994
Email:  pkaplan@omm.com

DATED:  September 11, 2008

Andrea Vasquez
**FINKELSTEIN & KRINSK LLP**
The Koll Center
501 West Broadway, Suite 1250
San Diego, CA  92101
Tel:  619.238.1333
Fax: 619.238.5425

CERTIFICATE OF SERVICE

1

2

3

4

5

6

7

8 # UNITED STATES DISTRICT COURT

9 # SOUTHERN DISTRICT OF CALIFORNIA

10

11 LUZ M. ZAPIEN, Individually And On
Behalf Of All Others Similarly Situated,,

CASE NO. 07cv385 DMS (CAB)

12 
                                    Plaintiffs,

**ORDER DENYING PLAINTIFFS'
MOTION FOR
RECONSIDERATION**

13      vs.

14                                              [Doc. 89]

15 WASHINGTON MUTUAL, INC., WM
TRUST I, WM TRUST II, WM STRATEGIC
16 ASSET MANAGEMENT PORTFOLIOS,
LLC, WM FINANCIAL SERVICES, INC.,
17 WM ADVISORS, INC., WM FUNDS
DISTRIBUTOR, INC., EDGE ASSET
18 MANAGEMENT, INC., PRINCIPAL
FINANCIAL GROUP, INC., PRINCIPAL
19 INVESTORS FUND, INC., PRINCIPAL
FUNDS DISTRIBUTOR, INC.,

20                                  Defendants.

21

22        This matter comes before the Court on Plaintiffs' motion for reconsideration of the Court's

23 June 17, 2008 Order and Judgment granting Defendants' motion to dismiss the second amended

24 complaint. The matter has been fully briefed. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds

25 this matter suitable for submission without oral argument. Accordingly, no appearances are required

26 at this time. The motion is denied.

27        The Court may grant reconsideration to (1) correct manifest errors of law or fact upon which

28 the judgment is based, (2) allow parties to present newly discovered or previously unavailable

1 evidence, (3) apply an intervening change in the law, or (4) prevent manifest injustice. *McDowell v.*

2 *Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999).

3      On January 17, 2008, this Court granted Defendant's motion to dismiss the First Amended

4 Complaint because Plaintiff Zapien lacked standing to sue as a purchaser of securities because all

5 purchases made during the statutory limitations period were effected with funds titled to Zapien's

6 mother rather than Zapien. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 730-31 (1975)

7 (Only "actual purchasers and actual sellers" of securities have standing to sue under Section 10(b).)

8 Plaintiffs amended their complaint to include Zapien's mother as a Plaintiff and Defendant moved to

9 dismiss the Second Amended Complaint ("SAC"). On June 17, 2008, the Court granted Defendant's

10 motion to dismiss, noting Plaintiff had alleged no new facts conferring standing on Zapien, and

11 holding that Zapien's mother could not intervene in a lawsuit in which the original Plaintiff never had

12 standing to sue. (Doc. 87).

13      Although Plaintiffs did not address Zapien's standing in their response to Defendant's motion

14 to dismiss the SAC, they now move for reconsideration of the Court's ruling of January 17, 2008 that

15 Zapien lacked standing. Plaintiffs do not argue that there has been an intervening change in law, or that

16 they have discovered new facts. Instead, their argument rests upon their assertion that the January 17,

17 2008 order was based upon manifest errors of fact and law; namely: (1) the Court misunderstood

18 counsel's statements at the January 11, 2008 oral argument as a concession that Zapien lacked

19 standing; (2) the Court erroneously applied the law to find Zapien lacked standing.

20      As an initial matter, the Court notes that Plaintiffs did not challenge the Court's understanding

21 of their representations at oral argument in their opposition to Defendant's subsequent motion to

22 dismiss the Second Amended Complaint, nor did they do so at oral argument on that motion. In any

23 event, neither the January nor the July order depended upon Plaintiffs' apparent concession of the

24 standing issue. As discussed briefly below, Plaintiff Zapien simply was not the purchaser of the stocks

25 purchased through dividend reinvestment in 2004.

26      In support of their argument to the contrary, Plaintiffs point the Court to the rule that

27 purchasers of funds have standing to bring lawsuits, regardless of the record owner of the funds. (Mot.

28 at 2). The Court is aware of this rule, which would have applied to grant Zapien standing to bring a

1    claim arising out of her original purchase of funds in 2000, even though the purchased funds were

2    placed in the name of her mother, Plaintiff Higareda. (See Order, January 17, 2008, Doc. 49).

3    However, as discussed in the January 17, 2008 order, the initial purchase in 2000 no longer is

4    actionable because it occurred beyond the statute of limitations. (*Id.*). The relevant purchase is the

5    purchase of stock through dividend reinvestment in March, 2004. The purchaser of *that* stock was

6    Plaintiff Higareda, who owned the dividends that effected the purchase of the new stock in 2004. In

7    other words, while the record owner of the *purchased* stock is not controlling, the record owner of the

8    *funds that purchased* the stock is relevant to the question of who ultimately made the purchase for

9    standing purposes. The SAC states the reinvested funds were "solely in the name of Plaintiff Higareda,

10   who signed the relevant paperwork." (SAC ¶ 73). Although Zapien received the account statements

11   at her address, it was "Plaintiff Higareda" who allegedly "affirmatively elected to reinvest any

12   dividends in December of each year." (*Id.*).

13        Plaintiffs now nonetheless argue that a person can qualify for "purchaser" standing if the

14   person has "some form of involvement, even *de minimis*, in the investment decision." (Mot. at 3). In

15   support of this position, Plaintiffs cite *Medline Industries v. Blunt, Ellis & Loewi, Inc.*, 1993 WL

16   13436 (N.D. Ill. Jan. 21, 1993), an unpublished decision from the Northern District of Illinois. *Medline*

17   is inapposite for two reasons.

18        First, the decision was issued *before* Congress passed the Private Securities Litigation Reform

19   Act of 1995 (PSLRA), which does not address the standing requirement but did send a clear signal that

20   Congress intended to reduce lawyer-driven litigation. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127

21   S.Ct. 2499, 2509 (2007). (The "twin goals" of the PSLRA were "to curb frivolous, lawyer-driven

22   litigation, while preserving investors' ability to recover on meritorious claims."). Since the PSLRA

23   took effect, courts hesitate to expand standing to persons who have mere influence over a purchasing

24   decision. *See, e.g. Smith v. Pennington*, 352 F.3d 884, 890 (4th Cir. 2004). In *Smith*, as here, the

25   plaintiff claimed to be a "de facto beneficiary" even though he had no legal or contractual control over

26   the investment decisions. The *Smith* court noted that even if plaintiff *were* a beneficiary, he still must

27   be a "purchaser" of securities to obtain standing. Because he "did not actually make the relevant

28   purchases,... did not own the funds used for the purchases, .... was not a beneficiary of the trust for

1 | which the purchases were made, and ... lacked any authority to control the purchasing decisions, [he

2 | was] *not* a 'person purchasing' under section 77*l*." *Id.* (emphasis in original).  Indeed, in the post-

3 | PSLRA climate, courts disagree as to whether even formal investment advisors posses "purchaser"

4 | standing in the absence of express written authority to act on the client's behalf. *Employers-Teamsters*

5 | *Local Nos. 175 & 505 Pension Trust Fund v. Anchor Capital Advisors*, 498 F.3d 920, 922 n.1 (9th Cir.

6 | 2007). Even the most expansive construction of "purchaser" now appears to require some decision-

7 | making authority. *See, e.g. EZRA Charitable Trust v. Rent-Way, Inc.*, 136 F. Supp. 2d 435, 441-42

8 | (W.D. Pa. 2001) ("investment advisors with the delegated authority to make investment decisions for

9 | clients are purchasers under the securities laws.")

10 | Plaintiff Zapien does not allege she had any authority over the purchasing decision of 2004.

11 | Indeed, at oral argument in January, Plaintiffs admitted, "in point of fact [Zapien's] mother has the

12 | absolute right under our law to access these funds and do what she wishes with them." (Mot. at 4). At

13 | most, Plaintiffs claim, but do not allege, that Zapien "influenced" any reinvestment decision made in

14 | 2004, but the only decision Zapien is alleged to have "made" was the decision to purchase the original

15 | stocks, and perhaps the initial decision to participate in the dividend reinvestment program. However,

16 | both decisions were made in 2000, which is beyond the statute of limitations. (Mot. at 5). With respect

17 | to the only relevant stock purchase, the SAC alleges that only Plaintiff *Higareda* decided to reinvest

18 | dividends in 2004. (SAC ¶ 73).

19 | Accordingly, the SAC does not sufficiently allege purchaser standing in Zapien and the Court

20 | committed no manifest errors of law or fact. The motion for reconsideration is therefore denied.

21 | **IT IS SO ORDERED.**

22 |

23 | DATED:  August 19, 2008

24 |

25 | HON. DANA M. SABRAW
   | United States District Judge

26 |

27 |

28 |

# UNITED STATES DISTRICT COURT

### Southern District of California

Luz M. Zapien, et al.

                                        Plaintiff,

v.                                                          Case No.: 3:07−cv−00385−DMS−CAB
                                                            Judge  Dana M. Sabraw

Washington Mutual, Inc, et al.

                                        Defendant.

---

### JUDGMENT IN A CIVIL CASE

_____    **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

__X__    **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED Defendants' motion to dismiss is Granted without leave to amend. Plaintiffs' motion to strike is denied as moot.

                                        W. Samuel Hamrick, Jr.,
                                        Clerk of the Court

Date: 6/17/08

                                        By: s/ L. Odierno, Deputy Clerk

                                        ENTERED ON: June 17, 2008

1
2
3
4
5
6
7
8       **UNITED STATES DISTRICT COURT**
9       **SOUTHERN DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11 LUZ M. ZAPIEN, Individually And On Behalf Of All Others Similarly Situated,, | CASE NO. 07cv385 DMS (CAB) |
| 12             Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION TO** |
| 13    vs. | **DISMISS AND DENYING PLAINTIFF'S MOTION TO** |
| 14 | **STRIKE AS MOOT** |
| 15 WASHINGTON MUTUAL, INC., WM TRUST I, WM TRUST II, WM STRATEGIC | |
| 16 ASSET MANAGEMENT PORTFOLIOS, LLC, WM FINANCIAL SERVICES, INC., | **[Docs 52, 66 & 77]** |
| 17 WM ADVISORS, INC., WM FUNDS DISTRIBUTOR, INC., EDGE ASSET | |
| 18 MANAGEMENT, INC., PRINCIPAL FINANCIAL GROUP, INC., PRINCIPAL | |
| 19 INVESTORS FUND, INC., PRINCIPAL FUNDS DISTRIBUTOR, INC., | |
| 20            Defendants. | |

21

22       This matter comes before the Court on Defendants' motion to dismiss Plaintiffs' Second

23 Amended Complaint (SAC). The Complaint alleges, on behalf of a putative class, securities fraud

24 perpetrated by Defendants against Plaintiffs. Plaintiffs filed an opposition, and Defendants filed a

25 reply. The matter was taken under submission without oral argument pursuant to Local Civil Rule

26 7.1(d)(1). The motion is granted for the reasons set forth below.

27 / / /

28 / / /

07cv385

1

## I.

2

## BACKGROUND

3   In 2000, Plaintiff Luz Zapien purchased certain securities "in the name of her mother,

4   [Plaintiff] Maria Carmen Higareda." (Compl. ¶9). Plaintiff Higareda then reinvested the dividends that

5   were paid on those securities, and did so in December of each year until and including 2004.

6   On February 28, 2007, Plaintiff Zapien filed a Complaint alleging violations of the Securities

7   and Exchange Acts arising out of Defendants' alleged misrepresentations about "kickback programs"

8   and other "incentive schemes" designed to encourage brokers to sell Defendants' funds. (Doc. 1). On

9   May 1, 2007, pursuant to 15 U.S.C. § 78u-4(a)(3)(b), Zapien filed a Motion for Appointment of Luz

10   Zapien as Lead Plaintiff and Approval of Finkelstein & Krinsk as Lead Counsel. (Doc. 7). In that

11   motion, Zapien represented that "[d]uring the Class Period,[1] she purchased units in Washington

12   Mutual's Growth & Income and West Coast Equity mutual funds and has suffered losses as a result

13   of wrongs perpetrated by Defendants."[2] (Doc. 7-2 at 3:4-6). The motion was unopposed, and the Court

14   granted the motion on June 6, 2007.

15   On June 25, 2007, Defendant filed a motion to dismiss the Complaint, attacking the substantive

16   sufficiency of the pleadings. (Doc. 13). However, on August 24, 2007, Zapien filed a First Amended

17   Complaint. ("FAC," Doc. 35). The FAC rendered the motion to dismiss the initial complaint moot,

18   and the Court denied the pending motion on that basis. (Doc. 38).

19   In the FAC, Zapien claimed to represent a class of persons "who purchased or otherwise

20   acquired shares, units or other like interests of any of [Defendants' proprietary] funds...between March

21   1, 2004 and March 1, 2005." (FAC ¶ 2). Zapien alleged she purchased $5,000 worth of shares, units,

22   or like interests of Defendants' funds in 2000. (FAC. ¶ 11). Although she used her money to purchase

23   the shares, she purchased them in the name of her mother, Maria Carmen Higareda. (*Id.*) In 2000,

24   Higareda affirmatively elected to automatically reinvest dividends earned. (*Id.*). Dividends were

25

26   [1] At the time of the motion, the class period was March 1, 2004 to March 1, 2005.

27   [2] Plaintiffs now argues "Plaintiff Zapien's motion for appointment as lead plaintiff disclosed
that Plaintiff Higareda [rather than Zapien] was the record owner of her daughter's shares..." but cites

28   the complaint, rather than the motion. The motion clearly and erroneously attributed the purchases
during the class period to Zapien.

1   reinvested each December from 2000 through 2004. (Doc. 7).[3] Consequently, the dividend

2   reinvestment of December 2004 was the only purchase of securities that Zapien alleged in the FAC

3   that she or her mother made during the proposed class period of March 1, 2004 and March 1, 2005.

4   (FAC ¶ 66). In subsequent proceedings on the FAC, the parties agreed that the December 2004

5   dividend reinvestment was the basis for all alleged violations in the FAC. (Mot. to Dismiss FAC Opp.

6   at 11, Reply at 3).

7        On October 15, 2007, Defendants moved to dismiss the FAC on grounds that, *inter alia*,

8   Zapien lacked standing to pursue a claim of securities fraud surrounding purchases made by her

9   mother, Higareda. On January 17, 2008, the Court granted Defendant's motion to dismiss for lack of

10  standing. It noted that Zapien was involved in only one purchase, in 2000, and that any allegations

11  arising out of that purchase were time-barred. (Order, January 17, 2008, Doc. 49 at 5, hereinafter

12  "Order"). Because the subsequent 2004 dividend reinvestment was purchased by Higareda, Zapien

13  lacked standing to sue for harm arising out of that purchase. (Order at 6). The Court dismissed the FAC

14  for lack of standing, declined to rule on the balance of Defendants' arguments, and granted Zapien

15  leave to amend, consistent with her representation at oral argument that "it is not our intention to

16  reshape the case...We are going to add additional factual allegations that support the allegations that

17  already exist. We are not changing the theory of the case. And we would obviously add the additional

18  class plaintiff [Higareda], or substitute her entirely and withdraw Ms. Zapien." (Opp. at 19) (Order,

19  Doc. 49). The Court made no ruling on the propriety of the suggested substitution, as the issue was not

20  properly before the Court at that time. Instead, the Court specifically stated at the hearing that it would

21  deal with such issues if and when Defendant chose to file a motion to dismiss the second amended

22  complaint.

23       On February 6, 2008, a Second Amended Complaint was filed, naming both Zapien and

24  Higareda as named Plaintiffs purporting to represent "[a]ll persons or entities that purchased or

25  otherwise acquired shares, units or like interests in any of the [Defendants'] Funds (including through

26  the reinvestment of Fund dividends), on or before, at least, March 1, 2005, or such other class, classes,

27

28       [3] This allegation was not made in the FAC, but instead was made in a "certification" attached
    as an exhibit to Zapien's Motion for Appointment as Lead Plaintiff under the Reform Act filed on May
    1, 2007.

1  or periods of time as the Court deems appropriate." (SAC ¶ 86, Doc. 50).

2          On March 6, 2008, the parties appeared telephonically upon Defendants' request to file a

3  motion to dismiss the SAC. Following the telephonic conference, the Court issued an order setting

4  forth a bifurcated motion to dismiss briefing schedule, whereby a first motion to dismiss would address

5  "procedural threshold issues including standing, the statute of limitations, and the class definition."

6  The second phase would include briefing on the substantive sufficiency of the SAC, if needed. (Doc.

7  63). On February 26, 2008, Defendants filed the instant motion to dismiss the SAC, limiting its

8  discussion to issues of standing, the statute limitations, and the class definition.

9          Defendants argue the SAC in its entirety should be dismissed for three reasons: (1) Plaintiffs

10  lack Constitutional and statutory standing to bring this action (Mot. at 6); (2) the SAC improperly

11  "expands the putative class" (Mot. at 13); and (3) all claims are time barred. (Mot. at 15).

12                                          **II.**

13                                  **LEGAL STANDARD**

14          Article III of the United States Constitution places the burden on the plaintiff to plead facts

15  showing "he has a personal stake in the alleged dispute, and that the alleged injury suffered is

16  particularized as to him." *See Raines v. Bird*, 521 U.S. 811, 819 (1997). In securities cases, when

17  considering whether a plaintiff purporting to represent a class has standing, "the courts have

18  manifested a marked degree of restraint." *La Mar v. H&B Novelty & Loan Co.,* 489 F.2d 461, 469 (9th

19  Cir. 1973). *See also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991)

20  (collecting cases, and noting, "[s]trict standing requirements are particularly important in the area of

21  securities litigation to curb the risks of vexatious litigation and abuse of discovery.")

22          In addition, the Securities Act and the Exchange Act both promulgate statutory standing

23  requirements. To sustain Plaintiffs' Securities Act claims, each Plaintiff must allege she is a "person

24  purchasing" the security from a person selling or offering a security in violation of certain provisions

25  of the Security Act. 15 U.S.C. § 77l(a). Additionally, "[i]n order to maintain a private action under

26  Section 10(b) and Rule 10b-5 [of the Exchange Act], a plaintiff must be an actual purchaser or seller

27  of securities who sustained a loss as a result of the alleged misrepresentations by the defendant." *In*

28  *re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. at 1531, *citing Blue Chip Stamps v. Manor Drug*

1  *Stores,* 421 U.S. 723, 737-38 (1975).

2  ## III.

3  ## DISCUSSION

4      As an initial matter, Plaintiffs have pled no new facts that confer standing on Zapien.

5  Accordingly, Zapien is dismissed from the action with prejudice. As Zapien cannot be a named

6  Plaintiff, Plaintiffs have attempted to replace her with Higareda, who allegedly made the 2004

7  purchase. Plaintiffs argue Federal Rules of Civil Procedure 24(b)(2) and 25(c) allow Higareda to

8  continue this action despite the fact that the original named Plaintiff's claim was dismissed for lack

9  of standing. (Opp. at 4). As set forth below, Plaintiffs' reliance on these rules is unavailing.

10      Rule 24(b)(2) governs interventions "by a government officer or agency," which Plaintiffs do

11  not claim Higareda to be. Even if Plaintiffs intended to refer to Rule 24(b)(1), which allows permissive

12  intervention at the discretion of the court, intervention under these circumstances is impermissible.

13  When the sole named plaintiff in a class action lawsuit lacks standing, intervention or substitution of

14  another named plaintiff is not permissible, and the court must dismiss the claim. *Lierboe v. State*

15  *Farm Mutual Automobile Insurance Co.,* 350 F.3d 1018, 1023 (9th Cir. 2003) ("where the sole named

16  plaintiff 'never had standing' . . . and where 'she never was a member of the class she was named to

17  represent,' the case must be remanded with instructions to dismiss.") (citation omitted); *See also In*

18  *re Exodus Comm. Sec. Litig.,* 2006 U.S.Dist. LEXIS 60735, at *4 (N.D. Cal. Aug. 14, 2006) ("where

19  the named plaintiffs in a class action lack standing, the action must be dismissed and new named

20  plaintiffs with standing may not intervene. Put another way, intervention will not be permitted to

21  breathe life into a nonexistent lawsuit.").

22      Rule 25(c) also does not apply. It allows substitution of parties only "if an interest is

23  transferred." Here, as Zapien never had an interest in this litigation, she could not have transferred it

24  to Higareda. Since Plaintiffs may not substitute Higareda under the circumstances, their attempted

25  amendment cannot cure the standing defect.

26      Plaintiffs contend that "this Court has previously directed that Plaintiff Higareda could be

27  joined as Plaintiff to moot Defendants' argument." (Opp. at 4). The scope of the Court's Order,

28  however, merely provided that Zapien had no standing to bring the claims alleged, and thus granted

1  Plaintiff leave to amend in order to cure the standing defect. The Order did not address whether

2  Higareda could be joined or intervene as a *proper* Plaintiff. For the reasons set forth above, Higareda

3  may not intervene, and the action must be dismissed. As any attempt to further amend the complaint

4  would be futile, Defendants' motion to dismiss is granted without leave to amend. Plaintiffs' motion

5  to strike is denied as moot.[4] The Clerk shall terminate this action.

6  **IT IS SO ORDERED.**

7

8  DATED:  June 17, 2008

9  _____

10  HON. DANA M. SABRAW
    United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28  _____
      [4] Because the foregoing ruling is dispositive, the Court does not address the remainder of
    Defendants' arguments.

- 6 -                                            07cv385

1
2
3
4
5
6
7
8        UNITED STATES DISTRICT COURT
9        SOUTHERN DISTRICT OF CALIFORNIA
10
11   LUZ M. ZAPIEN, Individually And On          CASE NO. 07cv385 DMS (CAB)
     Behalf Of All Others Similarly Situated,,
12                                               ORDER GRANTING
                                 Plaintiffs,     DEFENDANT'S MOTION TO
13        vs.                                    DISMISS
14   WASHINGTON MUTUAL, INC., WM
     TRUST I, WM TRUST II, WM STRATEGIC
15   ASSET MANAGEMENT PORTFOLIOS,
     LLC, WM FINANCIAL SERVICES, INC.,
16   WM ADVISORS, INC., WM FUNDS
     DISTRIBUTOR, INC., EDGE ASSET
17   MANAGEMENT, INC., PRINCIPAL
     FINANCIAL GROUP, INC., PRINCIPAL
18   INVESTORS FUND, INC., PRINCIPAL
     FUNDS DISTRIBUTOR, INC.,
19
                                 Defendants.
20

21        This matter comes before the Court on Defendant's motion to dismiss Plaintiff's First

22   Amended Complaint (FAC). The motion was fully briefed by the parties, and the Court heard oral

23   argument on January 11, 2008. Howard Finkelstein appeared for Plaintiff and Phillip Kaplan and

24   Joseph Floren appeared for Defendants. Defendants' motion to dismiss is granted for the reasons set

25   forth below.

26                                              I.

27                                         BACKGROUND

28        This FAC alleges a class-action securities fraud perpetrated by Defendants against Plaintiff.

                                              - 1 -                                    07cv385

1  Defendants are a group of entities related to Washington Mutual, Inc. ("WMI"), allegedly involved

2  to varying degrees in a sale of mutual funds (the "Proprietary Funds") to Plaintiff.

3       Plaintiff alleges she is a "novice investor" who purchased $5,000 of shares, units, or like

4  interests of Defendant's Proprietary Funds in 2000. (FAC ¶ 11). Plaintiff allegedly used her money to

5  purchase the shares, but purchased them in the name of her mother, Maria Carmen Higareda. (*Id.*)

6  Plaintiff alleges she affirmatively elected to automatically reinvest dividends earned, (FAC ¶ 11; RJN

7  Exh. C at 71-72),[1] and that the dividends were reinvested each December from 2000 through 2004.

8  (FAC ¶ 11, RJN Exh. B at 2-3). In particular, the dividend reinvestment of December 2004 is at issue

9  in this case.[2] Plaintiff claims to represent a class of persons "who purchased or otherwise acquired

10  shares, units or other like interests of any of the Proprietary funds...between March 1, 2004 and March

11  1, 2005." (FAC ¶ 2).

12       Plaintiff alleges Defendants gave buying advice based upon financial incentives, including

13  "millions of dollars in kickbacks from other [Washington Mutual] Fund Companies" to sell their

14  Proprietary Funds without properly notifying buyers of these incentives. (*Id.* ¶ 1). In particular, the

15  prospectuses published in March each year from 2000-2004 indicated that the distributor of funds

16  "may receive" financial incentives of this type. (*Id.* ¶ 31, 33). Plaintiff alleges this is a "materially

17  misleading statement" because Plaintiff was not told Defendant Washington Mutual Funds Services

18  ("WMFS") "in fact" received compensation in the form of revenue sharing and other non-cash

19  incentives for selling the Proprietary Funds. (*Id.* ¶ 32). According to Plaintiff, these disclosures "lead

20  a reasonable investor to believe that the revenue sharing kickback and incentive programs may or may

21  not exist, when in truth, [Defendant] WM Advisors and/or [Defendant] WM Funds Distributor had

22

23      [1] The FAC alleges "Plaintiff Zapien affirmatively elected to reinvest any dividends in
24  December of each year, and did in fact reinvest all dividends derived from the Proprietary Funds back
   into additional shares, units, or other like interests of the Proprietary funds in December of each year."
   (FAC ¶ 11). This allegation could be interpreted two ways. Plaintiff's subsequent pleadings intimate
25  without specifically stating that Plaintiff made a separate, affirmative decision each year. Defendants
   argue that Plaintiff made a decision to reinvest annual dividends only once, in 2000. (RJN, Ex. C, at
26  72). Regardless, it is undisputed that the owner of the funds retained the option to *cease* reinvesting
   each year, and this was never done.
27

28      [2] The December 2004 reinvestment is the only purchase of funds that Plaintiff alleges she made
   during the proposed class period of March 1, 2004 and March 1, 2005. (FAC ¶ 66). The parties appear
   to agree that this dividend reinvestment is the subject of this action. (Opp. at 11, Reply at 3).

07cv385

1 │ *already* entered into pre-determined, specific, and negotiated arrangements for participation in the

2 │ [incentives.]" (*Id.* ¶ 37).

3 │      In contrast, in March, 2005, the prospectus explicitly set forth the incentive program and

4 │ explained why it might create a conflict of interest. (*Id.* ¶ 38). Plaintiff claims this change demonstrates

5 │ acknowledgment that the incentives are material to any reasonable investor. (*Id.* ¶ 39).

6 │      Plaintiff alleges these facts give rise to six claims for relief: (1) Material Misrepresentation;

7 │ (2) Violations of Section 12(a) of the Securities Act (15 U.S.C. § 77*l*(a)); (3) Violations of Section 15

8 │ of the Securities Act (15 U.S.C. § 77o), against WMI as the "control person" of the other WM Entities;

9 │ (4) Violation of Section 10(b) of the Exchange Act (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated

10 │ thereunder (17 C.F.R. § 240.10b-5); (5) Violation of Section 10(b) of the Exchange Act (15 U.S.C.

11 │ § 78j(b)) and Rule 10b-10 promulgated thereunder (17 C.F.R. § 240.10b-10), against WMFS; (6)

12 │ Violations of Section 20(a) of the Exchange Act (15 U.S.C. § 78t) against WMI as a "control person."

13 │      Defendants argue the FAC in its entirety should be dismissed for five reasons: (1) Plaintiff

14 │ lacks constitutional and statutory standing to bring this action; (2) Plaintiff's claims under both the

15 │ Securities Act and the Exchange Act are time-barred; (3) Plaintiff's claims fail on the merits; (4)

16 │ Plaintiff has failed to plead damages or loss causation; and (5) Plaintiff's "controlling person" claims

17 │ fail.

18 │      The Court grants Defendants' motion for the reasons set forth below.

19 │ **III.**

20 │ **LEGAL STANDARD**

21 │      When ruling on a motion to dismiss an action brought pursuant to Exchange Act § 10(b), the

22 │ court must "accept all factual allegations in the complaint as true." *Tellabs, Inc. v. Makor Issues &*

23 │ *Rights, Ltd.*, ___ U.S. ___, 127 S.Ct. 2499, 2509 (2007). The court "must consider the complaint in

24 │ its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions,

25 │ in particular, documents incorporated into the complaint by reference, and matters of which the court

26 │

27 │

28 │

- 3 -

1  may take judicial notice."[3] *Id.* at 2509. Dismissal is appropriate under Rule 12(b)(6) when the

2  complaint fails to plead sufficient facts stating a claim upon which relief can be granted. Fed. R. Civ.

3  P. 12(b)(6).

4      Article III of the United States Constitution places the burden on Plaintiff to plead facts

5  showing "[s]he has a personal stake in the alleged dispute, and that the alleged injury suffered is

6  particularized as to [her]." *See Raines v. Bird*, 521 U.S. 811, 819 (1997). In securities cases, when

7  considering whether a plaintiff purporting to represent a class has standing, "the courts have

8  manifested a marked degree of restraint." *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 469 (9th

9  Cir. 1973). *See also In re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. 1525, 1531 (D. Mass. 1991)

10  (collecting cases, and noting, "[s]trict standing requirements are particularly important in the area of

11  securities litigation to curb the risks of vexatious litigation and abuse of discovery.")

12      In addition, the Securities Act and the Exchange Act both promulgate statutory standing

13  requirements. To sustain Plaintiff's Securities Act claims, Plaintiff must allege she is a "person

14  purchasing" the security from a person selling or offering a security in violation of certain provisions

15  of the Security Act. 15 U.S.C. § 77l(a). Additionally, "[i]n order to maintain a private action under

16  Section 10(b) and Rule 10b-5 [of the Exchange Act], a plaintiff must be an actual purchaser or seller

17  of securities who sustained a loss as a result of the alleged misrepresentations by the defendant." *In*

18  *re Bank of Boston Corp. Sec. Litig.*, 762 F. Supp. at 1531, *citing Blue Chip Stamps v. Manor Drug*

19  *Stores,* 421 U.S. 723, 737-38 (1975).

20                                    **IV.**

21                                **DISCUSSION**

22      Defendants first argue that Plaintiff does not have standing to bring this lawsuit because

23  Plaintiff initially purchased the funds in her mother's name. Standing, however, is conferred by statute

24  upon purchasers or sellers of the property, regardless of the identity of the record owner. Since the

25  FAC alleges Plaintiff was the purchaser of the shares in 2000, Plaintiff has properly alleged standing

26  to sue under the Securities and Exchange Acts for any misrepresentations made at the time of the

27

28      [3] Defendants requested that the Court take judicial notice of several publicly filed documents and recently enacted legislation. As the request is unopposed, and the Court agrees judicial notice of Defendants' attached exhibits is proper, the Court takes judicial notice of these documents..

1   initial purchase in 2000.

2       Even if Plaintiff was the purchaser of shares in 2000, Defendant correctly points out that under

3   the relevant statute of limitations Plaintiff may no longer bring a claim arising out of the initial

4   purchase in 2000. First, the Securities Act requires a plaintiff to bring a claim "by the earlier of (a)

5   three years from the date the parties in the offering obligate themselves to perform, in the case of a

6   Section 12(a)(2) claim..., or three years from the date of the initial registration statement, in the case

7   of a Section 11 claim..., or (b) one year from the date on which they are put on actual or constructive

8   notice of the facts underlying the claim." 15 U.S.C. § 77m. Claims for violations of Rules 10b-5, and

9   10b-10 of the Exchange Act are generally governed by a five year limitation that begins running at the

10  time of the violation, or a two year limitation from the date on which Plaintiff first had actual or

11  inquiry notice of the facts underlying the alleged fraud. 28 U.S.C. § 1658(b). Regardless of which

12  statute of limitations applies, the statute of limitations on the initial purchase of 2000 has clearly

13  expired.

14      Plaintiff argues that since she "affirmatively elected to reinvest any dividends in December of

15  each year," (FAC ¶ 11), and specifically in December of 2004, the automatic reinvestment constitutes

16  a "purchase" that is not time barred and confers standing under the Securities Act and Exchange Act.

17  The Court agrees that the reinvestment is a purchase that confers standing on the person who

18  reinvested the funds. *Deutschman v. Beneficial Corp.*, 761 F. Supp. 1080, 1087 (D. Del. 1991) ("The

19  courts appear to agree that participants in automatic dividend reinvestment programs meet the

20  threshold requirement of standing to bring suit pursuant to the federal securities laws."). As for the

21  statute of limitations, the parties disagree about the year in which the dividend reinvestment purchase

22  occurred. Defendants argue it occurred in 2000 when Plaintiff made the initial decision to purchase

23  the stock without declining the automatic reinvestment provision. (Reply at 3). Plaintiff argues the

24  purchase took place in December, 2004, when the dividends were actually reinvested. (Opp. at 11).

25  The Court agrees with Plaintiff. A purchase occurs when the investor "incur[s] an irrevocable liability

26  to take and pay for the stock." *Blau v. Ogsbury*, 210 F.2d 426, 427 (2d Cir. 1954). When, as here, the

27  owner of the fund has the option to cease reinvesting each year, courts have treated dividend

28  reinvestments as a series of purchases, each occurring at the time of the reinvestment. *See, e.g.*

1   *Deutschman*, 761 F. Supp. at 1087.

2       However, since the purchase at issue occurred in December, 2004, Plaintiff could not have

3 been the purchaser of those securities purchased through reinvestment. The FAC indicates Plaintiff's

4 *mother* was the record owner of the Proprietary Funds, and was therefore the record owner of the

5 dividends funding the reinvestment. (FAC ¶ 11, Opp. at 8). Although Plaintiff now argues Plaintiff

6 was the "beneficial owner" of such Funds (Opp. at 7), no such allegation appears in the FAC, and

7 Plaintiff has presented no judicially noticeable documents indicating she retained or was given

8 beneficial ownership of the Proprietary Funds. Even if Plaintiff had properly alleged beneficial

9 ownership, Plaintiff has pointed the Court to no case indicating the original purchaser *or* beneficial

10 owner of the Funds has standing to bring suit when the purchase at issue was funded entirely by

11 property titled to someone other than Plaintiff. Plaintiff has therefore not met her burden to establish

12 standing.

13       At oral argument, Plaintiff conceded the standing argument and requested leave to add or

14 substitute her mother as lead plaintiff, and to plead additional facts. The Court agrees that leave to

15 amend is appropriate under the circumstances.

16 **IV.**

17 **CONCLUSION**

18       Although Plaintiff established standing as a "purchaser" of the Proprietary Funds in 2000, the

19 statute of limitations has expired on that purchase. While the 2004 dividend reinvestment does

20 constitute a purchase that took place in December 2004, the FAC fails to allege Plaintiff funded that

21 purchase. Plaintiff does not have standing to bring a claim arising out of a purchase she did not make.

22 As this discussion is dispositive, the Court declines to address Defendants' other arguments.

23 Defendant's motion is therefore GRANTED without prejudice. Plaintiff is granted leave to amend the

24 FAC to conform to the representations made at oral argument. The Second Amended Complaint shall

25 be filed within 20 days of this order being stamped "filed."

26

27 **IT IS SO ORDERED.**

28

- 6 -

DATED:  January 17, 2008

_____

HON. DANA M. SABRAW
United States District Judge

07cv385

# Notice of Appeal Notification Form

**To:**   Clerk, U.S. Court of Appeals                    **Date:** 9/15/2008
**From:** U.S. District Court, Southern District of California
**Subject:** New Appeals Case Information & Docket Fee Notification

## Case Information

Case Title:   LUZ M. ZAPIEN, Individually and on Behalf of all Others Similarly Situated; MARIA
CARMEN HIGAREDA, Individually and on Behalf of All Others Similarly Situated v.
WASHINGTON MUTUAL, INC.; WM TRUST I; WM TRUST II; WM STRATEGIC
ASSET MANAGEMENT PORTFOLIOS, LLC; WM FINANCIAL SERVICES, INC.;
WM ADVISORS INC.; WM FUNDS DISTRIBUTOR, INC.; EDGE ASSET
MANAGEMENT, INC.; PRINCIPAL FINANCIAL GROUP, INC.; PRINCIPAL
INVESTORS FUND, INC.; PRINCIPAL FUNDS DISTRIBUTOR, INC.; WAMU
INVESTMENTS, INC.

U.S.D.C. No.:   07cv385-DMS-CAB              U.S.D.C. Judge:   Dana M. Sabraw

Complaint/Indictment/Petition Filed:    Complaint

Appealed Order Entered:      8/19/2008

Notice of Appeal Filed:    9/11/2008

Court Reporter:    Lee Ann Pence

COA Status:      ☐ Granted in full/part (appeal only)          ☐ Denied (send clerk's file)

## Docket Fee Notification
Docket Fee:      ☐ Paid         ☒ Not Paid          ☐ No Fee Required

USA/GOVT. APPEAL:      ☐ Yes   ☒ No

Date F/P granted (Show Date and Attach Copy of Order): _____

Was F/P Status Revoked?      ☐ Yes          ☐ No

Companion Case(s): (Please list consolidated cases, if applicable) _____

## Counsel Information
**Appellant Counsel:**                    **Appellee Counsel:**

Jeffrey R Krinsk                          Joseph E Floren
Finkelstein and Krinsk                    Morgan Lewis & Bockius LLP
501 West Broadway, Suite 1250             Spear Street Tower, Suite 3000
San Diego, CA 92101                       San Francisco, CA 94105
(619) 238-1333                            (415) 442-1391

William Richard Restis                    Lisa A. Freitas
Finkelstein and Krinsk                    Morgan Lewis & Bockius, LLP
501 West Broadway, Suite 1250             One Market, Spear Street Tower
San Diego, CA 92101                       San Francisco, CA 94105
(619) 238-1333                            (415) 442-1173

Counsel Status: [x] Retained     [ ] Appointed     [ ] Pro Se

Appointed by: _____

(Attach copy of order/minutes)

## Defendant Information

Prisoner ID Number:     n/a

Bail: _____

Custody: _____

### SERVICE LIST

**Counsel for Appellant(s) and Appellee(s), as listed on the previous page, have been sent copies of the following items:**

| | |
|---|---|
| x | Transmittal of U.S.C.A. (Appellant and Appellee) |
| x | Case Information/Docketing Fee Notification Form. (Appellant Only) |
| x | Notice of Appeal. (Appellant, Appellee, U.S. District Judge, USPO, and Court Reporter) |
| x | Docket Entries (Appellant and Appellee) |
| x | Designation of Reporter's Transcript and Ordering Form. (Appellant Only, mailed separately) |
| | Order for Time Schedule.  (Criminal Only) (Appellant, Appellee, and Court Reporter) |
| | Magistrate Judge's Report and Recommendation |
| | COA Order |
| | F/P Order |
| | Minute Order |
| x | Other: ORDER Denying Plaintiff's Motion for Reconsideration, entered 8/19/2008; JUDGMENT, entered 6/17/2008; ORDER Granting Defendant's Motion to Dismiss and Denying Plaintiff's Motion to Strike as Moot, entered 6/17/2008; ORDER Granting Defendant's Motion to Dismiss, entered 1/17/2008 |

Form Completed And Documents Served By U.S. District Court Deputy Clerk:

Angela Rowland
_____

Deputy's Name

*A Rowland*
_____

Deputy's Signature

# UNITED STATES DISTRICT COURT
Southern District Of California
Office Of The Clerk
880 Front Street, Room 4290
San Diego, California 92101-8900
Phone: (619) 557-5600
Fax: (619) 702-9900

W. Samuel Hamrick, Jr.
Clerk of Court

To:    Clerk, U.S. Court of Appeals
P.O. Box 193939
San Francisco, CA 94119-3939

Re:    **USCA No:**
      **USDC No:**    **07cv385-DMS-CAB**
      **Zapien et al v. Washington Mutual, Inc., et al**

Clerk, U.S. Court of Appeals, enclosed herewith you will please find:

| | | | | | |
|---|---|---|---|---|---|
| x | Copy of the Notice of Appeal | | x | Docket Entries | |
| x | Case Information/Docket Fee Payment Notification Form | | | | |
| | Order for Time Schedule (Criminal) | | | | |
| | Original Clerk's Record in | | set(s) of | | volume(s). |
| | Reporter's transcripts in | | set(s) of | | volume(s). |
| | Exhibits in | envelope(s) | box(es) | | folders(s) |
| x | Judgement Order | | | F/P Order | |
| | CJA Form 20 | | | Minute Order | |
| | Certificate of Record | | | Mandate Return | |
| | Magistrate Judge's Report and Recommendation | | | | |
| | COA Order | | | | |
| | Amended docket fee notification form | | | | |
| | Order Appointing Counsel for Appeal | | | | |
| x | ORDER Denying Plaintiff's Motion for Reconsideration, entered 8/19/2008; ORDER Granting Defendant's Motion to Dismiss and Denying Plaintiff's Motion to Strike as Moot, entered 6/17/2008; ORDER Granting Defendant's Motion to Dismiss, entered 1/17/2008 | | | | |
| x | Please acknowledge on the enclosed copy of this transmittal | | | | |

Sincerely yours,

W. Samuel Hamrick, Jr.
Clerk of Court

By: *H Rowland*
Angela Rowland, **Deputy**

Date: 9/15/2008